
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> F. HOFFMANN-LAROCHE LTD., a Swiss ) <br> Company, ROCHE DIAGNOSTICS GmbH, ) <br> a German Company and HOFFMANN ) <br> LAROCHE INC., a New Jersey Corporation, ) <br> ) <br> Defendants. ) | 05-CV-12237-WGY <br><br> Hon. William G. Young |

### DECLARATION OF HARMAN AVERY GROSSMAN

HARMAN AVERY GROSSMAN, ESQ., under penalty of perjury, declares as follows:

1. I am Assistant General Counsel of Johnson & Johnson, the parent company of plaintiff Ortho Biotech Products, L.P. ("Ortho"). My duties and responsibilities include rendering advice to Ortho on litigation and related matters concerning Ortho's relationship with plaintiff Amgen, Inc. ("Amgen"), and with respect to Ortho's erythropoietin product, Procrit®. I make this declaration, based upon my personal knowledge, in support of Ortho's Motion To Intervene in this action.

2. Ortho and Amgen are parties to a Product License Agreement ("PLA"), dated September 30, 1985, pursuant to which Ortho holds certain rights under Amgen's patents concerning recombinant human erythropoietin. A copy of the relevant excerpts of the PLA are attached hereto as Exhibit 1.

3. Ortho and Amgen have a complex commercial relationship and a lengthy history of disputes. In addition to being Ortho's licensor for recombinant human erythropoietin,

Amgen sells another anti-anemia product, called Aranesp, that competes with Procrit for sales in the same indications.

4. In connection with this competition, Ortho is currently prosecuting an antitrust action against Amgen in federal court, based on Amgen's employment of contracting practices that Ortho alleges are unlawful and anticompetitive. *See Ortho Biotech Products, L.P. v. Amgen Inc.*, No. 3:05-cv-4850-SRC-JJH (D.N.J.) A copy of Ortho's complaint in this action is attached hereto as Exhibit 2.

5. In addition to this ongoing antitrust suit, Ortho and Amgen have previously been adversaries in a series of arbitrations under the PLA, including the following:

- A 1989 arbitration in which Amgen was found to have impeded Ortho's entry into the U.S. EPO market, and in which Ortho was awarded damages of $164 million;

- A 1996 arbitration in which Amgen was found to have made extensive "spillover" sales of EPO in Ortho's exclusive field of use, resulting in an award to Ortho of $159 million; and

- A 2002 arbitration that resulted in the denial of Amgen's application to terminate Ortho's license under the PLA.

6. I am informed and believe that defendants F. Hoffmann-LaRoche Ltd., a Swiss Company; Roche Diagnostics GmbH, a German Company; and Hoffmann LaRoche Inc., a New Jersey Corporation (collectively "Roche") are currently developing for sale in the United States and elsewhere an erythropoietin product referred to herein as PEG-EPO.

7. Attached hereto as Exhibit 3 is a copy of a press release issued by Roche on or about November 12, 2005, concerning, *inter alia*, Roche's development of PEG-EPO.

8. Attached hereto as Exhibit 4 is a copy of an "Investor Update" issued by Roche on or about February 1, 2006, concerning, *inter alia*, Roche's development of PEG-EPO.

9. Paragraph 8.02 of the PLA provides, *inter alia*, that "[e]ither party shall promptly notify the other party of any infringement of LICENSED PATENTS . . . and shall

provide the other party with all available evidence relating thereto. AMGEN and ORTHO shall then consult with each other as to the best manner in which to proceed. . . ." Despite this requirement, Amgen did not contact me or, to my knowledge, anyone else at Ortho prior to initiating this patent infringement action against Roche. Specifically, Amgen did not notify Ortho of any infringement and did not share with Ortho its evidence relating to such infringement.

10. After learning of the commencement of this action through press reports, I telephoned my counterpart at Amgen to request a copy of the complaint. A copy of an email from Amgen to me, responding to my request, is attached hereto as Exhibit 5.

11. I subsequently emailed my counterpart at Amgen concerning a new Federal Circuit decision that, in Ortho's view, holds that Ortho is a necessary party to this action. A copy of this email is attached hereto as Exhibit 6. Amgen responded that it disagrees with Ortho's analysis and that it does "not believe that Ortho is a necessary party . . . ." A copy of Amgen's responsive email is attached hereto as Exhibit 7.

12. I subsequently sent an email to Amgen requesting specifically that Amgen agree to join Ortho as a party to this action. A copy of this email is attached as Exhibit 8.

13. On March 6, 2006, I had a telephone conversation with counsel for Amgen in which Amgen informed me that it would not consent to Ortho's joinder as a party.

14. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed at New Brunswick, New Jersey this __ day of March, 2006.

Harman Avery Grossman, Esq.