UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION No.: 05-CV-12237WGY |
| F. HOFFMANN-LA ROCHE LTD, | ) | |
| ROCHE DIAGNOSTICS GMBH, | ) | |
| AND HOFFMANN-LA ROCHE INC., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANT ROCHE DIAGNOSTICS GMBH'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292

Leora Ben-Ami
Patricia A. Carson
Thomas F. Fleming
Howard Suh
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel. (212) 836-8000

Dockets.Justia.com

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD FOR MOTION TO DISMISS ...................................................................2

LEGAL ARGUMENT ............................................................................................................2

      A.      General Jurisdiction Does Not Exist Over Roche Germany ................................2

            1.      Roche Germany's Contacts Are Insufficient To Warrant Jurisdiction...............................................................................................3

            2.      The U.S. Affiliate's Sending Product Into Massachusetts Is Insufficient To Warrant Exercising Jurisdiction Over Roche Germany ................................................................................................7

            3.      General Jurisdiction Over Roche Germany Fails To Comport With Due Process ..........................................................................................9

      B.      Specific Jurisdiction Does Not Exist Over Roche Germany................................13

CONCLUSION ...................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848 (9th Cir. 1993)...............................10

*Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102 (1987) ...............................5, 10, 12

*Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671 (1st Cir. 1992) ...........................................................2

*Cognex Corp. v. Lemelson Med., Educ. & Research Found., Ltd.*,
    67 F. Supp. 2d 5 (D. Mass. 1999) ........................................................................................15

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ...........................................10

*De Castro v. Sanifill Inc.*, 198 F.3d 282 (1st Cir. 1999) ...............................................................8

*Donatelli v. Nat'l Hockey League*, 708 F. Supp. 31 (D.R.I. 1989),
    *rev'd on other grounds*, 893 F.2d 459 (1st Cir. 1990) ...........................................................6

*Donatelli v. Nat'l Hockey League*, 893 F.2d 459 (1st Cir. 1990)..................................3, 6, 7, 10

*In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298 (D. Mass. 2004) ...............7, 8, 10, 12

*In re Lupron*, 245 F. Supp. 2d 280 (D. Mass. 2003)....................................................................8

*Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945)..................................................................9

*Marine Charter & Storage LTD., Inc. v. Denison Marine, Inc.*,
    701 F. Supp. 930 (D. Mass. 1988) ...........................................................................................2

*Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*,
    139 F.3d 304 (1st Cir. 1998)....................................................................................................7

*Mass. School of Law at Andover, Inc. v. American Bar Assoc.*,
    142 F.3d 26 (1st Cir. 1998).......................................................................................................2

*Measurement Computing Corp. v. General Patent Corp. International*,
    304 F. Supp. 2d 176 (D. Mass. 2004) ...........................................................................14, 15

*Noonan v. Winston Co.*, 135 F.3d 85 (1st Cir. 1998).........................................................5, 6, 12

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (Fed. Cir. 1996) ......................................................9

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284 (1st Cir. 1999).....................2

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995).................................................................. 10, 11

*Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921 (D. Mass. 1994)........................................7

*Steir v. Girl Scouts of the USA*, 218 F. Supp. 2d 58 (D.N.H. 2002)............................................11

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) ................................. 3, 10, 11

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    960 F.2d 1080 (1st Cir. 1992)............................................................................................. 3, 7

*United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610 (1st Cir. 2001).............................. 3, 5, 6, 13

## INTRODUCTION

Plaintiff Amgen Inc. complains of the possibility of future patent infringement by defendants F. Hoffmann-La Roche Ltd., Roche Diagnostics GmbH and Hoffmann-La Roche Inc. But while Amgen's premature claims are the subject of defendant Hoffmann-La Roche Inc.'s separate motion before this court, this motion addresses Amgen's attempt to reach beyond its grasp by inappropriately including Roche Diagnostics GmbH (hereinafter referred to as "Roche Germany"), a European entity that is not subject to Massachusetts jurisdiction. The sole allegation against Roche Germany is conclusory boilerplate, stating only that "[o]n information and belief, [Roche Germany] ... transact[s] business within the District of Massachusetts and/or [is] otherwise subject to the jurisdiction of this Court." Complaint at ¶ 5. Amgen then simply lumps Roche Germany with Hoffmann-La Roche Inc., a New Jersey corporation, stating that all defendants "are hereinafter referred to individually and collectively as "Roche". *Id.* at ¶ 6. (Hoffmann-La Roche Inc. hereinafter referred to as the "U.S. Defendant"). Not a single paragraph, phrase or word, is addressed specifically or directly to Roche Germany, or differentiates it from the U.S. Defendant, in the entire complaint. However, Roche Germany is not registered to do business in the State of Massachusetts, does not maintain offices or sales forces in Massachusetts and during the relevant time period is at best minimally involved in Massachusetts commerce through certain limited licensing or research and development arrangements. Moreover, Roche Germany did not place the subject drug into the stream of commerce in Massachusetts, or cause any specific harm or infringement in Massachusetts. Further, Amgen would suffer no prejudice should the court dismiss Roche Germany, as Amgen may have its day in court to fully litigate whatever rights it may possess against the U.S.

