UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | CIVIL ACTION No.: 05-CV-12237WGY |
| F. HOFFMANN-LA ROCHE LTD, ) | |
| ROCHE DIAGNOSTICS GMBH, ) | |
| AND HOFFMANN-LA ROCHE INC., ) | |
| ) | |
| Defendants ) | |
| ) | |

**DEFENDANT F. HOFFMANN-LA ROCHE LTD.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

    Lee Carl Bromberg (BBO# 058480)
    Julia Huston (BBO# 562160)
    Keith E. Toms (BBO# 663369)
    BROMBERG & SUNSTEIN LLP
    125 Summer Street
    Boston, MA 02110
    Tel. (617) 443-9292

    Leora Ben-Ami
    Patricia A. Carson
    Thomas F. Fleming
    Howard Suh
    Peter Fratangelo (BBO# 639775)
    KAYE SCHOLER LLP
    425 Park Avenue
    New York, NY 10022
    Tel. (212) 836-8000

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

LEGAL ARGUMENT ............................................................................................................... 2

    A.    General Jurisdiction Does Not Exist Over Roche Switzerland. ....................................... 2

        1.    F. Hoffmann-La Roche Ltd.'s Contacts Are Insufficient To Warrant Jurisdiction ........................................................................................................ 3

        2.    A U.S. Affiliate's Sending Product To Massachusetts Is Insufficient To Warrant Exercising Jurisdiction Over Roche Switzerland ................................... 7

        3.    General Jurisdiction Over Roche Switzerland Fails To Comport With Due Process ........................................................................................................... 9

    B.    Specific Jurisdiction Does Not Exist Over Roche Switzerland ...................................... 13

CONCLUSION ......................................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993) .................................................................................... 10

*Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102 (1987) ..................................... 5, 12

*Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671 (1st Cir. 1992) ........................................ 2

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) .................................................................................. 10

*De Castro v. Sanifill Inc.*, 198 F.3d 282 (1st Cir. 1999) ............................................ 7-8

*Donatelli v. Nat'l Hockey League*, 708 F. Supp. 31 (D.R.I. 1989), *rev'd on other
  grounds*, 893 F.2d 459 (1st Cir. 1990) .................................................................. 6

*Donatelli v. Nat'l Hockey League*, 893 F.2d 459 (1st Cir. 1990) ................................. 3, 6, 7, 11

*F. Hoffmann-La Roche Ltd. v. Super. Ct.*, 130 Cal. App. 4th 782 (Cal. Ct. App. 2005) ................ 9

*In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298 (D. Mass. 2004) .................. 7, 8, 10, 12

*In re Lupron*, 245 F. Supp. 2d 280 (D. Mass. 2003) .................................................. 8

*Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945) ............................................... 10

*Marine Charter & Storage LTD., Inc. v. Denison Marine, Inc.*,
  701 F. Supp. 930 (D. Mass. 1988) ......................................................................... 2

*Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304
  (1st Cir. 1998) ......................................................................................................... 7

*Mass. School of Law at Andover, Inc. v. Am. Bar Assoc.*, 142 F.3d 26 (1st Cir. 1998) ................. 2

*Noonan v. Winston Co.*, 135 F.3d 85 (1st Cir. 1998) .................................................. 5, 6, 12

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (Fed. Cir. 1996) ...................................... 10

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284 (1st Cir. 1999) ............ 2

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) ........................................................ 3, 10, 11

*Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921 (D. Mass. 1994) ........................................ 7

*Steir v. Girl Scouts of the USA*, 218 F. Supp. 2d 58 (D.N.H. 2002) ............................................. 11

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) .............................. 3, 10, 11,12

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080
 (1st Cir. 1992) .................................................................................................................. 2, 7, 8

*United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610 (1st Cir. 2001) ................................. 3, 5, 6,13

