# Appendix A

LEXSEE 2005 U.S. DIST. LEXIS 40291

J. J. REIDY & CO., INC., Plaintiff, v. AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION, Defendants.

Civil No. 05-40049-FDS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

*2005 U.S. Dist. LEXIS 40291*

September 27, 2005, Decided
September 27, 2005, Filed

**COUNSEL:** [*1] For J.J. Reidy & Co., Inc, Plaintiff: Thomas J. Conte, Daniel P. Flynn, James P. Hoban, Bowditch & Dewey, LLP, Worcester, MA; Maura A. Greene, Bowditch & Dewey, LLP, Framingham, MA.

For Airwater Corporation, Airwater Patents Corporation, Defendants: Matthew P. Zayotti, Richard B. Kirby, Keegan, Werlin & Pabian, LLP, Boston, MA.

**JUDGES:** F. Dennis Saylor IV, United States District Judge.

**OPINIONBY:** F. Dennis Saylor IV

**OPINION:**

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION IN THE ALTERNATIVE TO TRANSFER VENUE FOR FORUM NON CONVENIENS

SAYLOR, J.

This matter is before the Court on defendants' motion to dismiss for lack of personal jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(2)* and motion in the alternative to transfer venue for forum non conveniens, both filed on June 20, 2005. For the reasons stated below, both motions are denied, and the stay of discovery ordered by the Court on July 19, 2005, is vacated.

**I. Factual Background**

The following are the facts as asserted by the plaintiff.

J. J. Reidy & Co., Inc., is a Massachusetts corporation with a [*2] principal place of business in Holden, Massachusetts. Its President, James J. Reidy, is a Massachusetts resident. For the sake of convenience, both the company and the individual will be referred to as "Reidy."

In February 2003, Universal Communication Systems, Inc. ("UCS"), the parent company of AirWater Corporation ("AirWater") and AirWater Patents Corporation ("AirWater Patents"), contacted Reidy via e-mail. (Reidy Aff. Ex. A) The purpose of the e-mail was to seek to acquire rights to Reidy's United States patents related to a water purification system. (Reidy Aff. P 2).

UCS then contacted Reidy through a series of phone calls and written correspondence, soliciting the plaintiff to enter into a licensing agreement with its wholly-owned subsidiary, AirWater. (Reidy Aff. P 3). Reidy spoke with Michael Zwebner, the CEO of UCS and President of AirWater and AirWater Patents, on an almost-daily basis over the next several months. (*Id.*). Reidy was in Massachusetts during the telephone calls, while Zwebner was in Israel, Miami, Toronto, Los Angeles, the United Kingdom, and New York. (Reidy Aff. P 4). The parties also exchanged frequent e-mails; the e-mails from Zwebner were sent to [*3] Reidy in Massachusetts. (Reidy Aff. P 3).

On March 15, 2003, Zwebner traveled to Boston and negotiated with Reidy concerning a possible agreement as to the patents. (Reidy Aff. P 5). The meeting occurred in Boston, at Zwebner's suggestion. (*Id.*). Sometime late in March, the parties reached an agreement as to the basic terms of what became the Global Manufacturing and Marketing Licensing Agreement (the "Agreement"). Over the next few months, Reidy and Zwebner exchanged e-mail and phone calls frequently, often many times in one day, for the purpose of securing and formalizing the Agreement. (*Id.*). Again, Reidy was in Massachusetts during all such telephone calls, and sent and received e-mails in Massachusetts. (*Id.*).

Sometime in late June of 2003, the parties executed the Agreement in Florida, back-dating it to March 21, 2003. (Reidy Aff. P 7; Zwebner Decl. P 8). Under the subhead-

ing "Construction/Jurisdiction," the Agreement states the following: "Inasmuch as the transactions, which may arise or occur between the parties and/or their principals may cross boundaries of national and or [sic] international jurisdiction, this Agreement shall be construed and interpreted [*4] in Accordance with the laws of the United States of America and the resident state of the Plaintiff." (Zayotti Aff. Ex. A at 15).

