7.29    Attached as **Exhibit 18** is the claim chart and accompanying exhibits applying claim 1 of the '422 patent to Roche's PEG-EPO pharmaceutical composition.

## VIII. LICENSES AND FOREIGN COUNTERPARTS

### A.    Amgen's Licenses

8.1    In 1985, Amgen granted to Ortho Pharmaceutical Corporation (a Johnson & Johnson company) a limited license to make, have made, use, and sell a specified recombinant human EPO product under certain Amgen patents and know-how, including the Amgen Patents, for the treatment of non-dialysis patients in the United States. As part of this license agreement, Amgen manufactures and supplies Ortho with a pharmaceutical composition containing recombinant human EPO, which Ortho then markets and sells under the tradename PROCRIT® (epoetin alfa) for the treatment of non-dialysis patients in the United States. Ortho is Amgen's only licensee under the Amgen Patents.

8.2    Under a separate license governing foreign counterparts to the Amgen Patents, Ortho also obtained limited rights to make, have made, use, and sell an EPO-containing pharmaceutical composition outside of the United States (except in Japan and China). Those foreign counterpart patents were and are owned by a separate entity called Kirin-Amgen, which was formed as a joint venture between Amgen and Kirin Brewery Company, Ltd. Kirin has the exclusive right to sell epoetin alfa in Japan and both Kirin and Amgen each have rights to sell epoetin alfa in China.

8.3    Other than the licenses referenced herein, no other licenses to the Amgen Patents have been granted.

17

Dockets.Justia.com

8.4  Under Commission Rule 210.12(c)(1), three copies of Amgen's agreement with Kirin Brewery Company, Ltd., and three copies of Amgen's license with Ortho Pharmaceutical Corporation accompany this Complaint (bearing Bates Nos. AM-ITC 003338 to AM-ITC003538). These agreements are confidential.

B.  **Foreign Counterparts**

8.5  Under Commission Rule 210.12(a)(9)(iv), a list of each issued foreign patent and foreign patent application corresponding to each of the Amgen Patents that has been issued, abandoned, denied or remains pending, including the prosecution status of each application, is attached hereto as **Confidential Exhibit A**. Other than those identified in the foregoing exhibit, there are no other issued foreign patents or foreign patent applications corresponding to any of the Amgen Patents that have been issued, abandoned, denied or remains pending.

IX. **CLASSIFICATION OF THE INFRINGING PRODUCTS UNDER THE HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES**

9.1  On information and belief, Roche's infringing articles may be classified under at least the following headings of the Harmonized Tariff Schedule of the United States: 3004.90.0000 and 3004.91.9190.

X. **THE DOMESTIC INDUSTRY**

A. **Overview and Identification of the Domestic Industry**

10.1  A domestic industry as defined by Section 337(a)(3) exists in connection with Amgen's activities related to EPOGEN® (epoetin alfa) covered by the Amgen Patents. This industry includes Amgen's significant investment in plant and equipment, and significant employment of labor and capital in the United States in connection with the manufacture of EPOGEN® covered by the Amgen Patents.

10.2  Amgen's manufacturing activities in connection with EPOGEN® covered by the '868, '933, '698, '080, '349, and '422 patents occur in more than one location in the United States. For purposes of the domestic industry requirement of Section 337, Amgen relies only upon its facility located in Longmont, Colorado.

10.3  Amgen manufactures in the United States EPOGEN® covered by at least claim 1 of the '868 patent. A claim chart applying claim 1 of the '868 patent to Amgen's EPOGEN® is attached as **Confidential Exhibit B**. This chart demonstrates Amgen's practice of the '868 patent in the manufacture of EPOGEN®.

10.4  Amgen manufactures in the United States EPOGEN® covered by at least claim 3 of the '933 patent. A claim chart applying claim 3 of the '933 patent to Amgen's EPOGEN® is attached as **Confidential Exhibit C**. This chart demonstrates Amgen's practice of the '933 patent in the manufacture of EPOGEN®.

19

10.5    Amgen manufactures in the United States EPOGEN® covered by at least claim 7 of the '698 patent. A claim chart applying claim 7 of the '698 patent, as well as claim 6 of the '698 patent from which it depends, to Amgen's EPOGEN® is attached as **Confidential Exhibit D**. This chart demonstrates Amgen's practice of the '698 patent in the manufacture of EPOGEN®.

