UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMGEN INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 05-12237 WGY |
| F. HOFFMANN-LAROCHE LTD., a Swiss Company, ROCHE DIAGNOSTICS GmbH, a German Company and HOFFMANN LAROCHE INC., a New Jersey Corporation, | ) |
| Defendants. | ) |

### Declaration of Stuart L. Watt

1.      I am an attorney in good standing with the State Bar of Texas and have applied for admission *pro hac vice* to this Court.  I am also registered as in-house counsel with the State Bar of California.  I am employed by Amgen, Inc. as Vice President, Law & Intellectual Property Officer and I lead Amgen's Intellectual Property and Litigation Group.  I joined Amgen in January 1992, and I currently report to David J. Scott, who is also a lawyer, and is a Senior Vice President and Amgen's General Counsel and Secretary.

2.      I submit this declaration in support of my access to confidential information produced by Defendants or third parties under the terms of a protective order in this case.

3.      In addition to the courts of Texas, I am admitted to practice law before the United States District Court for the Northern District of Texas, the United States Court of Appeals for the Fifth and Federal Circuits, and the United States Patent and Trademark Office.

1

2

4. Before joining Amgen, I was an attorney with the law firm of Richards, Medlock & Andrews in Dallas, Texas for six years where I was involved in patent and trademark litigation and patent prosecution. I graduated from Brigham Young University in 1983, from the University of Washington School of Law in 1986 and I was admitted to practice to the State Bar of Texas in 1986. Since that time and up to the present, I have continuously been a member in good standing with the State Bar of Texas.

5. In my role as in-house counsel with Amgen, I have had responsibility for litigation to enforce to various Amgen patents in the United States and in many foreign countries. Concerning the patents-in-suit in this action, I have been involved in patent litigation on these patents and related patents in the United States and in foreign countries since I joined Amgen in 1992.

6. As in-house counsel, my responsibilities include the supervision of Amgen's present litigation against the Defendants, as well as the supervision of Amgen's in-house attorneys who work on the litigation. I am responsible for evaluating the issues in this case, evaluating and directing the work and strategies of trial counsel, determining which issues merit greater or lesser allocation of resources, and evaluating and authorizing assignment of resources, both human and capital, to the issues of the case. I am responsible for Amgen's decisions in this case, risk evaluation, costs, and I assist with Amgen's compliance with its public disclosure obligations as it relates to this case. In addition, I supervise other attorneys and in-house paralegals assigned to support and assist Amgen's outside counsel in the evaluation, preparation and presentation of Amgen's claims and defenses in this and other disputes.

7. As head of Amgen's Intellectual Property Law Group, I have overall responsibility for securing protection for Amgen's intellectual property and enforcing that protection through litigation, if necessary. I also advise Amgen's executive management with respect to all intellectual property matters. Although I have organizational responsibility for patent prosecution activities at Amgen and regularly perform ministerial acts, e.g., executing

powers of attorney, others in my organization are primarily responsible for prosecution of new and existing patent applications and I do not maintain a personal docket for patent prosecution.

8. I have no responsibility for and do not participate in "competitive decision making," such as pricing, clinical trial design, regulatory proceedings, and the like. Within Amgen, responsibility for the legal support of the business functions engaged in such "competitive decision making" resides within Amgen's Business Law Group, which is a separate organization reporting to a separate vice president in Amgen's Law Department.

9. In order to perform my professional responsibilities to Amgen, I believe I must have full access to the documents and information produced in this litigation, subject to the terms of the protective order proposed by Amgen's counsel. Such access is needed not only to discuss this action intelligently with and give direction to Amgen's trial counsel, but also to assess accurately whether Amgen's interests in this litigation are adequately and appropriately represented.

10. Based on my experience with the protective order in the ITC proceeding, where access to in-house counsel was denied, I do not believe that I would be able to make an informed evaluation of the issues or merits of this dispute, provide proper direction to trial counsel, or advise Amgen with respect to the appropriate conduct of this litigation without the access Amgen has requested for in-house counsel. For example, because I was denied access to any information that characterized Defendants' peg-EPO product and the process by which it is made, including Defendants' Biologics License Application and Investigational New Drug Applications, I could not independently assess the merits of Defendants' assertions, as set forth in their Answer in the ITC proceeding, that they did not infringe Amgen's patents-in-suit. Nor could I assess which claims should be pursued against Defendants.

11. If I am permitted access to confidential information under the terms of a protective order in this case, I agree to be bound by the terms of such an order and will abide by its terms.

12. In my position at Amgen, and in my previous experience as outside counsel, I have received confidential and highly sensitive information of opposing parties subject to the provisions of many protective orders entered in various proceedings in different jurisdictions, including the protective order entered by the court in *Amgen v. Elanex, et al.*, and the protective order entered by this Court in the *Amgen v. HMR/TKT*. No one has ever raised a complaint about my compliance with the terms of a protective order. I do not expect it to be any different in this case.

13. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 23, 2006              /s/ Stuart L. Watt
                                     Stuart L. Watt

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 23, 2006.

                /s/ Michael R. Gottfried
                Michael R. Gottfried