UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMGEN INC., </br></br> Plaintiff, </br></br> v. </br></br> F. HOFFMANN-LAROCHE LTD., a Swiss Company, ROCHE DIAGNOSTICS GmbH, a German Company and HOFFMANN LAROCHE INC., a New Jersey Corporation, </br></br> Defendants. | ) </br>) </br>) </br>) </br>) </br>) Civil Action No.: 05-12237 WGY </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) |

### Declaration of Darrell G. Dotson

1.      I am an attorney in good standing with the State Bar of Texas and have applied for admission *pro hac vice* to this Court.  I am employed by Amgen, Inc. as Senior Counsel in the Intellectual Property and Litigation Group of Amgen's Law Department.  I joined Amgen in November of 2004 and report to Wendy A. Whiteford.  I understand that Ms. Whiteford will be concurrently filing a declaration describing her position and responsibilities at Amgen.

2.      I submit this declaration in support of my access to confidential information produced by Defendants or third parties under the terms of a protective order in this case.

3.      In addition to the courts of Texas, I am admitted to practice law before the United States District Court for the Southern District of Texas and the United States Patent and Trademark Office.  I am also admitted to the Registered In-House Counsel program of the State Bar of California.

1

DM1\702010.1

Dockets.Justia.com

2

4. Before joining Amgen, I was an attorney with the law firms of Howrey LLP in Houston, Texas for 4 years and Arnold White & Durkee in Houston, Texas for 3 years, prior to its merger with Howrey & Simon. During my time at those firms, I was involved primarily in patent litigations. I graduated from the University of Houston Law Center in 1997 and was admitted to practice to the State Bar of Texas in 1997. Since that time and up to the present, I have continuously been a member in good standing with the State Bar of Texas.

5. In my role as in-house counsel with Amgen, I have direct responsibility for supervising the work of outside trial counsel retained by Amgen to represent its interests in this litigation.

6. As in-house counsel, my responsibilities include the day-to-day supervision of Amgen's present litigation against the Defendants. In consultation with Ms. Whiteford, I am responsible for evaluating the issues in this case, evaluating and directing the work and strategies of trial counsel, determining which issues merit greater or lesser allocation of resources, and evaluating and authorizing assignment of resources, both human and capital, to the issues of the case.

7. My responsibilities at Amgen are legal, not business or commercial, in nature. I have no responsibility for and do not participate in "competitive decision making" such as pricing, clinical trial design, regulatory proceedings, and the like. Within Amgen, responsibility for the legal support for the business functions engaged in such "competitive decision making" resides within Amgen's Business Law Group, which is a separate organization reporting to a separate vice president and assistant general counsel in Amgen's Law Department.

8. In order to perform my professional responsibilities to Amgen, I believe I must have full access to the documents and information produced in this litigation, subject to the terms of the protective order proposed by Amgen's counsel. Such access is needed not only to discuss this action intelligently with Amgen's trial counsel, but also to give input and direction to trial counsel, and to assess accurately whether Amgen's interests in this litigation are adequately and appropriately represented.

9. Based on my experience with the protective order in the ITC proceeding, where access to in-house counsel was denied, I do not believe that I would be able to make an informed evaluation of the issues or merits of this dispute, provide proper direction to trial counsel, or advise Amgen with respect to the appropriate conduct of this litigation without the access Amgen has requested for in-house counsel. For example, in being denied access to Defendants' documents that characterized their peg-EPO product and the process by which such product is made, including Defendants' Biologics License Application and Investigational New Drug Applications, I could not independently assess the merits of Defendants' assertions, as set forth in their Answer in the ITC proceeding, that they did not infringe Amgen's patents-in-suit. Nor could I assess which claims should be pursued against Defendants.

10. If I am permitted access to confidential information under the terms of a protective order in this case, I agree to be bound by the terms of such an order and will abide by its terms.

11. In my position at Amgen, and in my previous experience as outside counsel, I have received confidential and highly sensitive information of opposing parties subject to the provisions of several protective orders entered in various proceedings in different jurisdictions. I have understood and complied with my obligations of confidentiality under those protective orders. No one has ever raised a complaint about my compliance with the terms of a protective order.

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 23, 2006        /s/ Darrell G. Dotson
                               Darrell G. Dotson

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 23, 2006.

      /s/ Michael R. Gottfried
      Michael R. Gottfried