UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>F. HOFFMAN-LAROCHE )<br>LTD., a Swiss Company, ROCHE )<br>DIAGNOSTICS GmbH, a German )<br>Company and HOFFMAN LAROCHE )<br>INC., a New Jersey Corporation, )<br>)<br>Defendants. ) | Civil Action No.: 05-12237 WGY |

### Declaration of MarySusan Howard

1.      I am an attorney in good standing with the District of Columbia and have applied for admission pro hac vice to this Court. I am employed by Amgen, Inc. as Senior Counsel in the Intellectual Property and Litigation Group of Amgen's Law Department. I joined Amgen in September of 2002 and report to Joseph Bulock. Mr. Bulock, who is also a lawyer, has the position of Associate General Counsel in Amgen's Intellectual Property and Litigation Group.

2.      I submit this declaration in support of my access to confidential information produced by Defendants or third parties under the terms of a protective order in this case.

3.      In addition to the courts of District of Columbia, I am admitted to practice law before the State Courts of Minnesota, the United States District Court for the District of Minnesota, the United States Court of Appeals for the Federal Circuit and the United States Patent and Trademark Office. I am also admitted to the Registered In-House Counsel program of the State of California.

4. From 1997 until joining Amgen in 2002, I was an attorney in the intellectual property law department at 3M in St. Paul, Minnesota. During my time at 3M I was involved in several patent litigations. From 1994 until 1997, I was an associate at Merchant & Gould in St. Paul, Minnesota, where I worked on a number of disputed intellectual property matters. I graduated from the George Washington University National Law Center in 1994 and was admitted to practice to the State Bar of Minnesota in 1994, and in the District of Columbia in 1997. Since that time and up to the present, I have continuously been a member in good standing with the State Bar of Minnesota and the Bar of the District of Columbia.

5. In my role as in-house counsel with Amgen, I have direct responsibility for supervising the work of outside trial counsel retained by Amgen to represent its interests in this litigation.

6. As in-house counsel, my responsibilities include the day-to-day supervision of Amgen's present litigation against the Defendants. In consultation with Ms. Wendy Whiteford, I am responsible for evaluating the issues in this case, evaluating and directing the work and strategies of trial counsel, determining which issues merit greater or lesser allocation of resources, and evaluating and authorizing assignment of resources, both human and capital, to the issues of the case.

7. My responsibilities at Amgen are legal, not business or commercial, in nature. I have no responsibility for and do not participate in "competitive decision making," such as pricing, clinical trial design, regulatory proceedings, and the like. Within Amgen, responsibility for the legal support for the business functions engaged in such "competitive decision making" resides within Amgen's Business Law Group, which is a separate organization reporting to a separate vice president and assistant general counsel in Amgen's Law Department.

8. In order to perform my professional responsibilities to Amgen, I believe I must have full access to the documents and information produced in this litigation, subject to the terms of the protective order proposed by Amgen's counsel. Such access is needed not only to discuss this action intelligently with Amgen's trial counsel, but also to give input and direction to trial counsel, and to assess accurately whether Amgen's interests in this litigation are adequately and appropriately represented.

9. Based on my experience with the protective order in the ITC proceeding, where Defendants' confidential information was denied to in-house counsel, I do not believe that I would be able to make an informed evaluation of this issues or merits of this dispute, provide proper direction to trial counsel, or advise Amgen with respect to the appropriate conduct of this litigation without the access Amgen has requested for in-house counsel. For example, in being denied access to Defendants' documents that characterized their peg-EPO product and the process by which such product is made, including Defendants' Biologics License Application and Investigational New Drug Applications, I could not independently assess the merits of Defendants' assertions, as set forth in their Answer in the ITC proceeding, that they did not infringe Amgen's patent-in-suit. Nor could I assess which claims should be pursued against Defendants.

10. If I am permitted access to confidential information under the terms of a protective order in this case, I agree to be bound by the terms of such an order and will abide by its terms.

11. In my position at Amgen, and in my previous experience as outside counsel, I have received confidential and highly sensitive information of opposing parties subject to the provisions of several protective orders entered in various proceedings in different jurisdictions. I

have understood and complied with my obligations of confidentiality under those protective orders. No one has ever raised a complaint about my compliance with the terms of a protective order.

12. I declare under penalty and perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: October 24, 2006              /s/ MarySusan Howard
                                     MarySusan Howard

5

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 24, 2006.


                                               /s/ Michael R. Gottfried
                                               Michael R. Gottfried