# EXHIBIT 6

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 05-12237 WGY |
| v. ) | |
| ) | |
| ) | |
| F. HOFFMANN-LAROCHE ) | |
| LTD., a Swiss Company, ROCHE ) | |
| DIAGNOSTICS GmbH, a German ) | |
| Company and HOFFMANN LAROCHE ) | |
| INC., a New Jersey Corporation, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DECLARATION OF WENDY A. WHITEFORD IN SUPPORT OF
PLAINTIFF AMGEN INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
RECONSIDERATION OR CLARIFICATION OF THE NOVEMBER 6, 2006 ORDER**

497798_1

1. I previously submitted a declaration to this Court on October 23, 2006 (Docket No. 130). The statements in that declaration were true at the time I made them and remain true today, except that my title has changed.

2. As I stated in my October 23, 2006 declaration, I have been involved in litigation concerning the patents-in-suit and related U.S. and foreign patents since I joined Amgen in 1996. Historically, I have had both supervisory responsibilities, as well as responsibility for performing litigation tasks necessary to prepare and conduct proceedings before a court, such as for example, drafting and editing briefs, pleadings, expert statements, witness declarations, direct and cross-examination questions, and proposed findings of fact and conclusions of law, as well as selecting evidence and preparing witnesses for deposition and trial. One or another of these patents or related applications has been involved in various patent infringement litigations and validity challenges continuously during my 10 year tenure with Amgen. The type of involvement which I have had on these cases and which Amgen expects of me and the other in-house patent litigation attorneys participating in this case, has afforded me specialized knowledge as to the legal and scientific issues implicated by these patents and erythropoiesis stimulating proteins which is not duplicated by outside counsel.

3. In Roche's Opposition Motion of November 3, 2006, Roche submitted a document that included my name as a member on a Competitive Anemia Task Force – Core Team ("CAT-Core Team"). This CAT-Core Team was formed in January 2005 and had no more than three meetings in the first half of 2005. To the best of my recollection, I participated in two of these meeting. By June of 2005 the team had disbanded. Ms. Howard was not a member of the CAT-Core Team, as alleged by Roche.

4. I was a member of the CAT-Core Team to carry out my responsibility as one of the lawyers preparing the case now pending before this court. Consistent with my October 23 Declaration, my role on this team was limited to providing legal updates, providing legal advice as Amgen contemplated the now pending litigation, and providing referrals to other lawyers in

the department who could provide legal expertise, as needed, on issues outside of my area of expertise.

5.  In addition to the CAT-Core Team, MarySusan Howard and I had a standing invitation to attend meetings of a Global Competitive Intelligence Team. The remit of this Global CI Team was to collect, consolidate and disseminate information related to Roche's commercialization of peg-EPO. To the extent we participated on this team, our role was limited to providing legal advice and referrals to other lawyers in the department and to gain access to information and personnel for purposes of preparing the action now pending before the Court.

6.  While these teams were formed, disbanded and still yet other teams formed, to the extent I participated on such teams, my role remained as described above, i.e., providing legal updates, providing legal advice as Amgen contemplated the now pending litigation, and providing referrals to other lawyers within the department. Due to the demands of this case, the related investigation before the ITC, and the appeal in *Amgen v. TKT*, amongst my other responsibilities, my attendance at the meetings of these teams has been dwindling over the year and I have not participate on any such teams since September 2006. While I believe that I can separate out any Roche confidential information from my responsibilities on such teams at Amgen, to avoid even the appearance of impropriety and to address Roche's stated concerns regarding the treatment of its confidential information, I will refrain from participating on such intra-company teams related to Roche's peg-EPO during the pendency of this litigation.

7.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 29, 2006             /s/    Wendy A. Whiteford
                                            Wendy A. Whiteford