# KAYE SCHOLER LLP

Howard S. Suh
212 836-8562
Fax 212 836-6352
hsuh@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

December 13, 2006

**VIA EMAIL & FAX**

William Gaede, Esq.
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304
Fax: 650-813-5100
Email:wgaede@mwe.com

      Re:   *Amgen, Inc. v. F. Hoffmann-La Roche, Ltd., et al.*

Dear Bill:

     I write to confirm our conversation of December 11 regarding Amgen's Objections and Responses to Defendants' First Set of Requests for the Production of Documents and Things (Nos. 1-123).

### Documents relating to PEG-GCSF, PEG-MGDF, and PEG-NESP (PEG-Aranesp)

     In General Objection No. 11, Amgen has objected to producing any documents related to pegylated proteins or other compounds other than peg-erythropoietin. This objection affects a great deal of individual requests, including at least requests Nos. 19, 20, 27-35, 58, 59, 70, and 105-112. These documents are relevant to Roche's defenses and counterclaims at the very least because they relate to pegylating molecules and MIRCERA™ is a pegylated molecule. Amgen contends that pegylaton is a simple process that can be done easily, and which does not fundamentally alter the materials with which a PEG molecule is reacted. Efforts to pegylate molecules other than erythropoietin are relevant to the nature of pegylation, the ease with which it is done, and the end result of pegylation. These documents go to both the nature and scope of Amgen's asserted patent claims and to whether MIRCERA™ infringes those claims.

     In the spirit of compromise, Roche agreed to limit its requests for documents related to pegylated compounds to those documents related to PEG-GCSF, PEG-MGDF, and PEG-NESP (PEG-darbepoetin alfa). In light of this narrowing of the requests, you agreed to reconsider your position and inform us whether Amgen will produce these documents.

# KAYE SCHOLER LLP

William Gaede, Esq.            2            December 13, 2006

**Amgen General Objection No. 6**

Amgen will produce documents relating to foreign counterparts to Amgen's patents-in-suit to the extent not already produced in the related ITC action. With respect to requests 27-31, you stated that Amgen will consider producing the requested documents for U.S. and foreign patents and applications identified in these requests if they relate to PEG-GCSF, PEG-MGDF, Aranesp®, or PEG-NESP (PEG-darbepoetin alfa). We await Amgen's position on these requests.

**Request For Production No. 32**

Roche believes that this list of articles are all authored, at least in part, by authors associated with Amgen or its affiliated companies or institutions. Amgen represented that article No. 23 by Long was not written by anyone associated with Amgen or its affiliates. If Amgen is willing to produce the requested documents with respect to articles authored by individuals associated with Amgen or its affiliated companies or institutions which relate to PEG-GCSF, PEG-MGDF, and PEG-NESP (PEG-darbepoetin alfa) (Article Nos. 2-4, 7-17, 21-22, 24-34, and 36-40), Roche would be willing to narrow this request to these terms. You indicated that you are going to check with your client and provide Amgen's response to whether it will produce these documents.

**Request For Production No. 35**

For this request seeking documents concerning any ESA, any Pegylated Compounds, pegylation or any related methods currently or previously maintained by the people listed, Roche is willing to limit this request to documents maintained by the listed people which relate to PEG-GCSF, PEG-MGDF, Aranesp®, and PEG-NESP (PEG-darbepoetin alfa) if Amgen is willing to provide this subgroup of documents. You stated that you would discuss this issue with your client, and inform us of Amgen's position.

**Documents relating to Aranesp (darbepoietin alfa)**

In General Objection No. 10, Amgen has objected to Roche's definition of Erythropoiesis Stimulating Agent and ESA, and any specific request reciting those terms because this would include an "unlimited universe of undefined substances." Roche disagrees with this contention, and notes that the definition is extremely similar to the one propounded by Amgen in its own document requests. Nonetheless, as indicated during the conference call, Roche is willing to narrow these requests to marketed ESAs, which primarily would include erythropoietin (e.g. Epogen, Procrit, and other names under which epoetin alfa is sold) and darbepoetin alfa (Aranesp®).

