# Exhibit 5

Dockets.Justia.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION No.: 05-cv-12237WGY |
| vs. ) | |
| ) | |
| F. HOFFMANN-LA ROCHE LTD, ROCHE ) | |
| DIAGNOSTICS GmbH, AND HOFFMANN- ) | |
| LA ROCHE INC., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' FIRST SET OF REQUESTS FOR THE
## PRODUCTION OF DOCUMENTS AND THINGS TO AMGEN, INC. (NOS. 1-123)

Pursuant to Federal Rule of Civil Procedure 34(a)(1), Defendants F. Hoffmann-La Roche Ltd., Roche Diagnostics GmbH, and Hoffmann-La Roche, Inc. (collectively "Roche") request that Plaintiff Amgen, Inc. ("Amgen") produce for their inspection and copying all documents and tangible things described below in accordance with the Definitions and Instructions set forth below at the offices of their counsel, Kaye Scholer LLP, 425 Park Avenue, New York, New York within thirty (30) days of service hereof. Each of the following document requests is continuing in nature, such that if Amgen obtains additional documents and things at a later date, such documents and things are to be made available to Roche for inspection and copying.

Defendants further request that Amgen serve Roche with a written response to this First Set of Requests for Documents and Things within thirty (30) days of service hereof in accordance with Fed. R. Civ. Proc. 34.

31353038_V5.DOC

## <u>DEFINITIONS</u>

The following definitions are intended solely for use in this first set of requests for the production of Documents and Things, and any other discovery document in which they are expressly incorporated, and the definitions have no applicability otherwise.

**1.**  The term "Amgen" includes plaintiff Amgen, Inc., any predecessor company or companies, present and past divisions, subsidiaries, joint ventures, parent companies or other legal entities which are or wholly or partially owned or controlled by Amgen, Inc., and each of their respective present or former directors, officers, Employees, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting or purporting to act on behalf of Amgen, Inc.

**2.**  The term "Roche" includes defendants F. Hoffmann-La Roche Ltd., Roche Diagnostics GmbH, and Hoffmann-La Roche, Inc., any predecessor company or companies, present and past divisions, subsidiaries, joint ventures, parent companies or other legal entities which are wholly or partially owned or controlled by F. Hoffmann-La Roche Ltd., Roche Diagnostics GmbH, or Hoffmann-La Roche, Inc., and each of their respective present or former directors, officers, Employees, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting or purporting to act on behalf of F. Hoffmann-La Roche Ltd., Roche Diagnostics GmbH, or Hoffmann-La Roche, Inc.

**3.**  The term "Affiliate" means a person or Entity that, directly or indirectly, through one or more intermediates, controls, is controlled by, or is under common control with the person or Entity specified.

**4.** The term "Entity" means any individual and any other cognizable entity, Including corporations, proprietorships, partnerships, joint ventures, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders.

**5.** The term "Amgen's EPO Patents" means the following patents and any foreign counterparts of any of them, considered individually, in groups of two or more, and collectively:

a.  United States Patent No. 4,703,008 issued October 27, 1987, to Fu-Kuen Lin entitled "DNA Sequences Encoding Erythropoietin" ("the '008 patent"), the application from which it issued United States Patent Application No. 06/675,298, and all related United States Patent Applications Including United States Patent Application Nos. 06/655,841; 06/582,185; and 06/561,024; and

b.  United States Patent No. 5,441,868 issued August 15, 1995, to Fu-Kuen Lin entitled "Production of Recombinant Erythropoietin" ("the '868 patent"), the application from which it issued United States Patent Application No. 07/113,179, and all related United States Patent Applications Including United States Patent Application Nos. 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

c.  United States Patent No. 5,547,933 issued August 20, 1996, to Fu-Kuen Lin entitled "Production of Erythropoietin" ("the '933 patent"), the application from which it issued United States Patent Application No. 08/487,774, and all related United States Patent Applications Including United States Patent Application Nos. 07/202,874; 07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

d.  United States Patent No. 5,618,698 issued April 8, 1997, to Fu-Kuen Lin entitled "Production of Erythropoietin" ("the '698 patent"), the application from which it

issued United States Patent Application No. 08/468,381, and all related United

States Patent Applications Including United States Patent Application Nos.

07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

e.  United States Patent No. 5,621,080 issued April 15, 1997, to Fu-Kuen Lin entitled

"Production of Erythropoietin" ("the '080 patent"), the application from which it

issued United States Patent Application No. 08/468,556, and all related United

States Patent Applications Including United States Patent Application Nos.

07/202,874;  07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024;

and

f.  United States Patent No. 5,756,349 issued May 26, 1998, to Fu-Kuen Lin entitled

"Production of Erythropoietin" ("the '349 patent"), the application from which it

issued United States Patent Application No. 08/468,369, and all related United

States Patent Applications Including United States Patent Application Nos.

07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

g.  United States Patent No. 5,955,422 issued September 21, 1999, to Fu-Kuen Lin

entitled "Production of Erythropoietin" ("the '422 patent"), the application from

which it issued United States Patent Application No. 08/100,197, and all related

United States Patent Applications Including United States Patent Application Nos.

07/957,073; 07/609,744; 07/113,179; 06/675,298; 06/655,841; 06/582,185; and

06/561,024.

**6.**  The term "Patent Application" means all parent, continuation application,

continuation-in-part application, divisional application, file-wrapper continuation, reexamination

proceeding, reissue application, provisional application or abandoned application and other

applications, Including applications from which an issued patent claims priority in whole or in part, regardless of whether the patent application issued as a patent, was abandoned, or is currently pending, and regardless of whether the patent application was filed in the United States Patent and Trademark Office or any foreign patent office or both..

**7.** The term "PTO" means the United States Patent and Trademark Office.

**8.** The term "Document" is used in its customary and broad sense, and includes without limitation the broadest scope given in Fed. R. Civ. P. 34(a), and specifically includes electronic data Including electronic mail, computer files, backup media, and databases; files and file folders; books and their contents, whether printed or recorded or reproduced by hand or any other mechanical process, or written or reproduced by hand or any other mechanical process; and all other tangible manifestations of communications whether or not claimed to be privileged or confidential or personal; namely, agreements, communications, Including intra-company communications, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations; diaries; forecasts; statistical statements; graphs, laboratory and engineering reports and notebooks, changes, plans, drawings, graphs, samples prototypes and tangible Things, photographs, films, pictures, and videotapes; minutes or records of meetings, Including directors' meetings, minutes or records of conferences; expressions of statements or policy; lists of persons attending minutes or records of conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel; records, reports or summaries of negotiations; brochures, pamphlets, advertisements, circulars, trade letters, packing material and notices, press releases; and litigation files and databases, Including drafts of any document, revisions of drafts of any document, original and preliminary notes and marginal comments appearing on any document.

A comment or notation appearing on any document, and not a part of the original document, is considered a separate document. A draft or non-identical copy is a separate document within the meaning of the term.

**9.** The term "Thing" means each item, sample, specimen, concrete or tangible object.

**10.** The term "Electronic Data" includes, but is not limited to, originals and all copies of electronic mail ("e-mail"); activity listings of electronic mail receipts and/or transmittals; voice-mail; audio or video recordings of any kind; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; output resulting from the use of any software program, Including word processing documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; image files Including JPG or JPEG, TIFF, PICT, and BMP; PDF files, batch files in any format, Including ASCII, XML or CSV format; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragments. Electronic data includes any and all information stored in or on hard disks, floppy disks, CD and DVD disks, external hard drives or their equivalent, portable storage devices Including USB or FireWire drives; magnetic tapes of all kinds, and computer chips (Including EPROM, PROM and ROM). Electronic data also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.

**11.** The term "Communication" is used in its broadest sense, and means any transmission of information from one person or Entity to another, by any means, Including oral conversations, telephone calls, written correspondence, memoranda or notes, email, facsimile transmissions, meetings, video conferences, or document transmittals.

**12.** The term "Including" means "including but not limited to."

13.     The term "Person" shall include but is not limited to, any natural person, alive or deceased, business or corporation (whether for-profit or not-for-profit), firm, partnership, sole proprietorship, or other non-corporate business organization, or Employee, agent or representative of the foregoing.

