# EXHIBIT H

Dockets.Justia.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., <br><br> Plaintiff, <br><br> vs. <br><br> F. HOFFMANN-LA ROCHE LTD, ROCHE DIAGNOSTICS GmbH, AND HOFFMANN-LA ROCHE INC., <br><br> Defendants. | CIVIL ACTION No.: 05-cv-12237WGY |

### DEFENDANTS' SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO AMGEN, INC. (NOS. 124–315)

Pursuant to Federal Rule of Civil Procedure 34(a)(1), Defendants F. Hoffmann-La Roche Ltd, Roche Diagnostics GmbH, and Hoffmann-La Roche, Inc. (collectively "Roche") request that Plaintiff Amgen, Inc. ("Amgen") produce for their inspection and copying all documents and tangible things described below in accordance with the Definitions and Instructions set forth below at the offices of their counsel, Kaye Scholer LLP, 425 Park Avenue, New York, New York within thirty (30) days of service hereof. Each of the following document requests is continuing in nature, such that if Amgen obtains additional documents and things at a later date, such documents and things are to be made available to Roche for inspection and copying.

Defendants further request that Amgen serve Roche with a written response to this Second Set of Requests for the Production of Documents and Things within thirty (30) days of service hereof in accordance with Fed. R. Civ. Proc. 34.

31390734.DOC

# **DEFINITIONS**

The following definitions are intended solely for use in this Second Set of Requests for the Production of Documents and Things, and any other discovery document in which they are expressly incorporated, and the definitions have no applicability otherwise.

1. The term "Amgen" includes plaintiff Amgen, Inc., any predecessor company or companies, present and past divisions, subsidiaries, joint ventures, parent companies or other legal entities which are or wholly or partially owned or controlled by Amgen, Inc., and each of their respective present or former directors, officers, Employees, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting or purporting to act on behalf of Amgen, Inc.

2. The term "Roche" includes defendants F. Hoffmann-La Roche Ltd, Roche Diagnostics GmbH, and Hoffmann-La Roche, Inc., any predecessor company or companies, present and past divisions, subsidiaries, joint ventures, parent companies or other legal entities which are wholly or partially owned or controlled by F. Hoffmann-La Roche Ltd, Roche Diagnostics GmbH, or Hoffmann-La Roche, Inc., and each of their respective present or former directors, officers, Employees, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting or purporting to act on behalf of F. Hoffmann-La Roche Ltd, Roche Diagnostics GmbH, or Hoffmann-La Roche, Inc.

3. The term "Affiliate" means a person or Entity that, directly or indirectly, through one or more intermediates, controls, is controlled by, or is under common control with the person or Entity specified.

4. The term "Entity" means any individual and any other cognizable entity, Including corporations, proprietorships, partnerships, joint ventures, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders.

5. The term "Amgen's EPO Patents" means the following patents and any foreign counterparts of any of them, considered individually, in groups of two or more, and collectively:

   a. United States Patent No. 4,703,008 issued October 27, 1987, to Fu-Kuen Lin entitled "DNA Sequences Encoding Erythropoietin" ("the '008 patent"), the application from which it issued United States Patent Application No. 06/675,298, and all related United States Patent Applications Including United States Patent Application Nos. 06/655,841; 06/582,185; and 06/561,024; and

   b. United States Patent No. 5,441,868 issued August 15, 1995, to Fu-Kuen Lin entitled "Production of Recombinant Erythropoietin" ("the '868 patent"), the application from which it issued United States Patent Application No. 07/113,179, and all related United States Patent Applications Including United States Patent Application Nos. 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

   c. United States Patent No. 5,547,933 issued August 20, 1996, to Fu-Kuen Lin entitled "Production of Erythropoietin" ("the '933 patent"), the application from which it issued United States Patent Application No. 08/487,774, and all related United States Patent Applications Including United States Patent Application Nos. 07/202,874; 07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

   d. United States Patent No. 5,618,698 issued April 8, 1997, to Fu-Kuen Lin entitled "Production of Erythropoietin" ("the '698 patent"), the application from which it

issued United States Patent Application No. 08/468,381, and all related United States Patent Applications Including United States Patent Application Nos. 07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

 e. United States Patent No. 5,621,080 issued April 15, 1997, to Fu-Kuen Lin entitled "Production of Erythropoietin" ("the '080 patent"), the application from which it issued United States Patent Application No. 08/468,556, and all related United States Patent Applications Including United States Patent Application Nos. 07/202,874; 07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

 f. United States Patent No. 5,756,349 issued May 26, 1998, to Fu-Kuen Lin entitled "Production of Erythropoietin" ("the '349 patent"), the application from which it issued United States Patent Application No. 08/468,369, and all related United States Patent Applications Including United States Patent Application Nos. 07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024; and

 g. United States Patent No. 5,955,422 issued September 21, 1999, to Fu-Kuen Lin entitled "Production of Erythropoietin" ("the '422 patent"), the application from which it issued United States Patent Application No. 08/100,197, and all related United States Patent Applications Including United States Patent Application Nos. 07/957,073; 07/609,744; 07/113,179; 06/675,298; 06/655,841; 06/582,185; and 06/561,024.

