# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMGEN INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 05 Civ. 12237 WGY |
| | ) |
| F. HOFFMANN-LA ROCHE LTD, ROCHE | ) |
| DIAGNOSTICS GmbH, and HOFFMANN- | ) |
| LA ROCHE INC., | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OF ROCHE
## IN OPPOSITION TO AMGEN'S EMERGENCY MOTION
## TO OVERRULE ROCHE'S OBJECTIONS
## TO AMGEN'S DESIGNATION OF ECONOMICS EXPERTS

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO # 663583)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292

Leora Ben-Ami (*pro hac vice*)
Mark S. Popofsky (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel. (212) 836-8000

*Counsel for Defendants,*
*F. HOFFMANN-LA ROCHE LTD,*
*ROCHE DIAGNOSTICS GmbH,*
*HOFFMANN-LA ROCHE INC.*

Dated: January 15, 2006

## TABLE OF CONTENTS

Page No.

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 4

    A.    The AWP Litigations ............................................................................... 4

    B.    Amgen's Designation of Drs. Gaier and Stomberg and Mr. Scher in this Case ................................................................................................... 6

ARGUMENT

I.    AMGEN SHOULD NOT BE PERMITTED TO INDUCE THE BREACH OF BATES WHITE'S AGREEMENT THAT DRS. GAIER AND STROMBERG AND MR. SCHER NOT WORK ADVERSELY TO ROCHE BY DESIGNATING THOSE EXPERTS IN THIS CASE ...................... 7

    A.    Amgen's Attempt to Hire Roche's Experts Constitutes Tortious Interference with Contract ........................................................................ 8

    B.    There Is a Valid Contract Between Bates White and Roche Precluding Drs. Gaier and Stomberg and Mr. Scher from Working on Matters Adverse to Roche .................................................................. 9

    C.    Amgen Is Aware of the Roche-Bates White Contract and Is Intentionally Attempting to Induce Its Breach ....................................... 11

    D.    Roche Will be Significantly Harmed by a Breach; Any Prejudice to Amgen Is of Its Own Making ................................................................ 12

IV.    CONCLUSION ............................................................................................... 14

## TABLE OF AUTHORITIES

Page No.

*Grioli v. Delta Int'l Machinery Corp.*
   395 F. Supp. 2d 11 (E.D.N.Y. 2005) .......................................................................... 9

*Leary v. Laflin*
   101 Mass. 334 (Mass. 1869) ................................................................................. 8-9

*Mishkin v. Willoner*
   36 Md. App. 111, 373 A.2d 630 (Md. Ct. Spec. App. 1977) ...................................... 9

*Quelimane Co. v. Stewart Title Guaranty Co.*
   19 Cal. 4th 26, 960 P.2d 513 (Cal. 1998) .................................................................. 8

*Shea v. Emmanuel College*
   425 Mass. 761, 682 N.E.2d 1348 (Mass. 1997) .......................................................... 8

*Societe Anonyme des Sucreries de St. Jean v. Bull Insular Line, Inc.*
   276 F. 783 (1st Cir. 1921) .......................................................................................... 9

**INTRODUCTION**

More than a month ago, Roche informed Amgen that Dr. Eric Gaier, Dr. Christopher Stomberg, and Mr. Benjamin Scher, economics experts from Bates White LLC ("Bates White"), whom Amgen has designated in this case, are presently retained as economics experts by a group of defendants in pending pharmaceutical pricing and price reporting cases that include Roche. When hired by the defense group, these economics experts promised that they would not be personally involved in any concurrent adverse engagement by the Bates White firm against any member of the defense group in the pharmaceutical pricing cases. Roche is a member of that group and has paid at least $170,000 to a joint defense fund used to compensate these very experts, and is expecting to rely on their analysis and testimony under the terms of their retention. Roche, therefore, objects to Amgen's designation of Drs. Gaier and Stomberg and Mr. Scher because Amgen's expert designation, if permitted, would interfere with these experts' contractual obligation not to undertake an adverse engagement against Roche or any other member of that group – an obligation that Amgen notably fails to mention in its papers.

Roche's objection is based not on the two common-law grounds for disqualifying experts that Amgen invokes, but rather on the simple point that Amgen's expert designation threatens to induce a breach of the contract between Roche and the Bates White economics experts. Thus, Amgen's contention that Roche has not shared confidential information with these experts and that the matters are not substantially related misses the point. This is a simple matter of interference with a contractual relationship – Roche objects to Amgen's use of these particular experts because Amgen's

1

designation interferes with the contract between Roche and Drs. Gaier and Stomberg and Mr. Scher that they would not work on a concurrent engagement adverse to Roche. This Court's upholding of Roche's objection is essential to prevent the prejudicial destruction of Roche's contractual rights – which is precisely the result Amgen seeks.

