# EXHIBIT D

# KAYE SCHOLER LLP

Peter Fratangelo
212 836-8771
Fax 212 836-6364
pfratangelo@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

January 10, 2007

**BY FAX AND EMAIL**

William G. Gaede, III, Esq.
McDermott, Will & Emery
3150 Porter Dr.
Palo Alto, CA 94304-1212
Fax: 650-813-5100
Email: wgaede@mwe.com

Re:  *Amgen, Inc. v. F. Hoffman-La Roche Ltd, Roche Diagnostics GmbH, and Hoffmann-LaRoche Inc.*, Civ. No. 05-CV-12237WGY, D. Mass

Dear Bill:

      I write to confirm the details of our meet and confer which took place on January 10, 2007.

      During our discussion, we explained at length the relevance of each of the requests, and proposed compromises to address many issues Amgen raised, including the relevant time period for certain requests. Those, along with what we understand to be Amgen's positions, are set forth below. While we continue to believe all of the requests are appropriate as written, we are making these proposals as compromises to resolve disputed issues, and they are conditioned on your agreement to provide responses subject to all of the proposed limitations. In the event a motion is necessary, we reserve the right to seek full compliance with the requests as written.

### *Aranesp Documents*

      You confirmed that Amgen will include production of Aranesp documents for the requests discussed during the call and listed below related to Roche's counterclaims, subject to the particular limitations we discussed for each request or set of requests, as detailed below.

### *ITC Metadata*

      You confirmed that you now understand that the parties have agreed in the current case to exchange Full Text (OCR), beginning bates, ending bates, custodian, author, date, subject, recipient, cc, and bcc metadata for both electronic and paper scanned documents. You

represented that the production of documents delivered yesterday evening contained this metadata, and stated that Amgen is open to negotiating producing its ITC production with this metadata included, but you did not agree to produce this metadata for the ITC production. You also asked if Roche would agree to provide the same metadata for its ITC production and insisted on knowing what fields Roche produced with its ITC documents. I confirmed that Roche at least produced custodian information for its documents, and informed you that Roche is willing to produce its ITC production with all the metadata fields the parties are exchanging in the current litigation if Amgen will do the same. You refused to state whether Amgen would agree to this without knowing what Roche has already produced. This serves no purpose other than to delay giving us Amgen's answer on this issue. I will nonetheless endeavor to provide to you tomorrow a list of the metadata fields which Roche provided with its ITC production, but we consider this irrelevant to the issue under consideration in light of our willingness to produce Roche's documents with this data if Amgen does the same. We must have an answer on whether Amgen will produce its ITC documents with the full metadata fields that the parties have agreed to exchange in the current litigation given Amgen's statement that the bulk of responsive documents have been produced in the ITC action. If I do not hear from you on this issue by noon Jan. 12, I will consider your position to be a refusal to provide this information.

### Oncology Documents

Amgen has previously taken the position that any otherwise responsive documents that relate to sales to the oncology "segment" should be excluded from production. During our meet and confer, we explained why such an exclusion is not justified in light of the antitrust and tort claims, including issues of market definition, "dangerous probability of success," bundling, and intent to monopolize, among others. You indicated that you would consider Amgen's position in light of this discussion.

### Cutoff Date for Production Documents

Although Roche maintains that it is entitled to Amgen's documents related to its counterclaims from 1999 forward, as a compromise position we propose that, except as otherwise indicated below, Amgen produce responsive documents dated January 1, 2002, forward. You indicated you would check with your client and let us know Amgen's position on this proposal.

### Sufficient to Show

In response to several of Roche's requests, you had proposed limiting the requests to documents sufficient to show the sought-after information. As we explained, we are willing to agree with this compromise for certain requests, but cannot agree on others. We then discussed this issue in the context of each request where applicable, as noted below.

### Roche Requests

1. Roche Request No. 2 seeks documents that support the allegations that form the basis of Amgen's verified complaint against Roche under section 337, as amended, filed with the ITC

**KAYE SCHOLER**LLP

January 10, 2007

3

on April 11, 2006. Amgen stated that it has and will produce the responsive documents in its Jan. 9 production. Amgen affirmed this statement in its Jan. 8 follow-up letter to the meet and confirm.

2. Roche Request Nos. 24-25 relate to any Amgen submissions or communications with respect to any ESA to the FDA or any government agency or department that regulates drugs or biologics outside the U.S., respectively. Amgen has already confirmed that it will produce any of these documents that specifically mention CERA. In response to your over breadth objection, we suggested limiting these requests to communications or submissions to these agencies concerning these products which mention in any way deficiencies or potential deficiencies with these products, or any unmet need in the marketplace. We explained that these documents are relevant to your requested injunctive relief. You stated that you would check with your client and let us know if Amgen will produce these documents.

3. Roche Request No. 26 requests documents concerning communication between Amgen and any regulatory agency responsible for the approval of drugs for use in humans, including the FDA and the EMEA, that mention CERA or any other ESA compound sponsored by Roche. You stated that you were willing to produce documents concerning communications with these agencies with regard to CERA, by any name or by implication, or any product for which Roche is listed as the sponsor.

