# EXHIBIT 2

Dockets.Justia.com

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

William G. Gaede III
Attorney at Law
wgaede@mwe.com
650.813.5035

January 12, 2007

**VIA FACSIMILE AND E-MAIL**

Peter Fratangelo, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

> **Re:    *Amgen Inc. v. F. Hoffmann-La Roche Ltd., et al.*
>          Case No. 05 Civ. 12237 WGY**

Dear Peter:

I write to follow up on our meet and confer of January 10 and 12 and in response to your letter of January 10 on Roche's First Set of Document Requests. We see no basis for Roche to believe that many of its requests as written satisfy the requirements of Rule 26(g). It is incumbent upon Roche in the first instance to draft document requests that are tailored to the issues of the case. Already the Court has found that many were far outside of the proper areas. Many of the remaining document requests that we are discussing likewise suffer from the same deficiencies. Any offer we make here is subject to our full reservation of rights and objections.

*Aranesp Documents*

We agreed that we will be producing Aranesp documents as appropriate within the scope of each request. By doing so, and as made clear in the Court denying Roche's motion to compel, the universe of Aranesp documents is not generally at issue in the litigation. Rather, consistent with our representation to the Court, Aranesp documents, where relevant to an antitrust issue, and assuming all other requirements of Rule 26 are met, including relevance and lack of undue burden, will be produced in response to the specific limitations below.

*ITC Metadata*

Your summary of our January 10 conversation misstates what we discussed during our call. We also note that you claimed to have reached certain agreements on providing certain data as applicable to ITC documents, yet acknowledged Roche's failure to comply with its own understanding of this purported agreement in that it has not produced such information in this litigation. The conduct of Roche speaks far louder than the revisionist history you advance on agreements.

U.S. practice conducted through McDermott Will & Emery LLP.

3150 Porter Drive  Palo Alto, California  94304-1212  Telephone: 650.813.5000  Facsimile: 650.813.5100  www.mwe.com

Peter Fratangelo, Esq.
January 12, 2007
Page 2

litigation. The conduct of Roche speaks far louder than the revisionist history you advance on agreements.

Be that as it may, and with no obligation to do so, as we discussed, we are prepared to provide to you full text (OCR) production of the 1.5 million pages we produced over seven months ago in the ITC proceeding. We will also provide you with the objective coding we have for these legacy documents, to the extent it exists. Many of these documents stretching back over 20 years were paper documents produced in prior litigations and had various degrees of objective coding (but did not have metadata). We cannot represent that all fields, or any fields, for any one document exist, but you will have what we have. To the extent your letter implies that there is any obligation for us to provide even this information, that implication is wrong as there is no such obligation. Moreover, to the extent your letter implies that there is any obligation for us perform additional objective coding for these documents, we disagree and will not do so. That would place unwarranted costs and burdens on Amgen that Rule 26 does not require. We note that you have had these documents for over seven months, and thus have had more than ample time to objectively code them yourself.

As to Roche's ITC documents, please provide the metadata/coding for the documents as it exists.

*Oncology Documents*

You did not dispute that Roche has no plans to enter the oncology segment until at least 2009, if even then. You also did not point us to any specific statement in Roche's counterclaims that addresses oncology. Likewise, it bears emphasis that Roche's antitrust counterclaims are under advisement from the Court. Your articulation of relevance is speculative, and certainly does not warrant burdensome document discovery into oncology segments, which Roche's requests as drafted involve. We will discuss this issue further on our meet and confer scheduled for next Tuesday.

*Cutoff Date For Production*

For certain requests, we are pleased that Roche has acknowledged that its 1999 date was effectively no compromise for a company not even on the market. As discussed below, we can agree with your January 1, 2002, date advanced in response to our January 1, 2003, proposal.

*Sufficient to Show*

Certain categories we continue to maintain that a "sufficient to show" response is appropriate to provide Roche with the appropriate documents without unduly burdening Amgen. These are specifically addressed below.

Peter Fratangelo, Esq.
January 12, 2007
Page 3

*Issues on Specific Requests Discussed*

1    Roche Request Nos. 24-26. We agree that we will produce any document submitted to the FDA or the EMEA that refers to CERA, or to an unmet medical need in the United States for an ESA. Beyond that, as drafted, we will maintain our objections under Rule 26.

2.    Request No. 55: We understand based on our call that Roche is not seeking material transfer agreements under this request. Accordingly, we will not collect and produce such documents. We are looking into the issue of whether we can meaningfully narrow the scope of this request objectively, and will get back to you on a proposal next Tuesday.

3.    Request Nos. 60 and 104: As stated in our response, the scope of these requests encompasses documents containing the confidential information of Fresenius Medical Care. Consequently, and as also stated in our response, we are notifying Fresenius Medical Care of your requests and seeking its permission to produce documents Amgen may possess containing such confidential information and relating to Amgen's contracts to supply EPOGEN® and ARANESP® dating back to January 1, 2003. We stand on our objections under Rule 26 as to the remainder of the scope of the requests as drafted.

