# EXHIBIT 3

# McDermott Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

William G. Gaede III
Attorney at Law
wgaede@mwe.com
650.813.5035

January 16, 2007

**VIA FACSIMILE AND E-MAIL**

Peter Fratangelo, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

   Re: *Amgen Inc. v. F. Hoffmann-La Roche Ltd., et al.*
     Case No. 05 Civ. 12237 WGY

Dear Peter:

  I write to follow up on our meet and confers of January 10, 12 and 16. As we have stated in the past, we see no basis for Roche to contend that many of its document requests as written satisfy the requirements of Rule 26(g). It is incumbent upon Roche in the first instance to draft document requests which are tailored to the issues of the case. Already the Court has found that many requests were far outside of the proper areas. *See* January 9, 2007 Order Denying Motion to Compel. Many of the remaining document requests that we discussed also suffer from the same deficiencies. From our call today, we understood that if we do not unconditionally accept Roche's position on these issues, Roche will move to compel further production. To remove any issues of confusion, we provide to you the following summary illustrating bases for our objections and the lack of justification for your threatened motion.

*ITC Metadata*

You have not pointed to any obligation by us under Rule 26 to provide Roche with our existing coding of documents that were produced in the ITC and reproduced in this litigation. We reasonably offered to provide you what objective coding we had on these documents, and reaffirmed that we disagreed that we had any obligation to provide you with this information. In your letter of last Wednesday, you stated that you would "endeavor" to provide us with information on the Roche metadata fields. You have not done so. You acknowledged that Roche had produced only custodian information.

  Today, you informed me that Roche was unwilling to produce any metadata on its ITC produced documents until it reviewed Amgen's production of its objective coding. Such a position breached the good faith position we advanced of providing Roche with our objective coding as it exists on all fields in return for Roche providing the same. *See* my letter of January 12, 2007. Please reconsider your position.

Peter Fratangelo, Esq.
January 16, 2007
Page 2

*Oncology Documents*

As stated in my January 12, 2007 letter, you did not dispute that Roche will not enter the oncology segment until at least 2009 or later. Still, you also did not point us to any specific statements in Roche's counterclaims that address oncology. Likewise, it bears emphasis that Roche's antitrust counterclaims are under advisement from the Court. Given this failure to articulate the relevance, much less the undue burden Roche is seeking to place on Amgen, we stand on our objection of discovery into this area. Of course, we remain willing to discuss this issue further.

*Cutoff Date For Production*

During our call today, you did not dispute that the January 1, 2002, proposed compromise origination date remained reasonable for the antitrust documents. Nonetheless, we understand that should Roche choose to move on certain requests, it will be seeking to enforce the full scope beyond January 1, 2002.

*Sufficient to Show*

We understand from our call today that for many of the requests, Roche will be seeking to enforce the full scope of the drafted requests that request all documents relating to a specific subject matter, rather than "sufficient to show." For the reasons discussed below, the requests as drafted violate Rule 26.

*Issues on Specific Requests Discussed*

1.   Roche Request Nos. 24-26: My letter of January 12, 2007 stated that Amgen will produce any document submitted to the FDA or the EMEA that refers to CERA, or to an unmet medical need in the United States for an ESA. Beyond that, as drafted, we will maintain our objections under Rule 26. During our call today, you did not state that you considered our position to be improper.

2.   Request No. 55: As stated in my letter of January 12, 2007, we understand that Roche is not seeking material transfer agreements under this request. Accordingly, we will not collect and produce such documents. You have agreed with this understanding. We will provide to you documentation relating to requests by third parties or by Amgen to license the asserted Lin patents. Beyond that, we stand on our objections under Rule 26 to the scope of the request as drafted.

3.   Request Nos. 60 and 104: As stated in my January 12, 2007 letter, the scope of these requests encompasses documents containing the confidential information of Fresenius Medical Care. Consequently, and as also stated in our response, we have notified Fresenius Medical Care of your requests and are seeking its permission to produce documents which Amgen may possess containing such confidential information and relating to Amgen's contracts to supply

EPOGEN® and ARANESP® dating back to January 1, 2003. We stand on our objections under Rule 26 as to the remainder of the scope of the requests as drafted.

4. Request Nos. 61 and 62: As stated in my January 12, 2007 letter, as drafted, these requests violate Rule 26 because they call for all documents that relate to Amgen's sales in the ESRD and CKD channels. You did not dispute during our meet and confer this broad scope, and failed to articulate why this scope was proper under Rule 26, including complying with Rule 26(g). As we stated in our January 12, 2007 letter, we will produce documents sufficient to show the EPOGEN® and ARANESP® sales in the ESRD and CKD (nephrology) channels in the United States since January 1, 2002. We further, as discussed below under Requests 65 and 66, and to the extent if arguably called for in these requests, will produce the final business, strategic, pricing, sales and marketing plans and market projections relating to nephrology (thus covering ESRD and CKD) generated since January 1, 2002. In view of Roche's failure to limit the scope of the requests, we will stand on our objections under Rule 26 to the remaining scope of these requests as drafted.

5. Request No. 63: As drafted, the request violates Rule 26 because it asks for all documents relating to the structure or parameters of the markets for ESAs in the United States, which is burdensome, oppressive, etc. The documents we will provide in response to Request Nos. 65 and 66 are sufficient to show the information Roche requires. We will stand on our objections under Rule 26 to the remaining scope of the request. You have provided no meaningful compromise on this point other than to limit it to January 1, 2002. (Your letter of January 10 failed to limit the subject matter scope and thus Roche has not cured the inherent deficiency in this overbroad and unduly burdensome request.) Again, all documents relating to the structure and parameters of the markets effectively encompasses all documents relating to sales and marketing in these markets, which involves an undue burden on Amgen and subject matter far beyond what is relevant.

