UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMGEN INC., ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> F. HOFFMANN-LA ROCHE LTD ) </br> ROCHE DIAGNOSTICS GmbH ) </br> HOFFMANN-LA ROCHE INC. ) </br> ) </br> Defendants ) </br> ) | CIVIL ACTION No.: 05-CV-12237WGY |

**DECLARATION OF JULIAN BREW IN SUPPORT DEFENDANTS' OPPOSITION TO MOTIONS FOR PROTECTIVE ORDER
AND
DEFENDANTS' CROSS MOTION TO COMPEL THIRD PARTY FRESENIUS MEDICAL CARE NORTH AMERICA TO COMPLY WITH SUBPOENA AND AGREEMENT TO PRODUCE**

I, Julian Brew, declare under penalty of perjury that:

1. I am an attorney admitted to the Bar of the State of California and a partner of the law firm Kaye Scholer LLP, counsel for Defendants in this matter. I am also admitted *pro hac vice* before this Court in this case.

2. I make this declaration in Support of Roche's Opposition to Motions for Protective Orders filed by Third-Party Fresenius Medical Care North America ("Fresenius") and Plaintiff Amgen, Inc. ("Amgen").

3. Roche's Counter-Claims against Amgen allege, among other things, that Amgen has entered into anti-competitive exclusive and sole source agreements with customers for its products. Indeed, Amgen has publicly announced a long-term sole source agreement with the single largest dialysis provider Fresenius. Discovery of documents relating to that contract,

628437_1                                                1

including the contract itself and documents reflecting its purpose and anticipated consequences, are therefore of central relevance to this case. Since October 2006, Roche has been seeking these documents both from Amgen and Fresenius, only to be frustrated at every turn.

## AMGEN'S DOCUMENTS

4.      In October 2006, Roche served requests for production of documents on Amgen seeking, among other things, documents concerning its ESA contracts, including with its largest customer, Fresenius. Amgen objected and, after meeting and conferring without success, Roche was forced to file a motion to compel. On January 29, 2007, this Court entered an Order compelling Amgen to produce documents responsive to a number of requests, including No. 114, which sought all documents concerning contracts for sale of ESA products. Production was ordered within thirty (30) days, i.e. by February 28, at the latest. A true and correct copy of this Court's Docket entry, and the relevant request, are attached as **Exhibit A.**

## FRESENIUS'S DOCUMENTS

5.      Roche also has tried to get documents related to the Fresenius contract, among other relevant documents, from Fresenius. Attached hereto as **Exhibit B** is a true and correct copy of a subpoena for production of documents dated January 3, 2007, which we served on Fresenius. The subpoena seeks, among other things, documents relating to any exclusive dealing or other contracts with Amgen for its ESA products. Fresenius and Amgen recently announced a long-term sole source contract for Amgen's ESA products.

4.      On January 15, 2007, Fresenius's counsel Mark Hebert at Fish & Richardson LLP sent us a letter with objections to producing any documents responsive to the subpoena, a true and correct copy of which is attached as **Exhibit C**.

5. After several attempts to reach Mr. Hebert to meet and confer about Fresenius's objections, I finally spoke to him on January 31. During that conversation, I explained the relevance of the documents sought, and offered a number of compromises that significantly limited the scope of the documents sought.

6. On February 8, 2007, having heard no response from Mr. Hebert, I sent him a letter memorializing the proposed limitations on the subpoena discussed on January 31. A true and correct copy is attached as **Exhibit D**.

7. Over the next week, I placed several calls to Mr. Hebert in and effort to learn Fresenius's response to our proposal, but received no response. I sent him another letter on February 14 again asking him to call me and stating that we would have to file a motion to compel if he did not respond. A true and correct copy is attached as **Exhibit E**.

8. Again, I placed several calls to Mr. Hebert over the following week, but received no response. Finally, on February 16, I received a voicemail from Mr. Hebert raising a number of issues, but not proposing production of any documents. I immediately returned his call and left him a voice mail stating that, if we did not reach a resolution immediately, Roche would be forced to file a motion to compel.

10. On February 19, I finally spoke to Mr. Hebert. During that call, he asked a number of further questions about the relevance of the proposed documents, but indicated that he did not have agreement from Fresenius to produce any documents. Instead, he told me that he would send me a letter the following day attempting to memorialize Roche's proposal, which he would then take to his client. I told him that I expected him to discuss this with his client before then, and not wait until he had sent us another letter.

