general descriptive terms are typically construed as having their full meaning." *Id.* at 1118, 72 USPQ2d at 1006. In the patent claim at issue, "subject to any clear and unmistakable disavowal of claim scope, the term 'operatively connected' takes the full breath of its ordinary meaning, i.e., 'said tube [is] operatively connected to said cap' when the tube and cap are arranged in a manner capable of performing the function of filtering." *Id.* at 1120, 72 USPQ2d at 1008.<

Whether or not the functional limitation complies with 35 U.S.C. 112, second paragraph, is a different issue from whether the limitation is properly supported under 35 U.S.C. 112, first paragraph, or is distinguished over the prior art. A few examples are set forth below to illustrate situations where the issue of whether a functional limitation complies with 35 U.S.C. 112, second paragraph, was considered.

It was held that the limitation used to define a radical on a chemical compound as "incapable of forming a dye with said oxidizing developing agent" although functional, was perfectly acceptable because it set definite boundaries on the patent protection sought. *In re Barr*, 444 F.2d 588, 170 USPQ 33 (CCPA 1971).

In a claim that was directed to a kit of component parts capable of being assembled, the Court held that limitations such as "members adapted to be positioned" and "portions . . . being resiliently dilatable whereby said housing may be slidably positioned" serve to precisely define present structural attributes of interrelated component parts of the claimed assembly. *In re Venezia*, 530 F.2d 956, 189 USPQ 149 (CCPA 1976).

## 2173.05(h) Alternative Limitations

### I.  MARKUSH GROUPS

Alternative expressions are permitted if they present no uncertainty or ambiguity with respect to the question of scope or clarity of the claims. One acceptable form of alternative expression, which is commonly referred to as a Markush group, recites members as being "selected from the group consisting of A, B and C." See *Ex parte Markush*, 1925 C.D. 126 (Comm'r Pat. 1925).

*Ex parte Markush* sanctions claiming a genus expressed as a group consisting of certain specified materials. Inventions in metallurgy, refractories, ceramics, pharmacy, pharmacology and biology are most frequently claimed under the Markush formula but purely mechanical features or process steps may also be claimed by using the Markush style of claiming. See *Ex parte Head*, 214 USPQ 551 (Bd. App. 1981); *In re Gaubert*, 524 F.2d 1222, 187 USPQ 664 (CCPA 1975); and *In re Harnisch*, 631 F.2d 716, 206 USPQ 300 (CCPA 1980). It is improper to use the term "comprising" instead of "consisting of." *Ex parte Dotter*, 12 USPQ 382 (Bd. App. 1931).

The use of Markush claims of diminishing scope should not, in itself, be considered a sufficient basis for objection to or rejection of claims. However, if such a practice renders the claims indefinite or if it results in undue multiplicity, an appropriate rejection should be made.

Similarly, the double inclusion of an element by members of a Markush group is not, in itself, sufficient basis for objection to or rejection of claims. Rather, the facts in each case must be evaluated to determine whether or not the multiple inclusion of one or more elements in a claim renders that claim indefinite. The mere fact that a compound may be embraced by more than one member of a Markush group recited in the claim does not necessarily render the scope of the claim unclear. For example, the Markush group, "selected from the group consisting of amino, halogen, nitro, chloro and alkyl" should be acceptable even though "halogen" is generic to "chloro."

The materials set forth in the Markush group ordinarily must belong to a recognized physical or chemical class or to an art-recognized class. However, when the Markush group occurs in a claim reciting a process or a combination (not a single compound), it is sufficient if the members of the group are disclosed in the specification to possess at least one property in common which is mainly responsible for their function in the claimed relationship, and it is clear from their very nature or from the prior art that all of them possess this property. While in the past the test for Markush-type claims was applied as liberally as possible, present practice which holds that claims reciting Markush groups are not generic claims (MPEP § 803) may subject the groups to a more stringent test for propriety of the recited members. Where a Markush expression is applied only to a portion of a chemical compound, the propriety of the grouping is determined by a consideration of the compound as a whole,

and does not depend on there being a community of properties in the members of the Markush expression.

