EXHIBIT 9

Dockets.Justia.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC.,    )<br>)<br>Plaintiff,    )<br>)<br>vs.    )<br>)<br>F. HOFFMANN-LA ROCHE LTD, ROCHE    )<br>DIAGNOSTICS GmbH, AND HOFFMANN-LA   )<br>ROCHE INC.,    )<br>)<br>Defendants.    ) | **CIVIL ACTION No.: 05-cv-12237WGY** |

### PLAINTIFF'S SUPPLEMENTAL RESPONSE TO
### DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1-12)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff/Counter Defendant Amgen Inc. ("Amgen") hereby supplements its objections and responses to Defendants' First Set of Interrogatories (Nos. 1-12).

### PRELIMINARY STATEMENT

1.      Amgen's responses to Defendants' First Set of Interrogatories are made to the best of Amgen's present knowledge, information and belief.  Amgen's responses are subject to amendment and supplementation should future investigation indicate that amendment or supplementation is necessary.  Amgen undertakes no obligation, however, to supplement or amend these responses other than as required by the Federal Rules of Civil Procedure of the Local Rules of the United States District Court for the District of Massachusetts.

2.      Amgen's responses to Defendants' First Set of Interrogatories are made according to information currently in Amgen's possession, custody and control.

3.      To the extent that Amgen responds to Defendants' First Set of Interrogatories by stating information that private, confidential, highly confidential, proprietary, trade secret or otherwise protected from disclosure, Amgen will respond pursuant to the terms of the Protective Order in this case.

4.     Amgen reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility of any information, document or thing produced in response to Defendants' Interrogatories as evidence in any subsequent proceeding, hearing, or trial in this or any other action for any purpose whatsoever.

## GENERAL OBJECTIONS

Amgen makes the following objections to each and every instruction, definition, and interrogatory made in Defendants' First Set of Interrogatories: Amgen incorporates by reference the General Objections set forth in Amgen's responses to Defendants' First Set of Requests for Production of Documents and things. Moreover, Roche has produced approximately 1,000,000 pages of documents since December 29, 2006. Amgen reserves the right to supplement or amend its responses to these interrogatories after it has had an adequate amount of time to review Roche's voluminous new production.

## INTERROGATORY NO. 1:

Separately for each claim of each of the patents-in-suit, identify whether Amgen alleges that Roche makes, uses, offers to sell or sells a product that Amgen contends infringes that claim and explain whether the claim is contented to be infringed literally, by the doctrine of equivalents, directly, contributorily, or by inducement; and explain in claim chart form, the particular element or elements of each claim that Amgen contends are present in Roche's accused product or processes for making the Roche product and the construction of each claim element; and identify the person or persons likely to have discoverable information regarding this interrogatory; and all documents and things that support or otherwise refute Amgen's response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 1:

In addition to the foregoing General Objections, Amgen makes the following Specific Objections to this interrogatory: Amgen objects to this interrogatory on the grounds that it is overbroad, unduly burdensome and premature in that Amgen has only received limited discovery from Defendants, and that Defendants have refused to produce relevant evidence that is directly

2

MPK 122051-2.041925.0023

related to Amgen's infringement contentions. Until such time as Amgen has received such discovery, it cannot provide a complete response to this interrogatory. In particular, Amgen's ability to identify persons, documents, and things, including Roche's peg-EPO product, within Roche's possession, custody or control that relate to the subject matter of this interrogatory is limited by Roche's failure to provide complete responses to Amgen's outstanding discovery requests. Amgen also objects that it cannot provide a complete response at this time because the Court has not yet construed all of the claim terms that Defendants may contest. Amgen further objects to this interrogatory to the extent that it prematurely calls for the opinions of Amgen's expert witnesses, which by the Court's order will be provided in the form of report(s) on April 27, 2007. Amgen objects that the interrogatory is overly broad and unduly burdensome to identify "all documents and things that support or otherwise refute Amgen's response to this interrogatory."

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen provides the following response to this interrogatory:

Amgen will assert at trial that Roche has directly infringed or will directly infringe the following claims of the patents-in-suit: claims 1-2 of U.S. Patent No. 5,441,868 ("the '868 patent"); claims 4-9 of U.S. Patent of U.S. Patent No. 5,618,698 ("the '698 patent"); claim 7 of U.S. Patent No. 5,756,349 ("the '349 patent"); claim 1 of U.S. Patent No. 5,955,422 ("the '422 patent"); claims 3, 7-9, 11-12, and 14 of U.S. Patent No. 5,547,933 ("the '933 patent"); and claims 3-4 and 6 of U.S. Patent No. 5,621,080 ("the '080 patent") (collectively "the Asserted Claims").

