# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

AMGEN INC., )
)
     Plaintiff, )
)
v. )    Civil Action No.: 1:05-cv-12237 WGY
)
F. HOFFMANN-LA ROCHE LTD, a )
Swiss Company, ROCHE DIAGNOSTICS )
GMBH, a German Company, and )
HOFFMANN LA ROCHE INC., a New )
Jersey Corporation, )
)
     Defendants. )

## AMGEN INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD ON GROUNDS OF PRIVILEGE

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD...........................................................................................2

    A.    Attorney-Client Privilege, Waiver, and Scope of Waiver ..........................2
    B.    Work-Product Immunity, Waiver, and Scope of Waiver ...........................6

III.  ARGUMENT ........................................................................................................6

    A.    Amgen Did Not Disclose Attorney-Client Privilege and/or Work-Product
        Immunity Information for Inventorship........................................................7
        1.    Mr. Borun's Testimony Disclosed Non-Privileged Subject Matter,
              Facts and Public Contentions......................................................7
        2.    Written Materials Listed on Amgen's Privilege Log Should Not Be
              Produced ...................................................................................10
    B.    Amgen Did Not Disclose Attorney-Client and/or Work-Product Protected
        Information on the Issue of Patentability...................................................11
        1.    Amgen's Written Materials on Patentability Should Not Be
              Disclosed...................................................................................13
    C.    Amgen Did Not Disclose Attorney-Client Communications and/or Work-
        Product Concerning Prior Art ...................................................................13
        1.    Amgen's Written Materials on Prior Art Should Not Be Disclosed..........14
    D.    Amgen Did Not Disclose Its Privileged Communications Regarding
        Prosecution Strategy ................................................................................15
        1.    Amgen's Written Materials on Patent Prosecution Strategy Should
              Not Be Disclosed .....................................................................17
    E.    Amgen's Attorney-Client Communications and/or Work-Product
        Regarding Claim Construction Has Not Been Disclosed ...........................18
        1.    Amgen's Written Materials on Claim Construction Should Not Be
              Disclosed...................................................................................19
    F.    Defendants' Motion Wrongly Seeks Wholesale Waiver of Privilege on
        Inventorship, Patentability, Prior Art, Prosecution Strategy, and Claim
        Construction.............................................................................................19

IV.   CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Duplan Corp. v. Deering Milliken, Inc.*
540 F.2d 1215 (4th Cir. 1976) ........................................................................... 6

*Fort James Corp. v. Solo Cup Co.*
412 F.3d 1340 (Fed. Cir. 2005).......................................................... 4, 5, 12, 14

*Fritsch v. Lin*
21 U.S.P.Q.2d 1739 (Bd. Pat. App. & Interf. 1991) ........................................ 16

*General Elec. Co. v. Johnson*
No. 00-2855, 2006 U.S. Dist. LEXIS 64907 (D. D.C. Sep. 12, 2006) ................. 5

*In re Echostar Communications Corp.*
448 F.3d 1294 (Fed. Cir. 2006).......................................................................... 6

*In re Grand Jury Proceedings*
78 F.3d 251 (6th Cir. 1996) .......................................................................... 5, 12

*In re Keeper of the Records XYZ Corp.*
348 F.3d 16 (1st Cir. 2003)................................................................................ 4

*In re Martin Marietta Corp.*
856 F.2d 619 (4th Cir. 1988) ............................................................................. 6

*In re Pioneer Hi-Bred Int'l Inc.*
283 F.3d 1370 (Fed. Cir. 2001)......................................................................... 4

*In the Matter of Certain Recombinant Erythropoietin*
1989 ITC Lexis 57 (May 1989) ......................................................................... 8

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*
213 F.R.D. 89 (D. Mass. 2002)......................................................................... 6

*Kovacs v. Hershey Co.*
No. 04-CV-01881, 2006 U.S. Dist. LEXIS 77777 (D. Colo. Oct. 25, 2006) ......... 3

*Micron Separations, Inc., v. Pall Corp.*
159 F.R.D. 361 (D. Mass. 1995)........................................................................ 5

*MPT, Inc. v. Marathon Durable Labeling Sys.*
1:04-CV-2357, 2006 U.S. Dist LEXIS 4998 (N.D. OH, Feb. 9, 2006).................. 6

*Murata Mfg. Co., Ltd., v. Bel Fuse, Inc.*
No. 03-C-2934, 2007 U.S. Dist. LEXIS 17224 (N.D. Ill. Mar. 8, 2007)......... 3, 5, 7, 8, 13

*Saint-Gobain/Norton Indus. Ceramics Corp.  v. General Elec. Co.*
884 F. Supp. 31 (D. Mass. 1995) ...................................................................... 5

*Terra Novo, Inc. v. Golden Gate Prods., Inc.*
No. C-03-2684, 2004 U.S. Dist. LEXIS 20429 (N.D. Cal. Oct. 1, 2004) ............. 4

*Texaco Puerto Rico, Inc., v. Dep't of Consumer Affairs*
60 F.3d 867 (1st Cir. 1995)............................................................................... 4

## TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Ahmed*
  No. 05-10057, 2006 U.S. Dist. LEXIS 53943 (D. Mass. Aug. 3, 2006) ................................ 2

*United States v. Massachusetts Institute of Tech.*
  129 F.3d 681 (1st Cir. 1997) ........................................................................................ 6

*Upjohn v. United States*
  449 U.S. 383 (1981) ....................................................................................... 2, 4, 9, 13

*Weil v. Investment/Indicators, Research & Mgmt., Inc.*
  647 F.2d 18 (9th Cir. 1981) ............................................................................... 5

**RULES**

Fed. R. Civ. P. 26(b)(3) ........................................................................................ 6

Fed. R. Civ. P. 26(b)(5) ........................................................................................ 3

## I.    INTRODUCTION

Over the last twenty years, Amgen has defended the Lin patent estate against entities seeking to encroach on its exclusive rights.  Tellingly, not a single opponent in any of Amgen's prior litigations raised the issue of attorney-client and/or work-product waiver on the grounds Defendants articulate here, although all had experienced counsel who heard the very testimony Defendants now raise.  Equally telling, Defendants have had the testimony at issue since last June, yet only now, on the close of fact discovery, have raised the issue of alleged waiver of privilege with Amgen and the Court.

