# Exhibit 4

Dockets.Justia.com

**3**

| | |
|---|---|
| IN THE HIGH COURT OF JUSTICE | HC 1999 Nos. 02916/02917 |
| CHANCERY DIVISION | HC 1999 No. 03241 |
| PATENTS COURT | |

Royal Courts of Justice
Wednesday, 6th February 2002

Before:

MR. JUSTICE NEUBERGER

- - - - - -

HOECHST MARION ROUSSEL
                              Claimants/Petitioners

v.

KIRIN-AMGEN INC. & OTHERS
                              Defendants/Patentees

- - - - - -

(Computer-aided transcript of the Stenograph Notes of
Marten Walsh Cherer Limited, Midway House
27/29 Cursitor Street, London EC4A 1LT
Telephone Number 0207 405 5010. Fax Number 0207 405 5026)

- - - - - -

MR. ANTONY WATSON QC and MR. ANDREW WAUGH QC and
MR. TOM HINCHLIFFE (instructed by Messrs.
Taylor Joynson Garrett) appeared on behalf of Kirin-Amgen.

MR. DAVID KITCHIN QC and MR. RICHARD MEADE and MISS LINDSAY LANE
(instructed by Messrs. Bird & Bird) appeared on behalf of the
TKT parties.

- - - - - -
PROCEEDINGS
DAY 3
- - - - - -

**Page 453**

```
 1              BORUN - KITCHIN
 2    I am not apportioning blame to anybody.
 3    MR. KITCHIN: I have nearly come to an end, my Lord.
 4    A. In A2, tab 2, page 159, around line 45 we are talking about
 5       the yeast expression product that says "Preliminary analysis
 6       .... (Reads to the words) .... and relatively high mannose
 7       content of the associated carbohydrate."
 8    Q. So that would provide a basis for getting some sort of claim
 9       to yeast?
10    A. That would provide a basis for getting a claim to recombinant
11       products that are glycosylated and that differ in terms of
12       their glycosylation from urinary products, which are the
13       prior art products.
14    Q. At any rate, whether that is right or wrong was not explored
15       with the board, but what you did have basis for was the SDS
16       comparison on page 146. That you chose to rely upon, did you
17       not?
18    A. Yes, we did. It was in Prof. Cummings's chart. It was in
19       our briefs, and we relied on it.
20    Q. I suggest to you that when you relied upon that statement and
21       you had access to all your scientists present, you knew that
22       the statement in the patent was not right with regard to COS?
23    A. I reject that suggestion.
24    Q. You had filed the two declarations from Dr. Egrie in 1991 and
25       the brief yourself in 1991 indicating that COS and urinary
```

**Page 454**

```
 1              BORUN - KITCHIN
 2       migrated to the same extent on SDS?
 3    A. I agree with that.
 4    Q. We have not been able to identify any evidence from any Amgen
 5       scientist supporting a statement that COS has a higher
 6       apparent molecular weight than urinary EPO.
 7    A. In the experiment that was performed that was my
 8       understanding. I think it has been confirmed by others who
 9       have looked at the same gel. I think it is confirmed in the
10       wording, albeit possibly ambiguous wording, of slightly or
11       approximately equal ---
12    MR. JUSTICE NEUBERGER: We are going over the same ground. I
13       appreciate it is at a different stage in the process, but
14       they are really the same point.
15    MR. KITCHIN: They are. You also knew by this time that urinary
16       EPO was highly variable.
17    A. I do not understand that.
18    Q. I suggest to you that you failed to disclose to the board
19       what you knew about Lot 82 having the same apparent molecular
20       weight as CHO recombinant EPO?
21    A. I reject that. That is contrary to facts in the papers that
22       were being relied upon by our opponents.
23    Q. How do you know that the Roche parties at the European Patent
24       Office had an opportunity to consider the Egrie input file?
25    A. Because Roche parties were represented there and given
```

**Page 455**

```
 1              BORUN - KITCHIN
 2       scientific counselling by at least Dr. Fritsch.
 3    Q. Do you know if he had the Egrie input file with him?
 4    A. I know he was aware of it.
 5    Q. But you have no idea ----
 6    MR. JUSTICE NEUBERGER: Wait a minute.
 7    A. I do not know if he had it with him and I do not know if GI's
 8       patent counsel, who was also there -- I am afraid his name
 9       escapes me -- was familiar with the interference.
10    MR. JUSTICE NEUBERGER: You believed that Dr. Fritsch had seen
11       it.
12    A. I do believe that.
13    Q. You did not know whether he had it with him or not but you
14       believed at some point he had seen it. Why did you believe
15       that and what was that based on?
16    A. Because it appeared to me that the entire Boehringer Mannheim
17       series of arguments was being formulated by Genetics
18       Institute and not by the counsel that was nominally
19       representing them. The arguments were very familiar, almost
20       identical to those raised in the interference on the issue of
21       whether or not urinary EPO and recombinant EPO were
22       different.
23    MR. KITCHIN: Do you have any knowledge as to whether or not
24       Dr. Fritsch was free to use the Egrie input file in
25       connection with the European Patent Office proceedings?
```

