# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMGEN INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 05-12237 WGY |
| v. ) | |
| ) | |
| ) | |
| F. HOFFMANN-LA ROCHE ) | |
| LTD., a Swiss Company, ROCHE ) | |
| DIAGNOSTICS GmbH, a German ) | |
| Company and HOFFMANN-LA ROCHE ) | |
| INC., a New Jersey Corporation, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF AMGEN INC.'S MOTION TO PRECLUDE FURTHER INTERFERENCE WITH THIRD-PARTY DISCOVERY AND COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY, OR IN THE ALTERNATIVE, MOTION TO STRIKE DEFENDANTS' DEFENSE UNDER 35 U.S.C. § 271(e)(1)**

Dockets.Justia.com

TABLE OF CONTENTS

PAGE NO.

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

        A.      Existing documents and testimony suggest that Roche is engaging in acts
                of infringing importation and use of the accused peg-epo product as well
                as inducing third party infringement.......................................................................3

        B.      Roche has instructed third parties DaVita and Fresenius to withhold
                responsive documents that they were otherwise willing to produce.......................6

        C.      Roche has repeatedly instructed its own witnesses not to answer questions
                relating to clinical trials, depriving Amgen of discovery necessary to
                determine whether the clinical trials are reasonably related to FDA
                approval....................................................................................................................8

        D.      Roche should be sanctioned for its obstruction of the discovery necessary
                to test and rebut its section 271(e)(1) defense. .......................................................9

III.    CONCLUSION...................................................................................................10

TABLE OF AUTHORITIES

PAGE NO.

**Statutes**

35 U.S.C. § 271 (e)(1)...................................................................................................... 2, 3

## I.    INTRODUCTION

Roche has engaged in a systematic effort to prevent production of documents and testimony concerning three large-scale studies in support of Roche's efforts to market its pegylated EPO product, CERA ("peg-EPO").

Roche's own documents refer to these studies as post-registration studies, and in the case of the Time and Motion study, the stated primary objective of the study is to measure the "pharmacoeconomic" benefits of peg-EPO, as compared to EPO (i.e., whether a nurse can save time, and thus money, by administering peg-EPO as compared to EPO). To foreclose discovery concerning these studies, Roche has aggressively and intentionally obstructed production of highly relevant documents from two third parties subpoenaed by Amgen.

Roche has repeatedly sought to prevent production of documents from its own files concerning currently ongoing clinical studies irrespective of whether such trials are in support of FDA registration.[1] While Roche did produce limited subsets of documents concerning certain currently ongoing clinical studies,[2] Roche has, without basis, sought to foreclose Amgen's efforts to elicit documents and testimony concerning three large scale Phase IIIb clinical studies called the "Time and Motion" study, the "Continuum of Care" study, and the "Home Dialysis"

---

[1] See, e.g., Docket No. 199 (Roche's Opposition to Amgen's Motion to Compel Production of Documents, dated December 28, 2006, at 17-18; ("Amgen's Requests relating to any unfinished or future clinical studies of MIRCERA should be denied . . . . Only if and when these studies are completed and the data is processed for submission to the FDA will they become the subject of legitimate discovery and at that time Roche will produce any responsive associated documents.")). Taken literally, Roche's position would mean that documents relating to the three Phase IIIb studies would not be produced until those studies are completed in 2009 and 2010, years after FDA approval.

[2] In light of Roche's general refusal to produce documents or answer questions relating to the Phase IIIb studies, one can only surmise that the documents that Roche did produce concerning the Phase IIIb studies were inadvertently produced. What is unclear is the scope of documents that Roche is withholding concerning theses studies, particularly given that Roche maintains that its Phase IIIb studies are irrelevant.

study.  The timelines and task lists for these studies suggest that all three studies are entirely unrelated to the clinical studies that Roche has submitted in support of FDA registration.

Amgen subpoenaed DaVita and Fresenius,[3] two large dialysis organizations (LDOs). These two LDOs are the largest customers of erythropoiesis-stimulating proteins in the two markets alleged by Roche in their counterclaims.  DaVita and Fresenius responded to Amgen's subpoenas by producing documents and designating 30(b)(6) witnesses to testify concerning DaVita and Fresenius's communications and business relationships with Roche.  However, on the eve of their scheduled 30(b)(6) depositions, both DaVita and Fresenius informed Amgen's counsel in writing that they were withholding certain responsive documents from Amgen based on an instruction from Roche to withhold production.  Roche misrepresented to the third parties that discovery relating to the particular withheld documents was foreclosed by an order of the Court.  Notably, neither DaVita nor Fresenius object to such production, and neither third party has moved for a protective order.

