# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

AMGEN INC.,

                Plaintiff,

    v.

F. HOFFMANN-LA ROCHE LTD., ROCHE DIAGNOSTICS GmbH and HOFFMANN-LA ROCHE INC.,

                Defendants.

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 05 CV 12237 WGY

PENDING IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

TO:
    **DaVITA INC.**
    601 Hawaii Street
    El Sugundo, California 90245

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents and objects):

**See Schedule A (attached)**

| PLACE 601 Hawaii Street<br>El Sugundo, California 90245 | DATE AND TIME January 30, 2007 at 10 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>/s/ Krista M. Carter, Attorney for Amgen Inc. | DATE<br>January 12, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
  Krista M. Carter, Day Casebeer Madrid & Batchelder LLP, 20300 Stevens Creek Blvd.,
  Suite 400, Cupertino, CA 95014

529385-1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

AMGEN, INC., )
    Plaintiff, )
 )
 ) 05 CV 12237 WGY
v. )
 )
F. HOFFMAN-LA ROCHE, LTD., ET AL, )
    Defendants, )

## AFFIDAVIT

I, __Manuel Gil__, hereby sworn on oath state that I am over the age of 18 years and not a party in the above captioned matter and that on __01/12__, 2007 at __4:46 P__.M. I served this Subpoena upon **DaVITA, INC.** at 601 Hawaii Street, El Segundo, CA 90245 by serving:

Name: __Debra Doe__

Title: __Person in Charge__

Description: Sex: __Female__, Race: _____, Age: _____

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct

Further the Affiant Sayeth Naught.

_____
Process Server

## SCHEDULE A

## DEFINITIONS

1. As used herein, "all" means "any and all"; "any" means "any and all."

2. As used herein, "and" and "or" encompass both "and" and "or," and references shall be construed either as singular or plural, as necessary to bring within the scope of these requests any information or documents and things that might otherwise be construed to be outside their scope.

3. As used herein, "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

4. As used herein, "concerning" means referring to, describing, evidencing, or constituting.

5. As used herein, "DaVita," "you" and "your" means DaVita, Inc., their directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, parents, subsidiaries, or affiliates (including any related non-US entities), past or present, any partnership or joint ventures to which they are a party, any entity for which you provide management or puchasing services, and all others acting on your behalf. References herein to activities conducted by, for, and/or on your behalf, and/or any entity that directly, or indirectly controls at least fifty percent (50%) of the stock normally entitled to vote for election of directors of DaVita, Inc., any entity owned or directly controlled by DaVita, Inc. through ownership of at least fifty percent (50%) of the stock normally entitled to vote for election of directors, and any entity under common control with DaVita, Inc.; provided, however, that in the circumstance where the country of incorporation of such owned or controlled corporation requires the maximum ownership by a foreign entity be less than fifty percent (50%), the percentage of

ownership required to make such an entity an affiliate, shall be equal to the maximum percentage of ownership permitted by such country, and/or any contract research organization or consultant retained by you.

6. As used herein, "document" shall have the same meaning as specified in Fed. R. Civ. P. 34(a), including any written, printed, typed, recorded, digital, magnetic, punched, copied, graphic or other tangible thing in, through, or from which information may be embodied, translated, conveyed, stored or obtained (including electronic mail, personal productivity software, databases, spreadsheets, group or collaboration servers and software, websites, electronic bulletin boards, electronic discussion boards, video recordings, audio recordings, digital recordings, computer tapes, computer disks, microfilm, microfiche and all other media from which information can be obtained. Pursuant to Local Rule 26.5(c)(2), drafts or non-identical copies are considered separate documents within the meaning of this term.

7. As used herein, "employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

8. As used herein, "entity" means any individual and any other cognizable entity, including corporations, proprietorships, partnerships, joint ventures, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders.

9. As used herein, "EPO" means any human erythropoietin or human erythropoietin analog produced from vertebrate cells.

10. As used herein, "ESP" means any erythropoiesis-stimulating protein or polypeptide, including EPO, peg-EPO and erythropoietin purified from urine or any other source.

11. As used herein, "including" means "including but not limited to."

529385-1

12. As used herein, "infringement" and any variant thereof, means any form of infringement actionable under United States law, including direct infringement, contributory infringement, inducement to infringe, literal infringement, and infringement under the doctrine of equivalents.

13. As used herein, "non-peg component of peg-EPO" means every part or portion of peg-EPO other than polyethylene glycol.

14. As used herein, "patents-in-suit" means U.S. Patent No. 5,547,933; U.S. Patent No. 5,618,698; U.S. Patent No. 5,621,080; U.S. Patent No. 5,441,868; U.S. Patent No. 5,955,422; or U.S. Patent No. 5,756,349.

15. As used herein, "peg-EPO" means any erythropoietin having one or more molecules of polyethylene glycol attached or linked thereto, including but not limited to any form of the chemical entity/entities referred to as "CERA," "Continuous Erythropoiesis Receptor Activator," "MIRCERA," "pegserepoetin alfa," "pegzerepoetin," "pegepoetin," "pegzyrepoetin," "Ro 50-3821," "R-744," "MIX," "Methoxy Polyethylene Glycol-Epoetin Beta," "pegylated epoetin beta," "peg-EPO," "PEG-epoetin beta," "pegylated erythropoietin," or "pegylated EPO," "peg-epoetin," "pegylated recombinant human erythropoietin," "polyethylene glycol conjugated recombinant human epoetin beta," and any EPO having at least one attached moiety comprising polyethylene glycol.

16. As used herein, "person" means any natural person and any other cognizable entity, including corporations, proprietorships, partnerships, joint ventures, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders, consistent with the definition set forth at Local Rule 26.5(c)(6).