Defendant. Accordingly, this Court possesses neither general nor specific personal jurisdiction over Roche Germany, and it should be dismissed with prejudice.

## LEGAL STANDARD FOR MOTION TO DISMISS

"On a motion to dismiss for want of *in personam* jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Mass. School of Law at Andover, Inc. v. American Bar Assoc.*, 142 F.3d 26, 34 (1st Cir. 1998). While the *prima facie* standard is liberal, the court need not "credit conclusory allegations or draw farfetched inferences." *Id.* Plaintiffs may not rest solely on the pleadings to allege personal jurisdiction, but must make "properly supported proffers of evidence." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992); *see also Marine Charter & Storage LTD., Inc. v. Denison Marine, Inc.*, 701 F. Supp. 930 n.1 (D. Mass. 1988) (Young, C.J.) ("the Court notes it is at best dubious whether information not based on personal knowledge can be properly considered by a court determining whether personal jurisdiction exists.").

## LEGAL ARGUMENT

### A. General Jurisdiction Does Not Exist Over Roche Germany

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to suit, in forum state." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) ("*Pleasant St. I*"). In determining whether the exercise of jurisdiction is warranted, courts focus on the "quality and quantity of the potential defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). Measuring continuous and systematic contacts is "a fact-specific evaluation" which compares the facts of a case at bar against precedents with similar

facts. *United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 620 (1st Cir. 2001) (denying jurisdiction after a comparison with earlier cases showed lesser contacts existed in the case at bar).

The plaintiff, if capable of proving "continuous and systematic contacts," must then also prove that asserting jurisdiction would comport with due process by demonstrating "that the exercise of jurisdiction would be reasonable after assessing certain 'gestalt factors.'" *Id.* at 619 (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990) (discussing the five "gestalt factors" used to determine fundamental fairness of exercising jurisdiction)). These "gestalt factors" include: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995) (discussing the five "gestalt factors" used to determine fundamental fairness of exercising jurisdiction). Further, the weaker the plaintiff's showing of relatedness and purposeful availment by defendant, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

### 1.    Roche Germany's Contacts Are Insufficient To Warrant Jurisdiction

It is undisputed that Roche Diagnostics GmbH is "a foreign corporation existing under the laws of Germany" with its seat in Mannheim, Germany and places of business in Penzberg, Germany and Mannheim, Germany.  *See*, Complaint at ¶ 3 and Declaration of Martin Meisiek at ¶ 3 filed herewith ("Meisiek Decl.").  Roche Germany does not have substantial or "continuous and systematic" contacts with Massachusetts.  Roche Germany's employees do not market,

distribute, sell, or place into the stream of commerce in Massachusetts *any* of its products. Meisiek Decl. at ¶ 15. Indeed, Roche Germany is not approved by the Food and Drug Administration to manufacture, sell, or market any drug or ingredient comprising any drug at issue in this action, and it does not do so. *Id.* at ¶ 16. Apart from a limited number of license and research and development agreements regarding diagnostics or pharmaceuticals, Roche Germany does not have contracts with partners in the State of Massachusetts and is not now and never has been registered to conduct business in Massachusetts. *Id.* at ¶ 9, ¶ 14. Roche Germany has never maintained an office or agent in Massachusetts (*Id.* at ¶ 10); has not owned, used, possessed, or held a mortgage or other lien on any real property in Massachusetts (*Id.* at ¶ 11); is not aware of having breached any contract in Massachusetts by failing to perform acts required by the contract to be performed in Massachusetts (*Id.* at ¶ 12); and has not engaged in substantial activity within Massachusetts. *Id.* at ¶ 13. Roche Germany has neither sued nor been sued in Massachusetts in over a decade. Roche Germany has but one unsubstantial physical contact with Massachusetts, namely the intermittent visitation by various employees to the U.S., including Massachusetts, for short visits of a few days in any one state - to investigate and evaluate potential licensing and research co-operations. *Id.* at ¶ 18.