## INTRODUCTION

Plaintiff Amgen Inc. complains of the possibility of future patent infringement by defendants F. Hoffmann-La Roche Ltd., Roche Diagnostics GmbH and Hoffmann-La Roche Inc. But while Amgen's premature claims are the subject of defendant Hoffmann-La Roche Inc.'s separate motion before this court, this motion addresses Amgen's attempt to reach beyond its grasp by inappropriately including F. Hoffmann-La Roche Ltd. (hereinafter referred to as "Roche Switzerland"), a European entity that is not subject to Massachusetts jurisdiction. The sole allegation against Roche Switzerland is self serving, conclusory boilerplate, stating only that "[o]n information and belief, [Roche Switzerland] ... transact[s] business within the District of Massachusetts and/or [is] otherwise subject to the jurisdiction of this Court." Complaint at ¶ 5. Amgen then simply lumps Roche Switzerland with Hoffmann-La Roche Inc., a New Jersey corporation, stating that all defendants "are hereinafter referred to individually and collectively as "Roche". *Id*. at ¶ 6. (Hoffmann-La Roche Inc. hereinafter referred to as the "U.S. Defendant"). Not a single paragraph, phrase or word, is addressed specifically or directly to Roche Switzerland, or differentiates it from the U.S. Defendant, in the entire complaint. However, Roche Switzerland is not authorized to do business in the State of Massachusetts, does not maintain offices or sales forces in Massachusetts and during the relevant time period is at best minimally involved in Massachusetts commerce through a very limited number of licensing contracts and clinical trial sponsorships with Massachusetts partners, unrelated to the drugs at issue. Moreover, Roche Switzerland did not place the subject drug into the stream of commerce in Massachusetts, or cause any specific harm or infringement in Massachusetts. Further, Amgen would suffer no prejudice should the court dismiss Roche Switzerland, as Amgen may have its day in court to fully litigate whatever rights it may possess against the U.S. Defendant.

Accordingly, this Court possesses neither general nor specific personal jurisdiction over Roche Switzerland, and it should be dismissed with prejudice.

## LEGAL STANDARD FOR MOTION TO DISMISS

"On a motion to dismiss for want of *in personam* jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Mass. School of Law at Andover, Inc. v. Am. Bar Assoc.*, 142 F.3d 26, 34 (1st Cir. 1998). While the *prima facie* standard is liberal, the court need not "credit conclusory allegations or draw farfetched inferences." *Id*. Plaintiffs may not rest solely on the pleadings to allege personal jurisdiction, but must make "properly supported proffers of evidence." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992); *see also Marine Charter & Storage LTD., Inc. v. Denison Marine, Inc.*, 701 F. Supp. 930 n.1 (D. Mass. 1988) (Young, C.J.) ("the Court notes it is at best dubious whether information not based on personal knowledge can be properly considered by a court determining whether personal jurisdiction exists.").

## LEGAL ARGUMENT

**A.   General Jurisdiction Does Not Exist Over Roche Switzerland.**

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to suit, in forum state." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) ("*Pleasant St. 1*"). In determining whether the exercise of jurisdiction is warranted, courts focus on the "quality and quantity of the potential defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). Measuring continuous and systematic contacts is "a fact-specific evaluation" which compares the facts of a case at bar against precedents with similar

facts.  *United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 620 (1st Cir. 2001) (denying jurisdiction after a comparison with earlier cases showed lesser contacts existed in the case at bar).

The plaintiff, if capable of proving "continuous and systematic contacts," must then also prove that exercising jurisdiction would comport with due process by demonstrating "that the exercise of jurisdiction would be reasonable after assessing certain 'gestalt factors.'" *Id.* at 619 (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990) (discussing the five "gestalt factors" used to determine fundamental fairness of exercising jurisdiction)). These "gestalt factors" include: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995) (discussing the five "gestalt factors" used to determine fundamental fairness of exercising jurisdiction).  Further, the weaker the plaintiff's showing of relatedness and purposeful availment by defendant, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