After the execution of the Agreement, Zwebner and other representatives of the defendants regularly contacted Reidy in Massachusetts seeking advice and consultation on various matters. (Reidy Aff. P P 8-9). Zwebner and Reidy met again in Boston on July 28, 2003, to discuss technical details regarding the production and design of AirWater products. (Reidy Aff. P 10). AirWater continued to contact Reidy to seek his advice for various lawsuits and issues relating to the products and to make the monthly royalty payments. (Reidy Aff. P P 11-12). On June 25, 2003, AirWater assigned all rights and liabilities under the Agreement to AirWater Patents; Reidy consented to the assignment. (Amended Complaint P P 4-5).

On November 1, 2004, AirWater stopped paying royalties to Reidy. In November and December of 2004, Zwebner and Reidy exchanged several letters regarding the lack of royalty payments. (Reidy Aff. P P 13-15, 17). On December 15, 2004, Reidy sent a Notice of Default to AirWater for alleged nonpayment.

The present lawsuit was filed on December 16, 2004, in [*5] Massachusetts Superior Court against AirWater. Reidy sent another Notice of Default to AirWater Patents on January 13, 2005. On February 11, 2005, AirWater Patents filed suit against Reidy in the Circuit Court for the 11th Judicial District in and for Miami-Dade County, Florida, asserting claims against Reidy for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

On February 16, 2005, Reidy filed a First Amended Complaint, adding AirWater Patents as a party defendant. He then served an original summons and copies of the Civil Action Cover Sheet, Complaint, and First Amended Complaint on the defendants on February 18. On March 7, Reidy filed a Notice of Removal in the Florida action, removing it to the United States District Court for the Southern District of Florida. On March 18, the defendants removed this suit to this Court asserting diversity jurisdiction.

## II. Personal Jurisdiction

### A. Standard of Proof

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendants. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)*. [*6] A district court faced with a motion to dismiss under *Rule 12(b)(2)* may choose among several methods for determining whether the plaintiff has met its burden: the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. *Id. at 50-51* & n.5. The "most conventional" and "most commonly used" of these methods is the "prima facie" standard. *Id. at 51*; *Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)*; *Boit v. Gar-Tec Prods., Inc. 967 F.2d 671, 675 (1st Cir. 1992)*.

Under the prima facie standard, the court is permitted to "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit, 967 F.2d at 675*. The court "must accept the plaintiffs (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Foster-Miller, 46 F.3d at 145*. The court may then consider the "facts put forward by the defendants, to the extent that they are uncontradicted. [*7] " *Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)*. The Court will use this method.

As alleged by the plaintiff, the defendants' contacts with Massachusetts are as follows: (1) Defendants solicited and negotiated the license agreement via e-mail, telephone, and written correspondence directed into Massachusetts, and met with the plaintiff in Boston; (2) Defendants solicited Plaintiff via e-mail and telephone to assign the license agreement; (3) after execution of the Agreement, Defendants met with Plaintiff in Boston for technical assistance regarding the design and production of products, the maintenance of existing patents, and application for additional patents; (4) Defendants frequently requested technical advice from the plaintiff via e-mail and telephone after execution of the Agreement; (5) Defendants contacted Plaintiff regarding several lawsuits involving the parties after execution of the Agreement; (6) Defendants paid monthly royalty payments to Plaintiff in Massachusetts and made various communications relating to those payments; and (7) the terms of the Agreement expressly provide that it should be constructed and interpreted [*8] in accordance with the resident state of the plaintiff. As these allegations are properly supported in the record by the Affidavit of James J. Reidy and the accompanying exhibits, the Court accepts these facts as true in determining whether the plaintiff has made a prima facie showing of personal jurisdiction.

### B. Personal Jurisdiction under the Massachusetts Long-Arm Statute

"To subject a non-resident defendant to its jurisdiction in a diversity case, a court-and for this purpose, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state-must find contacts that, in the aggregate, satisfy the requirements of both the forum state's long-arm statute and the *Fourteenth Amendment.*" *Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)* (citation omitted). The long-arm statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth. . . ." *Mass. Gen. Laws ch. 223A, § 3(a)* [*9] . Therefore, in order for jurisdiction to exist pursuant to *§ 3(a)*, (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549 (1994)*.