10.6    Amgen manufactures in the United States EPOGEN® covered by at least claim 4 of the '080 patent. A claim chart applying claim 4 of the '080 patent, as well as Claim 3 of the '080 patent from which it depends, to Amgen's EPOGEN® is attached as **Confidential Exhibit E**. This chart demonstrates Amgen's practice of the '080 patent in the manufacture of EPOGEN®.

10.7    Amgen manufactures in the United States EPOGEN® covered by at least claim 7 of the '349 patent. A claim chart applying claim 7 of the '349 patent, as well as claim 1 of the '349 patent from which it depends, to Amgen's EPOGEN® is attached as **Confidential Exhibit F**. This chart demonstrates Amgen's practice of the '349 patent in the manufacture of EPOGEN®.

10.8    Amgen manufactures in the United States EPOGEN® covered by at least claim 1 of the '422 patent. A claim chart applying claim 1 of the '422 patent to Amgen's EPOGEN® is attached as **Confidential Exhibit G**. This chart demonstrates Amgen's practice of the '422 patent in the manufacture of EPOGEN®.

### B. Amgen Has Significant U.S. Investment in Plant and Equipment

10.9  Amgen has made significant investment in plants and equipment in the United States relating to its manufacture of EPOGEN®. Specifically, Amgen has substantially invested in a plant and equipment at Amgen's Longmont, Colorado facility where the EPOGEN® covered by the Amgen Patents is manufactured. **Confidential Exhibit H** sets forth Amgen's investment in its factory where EPOGEN® is manufactured.

10.10  Amgen's significant investment in the equipment at Amgen's Longmont, Colorado facility used in the manufacture of EPOGEN® covered by the Amgen Patents is reflected in **Confidential Exhibit H.** This exhibit sets forth Amgen's investment in buildings and equipment used to manufacture EPOGEN® at the Longmont facility.

### C. Significant U.S. Employment of Labor

10.11  Amgen employs in its domestic facilities a significant number of employees who devote substantial man-hours toward the manufacture of Amgen products, including the EPOGEN® covered by the Amgen Patents. **Confidential Exhibit I** sets forth the approximate number of employees in the Longmont, Colorado facility devoting substantial man-hours to the manufacture of EPOGEN®.

## XI. RELATED LITIGATION

11.1  *Amgen Inc. v. F. Hoffmann-LaRoche Ltd. et al.*  On November 8, 2005, Amgen filed suit against the Proposed Respondents (with the exception of Roche Holding Ltd.) in the U.S. District Court for the District of Massachusetts. In that action, Amgen seeks a declaratory judgment and other injunctive relief regarding Roche's infringement

of the Amgen Patents arising out of Roche's manufacture, importation and imminent sale of PEG-EPO in the United States.

11.2   There is also a history of Amgen having successfully enforced Dr. Lin's EPO patents against a number of challengers in U.S. court proceedings, as described below.

11.3   *Amgen Inc. v. Chugai Pharm. Co., Ltd. and Genetics Institute, Inc.* On October 27, 1987, Amgen filed suit against Genetics Institute, Inc. (under whose license, on information and belief, Roche manufactures its EPO products in Europe) and Chugai Pharmaceutical Co., Ltd. ("Chugai"), now a subsidiary of Roche, in the United States District Court for the District of Massachusetts (Civ. A. No. 87-2617-Y). Amgen sought a declaratory judgment that Genetics Institute infringed Amgen's U.S. Patent No. 4,703,008 ("the '008 Patent"), by using host cells transformed with DNA encoding human EPO and that Chugai had induced and/or contributed to Genetic Institute's infringement of the '008 Patent. Amgen also asked that Genetic Institute's U.S. Patent No. 4,677,195 ("the '195 patent") containing claims directed to EPO be declared invalid under 35 U.S.C. §§102, 103, and 112.

  a.   The defendants attacked the validity of the '008 Patent under 35 U.S.C. §§ 101, 102, 103, and 112. The defendants also asserted that they did not infringe the '008 Patent and that the patent was unenforceable due to inequitable conduct by Amgen before the United States Patent and Trademark Office. In its counterclaims, Genetics Institute alleged that Amgen infringed the '195 patent and was guilty of unfair competition.