Amgen maintains that Aranesp® documents otherwise responsive to these requests, including at least Request Nos. 20, 24-26, 31, 33-35, 45, 55, 56, 58-74, 78, 86, 87, 105-112, 114, 117, and 118, are not relevant to this litigation, and will not be produced. As we explained

# KAYE SCHOLER LLP

William Gaede, Esq.                                  3                                 December 13, 2006

during the call, documents related to Aranesp® are relevant at least to the scope and meaning of Amgen's patent claims, and to whether MIRCERA™ infringes those claims. Changes to a protein's structure can have dramatic changes on the molecule. Amgen maintains that MIRCERA™ infringes despite having significant differences from EPO. The structure, function, and other characteristics of Aranesp® are relevant to the inquiry of whether ESAs different from EPO are covered by the patent claims. In addition, Aranesp® sales, costs, and marketing documents are relevant to the market for ESA's as a whole - without these documents, the sales, costs and marketing documents for epoetin alfa create an incomplete picture of the market. At the least, these documents are relevant to several of Roche's counterclaims. You indicated that you would reconsider Amgen's position with respect to some of the requests calling for relevant Aranesp® documents, and I urge you to reconsider this issue more broadly with respect to all requests for documents related to ESAs.

### Request For Production No. 21

This requests relates to communications with Steven Elliot regarding the subject matter claimed in Amgen's EPO patents. Steven Elliot conducted much of the work which underlies Amgen's EPO patents, and he has continued to work on the subject matter claimed in Amgen's EPO patents for approximately twenty (20) years. His communications relating to this subject matter are relevant to this case in which those very patents are asserted against Roche. Amgen objected because of the volume of documents this would potentially entail, given the length of time Steven Elliot has been at Amgen. Roche agreed to Amgen's proposal that it would produce these documents if the request was limited to documents in Steven Elliot's custody or control (documents maintained by Elliot).

### Requests for Production Nos. 38-44

You will let us know whether Amgen maintains an objection based on relevance to the documents requested in Requests Nos. 38-44, relating to prior adjudications. If Amgen is willing to produce deposition transcripts, pleadings, motions and supporting papers, responses to interrogatories, responses to request for admissions, and expert reports from these cases, Roche is willing to narrow the request to these types of documents.

### Amgen General Objection No. 7

Amgen maintains its position that it will not produce any documents relevant to Roche's "non-patent counterclaims" until after the Court renders a decision on Amgen's motion to dismiss those counterclaims. Roche maintains that those claims are properly asserted and are a proper scope of discovery unless dismissed.

### Request for Production No. 9

Amgen's objection to this request is based primarily on the fact that the patents-in-suit have a very long prosecution history, and many documents going back many years fall in this

# KAYE SCHOLER LLP

William Gaede, Esq.                    4                    December 13, 2006

category. Roche maintains that despite the long prosecution time period, Roche is entitled to these documents underlying the work in the patents-in-suit. You indicated that Amgen will reconsider its position refusing to produce laboratory notebooks, data, internal memoranda, meting minutes, and correspondence concerning the subject matter claimed in Amgen's EPO patents.

### Sales and Cost Data

For many of the sales and costs requests, including at least Requests Nos. 61-63, 70-72, 74, 116, 119 and 120, Amgen has objected and stated that it will only produce documents from January 1, 2005 forward. You informed us that this date was chosen because as the requests were written, Amgen believed the requests went back too far. Amgen also indicated that it would only produce marketing information for future time periods, starting in 2007. For example, see Amgen's response to Request Nos. 65, 66 and 69. You indicated on the conference call that you were open to considering a more appropriate date for the cutoff of all of these types of documents. Roche proposes that the cut-off for these Requests for Production be 1997 onward. This is a fair date that provides the discovery necessary to Roche, without requiring Amgen to produce these documents going back a large number of years.

### Protective Orders and Confidentiality Agreements

In response to several requests for production, including at least Request Nos. 38-44, 55, 56, 60, 67, 68, 80, 90, 91, 93, 103, 104, and 114, Amgen has stated that it objects to the extent the request requires production of documents the disclosure of which would cause Amgen to violate a protective order or confidentiality agreement. You agreed to give notice to Roche if it withholds any documents because, in Amgen's view, it is prohibited from producing them due to a protective order or confidentiality agreement, including notice of the protective order or confidentiality agreement in question, the other parties to the protective order or confidentiality agreement, the document request to which the documents are responsive, and a general description of the types of documents withheld. You agreed that if Roche was able to get permission from the party which produced the document(s), or which has a confidentiality right under a confidentiality agreement, to allow production of the document(s) to Roche, Amgen would produce those documents.

# KAYE SCHOLER LLP

William Gaede, Esq.                                 5                          December 13, 2006

      I look forward to hearing from you with respect to the several issues with which you were going to either check with your client or reconsider Amgen's objection. I also urge you to reconsider Amgen's position on several of the issues raised in the call, particularly Amgen's refusal to produce documents related to Aranesp®, and documents related to pegylation and pegylated compounds other than PEG-erythropoietin.

Very truly yours,

Howard S. Suh

cc:    Leora Ben-Ami, Esq.
        Thomas F. Fleming, Esq.
        Julia Huston, Esq.
        Deborah Fishman, Esq.