14.     The term "Employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the designated Entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

15.     The term "Concerning" or "Concern" means relating to, referring to, describing, evidencing, constituting, or mentioning in any way.

16.     The term "Erythropoiesis Stimulating Agent" or "ESA" means any substance, drug or pharmaceutical composition that is capable of stimulating the production of red blood cells by bone marrow Including human erythropoietin or erythropoietin from any mammalian species, epoetin alfa, epoetin beta, darbepoetin alfa, and any fragment, mimetic or variant thereof, sold under any brand name, Including Epogen®, Procrit®, Eprex®, NeoRecormon® and Aranesp®.

17.     The term "Pegylated Compounds" means any substance, drug or pharmaceutical incorporating into its chemical structure one or more polyethylene glycol polymers of any weight, size, shape, means of attachment, or degree of branching, and shall include without limitation any of erythropoietin, darbepoetin, brain-derived neurotrophic factor ("BDNF"), granulocyte colony stimulating factor ("G-CSF"), interleukin 2 ("IL-2"), megakaryocyte growth and differentiation factor ("MGDF"), stem cell factor ("SCF"), granulocyte macrophage colony stimulating factor ("GM-CSF"), and tumor necrosis factor ("TNF") chemically modified by pegylation.

18.    As used herein, the words "and" and "or" shall be construed either conjunctively and disjunctively as necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as being outside of its scope; the singular shall be deemed to refer to the plural and vice-versa; and any reference to the male gender shall include the female gender.

19.    As used herein, THE EPO PROJECT refers to Amgen's attempts, whether successful or not, to express any mammalian erythropoietin, including human erythropoietin, in any host cell .  Such attempts include not only those made by Amgen, but also those made by entities or individuals receiving funding from Amgen.

20.    As used herein, TESTIMONY refers to any sworn or unsworn testimony contained in any format, including a transcript, tape recording, declaration or affidavit, plus any exhibits thereto.  Such testimony includes, but is not limited to, all testimony before a court of law, an administrative tribunal, a patent interference, opposition or prosecution proceeding, a deposition and all foreign equivalents.

21.    The term "Health Care Provider" means any person or Entity involved in providing health services to the public, Including Large Dialysis Organization (i.e., Fresenius or DaVita), small or medium chain dialysis centers, independent dialysis centers, hospitals, distributors, purchasing groups, doctors or clinics, Including their affiliated Entities, parents, subsidiaries, for example, DaVita Clinical Research, and related companies.

## <u>INSTRUCTIONS</u>

**1.** You are to produce the original and each non-identical copy of each document or other tangible Thing requested herein which is in Amgen's possession, custody or control, or that of Amgen's officers, directors, Employees, agents, representatives, successors, assigns and attorneys and all persons acting or purporting to act on behalf of Amgen or who are in possession of or who may have obtained information for or on behalf of Amgen in regard to the requested subject matter or any matter pertinent to this case.

**2.** Each Request shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a Request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Request, using your best efforts to do so.

**3.** Whenever a Request calls for information which is not available to Amgen in the form requested, but is available in another form or can be obtained, at least in part, from other data in Amgen's possession, so state and either supply the information requested in the form in which it is available or supply the data from which the information requested can be obtained.

**4.** In the event that any English translation exists, either in part or in full, of any document produced in response to any Request for any document or other tangible Thing herein, Amgen shall produce the original and each non-identical copy of such translation which is in Amgen's possession, custody or control, or that of Amgen's agents, attorneys, accountants, Employees or representatives.

**5.**   If a Request is silent as to the time period for which production of documents and Things is sought, you are to produce all documents originated in whole or in part and of all Things within your possession, custody, or control at any time during the period of 1980 through the date of your production.

**6.**   This Request is continuing in nature.  Amgen shall supplement its responses to this Request, as and when additional responsive documents become known or available to Amgen, or when so requested by Roche prior to trial.

**7.**   If Amgen contends that any document requested to be produced is protected from discovery by attorney-client privilege, attorney work product doctrine or any other ground of privilege, then Amgen shall identify for each such document:

(a)    the name (title or position of the authors) of the document;

(b)    the existence and identity of any attachments to the document;

(c)    the name and title or position of all persons designated as addressees or otherwise receiving copies of the document;

(d)    the general subject matter of the document;

(e)    the date of the document;

(f)    the medium (e.g., electronic or paper), type (e.g., memorandum, letter, email report, etc.) and length of the document;

(g)    the specific grounds for withholding the document, Including the specific facts upon which Amgen will rely to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege.

If an attachment to a document is also being withheld on the grounds of privilege, in addition to being identified as required by subpart (b), above, such attachment shall be identified in the privilege log as a separate document.

**8.**   All requested documents produced to Roche shall be organized either to correspond to the categories in these requests, or as they are kept in the ordinary course of business.  In either case, all documents produced shall:

(a)   be produced with all associated file labels, file headings, and file folders together with the responsive documents from each file, and each file shall be identified as to its owner or custodian; for any document originally stored in electronic media, the file name, path and directory information for each such documents shall also be provided;

(b)   if produced in hard copy, all pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each document, regardless of whether such attachments themselves are responsive to these requests;

(c)   all documents that cannot be legibly copied shall be produced in original form.

**9.**   If any document responsive to this request once existed but has been destroyed, lost, discarded or is otherwise not available for production, Amgen shall identify in writing each such document, Including the date of the document's creation, a description of the document's subject matter, the name and address of each person who prepared, received, viewed, or had possession, custody or control of the document or otherwise had knowledge of its subject matter, and a statement of the circumstances under which the document was destroyed, lost, discarded or why such document is not otherwise available for production.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Electronic Data that support the allegations that form the basis of the complaint filed by Amgen in <u>Amgen, Inc. v. F. Hoffmann-La Roche Ltd, Roche Diagnostics GmbH, and Hoffmann-La Roche, Inc.</u>, C.A. No. 05-cv-12237WGY, D. Mass (Nov. 8, 2005).

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Electronic Data that support the allegations that form the basis of the Verified Complaint of Amgen Inc. under Section 337 of the Tariff Act of 1930, as Amended, filed with the International Trade Commission on April 11, 2006, <u>In the Matter of: Certain Products and Pharmaceutical Compositions Containing Recombinant Human Erythropoietin</u>.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents sufficient to identify all requests for an investigation by the International Trade Commission in <u>In the Matter of: Certain Products and Pharmaceutical Compositions Containing Recombinant Human Erythropoietin</u>, filed April 11, 2006.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Electronic Data which Amgen relied upon and intends to rely upon in the proceeding before the International Trade Commission and the appeal therefrom, <u>In the Matter of: Certain Products and Pharmaceutical Compositions Containing Recombinant Human Erythropoietin</u>, first filed April 11, 2006.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Electronic Data Concerning the preparation and/or prosecution of all Patent Applications for Amgen's EPO Patents and any related Patent Applications, Including any internal invention disclosures related to Amgen's EPO Patents, any communications to and from

the PTO related to the prosecution of Amgen's EPO Patents, all documents related to any communications to and from the PTO related to the prosecution of Amgen's EPO Patents, and all documents provided to outside counsel in connection with Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Electronic Data relating to any Information Disclosure Statement Concerning the prosecution of any of the Patent Applications for Amgen's EPO Patents, Including any prior art reviewed and/or considered in connection with said Information Disclosure Statement, and any documents related in any way to such prior art.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Electronic Data Concerning any prior art reviewed, known to, or considered by any patent agent, attorney, inventor, or declarant involved in any way with the prosecution of the Patent Applications for Amgen's EPO Patents, Including any document related in any way to such prior art.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Electronic Data Concerning any communication, investigation, study, evaluation, and/or opinion Concerning any declaration prepared and/or filed in connection with the prosecution of Amgen's EPO patents, including any documents Concerning the drafting of such declaration, including any draft of such declaration.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Electronic Data, Including laboratory notebooks, data, internal memoranda, meeting minutes, and correspondence Concerning the subject matter claimed in Amgen's EPO Patents Including without limitation the specific examples disclosed in Amgen's EPO Patents and any product made by Amgen utilizing the methods and/or processes described in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Electronic Data Concerning any work of Fu-Kuen Lin and/or his researchers or assistants, that refers to or relates to the subject matter disclosed or claimed in any of Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Electronic Data Concerning the preparation and/or prosecution of any non-U.S. patents or Patent Applications for Amgen's EPO Patents, and any related Patent Applications.