6. The term "Patent Application" means all parent, continuation application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, provisional application or abandoned application and other

applications, Including applications from which an issued patent claims priority in whole or in part, regardless of whether the patent application issued as a patent, was abandoned, or is currently pending, and regardless of whether the patent application was filed in the United States Patent and Trademark Office or any foreign patent office or both..

7. The term "PTO" means the United States Patent and Trademark Office.

8. The term "Document" is used in its customary and broad sense, and includes without limitation the broadest scope given in Fed. R. Civ. P. 34(a), and specifically includes electronic data Including electronic mail, computer files, backup media, and databases; files and file folders; books and their contents, whether printed or recorded or reproduced by hand or any other mechanical process, or written or reproduced by hand or any other mechanical process; and all other tangible manifestations of communications whether or not claimed to be privileged or confidential or personal; namely, agreements, communications, Including intra-company communications, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations; diaries; forecasts; statistical statements; graphs, laboratory and engineering reports and notebooks, changes, plans, drawings, graphs, samples prototypes and tangible Things, photographs, films, pictures, and videotapes; minutes or records of meetings, Including directors' meetings, minutes or records of conferences; expressions of statements or policy; lists of persons attending minutes or records of conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel; records, reports or summaries of negotiations; brochures, pamphlets, advertisements, circulars, trade letters, packing material and notices, press releases; and litigation files and databases, Including drafts of any document, revisions of drafts of any document, original and preliminary notes and marginal comments appearing on any document.

A comment or notation appearing on any document, and not a part of the original document, is considered a separate document. A draft or non-identical copy is a separate document within the meaning of the term.

9. The term "Thing" means each item, sample, specimen, concrete or tangible object.

10. The term "Electronic Data" includes, but is not limited to, originals and all copies of electronic mail ("e-mail"); activity listings of electronic mail receipts and/or transmittals; voice-mail; audio or video recordings of any kind; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; output resulting from the use of any software program, Including word processing documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; image files Including JPG or JPEG, TIFF, PICT, and BMP; PDF files, batch files in any format, Including ASCII, XML or CSV format; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragments. Electronic data includes any and all information stored in or on hard disks, floppy disks, CD and DVD disks, external hard drives or their equivalent, portable storage devices Including USB or FireWire drives; magnetic tapes of all kinds, and computer chips (Including EPROM, PROM and ROM). Electronic data also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.

11. The term "Communication" is used in its broadest sense, and means any transmission of information from one person or Entity to another, by any means, Including oral conversations, telephone calls, written correspondence, memoranda or notes, email, facsimile transmissions, meetings, video conferences, or document transmittals.

12. The term "Including" means "including but not limited to."

13. The term "Person" shall include but is not limited to, any natural person, alive or deceased, business or corporation (whether for-profit or not-for-profit), firm, partnership, sole proprietorship, or other non-corporate business organization, or Employee, agent or representative of the foregoing.

14. The term "Employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the designated Entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

15. The term "Concerning" or "Concern" means relating to, referring to, describing, evidencing, constituting, or mentioning in any way.

16. The term "Erythropoiesis Stimulating Agent" or "ESA" means any substance, drug or pharmaceutical composition that is capable of stimulating the production of red blood cells by bone marrow Including human erythropoietin or erythropoietin from any mammalian species, epoetin alfa, epoetin beta, darbepoetin alfa, and any fragment, mimetic or variant thereof, sold under any brand name, Including Epogen®, Procrit®, Eprex®, NeoRecormon® and Aranesp®.

17. The term "Pegylated Compounds" means any substance, drug or pharmaceutical incorporating into its chemical structure one or more polyethylene glycol polymers of any weight, size, shape, means of attachment, or degree of branching, and shall include without limitation any of erythropoietin, darbepoetin, brain-derived neurotrophic factor ("BDNF"), granulocyte colony stimulating factor ("G-CSF"), interleukin 2 ("IL-2"), megakaryocyte growth and differentiation factor ("MGDF"), stem cell factor ("SCF"), granulocyte macrophage colony stimulating factor ("GM-CSF"), and tumor necrosis factor ("TNF") chemically modified by pegylation.