Despite being informed of Roche's position for more than a month, Amgen nevertheless insists on putting Drs. Gaier and Stomberg and Mr. Scher in a position adverse to Roche, claiming that a June 2004 letter demonstrates that Roche is no longer a member of the joint defense group. That is demonstrably false. As set forth in the accompanying declaration of Roche's in-house counsel in charge of the matter, Roche is member of the joint defense group in pharmaceutical pricing and price reporting cases. Moreover, Roche has paid into the funds used to support the work of that group and to pay for experts, including Drs. Gaier and Stomberg and Mr. Scher, and is relying on the work of those Bates White economists for its defense. As a member of the group that has retained Drs. Gaier and Stomberg and Mr. Scher, Roche is entitled to the benefit of their pledge to refuse concurrent adverse engagements.

Amgen's attempt to interfere with the economists' contractual pledge by arguing that the economists were not aware of Roche's membership in the group is baseless. Whether the economists were aware of Roche's membership in the group is irrelevant – the contractual commitment not to undertake a concurrent adverse engagement was made to all group members who paid for and expected to gain access to the analysis and testimony of Drs. Gaier and Stomberg and Mr. Scher. In any event, since the time that Roche objected to their designation in this case, Amgen has known, and should have advised the expert economists, that Roche is indeed a group member entitled to the

benefit of the contractual obligation of Drs. Gaier and Stomberg and Mr. Scher not to work on concurrent adverse engagements. Amgen thus is intentionally seeking to destroy the contractual protection that Roche secured.

Amgen's tortious interference with that right is highly prejudicial to Roche. Allowing Amgen to use Drs. Gaier and Stomberg and Mr. Scher here will harm Roche's ability to freely consult with these experts in the pharmaceutical pricing litigation. It will also force Roche into a position in which it will have to attack an expert working on its behalf in other cases – a predicament that it and the other joint defense group members, as well as Bates White, agreed would not happen under the terms of the retention contract.

Meanwhile, any prejudice that Amgen claims could result if it cannot use and Drs. Gaier and Stomberg and Mr. Scher here is entirely of its own making. Last month, Roche promptly informed Amgen of the reason these experts cannot appear in this case, and reiterated its objections several times. Roche voiced its initial objection a mere six days after these experts were retained by Amgen for this case – hardly enough time for them to become irreplaceable. Instead of immediately engaging different experts, Amgen waited a full month before approaching the Court to attempt to use the Bates White experts contrary to their commitments in the pharmaceutical pricing litigation. Moreover, ample time remains for Amgen to secure the expert assistance it might need; indeed, for the antitrust claims, Amgen will likely submit only rebuttal reports due some weeks after the first expert report deadline. Roche therefore requests that this Court prevent Amgen from interfering with the contract between Roche and Drs. Gaier and Stomberg and Mr. Scher by sustaining Roche's objection to Amgen's designation.

3

**STATEMENT OF FACTS**

 A. **The AWP Litigations**

  Roche is a defendant in various cases involving pharmaceutical pricing and price reporting. Declaration of Jane Y.C. Mathews, January 12, 2007 ("Mathews Decl.") ¶ 2. Because the actions center on the Average Wholesale Price of pharmaceuticals, they are commonly referred to as the AWP litigations. Roche joined other defendants in the AWP cases to form an AWP Joint Defense Group, one purpose of which was to secure experts who would consult and provide reports and testimony on behalf of all the defendants in the group. The AWP Joint Defense Group established funds to pay experts as well as other litigation-related expenses on behalf of the group (the "AWP Defense Funds").

  In January 2004, the AWP Joint Defense Group retained Dr. Eric Gaier, Dr. Christopher Stomberg, and Mr. Benjamin Scher of Bates White to consult regarding certain pending AWP actions as well as "related matters." Mathews Decl., Exh. A at 1. At that time Bates White, through Dr. Gaier, and the joint defense group executed a retention agreement, dated January 29, 2004. As part of the agreement, joint defense group members agreed that Bates White could accept future retentions for clients directly adverse to group members, that were not substantially related. Dr. Gaier, on behalf of Bates White, in turn promised that in the event of such an adverse representation by Bates White, "**the team working on the other matters will be separate from the team working on this matter.**" Matthews Decl., Exh. A at 2 (emphasis added). Bates White further assured that "the separately constituted projects teams will not, under any circumstances, exchange any data or information that might compromise the strictures of confidentiality governing each project." *Id.* The provision precluding the AWP "team"

4

from working on matters adverse to defense group members was important to Roche in its agreeing to the group's retention of Bates White, in order to prevent a situation in which Roche might be forced to challenge the opinions of its own economics expert. Mathews Decl. ¶ 2.