4. Roche Request No. 55 seeks documents concerning collaborations, agreements, joint ventures or communications between Amgen and any third parties concerning licensing or potential licensing of Amgen's EPO patents and their applications and counterparts. Amgen stated that it generally thought this request was overbroad. We explained that we did not believe the request to be overbroad because you haven't represented to us that there are a very large number of times when Amgen discussed or was approached about licensing its patents, and the number of people within Roche that might have documents responsive to this request would be very limited. You then stated that you believed the request would encompass documents such as material transfer documents between Ortho and Amgen, which would be voluminous. We do not believe this request encompasses such documents as it seeks documents related to "any effort or attempt" to license or grant rights under the patents. This does not encompasse every document exchanged between parties once a license is given. Rather, we are seeking documents including communications and internal Amgen documents concerning or discussing any offers, to or from Amgen, to license the patents, inquiries to or from third parties regarding the possibility of licensing the patents, discussions with potential licensees, whether successful or not, regarding potential or actual licenses of the patents, and documents concerning or discussing the terms of any license or potential license, including a complete copy of the agreements between Ortho and Amgen.

5. Roche Request Nos. 60 and 104 relate to Roche's agreements with Fresenius Medical Care. In an effort to compromise, Roche agrees to limit this request to those documents pertaining to EPO patents and EPO products including Aranesp. Amgen stated that it will produce these documents from Jan. 1, 2003 forward including contracts and related documents.

Amgen should produce these documents immediately given the limited time remaining for production in this case.

6. Roche Request Nos. 61 and 62 relate to information about Amgen's total share of sales in the ESA market. These documents are relevant to Roche's antitrust counterclaims because they reflect how Amgen tracks and views ESA markets and its definition of the relevant market. Roche suggests Jan. 1, 2002 as the cutoff date for these documents. You stated that you understood Roche's position and would confirm this with your client. Please notify us as to whether Amgen will produce these documents according to these terms at our scheduled Jan. 12 meet and confer.

7. Roche Request No. 63 concerns documents that relate to the structure or parameters for markets and submarkets for any ESA products sold in the U.S. Roche proposes the 2002 default cutoff date discussed above for these documents. We gave examples of documents we are asking for under this request which include but are not limited to discussions about the markets or the makeup of ESA markets and submarkets. You agreed that you understood Roche's position and would discuss this with the client. Please confirm whether or not Amgen agrees to produce these documents according to these terms at our scheduled Jan. 12 meet and confer.

8. Roche Request No. 64 seeks documents related to the entry and barriers to entry of ESAs into markets and/or submarkets for ESA products. Roche proposes a cutoff date of Jan. 1, 2001 for these documents. This date is justifiably earlier than the default 2002 cutoff date Roche proposed because Aranesp was approved for the renal market in 2001. Roche has agreed to consider whether this request should exclude Amgen products and will inform you of its decision. Amgen has stated that it will consider this request. Please confirm whether or not Amgen agrees to produce these documents according to these terms at our scheduled Jan. 12 meet and confer.

9. Roche Request Nos. 65, 66, and 69 relate to business, marketing and sales documents concerning any ESAs manufactured, marketed or licensed by Amgen. Roche is willing to limit its requests to documents from Jan. 1, 2002 forward. Although not a limitation on these requests, Roche clarified that it seeks actual strategic and business plans or similar regardless of how Amgen refers to these documents by name. Furthermore, the request encompasses documents showing price points over time, discussions about markets and those relevant to market power. These documents are clearly relevant to Roche's antitrust counterclaims as they demonstrate the evolution of the ESA marketplace over time and Amgen should therefore produce these documents immediately. You have agreed to discuss this with the client. Please confirm whether or not Amgen agrees to produce these documents according to these terms discussed at our scheduled Jan. 12 meet and confer.

10. Roche Request Nos. 70-74 seek documents related to cost, pricing and sales information. Roche's position is that Amgen should produce documents that discuss the factors that affect the price of Epogen and Aranesp, including but not limited to documents discussing reimbursement levels, the market power of Aranesp, and Amgen's leverage over customers,

from Jan. 1, 2004 forward. In addition, Amgen should produce documents sufficient to show the underlying data for this request on a year by year basis from Jan. 1, 2000 forward. You stated that you will discuss these proposals with your client. Please confirm whether or not Amgen agrees to produce these documents according to these terms at our scheduled Jan. 12 meet and confer.

11. Request No. 114 asks for documents that concern Amgen's contracts, agreements, negotiations or discussions with any third party concerning the purchase, manufacture, source or supply of any ESA product. Amgen suggested producing documents related to this request from Jan. 1, 2003 forward, and we will get back to you on this proposal.