4.    Request Nos. 61 and 62: As drafted, these requests violate Rule 26 because they call for all documents that relate to Amgen's sales in ESRD and CKD channels.    We will produce documents sufficient to show the sales in the ESRD and CKD channels in the United States since January 1, 2002. You stated that you would only agree to narrow the scope of these requests if we provided such data in native format. We pointed out to you that we had no such obligation to provide you with data in native format. We further, as discussed below under Requests 65 and 66 and to the extent if arguably called for in these requests, will produce the final business, strategic, pricing and marketing plans relating to nephrology generated since January 1, 2002. We will stand on our objections under Rule 26 to the remaining scope of these requests as drafted.

5.    Request No. 63:    As drafted, the request violates Rule 26 because it asks for all documents relating to the structure or parameters of the markets for ESAs in the United States, which is burdensome, oppressive etc. The documents we will provide in response to Request Nos. 65 and 66 are sufficient to show the information Roche requires. We will stand on our objections under Rule 26 to the remaining scope of the request.

6.    Request No. 64. Amgen has produced a large volume of documents under this request. Documents concerning competitive intelligence that have and are being produced will address this subject matter. The problem is the scope of the request as drafted because it violates Rule 26. We will stand on our objections under Rule 26 to the remaining scope of the request.

7.    Request Nos. 65, 66, and 69: We will produce the final business, marketing, pricing and strategic plans generated from January 1, 2002, that relate to nephrology. These plans contain

Peter Fratangelo, Esq.
January 12, 2007
Page 4

the information you articulated you are seeking. We will stand on our objections under Rule 26 to the remaining scope of the requests as drafted.

8.      Request Nos. 70-74. We will produce documents since January 1, 2000, sufficient to show on a yearly basis the cost, pricing and sales information for EPOGEN® and ARANESP®. We are producing documents that discuss the factors that affect the price of Epogen and Aranesp since January 1, 2004, as your letter states. This should address the information needs you articulated at our meet and confer. We will stand on our objections under Rule 26 to the remaining scope of the requests.

9.      Request No. 114. We are prepared to produce the Amgen's contracts to supply EPOGEN® and ARANESP® generated since January 1, 2003. However, these contracts include confidentiality clauses requiring Amgen to notify its customers of Amgen's intention to disclose the contracts to third parties (e.g., Roche). Consequently, we are notifying those customers that Amgen has been requested to produce these contracts in connection with this litigation. Amgen will produce to Roche Amgen's contracts to the extent that Amgen customers do not object. I note during our call that you refused to identify even one entity that formed the basis of your tortious interference claim even though Rule 11 clearly would have required you to identify such an entity prior to filing Roche's counterclaim. Instead, it was your view that Roche is simply entitled to fish through Amgen's documents, and then identify such an entity. Such a position violates Roche's obligations under Rule 11 and 26. We will stand on our objections under Rule 26 to the remaining scope of the request as drafted, but consider your request as to documents related to such negotiation. I note that if Roche was willing to identify the entities it based its claim upon, that could form the basis of a reasonable compromise on this request.

10.     Request No. 115: We have or are producing such documents.

11.     Request No. 116: We accept your proposal, and stand on our objections under Rule 26 as to the remaining scope of the request as drafted.

12.     Request Nos. 117, 118 and 120: We will provide the information to identify the clinical trials and grants since January 1, 2005. I am looking into the issue of terms.

13.     Request No. 119: We have and are producing the Amgen documents that address CERA. We will stand on our objections under Rule 26 to the remaining scope of the request as drafted.

14.     Request No. 121: You agreed that it was an undue burden to require us to log all privileged communications. We both agreed to discuss this issue further on Tuesday.

*Amgen Laboratory Notebooks Custodian Information*

Although you acknowledged no document request was implicated by your request that we provide you with a list of custodian information for laboratory notebooks, we will produce to

Peter Fratangelo, Esq.
January 12, 2007
Page 5

Roche a list that Amgen maintains regarding the notebooks it has produced. This list will identify the lab notebooks produced to Roche by Bates range and will identify to whom the notebook was assigned. Amgen makes no guarantee that the list is 100% complete or accurate, but is our best list. This along with the coding data for the ITC production should assist you.

*Dr. Strickland's Notebooks:*

Dr. Strickland's notebooks have been produced. The above information should guide you to them.

*Goldwasser Documents:*

We do not have the original documents, and we understand they are with the University of Chicago. As I told you, I have no understanding that Amgen has control over them, but would double-check. Again, to the best of our understanding, we do not have complete copies of Dr. Goldwasser's laboratory notebooks and the copies were made many years ago. We are checking to see if we have better copies than those produced and will produce the better copies if they exist. But again, you have what we have.

We will continue our discussion at 10:00 a.m. Pacific on Tuesday.

Very truly yours,

William G. Gaede, III

cc:    Mike Gottfried, Esq.
       Krista Carter, Esq.
       Sandip H. Patel, Esq.