6. Request No. 64. As stated in my January 12, 2007 letter, Amgen has produced a large volume of documents under this request. The problem is the scope of the request as drafted, because it violates Rule 26 since it is not limited to Roche's ESA, and requests all documents relating to entry or potential entry into the market, which effectively requests every piece of paper on any ESA. It bears emphasizing that Amgen has completed (or is currently completing) production of its competitive intelligence documents on CERA, as well as agreeing to produce its business, marketing and pricing plans (see below) that will address this area. Roche, on the other hand, has failed in any way meaningfully to agree to limit the broad scope of the request, as drafted. We note that your letter of January 10, 2007 states that you are seeking "actual strategic or business plans" regardless of name, which we are producing. Nonetheless, you failed to limit the scope of the request to those documents. As a result, we understand that you will be moving to compel the full scope of the request as drafted. We will stand on our objections under Rule 26 to the remaining scope of the request.

Peter Fratangelo, Esq.
January 16, 2007
Page 4

7.  Request Nos. 65, 66, and 69: As stated in my January 12, 2007, letter, we will produce the final nephrology "business, marketing, pricing and strategic plans" generated from January 1, 2002, that relate to nephrology. These plans contain the information which you articulated you are seeking. During our call, you complained that we did not inform you that we will be producing the pricing analyses, market projections, pricing plans or sales plans and projections. Just so you are clear, we are producing such final documents generated since January 1, 2002, which are encompassed in the language I used in my January 12, 2007 letter. We will stand on our objections under Rule 26 to the remaining scope of the requests as drafted.

8.  Request Nos. 70-74. As stated in my January 12, 2007 letter, Amgen will produce responsive documents since January 1, 2000, sufficient to show on a yearly basis the cost, pricing and sales information for EPOGEN® and ARANESP®, consistent with your letter of January 10, 2007. We further are producing documents that discuss the factors that affect the price of EPOGEN® and ARANESP® since January 1, 2004, also consistent with your January 10 letter. During the meet and confer today, you never specifically stated that this was not acceptable to Roche. We will stand on our objections under Rule 26 to the remaining scope of the requests.

9.  Request No. 114. As stated, we are prepared to produce Amgen's contracts on the supply of EPOGEN® and ARANESP® generated since January 1, 2003 in the dialysis, nephrology and hospital context. However, these contracts include confidentiality clauses requiring Amgen to notify its customers of Amgen's intention to disclose the contracts to third parties (*e.g.*, Roche). Consequently, we are notifying those customers that Amgen has been requested to produce these contracts in connection with this litigation. Amgen will produce to Roche Amgen's contracts to the extent that Amgen's customers do not object. Despite our request, you still have failed to identify even one entity that formed the basis of Roche's allegations against Amgen for tortious interference. As such, we must assume that Roche cannot name such an entity, and has violated Rule 11 and 26 by bringing such a claim without the actual factual basis to name even one entity. *See* my January 12 letter.

You asked us to produce documents on the negotiations of such contracts. As discussed, we are prepared to do that for each contract produced. You asked me to confirm whether this was for each individual contract or for a general contract with a GPO while excluding individual contracts. We confirm that our search will encompass both possibilities

10. Request No. 115: We have or are producing such documents.

11. Request No. 116: As stated in our letter of January 12, 2007, we accepted your proposal of January 10, 2007, and stand on our objections under Rule 26 as to the remaining scope of the request as drafted. During our meet and confer of today, you never articulated that this was unacceptable.

Peter Fratangelo, Esq.
January 16, 2007
Page 5

12.  Request Nos. 117, 118 and 120: We will provide the information to identify the clinical trials and grants since January 1, 2005, including the terms. This was agreeable to you.

13.  Request No. 119: As stated in my January 12, 2007 letter, we have and are producing the Amgen documents that address CERA. We will stand on our objections under Rule 26 to the remaining scope of the request as drafted.

14.  Request No. 121: The request as drafted literally asks for every piece of paper associated with the "commencement, prosecution and maintenance" of the ITC action, which as drafted clearly violates Rule 26. We have further discussed the undue burden of logging all privileged documents in connection with the "commencement, prosecution and maintenance" of the ITC action, as Request No. 121 effectively requires. As I informed you, this issue alone would be unduly burdensome as it literally would require the logging of thousands and thousands of attorney documents that are presumptively privileged. You stated that placing such a burden on Amgen was not "undue."

We remain open to discussing this request further, but in light of your apparent position that all documents related to the commencement and maintenance must either be produced or logged, we see no compromise position here. Nonetheless, as you suggested, we are thinking through options, including your suggestion of a list of privileged areas, and will get back to you shortly on this request. In the meantime, we note that Roche has effectively failed to address the overbroad scope of the request, violating in the first instance its obligation to draft reasonable document requests under Rule 26 (b) & (g).

*Goldwasser Documents:*

I have confirmed that Amgen does not have possession, custody or control of original documents relating to Goldwasser that are in the possession of the University of Chicago.

During our call, you stated that you would move to compel once you reviewed this letter, but failed to identify which document requests you intended to move on. If after reviewing this letter you wish to discuss the issues further, please contact me. Otherwise, please be sure to attach the letter as an exhibit to any motion to compel.

Very truly yours,

William G. Gaede, III

cc:  Mike Gottfried, Esq.
     Krista Carter, Esq.
     Sandip H. Patel, Esq.