11. Receiving no letter by the close of business, I sent Mr. Hebert another letter on February 20, stating that we needed to have Fresenius's position or would file a motion to compel. A true and correct copy is attached as **Exhibit F**.

12. Shortly after I sent Exhibit F, I finally received a fax from Mr. Hebert purporting to memorialize Roche's latest proposal. A true and correct copy is attached as **Exhibit G**. Even though it was late in the day, I immediately wrote Mr. Hebert back to clarify aspects of his letter that did not accurately reflect Roche's proposal. A true and correct copy is attached as **Exhibit H**. I also requested that he provide us with Fresenius's response to this proposal by the close of business on Wednesday, February 21.

13. The following day, on February 21, I sent Mr. Hebert another letter correcting one other aspect of his letter that did not accurately reflect our proposal. A true and correct copy is attached as **Exhibit I**.

14. Finally, after the close of business on February 21, Mr. Hebert faxed me a letter agreeing to produce the categories of documents described in his February 20 letter, as clarified by my letters of February 20 and 21. A true and correct copy is attached as **Exhibit J.**

15. Despite Mr. Hebert's letter agreeing to produce documents, Fresenius still did not produce any documents, so I sent him a letter on February 26, confirming again our agreement on the scope of the subpoena and asking that production begin that week. A true and correct copy of this letter is attached as **Exhibit K.**

### AMGEN AND FRESENIUS STILL DO NOT PRODUCE DOCUMENTS

16. After business hours on February 27, Amgen's counsel wrote to request an additional two days from February 28 to comply with this Court's Order. In discussions the following day, we agreed to that request, so production was due March 2.

17. On March 1, 2007, Manvin Mayell in our New York office received a phone call from Mr. Hebert. The fact that Mr. Hebert called Mr. Mayell and not me was surprising, because I had been dealing with Mr. Hebert on the Fresenius subpoena and had been asking Mr. Hebert for a date when Fresenius would begin its production. Mr. Mayell conferenced me in to the call.

18. Mr. Hebert reported that he had just received a set of 300 documents from Amgen that Amgen had been ordered to produce, and he wanted seven days to review them and decide whether Fresenius would consent to production. Alternatively, he requested an extension until March 5 for Fresenius to seek a protective order.

19. As we discussed this request, I asked Mr. Hebert when Fresenius intended to produce its documents in response to Roche's subpoena. Mr. Hebert confirmed that Fresenius had agreed to produce documents but refused to give any date by which they would be produced. Therefore, while the delay was very prejudicial to Roche, I told Mr. Hebert that Roche would allow Amgen an extension to March 7 to produce the 300 documents sent to Mr. Hebert on the following conditions: (1) Amgen would immediately produce the contract, which Fresenius already agreed to produce, (2) documents would be produced on a rolling basis starting Monday, and (3) Fresenius would complete its production of documents responsive to Roche's subpoena by March 9. I also made clear Roche's position that Fresenius did not have the right to prevent Amgen from complying with this Court's January 29 Order. I then faxed a letter to Mr. Hebert, copied to Amgen with the same conditions, and also e-mailed him a copy for immediate access. A true and correct copy of that letter is attached hereto as **Exhibit L**.

20. Incredibly, Fresenius does not attach my letter to its Motion, nor does Amgen. Nor do they attach Mr. Hebert's response (by e-mail) rejecting our proposal, but still giving no date for even Fresenius's compliance with its agreement or the Roche subpoena. Nor do they

attach my e-mail response again asking when Fresenius would begin production. To clear up the record, a true and correct copy of that e-mail string is attached as **Exhibit M.**

21. As with my previous requests for a date when Fresenius would produce its own documents, Mr. Hebert did not respond, and we still do not have any documents from Fresenius. Amgen also has now failed to comply with the Court's January 29 Order. All discovery must be completed by April 2 under the scheduling order in this case, and depositions are beginning, for which these documents are needed. They also are needed for Roche's experts to prepare their reports by the current April 6 deadline for expert reports.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of March at Los Angeles, California.

/s/ Julian Brew
Julian Brew

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 5, 2007.

/s/ Keith E. Toms
Keith E. Toms