When materials recited in a claim are so related as to constitute a proper Markush group, they may be recited in the conventional manner, or alternatively. For example, if "wherein R is a material selected from the group consisting of A, B, C and D" is a proper limitation, then "wherein R is A, B, C or D" shall also be considered proper.

*Subgenus Claim*

Genus, subgenus, and Markush-type claims, if properly supported by the disclosure, are all acceptable ways for applicants to claim their inventions. They provide different ways to present claims of different scope. Examiners should therefore not reject Markush-type claims merely because there are genus claims that encompass the Markush-type claims.

See also MPEP § 608.01(p) and § 715.03.

See MPEP § 803.02 for restriction practice re Markush-type claims.

### II.    "OR" TERMINOLOGY

Alternative expressions using "or" are acceptable, such as "wherein R is A, B, C, or D." The following phrases were each held to be acceptable and not in violation of 35 U.S.C. 112, second paragraph in *In re Gaubert*, 524 F.2d 1222, 187 USPQ 664 (CCPA 1975): "made entirely or in part of"; "at least one piece"; and "iron, steel or any other magnetic material."

### III.    "OPTIONALLY"

An alternative format which requires some analysis before concluding whether or not the language is indefinite involves the use of the term "optionally." In *Ex parte Cordova*, 10 USPQ2d 1949 (Bd. Pat. App. & Inter. 1989) the language "containing A, B, and optionally C" was considered acceptable alternative language because there was no ambiguity as to which alternatives are covered by the claim. A similar holding was reached with regard to the term "optionally" in *Ex parte Wu*, 10 USPQ2d 2031 (Bd. Pat. App. & Inter. 1989). In the instance where the list of potential alternatives can vary and ambiguity arises, then it is proper to make a rejection under 35 U.S.C. 112, second paragraph, and explain why there is confusion.

### 2173.05(i)   Negative Limitations

The current view of the courts is that there is nothing inherently ambiguous or uncertain about a negative limitation. So long as the boundaries of the patent protection sought are set forth definitely, albeit negatively, the claim complies with the requirements of 35 U.S.C. 112, second paragraph. Some older cases were critical of negative limitations because they tended to define the invention in terms of what it was not, rather than pointing out the invention. Thus, the court observed that the limitation "R is an alkenyl radical other than 2-butenyl and 2,4-pentadienyl" was a negative limitation that rendered the claim indefinite because it was an attempt to claim the invention by excluding what the inventors did not invent rather than distinctly and particularly pointing out what they did invent. *In re Schechter*, 205 F.2d 185, 98 USPQ 144 (CCPA 1953).

A claim which recited the limitation "said homopolymer being free from the proteins, soaps, resins, and sugars present in natural Hevea rubber" in order to exclude the characteristics of the prior art product, was considered definite because each recited limitation was definite. *In re Wakefield*, 422 F.2d 897, 899, 904, 164 USPQ 636, 638, 641 (CCPA 1970). In addition, the court found that the negative limitation "incapable of forming a dye with said oxidized developing agent" was definite because the boundaries of the patent protection sought were clear. *In re Barr*, 444 F.2d 588, 170 USPQ 330 (CCPA 1971).

Any negative limitation or exclusionary proviso must have basis in the original disclosure. If alternative elements are positively recited in the specification, they may be explicitly excluded in the claims. See *In re Johnson*, 558 F.2d 1008, 1019, 194 USPQ 187, 196 (CCPA 1977) ("[the] specification, having described the whole, necessarily described the part remaining."). See also *Ex parte Grasselli*, 231 USPQ 393 (Bd. App. 1983), *aff'd mem.*, 738 F.2d 453 (Fed. Cir. 1984). The mere absence of a positive recitation is not basis for an exclusion. Any claim containing a negative limitation which does not have basis in the original disclosure should be rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. Note that a lack of literal basis in the specification for a negative limitation may not be sufficient to establish a *prima facie* case for lack of descriptive support. *Ex parte Parks*,

30 USPQ2d 1234, 1236 (Bd. Pat. App. & Inter. 1993). See MPEP § 2163 - § 2163.07(b) for a discussion of the written description requirement of 35 U.S.C. 112, first paragraph.