Amgen contends that Defendants literally infringe each and every one of the Asserted Claims, with the sole exception of '080 claims 3-4 and 6. As to those three asserted claims of the '080 patent, at the time Amgen filed its complaint, the '080 claims were construed to literally

PLTF'S SUPPL. RESPONSE TO FIRST
SET OF INTERROGATORIES (1-12)
CASE NO. 05-cv-12237WGY

encompass polypeptides having 166 amino acids and encompass within the doctrine of equivalents polypeptides having the amino acid sequence of positions 1-165 of Figure 6. Since Amgen's complaint was filed, the Federal Circuit limited the equivalents that could be covered by the '080 claims. This issue has not been finally adjudicated. Roche has refused to produce its peg-EPO product and thus Amgen has been unable to fully characterize that product to determine whether any of Roche's peg-EPO product infringes the '080 claims literally or under the doctrine of equivalents.

Based upon the Court's prior claim construction orders with respect to the patents-in-suit and Amgen's proposed constructions, Amgen currently believes it will not be necessary to prove infringement at trial under the doctrine of equivalents with respect to the remainder of the Asserted Claims.    However, if the Court adopts a claim construction that would cause Defendants' peg-EPO product or process to not literally satisfy a limitation of the Asserted Claims, Amgen will prove at trial that Defendants' peg-EPO product or process satisfies such limitation under the doctrine of equivalents because any differences between Defendants' product and processes and the claimed products and processes are insubstantial.

Amgen further contends that Defendants have induced or will induce others to infringe each and every one of the Asserted Claims by making, using, selling, offering to sell, or importing Defendants' peg-EPO. Based upon the provided discovery of Roche's actions to date, Amgen does not currently contend that Defendants are liable for contributory infringement of the Asserted Claims.

In response to Defendants' request that Amgen "explain in claim chart form, the particular element or elements of each claim that Amgen contends are present in Roche's accused product or processes for making the Roche product and the construction of each claim element," Amgen incorporates by reference the chart attached hereto as Exhibit A.

In response to Defendants' request that Amgen "identify the person or persons likely to have discoverable information regarding this interrogatory," Amgen identifies the following persons:

4

Amgen

Dr. Steven Elliott
c/o Amgen Inc.
One Amgen Center Drive
Thousand Oaks, California 91320-1799

Dr. Fu-Kuen Lin
c/o Amgen Inc.
One Amgen Center Drive
Thousand Oaks, California 91320-1799
(805) 447 1000

Dr. Thomas W. Strickland
c/o Amgen Inc.
One Amgen Center Drive
Thousand Oaks, California 91320-1799
(805) 447 1000

Helen Torley
c/o Amgen Inc.
One Amgen Center Drive
Thousand Oaks, California 91320-1799
(805) 447 1000

Robert Brenner
c/o Amgen Inc.
One Amgen Center Drive
Thousand Oaks, California 91320-1799
(805) 447 1000

Leslie Mirani
c/o Amgen Inc.
One Amgen Center Drive
Thousand Oaks, California 91320-1799
(805) 447 1000

Josh Ofman
c/o Amgen Inc.
One Amgen Center Drive
Thousand Oaks, California 91320-1799
(805) 447 1000

Roche

| George Abercrombie<br>Hoffmann-La Roche Inc.<br>340 Kingsland Street<br>Nutley, New Jersey 07110 | Pascal Sebastian Bailon<br>21 Woodbine Road<br>Florham Park, NJ 07932 |
|---|---|