Defendants' motion does not represent a legitimate grievance about waivers or selective disclosures by Amgen, as the information disclosed is not privileged.  Defendants' motion wrongly elevates routine testimony by Mr. Borun and others of a non-privileged nature into a far-ranging attack on twenty years of Amgen privilege covering the subject matters of "inventorship, patentability, prior art, prosecution strategy, and claim construction."[1]  At its core, Defendants' motion is fundamentally flawed because it assumes Mr. Borun and others disclosed privileged communications in order to assert a broad waiver.  These witnesses were careful not to disclose privileged information, but rather, disclosed only: (1) a description of the factual subject matter involved in the communication without revealing the actual contents of the privileged communication itself; (2) non-privileged facts, such as what work an individual performed, that do not become privileged through their communication to an attorney; and/or (3) positions and/or contentions that Amgen publicly advanced.  This testimony simply does not support  Defendants' arguments that there has been a waiver.[2]

Defendants move from unsubstantiated proofs on waiver to arguments for scope of relief that are completely ungrounded.  For example, Defendants claim that there is a waiver on "patentability, including whether the claims in the patent applications cover novel and non-

---

[1] Defendants' Motion at 1; Defendants' Memo at 2 and 19.
[2] Each of the ninety-three snippets of testimony addressed in Appendix A to Defendants' motion is specifically addressed in Amgen's Rebuttal Chart, which is submitted herewith.  Gaede Decl., Exh. 1.

obvious subjects and distinguish over prior art."[3]  Nothing in the cited testimony even remotely opens this scope of inquiry.  Moreover, Defendants' request for relief on "patentability" is **unbounded as to time, scope and counsel**.  Defendants cite nothing that would support this wide-ranging and extraordinary relief.

While Amgen disagrees that there has been a waiver in any instance, even if  the Court were to find waiver in a specific instance of the attorney-client privilege, the scope of the waiver should be narrowly defined to the subject of the specific communication, and not elevated into a broad waiver on, *e.g.*, patentability or inventorship.  Similarly, if the Court found a waiver of work-product, Defendants would not be entitled to anything beyond what was stated in the specific testimony.

Amgen will suffer great harm if the Court were to grant Defendants' requested relief, and the overreaching nature of the motion embroiling the litigants and the Court on an examination of thousands of privileged documents and a new round of depositions is not remotely justified on the showing made here.  Amgen requests that the motion be denied.

## II.    LEGAL STANDARD

Defendants muddle the concepts of attorney-client privilege and work-product immunity. These two doctrines, though similar in concept, are different, do not extend as far as Defendants advocate, and do not result in a waiver even remotely as broad as Defendants contend.

### A.    ATTORNEY-CLIENT PRIVILEGE, WAIVER, AND SCOPE OF WAIVER

Attorney-client privileged communication is established when: (1) communications were received from a client during the client's search for legal advice from the attorney in his or her capacity as such; and (2) communications were made in confidence.[4]  The attorney-client privilege protection extends only to "communications," but does not extend to facts or circumstances surrounding the communication.[5]

---

[3] Defendants' Memo at 2.
[4] *See United States v. Ahmed*, No. 05-10057, 2006 U.S. Dist. LEXIS 53943, at *17 (D. Mass. Aug. 3, 2006).
[5] *Upjohn v. United States*, 449 U.S. 383, 395-96 (1981).

The attorney-client privilege protects the communication itself, not the fact that there has been a communication, or its subject matter.[6]  Thus:

> A general description of the work performed by the attorney is not protected by the privilege.  Acts or services performed by an attorney during the course of the representation are not within the privilege *because they are not communications*.  The *subject matter of meetings* with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are also not protected by the privilege.[7]

Courts do not recognize statements on subject matter as a waiver of attorney-client privilege.[8]  For example, in *Murata*, the accused infringers argued that the patentee waived attorney-client privilege based on the testimony of its Rule 30(b)(6) witness concerning steps that the patentee took to comply with the duty of candor to the PTO.[9]  This testimony included:

- That patentee's attorneys "informed him that, in order to comply with the duty of candor, they took the steps reflected in the written record of the prosecution."

- When asked what prior art to identify, deponent responded, "[patentee] instructed [the patent prosecutor] to submit in an IDS the '204 patent and all prior art references which were cited in the '204 patent."

- Deponent's belief that he did not believe patentee identified any other prior art.

- Deponent's testimony that based on conversation with one of the inventors, "he understood that the inventors knew about their duty of disclosure."

- Deponent was confident that the inventors believed that a prior art patent was not material based on discussions with inventors.

The *Murata* court disagreed, finding that these statements on subject matter did not constitute a waiver of the attorney-client privilege.  In part, the court reasoned that there was no waiver of privilege because, "if [accused infringer's] argument were accepted, it would mean that privilege logs, and compliance with Fed. R. Civ. P. 26(b)(5), would operate as a waiver of attorney-client privilege."[10]

---

[6] *Kovacs v. Hershey Co.*, No. 04-CV-01881, 2006 U.S. Dist. LEXIS 77777, at *4 (D. Colo. Oct. 25, 2006); *see also Murata Mfg. Co., Ltd., v. Bel Fuse, Inc.*, No. 03-C-2934, 2007 U.S. Dist. LEXIS 17224, at *10-11 (N.D. Ill. Mar. 8, 2007).

[7] *Kovacs*, 2006 U.S. Dist. LEXIS 77777, at *4-5 (emphasis added).

[8] *See Murata*, 2007 U.S. Dist. LEXIS 17224, at *10.

[9] *Id.* at *5-6, 9.

[10] *Id.* at *10.