**Page 456**

```
 1              BORUN - KITCHIN
 2    A. I do not. I believe it was one of the trial exhibits in
 3       Boston. If it were a trial exhibit in Boston, then all
 4       confidentiality wraps would be off. And I would agree with
 5       you, let us put it this way, that the Egrie input document in
 6       and of itself without explanatory declarations and the like
 7       does not amount to much. It is just a collection of scraps
 8       of paper, some from notebooks, some written out especially
 9       for the purpose of whatever Dr. Egrie's purpose was at the
10       time.
11    MR. JUSTICE NEUBERGER: Just one point. You said in answer to
12       Mr. Kitchin the reason you believed that Roche had the Egrie
13       file was that Dr. Fritsch had got it and you explained that.
14       Mr. Waugh was concerned, I think possibly rightly, that
15       Mr. Kitchin unintentionally interrupted you. You might have
16       been going to say some other person may have had it. I did
17       not want you to miss that opportunity.
18    A. I can certainly supply it to you tomorrow morning, my Lord, )
19       but his name escapes me. He is this at all. He has grey
20       hair. Their in-house patent counsel was there throughout the
21       proceedings.
22    Q. Roche's in-house patent counsel or GI's?
23    A. GI's, yes.
24    MR. KITCHIN: The document is covered with "confidential" stamps.
25       Do you have any direct knowledge yourself of whether or not
```

33 (Pages 453 to 456)

MARTEN WALSH CHERER LTD       27/29 CURSITOR STREET        LONDON  EC4A 1LT
TELEPHONE: 020 7405 5010       E-MAIL: martenwc@aol.com     FAX:  020 7405 5026

AM670281995                                                  AM-ITC 01066611

HOECHST v KIRIN                6 FEBRUARY 2002                          DAY 3

```
                  BROWN - KITCHIN
 1
 2   in our response to the appeals, we made the point that only
 3   prior art, only uEPO that was prior art was citable.
 4   Q. I am not talking about that at all. I am talking about the
 5       position here.
 6   A. This is not prior art EPO. It cannot be.
 7   MR. JUSTICE NEUBERGER: Just wait for the question.
 8   MR. KITCHIN: Thank you, Mr. Brown.
 9   A. I am sorry.
10   Q. Could we have a look, please, together at this declaration
11       which you submitted.
12   MR. JUSTICE NEUBERGER: How long is it going to take? Do you
13       want to deal with it now or tomorrow morning.
14   MR. KITCHIN: It might just take a minute or two, so shall we
15       take it in the morning?
16   MR. JUSTICE NEUBERGER: What time would you like to start in the
17       morning?
18   MR. KITCHIN: I am in your Lordship's hands.
19   MR. JUSTICE NEUBERGER: From what I gather, the witness would
20       rather start sooner than later. Would it seem sensible to
21       start at ten o'clock.
22   MR. KITCHIN: Yes, my Lord.
23   MR. JUSTICE NEUBERGER: Do you want to start earlier or not?
24   MR. KITCHIN: Ten o'clock is certainly convenient for me, my
25       Lord.

                             481
```

```
                  BROWN - KITCHIN
 1
 2   available. I am sure you know the rules, that you must not
 3   talk to anybody about the case. It will be 9.30, subject to
 4   reconsideration.
 5       (Adjourned at 4.35 till 9.30 tomorrow morning)

                             483
```

```
                  BROWN - KITCHIN
 1
 2   MR. JUSTICE NEUBERGER: Do you want to start earlier than that?
 3       If you want a minute to think about it ----
 4   MR. WAUGH: It would assist getting finished in a day. We would
 5       advocate a little earlier. There is no one witness who is
 6       going to be subjected to a long day tomorrow.
 7   MR. JUSTICE NEUBERGER: If we could start earlier, Mr. Waugh is
 8       saying that would be better. You have got the brunt of it,
 9       because you have got this cross-examination and two others.
10       While it would be nice to finish on Thursday, I do not want
11       to be oppressive to you. I tell you what. I am going to say
12       I will be ready to start at 9.30. If you do not want to
13       start till ten o'clock, that is fine provided Mr. Watson and
14       Mr. Waugh and everybody else knows by six o'clock whether you
15       want to start at 9.30, 9.45 or 10 o'clock, I will leave it to
16       you because you have the brunt of it.
17   MR. KITCHIN: My junior is certainly going to take one of the
18       witnesses, so that will assist.
19   MR. JUSTICE NEUBERGER: I would rather start earlier than later.
20   MR. KITCHIN: Would your Lordship prefer to start at half-past
21       nine?
22   MR. KITCHIN: Half-past nine it is, my Lord.
23   MR. JUSTICE NEUBERGER: If you do change your mind because you
24       have the brunt of it, let Mr. Waugh and Mr. Watson know and
25       make sure the witness knows. I will say 9.30, and I will be

                             482
```

40 (Pages 481 to 483)

MARTEN WALSH CHERER LTD      27/29 CURSITOR STREET            LONDON EC4A 1LT
TELEPHONE: 020 7405 5010     E-MAIL: martenwc@aol.com        FAX: 020 7405 5026