Additionally, Roche has repeatedly instructed its own witnesses not to answer questions relating to Roche's Phase IIIb clinical studies, even though nothing in the Court's earlier orders precludes Amgen from seeking such testimony.

Roche's efforts to obstruct discovery have hindered Amgen's efforts to depose relevant witnesses and have hindered Amgen's efforts to marshal the evidence in support of its expert reports.  The deadline for discovery has now passed.  Roche has produced all that it will produce with respect to the section 271(e)(1) defense, but has denied Amgen discovery to rebut Roche's

---

[3] See Declaration of Mario Moore in Support of Amgen's Memorandum in Support of Plaintiff Amgen, Inc.'s Motion to Preclude Further Interference with Third-Party Discovery, or in the Alternative, Motion to Strike Defendants' Defense Under 35 U.S.C. § 271 (e)(1) (hereafter "Moore Decl."), Exh. 1, (Amgen's Subpoena of DaVita dated January 12, 2007); Moore Decl., Exh. 2 (Amgen's Subpoena of DaVita, dated March 9, 2007); Moore Decl, Exh. 3 (Amgen's Subpoena of Fresenius, dated March 27, 2007).

affirmative defense.  Because Roche has refused to respond to relevant discovery and has

obstructed third party discovery, Amgen requests relief from the Court.

Amgen seeks an order to preclude Defendants' further interference with third-party

discovery, document discovery, and depositions.  Specifically, Amgen seeks an order to:

(1)  prevent Roche from further interfering with Amgen's efforts to discover documents

and testimony that show that Roche's current activities infringe Amgen's patents-in-suit;

(2)  require Roche to withdraw its instructions to third parties to withhold documents;

(3)  require Roche to tender a witness to testify concerning Roche's phase IIIb clinical

trials; and

(4)  require Roche to produce all documents concerning Roche's phase IIIb clinical trials.

In the alternative, Amgen moves to preclude Roche from arguing non-infringement under the

safe harbor of 35 U.S.C. § 271(e)(1).

## II.    ARGUMENT

### A.    EXISTING DOCUMENTS AND TESTIMONY SUGGEST THAT ROCHE IS ENGAGING IN ACTS OF INFRINGING IMPORTATION AND USE OF THE ACCUSED PEG-EPO PRODUCT AS WELL AS INDUCING THIRD PARTY INFRINGEMENT.

Roche's produced documents reveal that Roche is engaging in three studies that are

largely unrelated to Roche's efforts to obtain FDA approval of peg-EPO:  "Time & Motion,"

"Home Dialysis," and "Continuum of Care."

Roche's marketing executives have been planning these marketing-related studies since

at least 2005.[4]  One Roche document of particular interest is an August 15, 2006 memo from

Chrys Kokino, Roche's Vice President of Anemia Product marketing, to the Roche's North

American Operating Committee ("NAOC"), the executive level committee responsible for the

---

[4]  Moore Decl, Exh. 4 (ITC-R-00024046-093).

business objectives of Roche's U.S. affiliate and decisions regarding its marketing efforts, budgets, forecasts, and spending.  The memo indicates that a number of Phase IIIb clinical trials have been designed to help support Roche's efforts to gain market share relative to Amgen's Epogen®.[5]  The Time & Motion, Home Dialysis, and Continuum of Care studies, with projected costs of $5.4, $9.0, and $7.3 million, respectively, were specifically designed to differentiate peg-EPO from Amgen's Epogen® product.[6]  The Synopsis of Protocol Number ML20336 reveals that the Time and Motion study is designed to show that peg-EPO treatment will require less time to administer than Epogen®.[7]  The purposes of study protocol ML20337, the Continuum of Care study, is to examine the proportion of PO503821 treated patients that are able to maintain hemoglobin within 10-12 g/dL at 7-9 months post initiation of dialysis compared to standard of care with epoetin.[8]  The Home Dialysis study, ML20338, seeks to establish Roche's marketing premise that peg-EPO is superior to Epogen® because it can be injected once a month rather than once every two weeks.[9]

The participation of LDOs in Roche's marketing studies is central to Roche's efforts to conduct these three Phase IIIb studies.  A January 2007 document notes that Roche is collaborating with five different dialysis organizations to conduct the three studies, including DaVita and Fresenius.[10]  DaVita is responsible for the Time and Motion study.  Roche and

---

[5] Moore Decl., Exh. 5 (R-10-002623730-731).

[6] Moore Decl., Exh. 6 (R11-000103779).