17. As used herein, "relating to" shall mean relating to, referring to, concerning,

mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or part), as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18. As used herein, "ROCHE" means Defendant(s) Hoffmann-La Roche Inc., F. Hoffman-La Roche Ltd., or Roche Diagnostics GmbH, their directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, parents, subsidiaries, or affiliates, past or present, any partnership or joint ventures to which they are a party and all others acting on behalf of the named Defendants. References herein to activities conducted by, for, and/or on behalf of ROCHE includes, without limitation, activities conducted by, for, or on behalf of Chugai Pharmaceuticals Co., Ltd., Boehringer Mannheim GmbH, and/or any entity that directly, or indirectly controls at least fifty percent (50%) of the stock normally entitled to vote for election of directors of the named Defendants, any entity owned or directly controlled by the named Defendants through ownership of at least fifty percent (50%) of the stock normally entitled to vote for election of directors, and any entity under common control with the named Defendants; provided, however, that in the circumstance where the country of incorporation of such owned or controlled corporation requires the maximum ownership by a foreign entity be less than fifty percent (50%), the percentage of ownership required to make such an entity an affiliate, shall be equal to the maximum percentage of ownership permitted by such country, and/or any contract research organization or consultant retained by ROCHE.

19. As used herein, "thing" means each item, sample, specimen, concrete or tangible object.

## DOCUMENT REQUESTS

1. Documents and things sufficient to identify and describe each communication between you and ROCHE relating to peg-EPO, including the supply, use, administration, storage, offer for sale, sale, advertising, marketing, distribution, subsidization or reimbursement of peg-EPO since January 1, 2003, but excluding: (1) documents reflecting only clinical data for studies or trials conducted by you regarding peg-EPO; and (2) documents reflecting confidential patient information or medical records.

2. Documents and things sufficient to identify and describe each communication between you and ROCHE relating to the supply, use, administration, storage, offer for sale, sale, advertising, marketing, distribution, subsidization or reimbursement of EPO in the United States since January 1, 2003, but excluding: (1) documents reflecting only clinical data for studies or trials conducted by you regarding EPO; and (2) documents reflecting confidential patient information or medical records.

3. Documents and things sufficient to identify and describe each communication between you and ROCHE relating to the supply, use, administration, storage, offer for sale, sale, advertising, marketing, distribution, subsidization or reimbursement of Amgen's Aranesp® product since January 1, 2003, but excluding: (1) documents reflecting only clinical data for studies or trials conducted by you regarding Aranesp®; and (2) documents reflecting confidential patient information or medical records.

4. Documents and things sufficient to identify and describe each negotiation, agreement (including any draft agreements), collaboration, or understanding between you and ROCHE relating to the supply, use, administration, storage, offer for sale, sale, advertising, marketing, distribution, subsidization or reimbursement of recombinant human erythropoietin or

529385-1

peg-EPO in the United States since January 1, 2003.

5. Documents and things sufficient to identify and describe each communication between you and ROCHE relating to Amgen's patents-in-suit since January 1, 2003.

6. Documents and things sufficient to describe DaVita's knowledge or understanding of the supply, use, administration, storage, offer for sale, sale, advertising, marketing, distribution, subsidization or reimbursement of peg-EPO in the United States by ROCHE since January 1, 2003.

7. Documents and things sufficient to describe DaVita's current knowledge or understanding of the public benefit or harm of the commercialization or administration of peg-EPO as well as the source of that knowledge or understanding.

8. Documents and things sufficient to identify and describe each communication between you and ROCHE, Amgen, or federal government entities involved with reimbursement of pharmaceutical products and services relating to the comparative advantages or disadvantages of peg-EPO compared with Epogen®, Procrit®, or Aranesp® since January 1, 2003, but excluding: (1) documents reflecting only clinical data for studies or trials conducted by you; and (2) documents reflecting confidential patient information or medical records.

9. Documents and things sufficient to show any efforts or actions by ROCHE to compete with Amgen for patient enrollment in studies or trials or otherwise interfere with the conduct of any Amgen clinical study, excluding actual patient information or confidential medical information.

10. All documents and things that support or rebut ROCHE's contention that Amgen interfered with the conduct of any ROCHE clinical study to determine the safety, efficacy, or pharmacodynamic or pharmacokinetic properties of peg-EPO, excluding actual patient

information or confidential medical information.

11. All documents and things that demonstrate efforts made by Amgen to provide DaVita with value-added benefits, including benefits such as increasing efficiency, reducing costs, education, and improving patient care and outcomes.

12. Documents and things sufficient to identify and describe DaVita's participation, or potential participation, in any trial, research, or other study sponsored or conducted by or on behalf of ROCHE, scheduled to commence after April 18, 2006.

13. Documents and things sufficient to reflect any communication regarding enrollment of any ROCHE clinical study to determine the safety, efficacy, or pharmacodynamic or pharmacokinetic properties of peg-EPO, excluding actual patient information or confidential medical information.

14. Documents and things sufficient to identify and describe communications regarding payment or remuneration to DaVita, independent dialysis centers affiliated with DaVita, or patients for patient enrollment in trials, studies, and research relating to peg-EPO, including trials, studies, and research comparing peg-EPO with any other ESP.

15. Documents and things sufficient to show the proportion of ESP purchases made by DaVita compared to the overall amount or volume of ESP purchases from ESP suppliers.

16. All documents and things produced or made available for inspection to ROCHE pursuant to the subpoena served on you by ROCHE on January 3, 2007, any other subpoena served on you by ROCHE, and any other subpoena served on you at any time in this litigation.

529385-1