Roche Germany manufactures the drug at issue and delivers it directly to the U.S. Defendant in New Jersey. *Id.* at ¶ 20. Once the drug is in New Jersey, Roche Germany has no control over where the drug is sent or what happens to it. *Id.* Roche Germany does not direct distribution of the drug to any place, certainly not Massachusetts; that control rests exclusively with the U.S. Defendant. *Id.* Roche Germany thus has minimal contacts with Massachusetts, certainly well short of "substantial, systematic and continuous" and accordingly, the complaint should be dismissed as to it with prejudice.

This very Court has recently denied jurisdiction on such a motion where the defendant had far more contacts with the forum state than the instant defendant. In *Swiss American Bank*, plaintiff proffered that the foreign defendant bank: (1) placed twelve advertisements in a magazine in-forum; (2) subscribed to Visa International, an in-forum credit card company, and entered into a license agreement with MasterCard International, an in-forum company; (3) was an appellant in a lawsuit in-forum; (4) posted information about itself on three internet sites; (5) entered into a contract to provide ATM support services to an in-forum company; (6) entered into a joint venture with an in-forum bank; (7) loaned $350,000 to an in-forum company to run an internet service; (8) had banking relationships and accounts with four banks; and (9) had a business relationship with an in-forum resident money launderer. All these activities occurred over approximately an eleven year span. *United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001). Even so, this Court held this level of contact was "limited and intermittent" and insufficient to meet the *prima facie* standard of "continuous and systematic." *Id.* at 620.

Likewise in *Noonan v. Winston Co.*, 135 F.3d 85 (1st Cir. 1998), the Court ruled there were insufficient minimum contacts to authorize general jurisdiction over the international corporate defendant. There the Court stated it "must exercise even greater care before exercising personal jurisdiction over foreign nationals" beyond the already "stringent" requirements for finding general jurisdiction over United States parties. *Id.* at 93 (citing *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102 (1987)). The Court held there were insufficient contacts to warrant general jurisdiction, despite the international corporate defendant's contacts such as (1) employees regularly soliciting business from a corporation located in-forum; (2) a two-year period where defendants "telephoned, faxed and wrote" a local corporation to secure book orders; (3) at least two occasions of defendant's employees traveling to Massachusetts with "the

intention of developing a relationship with a local corporation"; (4) hosting Massachusetts corporate employees at foreign office to negotiate orders; and (5) garnering approximately $585,000 of orders from a Massachusetts corporation. *Id*. at 92.

Finally there is *Donatelli*, which, though it involves an unincorporated association, is often used by the First Circuit as a comparison for international corporate defendants. The First Circuit uses *Donatelli* as a high-water mark for multiple contacts which are still insufficient to warrant general jurisdiction. *See, e.g., Swiss Am. Bank*, 274 F.3d at 620 (comparing the contacts of international corporate defendant at bar with the contacts of defendant in *Donatelli*, and finding that defendant in *Donatelli* had greater contacts, and because no general jurisdiction was warranted in *Donatelli*, none should be warranted in the case at bar); *Noonan*, 135 F.3d at 93 (using similar analysis to find that general jurisdiction over international corporate defendant was not warranted). In *Donatelli*, defendant's contacts with the forum included: (1) selling its products with its logo in state; (2) for ten years providing league officials at exhibition games held in-forum; (3) telecasting games into the forum; and (4) sending scouts to the forum to make and file reports on various amateur hockey players playing in state. *Donatelli v. Nat'l Hockey League*, 708 F. Supp. 31, 35-36 (D.R.I. 1989), *rev'd on other grounds*, 893 F.2d 459 (1st Cir. 1990).

As these cases make clear, "continuous and systematic" contacts is a high threshold, and one that Amgen cannot meet in its quest for jurisdiction over Roche Germany, which has far fewer contacts with Massachusetts than any of the defendants described in the cases above, and as to whom each Court refused to exercise jurisdiction. Accordingly, the Court should dismiss the complaint against Roche Germany with prejudice.