### 1. F. Hoffmann-La Roche Ltd.'s Contacts Are Insufficient To Warrant Jurisdiction

It is undisputed that F. Hoffmann-La Roche Ltd. is "a foreign corporation existing under the laws of Switzerland with its principal place of business in Basel, Switzerland." Complaint at ¶ 2. Roche Switzerland does not have substantial or "continuous and systematic" contacts with Massachusetts.  Roche Switzerland does not promote, market, distribute, sell, or place into the

stream of commerce in Massachusetts *any* of its pharmaceuticals. *See*, Declaration of Robert Ferraro, at ¶ 17 filed herewith ("Ferraro Decl."). Indeed, Roche Switzerland is not approved by the Food and Drug Administration to manufacture, sell, or market any drug or ingredient comprising any drug at issue in this action, and it does not do so. *Id.* at ¶ 18. Roche Switzerland does not conduct business within the State of Massachusetts and is not now and never has been authorized to conduct business in Massachusetts. Id. at ¶ 9. Roche Switzerland has never maintained an office or agent in Massachusetts (*Id.* at ¶10); has not owned, used, possessed, or held a mortgage or other lien on any real property in Massachusetts (*Id.* at ¶11); has not engaged in solicitation or service activities within Massachusetts (*Id.* at ¶12); has not breached any contract in Massachusetts by failing to perform acts required by the contract to be performed in Massachusetts (*Id.* at ¶13); and has not engaged in substantial activity within Massachusetts (*Id.* at ¶14). No Massachusetts court has ever exercised jurisdiction over Roche Switzerland. Id. at ¶ 15. Roche Switzerland currently maintains a very limited number of clinical trial sponsorships and licensing agreements with Massachusetts partners, unrelated to the drug at issue. *Id.* at ¶16. Roche Switzerland's minimal and sole physical contact with Massachusetts occurs from visits by some employees to the U.S., including Massachusetts, for short trips of a few days in any one state - for the purpose of evaluating technology and biotechnology for potential in licensing. *Id.* at ¶ 21. Roche Switzerland manufactures no drug at issue here. Id. at ¶ 22. Roche Switzerland has no control over where the drug in New Jersey is sent or what happens to it. Id. Roche Switzerland does not direct distribution of the drug to any place, certainly not Massachusetts; that control rests exclusively with the U.S. Defendant. *Id*. Roche Switzerland thus has virtually no contacts with Massachusetts, certainly well short of "substantial, systematic and continuous" and accordingly, the complaint should be dismissed as to it with prejudice.

This very Court has recently denied jurisdiction on such a motion where the defendant had far more contacts with the forum state than the instant defendant. In *Swiss American Bank*, plaintiff proffered that the foreign defendant bank: (1) placed twelve advertisements in a magazine in-forum; (2) subscribed to Visa International, an in-forum credit card company, and entered into a license agreement with MasterCard International, an in-forum company; (3) was an appellant in a lawsuit in-forum; (4) posted information about itself on three internet sites; (5) entered into a contract to provide ATM support services to an in-forum company; (6) entered into a joint venture with an in-forum bank; (7) loaned $350,000 to an in-forum company to run an internet service; (8) had banking relationships and accounts with four banks; and (9) had a business relationship with an in-forum resident money launderer. All these activities occurred over approximately an eleven year span. *United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 620 (1st Cir. 2001). Even so, this Court held the level of contact was "limited and intermittent" and insufficient to meet the *prima facie* standard of "continuous and systematic." *Id*. at 620.

Likewise in *Noonan v. Winston Co.*, 135 F.3d 85 (1st Cir. 1998), the Court ruled there were insufficient minimum contacts to authorize general jurisdiction over the international corporate defendant. There the Court stated it "must exercise even greater care before exercising personal jurisdiction over foreign nationals" beyond the already "stringent" requirements for finding general jurisdiction over United States parties. *Id.* at 93 (citing *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102 (1987)). The Court held there were insufficient contacts to warrant general jurisdiction, despite the international corporate defendant's contacts such as (1) employees regularly soliciting business from a corporation located in-forum; (2) a two-year period where defendants "telephoned, faxed and wrote" a local corporation to secure book orders; (3) at least two occasions of defendant's employees traveling to Massachusetts with "the

intention of developing a relationship with a local corporation"; (4) hosting Massachusetts corporate employees at foreign office to negotiate orders; and (5) garnering approximately $585,000 of orders from a Massachusetts corporation. *Id*. at 92.