In Massachusetts, federal courts "may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" *Daynard, 290 F.3d at 52, quoting "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 280 N.E.2d 423 (1972). See also Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995)* "When a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the . . . constitutional standards."). The Court therefore will analyze the issue under the constitutional requirements.

### C. Personal Jurisdiction under the *Due Process Clause*

#### 1. Standard [*10]

For a court to assert personal jurisdiction, the *Due Process Clause of the Fourteenth Amendment* requires that the defendant have certain minimum contacts with the forum such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*. In a case involving a contract dispute, the court should evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*.

In the present case, plaintiff alleges that the cause of action arises directly out of, or relates to, the defendant's forum-based contacts; therefore, plaintiff is asserting specific personal jurisdiction, rather than general personal jurisdiction, which arises where the defendant has "engaged in continuous and systematic activity, unrelated to the suit, in the foreign state". *Foster-Miller, 46 F.3d at 144*. In order to determine whether [*11] exercising specific personal jurisdiction comports with the requirements of the Constitution, a court must examine three factors: relatedness, purposeful availment (or minimum contacts), and reasonableness. *Id*. First, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Id., quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)*. Second, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Id*. Finally, the exercise of jurisdiction must be reasonable. The Supreme Court has identified five criteria relevant to assessing reasonableness:

> (1) The defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests [*12] of all sovereigns in promoting substantive social policies.

*163 Pleasant St., 960 F.2d at 1088, citing Rudzewicz, 471 U.S. at 477*. The First Circuit Court of Appeals has labeled these criteria the "Gestalt factors." *Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990)*.

#### 2. Analysis

##### a. Relatedness

The first factor requires that the claim underlying the litigation arise out, or relate to, defendants' forum-state activities. Although brought under multiple theories, this case essentially alleges breach of the Agreement, and defendant's Massachusetts contacts relate entirely to the negotiation and execution of the Agreement and the interpretation of its terms. That claim clearly arises out of or relates to defendants' Massachusetts activities, and is therefore sufficiently related to the defendants' contacts with the forum.

##### b. Purposeful Availment

The second factor, the purposeful availment require-

ment, is intended to assure that "personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous' contacts with the forum state." *Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)*, [*13] citing *Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)*. There are two "cornerstones" of purposeful availment: voluntariness and foreseeability. *Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994)*.

First, "the defendant's contacts with the forum state must be voluntary-that is, not based on the unilateral actions of another party or a third person." *Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716 (1st Cir. 1996)*. Second, "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)*.

In the present case, defendants (1) contacted the plaintiff by e-mail to solicit an agreement with the plaintiff; (2) engaged in numerous phone calls, e-mails, and written correspondence both prior to the execution of the agreement and after its execution; (3) participated in one meeting in Boston during negotiations; and (4) participated in another meeting in Boston after execution of the contract relating to technical support arising from the Agreement. n1 Furthermore, [*14] the Agreement provides that the choice of law for construing and interpreting its terms will be the laws of the United States and "the resident state of the plaintiff." As the plaintiff's state of residence at the execution of the contract was Massachusetts and so remains, it was not only reasonably foreseeable that the defendant might be haled into a Massachusetts court, but the application of Massachusetts law was expressly contemplated by the parties when they executed the Agreement.