b.  After several years of litigation and a lengthy trial, the district court held, *inter alia*, that claims 2, 4, and 6 of the '008 patent were valid, enforceable, and infringed by Genetics Institute, but that Chugai had not directly infringed, contributorily infringed, or induced infringement of any claim of the '008 patent based on its collaboration with Genetics Institute. *Amgen, Inc. v. Chugai Pharmaceutical Co. Ltd.*, 13 U.S.P.Q. 2d 1737 (D. Mass. 1989). The district court therefore dismissed Amgen's complaint against Chugai.

c.  Both Amgen and the defendants appealed the district court's decision to the Court of Appeals for the Federal Circuit (Docket Nos. 90-1273 and 90-1275). Amgen prevailed in both appeals. The Federal Circuit affirmed the district court's decision that Amgen's claims 2, 4, and 6 were valid and enforceable and that the claims were infringed by Genetics Institute. *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200 (Fed. Cir. 1991). The Federal Circuit found that Amgen's Dr. Lin was the first to invent a purified and isolated DNA sequence encoding human erythropoietin. The Federal Circuit also upheld the district court's finding that Amgen's claims directed to a purified and isolated DNA sequence encoding EPO, and its claims directed to host cells transformed with such a DNA sequence, were not obvious; affirmed the district court's decision that the '008 Patent satisfied the "best-mode" requirement; and affirmed the finding that Amgen had not committed inequitable conduct in obtaining its patent.

11.4  *In re Certain Recombinant Erythropoietin* (U.S. I.T.C. Inv. No. 337-TA-281). In parallel with the district-court action, Amgen also filed a complaint with this Commission, alleging that Chugai's importation of recombinant EPO, manufactured

in Japan using genetically engineered host cells, violated 19 U.S.C. §§ 1337 and 1337(a). An investigation was instituted on February 10, 1988. That action was terminated by the Commission for lack of subject-matter jurisdiction. On appeal, the Federal Circuit vacated the Commission's order, holding that the complaint should have been treated on its merits to find that the '008 Patent claims directed to isolated DNA sequences encoding EPO and cells transformed with such DNA did not directly cover a process for producing recombinant EPO. *See Amgen Inc. v. United States Int'l Trade Comm'n*, 902 F.2d 1532 (Fed. Cir. 1990). The Federal Circuit remanded the case for the Commission to enter a final determination dismissing the complaint on its merits.

11.5   *Amgen Inc. v. Integrated Genetics, Inc.*   On October 27, 1987, the same day that Amgen filed suit in the District Court of Massachusetts against Genetics Institute and Chugai Pharmaceuticals, it also filed suit in the same court against Integrated Genetics, Inc. (Civil Action No. 87-cv-02616 WGY). Amgen sought a declaratory judgment that Integrated Genetics infringed Amgen's '008 Patent by using host cells transformed with DNA encoding human EPO. Integrated Genetics challenged the validity of the '008 Patent in its defense and counterclaims. That suit was terminated on June 29, 1990. To the best of Amgen's knowledge, as a consequence of the suit, Integrated Genetics has never entered the United States market with an EPO product.

11.6   *Fritsch v. Lin.*   The Amgen patent applications giving rise to Amgen's '008 Patent and the patents-at-issue in this Investigation were also the subject of three U.S. interference proceedings, *Fritsch v. Lin*, Patent Interference Nos. 102,096, 102,097, and 102,334. Dr. Fritsch was an employee of Genetics Institute. The Patent and Trademark Office decided each of the interferences in Amgen's favor in 1991.

11.7  *Amgen Inc. v. Elanex Pharms., et al.*  On October 26, 1993, Amgen filed a complaint against Elanex Pharmaceuticals Inc., Laboratorios Elanex de Costa Rica, S.A., Bio Sidus S.A., Merckle GmbH, and Biosintetica LtdA in the Western District of Washington asserting that the defendants infringed or induced the infringement of the '008 Patent claims. Elanex challenged the validity of the '008 Patent in its defense and counterclaims. The District Court held on summary judgment that Elanex infringed the asserted '008 claims, but dismissed Amgen's case against Merckle because Merckle's activities occurred outside of the United States. *See Amgen Inc. v. Elanex Pharms.,* 1996 WL 84590 (W.D. Wash. 1997).