**REQUEST FOR PRODUCTION NO. 12:**

All prior art to the subject matter claimed in Amgen's EPO Patents or any U.S. or non-U.S. patents or Patent Applications corresponding in whole or in part to such patents and any related Patent Applications, Including prior art cited or referred to during the preparation or prosecution of such patents or Patent Applications.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Electronic Data Concerning the alleged conception of each invention claimed or described in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Electronic Data Concerning the alleged reduction to practice of each invention claimed or described in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Electronic Data Concerning the patentability of the subject matter of the inventions claimed in Amgen's EPO Patents, Including without limitation: any search for U.S. or foreign patents, patent applications or literature regarding expression or production of erythropoietin; and any search, study or investigation of the patentability of an erythropoietin coding sequence or cells expressing erythropoietin.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Electronic Data Concerning any investigation, study, evaluation or opinion Concerning prior art to Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Electronic Data Concerning any investigation, study, evaluation or opinion Concerning the infringement, validity, or enforceability of Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Electronic Data Concerning any communications with Fu-Kuen Lin and/or his researchers or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Electronic Data Concerning any communications with Lawrence Souza and/or his researchers or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents, or to the design, development and manufacture of pegylated erythropoietin or pegylated G-CSF.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Electronic Data Concerning any communications with Joan C. Egrie and/or her researchers or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents, or to the design development and manufacture of any erythropoiesis stimulating agent other than human erythropoietin, or to the design, development and manufacture of any Pegylated Compound.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Electronic Data Concerning any communications with Stephen Elliott and/or his researchers or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Electronic Data, Including meeting minutes and project reports Concerning Amgen's EPO Patents, and/or any of the subject matter disclosed or claimed therein.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Electronic Data Concerning any scientific publications, posters, conferences, meetings, symposiums or gatherings prepared or attended by Fu-Kuen Lin and/or his researchers or assistants that Concern, in any way, the subject matter claimed or disclosed in any of the asserted claims of Amgen's EPO Patents, Including all papers, slides, abstracts, speeches, outlines, or notes made or submitted by or on behalf of such individuals.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Electronic Data Concerning any submissions to or communications with the United States Food and Drug Administration (FDA) by or on behalf of Amgen, with respect to any ESA, Including epoetin alfa, marketed and sold under the brand names Epogen®, Procrit®, Eprex®, and Erypo®, and darbepoetin alfa, marketed and sold under the brand name Aranesp®.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Electronic Data Concerning any submissions to or communications with any government agency or department which regulates drugs or biologics outside the United States by or on behalf of Amgen, with respect to any ESA, Including epoetin alfa, marketed and sold under the brand names Epogen®, Procrit®, Eprex®, and Erypo®, and darbepoetin alfa, marketed and sold under the brand name Aranesp®.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Electronic Data Concerning communications between Amgen or any of its employees, agents, designees, directors or consultants, and any regulatory agency responsible for approval of drugs for use in humans, Including the FDA and the EMEA, wherein

said communications mention CERA or any compound having erythropoiesis stimulating

activity sponsored by Roche.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents and Electronic Data Concerning the preparation and/or prosecution of any

Patent Application Concerning the following patents, and all Documents and Electronic Data

Concerning the preparation and/or prosecution of any non-U.S. patents or Patent Applications

corresponding in whole or in part to such patents:

1. U.S. Patent No. 5,264,209, titled "Modified HIL-6";

2. U.S. Patent No. 5,747,639, titled "Use of Hydrophobic Interaction Chromatography to Purify Polyethylene Glycols";

3. U.S. Patent No. 5,766,581, titled "Method for Treating Mammals with Monopegylated Proteins that Stimulates Megakaryocyte Stimulation and Differentiation";

4. U.S. Patent No. 5,770,577, titled "BDNF and NT-3 Polypeptides Selectively Linked to Polyethylene Glycol";

5. U.S. Patent No. 5,795,569, titled "Mono-Pegylated Proteins that Stimulate Megakaryocyte Growth and Differentiation";

6. U.S. Patent No. 5,824,778, titled "Chemically-Modified G-CSF";

7. U.S. Patent No. 5,824,784, titled "N-Terminally Modified Protein Compositions and Methods";

8. U.S. Patent No. 5,856,298, titled "Erythropoietin Isoforms";

9. U.S. Patent No. 5,935,964, titled "Use of Hydrophobic Interaction Chromatography to Purify Polyethylene Glycols";

10. U.S. Patent No. 5,985,265, titled "N-Terminally Modified Protein Compositions and Methods";

11. U.S. Patent No. 6,166,183, titled "Chemically Modified G-CSF";

12. U.S. Patent No. 6,420,339, titled "Site-Directed Dual Pegylation of Proteins for Improved Bioactivity and Biocompatibility";

13. U.S. Patent No. 6,420,340, titled "Chemical Modification of Proteins to Improve Biocompatibility and Bioactivity";

14. U.S. Patent No. 6,433,158, titled "Site Specific Protein Modification";

15.   U.S. Patent No. 6,441,136, titled "Site Specific Protein Modification";

16.   U.S. Patent No. 6,451,986, titled "Site Specific Protein Modification";

17.   U.S. Patent No. 6,548,644, titled "Site Specific Protein Modification";

18.   U.S. Patent No. 6,552,170, titled "Pegylation Reagents and Compounds Formed Therewith";

19.   U.S. Patent No. 6,565,841, titled "Pulmonary Administration of Granulocyte Colony Stimulating Factor";

20.   U.S. Patent No. 6,586,398, titled "Chemically Modified Novel Erythropoietin Stimulating Protein Compositions and Methods";

21.   U.S. Patent No. 7,090,835, titled "N-Terminally Chemically Modified Protein Compositions and Methods."

## REQUEST FOR PRODUCTION NO. 28:

All Documents and Electronic Data Concerning the preparation and/or prosecution of any Patent Application Concerning the following patents, and all Documents and Electronic Data Concerning the preparation and/or prosecution of any U.S. patents or Patent Applications corresponding in whole or in part to such patents:

1.   European Patent No. EP 0726778 B1, titled, "Oral Delivery System of Chemically Modified Proteins G-CSF";

2.   European Patent No. EP 0428267, titled "Erythropoietin Isoforms";

3.   European Patent No. EP 0640619, titled "Erythropoietin Analogs with Additional Glycosylation Sites";

4.   European Patent No. EP 0822199, titled "N-Terminally Monopegylated Polypeptides and Process for Their Preparation."

## REQUEST FOR PRODUCTION NO. 29:

All Documents and Electronic Data Concerning the alleged conception and reduction to practice of each invention claimed or described in the United States patents listed in Request for Production No. 27.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Electronic Data Concerning the alleged conception and reduction to practice of each invention claimed or described in the foreign patents listed in Request for Production No. 28.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Electronic Data Concerning any pending United States or foreign Patent Application relating to any ESA and/or any Pegylated Compounds or related methods.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Electronic Data Concerning the preparation and publication of the following articles, Including all drafts, underlying data and lab notebooks, and all communications referring or relating thereto:

1. Ankeny, et al., PEGYLATED BRAIN-DERIVED NEUROTROPHIC FACTOR SHOWS IMPROVED DISTRIBUTION INTO THE SPINAL CORD AND STIMULATES LOCOMOTOR ACTIVITY AND MORPHOLOGICAL CHANGES AFTER INJURY, Exp. Neurol. 170, 85 - 100 (2001)

2. Archimbaud, et al., A RANDOMIZED, DOUBLE-BLIND, PLACEBO-CONTROLLED STUDY WITH PEGYLATED RECOMBINANT HUMAN MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR (PEG-RHUMGDF) AS AN ADJUNCT TO CHEMOTHERAPY FOR ADULTS WITH DE NOVO ACUTE MYELOID LEUKEMIA, Blood 94, 3694-3701 (1999)

3. Basser, et al., RANDOMIZED, BLINDED, PLACEBO-CONTROLLED PHASE I TRIAL OF PEGYLATED RECOMBINANT HUMAN MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR WITH FILGRASTIM AFTER DOSE-INTENSIVE CHEMOTHERAPY IN PATIENTS WITH ADVANCED CANCER, Blood 89, pp 3118 - 28 (1997)