**18.** As used herein, the words "and" and "or" shall be construed either conjunctively and disjunctively as necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as being outside of its scope; the singular shall be deemed to refer to the plural and vice-versa; and any reference to the male gender shall include the female gender.

**19.** As used herein, the term "Testimony" refers to any sworn or unsworn testimony contained in any format, including a transcript, tape recording, declaration or affidavit, plus any exhibits thereto. Such testimony includes, but is not limited to, all testimony before a court of law, an administrative tribunal, a patent interference, opposition or prosecution proceeding, a deposition and all foreign equivalents.

**20.** The term "Health Care Provider" means any person or Entity involved in providing health services to the public, Including Large Dialysis Organizations (e.g., Fresenius and DaVita), small or medium chain dialysis centers, non-profit dialysis centers, independent dialysis centers, hospitals, distributors, purchasing groups, doctors or clinics, Including their affiliated Entities, parents, subsidiaries (for example, DaVita Clinical Research), related companies, and companies merged or acquired (for example, Renal Care Group, Inc. and Gambro Healthcare).

## INSTRUCTIONS

1. You are to produce the original and each non-identical copy of each document or other tangible Thing requested herein which is in Amgen's possession, custody or control, or that of Amgen's officers, directors, Employees, agents, representatives, successors, assigns and attorneys and all persons acting or purporting to act on behalf of Amgen or who are in possession of or who may have obtained information for or on behalf of Amgen in regard to the requested subject matter or any matter pertinent to this case.

2. Each Request shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a Request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Request, using your best efforts to do so.

3. Whenever a Request calls for information which is not available to Amgen in the form requested, but is available in another form or can be obtained, at least in part, from other data in Amgen's possession, so state and either supply the information requested in the form in which it is available or supply the data from which the information requested can be obtained.

4. In the event that any English translation exists, either in part or in full, of any document produced in response to any Request for any document or other tangible Thing herein, Amgen shall produce the original and each non-identical copy of such translation which is in Amgen's possession, custody or control, or that of Amgen's agents, attorneys, accountants, Employees or representatives.

5. If a Request is silent as to the time period for which production of documents and Things is sought, you are to produce all documents originated in whole or in part and of all Things within your possession, custody, or control at any time during the period of 1980 through the date of your production.

6. This Request is continuing in nature. Amgen shall supplement its responses to this Request, as and when additional responsive documents become known or available to Amgen, or when so requested by Roche prior to trial.

7. If Amgen contends that any document requested to be produced is protected from discovery by attorney-client privilege, attorney work product doctrine or any other ground of privilege, then Amgen shall identify for each such document:

- (a) the name (title or position of the authors) of the document;
- (b) the existence and identity of any attachments to the document;
- (c) the name and title or position of all persons designated as addressees or otherwise receiving copies of the document;
- (d) the general subject matter of the document;
- (e) the date of the document;
- (f) the medium (e.g., electronic or paper), type (e.g., memorandum, letter, email report, etc.) and length of the document;
- (g) the specific grounds for withholding the document, Including the specific facts upon which Amgen will rely to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege.

If an attachment to a document is also being withheld on the grounds of privilege, in addition to being identified as required by subpart (b), above, such attachment shall be identified in the privilege log as a separate document.

8. All requested documents produced to Roche shall be organized either to correspond to the categories in these requests, or as they are kept in the ordinary course of business. In either case, all documents produced shall:

    (a) be produced with all associated file labels, file headings, and file folders together with the responsive documents from each file, and each file shall be identified as to its owner or custodian; for any document originally stored in electronic media, the file name, path and directory information for each such documents shall also be provided;

    (b) if produced in hard copy, all pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each document, regardless of whether such attachments themselves are responsive to these requests;

    (c) all documents that cannot be legibly copied shall be produced in original form.

9. If any document responsive to this request once existed but has been destroyed, lost, discarded or is otherwise not available for production, Amgen shall identify in writing each such document, Including the date of the document's creation, a description of the document's subject matter, the name and address of each person who prepared, received, viewed, or had possession, custody or control of the document or otherwise had knowledge of its subject matter, and a statement of the circumstances under which the document was destroyed, lost, discarded or why such document is not otherwise available for production.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 124:**

All Documents and Electronic Data Concerning the market in the United States for the sale of ESAs for the treatment of End Stage Renal Disease (i.e., dialysis), Including all products that are approved for use and/or otherwise available for the treatment of anemia in patients with End Stage Renal Disease ("ESRD").