In March 2004 Roche was dismissed from the federal class action, and thus reduced – but did not eliminate – its contributions to the AWP Defense Funds. Mathews Decl. ¶ 3. As a result of this reduction in contribution, Roche was not listed as a defense group member in a June 30, 2004 letter to Bates White listing the companies paying a full share of Bates White bills. Mathews Decl., Exh. B. The AWP Joint Defense Group, however, noted in that letter that "[i]n the future, additional defendants may seek to becoming [sic] additional defendants and fund expert contributions to gain access to expert testimony or analysis." *Id*. Thereafter, Roche **continued to contribute to the AWP Defense Funds, including funds that paid Dr. Gaier and his colleagues**, expecting that it would use the Bates White experts if needed in AWP cases in which it is a defendant. Mathews Decl. ¶¶ 3, 5.

Presently, Roche is a defendant in a number of AWP cases brought by state Attorneys General and other entities (the "State AG suits"). Mathews Decl. ¶ 4. As a defendant in those cases, Roche participates in the AWP Joint Defense Group and contributes to a fund specifically to pay for experts for the State AG suits, including Dr. Gaier and his Bates White colleagues. Mathews Decl. ¶¶ 5, 6. To date, Roche has paid $172,000 into the fund paying for experts in the State AG suits, and another $80,000 to fund general expenses of the AWP Joint Defense Group. Mathews Decl. ¶ 6. Roche has made these payments as a member of the AWP Joint Defense Group that retained Drs.

5

Gaier and Stomberg and Mr. Scher, and with the understanding that those experts will not undertake a concurrent engagement directly adverse to Roche – as Amgen seeks to have them do here.  *See* Mathews Decl. ¶ 7.

### B. Amgen's Designation of Drs. Gaier and Stomberg and Mr. Scher in this Case

On December 6, 2006, Amgen designated Drs. Gaier and Stomberg and Mr. Scher of Bates Whites as its economics experts in this case – the very same economists engaged by the AWP Joint Defense Group.  *See* Declaration of Manvin Mayell, January 15, 2007 ("Mayell Decl."), Exh. A.  On December 11, 2006 Roche informed Amgen that the Bates White experts were consulting for the AWP Joint Defense Group and, as such, were precluded by the terms of their retention from appearing in this case – whether on behalf of Roche or Amgen, as Amgen is also a member of the AWP Joint Defense Group.  Mayell Decl., Exh. B.  After not hearing anything for three days, Roche wrote another letter seeking Amgen's position.  Mayell Decl., Exh. C.  Amgen then responded recognizing that the Bates White economists could not be used adverse to a member of the AWP Joint Defense Group that had provided funds to compensate the Bates White economists, but contending that Roche was not in the AWP group and had not contributed to Bates White's compensation.  Mayell Decl., Exh. D.  Roche wrote back the very next day, December 15, 2006, to correct Amgen's mistaken assumptions, pointing out that Roche is in fact a member of the AWP Joint Defense Group and that it "has paid substantial amounts into the fund being used to compensate Drs. Gaier and Stomberg and Mr. Scher."  Mayell Decl., Exh. E.  Roche believed that, given Amgen's concession that Drs. Gaier and Stomberg and Mr. Scher could not be adverse to a paying AWP Joint Defense Member, Amgen would now realize that, like Roche, Amgen could

6

not use these experts in this case. Nine days later, Roche again reminded Amgen that it maintained its objection to Amgen's use of these experts – and heard nothing further from Amgen on this issue. Mayell Decl., Exh. F.