12. Request No. 115 seeks documents concerning communications with health care providers regarding CERA. Amgen has not provided a reasonable justification for applying a date restriction to this request. Any Amgen document that mentions CERA to health care providers would be directly relevant to Roche's counterclaims of antitrust and tortious interference. Not only does Roche have existing business relationships with some of these providers, but they are key players in the ESA marketplace and communications with them are essential to these claims. Amgen already acknowledged the particular relevance of such documents from any time period when it did not object to production of documents that mention CERA such as with Request No. 26. Considering the critical importance of any such documents, we ask that you relate Amgen's decision to us during our Jan. 12 meet and confer if not sooner.

13. Request No. 116 concerns "the effect of government or private insurance reimbursement of health care providers of for the use of ESAs on the prices, sales or market shares of Aranesp, Epogen, Procrit, and/or products of any actual or potential competitors." Attempting to accommodate Amgen, Roche proposed with this request, that the cutoff date be moved forward so that Amgen only has to produce documents from Jan. 1, 2004 forward. Amgen stated that it would consider this proposal. Amgen should confirm whether or not it accepts Roche's compromise during our Jan. 12 meet and confer.

14. Request Nos. 117, 118, and 120 relate to clinical trial documents and grants. As with Request No. 116, Roche suggested the cutoff date move forward in time to Jan. 1, 2005. Roche further stated that it would consider narrowing these requests to specific information about clinical trial sites, investigators, and the terms of participation in such clinical trials such as payment information. We will inform Amgen of our conclusion regarding the scope of these requests.

15. Request No. 119 relates to all documents concerning Roche's effort to obtain FDA approval of CERA, including Amgen's communications with third parties regarding this effort. Amgen agreed to produce all documents related to this request.

16. Request No. 121 requests documents concerning Amgen's ITC suit against Roche. Amgen objected to this request in its responses to Roche's requests by only agreeing to produce "documents not authored or received by an attorney (including, but not limited to, Amgen's

**KAYE SCHOLER** LLP

6                                                                                          January 10, 2007

counsel of record in the ITC action and ITC staff attorneys)." This objection is simply unreasonable and unsupported by the law of privilege. Not all documents authored by an attorney, let alone Amgen's, are privileged documents. Furthermore, Amgen cannot claim privilege as to the ITC staff attorneys. To the extent that Amgen withholds documents from production of this request, Amgen should produce a privilege log. You stated that you understood Roche's position. Please confirm whether Amgen will revise or revoke this objection and produce any non-privileged document, including documents authored or received by ITC staff attorneys, and a privilege log for any withheld documents during our next meet and confer.

### *Amgen Laboratory Notebooks Custodian Information*

We asked you to provide custodian information for each Amgen lab notebook produced in the ITC action or the district court. Many of the notebooks have no identifying information, and it is impossible for Roche to discern whose work is recorded in the notebooks. As previously stated, this should be easy to provide to us since there is almost certainly a record kept by Amgen for every lab notebook by number and the person to whom it was assigned. You stated on the call that it was not as easy as this, but refused to elaborate or provide any information that would assist in reaching a solution that provided the information we need in a quick and reasonable manner. Please immediately let us know if Amgen will provide this list.

### *Dr. Strickland's Lab Notebooks*

You agreed to confirm whether Amgen has produced all of Dr. Strickland's notebooks to us, including those containing work underlying his declarations made before the PTO and in the TKT case. If Amgen contends they have been produced, please identify them by Bates number. If they have not been produced, please produce them immediately.

### *Goldwasser Documents*

Michele Moreland in her Jan. 5 letter to me (reiterated by you on the conference) represented that "Amgen has produced to Roche all documents within Amgen's possession relating to Dr. Goldwasser and his research assistants, and that Amgen has not withheld any of those documents." As I mentioned, several of the documents identified in the attachment to this letter are incomplete, including incomplete pieces of what appear to be lab notebooks. Additionally, many of these documents are illegible. For example, in identified range AM-ITC0072841-73634, many pages are unreadable. AM-ITC-138477-138585 appears to contain many portions of lab notebooks, which have been identified in the attachment to the Jan. 5 letter as Dr. Goldwasser's. All or almost all of these are incomplete, usually having a cover without identification and some pages after it presumably from that book, but not a complete lab notebook. The same for AM-ITC-138592-138724 and AM-ITC199482-245275. These are indicative of the state of the production of Dr. Goldwasser's documents including lab notebooks. Roche is entitled to a complete, legible set of Dr. Goldwasser's documents, including complete, legible lab notebooks. You are going to check with the Marshall Gerstein firm, which represents both Amgen and Dr. Goldwasser to find out where the originals of Dr. Goldwasser's documents

**KAYE SCHOLER** LLP

January 10, 2007

7

are currently located, when Amgen made copies of them, and what Amgen did with them after making the copies. Regardless of where the originals are currently located, Amgen must provide Roche with a complete, legible set of Dr. Goldwasser's documents. We await your information and proposal on how to accomplish this production.

We look forward to receiving Amgen's position on the outstanding issues.

Very truly yours,<br><br>Peter Fratangelo

cc:  Krista Carter
     Sandip H. Patel
     Michael Kendall
     Julia Huston
     Manvin Mayell