### 2173.05(j)  Old Combination

**A CLAIM SHOULD NOT BE REJECTED ON THE GROUND OF OLD COMBINATION**

With the passage of the 1952 Patent Act, the courts and the Board have taken the view that a rejection based on the principle of old combination is NO LONGER VALID. Claims should be considered proper so long as they comply with the provisions of 35 U.S.C. 112, second paragraph.

A rejection on the basis of old combination was based on the principle applied in *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 37 USPQ 1 (1938). The principle was that an inventor who made an improvement or contribution to but one element of a generally old combination, should not be able to obtain a patent on the entire combination including the new and improved element. A rejection required the citation of a single reference which broadly disclosed a combination of the claimed elements functionally cooperating in substantially the same manner to produce substantially the same results as that of the claimed combination. The case of *In re Hall*, 208 F.2d 370, 100 USPQ 46 (CCPA 1953) illustrates an application of this principle.

The court pointed out in *In re Bernhardt*, 417 F.2d 1395, 163 USPQ 611 (CCPA 1969) that the statutory language (particularly point out and distinctly claim) is the only proper basis for an old combination rejection, and in applying the rejection, that language determines what an applicant has a right and obligation to do. A majority opinion of the Board of Appeals held that Congress removed the underlying rationale of *Lincoln Engineering* in the 1952 Patent Act, and thereby effectively legislated that decision out of existence. *Ex parte Barber*, 187 USPQ 244 (Bd. App. 1974). Finally, the Court of Appeals for the Federal Circuit, in *Radio Steel and Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 221 USPQ 657 (Fed. Cir. 1984), followed the *Bernhardt* case, and ruled that a claim was not invalid under *Lincoln Engineering* because the claim complied with the requirements of 35 U.S.C. 112, second paragraph. Accordingly, a claim should not be rejected on the ground of old combination.

### 2173.05(k) Aggregation [R-1]

**\*\*>**A claim should not be rejected on the ground of "aggregation." *In re Gustafson*, 331 F.2d 905, 141 USPQ 585 (CCPA 1964) (an applicant is entitled to know whether the claims are being rejected under 35 U.S.C. 101, 102, 103, or 112); *In re Collier*, 397 F.2d 1003, 1006, 158 USPQ 266, 268 (CCPA 1968) ("[A] rejection for 'aggregation' is non-statutory.").

If a claim omits essential matter or fails to interrelate essential elements of the invention as defined by applicant(s) in the specification, see MPEP § 2172.01.<

### 2173.05(m) Prolix

Examiners should reject claims as prolix only when they contain such long recitations or unimportant details that the scope of the claimed invention is rendered indefinite thereby. Claims are rejected as prolix when they contain long recitations that the metes and bounds of the claimed subject matter cannot be determined.

### 2173.05(n) Multiplicity [R-2]

*37 CFR 1.75.  Claim(s).*
   (a) The specification must conclude with a claim particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention or discovery.
   (b) More than one claim may be presented provided they differ substantially from each other and are not unduly multiplied.

*****

Where, in view of the nature and scope of applicant's invention, applicant presents an unreasonable number of claims which \*\* are repetitious and multiplied, the net result of which is to confuse rather than to clarify, a rejection on undue multiplicity based on 35 U.S.C. 112, second paragraph, may be appropriate. As noted by the court in *In re Chandler*, 319 F.2d 211, 225, 138 USPQ 138, 148 (CCPA 1963), "applicants should be allowed reasonable latitude in stating their claims in regard to number and phraseology employed. The right of applicants to freedom of choice in selecting phraseology which truly points out and defines their inventions should not be abridged. Such latitude, however, should not be extended to