MPK 122051-2.041925.0023

| | |
|---|---|
| George R. Aranoff<br>615 South Preston Street,<br>Louisville, Kentucky | Anatole Besarab<br>Division of Nephrology and Hypertension<br>Henry Ford Hospital, CFP-511<br>2799 West Grand Boulevard<br>Detroit, Michigan 48202 |
| Ulrich Beyer<br>Pharma Development<br>F. Hoffmann-La Roche Ltd.<br>Grenzacherstrasse 124<br>CH-4070 Basel, Switzerland | Ute Dugan<br>F. Hoffmann-La Roche Ltd.<br>Grenzacherstrasse 124<br>CH-4070 Basel, Switzerland |
| Lars Birgerson<br>F. Hoffmann-La Roche Ltd.<br>Grenzacherstrasse 124<br>CH-4070 Basel, Switzerland | George Esgro<br>Hoffmann-La Roche Inc.<br>340 Kingsland Street<br>Nutley, New Jersey 07110 |
| Michael Brandt<br>Roche Diagnostics GmbH<br>Pharma Research Penzberg<br>Nonnenwaldstrasse 2<br>82372 Penzberg, Germany | Steven Fishbane<br>Winthrop-University Hospital<br>Department of Medicine<br>200 Old Country Rd.<br>Suite 135<br>Mineola, NY 11501 |
| Josef Burg<br>Roche Diagnostics GmbH<br>Pharma Research Penzberg<br>Nonnenwaldstrasse 2<br>82372 Penzberg, Germany | Anton Haselbeck<br>Roche Diagnostics GmbH<br>Pharma Research Penzberg<br>Nonnenwaldstrasse 2<br>82372 Penzberg, Germany |
| William M. Burns<br>Hoffmann-La Roche Inc.<br>340 Kingsland Street<br>Nutley, New Jersey 07110 | Bernd Hilger<br>Roche Diagnostics GmbH<br>Pharma Research Penzberg<br>Nonnenwaldstrasse 2<br>82372 Penzberg, Germany |
| Bernard Canaud<br>Hospital Lapayronie<br>Montpellier, France | Dick Hinson<br>Hoffmann-La Roche Inc.<br>340 Kingsland Street<br>Nutley, New Jersey 07110 |
| Frank C. Dougherty<br>Pharma Development<br>F. Hoffmann-La Roche Ltd.<br>Grenzacherstrasse 124<br>CH-4070 Basel, Switzerland | Eduard Holdener<br>Head Global Pharma Development<br>F. Hoffmann-LaRoche, Ltd.<br>Grenzacherstrasse 124, CH-4070<br>Basel, Switzerland |

6

In response to Defendants' request to "all documents and things that support or otherwise refute Amgen's response to this interrogatory," in addition to the documents identified in Exhibit A, Amgen also identifies the patents-in-suit, the prosecution histories of the patents-in-suit, Roche's IND (ITC-R-IND-00000001 to ITC-R-IND-00122491), and Roche's BLA (ITC-R-BLA-00000001 to ITC-R-BLA-00152682). Discovery is continuing.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen incorporates by reference its previous response and provides the following supplemental response to this interrogatory:

As set forth in Amgen's January 26, 2007, Application for Extension of Time Within Which To File a Petition For Writ of Certiorari to the United States Court of Appeals for the Federal Circuit, Amgen intends to file a Petition for Certiorari to the United States Supreme Court to appeal the aspect of the Federal Circuit's opinion regarding the '080 Patent.

As discovery is ongoing, it is premature to identify each and every person or entity which Defendants have induced or will induce to infringe the Asserted Claims. Amgen preliminarily asserts that Defendants have induced or will induce those persons and entities involved in making, using, offering to sell, or importing Defendants' peg-EPO, including Kuehne + Nagel and other entities involved in distributing Defendants' peg-EPO in the United States, customers who will commercially sell or use Defendants' peg-EPO upon product approval by the FDA, and those entities who are involved in Defendants' current "seeding" and other pre-marketing studies.

## INTERROGATORY NO. 2:

Identify all current and former employees of Amgen likely to have knowledge of facts in connection to Amgen's assertions within its Amended Complaint to this action, dated April 25,

MPK 122051-2.041925.0023

2006, including but not limited to Amgen's assertions regarding "Dr. Lin's Pioneering Inventions," "Roche's Infringing Process and Product," and "First Cause of Action."

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the foregoing General Objections, Amgen makes the following Specific Objections to this interrogatory:  Amgen objects to this interrogatory as unduly burdensome and lacking relevance under Rule 26 in that it would require Amgen to inquire of all of its current employees (about 20,000) and all of its former employees (perhaps even more in number) if they are aware of any of the facts asserted in Amgen's amended complaint and to identify all such current and former employees.  Moreover, the request is unbounded as to time and when former employees may have gained their knowledge of the facts.  For example, former Amgen employee Chrys Kokino is currently employed by Roche Laboratories Inc., a wholly-owned subsidiary of defendant Hoffmann La Roche Inc., and likely has knowledge about Defendants' peg-EPO products and manufacturing processes.  Aside from deposition testimony provided by Mr. Kokino in the related ITC action, Amgen reasonably believes that Mr. Kokino has additional information but Amgen does not know the extent of such information.  The same may be true for any other former Amgen employee now currently employed by Defendants.