The attorney-client privilege likewise does not protect or extend to facts, but merely to the actual conversations with attorneys, and thus there can be no waiver if a fact is revealed. As the Supreme Court settled long ago:

> [The] protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.[11]

Finally, stating a party's contentions made in a litigation or other proceeding does not waive the attorney-client privilege.[12]

Even if there is a waiver of a specific attorney-client privilege communication, the waiver extends only to all other communications relating to the ***same subject matter***.[13] Under the circumstances here, courts rarely define the "subject matter" waived broadly, as Defendants have requested this Court to do. For example, in *Fort James*, a case Defendants relied upon, the Federal Circuit defined the "subject matter" waived narrowly to patentability under §102(b) because the court did not broadly define the subject matter waived as "patentability."[14] The patentee in *Fort James* waived attorney-client communications by producing a report that stated, "legal counsel has advised a bar was not established during experimental trials at Darlington and

---

[11] *Upjohn*, 449 U.S. at 395-96.

[12] *See Terra Novo, Inc. v. Golden Gate Prods., Inc.*, No. C-03-2684, 2004 U.S. Dist. LEXIS 20429, at *5 (N.D. Cal. Oct. 1, 2004); *In re Pioneer Hi-Bred Int'l Inc.*, 283 F.3d 1370, 1376 (Fed. Cir. 2001) (disclosure of a party's legal position and/or contentions does not waive privilege because it was not "privileged or otherwise protected in the first place").

[13] *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (emphasis added); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001), *Texaco Puerto Rico, Inc., v. Dep't of Records Affairs*, 60 F.3d 867, 883-84 (1st Cir. 1995). Defendants ignore the need to define the "subject matter" waived and the scope waived by asking for the broadest waiver possible. *See* Defendants' Mot. at 1, Defendants' Memo at 1-2.

[14] There is no bright line rule for determining what constitutes the subject matter of waiver. Courts weigh the circumstances of disclosure, the nature of the legal advice sought, and the prejudice to parties of permitting or prohibiting further disclosures. *Fort James*, 412 F.3d at 1349-50 (citing *In re Keeper of the Records XYZ Corp.*, 348 F.3d 16, *23 (1st Cir. 2003)). The Federal Circuit's approach requires a review of the circumstances in determining the "subject matter" and thus does not favor a broad waiver as Defendants have requested. In the present case, this results in reviewing each alleged statement, determining whether it revealed an attorney-client communication and thus if there was a waiver, and if there was a waiver, to take account of the specific disclosure and the circumstances in defining the "subject matter."

Fort Smith."[15]

Similarly, other courts also define narrowly the subject matter waived.[16]  *In re Grand Jury Proceedings,* 78 F.3d 251 (6th Cir. 1996), the client waived specific elements of a marketing plan protected by attorney-client privilege.  Instead of defining the "subject matter" to be the entire marketing plan, the trial court determined that the "subject matter" waived was only the specific elements of the marketing plan disclosed because the communication "did not divulge the substance of the attorney's advice on the entire marketing plan."[17]  Courts narrowly define the subject matter waiver because a broad waiver that forces a party to unlimited disclosures destroys the purpose of privilege.[18]

There are instances when Courts define the "subject matter" waived broadly.  This is not one of them.  Courts have defined the "subject matter" waived broadly when a party raised the advice of counsel as a defense to willful infringement.  While principles of fairness may warrant a broad waiver in that circumstance to prevent a party from disclosing communications that support its position (sword) while simultaneously concealing (shield) communications that do not, that line of reasoning is inapplicable here.[19]  Amgen has steadfastly maintained its privilege over twenty years, and has not relied on advice of counsel as a defense.[20]  No such broad waiver is applicable in this circumstance.

---

[15] *Id.* at *1343.

[16] *See General Elec. Co. v. Johnson*, No. 00-2855, 2006 U.S. Dist. LEXIS 64907, at *64 (D. D.C. Sep. 12, 2006) ("subject matter of a specific disclosed document for waiver purposes consists of only the information that is contained within or has by its terms been brought within, the document's four corners.").  The Court in *General Elec.* reviewed each allegedly waived document, looked at the four corners of the document, and determined whether (1) there was a waiver and (2) if there was waiver, the "subject matter" waived.  There, the Court furnished a detailed table analyzing waiver.

[17] *In re Grand Jury Proceedings*, 78 F.3d at 255.

[18] *Id.* at 256 (citing *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

[19] *See Fort James*, 412 F.3d at 1349.  *See, e.g., Saint-Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.*, 884 F. Supp. 31, 33 (D. Mass. 1995) (advice of counsel on invalidity as a defense to willful infringement waived validity as to the "subject matter" and not infringement or enforceability); *Micron Separations, Inc., v. Pall Corp.*, 159 F.R.D. 361, 363-64 (D. Mass. 1995) (advice of counsel of non-infringement as a defense to willful infringement waived infringement as the "subject matter").

[20] *See Murata*, 2007 U.S. Dist. LEXIS 17224, at *17-20.

## B.    WORK-PRODUCT IMMUNITY, WAIVER, AND SCOPE OF WAIVER

The work-product doctrine protects documents or other tangible things, prepared in anticipation of litigation by or for a party or a party's representative.  Fed. R. Civ. P. 26(b)(3).  Under Rule 26(b)(3) opinion work-product is afforded greater protection than ordinary work-product.[21]

Work-product protection applies when prosecution work is performed in anticipation of litigation.[22]  Here, work-product protection attached to Amgen's prosecution-related work no later than by April 1986 when Amgen filed during the prosecution of the '298 Lin patent application a petition to make special "because of actual infringement."[23]  In that circumstance, work-product protection attaches with foreseeable litigation on the horizon.

Given that work-product protection attaches to the prosecution here, waiver of work-product protection does not extend beyond the work-product documents and/or mental impressions actually disclosed.[24]  Indeed, work-product immunity is distinct and broader than attorney-client privilege, and the protection afforded does not require disclosure beyond the actual mental state specifically disclosed.[25]  A subject matter waiver is inapplicable in the context of work-product immunity.[26]

## III.    ARGUMENT

Defendants argue that Amgen waived its attorney-client and/or work-product protection

---

[21] *See United States v. Massachusetts Institute of Tech.*, 129 F.3d 681, 688 (1st Cir. 1997); *In re Echostar Communications Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006).