[7] Moore Decl., Exh. 7 (R11-000224801).

[8] Moore Decl., Exh. 8 (R11-000221423).

[9]  Moore Decl., Exh. 9 (R11-000221629-694).

[10] Moore Decl., Exh. 10 (R005193744-746).

DaVita have completed their contractual discussions relating to the study.[11]  Shaun Collard, Vice President of Clinical Operations at DaVita and DaVita's 30(b)(6) designee concerning topics in Amgen's subpoena to DaVita, testified that the DaVita/Roche Time and Motion study is ongoing.[12]

Roche's documents are inconsistent with Roche's allegation that its exempt activities – Phase IIIb studies – are sufficiently related to FDA approval so as to qualify as exempt activity under section 271(e)(1).  Roche imported peg-EPO for purposes of each of the three studies, and the study purpose of each study was listed as supportive and post-registration rather than New Drug Application essential.[13]  The open, non-comparative methodology of each of the three studies is fundamentally inconsistent with the blinded protocols that are generally necessary for a study in support of FDA approval.[14]

The projected timeline of these three studies is also inconsistent with the studies being submitted in support of FDA registration.  Instead, the time frames are consistent with large scale efforts to market peg-EPO after FDA approval expected by Roche in Spring 2007.[15]  Given that the studies are set to end in 2009 and 2010,[16] years after Roche's expected launch of peg-EPO to

---

[11] Moore Decl., Exh. 12 (R11-000227328-332).

[12] Moore Decl., Exh. 13 (Collard Depo. Tr. at 10-11).

[13] Moore Decl., Exh. 14 (ITC-R-00076865-910, at 865).

[14] *Id.*

[15] The Time and Motion study began enrolling patients in February 2007, with a goal of 50 cites enrolled and 250 patients enrolled by July 2007.  Moore Decl., Exh. 15 (R005186997-7000).  A detailed task list for the study lists 242 tasks, with the study completing in June 2009; Moore Decl., Exh. 16 (R005193131-136 at 135).  The Peritoneal Dialysis study (ML20338) was set to begin patient enrollment in February 2007 with enrollment continuing into 2008; Moore Decl., Exh. 17 (R005187983-992, at 990).  The Continuum of Care studies was to begin patient enrollment in March 2007 with enrollment continuing into April 2009; Moore Decl., Exhibit 17 (R005187983-992 at 991).

[16] Moore Decl., Exh. 17; Moore Decl. Exh. 28 (R005193165-R005193173); Moore Decl. Exh.

market in 2007, they cannot be necessary for FDA approval relating to a BLA submitted in April 2006.

Roche's own email traffic suggests that Roche understood that the Time and Motion study was expected to be conducted and remain ongoing at the time that peg-EPO was expected to receive FDA approval. A 2006 email exchange between Roche employees concerning shipment of the peg-EPO necessary for the clinical studies noted that the supply of peg-EPO product for the study would need to switched from investigation configuration to commercial configuration in 2007.[17]

Perhaps the most telling indicia that at least two of three studies are not in support of FDA registration is the fact that Roche's counsel, when asked by Amgen's counsel to confirm that study protocols ML20336 and ML20338 were in support of registration, failed to confirm.[18]

### B. ROCHE HAS INSTRUCTED THIRD PARTIES DAVITA AND FRESENIUS TO WITHHOLD RESPONSIVE DOCUMENTS THAT THEY WERE OTHERWISE WILLING TO PRODUCE.

Roche has willfully obstructed third party production of documents responsive to Amgen's subpoenas.

In Amgen's subpoena of DaVita, Amgen requested documents concerning any agreement between DaVita and Roche regarding peg-EPO.[19] In response, DaVita agreed to produce a summary of its contracts with Roche regarding peg-EPO including, where applicable, protocol

---

29 (R005193175-R005193177).

[17] Moore Decl. Exh. 18 (R11-00021855-956).

[18]Moore Decl., Exh. 25 (Email from T. Fleming to D. Fishman dated March 28, 2007).