**2.    The U.S. Affiliate's Sending Product Into Massachusetts Is Insufficient To Warrant Exercising Jurisdiction Over Roche Germany**

A parent corporation otherwise lacking continuous and systematic contacts may have the contacts of its subsidiary attributed as its own **only** if the "subsidiary enters the forum state as an agent for the parent, or in circumstances where the parent is exercising unusual hegemony over the subsidiary's operations . . . or where the subsidiary is a separate entity in name alone . . . ." *Donatelli*, 893 F.2d at 466. In determining when it may be appropriate to disregard corporate separateness and find personal jurisdiction over an international corporation based on its subsidiary's contacts, the federal standard considers: "(1) whether the parent and the subsidiary ignored the independence of their separate operations, (2) whether some fraudulent intent existed on the principals' part, and (3) whether a substantial injustice would be visited on the proponents of veil piercing should the court validate the corporate shield." *Pleasant St. 1*, 960 F.2d at 1093. *Pleasant St. 1* is often interpreted by district courts to require a finding of fraud on the parent corporation in order to pierce and acquire personal jurisdiction based on the acts of its subsidiary. *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298, 314 (D. Mass. 2004) (Saris, J.) (noting "subsequent cases have construed the rule set forth in *Pleasant St. I* to mean that in th[e 1st] Circuit in a federal question case, 'personal jurisdiction cannot be exercised over a foreign company through a corporate veil-piercing theory absent a showing of fraud'") (citing *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998); *see also Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921, 925 (D. Mass. 1994) (Young, C.J.) (in order to pierce the corporate veil to exercise personal jurisdiction, there must be a showing that, *inter alia*, "the principal had some fraudulent intent in its modus operandi.")). Though it is possible to attribute a subsidiary's contacts to its parent, Massachusetts cases require plaintiffs to overcome a deliberately high evidentiary hurdle. *See De Castro v. Sanifill Inc.*, 198

F.3d 282, 283-84 (1st Cir. 1999) (stating to establish personal jurisdiction over the parent, based on the acts of a subsidiary, a party must produce "*strong and robust*" evidence of control by the parent company over the subsidiary, rendering the latter a "mere shell") (emphasis added); *In re Lupron*, 245 F. Supp. 2d 280, 298 (D. Mass. 2003) (Stearns, J.) (holding no jurisdiction over foreign parent corporation in Massachusetts and stating "[e]ven where a non-resident parent owns the controlling share of a subsidiary doing business in Massachusetts, personal jurisdiction does not exist unless the *stringent* Massachusetts veil-piercing test is satisfied") (emphasis added).  In fact, in one of the few actions where a court found jurisdiction, the Court noted that plaintiffs "have a fairly high hurdle to clear in order to establish that the actions of [the parent corporation] should be attributed to [the subsidiary]" because "[t]he First Circuit has 'suggested a significantly heightened standard for the exercise of personal jurisdiction, based exclusively on veil-piercing factors, over a foreign defendant, including a showing of fraud.'"  *In re Lernout*, 337 F. Supp. 2d at 313-14.  There, the defendant's subsidiary was clearly its agent because: (1) the subsidiary acted solely on behalf of the parent; (2) it was set up exclusively to carry out the business of the parent; (3) it had the authority and ability to bind the parent; and (4) the parent's management exercised significant decision making powers over the subsidiary.  *Id.* at 315-16.

None of these is true in the instant action.  Unlike the above cases, Roche Germany is **not** the parent of the U.S. Defendant.  Roche Germany regularly cooperates with but does not exercise control over the U.S. Defendant, and this cooperation involves merely compliance with international drug safety laws, standards, and regulations as required by the FDA.  Meisiek Decl. at ¶ 18.  Roche Germany is a separate and distinct entity from the U.S. Defendant (*Id.* at ¶ 4), having corporate officers and a board of directors separate from the U.S. Defendant, and the