Finally there is *Donatelli*, which, though it involves an unincorporated association, is often used by the First Circuit as a comparison for international corporate defendants. The First Circuit uses *Donatelli* as a high-water mark for multiple contacts which are still insufficient to warrant general jurisdiction. *See, e.g., United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 620 (1st Cir. 2001) (comparing the contacts of international corporate defendant at bar with the contacts of defendant in *Donatelli*, and finding that defendant in *Donatelli* had greater contacts, and because no general jurisdiction was warranted in *Donatelli*, none should be warranted in the case at bar); *Noonan*, 135 F.3d at 93 (using similar analysis to find that general jurisdiction over international corporate defendant was not warranted). In *Donatelli*, defendant's contacts with the forum included: (1) selling its products with its logo in state; (2) for ten years providing league officials at exhibition games held in-forum; (3) telecasting games into the forum; and (4) sending scouts to the forum to make and file reports on various amateur hockey players playing in state. *Donatelli v. Nat'l Hockey League*, 708 F. Supp. 31, 35-36 (D.R.I. 1989), *rev'd on other grounds*, 893 F.2d 459 (1st Cir. 1990).

As these cases make clear, "continuous and systematic" contacts is a high threshold, and one that Amgen cannot meet in its quest for jurisdiction over Roche Switzerland, which has far fewer contacts with Massachusetts than any of the defendants described in the cases above, and as to whom each Court refused to exercise jurisdiction. Accordingly, the Court should dismiss the complaint against Roche Switzerland with prejudice.

## 2. A U.S. Affiliate's Sending Product To Massachusetts Is Insufficient To Warrant Exercising Jurisdiction Over Roche Switzerland

A parent corporation otherwise lacking continuous and systematic contacts may have the contacts of its subsidiary attributed as its own **only** if the "subsidiary enters the forum state as an agent for the parent, or in circumstances where the parent is exercising unusual hegemony over the subsidiary's operations . . . or where the subsidiary is a separate entity in name alone . . . ." *Donatelli*, 893 F.2d at 466. In determining when it may be appropriate to disregard corporate separateness and find personal jurisdiction over an international corporation based on its subsidiary's contacts, the federal standard considers: "(1) whether the parent and the subsidiary ignored the independence of their separate operations, (2) whether some fraudulent intent existed on the principals' part, and (3) whether a substantial injustice would be visited on the proponents of veil piercing should the court validate the corporate shield." *Pleasant St. 1*, 960 F.2d 1080 at 1093. *Pleasant St. 1* is often interpreted by district courts to require a finding of fraud on the parent corporation in order to pierce and acquire personal jurisdiction based on the acts of its subsidiary. *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298, 314 (D. Mass. 2004) (noting "subsequent cases have construed the rule set forth in *Pleasant St. I* to mean that in th[e 1st] Circuit in a federal question case, 'personal jurisdiction cannot be exercised over a foreign company through a corporate veil-piercing theory absent a showing of fraud'") (citing *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998); *see also Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921, 925 (D. Mass. 1994) (Young, C.J.) (in order to pierce the corporate veil to exercise personal jurisdiction, there must be a showing that, *inter alia*, "the principal had some fraudulent intent in its modus operandi.")). Though it is possible to attribute a subsidiary's contacts to its parent, Massachusetts cases require plaintiffs to overcome a deliberately high evidentiary hurdle. *See De Castro v. Sanifill Inc.*, 198