> n1 The fact that defendants initiated contact with a Massachusetts resident while the resident was in Massachusetts, and later traveled to Massachusetts, distinguishes the present case from the cases relied upon by the defendants. See *Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997)* (dismissing for lack of personal jurisdiction where the Massachusetts plaintiff approached the foreign defendant and no meetings to negotiate the contract occurred in Massachusetts); *Droukas v. Divers Training Acad., 375 Mass. 149, 376 N.E.2d 548 (1978)* (dismissing for lack of personal jurisdiction where the Massachusetts plaintiff saw the defendant's advertisement in a national nautical publication, telephoned the defendant in Florida to place the order, and mailed a check to Florida; defendants only contacts with Massachusetts were letters relating to the sale and the shipment of the product); *'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 280 N.E.2d 423 (1972)* (dismissing for lack of personal jurisdiction where New York defendant called plaintiff's New Jersey office, never visited Massachusetts, and only sent a purchase order and partial payment to plaintiff's Massachusetts division); *Nichols Assoc., Inc. v. Starr, 4 Mass. App. Ct. 91, 341 N.E.2d 909 (1976)* (dismissing for lack of personal jurisdiction where the Connecticut defendant approached the Massachusetts plaintiff in Connecticut for a land survey of land in Connecticut and the defendant's only contact with Massachusetts was that the plaintiff surveyor performed some work in plaintiff's Massachusetts office and defendant occasionally sent an employee to Massachusetts to pick up plans when plaintiff did not have an available messenger).

[*15]

The Court finds that the defendants' contacts in Massachusetts were both voluntary and sufficient to make it reasonably foreseeable that they would be haled into court here. Accordingly, the defendants have purposefully availed themselves of the privilege of conducting business in the Commonwealth.

### c. Reasonableness

As noted, the so-called "Gestalt factors" used to determine reasonableness include (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Id. at 150*. The Court finds that, weighing these factors, it would be reasonable in this instance to exercise personal jurisdiction over the defendants.

#### (1) The Burden of Appearing in Massachusetts

Defendants argue that serious hardships would arise if they were forced to appear in Massachusetts, because (1) the majority of AirWater's non-party witnesses are located in Florida and overseas; [*16] (2) the absence of AirWater's employees for any extended period of time would work a substantial hardship on AirWater's small business; and (3) all of AirWater's documents relating to the dispute are located in Florida. While the Court acknowledges that it will be burdensome for the defendants to appear in Massachusetts, "it is almost always inconvenient and costly for a party to litigate in a for-

Case 1:05-cv-12237-WGY   Document 53-2   Filed 04/25/2006   Page 6 of 8

Page 5
2005 U.S. Dist. LEXIS 40291, *16

eign jurisdiction." *Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996)*. Thus, for this factor to have any significance, "the defendant must demonstrate that the exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Id., quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)*. The burdens cited by the defendants are the ordinary burdens of defending an action in another state. Furthermore, the Court also notes that the hardship on witnesses traveling from overseas is only minimally, if at all, impacted by trial a in Massachusetts rather than in Florida.

Defendants also argue that the burden of appearing would create substantial hardship because Michael Zwebner, [*17] the president of both defendant companies, is confined to a wheelchair. While the court sympathizes with Mr. Zwebner, the record suggests that he is in fact highly mobile; he maintains homes in Israel, the United Kingdom, and Miami, and he has traveled to Israel, Toronto, Los Angeles, New York, Peru, and Brazil since February 2003. While defending the action in this forum would undoubtedly create some hardship for Mr. Zwebner, in light of his frequent travel over the past three years, the Court does not believe that appearing in Massachusetts would offend "traditional notions of fair play and substantial justice." n2

> n2 There is no evidence that the plaintiff brought the present suit in order to harass the defendants. *See Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994)*.

### (2) Interest of the Forum

"A state generally has a manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* [*18] (citation omitted); *see also Daynard, 290 F.3d at 62; Marine Charter & Storage Ltd., Inc. 701 F. Supp. at 936*. Massachusetts has a particularly strong interest in adjudicating this matter because, as the case currently stands, Massachusetts law will govern the dispute. *See Champion Exposition Servs. v. Hi-Tech Elec., LLC, 273 F. Supp. 2d 172, 179 (D. Mass. 2003)*.

### (3) Plaintiff's Convenience

The Court should give deference to the plaintiff's choice of forum. *Foster-Miller, 46 F.3d at 151*. In the present case, a Massachusetts forum is clearly the most convenient forum for the plaintiff and an inconvenience might result from forcing the plaintiff to bring suit elsewhere, cutting in favor of jurisdiction.

There is an additional, and somewhat peculiar, aspect to this case. If the Court were to dismiss the current action in favor of the pending suit in Florida, Florida law would apply to the interpretation of the Agreement. Dismissing the action would work to deny the plaintiff the opportunity to have its own state's law apply to the Agreement, as expressly provided in the Agreement.