11.8  *Amgen Inc. v. Hoechst Marion Roussel, Inc. and TKT, Inc.*  In 1997, after having prevailed against Genetics Institute, Integrated Genetics, and Elanex, Amgen was faced with yet another potential infringement, this time by Hoechst Marion Roussel, Inc. and Transkaryotic Therapies, Inc. (collectively referred to as "TKT" herein) attempting to make, use and sell a recombinant EPO product (epoetin delta) encompassed by Amgen's patents. Amgen initially filed a declaratory judgment action in the United States District Court for the District of Massachusetts seeking judgment that TKT infringed three of its patents (Civ. A. No. 97-10814-WGY). In 1999, Amgen amended its complaint to include two more-recently issued patents, such that five patents were at issue in the ensuing litigation and trial. The five patents-at-issue in the *Amgen v. HMR/TKT* case are five of the six patents-at-issue in this Complaint.

   a.   Having held a *Markman* hearing to construe the claims, Chief Judge Young granted Amgen's motion for summary judgment of infringement regarding claim 1 of the '422 patent (directed to pharmaceutical compositions comprising EPO

purified from mammalian cells grown in culture), but denied the motion regarding all remaining claims under consideration.

      b.     The trial on the remaining issues began on May 15, 2000 and lasted twenty-three days over a four-month period, ending on September 8, 2000. In January 2001, Judge Young issued his opinion finding that HMR and TKT infringed, either literally or under the doctrine of equivalents, claim 1 of the '422 patent, claims 2 through 4 of the '080 patent (directed to EPO glycoprotein products), and claims 1, 3, 4, and 6 of the '349 patent (directed to genetically modified cells that produce large amounts of EPO). He did, however, find that claims 1 and 2 of the '933 patent invalid for indefiniteness. Judge Young also found that Amgen's patent claims were not obvious, that each of the infringed claims fully satisfied the written description, enablement, and definiteness requirements of 35 U.S.C. §112, and that Amgen had not committed inequitable conduct in procuring any of its EPO patents. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 126 F. Supp. 2d 69 (D. Mass. 2001).

      c.     On appeal, the Federal Circuit affirmed Judge Young's claim construction rulings *in toto*. The Federal Circuit also affirmed Judge Young's finding that Amgen had not committed inequitable conduct regarding any of its patents, that HMR/TKT infringed claim 1 of the '422 patent and claims 1, 3, 4, and 6 of the '349 patent, and that the '080, '933, '349, and '698 claims are novel over the "Sugimoto" reference. The Federal Circuit affirmed Judge Young's finding that claims 1 and 2 of the '933 patent were invalid for indefiniteness. The Federal Circuit vacated Judge Young's findings that the asserted method claims of the '698 patent and claim 7 of the '349 patent were not infringed; that the '080 patent was infringed under the Doctrine of Equivalents;

26

and that the '080, '933, 349, and '698 patents are not obvious in light of Sugimoto or anticipated or obvious over the "Goldwasser" prior-art study. The Federal Circuit remanded the case for a determination of whether the '422 patent is anticipated by Sugimoto or Goldwasser, whether the asserted claims of the '698 patent and claim 7 of the '349 patent were infringed by HMR/TKT, and whether HMR/TKT infringed the '080 patent under the Doctrine of Equivalents. *See generally Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003).

    d. On remand, Judge Young first found that Amgen's amendments to claims 2-4 of its '080 patent during prosecution did not bar a finding that HMR/TKT infringed these claims under the Doctrine of Equivalents. Between Judge Young's initial decision and the appeal, the Federal Circuit had released its opinion in *Festo Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.*, 344 F.3d 1359 (Fed. Cir. 2003), regarding the effects of prosecution history estoppel on infringement under the Doctrine of Equivalents. Applying that decision to infringement of the '080 patent, the Federal Circuit instructed Judge Young to determine whether Amgen had rebutted the presumption of prosecution history estoppel. On remand, Judge Young found that Amgen had rebutted the presumption under *Festo* ("Amgen 'wins', that is, rebuts the presumption of prosecution history estoppel.") Accordingly, on October 30, 2003, having fully considered *Festo*, Judge Young issued his opinion reasserting his prior holding that HMR/TKT infringed claims 2 through 4 of the '080 patent. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 287 F. Supp. 2d 126 (D. Mass. 2003).