4. Beveridge, et al., IMPACT OF LONG-ACTING GROWTH FACTORS ON PRACTICE DYNAMICS AND PATIENT SATISFACTION, Pharmacotherapy 23, 101S - 109S (2003)

5. Bukowski, et al., POLYETHYLENE GLYCOL CONJUGATED INTERLEUKIN-2: CLINICAL AND IMMUNOLOGIC EFFECTS IN PATIENTS WITH ADVANCED RENAL CELL CARCINOMA, Investigational New Drugs 11, pp 211 - 17 (1993)

6.  Callahan, et al., SODIUM CHLORIDE ENHANCES THE STORAGE AND
    CONFORMATIONAL STABILITY OF BDNF AND PEG-BDNF, Pharm. Res. 18, pp 261
    - 266 (2001)

7.  Crawford, ONCE-PER-CYCLE PEGFILGRASTIM (NEULASTA) FOR THE
    MANAGEMENT OF CHEMOTHERAPY-INDUCED NEUTROPENIA, Seminars in
    Oncology 30 (Suppl. 13), 24 - 30 (2003)

8.  Crawford, CLINICAL USES OF PEGYLATED PHARMACEUTICALS IN ONCOLOGY,
    Cancer Treatment Rev. 28 (Suppl. A.), 7 - 11 (2002)

9.  De Boer, et al., PHARMACOKINETIC ANALYSIS OF PEGYLATED
    MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR IN HUMANS, Growth
    Factors 18, pp 215 - 226 (2000)

10. Fanucchi, et al., EFFECTS OF POLYETHYLENE GLYCOL–CONJUGATED
    RECOMBINANT HUMAN MEGAKARYOCYTE GROWTH AND DEVELOPMENT
    FACTOR ON PLATELET COUNTS AFTER CHEMOTHERAPY FOR LUNG CANCER,
    N.E.J.M. 336, pp 404 - 409 (1997)

11. Farese, et al., HEMATOPOIETIC RECOVERY FOLLOWING AUTOLOGOUS BONE
    MARROW TRANSPLANTATION IN A NONHUMAN PRIMATE: EFFECT OF VARIATION
    IN TREATMENT SCHEDULE WITH PEG-RHUMGDF, Stem Cells 21, pp 79 - 89
    (2003)

12. Green, et al., A RANDOMIZED DOUBLE-BLIND MULTICENTER PHASE III STUDY OF
    FIXED-DOSE SINGLE-ADMINISTRATION PEGFILGRASTIM VERSUS DAILY
    FILGRASTIM IN PATIENTS RECEIVING MYELOSUPPRESSIVE CHEMOTHERAPY,
    Annals of Oncology 14, 29 - 35 (2003)

13. Guerra, et al., PEGYLATION PREVENTS THE N-TERMINAL DEGRADATION OF
    MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR, Pharm. Res. 15, pp
    1822 - 1827 (1998)

14. Harker, et al., EFFECTS OF MEGAKARYOCYTE GROWTH AND DEVELOPMENT
    FACTOR ON PLATELET PRODUCTION, PLATELET LIFE SPAN, AND PLATELET
    FUNCTION IN HEALTHY HUMAN VOLUNTEERS, Blood 95, pp 2514 - 22 (2000)

15. Harker, et al., PREVENTION OF THROMBOCYTOPENIA AND NEUTROPENIA IN A
    NONHUMAN PRIMATE MODEL OF MARROW SUPPRESSIVE CHEMOTHERAPY BY
    COMBINING PEGYLATED RECOMBINANT HUMAN MEGAKARYOCYTE GROWTH
    AND DEVELOPMENT FACTOR AND RECOMBINANT HUMAN GRANULOCYTE
    COLONY-STIMULATING FACTOR, Blood 89, pp 155 - 165 (1997)

16. Harker, et al., DOSE-RESPONSE EFFECTS OF PEGYLATED HUMAN
    MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR ON PLATELET
    PRODUCTION AND FUNCTION IN NONHUMAN PRIMATES, Blood 88, pp 511 - 21
    (1996)

17. Jensen-Pippo, et al., ENTERAL BIOAVAILABILITY OF HUMAN GRANULOCYTE COLONY STIMULATING FACTOR CONJUGATED WITH POLY(ETHYLENE GLYCOL), Pharm. Res. 13, pp 102 - 107 (1996)

18. Kendrick, et al., ONLINE SIZE-EXCLUSION HIGH-PERFORMANCE LIQUID CHROMATOGRAPHY LIGHT SCATTERING AND DIFFERENTIAL REFRACTOMETRY METHODS TO DETERMINE DEGREE OF POLYMER CONJUGATION TO PROTEINS AND PROTEIN–PROTEIN OR PROTEIN–LIGAND ASSOCIATION STATES, Analytical Biochemistry 299, pp 136 - 146 (2001)

19. Kerwin, et al., INTERACTIONS BETWEEN PEG AND TYPE I SOLUBLE TUMOR NECROSIS FACTOR RECEPTOR: MODULATION BY pH AND BY PEGYLATION AT THE N TERMINUS, Protein Science 11, pp 1825 - 1833 (2002)

20. Kerwin, et al., INTERACTIONS BETWEEN PEG AND TYPE I SOLUBLE TUMOR NECROSIS FACTOR RECEPTOR: MODULATION BY pH AND BY PEGYLATION AT THE N TERMINUS, Protein Science 11, pp 1825 - 1833 (2002)

21. Kinstler, et al., MONO-N-TERMINAL POLY(ETHYLENE GLYCOL)-PROTEIN CONJUGATES, Adv. Drug Deliv. Rev. 54, pp 477 - 485 (2002)

22. Kinstler, et al., CHARACTERIZATION AND STABILITY OF N-TERMINALLY PEGYLATED rhG-CSF, Pharm. Res. 13, pp 996 - 1002 (1996)

23. Long, et al., DESIGN OF HOMOGENEOUS, MONOPEGYLATED ERYTHROPOIETIN ANALOGS WITH PRESERVED IN VITRO BIOACTIVITY, Exp. Hematol. 34, pp 697 - 704 (2006)

24. Lord, et al., KINETICS OF NEUTROPHIL PRODUCTION IN NORMAL AND NEUTROPENIC ANIMALS DURING THE RESPONSE TO FILGRASTIM (r-metHu G-CSF) OR FILGRASTIM SD/01 (PEG-r-metHu G-CSF), Clinical Cancer Res. 7, 2085 - 90 (2001)

25. Molineux, PEGFILGRASTIM: USING PEGYLATION TECHNOLOGY TO IMPROVE NEUTROPENIA SUPPORT IN CANCER PATIENTS, Anti-Cancer Drugs 14, 259 - 264 (2003)

26. Molineux, PEGYLATION: ENGINEERING IMPROVED BIOPHARMACEUTICALS FOR ONCOLOGY, Pharmacotherapy 23, 3S - 8S (2003)

27. Molineux, et al., A NEW FORM OF FILGRASTIM WITH SUSTAINED DURATION IN VIVO AND ENHANCED ABILITY TO MOBILIZE PBPC IN BOTH MICE AND HUMANS, Experimental Hematology 27, pp 1724 - 34 (1999)

28. Molineux, et al., AN ANALYSIS OF THE EFFECTS OF COMBINED TREATMENT WITH RMGM-CSF AND PEG-RHUMGDF IN MURINE BONE MARROW TRANSPLANT RECIPIENTS, Stem Cells 15, pp 43 - 49 (1997)

29. Molineux, et al., MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR ACCELERATES PLATELET RECOVERY IN PERIPHERAL BLOOD PROGENITOR CELL TRANSPLANT RECIPIENTS, Blood 88, pp 366 - 376 (1996)

30. Molineux, et al., MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR STIMULATES ENHANCED PLATELET RECOVERY IN MICE AFTER BONE MARROW TRANSPLANTATION, Blood 88, pp 1509 - 1514 (1996)

31. Morstyn, et al., FILGRASTIM (r-met Hu G-CSF) IN THE 21ST CENTURY: SD/01, Acta Haematol. 105, 151 - 55 (2001)

32. Nichol et al., MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR ANALYSES OF IN VITRO EFFECTS ON HUMAN MEGAKARYOPOIESIS AND ENDOGENOUS SERUM LEVELS DURING CHEMOTHERAPY-INDUCED THROMBOCYTOPENIA, J. Clin. Invest. 95, pp 2973 - 2978 (1995)