**REQUEST FOR PRODUCTION NO. 125:**

All Documents and Electronic Data Concerning the market in the United States for the sale of ESAs for the treatment of Chronic Kidney Disease (i.e., non-dialysis), Including all products that are approved for use and/or otherwise available for the treatment of anemia in patients with Chronic Kidney Disease ("CKD").

**REQUEST FOR PRODUCTION NO. 126:**

All Documents and Electronic Data Concerning contracts, agreements, negotiations or discussions between Amgen and Fresenius between 1999 and the present Concerning the purchase, manufacture, source or supply of any ESA product, Including Epogen®, Procrit®, Aranesp® or CERA.

**REQUEST FOR PRODUCTION NO. 127:**

All Documents and Electronic Data Concerning contracts, agreements, negotiations or discussions between Amgen and DaVita between 1999 and the present Concerning the purchase, manufacture, source or supply of any ESA product, Including Epogen®, Procrit®, Aranesp® or CERA.

**REQUEST FOR PRODUCTION NO. 128:**

All Documents and Electronic Data Concerning contracts, agreements, negotiations or

discussions between Amgen and Dialysis Clinic, Inc. between 1999 and the present Concerning the purchase, manufacture, source or supply of any ESA product, including Epogen®, Procrit®, Aranesp® or CERA.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents and Electronic Data Concerning contracts, agreements, negotiations or discussions between Amgen and Gambro Healthcare, Gambro Renal Products, or any related Person or Entity, between 1999 and the present Concerning the purchase, manufacture, source or supply of any ESA product, including Epogen®, Procrit®, Aranesp® or CERA.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents and Electronic Data Concerning contracts, agreements, negotiations or discussions between Amgen, Ortho Biotech, L.P. and/or any small or medium chain dialysis center, non-profit dialysis center, independent dialysis center, hospital, distributor, purchasing group, doctor or clinic between 1999 and the present Concerning the purchase, manufacture, source or supply of any ESA product.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents and Electronic Data Concerning any barriers or potential barriers Amgen competitors must overcome before entering the ESA market (or markets) related to the treatment of anemia in patients with ESRD or CKD, Including all documents concerning any action taken by Amgen or any third party to prevent or delay entry of any product into these markets.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents and Electronic Data Concerning costs to providers of ESA in the ESRD and CKD markets associated with switching from Amgen ESA products to any other ESA

product or potential ESA product.

**REQUEST FOR PRODUCTION NO. 133:**

Documents and Electronic Data sufficient to determine the total sales of Epogen®, Aranesp® and Procrit®, Including the number of units sold for each product size and total sales in United States dollars, for the treatment of anemia associated with ESRD between 1999 and the present.

**REQUEST FOR PRODUCTION NO. 134:**

Documents and Electronic Data sufficient to determine the total sales of Epogen®, Aranesp® and Procrit®, Including the number of units sold for each product size and total sales in United States dollars, for the treatment of anemia associated with CKD between 1999 and the present.

**REQUEST FOR PRODUCTION NO. 135:**

All Documents and Electronic Data Concerning government reimbursement of ESA providers between 1999 and the present, Including the amount of reimbursement, how reimbursement is calculated, effects of each reimbursement scheme on Amgen market share, revenues and/or profit, effects of each reimbursement scheme on ESA provider revenues and/or profits, and effects of Amgen pricing, discounts and rebates on ESA provider revenues and/or profits.

**REQUEST FOR PRODUCTION NO. 136:**

All Documents and Electronic Data Concerning resources for conducting clinical trials related to ESA drugs between 1999 and the present, Including the availability of clinical investigator sites, patients needed or desired for clinical trials or other research contemplated or

being conducted by Amgen, clinical trials or other research related to CERA.

**REQUEST FOR PRODUCTION NO. 137:**

All Documents and Electronic Data that form the basis for Amgen's contention that CERA infringes the '080 patent.

**REQUEST FOR PRODUCTION NO. 138:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning Amgen's attempts, whether successful or not, to pegylate any mammalian erythropoietin, Including human erythropoietin.

**REQUEST FOR PRODUCTION NO. 139:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning the design, development, production, and manufacture by Amgen of any mammalian erythropoietin, Including human erythropoietin, that has been chemically modified by pegylation.

**REQUEST FOR PRODUCTION NO. 140:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports, memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning the testing of any mammalian erythropoietin, Including human erythropoietin, that has been chemically modified by pegylation.