Only on January 8, 2007, a full 24 days after Roche corrected Amgen's mistaken views about Roche's participation in the AWP Joint Defense Group, did Amgen finally respond to Roche. In its response Amgen abandoned its concession that payment of the Bates White economists would preclude an adverse retention, instead demanding seven separate categories of information from Roche regarding the nature of Roche's interaction with the AWP joint defense experts, and peremptorily setting a two-day deadline to receive this information. Mayell Decl., Exh. G. Roche responded within Amgen's deadline reiterating detailed facts showing that Roche is a paying member of the AWP Joint Defense Group entitled to the benefit of the Joint Defense Group's contract with Bates White that the AWP experts would not work on a matter adverse to Roche. Mayell Decl., Exh. H. Amgen brought this motion the next day.[1]

## ARGUMENT

I. **AMGEN SHOULD NOT BE PERMITTED TO INDUCE THE BREACH OF BATES WHITE'S AGREEMENT THAT DRS. GAIER, AND STROMBERG AND MR. SCHER NOT WORK ADVERSELY <u>TO ROCHE BY DESIGNATING THOSE EXPERTS IN THIS CASE</u>**

Amgen's insistence on using Drs. Gaier and Stomberg and Mr. Scher in this case threatens breach of an important term of the agreement between Roche as a paying member of the AWP Joint Defense Group and Bates White – that these specific

---

[1] Amgen has, for its part, objected to Roche's designation of its preferred economics expert on the ground that the expert had in the past served as an Amgen expert. Roche is awaiting Amgen's response to a letter last week asking for more particulars about the nature of Amgen's retention of that economics expert.

7

economics experts not work on a matter adverse to Roche. Permitting it to do so would place Roche in the untenable position of having to attack the economics opinions of experts whom it has retained to help defend it in the AWP litigations. What Amgen plainly seeks to do here via its designation of Drs. Gaier and Stomberg and Mr. Scher is to tortiously interfere with the contract between Bates White and Roche to the harm and detriment of Roche. The Court should prevent such tortious interference by sustaining Roche's objection to Amgen's use of those experts in this litigation.

### A.     Amgen's attempt to Hire Roche's Experts Constitutes Tortious Interference with Contract

The elements for a claim of tortious interference with contractual relations are well established. A claim for intentional interference with contract requires: (1) the existence of a valid contract; (2) awareness of the contract by the interfering party; (3) intentional acts by the interfering party to induce a breach of the contract; (4) actual breach of the contract; and (5) actual damage or harm. *See Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55, 960 P.2d 513 (Cal. 1998) (California law); *see also Shea v. Emmanuel College*, 425 Mass. 761, 764, 682 N.E.2d 1348, 1350-51 (Mass. 1997) (Massachusetts law). If Amgen is successful in designating Drs. Gaier and Stomberg and Mr. Scher as experts in this case, it will have unlawfully interfered with the contract between Roche and Bates White by causing a breach of the obligation that these experts not work on matters adverse to Roche.

Thus, denying Amgen's motion will prevent it from inducing a breach of an important contractual commitment. Courts have long held that upholding the sanctity of contracts is one of the core roles of the judiciary. *See, e.g., Leary v. Laflin*, 101 Mass. 334, 335 (Mass. 1869) ("It is the duty of courts to enforce the lawful contracts of

8

competent parties, fairly made upon good consideration"); *Societe Anonyme des Sucreries de St. Jean v. Bull Insular Line, Inc.*, 276 F. 783, 785 (1st Cir. 1921) ("It is, of course, elementary that it is the duty of courts to construe and enforce, not to made [sic], alter, or abrogate, contracts"); *Mishkin v. Willoner*, 36 Md. App. 111, 120, 373 A.2d 630, 634 (Md. Ct. Spec. App. 1977) ("parties have the right to make contracts and the courts the duty to maintain them in their integrity and entirety"). The Court's need to "protect the integrity of the legal process," *see Grioli v. Delta Int'l Machinery Corp.*, 395 F. Supp. 2d 11, 13 (E.D.N.Y. 2005) – which Amgen agrees is a key concern in determining whether to disqualify an expert (*see* Amgen Br. at 6) – requires that this Court prevent Amgen from succeeding in its attempt to interfere with the retention contract between Bates White and Roche as a member of the AWP Joint Defense Group. This Court should uphold contracts and prevent Amgen from interfering with Roche's contract with Bates White by precluding Amgen from designating Drs. Gaier and Stomberg and Mr. Scher as experts in this case. As explained below, Amgen's designation of these experts establishes each element of tortious interference of contract.

### B. There Is a Valid Contract Between Bates White and Roche Precluding Drs. Gaier and Stomberg and Mr. Scher from Working on Matters Adverse to Roche

The indisputable facts establish that there is a contract between Bates White and Roche that precludes Amgen's attempted retention of Drs. Gaier and Stomberg and Mr. Scher in this case. Amgen's argument that there is no such contract is baseless.