Further, Amgen has produced documents related to the asserted facts and the identity of current and former employees with knowledge of the asserted facts are found in the documents so produced.

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, to the extent relevant, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen provides the following response to this interrogatory:

Dr. Fu-Kuen Lin, Dr. Thomas W. Strickland, Dr. Steven Elliott, Helen Torley, Robert Brenner, Leslie Mirani, and Josh Ofman are either current or former Amgen employees who may

MPK 122051-2 041925.0023

testify at trial with information relevant to the contested factual allegations contained in Amgen's Amended Complaint.

**INTERROGATORY NO. 3:**

For each of the claims of Amgen's EPO patents, describe Dr. Fu-Kuen Lin's contribution to the claimed subject matter therein, including his conception and reduction to practice of each claimed element, including without limitation the date of any such conception or reduction to practice, and identify all documents and things that support or otherwise refute Amgen's response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the foregoing General Objections, Amgen makes the following Specific Objections to this interrogatory: Amgen specifically objects to this interrogatory on the grounds that it is unduly burdensome and lacks relevance under Rule 26 in that it seeks conception and reduction to practice information before Roche has specified any prior art that purportedly would make such information discoverable. As the claimed inventions are presumed valid per 35 U.S.C. § 282, Roche has the burden to specify the prior art, if any, that purportedly renders the claims-in-suit invalid. Roche's Interrogatory No. 3 is therefore overly broad and unduly burdensome to the extent that it requires Amgen to anticipate all arguments and provide "all document and things" before Roche has specified its contentions and the bases underlying such contentions. When Roche fully and fairly answers Amgen's Interrogatories Nos. 9, 10, and 11 (including specifically identifying alleged prior art sufficient to make discoverable Lin's conception and reduction to practice), Amgen will be in position to fully respond to Roche's Interrogatory No. 3. Amgen also objects to this interrogatory to the extent that it prematurely calls for the opinions of Amgen's expert witnesses, which by the Court's order will be provided in the form of report(s) on April 27, 2007. Amgen further objects to this interrogatory to the extent that it asks for information relating to patent claims which are not in suit, and are therefore not relevant to any issue in this proceeding.

9

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its rights to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen provides the following response to this interrogatory:

Each invention recited in the Asserted Claims was conceived and reduced to practice no later than November 30, 1984, when Patent Application Ser. No. 678,298 was filed in the United States Patent and Trademark Office. Additionally, Amgen identifies below documents it has located to date after a reasonable search which contain information relevant to Dr. Lin's conception and reduction to practice of the inventions of the asserted claims before November 30, 1984. Amgen's investigation and search for relevant information continues, and Amgen reserves the rights to supplement or amend its response to this interrogatory as its investigation and discovery proceed in this matter. Amgen also reserves the rights to supplement or amend its response to this interrogatory after Roche provides its contentions in response to Amgen's Interrogatories Nos. 9, 10, and 11 in the event that Roche specifically identifies any art relevant to an asserted claim that it contends pre-dates November 30, 1984.

Among the evidence relevant to the date(s) on which Dr. Lin first conceived and reduced to practice the inventions of the asserted claims are documents with the following production number ranges:    AM-ITC  00049550-00049854,  00049914-00050347,  00050031-00050131, 00050348-00050875,    00017606-00017615,    00019189-00019189,    00049550-00049752, 00049912-00049913,    00050918-00050922,    00050935-00051183,    00050958-00051183, 00051363-00052623,    00053492-00053493,    00053538-00053541,    00053543-00053545, 00053548-00053550,    00053630-00053631,    00053643-00053645,    00053664-00053667, 00053673-00053674,    00053924-00054504,    00054143-00054245,    00054250-00054351, 00055859-00055866,    00058824-00058857,    00059828-00059830,    00060440-00061294, 00060657-00060795,    00060899-00061099,    00061295-00061392,    00061409-00061410, 00061427-00061428,    00065377-00065381,    00068430-00069238,    00069546-00069768,

00069964-00070367,     00070079-00070187,     00073837-00075239,     00074395-00074482,