[22] *See MPT, Inc. v. Marathon Durable Labeling Sys.*, 1:04-CV-2357, 2006 U.S. Dist LEXIS 4998, *10 (N.D. OH, Feb. 9, 2006).

[23] Gaede Decl., Ex. 5.

[24] Even in selective disclosure cases, courts have not extended subject matter waiver to opinion work-product.  *See, e.g.*, *In re Echostar*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) ("[W]ork-product waiver only extends to 'factual' or 'non-opinion' work-product concerning the same subject matter as the disclosed work-product."); *In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir. 1988) (holding that subject matter waiver does not apply to pure expression of legal theory or mental impressions).

[25] *See Massachusetts Institute of Tech.*, 129 F.3d at 687.

[26] *See Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 96 (D. Mass. 2002) (citing *Duplan Corp. v. Deering Milliken*, 540 F.2d 1215, 1222 (4th Cir. 1976) ("broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to Rule 26(b)(3)")).

concerning inventorship, patentability, prior art, prosecution strategy, and claim construction.[27] The testimony that Defendants cite from several prior legal proceedings stretching back to 1987 tells a different story – that the testimony cited does not disclose privileged communications. Instead, the testimony falls under the following non-privileged categories: (1) testimony that disclosed the subject matter (establishing privilege without disclosing the actual contents of the privileged communication); (2) non-privileged facts or acts; or (3) statements of Amgen's public positions/contentions.

### A.    AMGEN DID NOT DISCLOSE ATTORNEY-CLIENT PRIVILEGE AND/OR WORK-PRODUCT IMMUNITY INFORMATION FOR INVENTORSHIP

Defendants argue that Mr. Borun waived Amgen's privilege on inventorship by disclosing the substance of attorney client communications.  Close examination of the testimony, however, makes clear that Mr. Borun did not reveal the contents of any privileged information, but correctly limited his testimony to non-privileged information and positions that Amgen was publicly advocating.

### 1.    Mr. Borun's Testimony Disclosed Non-Privileged Subject Matter, Facts and Public Contentions

Defendants claim Mr. Borun's 1988 testimony concerning Dr. Por-Hsuing Lai waived the contents of actual privileged communications:

### * REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION *

This testimony does not disclose the contents of any specific attorney-client communication.[29] Instead, it discloses that Mr. Borun had discussions on the subject matter of inventorship, Mr. Borun's awareness of certain non-privileged facts, the lack of communication from Dr. Lai, and

---

[27] *See* Defendants' Mot. at 1; Defendants' Memo at 2.

[28] Defendants' Memo at 3; *see* Gaede Decl., Ex. 1 (Summary No. 1 Rebuttal).

[29] The testimony that Defendants have cited to is very similar to the information that *Murata* determined was non-privileged information.  *See Murata*, 2007 U.S. Dist. LEXIS 17224, at *10.  *Murata* concluded were the court to accept the waiver argument, privilege logs would waive attorney-client privilege and/or work-product immunity.

Mr. Borun's conclusions, as advocated by Amgen, that Dr. Lai did not make an inventive contribution to Dr. Lin's inventions, as Amgen was advocating in its proceeding before the International Trade Commission in response to allegations from the responding party.[30]  No attorney-client communication or work-product mental impressions were stated in this deposition testimony given in that proceeding.

Likewise, Defendants' allegation that Mr. Borun's 1988 testimony in the same proceeding concerning Dr. Goldwasser waived privilege is without merit.[31]  Mr. Borun simply disclosed that: (1) he had a conversation with Dr. Goldwasser, but did not disclose the substance of the communication; and (2) stated a position that Amgen publicly took that Dr. Lin was the inventor of the invention disclosed in the patent.  Again, no privileged communications or work-product mental impressions were revealed.

Defendants take to task Mr. Borun's 1988 testimony in the ITC for generally outlining who he spoke with in investigating inventorship, and reaching the conclusion that he was satisfied on Inventorship.  But that testimony did not reveal the contents of any communication or any specific mental impressions other than the obvious Amgen contention in that proceeding that Dr. Lin is the sole inventor.[32]  Such generalized statements are insufficient to waive privilege or work-product immunity.[33]

Similarly, Defendants claim waiver through Mr. Borun's testimony,

**\* REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION \***

[4]  However, Mr. Borun's testimony merely established privilege without revealing the substance of the privileged

---

[30] *See In the Matter of Certain Recombinant Erythropoietin*, 1989 ITC Lexis 57, 218-219 (May 1989).

[31] *See* Defendants' Memo at 4 (citing App. B, Ex. 1 at 411-12); Gaede Decl., Ex 1 (Summary No. 2 Rebuttal).

[32] Defendants' Memo at 4-5.

[33] *Murata*, 2007 U.S. Dist. Lexis 17224, at *17-21.

[34] Defendants' Memo at 6, n.5; *see also* Gaede Decl., Ex. 1 (Summary No. 13 Rebuttal).

communication when he identified:

- who he communicated with (Dr. Egrie);

- the nature of such communications (Dr. Lin's contribution, and biological activity); and

- the date of the communication (unspecified).[35,36]

Defendants cite to numerous other excerpts of prior testimony claiming that Mr. Borun allegedly waived privilege. Under *Upjohn*, he could not have because he simply disclosed non-privileged facts to which the attorney-client privilege does not attach. For example:

*\* REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION \**

> Mr. Borun did not disclose the substance of the communications that he had with Mr. Weist and others in Amgen in reaching this conclusion.

*\* REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION \**

Defendants claim that Mr. Borun waived his mental impressions and specific communications when he discussed positions on Dr. Browne and Dr. Smalling. That is not true.[39] Mr. Borun simply summarized the facts and Amgen's position taken in the interference (that Dr. Browne was not a co-inventor):

*\* REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION \**

---

[35] *See* Defendants' Appendix B, Ex. 1 at 46-47.