[19] Moore Decl., Exh. 1 (Amgen's Subpoena of DaVita, Request for Production Nos. 1 and 9).

identification numbers.[20]

On March 28, DaVita's counsel informed Amgen's counsel that DaVita was withholding from production two agreements between DaVita and Roche based on Roche's instruction not to produce, even though DaVita did not object to production.[21]  DaVita's counsel represented that it would not produce DaVita documents relating to the protocol numbers for the Time and Motion study and Home Dialysis study referenced in Roche's documents:

> I am writing to follow up on your conversation with Chris Kemnitz and me earlier today regarding the list of Clinical Trial Services Agreements/Clinical Trial Agreements between DaVita and Roche, produced to you as DVA-AMGEN0000001. After consulting with counsel for Roche, who is copied on this email, DaVita hereby provides you with the protocol numbers for the two studies omitted from DVA-AMGEN0000001. The protocol numbers are ML20336 and ML20338. At this time, DaVita will not be providing any information about these studies beyond the protocol numbers, per our instructions from Roche.[22]

DaVita's email confirmed that DaVita had no objection to producing documents concerning the two protocol numbers but for Roche's assertion that DaVita was not permitted to produce the documents.  After Amgen noted Roche's efforts to obstruct DaVita's production and requested that Roche withdraw its objection to production, Roche explicitly confirmed that it would not allow DaVita to produce the referenced documents:

> Roche will not disregard the court's orders nor waive DaVita's confidentiality obligations. In short, Roche will not provide the requisite approval for DaVita to produce the information discussed in your letter of today to me.[23]

Similarly, the very same day, Roche explicitly confirmed that it would object to Fresenius's production of any documents relating to ongoing clinical trials in response to Amgen's subpoena of Fresenius:

---

[20] Moore Decl., Exh. 26 (Letter from C. Kemnitz to D. Fishman, dated March 19, 2007).

[21] Moore Decl., Exh. 27 (Letter from D. Fishman to C. Kemnitz, dated March 28, 2007).

[22] Moore Decl., Exh. 19 (Email from B. Mathie to D. Fishman dated March 29, 2007).

[23] Moore Decl., Exh. 20 (Letter from D. Cousineau to D. Fishman dated March 28, 2007).

Mark Hebert, Fresenius's counsel sought Roche's approval to produce four documents subject to confidentiality agreements between Fresenius and Roche. . . These documents on their face relate to ongoing trials, which — as you are well aware — are beyond the scope of discovery in this case. We are confirming whether these all relate to ongoing trials and will provide Fresenius with approval to produce those that do not relate to ongoing trials.

If any do indeed relate to ongoing trials, however, the court has on three occasions *denied* Amgen's attempts to seek information related to post-April 18, 2006 trials, ruling that such information is irrelevant to this lawsuit, beyond the scope of discovery . . . Roche will not disregard the Court's orders nor waive Fresenius's confidentiality obligations. In short, Roche will not provide the requisite approval for Fresenius to produce those documents that relate to ongoing trials.[24]

The next day Fresenius produced three of the four documents but withheld the fourth document from production due to Roche's instruction.[25]

Notably, Roche never moved for a protective order.  Moreover, Roche never informed Amgen of its interference with third party production in response to Amgen's subpoena.  Amgen learned of Roche's interference from the third parties on the eve of the depositions.

C.    **ROCHE HAS REPEATEDLY INSTRUCTED ITS OWN WITNESSES NOT TO ANSWER QUESTIONS RELATING TO CLINICAL TRIALS, DEPRIVING AMGEN OF DISCOVERY NECESSARY TO DETERMINE WHETHER THE CLINICAL TRIALS ARE REASONABLY RELATED TO FDA APPROVAL.**

In addition to preventing production from third parties, Roche has repeatedly instructed its own witnesses not to answer questions concerning Phase IIIB and Phase IV trials solely on the basis that Amgen's motions to compel production were partially denied.  For example, Roche's counsel instructed Roche's Senior Director of Medical Affairs, Ute Dugan, not to answer questions concerning the budget for Phase IIIb studies even though Roche produced documents concerning the budgets for such studies.[26]  Similarly, Roche's counsel instructed its

---

[24] Moore Decl., Exh. 30 (Letter from D. Cousineau to K. Carter dated March 28, 2007)

[25] Moore Decl., Exh. 21 (Email from M. Hebert to D. Fishman dated March 29, 2007); Moore Decl., Exh. 22 (Email from M. Hebert to M. Moore dated March 29, 2007).

[26] Moore Decl, Exh. 23 (Dugan Depo. Tr. 14:6-12).

worldwide Clinical Science Leader for peg-EPO, Chris Dougherty, not to answer questions

concerning Phase IIIb studies on the grounds that such studies were not yet completed.[27]

The Court previously denied an Amgen motion to compel and agreed that Roche need not

produce documentation concerning ongoing FDA clinical trials until they were completed and

submitted to FDA.[28]  That said, nothing in the language of the Court's order precluded Amgen

from seeking discovery regarding current activities or medical trials ***not*** in support of

registration, or discovery from third parties concerning ongoing clinical trials.  Roche never

sought a protective order and has no basis to preclude questions to Roche witnesses concerning

ongoing medical trials, nor was there any burden to Roche for its senior scientists to answer a

handful of questions concerning those medical trials.