directors of Roche Germany meet separately from the board of the U.S. Defendant (*Id.* at ¶ 5); there are no interlocking board members between the U.S. Defendant and Roche Germany. *Id.* Roche Germany maintains corporate records (including directors' minutes, by-laws, and regulations) and financial and accounting books and records separately from the U.S. Defendant. *Id.* at ¶ 6. Roche Germany does not pay the salaries or other day-to-day expenses of the U.S. Defendant, and no officer, director or employee of Roche Germany is a signatory to any bank account of the U.S. Defendant. *Id.* at ¶ 7. Further, Roche Germany is not a signatory to any U.S. Defendant bank account, including any bank account in Massachusetts, and the U.S. Defendant does not have the power to bind Roche Germany. *Id.* at ¶ 8. Significantly, Roche Germany neither labels nor controls the U.S. Defendant's labeling of the drug at issue in the United States. *Id.* at ¶ 17. Plainly, there is no agency relationship between Roche Germany and the U.S. Defendant. In short, the actions of one affiliate simply cannot be imputed to another, and the facts are more than sufficient to prevent an assertion of personal jurisdiction over Roche Germany.

### 3.    General Jurisdiction Over Roche Germany Fails To Comport With Due Process

Even if Amgen could show that Roche Germany had "continuous and systematic contacts," which Amgen can not, Roche Germany is still not subject to personal jurisdiction because each of the "gestalt factors" are either neutral or "tip the constitutional balance" in favor of finding that jurisdiction **does not comport with due process** and "traditional notions of 'fair play and substantial justice.'" *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (Fed. Cir. 1996) (citing *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 320 (1945)). For the first gestalt factor -- the burden of appearing -- the defendant must demonstrate some kind of "special or unusual

burden" beyond the ordinary inconvenience which comes from litigating in a foreign jurisdiction. *Sawtelle,* 70 F.3d at 1395. This is not the usual case of a defendant litigating an action from one state to another. Here, Roche Germany's "center of gravity," Mannheim Germany, is such an appreciable distance away, it renders Roche Germany's burden undue and substantial. *See Ticketmaster,* 26 F.3d at 210 (1st Cir. 1994) (stating "most of the cases that have been dismissed on grounds of unreasonableness are cases in which the defendant's center of gravity, be it place of residence or place of business, was located at an appreciable distance from the forum") (citing *Asahi,* 480 U.S. at 114 (Japanese defendant sued in California); *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1488-90 (9th Cir. 1993) (Swedish defendant sued in California); *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 852 (9th Cir. 1993) (Filipino defendant sued in Washington)); *but see In re Lernout,* 337 F. Supp. 2d at 318 (holding because jurisdiction over a Belgium defendant was not shown to be "unusual" this rendered the first gestalt factor not meaningful, or neutral). The burden on Roche Germany is even more pronounced in light of the language differences between Germany and the United States.

For the second factor, the forum state's adjudicatory interest, "[t]he purpose of [this] inquiry is not to *compare the* forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." *Sawtelle,* 70 F.3d at 1395 (emphasis in original). The First Circuit has noted several times that where no tortious injury has occurred within its borders the state has no demonstrable injury. *See*, *e.g., Sawtelle,* 70 F.3d at 1395 (holding this factor militated against finding jurisdiction when defendant's alleged negligent acts occurred outside the border); *Donatelli,* 893 F.3d at 472 ("apart from a generalized concern for the rights of its own domiciliaries, the [forum] state has no real interest in adjudicating the controversy").

Here, Amgen does not, and can not allege any infringing activity has occurred in Massachusetts; Roche Germany has caused no harm here. Further, neither Amgen nor Roche Germany is a domiciliary of Massachusetts, leaving the state interest utterly lacking even "a generalized concern for the rights of its own domiciliary." In short, Massachusetts has no interest in adjudicating this dispute, and thus this factor weighs in favor of Roche Germany and against exercising jurisdiction.

Third, while a plaintiff's interest in obtaining convenient relief has been "accorded a degree of deference" in the First Circuit, *see Sawtelle*, 70 F.3d at 1395, this deference alone cannot overcome the paucity of Roche Germany's contacts, the large burden that would be levied on Roche Germany to litigate here, and the lack of interest that Massachusetts has in adjudicating this case. *See Ticketmaster*, 26 F.3d at 210 (stating the weaker the plaintiff's showing of the relatedness and purposeful availment factors "the less a defendant need show in terms of unreasonableness to defeat jurisdiction").