F.3d 282, 283-84 (1st Cir. 1999) (stating to establish personal jurisdiction over the parent, based on the acts of a subsidiary, a party must produce "*strong and robust*" evidence of control by the parent company over the subsidiary, rendering the latter a "mere shell") (emphasis added); *In re Lupron*, 245 F. Supp. 2d 280, 298 (D. Mass. 2003) (Stearns, J.) (holding no jurisdiction over foreign parent corporation in Massachusetts and stating "[e]ven where a non-resident parent owns the controlling share of a subsidiary doing business in Massachusetts, personal jurisdiction does not exist unless the *stringent* Massachusetts veil-piercing test is satisfied") (emphasis added). In fact, in one of the few actions where a court found jurisdiction, the Court noted that plaintiffs "have a fairly high hurdle to clear in order to establish that the actions of [the parent corporation] should be attributed to [the subsidiary]" because "[t]he First Circuit has 'suggested a significantly heightened standard for the exercise of personal jurisdiction, based exclusively on veil-piercing factors, over a foreign defendant, including a showing of fraud.'" *In re Lernout*, 337 F. Supp. 2d at 313-14.   There, the defendant's subsidiary was clearly its agent because: (1) the subsidiary acted solely on behalf of the parent; (2) it was set up exclusively to carry out the business of the parent; (3) it had the authority and ability to bind the parent; and (4) the parent's management exercised significant decision making powers over the subsidiary. *Id.* at 315-16.

None of these are true in the instant action. Roche Switzerland is **not** the parent of the U.S. Defendant. Roche Switzerland regularly cooperates with but does not exercise control over the U.S. Defendant, and this cooperation involves merely compliance with international drug safety laws, standards, and regulations as required by the FDA. Ferraro Decl. at ¶ 20. Indeed, as a California court recently found, "with respect to the day-to-day operations of the U.S. Roche Defendants – in terms of management of the manufacture, sales, and distribution of

31238000.DOC                                                8

pharmaceutical or chemical products, or the associated auditing or financial aspects of this business – there [is] a void of evidence of control exerted" by Roche Switzerland over the U.S. Defendant. *See F. Hoffmann-La Roche Ltd. v. Super. Ct.*, 130 Cal. App. 4th 782, 800 (Cal. Ct. App. 2005). Roche Switzerland is separate and distinct from the U.S. Defendant, having corporate officers and a board of directors separate from the U.S. Defendant, and the directors of Roche Switzerland meet separately from the board of the U.S. Defendant; there are no interlocking board members between the U.S. Defendant and Roche Switzerland. *Id.* at ¶ 4-5. Roche Switzerland maintains corporate records (including directors' minutes, by-laws, and regulations) and financial and accounting books and records separately from the U.S. Defendant. *Id.* at ¶ 6. Roche Switzerland does not pay the salaries or other day-to-day expenses of the U.S. Defendant, and no officer, director or employee of Roche Switzerland is a signatory to any bank account of the U.S. Defendant. *Id.* at ¶ 7. Further, Roche Switzerland is not a signatory to any U.S. Defendant bank account, including any bank account in Massachusetts, and the U.S. Defendant does not have the power to bind Roche Switzerland. *Id.* at ¶ 8. Significantly, Roche Switzerland neither labels nor controls the U.S. Defendant's labeling of the drug at issue in the United States. *Id.* at ¶ 19. Plainly, there is no agency relationship between Roche Switzerland and the U.S. Defendant. In short, the actions of an affiliate simply cannot be imputed to its European sister, and the facts are more than sufficient to prevent an assertion of personal jurisdiction over Roche Switzerland.

### 3. General Jurisdiction Over Roche Switzerland Fails To Comport With Due Process

Even if Amgen could show that Roche Switzerland had "continuous and systematic contacts," which Amgen can not, Roche Switzerland is still not subject to personal jurisdiction