### (4) Administration [*19] of Justice

This factor examines the "judicial system's interest in obtaining the most efficacious resolution of the controversy [and] counsels against furcation of the dispute among several different jurisdictions." *Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)*. "Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes." *id.*, and would thus cut in favor of finding a lack of personal jurisdiction. In this case, however, the efficient administration of justice favors jurisdiction in Massachusetts, where this action is already proceeding against the defendants. *Daynard, 290 F.3d 42, 62-63 (1st Cir. 2002)*.

### (5) Public Policy

Finally, there is no public policy reason disfavoring the exercise of jurisdiction. Plaintiff did not engage in forum shopping; indeed, it filed suit in its own state. Furthermore, per the Agreement, Massachusetts law would apply regardless of whether the plaintiff filed suit in Florida or Massachusetts.

Accordingly, and on balance, the "Gestalt factors" weigh in favor of a Massachusetts forum. The burden placed on the defendant is similar to that [*20] placed on any party that must litigate in a foreign jurisdiction. Massachusetts has a strong interest in the litigation, and the Court finds no weighty administrative or public policy rationale against jurisdiction here. The Court therefore concludes that the exercise of jurisdiction is reasonable.

Plaintiff has provided sufficient evidence to satisfy all three prongs of the due process inquiry, demonstrating that jurisdiction here comports with traditional notions of fair play and substantial justice. Accordingly, this Court concludes that the exercise of personal jurisdiction over the defendants in Massachusetts is proper.

### IV. Transfer of Venue

Alternatively, defendants seek transfer of venue pursuant to *28 U.S.C. § 1404(a)*, which provides as follows: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Section 1404(a)* codifies in part the doctrine of forum non conveniens. *Albion v. YMCA Camp*

*Letts, 171 F.3d 1, 2 (1st Cir. 1999)*. The decision of whether to transfer a case rests with [*21] the sound discretion of the court. *Filmline (Cross-Country) Prod., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989)*.

"Where identical actions are proceeding concurrently in two federal courts, the first-filed action is generally preferred in a choice-of-venue decision." *Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987)*. In such a situation, there is a strong presumption in favor of a plaintiffs forum choice, and "the defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Nowak, 94 F.3d at 719*. As the Supreme Court has observed:

> Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which [*22] may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems.

*Koster v. Lumbermens Mut. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1997)*.

Courts have, however, recognized exceptions to the first-filed rule where "(1) there are special circumstances justifying a transfer or (2) convenience favors the later-filed action." *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002)*; see also *Veryfine Prods., Inc. v. Phlo Corp., 124 F. Supp. 2d 16, 22-25 (D. Mass 2000)*; *Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 124 (D. Mass. 2000)*. The Court will examine each exception in turn.

### A. Special Circumstances

Although the "plaintiff's choice of forum should rarely be disturbed," *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)*, courts in this district have in numerous instances transferred a case based on findings of "special circumstances." See *Holmes Group, 249 F. Supp. 2d at 16* (collecting cases). "The pattern that emerges from [*23] the cases indicates that transfer may be appropriate where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation; or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day." *Veryfine, 124 F. Supp. 2d at 22*.

Defendants here argue that the plaintiff improperly engaged in forum shopping by "jumping the gun" when it "prematurely commenced this hip pocket' action through the anticipatory filing of its complaint." (Defs.' Mem. at 10). Thus, defendants claim that plaintiff is not entitled to the protection of the first-filed rule. This Court disagrees.