    e. On October 15, 2004, Judge Young issued his opinion relating to the remaining issues on remand. After a further detailed construction of the terms

27

"therapeutically effective" and "DNA encoding," Judge Young held that claim 1 of the '422 patent and claims 2-4 of the '080 patent were neither anticipated nor rendered obvious by the Sugimoto or Goldwasser prior-art references, and that claims 4-9 of the '698 patent and claim 7 of the '349 patent are likewise valid (and literally infringed). In sum, Amgen prevailed on every issue on remand. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2004). TKT has appealed these findings of validity and infringement of Amgen's patents to the Federal Circuit. Briefing on the appeal is complete and oral argument was heard on December 6, 2005.

11.9   In addition to Amgen's efforts to protect its U.S. patents, Kirin-Amgen has asserted the foreign counterparts to the Lin patents against a number of companies in various countries. Attached hereto as **Confidential Exhibit J** is a list of these foreign proceedings, as well as proceedings before various patent offices throughout the world.

11.10  Other than the United States litigations described herein and the foreign proceedings identified in Confidential Exhibit J, there are no other litigations or proceedings related to the patents-in-suit.

## XII. RELIEF REQUESTED

12.1   By reason of the foregoing, Complainant Amgen respectfully requests that the United States International Trade Commission:

   a.    Institute an immediate investigation under § 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, regarding Roche's violations of that section based on the importation and/or sale within the United States as well as the manufacture abroad for importation and/or sale within the United States products and pharmaceutical

compositions that contain recombinant human EPO and infringe Amgen's U.S. Patent Nos. 5,441,868, 5,547,933, 5,618,698, 5,621,080, 5,756,349, and/or 5,955,422.

    b.    Issue a permanent exclusion order under 19 U.S.C. §1337(d) excluding entry into the United States of products and pharmaceutical compositions containing EPO that infringe U.S. Patent Nos. 5,547,933; 5,621,080, and/or 5,955,422.

    c.    Issue a permanent exclusion order under 19 U.S.C. § 1337(d) excluding entry into the United States of products and pharmaceutical compositions containing EPO made by processes that are covered by U.S. Patent Nos. 5,441,868, 5,618,698, and/or 5,756,349.

    d.    Issue a permanent cease-and-desist order under 19 U.S.C. §1337(f) prohibiting Roche and its related companies and affiliates from engaging in the importation, sale for importation, marketing, distribution, offering for sale, the sale after importation of, or otherwise transferring within the United States products and pharmaceutical compositions containing recombinant human EPO that infringe U.S. Patent Nos. 5,547,933, 5,621,080, and/or 5,955,422.

    e.    Issue a permanent cease-and-desist order under 19 U.S.C. §1337(f) prohibiting Roche and its related companies and affiliates from engaging in the importation, sale for importation, marketing, distribution, offering for sale, the sale after importation of, or otherwise transferring within the United States products and pharmaceutical compositions containing recombinant human EPO made by processes that are covered by U.S. Patent Nos. 5,441,868, 5,618,698, and/or 5,756,349.

  f. Issue such other and further relief as the Commission deems just and proper under the law, based upon the facts determined by the investigation and the authority of the Commission.

Dated: April 11, 2006      Respectfully submitted,

            By: *[signature]*
            Lloyd R. Day, Jr.
            DAY CASEBEER
            MADRID & BATCHELDER LLP
            20300 Stevens Creek Blvd., Suite 400
            Cupertino, CA 95014

            Cecilia H. Gonzalez
            HOWREY LLP
            1299 Pennsylvania Avenue, N.W
            Washington DC, 20004

            Attorneys for Complainant AMGEN INC.

## VERIFICATION OF COMPLAINT

I, Helen Torley, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1. I am Vice President, GM Nephrology Business Unit of Complainant Amgen Inc. and am duly authorized to sign this Complaint on behalf of Complainant;

2. I have read the foregoing Complaint;

3. To the best of my knowledge, information, and belief, based upon reasonable inquiry, the foregoing Complaint is well founded in fact and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

4. The allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

5. The foregoing Complaint is not being filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed this 30th day of March, 2006.

_Helen Torley_
Helen Torley