33. Niven, et al., THE PULMONARY ABSORPTION OF AEROSOLIZED AND INTRATRACHEALLY INSTILLED rhG-CSF AND MONOPEGYLATED rhG-CSF, Pharm. Res. 12, pp 1343 - 1349 (1995)

34. O'Malley et al., ADMINISTRATION OF PEGYLATED RECOMBINANT HUMAN MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR TO HUMANS STIMULATES THE PRODUCTION OF FUNCTIONAL PLATELETS THAT SHOW NO EVIDENCE OF IN VIVO ACTIVATION, Blood 88, pp 3288 - 3298 (1996)

35. Pettit, et al., STRUCTURE-FUNCTION STUDIES OF INTERLEUKIN 15 USING SITE-SPECIFIC MUTAGENESIS, POLYETHYLENE GLYCOL CONJUGATION, AND HOMOLOGY MODELING, J. Biol. Chem. 272, 2312 - 2318 (1997)

36. Rajan, et al., MODULATION OF PROTEIN AGGREGATION BY POLYETHYLENE GLYCOL CONJUGATION: GCSF AS A CASE STUDY, Protein Sci. 15, pp 1063 -1075 (2006)

37. Sarkar, et al., CELL-LEVEL PHARMACOKINETIC MODEL OF GRANULOCYTE COLONY-STIMULATING FACTOR: IMPLICATIONS FOR LIGAND LIFETIME AND POTENCY IN VIVO, Molecular Pharmacology 63, 147 - 158 (2003)

38. Schiffer et al., A DOUBLE-BLIND, PLACEBO-CONTROLLED TRIAL OF PEGYLATED RECOMBINANT HUMAN MEGAKARYOCYTE GROWTH AND DEVELOPMENT FACTOR AS AN ADJUNCT TO INDUCTION AND CONSOLIDATION THERAPY FOR PATIENTS WITH ACUTE MYELOID LEUKEMIA, Blood 95, pp 2530 - 2535 (2000)

39. Ulich, et al., THE PROLONGED HEMATOLOGIC EFFECTS OF A SINGLE INJECTION OF PEG-rHuMGDF IN NORMAL AND THROMBOCYTOPENIC MICE, Exp. Hematol. 27, pp 117 - 130 (1999)

40. Ulich et al., SYSTEMIC HEMATOLOGIC EFFECTS OF PEG-RHUMGDF-INDUCED MEGAKARYOCYTE HYPERPLASIA IN MICE, Blood 87, pp 5006 - 5015 (1996)

41.  Verdijk & Kuter et al., THROMBOPOIETIN IN HEALTHY DONORS /
     THROMBOPOIETIN THERAPY INCREASES PLATELET YIELDS IN HEALTHY
     PLATELET DONORS, Blood 99, pp 3867 - 3868 (2002)

42.  Zimmerman, et al., SCHEDULE DEPENDENCY OF THE ANTITUMOR ACTIVITY AND
     TOXICITY OF POLYETHYLENE GLYCOL-MODIFIED INTERLEUKIN 2 IN MURINE
     TUMOR MODELS, Can. Res. 49, pp 6521 - 6528 (1989)

**REQUEST FOR PRODUCTION NO. 33:**

All Documents and Electronic Data Concerning the preparation and publication of any

articles not listed in Request for Production No. 32 that refer or relate to any ESA, any Pegylated

Compounds, pegylation or any related methods, Including all drafts, underlying data and lab

notebooks, and all Communications referring or relating thereto.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Electronic Data Concerning any ESA, any Pegylated Compounds,

pegylation or any related methods maintained by Graham Molineux, Olaf Kinstler and/or

Stephen Elliot and/or their researchers or assistants.

<u>**REQUEST FOR PRODUCTION NO. 35:**</u>

All Documents and Electronic Data Concerning any ESA, any Pegylated Compounds,

pegylation or any related methods currently or previously maintained by the following people:

1.  Thomas Boone
2.  David N. Brems
3.  Robert Briddell
4.  William J. Callahan
5.  Byeong S. Chang
6.  Art Cohen
7.  Randolph B. DePrince
8.  Stephen P. Eisenberg
9.  Gary S. Elliott
10. Christine E. Farrar
11. Frederick A. Fletcher
12. MaryAnn Foote
13. Nancy E. Gabriel
14. Sheila Gardner
15. Colin V. Gegg
16. V. Goldshteyn
17. Alan D. Habberfield
18. James B. Hamburger
19. Cynthia Hartley
20. R. Wayne Hendren
21. Jerry M. Housman
22. Anna Y. Ip
23. Kathleen E. Jensen-Pippo
24. Brent S. Kendrick
25. Brent Kern
26. Bruce A. Kerwin
27. Patrick Kerzic
28. Elliot Korach
29. Andrew A. Kosky
30. David Ladd
31. Scott L. Lauren
32. Tiansheng Li
33. B. C. Liang
34. Pamela Lockbaum
35. Alexis M .K. Lueras
36. Patricia McElroy
37. Eugene S. Medlock
38. Mary Ann Miller-Messana
39. Russell T. Migita
40. George Morstyn

41. Linda O. Narhi
42. Ralph W. Niven
43. Amiee G. Paige
44. Rahul S. Rajan
45. Lloyd Ralph
46. J. Renwick
47. Gisela Schwab
48. Linda Shaner
49. Christopher Sloey
50. Greg Stoney
51. Weston Sutherland
52. Lisa D. Trebasky
53. T. Tressel
54. Michael Treuheit
55. Tom Ulich
56. Tim Walker
57. K. Lane Whitcomb
58. J. Wilson
59. D. Winters
60. Qiao Yan
61. Heather Yeghnazar
62. John D. Young
63. V. Zani
64. Yu Zhang

## REQUEST FOR PRODUCTION NO. 36:

All Documents and Electronic Data Concerning any Reexamination Proceedings,

Interference Proceedings and/or Opposition Proceedings, for any and all of Amgen's EPO

Patents, related patents, Patent Applications or related Patent Applications, Including Fritsch et

al. v. Lin, Interference No. 102,096; Fritsch et al. v. Lin, Interference No. 102,097; and Fritsch et

al. v. Lin, Interference No. 102,334; Including transcripts from depositions and interviews,

expert reports, and all external references relied upon, and further Including all draft and final

versions of pleadings and submissions involved in the aforementioned actions.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents and Electronic Data Concerning any Protests by the Public Against

Pending Applications pursuant to 37 C.F.R. 1.291 for any and all of Amgen's EPO Patents, or

Patent Applications, Including the Protest filed on or about July 23, 1993 by Por-Hsiung Lai

Regarding Inventorship of United States Patent Application No. 07/113,179, Including

transcripts from depositions and interviews, expert reports, and all external references relied

upon, and further Including all draft and final versions of pleadings and submissions involved in

the aforementioned actions.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents and Electronic Data Concerning Amgen, Inc. v. Chugai Pharm. Co., Ltd.

and Genetics Institute, Inc., Civ. A. No. 87-2617-Y, D. Mass, Including all draft and final

versions of pleadings, all docketed documents and official correspondence and drafts of such

documents; all memoranda of law and drafts of memoranda; Including also transcripts from

depositions and interviews, interrogatories, responses and objections to interrogatories, document

requests, responses and objections to document requests, requests for answers and responses and

objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as

demonstrative exhibits or evidence at trial; all external references relied upon; and any other

Document, Electronic Data, or Communication related to this action as well as any other

Document, Electronic Data, or Communication related to any subsequent appeals or

adjudications arising from the aforementioned civil action.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents and Electronic Data Concerning <u>Amgen, Inc., et al. v. Genetics Institute,</u> <u>Inc.,</u> Civ. A. No. 94-11818-WGY, D. Mass, Including all draft and final versions of pleadings, all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all external references relied upon; and any other Document, Electronic Data, or Communication related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned civil action.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Electronic Data Concerning <u>Amgen, Inc., v. Hoechst Marion</u> <u>Roussel, Inc. and Transkaryotic Therapies, Inc.,</u> Civ. A. No. 97-10814-WGY, D. Mass, Including all draft and final versions of pleadings, all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all external references relied upon; and any other Document, Electronic Data, or Communication

related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned civil action.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents and Electronic Data Concerning <u>Amgen, Inc., v. Thomas Scully and Tommy Thompson</u>, Civ. A. No. 1:02CV02259, D.D.C., Including all draft and final versions of pleadings, all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all external references relied upon; and any other Document, Electronic Data, or Communication related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned civil action.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents and Electronic Data Concerning the arbitration before the America Arbitration Association, No. 51 13300242 97, between Ortho-Biotech, Inc. and Ortho-McNeil Pharmaceutical Corp. as claimants and Amgen and Kirin-Amgen, Inc. as respondents, Including all draft and final versions of forms submitted to the arbitrators, all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, all discovery Including interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers;

expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence in the arbitration; all external references relied upon; and any other Document, Electronic Data, or Communication related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned arbitration.