**REQUEST FOR PRODUCTION NO. 141:**

All Documents and Electronic Data, Including laboratory notebooks, raw data, reports,

memoranda, meeting minute notes, research proposals and requests for proposals and correspondence Concerning any comparison between attempts (whether successful or not) to pegylate any mammalian erythropoietin, Including human erythropoietin, and attempts (whether successful or not) to pegylate G-CSF.

**REQUEST FOR PRODUCTION NO. 142:**

All laboratory notebooks used by Steven Elliott and/or his researchers or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 143:**

All Documents and Electronic Data Concerning any communications by or to Steven Elliott and/or his researchers or assistants, that Concern the prosecution of Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 144:**

All Documents and Electronic Data, Including raw data, reports, memoranda, meeting minute notes, and research proposals by Steven Elliott and/or his researchers or assistants, that Concern the examples in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 145:**

All Documents and Electronic Data Concerning any communications with Steven Elliott and/or his researchers or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents, and that are in the custody or control of Steven Elliott.

**REQUEST FOR PRODUCTION NO. 146:**

All Documents and Electronic Data Concerning any communications between or Concerning Amgen and Leroy Hood and/or his pre-doctoral, postdoctoral and professional

researchers, or his colleagues, collaborators or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 147:**

All Documents and Electronic Data Concerning Amgen and Leroy Hood and/or his pre-doctoral, postdoctoral and professional researchers, or his colleagues, collaborators or assistants, that that Concern the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 148:**

All Documents and Electronic Data Concerning any communications between or Concerning Amgen and Eugene Goldwasser and/or his pre-doctoral, postdoctoral and professional researchers, or his colleagues, collaborators or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 149:**

All Documents and Electronic Data Concerning Amgen and Eugene Goldwasser and/or his pre-doctoral, postdoctoral and professional researchers, or his colleagues, collaborators or assistants, that Concern the subject matter disclosed or claimed in Amgen's EPO Patents.

**REQUEST FOR PRODUCTION NO. 150:**

All Documents and Electronic Data Concerning any communications with The University of Chicago, Including any affiliated researchers, clinicians, technicians or assistants, that refer to or relate to funding or administration of any research projects Concerning the subject matter disclosed or claimed in Amgen's EPO Patents which Amgen either commissioned, sponsored, sanctioned, participated or supported in any way, Including the provision of any financial or material support.

**REQUEST FOR PRODUCTION NO. 151:**

All Documents and Electronic Data Concerning The University of Chicago, Including any affiliated researchers, clinicians, technicians or assistants, that refer to or relate to funding or administration of any research projects Concerning the subject matter disclosed or claimed in Amgen's EPO Patents which Amgen either commissioned, sponsored, sanctioned, participated or supported in any way, Including the provision of any financial or material support.

**REQUEST FOR PRODUCTION NO. 152:**

All Documents and Electronic Data that are public or otherwise not protected from disclosure by an applicable protective order Concerning <u>Amgen, Inc. v. Chugai Pharm. Co., Ltd. and Genetics Institute, Inc.</u>, Civ. A. No. 87-2617-Y, D. Mass, Including all draft and final versions of pleadings, all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all external references relied upon; and any other Document, Electronic Data, or Communication related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned civil action.

**REQUEST FOR PRODUCTION NO. 153:**

All Documents and Electronic Data that are public or otherwise not protected from disclosure by an applicable protective order Concerning <u>Amgen, Inc., et al. v. Genetics Institute, Inc.</u>, Civ. A. No. 94-11818-WGY, D. Mass, Including all draft and final versions of pleadings,

all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all external references relied upon; and any other Document, Electronic Data, or Communication related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned civil action.

**REQUEST FOR PRODUCTION NO. 154:**

All Documents and Electronic Data that are public or otherwise not protected from disclosure by an applicable protective order Concerning <u>Amgen, Inc., v. Hoechst Marion Roussel, Inc. and Transkaryotic Therapies, Inc.</u>, Civ. A. No. 97-10814-WGY, D. Mass, Including all draft and final versions of pleadings, all docketed documents and official correspondence and drafts of such documents; all memoranda of law and drafts of memoranda; Including also transcripts from depositions and interviews, interrogatories, responses and objections to interrogatories, document requests, responses and objections to document requests, requests for answers and responses and objections to answers; expert reports; subpoenas; all Documents and other Things relied upon as demonstrative exhibits or evidence at trial; all external references relied upon; and any other Document, Electronic Data, or Communication related to this action as well as any other Document, Electronic Data, or Communication related to any subsequent appeals or adjudications arising from the aforementioned civil action.