Amgen does not dispute – nor can it – that Roche is a member of the AWP Joint Defense Group contributing to the retention of experts in the AWP litigations. Nor does Amgen dispute that Drs. Gaier and Stomberg and Mr. Scher are consulting and testifying

9

on behalf the entire AWP Joint Defense Group and are being paid by that group. Indeed, Dr. Gaier candidly agrees. *See* Gaier Decl. ¶ 14 ("I have received compensation from a joint defense fund related to some of the AWP litigations"). It is also indisputable that Roche money has been used to pay Drs. Gaier and Stomberg and Mr. Scher in the AWP litigation, and that Roche expects to be able to call on those economists should it need to in a case in which it is a defendant. Mathews Decl. ¶¶ 5, 6. Accordingly, Roche, as a member of the Joint Defense Group, retains and pays for these Bates White economists.

Given that Roche has and continues to retain these very Bates White economists, the question then becomes: What are the terms of that retention? As the Bates White economists confirm, there is no document other than the January 29, 2004 letter setting forth the terms of their retention by the AWP Joint Defense Group. *See* Gaier Decl. ¶ 15. The January 29, 2004 letter by its terms governs Bates White's work on the three specific AWP litigations extant at that time as well as all "related matters." *See* Mathews Decl., Exh. A. Therefore, as the AWP litigation evolved, the terms of the January 29 letter – including the pledge that the "team" working on the AWP litigation would not take an engagement adverse to a member of the group – extended to all other work that the Bates White economists performed for group members, including their work on the State AG cases in which Roche is a defendant.

It is no answer for Amgen to respond that the commitment against concurrent adverse representations can be ignored here because Dr. Gaier and his colleagues were not aware that Roche is a member of the AWP Joint Defense Group. (Amgen Br. at 10). Whether the Bates White experts were aware or not misses the point – the Bates White commitment is that Dr. Gaier and his colleagues will not work on concurrent

10

engagements adverse to any group member, which Roche unquestionably is. The June 30, 2004 letter, on which Amgen so heavily relies to claim that Roche was not one of the AWP defendants covered by the pledge against concurrent adverse engagements, expressly informs Bates White that additional defendants beyond those listed could in the future begin "funding expert contributions to gain access to expert testimony or analysis," thereby becoming "retaining defendants" under the retention agreement. Thus, under the terms of the June 30 letter, Roche is a retaining defendant of Bates White because it contributes to Bates White's work on the State AG suits with the expectation of accessing Bates White's expert testimony and analysis.

Nor can Amgen claim that there is no contract between Bates White and Roche simply because the AWP Joint Defense Group may not have informed Bates White that Roche had become a retaining defendant under the agreement. This Court should not countenance Amgen's attempt to exploit what would appear to be at most a minor oversight by those involved in managing a large multi-defendant group. In any event, Amgen and Bates White both now know that Roche is a retaining defendant that is relying on Dr. Gaier's testimony and analysis in the AWP litigations, eliminating this basis for Amgen's contention that the Bates White contract with the AWP Joint Defense Group does not include Roche.

### C.  Amgen Is Aware of the Roche-Bates White Contract and Is Intentionally Attempting To Induce Its Breach

The other elements of a tortious interference with contract claim are easily met here. Amgen is aware that the contract between Bates White and the AWP Joint Defense Group includes Roche. Roche informed Amgen of Bates White's contractual commitment in the AWP litigations in its objection of December 11, 2006. Moreover,

11

Amgen is itself a member of the AWP Joint Defense Group and is aware – or should be – that Roche's status in that group entitles it to the protection against adverse concurrent representation by these Bates White economists. Amgen also knows – or should know – that Roche pays for the expert work being done by Drs. Gaier and Stomberg and Mr. Scher for the defense of the State AG suits – many of which also name Amgen.

Despite this knowledge, Amgen insists on using Drs. Gaier and Stomberg and Mr. Scher in this litigation over Roche's repeated objections. Amgen fails to state why these particular economists are its only choice in this case, giving rise to a legitimate inference that Amgen's objective is to place Roche in the predicament of having to challenge the opinions of economists it is relying on for its defense in the AWP litigations, a situation that would prejudice Roche in at least one, and perhaps both, cases.