00074483-00074545,     00075638-00075789,     00080092-00080186,     00080374-00080484,

00080819-00080838,     00081792-00081793,     00081794-00081796,     00085191-00085193,

00085224-00085226,     00088188-00088189,     00088239-00088240,     00088247-00088248,

00088249-00088249,     00088254-00088254,     00090581-00090581,     00103449-00103453,

00103526-00103622,     00134726-00136644,     00136840-00137789,     00138081-00138082,

00138974-00138975,     00139467-00140152,     00141019-00141030,     00142270-00144112,

00144542-00144945,     00145114-00145798,     00155955-00156073,     00158797-00158896,

00159153,     00159390-00159391,     00159585-00159787,     00160830-00160841,     00160952-

00160955,     00160956-00160957,     00160958-00161258,     00161262-00161377,     00161595-

00161892,     00161893-00162120,     00162572-00162650,     00164612-00164615,     00164692-

00164744,     00169296-00169309,     00170792-00170892,     00171011-00171188,     00171189-

00171226,     00171227-00171640,     00171676-00171691,     00171699-00171713,     00177381-

00177567,     00188002-00188280,     00234988-00235014,     00246114-00246116,     00246999-

00247003,     00336868-00336896,     00347087-00347094,     00347144,     00347147-00347148,

00347174-00347176,     00347178-00347192,     00347204-00347205,     00347216-00347230,

00347273-00347278,     00347281-00347282,     00347285-00347309,     00347348-00347350,

00349735-00349735,     00349738-00349739,     00349755-00349764,     00349766-00349768,

00349770-00349784,     00349808-00349822,     00349864-00349866,     00349872-00349873,

00349876-00349888,     00349899-00349900,     00353588-00353589,     00353605-00353614,

00353620-00353634,     00353646-00353647,     00353658-00353670,     00353671-00353672,

00353715-00353720,     00353723-00353724,     00353727-00353739,     00353750-00353751,

00353790-00353792,     00357278-00357496,     00357676-00357810,     00357821-00357830,

00357997-00358107,     00359863-00359998,     00360008-00360017,     00360222-00360332,

00360582-00360716,     00360726-00360735,     00360813-00361018,     00361633-00361683,

00361684-00361786,     00361913-00362124,     00431544-00431548,     00572691-00572696,

00572697-00572708,     00572709-00572721,     00587385-00587386,     00587404-00587405,

PLTF'S SUPPL. RESPONSE TO FIRST
SET OF INTERROGATORIES (1-12)
CASE NO. 05-cv-12237WGY

00922413-00922414,    00995660-00995684,    00998212-00998213,    01006600-01006604, 01024074-01024076, 01024705-01024706, 00359464-00359669, and 00406150-00406869.

Further information regarding the conception and reduction to practice of a number of Dr. Lin's inventions (claiming priority from the same application as the Asserted Patents) is set forth in *Amgen Inc. v. Chugai Pharmaceutical Co., Ltd.* action (*See* 13 U.S.P.Q.2d 1737 (D. Mass. 1990); and 927 F.2d 1200 (Fed. Cir. 1991)), and *Fritsch v. Lin* (*See* 21 USPQ 2d 1731 (BPAI 1991); 21 USPQ 2d 1737 (BPAI 1991); and 21 USPQ 2d 1739 (BPAI 1991)) and the submissions by Amgen in these actions. The pleadings and Amgen's document production from each of these actions, including Dr. Lin's testimony and that of other relevant Amgen employees, have been provided to Roche in response to Roche's First Set of Requests for the Production of Documents and Things in the ITC proceeding.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen incorporates by reference its previous response and provides the following supplemental response to this interrogatory:

- In early September 1983, Dr. Fu-Kuen Lin designed fully degenerate oligonucleotide probes that proved to be successful in hybridizing to the genomic DNA encoding erythropoietin. Beginning on September 2, 1983, Dr. Lin requested synthesis of several sets of probes, each set comprising 128 different DNA sequences. By September 28, 1983, the "EpV," "EpQ," and "EPO-17" sets of probes, corresponding to amino acid regions 46-52, 86-91, and 18-23, respectively, were received by Dr. Lin's laboratory. *See for example,* AM-ITC 00347090; AM-ITC 00347174; AM-ITC 00347178; AM-ITC 00347179-87; *Amgen Inc. v. Chugai Pharm. Co.*, 13 U.S.P.Q.2d 1737, 1748 (D. Mass. 1989), *aff'd*, 927 F.2d 1200, 1203 (Fed. Cir. 1991).