[36] Even if the Court were to find waiver, Defendants have not justified defining the subject matter broadly. Instead, the Court should narrowly define the "subject matter" as to the specifics disclosed by Mr. Borun or others. For example, here the "subject matter" should be defined as communications with Dr. Egrie relating to biological activity.

[37] Defendants' Memo at 5 (citing App. B, Ex. 1 at 80); Gaede Decl. Ex. 1 (Summary No. 10 Rebuttal).

[38] Defendants' Memo at 5 (citing App. B., Ex. 1 at 81); Gaede Decl., Ex. 1 (Summary No. 11 Rebuttal).

[39] Defendants' Memo at 5-6 (citing App. B, Ex. 7 at 201-202); Gaede Decl, Ex. 1 (Summary No. 9 Rebuttal).

*REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION*

No privilege attaches to a summary of the positions that were asserted during the referenced interference proceeding, and therefore no privilege can be waived.

Defendants also claim that Mr. Borun allegedly disclosed (1) his mental impressions concerning and (2) communications with Dr. Jeffrey Browne and Dr. Smalling. Defendants' reading of the record is strained. Mr. Borun's answers simply provided non-privileged facts about the prosecution of the '008 patent and include:

*REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION*

In sum, Mr. Borun made no selective disclosure of privileged material on inventorship, but instead, disclosed non-privileged information of subject matter, facts and/or contentions.

### 2. Written Materials Listed on Amgen's Privilege Log Should Not Be Produced

Based on these several statements of subject matter or facts, Defendants appear to argue that all documents that involve Mr. Borun and Dr. Lai, Dr. Lin, Dr. Goldwasser, Dr. Egrie, Dr. Browne, and Dr. Smalling should be produced, implicating hundreds of documents on Amgen's privilege log. Defendants' Memorandum identifies some examples of documents. However, assuming that any of the foregoing constitutes a waiver, which it does not, Defendants fail to tie any of the specific examples of privileged documents to the specific subject matters at issue in

---

[40] *Id.*

[41] Defendants' Memo at 6 (citing App. B, Ex. 1 at 47-48); *see* Gaede Decl, Ex. 1 (Summary No. 10 Rebuttal.)

[42] *Id. (*citing App. B, Ex. 1 at 48).

[43] *Id.* (citing App. B, Ex. 1 at 50-51).

the testimony—a necessary step.

Defendants contend, for example, that document 99 04760 is relevant to patentability of Dr. Lin's patents. However, the privilege log shows a different subject, namely correspondence from patent counsel regarding "prosecution of Egrie patent application."[44] On its face, the subject matter is unrelated, but Defendants would have this Court compel the production of this privileged document.

Assuming that the Court were to find any of the foregoing constituted a waiver, a direct connection between that specific subject matter and the document must exist before it is ordered produced and/or deposition testimony is ordered. At a minimum, if the Court finds that there has been an instance of waiver, the Court should examine *in camera* each document and assess whether it is tied to the specific subject matter in the testimony so as not to broadly and unfairly apply any perceived waiver beyond its legitimate and specific subject matter.

### B.    AMGEN DID NOT DISCLOSE ATTORNEY-CLIENT AND/OR WORK-PRODUCT PROTECTED INFORMATION ON THE ISSUE OF PATENTABILITY

Defendants first point to Mr. Borun's testimony on Dr. Lin's work and the state of the art. Once again, all Mr. Borun did was disclose non-privileged facts, subject matter or public contentions:[45]

- ▪ Mr. Borun testified on his knowledge of a scientific fact, when he testified that, "Well to my knowledge, no one had previously expressed an *in vivo* biologically active human glycoprotein, wherein, like [sic] oscillation was necessary for in vivo activity in a host cell."[46] His knowledge of a fact is not privileged.

- ▪ Mr. Borun's general testimony on two kinds of Lin experiments bore on the difference in carbohydrate between recombinant product and prior art products. Mr. Borun did not disclose the substance of advice sought, advice given, or any other aspect of a privileged communication.[47]

- ▪ Mr. Borun testified on Amgen's position when he stated, "I believe that what was done constituted a patentable contribution on the part of Dr. Lin." That statement

---

[44] App. C., p. 2

[45] *See* Amgen's Rebuttal Chart to Roche's Summary Nos. 4-8, 10-13, 15-17, 20, 22, 25-28, 30-35, 39, 45-50, 55, 57-71, 78, 81, 84-89. Gaede Decl., Ex. 1.

[46] Defendants' Memo at 8 (citing App. B, Ex. 1 at 118-20, 141-144); *see* Gaede Decl., Ex. 1 (Summary No. 21 Rebuttal).

[47] Defendants' Memo at 8 (citing App. B, Ex. 3 at 70); *see* Gaede Decl., Ex. 1 (Summary No. 22 Rebuttal).

simply reiterated without detailed analysis Amgen's position in a public proceeding.[48] Stating a party's contention does not waive attorney-client privilege.[49]  Again, these are non-privileged facts that do not reveal the actual contents of the communication itself.

▪ Mr. Borun's testimony on the facts that Dr. Lin's program successfully isolated a human DNA sequence encoding erythropoietin, involved two distinct pools of probes; each pool comprising a mixture of 128 members.[50, 51]  Again, these are non-privileged facts that do not reveal the actual contents of the communication itself.

Defendants claim that both Mr. Borun and Dr. Egrie waived Amgen's privilege concerning patentability.[52]  But, both their testimonies conveyed non-privileged information similar to what would be found on a privilege log.  For example, Mr. Borun's statement,

**\* REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION \***

identified information that was incorporated into the patent filing – factual information that is not privileged because it was disclosed in the patent application.  Further, all Mr. Borun identified was the non-privileged information of:

▪ who he was communicating with (Dr. Egrie);

▪ the nature of the communications (radioimmunoassay re patent); and

▪ the date (unspecified).[53]

Similarly, Defendants' insistence is without merit that Dr. Egrie waived Amgen's privilege when she testified,                       **\* REDACTED \***

---

[48] *Id.* (citing App. B, Ex. 1 at 435); *see* Gaede Decl, Ex. 1 (Summary No. 31 Rebuttal).