### D.    ROCHE SHOULD BE SANCTIONED FOR ITS OBSTRUCTION OF THE DISCOVERY NECESSARY TO TEST AND REBUT ITS SECTION 271(E)(1) DEFENSE.

Roche's attempts to deny Amgen discovery presuppose that all of Roche's studies are in

support of FDA registration.  In fact, the produced evidence indicates just the opposite.  Amgen

sought the testimony of Roche witnesses and third party discovery precisely so that it could

determine definitively whether Roche's studies are in support of registration.  Roche cannot

maintain its section 271(e) defense while denying and hindering the discovery necessary for

Amgen to rebut Roche's allegations in support of Roche's affirmative defense.

Roche's instructions not to answer questions are indefensible from the standpoint of

relevance or burden.  The questions sought testimony concerning subject matter that was not

privileged or subject to the work product doctrine.  To the extent the questions sought

---

[27] Moore Dec., Exh. 24 (Dougherty Depo. Tr. at 27:21-28:22).

[28]    Docket No. 283 (December 29, 2006 Order); Roche's Opposition to Amgen's Motion to Compel Production of Documents, dated December 28, 2006.

information concerning trade secrets, the protective order included provisions that protected the disclosure of that information.

Roche's efforts to prevent third party discovery violate Model Rule of Professional Conduct 3.4(f), which provides that: "A lawyer shall not request a person other than a client to refrain from voluntarily giving relevant information to another party . . . ." Here, Roche has specifically requested DaVita and Fresenius not to produce relevant evidence, and both third parties are in fact withholding evidence on the basis of Roche's instruction.

Roche never moved for a protective order to prevent Amgen from asking questions or seeking discovery from third parties concerning Phase IIIb trials. The Court's prior orders concerning FDA materials only related to Roche document production, not deposition testimony and not third party productions.

Roche's most recent efforts to hinder discovery should be seen within the context of Roche's pattern of behavior throughout the ITC litigation and the present litigation. In opposition to Amgen's motions to compel production of documents, Roche has repeatedly sought to argue that the BLA is sufficient to provide information concerning all relevant clinical trials. At the same time, Roche has sought to refuse to produce documents concerning ongoing but not yet completed studies, documents dated after April 18, 2006, and documents concerning non-exempt use that occurred after the completion of the ITC investigation documents concerning supplemental BLA. But Roche's attempts to prevent such productions only serve to prevent discovery concerning precisely the trials that were ***not*** submitted in support of FDA registration.

## III.    CONCLUSION

For all the foregoing reasons, Amgen seeks an order:

- precluding Roche from hindering production of documents relating to studies with

protocol numbers ML20336, ML20337, and ML20338;

- ordering Roche to produce all documents concerning protocol numbers ML20336, ML20337, and ML20338;

- allowing Amgen additional deposition time to depose a Roche witness concerning protocol numbers ML20336, ML20337, and ML20338;

- allowing Amgen to depose DaVita and Fresenius concerning any documents that Roche instructed those third parties not to disclose;

- Alternatively, if Roche will not provide the necessary discovery and consent to third party production, Roche should be precluded from arguing that Roche's activities with respect to protocol numbers ML20336, ML20337, and ML20338 are outside the scope of the exemption under section 271(e)(1).

Respectfully Submitted,
AMGEN INC.,
By its attorneys,


_____/s/ Michael R. Gottfried_____

Of Counsel:

STUART L. WATT
WENDY A. WHITEFORD
MONIQUE L. CORDRAY
DARRELL G. DOTSON
KIMBERLIN L. MORLEY
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA   91320-1789
(805) 447-5000

D. DENNIS ALLEGRETTI (BBO#545511)
MICHAEL R. GOTTFRIED (BBO#542156)
PATRICIA R. RICH (BB#640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210
Telephone:     (857) 488-4200
Facsimile:      (857) 488-4201

LLOYD R. DAY, JR. (*pro hac vice*)
DAY CASEBEER
MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014
Telephone:     (408) 873-0110
Facsimile:      (408) 873-0220

WILLIAM GAEDE III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone:     (650) 813-5000
Facsimile:      (650) 813-5100

KEVIN M. FLOWERS (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone:     (312) 474-6300
Facsimile:      (312) 474-0448

April 13, 2007

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on April 13, 2007.


                                    /s/  Michael R. Gottfried
                                  Michael R. Gottfried