Fourth, the administration of justice factor measures the judiciary's goal of "obtaining the most effective resolution of the controversy." *Steir v. Girl Scouts of the USA*, 218 F. Supp. 2d 58, 64 (D.N.H. 2002). "Courts often find that this factor does not weigh in either direction." *Id.* at 65 (citing *Ticketmaster*, 26 F.3d at 211). Here, this factor too militates against extending jurisdiction over Roche Germany. Amgen may still have its day in court against the U.S. Defendant, which does not dispute personal jurisdiction. There is no compelling reason to stretch the bounds of due process to include Roche Germany when the action would be largely duplicate of Amgen's suit against the proper party: the U.S. Defendant. Inclusion of Roche Germany would amount to a purposeless, inefficient expenditure of judicial and party resources,

when Amgen can fully adjudicate whatever rights it may possess against the appropriate U.S. defendant.

The fifth gestalt factor concerns pertinent policy arguments, and sovereignty considerations. The Supreme Court has stated that a reasonableness analysis "calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction" by the court. *See Asahi*, 480 U.S. at 115 (emphasis omitted). As First Circuit courts have noted many times, the United States has an interest in protecting foreign corporations, and their corporate form from an undue extension of jurisdiction. *See, e.g., Noonan,* 135 F.3d at 93 (stating the court "must exercise even greater care before exercising personal jurisdiction over foreign nationals" beyond the "stringent" requirements for finding general jurisdiction over U.S. parties); *In re Lernout*, 337 F. Supp. 2d at 314 (stating "[t]he First Circuit has 'suggested a significantly heightened standard for the exercise of personal jurisdiction, based exclusively on veil-piercing factors, over a foreign defendant). Roche Germany is deliberately removed from a business relationship with the United States and has a separate U.S. affiliate, headquartered in Indianapolis, which handles such matters. If the court chooses to grant jurisdiction over Roche Germany it likely will have an undue chilling effect on future business dealings within the United States, and particularly Massachusetts, by international businesses. Indeed, given Roche Germany's minimal contacts with Massachusetts, forcing it to defend against an action in Massachusetts will only serve to teach it, and other foreign entities, that working with U.S. partners in any state is too great a risk, even in the absence of either wrongdoing or minimum due process contacts. Where, as here, Roche Germany has had virtually no dealings in Massachusetts, and where it could not have foreseen

being haled into court, this factor must also militate against the constitutionality of finding personal jurisdiction, and accordingly jurisdiction should not be exercised over it.

**B.    Specific Jurisdiction Does Not Exist Over Roche Germany.**

To prove specific jurisdiction, a plaintiff must meet three tests. First, that the "contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." *United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 621 (1st Cir. 2001). The purposeful availment inquiry is concerned with the defendant's intentions. *Id.* at 623-24. The court must ask whether the defendant purposefully and voluntarily directed its activity within the forum, so that it "should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Id.* at 624. Second, that the claim "directly relates to or arises out of the defendant's contacts with the forum." *Id.* at 620. Here, plaintiff must prove that there is a nexus between defendant's in-forum contacts and plaintiff's cause of action. *Id.* at 621. And finally third, plaintiff must demonstrate that the exercise of jurisdiction comports with due process; whether the overall reasonableness of an exercise of jurisdiction is appropriate in light of "fundamental fairness." *Id.*

Amgen fails all three tests. First, Amgen can not prove that Roche Germany "purposely availed itself to the benefits and protections afforded by the forum's laws." *Id.* at 621. While Roche Germany manufactures the drug at issue in Germany, it does not send the drug to Massachusetts, rather, the drug is sent to the U.S. Defendant, in New Jersey. Miesiek Decl. at ¶ 20. After the drug leaves Roche Germany's hands, it has no control where the U.S. Defendant distributes it. *Id.* Additionally, Roche Germany's sole human contact with Massachusetts is the intermittent dispatch of employees, for one or two days, to evaluate potential licensing and research co-operations. *Id.* at ¶ 19. These are not contacts which create any claim by Amgen.

These are not contacts demonstrating a purposeful availment of the benefits of Massachusetts commerce. These are not contacts providing Roche Germany with any benefit for which it should now expect to be haled into a Massachusetts court. And of course, these are not contacts upon which any fair reading of the law would permit jurisdiction over Roche Germany.