because each of the "gestalt factors" are either neutral or "tip the constitutional balance" in favor of finding that jurisdiction does not comport with due process and "traditional notions of 'fair play and substantial justice.'" *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (Fed. Cir. 1996) (citing *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 320 (1945)). For the first gestalt factor -- the burden of appearing -- the defendant must demonstrate some kind of "special or unusual burden" beyond the ordinary inconvenience which comes from litigating in a foreign jurisdiction. *Sawtelle,* 70 F.3d at 1395. This is not the usual case of a defendant litigating an action from one state to another. Here, Roche Switzerland's "center of gravity," Basel Switzerland, is such an appreciable distance away, it renders Roche Switzerland's burden undue and substantial. *See Ticketmaster*, 26 F.3d at 210 (stating "most of the cases that have been dismissed on grounds of unreasonableness are cases in which the defendant's center of gravity, be it place of residence or place of business, was located at an appreciable distance from the forum") (citing *Asahi*, 480 U.S. at 114 (Japanese defendant sued in California); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488-90 (9th Cir. 1993) (Swedish defendant sued in California); *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993) (Filipino defendant sued in Washington)); *but see In re Lernout*, 337 F. Supp. 2d at 318 (holding because jurisdiction over a Belgium defendant was not shown to be "unusual" this rendered the first gestalt factor not meaningful, or neutral). This burden is even more pronounced in light of the language differences between Switzerland and the United States.

For the second factor, the forum state's adjudicatory interest, "[t]he purpose of [this] inquiry is not to *compare the* forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." *Sawtelle,* 70 F.3d at 1395 (emphasis in original). The First Circuit has noted several times that where no tortious injury has occurred within its

borders the state has no demonstrable injury. *See*, *e.g., Sawtelle*, 70 F.3d at 1395 (holding this factor militated against finding jurisdiction when defendant's alleged negligent acts occurred outside the border); *Donatelli*, 893 F.3d at 472 ("apart from a generalized concern for the rights of its own domiciliaries, the [forum] state has no real interest in adjudicating the controversy").

Here, Amgen does not, and can not allege any infringing activity has occurred in Massachusetts; Roche Switzerland has caused no harm here. Further, neither Amgen nor Roche Switzerland is a domiciliary of Massachusetts, leaving the state interest utterly lacking even "a generalized concern for the rights of its own domiciliary." In short, Massachusetts has no interest in adjudicating this dispute, and thus this factor weighs in favor of Roche Switzerland and against exercising jurisdiction.

Third, the plaintiff's interest in obtaining convenient relief has consistently "accorded a degree of deference" in the First Circuit. *Sawtelle*, 70 F.3d at 1395. However this deference alone can not overcome the paucity of Roche Switzerland's contacts, the large burden that would be levied on Roche Switzerland to litigate here and the lack of interest that Massachusetts has in adjudicating this case. *See Ticketmaster*, 26 F.3d at 210 (stating the weaker the plaintiff's showing of the relatedness and purposeful availment factors "the less a defendant need show in terms of unreasonableness to defeat jurisdiction").

Fourth, the administration of justice factor measures the judiciary's goal of "obtaining the most effective resolution of the controversy." *Steir v. Girl Scouts of the USA*, 218 F. Supp. 2d 58, 64 (D.N.H. 2002). "Courts often find that this factor does not weigh in either direction." *Id*. at 65 (citing *Ticketmaster*, 26 F.3d at 211). Here, this factor too militates against holding jurisdiction over Roche Switzerland. Amgen may still have its day in court against the U.S. Defendant, which does not dispute personal jurisdiction. There is no compelling reason to

stretch the bounds of due process to include Roche Switzerland when the action would be largely duplicate of Amgen's suit against the proper party: the U.S. Defendant. Inclusion of Roche Switzerland would amount to a purposeless inefficient expenditure of judicial and party resources, when Amgen can fully adjudicate its rights against the appropriate defendant.