Because defendants did not provide notice of their imminent intention to litigate, the plaintiff cannot be said to have "sprinted to the courthouse" in order to file before the defendants. Cf. *Remington Arms Co. v. Alliant Techsystems, Inc., No. 1:03CV1051, 2004 U.S. Dist. LEXIS 3848* (exception to first-filed rule applied in trademark dispute where defendants issued cease and desist letter threatening litigation after a particular date, and plaintiffs filed declaratory action one day in advance of [*24] that date). Moreover, the Court finds that there is no evidence to suggest that the plaintiff intentionally misled the defendants to keep them from filing litigation. Cf. *McJunkin Corp. v. Cardinal Sys., Inc. 190 F. Supp. 2d 874 (S.D. W. Va. 2002)* (declaratory action filed silently while parties' negotiations continued). Under the terms of the Agreement, regardless of the opportunity to cure, defendants arguably are in breach of the contract. As the record reflects that defendants denied owing plaintiff any royalty payments, it was not unreasonable for the plaintiff to continue in pursuit of the funds it was allegedly owed and for foreseeable damages resulting from the delay in payment.

The Court notes that the filing of a suit one day after sending a notice of default and opening a fourteen-day opportunity to cure suggests is questionable, but finds that it does not go so far as to become an improper "anticipatory filing." Rather, plaintiff appears to have believed in good faith that the defendants were in breach and filed to remedy that breach and collect the appropriate damages. Furthermore, plaintiff filed suit in its own home-state forum, not in a jurisdiction [*25] with no connection to the dispute. See *Veryfine, 124 F. Supp. 2d at 22* (special circumstances justifying transfer exist where "one party has won a race to the courthouse by jumping the gun and filing a declaratory judgment action in a forum that has little relation to the dispute."). The fact that there was a delay in service of process, although relevant, does not inexorably lead to the conclusion that Plaintiff was engaging in improper forum shopping. See *Biogen, Inc. v. Schering AG, 954 F. Supp. 391, 398 (D. Mass. 1996)* (under the circumstances, no forum shopping where plaintiff's "decision to file but not to serve its suit immediately manifested a de-

sire on its part both to avoid litigation if at all possible and to attempt to secure the convenience of a Massachusetts forum if litigation was required.").

### B. Convenience

The Court may also transfer a matter to another district for the convenience of the parties and witnesses and in the interest of justice under § 1404(a).

> The Supreme Court has provided a list of relevant considerations [for this determination]. "Private interest" factors include relative ease of access to sources [*26] of proof, availability of compulsory process, comparative trial costs, ability to enforce a judgment, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).* "Public interest" factors include the practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere, the imposition on jurors called to hear a case that has no relation to their community, and the familiarity of the court with applicable laws. *Id. at 508-509.*

*Nowak, 94 F.3d at 719-720.* n3

> n3 Although *Nowak* dealt with a motion to dismiss for forum non conveniens, as opposed to a motion to transfer under *28 U.S.C. § 1404(a)*, the factors to be considered in either instance "are generally the same." 17-111 *Moore's Federal Practice — Civil § 111.13. See also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)* ("forum non conveniens considerations are helpful in deciding a § 1404 transfer motion). The Court notes, however, that it has broader discretion to transfer a case under *§ 1404(a)* than to dismiss the case for forum non conveniens. *See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).*

[*27]

As the First Circuit has stated, "The plaintiff's forum choice should rarely be disturbed'; thus, the moving defendant . . . must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'" *Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991)* (citations omitted). Here, the defendants have not met this burden.

Defendants contend that trial in Massachusetts will seriously inconvenience the principal witness, Mr. Zwebner, and non-party witnesses located in Florida and overseas. For reasons discussed *supra*, the Court does not find these the private interest factors sufficient override the strong preference for the plaintiff's choice of forum. Nor will hearing this case in Massachusetts pose burdens on this court or community that justify a transfer to a Florida court.

Accordingly, this lawsuit was appropriately filed in this jurisdiction, and defendants' motion in the alternative to transfer will be denied.

### V. Stay of Discovery

On July 19, 2005, the Court granted defendants' motion for a protective order to stay discovery pending a ruling on defendants' motion to dismiss for lack of personal [*28] jurisdiction. In light of the Court's ruling on the motion to dismiss, that ruling is hereby vacated, and the parties may undertake discovery in accordance with the Federal Rules of Civil Procedure and the District Court Local Rules.

### VI. Conclusion

For the reasons state above, defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer for forum non conveniens, is DENIED.

So **Ordered.**

F. Dennis Saylor IV

United States District Judge

Dated: September 27, 2005