## REQUEST FOR PRODUCTION NO. 43:

All Documents and Electronic Data Concerning <u>Ortho Biotech Products, L.P. v. Amgen, Inc.</u>, Civ. A. No. 3:05-cv-04850-SRC-JJH, D.N.J., Including all draft and final versions of pleadings, all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all external references relied upon; and any other Document, Electronic Data, or Communication related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned civil action.

## REQUEST FOR PRODUCTION NO. 44:

All Documents and Electronic Data Concerning proceedings Concerning recombinant human erythropoietin in the United Kingdom Including <u>Kirin-Amgen, Inc. v. Hoechst Marion Roussel Ltd</u>, EWCA Civ 1096 (2002), <u>Kirin-Amgen, Inc. v. Hoechst Marion Roussel Ltd</u>, IP & T 694 Civ 1096 (2003), and <u>Kirin-Amgen, Inc. v. Hoechst Marion Roussel Ltd</u>, UKHL 46 (2004), Including all draft and final versions of pleadings, all docketed documents and official

correspondence and drafts of such documents; all memoranda of law and drafts of memoranda;

Including also transcripts from depositions and interviews, interrogatories, responses and

objections to interrogatories, document requests, responses and objections to document requests,

requests for answers and responses and objections to answers; expert reports; subpoenas; all

Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all

external references relied upon; and any other Document, Electronic Data, or Communication

related to this action as well as any other Document, Electronic Data, or Communication related

to any subsequent appeals or adjudications arising from the aforementioned civil action.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents and Electronic Data Concerning any communications between or

Concerning Amgen and Leroy Hood and/or his pre-doctoral, postdoctoral and professional

researchers, or his colleagues, collaborators or assistants, that generally refer or relate to protein

or nucleic acids and related technologies, or more specifically refer or relate to the subject matter

disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents and Electronic Data Concerning any communications between or

Concerning Amgen and Eugene Goldwasser and/or his pre-doctoral, postdoctoral and

professional researchers, or his colleagues, collaborators or assistants, that generally refer or

relate to mammalian proteins, Including human proteins, or more specifically refer or relate to

the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents and Electronic Data Concerning any communications with The University of Chicago, Including any affiliated researchers, clinicians, technicians or assistants, that refer to or relate to funding or administration of any research projects in which Amgen either commissioned, sponsored, sanctioned, participated or supported in any way, Including financial and material support, said projects related to any discipline Concerning the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Electronic Data Concerning Amgen and Leroy Hood and/or his pre-doctoral, postdoctoral and professional researchers, or his colleagues, collaborators or assistants, that generally refer or relate to protein or nucleic acids and related technologies, or more specifically refer or relate to the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents and Electronic Data Concerning Amgen and Eugene Goldwasser and/or his pre-doctoral, postdoctoral and professional researchers, or his colleagues, collaborators or assistants, that generally refer or relate to mammalian proteins, Including human proteins, or more specifically refer or relate to the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 50:**

All Documents and Electronic Data Concerning The University of Chicago, Including any affiliated researchers, clinicians, technicians or assistants, that refer to or relate to funding or administration of any research projects in which Amgen either commissioned, sponsored, sanctioned, participated or supported in any way, Including financial and material support, said projects related to any discipline Concerning the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents, Electronic Data and Communications Concerning any animal model for anemia, chronic kidney disease or end-stage renal disease.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents and Electronic Data Concerning and/or sufficient to identify the organization of and the responsibilities of officers and Employees of Amgen, Including the names, job titles and departments of all custodians of documents produced and to be produced by Amgen in this litigation.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents and Electronic Data sufficient to identify all files or repositories in which any document responsive to these Requests is maintained in the normal course of business, and each index, key, code or other means of accessing and locating documents within such files or repositories.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents and Electronic Data Concerning and/or sufficient to identify Amgen's policies and procedures for the custodial retention and/or destruction of documents.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Electronic Data Concerning any collaboration, joint venture, agreement or communication, Including any written or oral discussions and correspondence, and any drafts of the same, between Amgen and any third parties, Including Amgen's Affiliates and partners, Concerning any effort or attempt, successful or otherwise, to license or grant rights under Amgen's EPO patents, related Patents or related Patent Applications.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents and Electronic Data Concerning any collaboration, joint venture, agreement or communication, Including any written or oral discussions and correspondence, and any drafts of the same, between Amgen and any third parties, Including Amgen's Affiliates and partners, Concerning any ESA or related methods or processes.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents and Electronic Data Concerning any covenants not to sue, demands made against any person to cease activities alleged to infringe Amgen's EPO Patents or any U.S. or foreign counterparts, or releases from charges of infringement or conveyances that Amgen has granted that involves any claim of Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents and Electronic Data Concerning any agreement between Roche and Amgen that refers or relates to any ESA, G-CSF, and/or any pegylated derivatives thereof.

**REQUEST FOR PRODUCTION NO. 59:**

All documents and Electronic Data reflecting plans, agreements, meetings or Communications with or about Roche Concerning pegylation of G-CSF or importation of a pegylated G-CSF product into the United States, Including communications involving Kevin Sharer, Art Brauer, Larry Souza, Robin Campbell or George Morstyn.

**REQUEST FOR PRODUCTION NO. 60:**

All Documents and Electronic Data Concerning any agreement between Amgen and Fresenius Medical Care to supply Epogen® or Aranesp®.

**REQUEST FOR PRODUCTION NO. 61:**

All Documents and Electronic Data Concerning Amgen's share of total sales in the United States of Erythropoietin Stimulating Agents ("ESAs") for the treatment of patients having End Stage Renal Disease who are receiving dialysis treatment("ESRD").

**REQUEST FOR PRODUCTION NO. 62:**

All Documents and Electronic Data Concerning Amgen's share of the total sales in the United States of ESAs for the treatment of patients having Chronic Kidney Disease who are not receiving dialysis treatment ("CKD").

**REQUEST FOR PRODUCTION NO. 63:**

All Documents and Electronic Data Concerning the structure or parameters of the markets and submarkets for any ESA products sold in the United States Including Documents or

Electronic Data Concerning actual or potential substitutes for ESAs in the treatment of ESRD or CKD and/or potential customers and patients in such markets or submarkets.

**REQUEST FOR PRODUCTION NO. 64:**

All Documents and Electronic Data Concerning the entry or potential entry of any ESA products into the markets and/or submarkets for any ESA products, Including Documents or Electronic Data discussing or reflecting costs of or barriers to entry, such as, for example, FDA approval and business relationships with potential or existing customers.

**REQUEST FOR PRODUCTION NO. 65:**

All business plans, marketing plans, sales or market projections, market analyses, market share projections, pricing plans, pricing analyses, sales plans or projections for the sale or license of Aranesp® and/or Epogen® for treatment of patients with ESRD.

**REQUEST FOR PRODUCTION NO. 66:**

All business plans, marketing plans, sales or market projections, market analyses, market share projections, pricing plans, pricing analyses, sales plans or projections for the sale or license of Aranesp® and/or Epogen® for treatment of patients with CKD.