### D. Roche Will Be Significantly Harmed By a Breach; Any Prejudice To Amgen Is of Its Own Making

An order by this Court precluding Amgen from consulting with the Bates White experts is necessary to prevent severe prejudice to Roche from the contractual breach (indeed, effectively the irreparable destruction of Roche's contractual right) that Amgen seeks to induce. When it agreed that the AWP Joint Defense Group should retain Bates White, including Drs. Gaier and Stromberg and Mr. Scher, it was important to Roche that Bates White pledged that the "team" working for the AWP group would not work on any directly adverse Bates White engagement in the future. Mathews Decl. ¶ 2. Roche, like the other members of the group, believed it had contractually protected itself from the predicament that Amgen seeks to force on Roche here – that Roche's expert economist, on which it relies for its defense in the AWP litigations, could testify against its interests in another case. *See* Mathews Decl. ¶ 2.

12

Amgen's intentional interference with Roche's agreement with Bates White severely prejudices Roche in multiple ways.  *First*, as the AWP litigations progress in tandem with this case, Roche's ability to consult freely with Drs. Gaier and Stomberg and Mr. Scher regarding its defense of the AWP litigation would be impaired.  Roche's ability to discuss confidential information regarding its pricing and price reporting of its pharmaceuticals will be severely compromised, as it debates whether that information could be used against it in this litigation as it presses its antitrust claims centering on competition in particular pharmaceutical markets.

*Second,* Roche will be prejudiced in being forced to cross-examine its own expert – the exact situation that Roche and the AWP Joint Defense Group believed themselves contractually protected against.  The prejudice to Roche in having to cross-examine an expert it intends to rely on in other litigations is obvious, particularly if issues as to qualifications or methodological soundness should arise.  Conversely, any attack Roche makes on the Bates White experts in this case could be used to Roche's prejudice by its adversaries in the AWP litigations.

Damages are not sufficient to remedy the prejudice that Roche will experience from a breach of Bates White's contractual obligation – indeed, it is difficult to conceive how damages could even be quantified.  This difficulty of arriving at such damages underscores the importance of preventing Amgen from using Drs. Gaier and Stomberg and Mr. Scher here, before Roche is irreparably harmed.

In contrast to the prejudice that Amgen's designation of Dr. Gaier and his colleagues causes Roche, Amgen's claim of prejudice is of its own making.  Roche informed Amgen that it objected to Amgen's retention of the Bates White experts only

six days after Amgen retained them. On several occasions, Roche reminded Amgen that it maintained its objection. *See* Mayell Decl., Exh. C (December 14, 2006 letter stating that "I have not yet heard back from you" regarding Roche's objection); Exh. F (December 26, 2006 letter). Amgen waited until January 8, 2007 to respond to Roche's December 15, 2006 letter detailing that Roche was a member of the AWP Joint Defense Group that retains the Bates White experts. During that time, Amgen could have sought resolution of this matter to minimize any prejudice, but delayed until a week into the new year.

Moreover, Amgen's claim of prejudice is overblown. The parties are still weeks away from completing document discovery under the Court's schedule and have only recently discussed exchange of documents that would be pertinent to the economics issues that these experts will focus on. There is still plenty of time for Amgen to secure different economics experts who have not pledged to refrain from concurrent adverse engagements with Roche.

## CONCLUSION

For the reasons set forth above, the Court should deny Amgen's emergency motion to overrule Roche's objections to Amgen's designation of economics experts.

Dated:  January 15, 2007

>F. HOFFMANN-LA ROCHE LTD,
>ROCHE DIAGNOSTICS GMBH,
>and HOFFMANN-LA ROCHE INC.
>
>*By its Attorneys,*
>
>/s/  Keith E. Toms
>Lee Carl Bromberg (BBO# 058480)
>Julia Huston (BBO# 562160)
>Keith E. Toms (BBO# 663369)
>Nicole A. Rizzo (BBO# 663853)
>BROMBERG & SUNSTEIN LLP
>125 Summer Street
>Boston, MA 02110
>Tel. (617) 443-9292
>ktoms@bromsun.com
>
>Leora Ben-Ami (*pro hac vice*)
>Patricia A. Carson (*pro hac vice*)
>Thomas F. Fleming (*pro hac vice*)
>Howard S. Suh (*pro hac vice*)
>Peter Fratangelo (BBO# 639775)
>KAYE SCHOLER LLP
>425 Park Avenue
>New York, New York 10022
>Tel. (212) 836-8000

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and, due to the federal holiday, paper copies will be sent to those indicated as non-registered participants on January 16, 2007.

>/s/ Keith E. Toms
>Keith E. Toms

3099/501  601656.2