12

- Dr. Lin screened a human fetal liver genomic library with the EpV and EpQ probes and isolated positive clones by October 10, 1983. *See for example,* AM-ITC 00347091; AM-ITC 00347189-90; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By October 19, 1983, the positive clones were submitted for determination of their sequence. By November 3, 1983, it was confirmed that the positive clones contained DNA sequences whose predicted amino acid sequences agreed with the human EPO amino acid sequence data available to Lin. *See for example,* AM-ITC 00347091; AM-ITC 00347191-98.

- By October 26, 1983, Lin had used the EpV probes to screen a cDNA library generated from monkey kidney mRNA. By late October 1983, Lin cloned the monkey cDNA EPO sequence. *See for example,* AM-ITC 00347201-03; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By December 1, 1983, Amgen expressed monkey EPO in monkey kidney cells ("COS" cells) using monkey cDNA. *See for example,* AM-ITC 00347091; AM-ITC 00347204-05.

- By December 3, 1983, at Dr. Lin's direction, Amgen hybridized the human EPO gene to monkey EPO cDNA to determine from an electron micrograph which area of the human DNA consisted of introns and what the sizes of the exons and introns were. The formation of a heteroduplex between the human EPO genomic clone and the monkey EPO cDNA clone was further confirmation that the human EPO genomic clone contained human EPO gene sequences. *See for example,* AM-ITC 00347091; AM-ITC 00347206-11; *Amgen,* 13 U.S.P.Q.2d at 1748.

- On or about December 12, 1983, Amgen issued a press release announcing its successful cloning of the EPO gene. *See* AM-ITC 00535880-81; *Amgen,* 13 U.S.P.Q.2d at 1748.

- On December 13, 1983, Dr. Lin filed his first patent application setting forth his work up to that date. *See for example,* AM-ITC 00470198-258; *Amgen,* 13 U.S.P.Q.2d at 1748.

- On January 2, 1984, Dr. Lin's successful cloning of the human EPO gene was reported in McGraw-Hill's *Biotechnology Newswatch. See Amgen Claims "First" In Cloning*

13

*Erythropoietin, Sees $100-Million Market*, BIOTECHNOLOGY NEWSWATCH, Jan. 2, 1984, at 2; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By January 10, 1984, at Dr. Lin's direction, Amgen had expressed human EPO in human embryonic kidney cells ("293" cells) and COS cells. *See for example,* AM-ITC 00347212-15; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By January 18, 1984, crude recombinant human EPO collected from EPO-expressing 293 cells was analyzed by radioimmunoassay ("RIA"). Positive RIA results were recorded on January 24 and 25, 1984. *See* AM-ITC 00347091-92; AM-ITC 00347216-32.

- By February 7, 1984, the complete DNA sequence for the coding region of the human EPO gene was obtained. *See for example,* AM-ITC 00347092; AM-ITC 00347234.

- By February 14, 1984, it was demonstrated that Dr. Lin's recombinant human EPO was biologically active *in vitro. See for example,* AM-ITC 00347092; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By February 17, 1984, Dr. Lin had directed the assembly of a synthetic human EPO gene ("EcEPO") engineered for expression in *E. coli. See for example,* AM-ITC 00347092; AM-ITC 00347250.

- On February 21, 1984, Dr. Lin filed a continuation-in-part, his second patent application, setting forth his work up to that date. *See for example,* AM-ITC 00470468-531; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By early March, 1984, Amgen demonstrated that Dr. Lin's recombinant human EPO was biologically active *in vivo. See for example,* AM-ITC 00347092; AM-ITC 00347251-52; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By March 15, 1984, Dr. Lin had obtained a full-length cDNA for the human EPO gene. *See for example,* AM-ITC 00347253-71; *Amgen,* 13 U.S.P.Q.2d at 1748.

- By April 5, 1984, Dr. Lin directed the assembly of a synthetic human EPO gene ("ScEPO") engineered for expression in yeast. *See for example,* AM-ITC 00347092; AM-ITC 00347272.

PLTF'S SUPPL. RESPONSE TO FIRST SET OF INTERROGATORIES (1-12) CASE NO. 05-cv-12237WGY

- By early May 1984, a CHO DHFR⁻ host cells  transfection, MTX amplification and limited dilution cloning were used to develop a human EPO-producing CHO cell line. *See for example,* AM-ITC 00922415-17; *Amgen,* 13 U.S.P.Q.2d at 1749.