[49] *See Terra Novo, Inc.*, No. C-03-2684, 2004 U.S. Dist. LEXIS 20429, at *5 (N.D. Cal. Oct. 1, 2004).

[50] Defendants' Memo at 9 (citing App. B, Ex. 1 at 403); *see* Gaede Decl, Ex. 1 (Summary No. 6 Rebuttal).

[51] Although Amgen does not believe that there were waivers, were the Court to find that a waiver did occur, the Court should define the "subject matter" waived narrowly as to the specific contents disclosed in Mr. Borun's statement, rather than the unjustifiably broad subject matter waiver Defendants ask for without providing any support.  For example, Defendants alleged that Mr. Borun disclosed privileged information when he discussed the difference between the molecular weight of the recombinant erythropoietin and urinary erythropoietin.  This is not testimony on all privilege communications concerning "patentability."  Instead, the Court should define the "subject matter" waived narrowly to address the precise contents, and no more, as was the case in *Fort James* and *In re Grand Jury Proceedings*.

[52] Defendants' Memo at 9.

[53] Defendants' Memo at 9 (citing App. B, Ex. 3 at 24-25); *see* Gaede Decl., Ex. 1 (Summary No. 19 Rebuttal).

*REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION*

[4] Her testimony did not: (1) disclose the substance of what Mr. Borun told her; (2) what comments she made that resulted in Mr. Borun making the "sounds interesting comment"; or (3) what she wrote in her "write up." In sum, the testimony related to a description of subject matter or facts, neither of which revealed the specific contents of the privileged communications. These snippets certainly do not warrant a finding that Amgen has waived privilege on patentability, as Defendants request this Court to hold.[55]

### 1. Amgen's Written Materials on Patentability Should Not Be Disclosed

Even assuming there is a limited waiver in a specific instance, Defendants again fail to address the scope of the specific waiver and its applicability to Amgen's privilege log. Defendants' Memorandum at page 10 only points to two documents, but fails to tie their subject matter to the specific subject matter involved in the testimony addressed. They further make no attempt to examine whether other documents on Amgen's privilege log are within the scope of the testimony, but rather invite the Court to issue a non-specific order directing Amgen to produce all documents relating to "patentability." At a minimum, the documents must be reviewed *in camera* so that the Court may assess whether their subject matter is within the scope of the specifically cited testimony.

### C. AMGEN DID NOT DISCLOSE ATTORNEY-CLIENT COMMUNICATIONS AND/OR WORK-PRODUCT CONCERNING PRIOR ART

Contrary to Defendants' assertion, Mr. Borun's 1999 testimony did not disclose Amgen's privileged communications or immune work-product related to prior art. Again, his testimony only established (1) the underlying basis for privileged communications (like the information on a privilege log) by referring to subject matter as in *Murata*, (2) provided facts as in *Upjohn*, or (3) stated Amgen's public positions/contentions as in *Terra-Novo* that are not protected.

---

[54] Defendants' Memo at 9 (citing App. B, Ex. 6 at 321); *see* Gaede Decl, Ex. 1 (Summary No. 14 Rebuttal).

[55] Defendants have not pointed to any specific instance of work-product waiver.

For example, Defendants cite Mr. Borun's testimony:

***REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION ***

He (1) identified who he talked with (Dr. Lin), and (2) described the nature of the communications (concerning carbohydrate).[57]  Mr. Borun revealed enough to establish that the communications he had with Dr. Lin were privileged without disclosing the contents of the privileged communications themselves.

Defendants cite Mr. Borun's testimony about the Miyake reference, but that testimony did not disclose privileged information.[58]  Defendants' motion fails to quote any specifics from his testimony.  These passages quoted show that Mr. Borun was on the witness stand listening to *opposing counsel's conjectures*:

- "My suggestion to you is that you believed that the modifications made to the Miyake process, and which are referred to here, made absolutely no difference to that process in terms of what it would produce."[59]

- "You thought that it was appropriate to rely upon a process which had these modifications in it as good and, indeed, best evidence of what EPO made according to Miyake would be, such that you could compare it with your recombinant EPO and seek to show novelty."[60]

Defendants cite to no authority that permits opposing counsel's commentary to serve as a waiver of Amgen's privilege when Mr. Borun did not reveal the substance of any privileged communication.[61]

### 1.    Amgen's Written Materials on Prior Art Should Not Be Disclosed

Amgen's written materials on prior art should not be disclosed.  Defendants cite to four

---

[56] Defendants' Memo at 10 (citing App. B, Ex. 3 at 69); *see* Gaede Decl, Ex. 1 (Summary No. 84 Rebuttal).

[57] Defendants' Memo at 10 (citing App. B, Ex. 3 at 69); *see* Gaede Decl, Ex. 1 (Summary No. 67 Rebuttal).

[58] Defendants' Memo. at 11.

[59] Defendants' App. B, Ex. 4 at 425, ll. 3-7.

[60] Defendants' App. B, Ex. 3 at 425, ll. 18-25.

[61] Were the Court to find a waiver, the Court should narrowly define the "subject matter" as was the case in *Fort James*.

documents, but have failed to tie the subject matter of these documents to the specific subject matter involved in the testimony addressed. Further, Defendants make no attempt to examine whether other documents on Amgen's privilege log are within the scope of the testimony and invite error by inappropriately seeking a broad and non-specific order. At a minimum, the documents must be reviewed *in camera* so that the Court may assess whether their subject matter is within the scope of the specific testimony's subject matter.