Second, this Court cannot exercise specific personal jurisdiction over Roche Germany because Amgen cannot meet its burden of establishing that its claims arose out of any forum-related activity by Roche Germany. Roche Germany conducts *no* CERA-related business in Massachusetts. Roche Germany exercises no control where the U.S. Defendant distributes the drug. Meisiek Decl. at ¶ 20. Roche Germany conducts merely limited licensing or research and development agreements with Massachusetts partners (*Id*. at ¶ 14), and dispatches employees for intermittent visits for purposes completely unrelated to the drug in issue.

This Court recently **denied** jurisdiction where the defendant patentee had far more specific negotiation and licensed-based forum contacts than Roche Germany, deciding that those acts were insufficient to "arise out of" the action. In *Measurement Computing Corp. v. General Patent Corp. International*, 304 F. Supp. 2d 176, 181-82 (D. Mass. 2004) (Young, C.J.), this Court held that communications, negotiations and the signing of license agreements by the patentee with in-forum companies, though meeting the "purposefully directed" prong of specific jurisdiction, failed the "arises out of or relates to" prong. The patentee, a defendant to a declaratory judgment for non-infringement action, had licensed technology relevant to the suit to in-forum companies and sent letters to the plaintiff threatening an infringement suit. *Id*. at 178. This Court ruled that the declaratory judgment action could not be construed to arise out of the correspondences, negotiations or signing of the license agreements because the nonexclusive license agreements did not obligate the patentee to prosecute an infringement action in the

forum. Without an obligation by the patentee to bring suit, this Court held no nexus existed between the license agreements and the subsequent declaratory judgment action brought by the plaintiff. *Id*. at 181-82 (citing *Cognex Corp. v. Lemelson Med., Educ. & Research Found., Ltd.*, 67 F. Supp. 2d 5, 9 (D. Mass. 1999) (Gorton, J.) (concluding defendant's licenses had only a *de minimis* connection with the infringement notices sent to the plaintiff)).

Unlike in *Measurement*, Roche Germany's few Massachusetts license agreements are not even related to the drug at issue in this suit. If a patentee's in-forum license agreements covering patents at issue in the suit are insufficiently related to grant personal jurisdiction, as this Court so held, then logically this Court must find that Roche Germany's license and research and development agreements, which have nothing whatsoever to do with the patents in suit, are unrelated to Amgen's action and are thus outside the "arising out of" rubric. Furthermore the intermittent visits by Roche Germany's employees had no relationship at all with the drug in suit but rather evaluated potential licensing and research co-operations entirely unrelated to the drug at issue. Roche Germany's contacts fail to relate to or provide a nexus to Amgen's action regarding infringement and can not form a basis for personal jurisdiction.

Amgen may still have its day in court, as the U.S. Defendant does not dispute jurisdiction, and indeed, it is the only proper defendant as it is the only entity engaging in any activities in the U.S. in respect of this drug. But it should not be allowed to hale the unsuspecting Roche Germany into a court where is has no expectation of jurisdiction, derives little or no benefit from the state, and has virtually no contacts.

Amgen itself must recognize its claims' deficiencies because it has not made a single specific allegation against Roche Germany in respect of any act outside of Massachusetts having an effect inside of Massachusetts. Amgen's complaint is a mere lumping of conclusory

allegations against both U.S. and non-U.S. entities, and even those are unpersuasive. No claim can "arise out of" any contact by Roche Germany in this forum, because Roche Germany's only contacts are unrelated and *de minimis*.

Further, specific personal jurisdiction cannot attach here and an attempt to exercise such jurisdiction would be a violation of due process.

## CONCLUSION

For the reasons stated above, Roche Germany respectfully requests that the Court dismiss it from this action with prejudice for lack of personal jurisdiction.


DATED:   Boston, Massachusetts
         April 11, 2006

                              F. HOFFMANN-LA ROCHE LTD,
                              ROCHE DIAGNOSTICS GMBH, and
                              HOFFMANN-LA ROCHE INC.

                              By its attorneys,

                              /s/  Julia Huston
                              Lee Carl Bromberg (BBO# 058480)
                              Julia Huston (BBO# 562160)
                              Keith E. Toms (BBO# 663369)
                              BROMBERG & SUNSTEIN LLP
                              125 Summer Street
                              Boston, MA 02110
                              Tel. (617) 443-9292
                              jhuston@bromsun.com

Of Counsel:

Leora Ben-Ami
Patricia A. Carson
Thomas F. Fleming
Howard Suh
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.


/s/  Julia Huston

03099/00501  485280.1