The fifth gestalt factor speaks to any pertinent policy arguments, and sovereignty considerations. The Supreme Court has stated that a reasonableness analysis "calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction" by the court. *See Asahi*, 480 U.S. at 115 (emphasis omitted). As First Circuit courts have noted many times, the United States has an interest in protecting foreign corporations, and their corporate form from an undue extension of jurisdiction. *See, e.g., Noonan,* 135 F.3d at 93 (stating the court "must exercise even greater care before exercising personal jurisdiction over foreign nationals" beyond the "stringent" requirements for finding general jurisdiction over U.S. parties); *In re Lernout*, 337 F. Supp. 2d at 314 (Saris, J.) (stating "[t]he First Circuit has 'suggested a significantly heightened standard for the exercise of personal jurisdiction, based exclusively on veil-piercing factors, over a foreign defendant). Roche Switzerland is deliberately removed from a business relationship with the United States and has a separate U.S. affiliate, headquartered in New Jersey, which handles such matters. If the court chose to grant jurisdiction over Roche Switzerland it likely will have a chilling effect on future business dealings within the United States, and particularly Massachusetts, by international businesses. Indeed, given Roche Switzerland's minimal contacts with Massachusetts, forcing it to defend against an action in Massachusetts will only serve to teach it, and other foreign entities, that working with U.S. partners in any state is too great a risk, even in the absence of either wrongdoing or minimum Constitutional due process contacts. Where, as here, Roche

Switzerland has had virtually no dealings in Massachusetts, and where it could not have foreseen being haled into court, this factor must also militate against the constitutionality of finding personal jurisdiction, and accordingly jurisdiction should not be exercised over it.

**B.  Specific Jurisdiction Does Not Exist Over Roche Switzerland**

To prove specific jurisdiction, a plaintiff must meet three tests.  First, that the claim "directly relates to or arises out of the defendant's contacts with the forum." *United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 620 (1st Cir. 2001).  Here, plaintiff must prove that there is a nexus between defendant's in-forum contacts and plaintiff's cause of action. Id. at 621.  Second, that the "contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." *Id*.  The purposeful availment inquiry is concerned with the defendant's intentions. *Id.* at 623-24.  The court must ask whether the defendant purposefully and voluntarily directed its activity within the forum, so that it "should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Id*. at 624.  And finally third, plaintiff must demonstrate that the exercise of jurisdiction comports with due process; whether the overall reasonableness of an exercise of jurisdiction is appropriate in light of "fundamental fairness." *Id*. at 621.

Amgen fails all three tests.  This Court cannot exercise specific personal jurisdiction over Roche Switzerland because Amgen cannot meet its burden of establishing that its claims arose out of any forum-related activity by Roche Switzerland.  Roche Switzerland conducts *no* CERA-related business in Massachusetts.  Roche Switzerland exercises control neither over the manufacture of the drug nor control where the U.S. Defendant distributes the drug.  Ferraro Decl. at ¶ 22.

Additionally, Roche Switzerland's sole human contact with Massachusetts is the intermittent dispatch of one or two persons, for one or two days, to evaluate potential technology for future licensing. *Id.* at ¶ 21. Specifically, in 2005, 137 employees visited Massachusetts for this purpose. *Id.* These are not contacts which create any claim by Amgen. These are not contacts demonstrating a purposeful availment of the benefits of Massachusetts commerce. These are not contacts providing Roche Switzerland with any benefit for which it should now expect to be haled into a Massachusetts court.

Amgen itself must recognize its claims' deficiencies because it has not made a single specific allegation against Roche Switzerland in respect of any act outside of Massachusetts having an effect inside of Massachusetts. Amgen's complaint is a mere lumping of conclusory allegations against both U.S. and non-U.S. entities, and even those are unpersuasive. No claim can "arise out of" any contact by Roche Switzerland in this forum, because there is no such specific contact.

Specific personal jurisdiction cannot attach here and an attempt to exercise such jurisdiction would be a violation of due process.

## CONCLUSION

For the reasons stated above, Roche Switzerland respectfully requests that the Court dismiss it from this action with prejudice for lack of personal jurisdiction.

DATED: Boston, Massachusetts
April 11, 2006

F. HOFFMANN-LA ROCHE LTD,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE INC.

By its attorneys,

/s/  Julia Huston
Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292
jhuston@bromsun.com

Of Counsel:

Leora Ben-Ami
Patricia A. Carson
Thomas F. Fleming
Howard Suh
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

/s/  Julia Huston

03099/00501 485283.1