**REQUEST FOR PRODUCTION NO. 67:**

Unredacted copies of all documents identified on the "Index to Exhibits" to Amgen's SEC Form 10Q for the quarter ended December 31, 1985, including the "Technology and License Agreement dated September 30, 1985, between Kirin-Amgen, Inc. and Ortho Pharmaceutical Corporation," the "Product License Agreement dated September 30, 1985, between Kirin-Amgen, Inc. and Ortho Pharmaceutical Corporation," Amendment No. 1 dated March 19, 1985, to Shareholders' Agreement of Kirin-Amgen, Inc. dated May 11, 1984," Amendment No. 2 dated July 29, 1985, to Shareholders' Agreement of Kirin-Amgen, Inc. dated

May 11, 1984," Amendment No. 3 dated December 19, 1985, to Shareholders' Agreement of Kirin-Amgen, Inc. dated May 11, 1984," and the Agreement dated May 10, 1985 between Amgen and Arbor Acres Farm, Inc., including unredacted copies of any Exhibits to these Agreements.

## REQUEST FOR PRODUCTION NO. 68:

All Documents and Electronic Data Concerning any of the Agreements Listed on the "Index to Exhibits" to Amgen's SEC Form 10Q for the quarter ended December 31, 1985, including the "Technology and License Agreement dated September 30, 1985, between Kirin-Amgen, Inc. and Ortho Pharmaceutical Corporation," the "Product License Agreement dated September 30, 1985, between Kirin-Amgen, Inc. and Ortho Pharmaceutical Corporation," Amendment No. 1 dated March 19, 1985, to Shareholders' Agreement of Kirin-Amgen, Inc. dated May 11, 1984,"  Amendment No. 2 dated July 29, 1985, to Shareholders' Agreement of Kirin-Amgen, Inc. dated May 11, 1984," Amendment No. 3 dated December 19, 1985, to Shareholders' Agreement of Kirin-Amgen, Inc. dated May 11, 1984," and the Agreement dated May 10, 1985 between Amgen and Arbor Acres Farm, Inc, Concerning the infringement, validity, enforceability, or subject matter of Amgen's EPO patents, and/or interpretation of any claim of Amgen's EPO patents, including any communications between Amgen and any person or Entity Concerning any of the above Agreements.

## REQUEST FOR PRODUCTION NO. 69:

All business plans, marketing plans, sales or market projections, market analyses, market share projections, pricing plans, pricing analyses, sales plans or projections for the sale or license of any ESA designed, developed, produced, manufactured, marketed or licensed by Amgen or any third party.

**REQUEST FOR PRODUCTION NO. 70:**

Documents concerning prices reported by Amgen to government entities, Including the average sale price, best price, average wholesale price and average acquisition cost for Epogen®, Aranesp®, Neulasta® and Neupogen® between 1985 and the present.

**REQUEST FOR PRODUCTION NO. 71:**

Documents concerning the costs associated with Amgen's Epogen® and Aranesp® products between 1985 and the present, Including manufacturing costs, marketing costs, material costs, sales costs, general overhead, administrative costs, packaging costs, legal costs, research costs and rebates.

**REQUEST FOR PRODUCTION NO. 72:**

Documents concerning Amgen's sales of Epogen® and Aranesp® between 1995 and the present, Including the number of units sold for each product and unit size and total sales in U.S. dollars, and sales by Health Care Providers.

**REQUEST FOR PRODUCTION NO. 73:**

Documents concerning the price of Epogen® and Aranesp® between 1985 and the present.

**REQUEST FOR PRODUCTION NO. 74:**

Documents concerning any profits and/or losses by Amgen for the sale of Epogen® and Aranesp® between 1989 and the present.

**REQUEST FOR PRODUCTION NO. 75:**

Documents referring or relating to any alleged, supposed, or actual reasonably royalty for the alleged use made of the invention (as this phrase is used in 35 U.S.C. § 284, paragraph 1) of each patent-in-suit by or for defendant.

**REQUEST FOR PRODUCTION NO. 76:**

Documents referring or relating to any of the following factors:

(a) the royalties received by the patent owner for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

(b) the nature and scope of the license for the patents-in-suit, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

(c) the licensor's (Amgen's) established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions to preserve that monopoly;

(d) the commercial relationship between Amgen and Roche, such as whether they are competitors in the same territory in the same line of business;

(e) the effect of selling the patented specialty in promoting sales of other products of the licensor (Amgen); the existing value of the invention to the licensor as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

(f) the duration of the patent and the term of the license;

(g) the established profitability of the products made under the patent, its commercial success, and its current popularity;

(h) the utility and advantages of the patent property over old modes or devices, if any, that had been used for working out similar results;

(i) the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(j) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention of analogous invention;

(k) the portion of the realizable profit that should be credited to the invention as distinguishable from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the alleged infringer.

**REQUEST FOR PRODUCTION NO. 77:**

Documents referring or relating to Amgen's practice and/or policy of marking products that are covered by the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 78:**

All minutes of and notes from Amgen's board of directors or committee meetings, or any other Amgen meeting Concerning the research, development, and marketing of any ESA designed, developed, produced, manufactured, marketed or licensed by Amgen.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents and Electronic Data sufficient to identify all persons employed by Amgen with responsibility for the development or commercialization of any ESA designed, developed, produced, manufactured, marketed or licensed by Amgen.

**REQUEST FOR PRODUCTION NO. 80:**

All Documents and Electronic Data prepared by or for Amgen Concerning the activities of its competitors on the expression or production of erythropoietin or ESAs, Including Roche and Johnson & Johnson and any of their Affiliates, and any analysis, opinion, report, memorandum, discussion, evaluation, or otherwise of the same.

**REQUEST FOR PRODUCTION NO. 81:**

All Documents and Electronic Data Concerning Amgen's knowledge of Roche's activities in research, patenting, development, and manufacturing of Roche's continuous erythropoiesis receptor activator (CERA).

**REQUEST FOR PRODUCTION NO. 82:**

All Documents and Electronic Data Concerning any forewarning, notice or communication from or on behalf of Amgen to Roche of the claims, substance, content or the issuance of Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents and Electronic Data Concerning any analysis or testing done by or on behalf of Amgen of any product or material produced by Roche which Amgen contends contains or is derived from erythropoietin, regardless of whether the analysis or test results support Amgen's contention.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents and Electronic Data Concerning any efforts to compare (i) the DNA sequence of any gene used by Roche which codes for erythropoietin with (ii) any DNA sequence claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 85:**

All Documents and Electronic Data sufficient to identify Amgen's understanding, knowledge, and participation in the use of international "units" for human erythropoietin instead of specific weight quantities (Including nanograms, micrograms, and milligrams).

**REQUEST FOR PRODUCTION NO. 86:**

All Documents and Electronic Data sufficient to identify Amgen's involvement in the worldwide effort to develop the international "units" standard for human erythropoietin, further Including Documents and Electronic Data sufficient to describe any other ESA in terms of EPO "units."

**REQUEST FOR PRODUCTION NO. 87:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence sufficient to identify Amgen's attempts to characterize interactions between (a) the human EPO receptor, whether soluble or present in any cell, and (b) any ESA, Including erythropoietin of any species, or any fragment, analog, or variant thereof.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents and Electronic Data, including but not limited to, laboratory notebooks referring or relating to the THE EPO PROJECT.

**REQUEST FOR PRODUCTION NO. 89:**

All Documents and Electronic Data referring or relating to research and/or work performed by any Person at the University of Chicago, including but not limited to Dr. Eugene Goldwasser and/or his pre-doctoral, postdoctoral and professional researchers, or his colleagues, collaborators or assistants, referring or relating to isolation, purification and/or characterization of any mammalian erythropoietin, including but not limited to human erythropoietin.

**REQUEST FOR PRODUCTION NO. 90:**

All Documents and Electronic Data filed, served or lodged in any prior court or administration proceeding, including all foreign equivalents, referring or relating to the subject matter disclosed or claimed in Amgen's EPO patents.

**REQUEST FOR PRODUCTION NO. 91:**

All Testimony of experts referring or relating to the subject matter disclosed and/or claimed in Amgen's EPO patents.

**REQUEST FOR PRODUCTION NO. 92:**

All Testimony of Dr. Lin, referring or relating to the subject matter disclosed and/or claimed in Amgen's EPO patents.

**REQUEST FOR PRODUCTION NO. 93:**

All Testimony by any person that discusses the validity, enforceability, invalidity, unenforceability, inventorship and/or construction or scope of any claim of Amgen's EPO patents.