- By May 16, 1984, the human EPO gene had been expressed in *E. coli* cells. *See for example,* AM-ITC 00347092.

- By May 24, 1984, CHO DHFR⁻ host cells were transfected with DNA ecoding EPO, subjectd to MTX amplification and human EPO had been expressed from CHO cells. *See for example,* AM-ITC 00922415-17; AM-ITC 00361783.

- By the end of May 1984, it was demonstrated that Dr. Lin's recombinant EPO could achieve a sustained increase in hematocrit. *See for example,* AM-ITC 00406556-87; AM-ITC 00336876-78; AM-ITC 00336893.

- By August 27, 1984, five different sub-lines of the human EPO-CHO cell had been produced. Two of the lines, B11 30/50/100 and B11 50, were selected for testing by radioimmunoassay. *See* AM-ITC 00158904-06; *Amgen,* 13 U.S.P.Q.2d at 1749.

- As of September 19, 1984, work on amplification of human EPO-CHO cells with MTX continued. *See for example,* AM-ITC 00155877-88; *Amgen,* 13 U.S.P.Q.2d at 1749.

- On September 28, 1984, Dr. Lin filed a continuation-in-part, his third patent application, setting forth his work up to that date. *See for example,* AM-ITC 00470717-813; *Amgen,* 13 U.S.P.Q.2d at 1749.

- By October 18, 1984, the level of EPO expressed by the human EPO-CHO B11 30/50/100 cell had been demonstrated to exceed 1000 U of erythropoietin per $10^6$ cells in 48 hours, as determined by RIA. *See for example,* AM-ITC 00135170-74.

On November 30, 1984, Dr. Lin filed a continuation-in-part, his fourth patent application, setting forth his work up to that date. *See for example,* AM-ITC 00447687; AM-ITC 00447565-671; *Amgen,* 13 U.S.P.Q.2d at 1749

ITC 00991045-080; AM-ITC 00991081-083; AM-ITC 01004923-929; AM-ITC 01006613-756;
AM-ITC 01006920-923; and AM-ITC 01007030-037.

Further information relevant to the failure of the work of Goldwasser is set forth in the
published decisions regarding Dr. Lin's U.S. patents. The pleadings and Amgen's document
production from each of these actions, including Dr. Lin's testimony and that of other relevant
Amgen employees, have been provided to Roche in response to Roche's First Set of Requests for
the Production of Documents and Things in the ITC proceeding.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12

Subject to and without waiver of these Specific Objections and General Objection set
forth above which are incorporated herein by reference, and with reservation of its right to
supplement or amend its response to this interrogatory after the claims have been construed and
necessary discovery has been received, Amgen incorporates by reference its previous response
and provides the following supplemental response to this interrogatory:

The Goldwasser experiment did not demonstrate that Dr. Goldwasser's preparation
constituted a "therapeutically effective amount of human erythropoietin" because, for example, it
did not establish that erythropoietin in Dr. Goldwasser's preparation as administered to the three
human subjects caused an increase in hematocrit levels, erythrocyte mass changes, reticulocyte
response, and/or ferrokinetic effects.

February 10, 2007

Of Counsel:

Stuart L. Watt
Wendy A. Whiteford
Monique L. Cordray
Kimberlin
Darrell Dotson
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
Telephone: (805) 447-5000

AMGEN INC.,

By its attorneys,

WILLIAM G. GAEDE III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 813-5000
Facsimile: (650) 813-5100

D. DENNIS ALLEGRETTI (BBO#545511)

MICHAEL R. GOTTFRIED (BBO#542156)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephones: (617) 289-9200
Facsimile:    (617) 289-9201

LLOYD R. DAY, JR. (pro hac vice)
DAVID M. MADRID (pro hac vice)
LINDA A. BAXLEY (pro hac vice)
DAY CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA 95014
Telephone: (408) 873-0110
Facsimile:   (408) 873-0220

MICHAEL F. BORUN (pro hac vice)
KEVIN M. FLOWERS (pro hac vice)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone: (312) 474-6300
Facsimile:  (312) 474-0448

PLTF'S SUPPL. RESPONSE TO FIRST
SET OF INTERROGATORIES (1-12)
CASE NO. 05-cv-12237WGY

MPK 122051-2.041925 0023