### D. AMGEN DID NOT DISCLOSE ITS PRIVILEGED COMMUNICATIONS REGARDING PROSECUTION STRATEGY

Mr. Borun's testimony did not disclose Amgen's privileged information regarding prosecution strategy. Mr. Borun either provided information sufficient to establish the existence of a privileged communication (without revealing the substance of the privileged communication) or disclosed facts.[62]

For example, Defendants point to Mr. Borun's 1988 statement during his ITC deposition:

*\* REDACTED - CONTAINS AMGEN CONFIDENTIAL INFORMATION \**


*\* REDACTED \**                    "[63]   Mr. Borun provided non-privileged information like that of a privilege log, identifying: (1) who he communicated with (Dr. Lin); (2) the nature of the communication (example 10 of the patent specification); and (3) non-privileged facts and acts.[64]

Defendants further claim that Mr. Borun's 2000 trial testimony to this Court about his working relationship with Dr. Lin disclosed privileged on patent prosecution strategy, which examining the testimony itself shows is not the case:

> I can speak for myself in relating directly that each and every draft, and there were four iterations of this patent application, was the subject of very thorough

---

[62] *See* Gaede Decl, Ex. 1 (Amgen's rebuttal chart to Defendants' Summary Nos. 2-3, 9, 18-19, 27, 32-33, and 35-71).

[63] Defendants' Memo at 12 (citing App. B, Ex. 1 at 57); *see* Gaede Decl, Ex. 1 (Summary No. 37 Rebuttal).

[64] Were the court to find waiver as to Mr. Borun's discussion of example 10, the "subject matter" waived should be the specific discussion with Dr. Lin of example 10 and not prosecution strategy, as Defendants claim.

> joint analysis involving Dr. Lin and me. In each instance, any new material added, any changes that were made in original material, were gone over very carefully personally with Dr. Lin. I got the impression that Dr. Lin appreciated that as sole inventor and then as the leader of the research and development project at Amgen, having to do with erythropoietin, he bore a significant responsibility for the accuracy of materials in the patent application.[65]

Mr. Borun revealed that there were four iterations of the patent application, and that he reviewed the patent application with Dr. Lin in analyzing the changes. But he did not reveal the privileged information of the actual contents of the drafts, nor did he reveal what was changed from one draft to another – let alone what he and Dr. Lin communicated about the drafts. Likewise, Mr. Borun's impressions of Dr. Lin's responsibilities were a disclosure of Dr. Lin's work responsibilities. A general description of his involvement in the patent prosecution process are non-privileged facts.[66]

According to Defendants, Mr. Borun's 2000 trial testimony about carbohydrate data divulged Amgen's "strategic considerations regarding the analysis and presentation of data."[67] No so. This testimony merely stated public facts and contentions. Amgen acknowledged to the Board of Patent Appeals that the data was incorrect, which the Board's decision acknowledged.[68] Further, Amgen disclosed the incorrect hexose value contained in Amgen's patents to the PTO and/or the Board in *Fritsch v. Lin*, 21 U.S.P.Q.2d 1739, 1741 (Bd. Pat. App. & Interf. 1991) (disclosing the hexose values).[69] In sum, this general factual matter is public and not privileged.

Moreover, Mr. Borun just reiterated Amgen's public positions/contentions in denying opposing counsel's suggestions that he knew at the time of his PTO submission that the data was

---

[65] Defendants' Memo at 12 (citing App. B, Ex. 4 at 239); see Gaede Decl., Ex. 1 (Summary No. 39 Rebuttal).

[66] Even were the Court to rule that there was a work-product waiver, Defendants are not entitled to anything beyond Mr. Borun's disclosure.

[67] Defendants' Memo at 12; *see* Gaede Decl., Ex. 1 (Summary No. 50. Rebuttal).

[68] Gaede Decl., Ex. 2 at AM-ITC 00832580 (*Amgen v. Hoechst Marion Roussel*, No. 97-10814-WGY, Amgen's Memorandum in Support of Amgen's Motion for Summary Judgment of No Inequitable Conduct); Gaede Decl., Ex. 3 at AM-ITC 00835593, AM-ITC 00835600-01, AM-ITC 00835616 (listing where else the values were publicly disclosed) (*Amgen v. Hoechst Marion Roussel*, No. 97-10814-WGY, Amgen's Reply in Support of Amgen's Motion for Summary Judgment of No Inequitable Conduct).

[69] *See* Gaede Decl., Exs. 2-3 at AM-ITC 00832580; AM-ITC 00835593, AM-ITC 00835600-01, AM-ITC 00835616 (listing where else the values were publicly disclosed)

---

wrong, as shown in the following transcript excerpts:

- Q. I suggest to you that when you relied upon that statement and you had access to all your scientists present, you knew that the statement in the patent was not right with regard to COS?

  A. **I reject that suggestion.**[70]

- Q. I suggest to you that you failed to disclose to the board that what you knew about Lot 82 having the same apparent molecular weight as CHO recombinant EPO?

  A. **I reject that.  That is contrary to facts** in the papers that were being relied upon by our opponents.[71]

Nor did Amgen's in-house counsel Stuart Watt disclose any "legal strategy" by disclosing two of Dr. Goldwasser's articles.[72]  Mr. Watt testified that he disclosed the Goldwater articles "because they both contained a suggestion that EPO in solution requires a stabilizer in order to prevent the loss of activity.  So that was the point in disclosing them."[73]  Mr. Watt's reason for disclosing the Goldwasser article did not waive attorney-client communications.   There has not been a disclosure of Amgen's privileged information on prosecution strategy.

### 1.    Amgen's Written Materials on Patent Prosecution Strategy Should Not Be Disclosed

Amgen's written materials on prosecution strategy should not be disclosed.  Defendants point to three documents as falling under the waiver.[74]  However, they have failed to tie the subject matter of these documents to the specific subject matter involved in the testimony addressed.  Defendants also make no attempt to examine whether other documents on Amgen's privilege log are within the scope of the testimony, and thus invite error through their request for broad and non-specific relief.  At a minimum, the documents must be reviewed *in camera* so that the Court may assess whether their subject matter is within the scope of the cited testimony's specific subject matter.

---

[70] Gaede Decl., Ex. 4 (Kirin-Amgen Tr. 453).

[71] Gaede Decl.,  Ex. 4 (Kirin-Amgen Tr. 454).

[72] Defendants' Memo at 13, App. B, Ex. 5 at 2953-54; *see* Gaede Decl., Ex. 1 (Summary No. 59 Rebuttal).