**REQUEST FOR PRODUCTION NO. 94:**

All Documents and Electronic Data referring or relating to the possible infringement by Roche of Amgen's EPO patents.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents and Electronic Data, including art, considered by Amgen in connection with determining whether to assert against Roche the Amgen's EPO patents.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents and Electronic Data referring or relating to any Communication on the attributes, merits, properties, characteristics, deficiencies or shortcomings of various host cells to be used to express human EPO.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents and Electronic Data referring or relating to any studies by Amgen or conducted on Amgen's behalf relating to glycosylation of human erythropoietin.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents and Electronic Data referring or relating to research conducted at or funded by Amgen between January 1, 1980 and November 30, 1984 regarding the isolation and/or expression of any DNA sequence encoding EPO or a fragment thereof including but not limited to any documents that refer or relate to research, experiments, or work that was unsuccessful in achieving isolation and/or expression of any such DNA sequence or fragment thereof.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents and Electronic Data which show that the subject matter disclosed and/or claimed in the Amgen EPO patents constitute "pioneering" inventions, as Amgen claims.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents and Electronic Data which show that the subject matter disclosed and/or claimed in the Amgen EPO patents constitute "distinct" inventions, as Amgen claims.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents and Electronic Data referring or relating to the commercial success or lack thereof of the Amgen EPO patents.

**REQUEST FOR PRODUCTION NO. 102:**

All Documents and Electronic Data referring or relating to the inventorship of the subject matter claimed in the Amgen EPO patents.

**REQUEST FOR PRODUCTION NO. 103:**

All Testimony of any person concerning the subject matter claimed and/or disclosed in the Amgen EPO patents.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents and Electronic Data Concerning any communications between or Concerning Amgen and Fresenius Medical Care Concerning Roche, Amgen's EPO Patents or any Pegylated Compound.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning the interaction between any Pegylated Compound and the EPO receptor, e.g., the in vitro or in vivo erythropoietin receptor binding activity of any Pegylated Compound, the in vitro or in vivo affinity of any Pegylated Compound for the EPO receptor, and /or the internalization by cells of any ESA that has been chemically modified by pegylation, including, but not limited to, studies of Kd, Smax, or Bmax, on and off binding rates, and/or structure-activity studies, modeling and analysis, and all documents that compare or contrast any such characteristic of any ESA that has been chemically modified by pegylation, to a characteristic of any ESA, including but not limited to epoetin alfa, epoetin beta, RECORMON®, NEORECORMON®, EPOGEN®, EPREX®, PROCRIT®, or ARANESP®.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning any difference in the nature, magnitude, and/or duration of any response by an animal (including but not limited to humans) to the administration of any ESA

that has been chemically modified by pegylation, compared to the administration of any ESA, including but not limited to epoetin alfa, epoetin beta, RECORMON®, NEORECORMON®, EPOGEN®, EPREX®, PROCRIT®, or ARANESP®.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning the properties of any ESA that has been chemically modified by pegylation, with respect to pharmacokinetics, pharmacodynamics, clearance, receptor binding activity, safety, maintenance of hemoglobin levels, antigenicity, and/or immunogenicity, including all documents that compare or contrast such properties of any ESA that has been chemically modified by pegylation, to any ESA, including but not limited to epoetin alfa, epoetin beta, RECORMON®, NEORECORMON®, EPOGEN®, EPREX®, PROCRIT®, or ARANESP®.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning any comparison of any ESA that has been chemically modified by pegylation, to any ESA, including but not limited to epoetin alfa, epoetin beta, RECORMON®, NEORECORMON®, EPOGEN®, EPREX®, PROCRIT®, or ARANESP®.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning any difference between any ESA that has been chemically modified

by pegylation, and any ESA, including but not limited to epoetin alfa, epoetin beta,

RECORMON®, NEORECORMON®, EPOGEN®, EPREX®, PROCRIT®, or ARANESP®.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports,

memoranda, meeting minute notes, research proposals and requests for proposals and

correspondence Concerning every comparative study or analysis of the mechanism of action, the

pharmacodynamic and/or pharmacokinetic properties of an ESA that has been chemically

modified by pegylation, upon administration to humans relative to those of any ESA, including

but not limited to epoetin alfa, epoetin beta, RECORMON®, NEORECORMON®, EPOGEN®,

EPREX®, PROCRIT® and/or ARANESP® upon administration to humans, including a

description of any data, tests, and/or experiments regarding such comparisons.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports,

memoranda, meeting minute notes, research proposals and requests for proposals and

correspondence Concerning any ESA that has been chemically modified by pegylation, used in

any clinical trial to date, the protocol(s) for each such clinical trial, the principal investigators

involved in each such clinical trial, and summaries of the results of each such clinical trial.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports,

memoranda, meeting minute notes, research proposals and requests for proposals and

correspondence Concerning the timing, nature of, and reasons for any amendments to any

protocol for any clinical trial in which any ESA that has been chemically modified by pegylation,

has been administered to a human being.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents and Electronic Data, Including reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning Amgen's efforts, either supporting or opposing any modification, amendment, clarification, or otherwise change to 35 U.S.C. § 271(g) or its related legislative history, including Amgen's lobbying efforts and communications with any member or body of the executive or legislative branches of the United States.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents and Electronic Data Concerning contracts, agreements, negotiations or discussions between Amgen and any third party, Including any Health Care Provider, concerning the purchase, manufacture, source or supply of any ESA product, Including requirements contracts, exclusive dealing arrangements, discounts, bundled discounts across product lines, rebates and/or pricing.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents and Electronic Data Concerning communications with Health Care Providers regarding CERA.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents and Electronic Data Concerning the effect of government or private insurance reimbursement of Health Care Providers for the use of ESAs on the prices, sales or market shares of Aranesp®, Epogen®, Procrit® and/or other products of any actual or potential competitors.

**REQUEST FOR PRODUCTION NO. 117:**

All Documents and Electronic Data Concerning communications with Health Care Providers regarding clinical trials involving patients with anemia, Including clinical trials conducted by Amgen, Roche or any other Amgen competitor.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents and Electronic Data Concerning resources for conducting clinical trials related to ESA drugs between 2000 and the present, including the availability of clinical investigators, investigation sites, and/or patients needed or desired for clinical trials or other research.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents and Electronic Data Concerning Roche's effort to obtain FDA approval of CERA, Including Amgen's communications with third parties regarding that effort.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents and Electronic Data Concerning any research grants or any other value, monetary or otherwise, provided to any Health Care Provider by, or administered by, Amgen.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents and Electronic Data Concerning Amgen's commencement, prosecution and maintenance of In the Matter of: Certain Products and Pharmaceutical Compositions Containing Recombinant Human Erythropoietin, filed under Section 337 of the Tariff Act of 1930 with the International Trade Commission on April 11, 2006, Including appeals, Including any effect on Roche of such litigation.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents and Electronic Data identified by Amgen in response to any interrogatory served on Amgen in this action.

**REQUEST FOR PRODUCTION NO. 123:**

All Documents and Electronic Data which Amgen intends to rely upon at trial in this action.

DATED:       October 30, 2006

F. HOFFMANN-LA ROCHE LTD,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE INC.

By its attorneys,

Leora Ben-Ami (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

and

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon the attorneys of record for the plaintiff (as listed below) via federal express overnight delivery and electronic mail on the above date.

Lloyd R. Day, Jr. (*pro hac vice*)
David A. Madrid (*pro hac vice*)
Linda A. Sasaki-Baxley (*pro hac vice*)
DAY CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA 95014
Telephone: (408) 873-0110
Facsimile: (408) 873-0220
Emails: daylr@daycasebeer.com
        madriddm@daycasebeer.com
        baxleyls@daycasebeer.com

D. Dennis Allegretti (BBO#545511)
Michael R. Gottfried (BBO#542156)
Patricia R. Rich (BBO# 640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: (617) 289-9200
Facsimile: (617) 289-9201
Emails: ddallegretti@duanemorris.com
        mrgottfried@duanemorris.com
        prich@duanemorris.com

William G. Gaede, III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 813-5000
Facsimile: (650) 813-5100
Email: wgaede@wme.com

Kevin M. Flowers (*pro hac vice*)
Thomas I. Ross (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone: (312) 474-6300
Facsimile: (312) 474-0448
Emails: kflowers@marshallip.com
        tross@marshallip.com

_____
Jay Chen