[73] Defendants' Memo at 13 (citing App. B, Ex. 5 at 2953-54).

[74] Defendants' Memo at 13.

E.    **AMGEN'S ATTORNEY-CLIENT COMMUNICATIONS AND/OR WORK-PRODUCT REGARDING CLAIM CONSTRUCTION HAS NOT BEEN DISCLOSED**

Defendants claim that Mr. Borun's testimony allegedly disclosed privileged information regarding claim construction and claim scope.  But not a single excerpt cited by Defendants reveal either confidential communications between Mr. Borun and Amgen, or Mr. Borun's mental impressions, conclusions, opinions, or legal theories prepared in anticipation of litigation other than what was disclosed in the litigations themselves and to which immunity does not attach.[75]

First, Defendants claim that Mr. Borun disclosed privileged information on claim construction because of his testimony about "host cell."[76]  Mr. Borun explained his understanding of what a host cell is, that "host cell" related to a capacity of the host cell, and that the language would be consistent with functional language in patent practice.  That testimony did not disclose privileged communications, and only revealed positions in the litigation.

Second, Defendants argue waiver from Mr. Borun's 2000 trial testimony before this Court on the length of the EPO polypeptide chain, *viz.*, "This claim, set forth in this way would cover, in my mind, 166, 165, whatever the process format is in the particular COS cell."[77]  The testimony does not disclose attorney-client communications or attorney work-product.

Defendants have not articulated a single cogent reason why any, much less all, of the testimony referenced above would be considered confidential communications between Mr. Borun and Amgen.  Moreover, Mr. Borun did not reveal his own mental impressions. Defendants' assertion that Mr. Borun revealed Amgen's contentions regarding the meaning of claim terms, and thereby waived all privilege related to claim construction and scope of the invention, is without merit.[78,79]

---

[75] Defendants' Memo at 14-15; *see* Gaede Decl., Ex. 1 (Summary Nos. 73-83 Rebuttal).

[76] Defendants' Memo at 14; *see* Gaede Decl., Ex. 1 (Summary Nos. 75 Rebuttal).

[77] Defendants' App. B, Ex. 2 (*Amgen v. Hoechst* Tr. Trans. Vol. 21, 2883-85).

[78] To the extent a waiver exists, it is limited to the testimony already given as that testimony reflects Mr. Borun's mental impressions, and this waiver of opinion work-product does not extend beyond the disclosure itself.

[79] Defendants' Memo at 14; *see* Gaede Decl., Ex. 1 (Summary Nos. 73-83 Rebuttal).

### 1. Amgen's Written Materials on Claim Construction Should Not Be Disclosed

Amgen's privileged written materials on claim construction should not be disclosed, nor any further deposition testimony compelled.  Defendants cite to two documents, but have failed to tie the subject matter of these documents to the specific subject matter involved in the testimony addressed. The privilege log description of these two documents, 99 0969942 and 99 068239, provides no indication that they are tied to claim construction.  Rather, these documents are described as privileged communications concerning Defendants, and thus *relate directly to this case*.  Defendants citation to these two documents show that Defendants are attempting to pierce privilege even in this proceeding to obtain access to Amgen's litigation communications with current trial counsel.

This scant testimony and reference to two documents does not warrant a finding of waiver on "claim construction," so as to warrant disclosure of privileged documents and deposition testimony.  Further, Defendants make no attempt to examine whether other documents on Amgen's privilege log are within the scope of the testimony.[80]

### F. DEFENDANTS' MOTION WRONGLY SEEKS WHOLESALE WAIVER OF PRIVILEGE ON INVENTORSHIP, PATENTABILITY, PRIOR ART, PROSECUTION STRATEGY, AND CLAIM CONSTRUCTION

Defendants ask the Court to order Amgen to produce all privileged documents relating to inventorship, patentability, prior art, prosecution strategy, and claim construction, and to re-open depositions and/or grant Defendants the right to new depositions.  Defendants' request for relief is so broad that Amgen would be required to produce all documents concerning these areas, including, apparently, communications with its trial counsel in this case.  Such broad subject matter waiver is entirely unwarranted on these limited facts, particularly where Defendants waited so late in the litigation to bring this motion.  Defendants have been in possession of this prior testimony since last June, when Amgen produced it.  Defendants made no claim of waiver

---

[80] Underscoring again the lack of merit to Defendants' contentions, Defendants' three rounds of briefing on claim construction failed to mention the alleged issue of selective disclosure by Amgen of its privileged claim construction communications or that Defendants have been prejudiced.  *See* Docket Nos. 311, 322, and 343.

until the eve of fact discovery closing on April 2, 2007. The delay, combined with the broad scope of the relief sought, highlight the lack of legitimacy to the motion. Defendants have not been aggrieved in any form or fashion. But opening this proceeding up to a wholesale examination of privilege based on this record will severely prejudice Amgen and detract from resolution of the merits that this motion does not advance.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to compel in its entirety.

April 10, 2007

Of Counsel:

Stuart L. Watt
Wendy A. Whiteford
Monique L. Cordray
Darrell G. Dotson
Kimberlin L. Morley
Erica S. Olson
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-5000

Respectfully Submitted,

AMGEN INC.,


/s/ Michael R. Gottfried
D. Dennis Allegretti (BBO# 545511)
Michael R. Gottfried (BBO# 542156)
Patricia R. Rich (BBO# 640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210
Telephone:  (857) 488-4200
Facsimile:   (857) 488-4201

Lloyd R. Day, Jr. (*pro hac vice*)
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014
Telephone:  (408) 873-0110
Facsimile:  (408) 873-0220

William G. Gaede III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA  94304
Telephone:  (650) 813-5000
Facsimile:  (650) 813-5100

Kevin M. Flowers (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, IL  60606
Telephone:  (312) 474-6300
Facsimile:  (312) 474-0448

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the Electronic Case Filing (ECF) system

will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered

participants on the above date.

*/s/ Michael R. Gottfried*
Michael R. Gottfried

MPK 124878-3.041925.0023