# EXHIBIT 2

Dockets.Justia.com

♦AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

| Central | DISTRICT OF | California |

Amgen Inc., Plaintiff,
V.
F. Hoffmann-La Roche Ltd., Roche
Diagnostics GmbH, and Hoffmann-La Roche
Inc., Defendants.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-CV-12237

TO: DaVita, Inc.
c/o Christian Kemnitz, Esq.
601 Hawaii Street
El Segundo, CA 90245

Action pending in the United States
District Court for the District of
Massachusetts

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Duane Morris LLP  633 West Fifth Street, Suite 4600, Los Angeles, CA 90071 | DATE AND TIME  3/26/2007 9:00 am |
| --- | --- |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  *[signature]*  Attorney for Plaintiff | DATE  3/9/2007 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Krista M. Carter, Esq., Attorney for Plaintiff Amgen Inc.
Day Casebeer Madrid & Batchelder LLP, 20300 Stevens Creek Blvd., Suite 400, Cupertino, CA 95014, (408) 342-4534

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Amgen, Inc. | | |
| vs. F. Hoffman-LaRoche, Ltd., et al. | | Case Number   05 CV 12237 |

## AFFIDAVIT OF SERVICE

I, Robert J. Zielinski, Jr., being first duly sworn on oath deposes and states that I am over the age of 18 years and not a party to this action, and on the 09 day of March, 2007, at 02:20 PM at 525 West Monroe St., Chicago, IL 60661, did serve the following document(s):

**Subpoena and $45.00 witness fee**

Upon:   **DaVita, Inc. c/o Chris Kemnitz, Esq.**

By:   ☑ Personally serving to:   Chris Kemnitz, Esq.

☐ leaving copies at the usual place of abode with:

a member of the household 13 years or upwards and informed that person of the contents thereof

☐ by mailing copies of said document(s) in a sealed envelope with postage fully prepaid to the defendant:

at 525 West Monroe St., Chicago, IL 60661 on

Description:   Sex   **Male**          Race   **White**          Approximate Age   **42**
              Height   **6'1**         Weight   **180**          Hair Color   **Brown**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct.

Further the Affiant Sayeth Naught:

_____
Robert J. Zielinski, Jr.
United Processing, Inc.
55 West Wacker Drive, 9th Floor
Chicago, IL 60601
IL License #117-001101

## SCHEDULE A

## DEFINITIONS

1. As used herein, "all" means "any and all"; "any" means "any and all."

2. As used herein, "and" and "or" encompass both "and" and "or," and references shall be construed either as singular or plural, as necessary to bring within the scope of these requests any information or documents and things that might otherwise be construed to be outside their scope.

3. As used herein, "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

4. As used herein, "concerning" means referring to, describing, evidencing, or constituting.

5. As used herein, "DaVita," "you" and "your" means DaVita, Inc., their directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, parents, subsidiaries, or affiliates (including any related non-US entities), past or present, any partnership or joint ventures to which they are a party, any entity for which you provide management or purchasing services, and all others acting on your behalf. References herein to activities conducted by, for, and/or on your behalf, and/or any entity that directly, or indirectly controls at least fifty percent (50%) of the stock normally entitled to vote for election of directors of DaVita, Inc., any entity owned or directly controlled by DaVita, Inc. through ownership of at least fifty percent (50%) of the stock normally entitled to vote for election of directors, and any entity under common control with DaVita, Inc.; provided, however, that in the circumstance where the country of incorporation of such owned or controlled corporation requires the maximum ownership by a foreign entity be less than fifty percent (50%), the percentage of

ownership required to make such an entity an affiliate, shall be equal to the maximum percentage of ownership permitted by such country, and/or any contract research organization or consultant retained by you.

6.   As used herein, "document" shall have the same meaning as specified in Fed. R. Civ. P. 34(a), including any written, printed, typed, recorded, digital, magnetic, punched, copied, graphic or other tangible thing in, through, or from which information may be embodied, translated, conveyed, stored or obtained (including electronic mail, personal productivity software, databases, spreadsheets, group or collaboration servers and software, websites, electronic bulletin boards, electronic discussion boards, video recordings, audio recordings, digital recordings, computer tapes, computer disks, microfilm, microfiche and all other media from which information can be obtained. Pursuant to Local Rule 26.5(c)(2), drafts or non-identical copies are considered separate documents within the meaning of this term.

7.   As used herein, "EPO" means any human erythropoietin or human erythropoietin analog produced from vertebrate cells.

8.   As used herein, "currently-marketed ESP" means Epogen®, Procrit®, or Aranesp®.

9.   As used herein, "including" means "including but not limited to."

10.  As used herein, "peg-EPO" means any erythropoietin having one or more molecules of polyethylene glycol attached or linked thereto, including but not limited to any form of the chemical entity/entities referred to as "CERA," "Continuous Erythropoiesis Receptor Activator," "MIRCERA," "pegserepoetin alfa," "pegzerepoetin," "pegepoetin," "pegzyrepoetin," "Ro 50-3821," "R-744," "MIX," "Methoxy Polyethylene Glycol-Epoetin Beta," "pegylated epoetin beta," "peg-EPO," "PEG-epoetin beta," "pegylated erythropoietin," or "pegylated EPO,"

"peg-epoetin," "pegylated recombinant human erythropoietin," "polyethylene glycol conjugated recombinant human epoetin beta," and any EPO having at least one attached moiety comprising polyethylene glycol

11. As used herein, "relating to" shall mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or part), as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12. As used herein, "ROCHE" means Defendant(s) Hoffmann-La Roche Inc., F. Hoffman-La Roche Ltd., or Roche Diagnostics GmbH, their directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, parents, subsidiaries, or affiliates, past or present, any partnership or joint ventures to which they are a party and all others acting on behalf of the named Defendants. References herein to activities conducted by, for, and/or on behalf of ROCHE includes, without limitation, activities conducted by, for, or on behalf of Chugai Pharmaceuticals Co., Ltd., Boehringer Mannheim GmbH, and/or any entity that directly, or indirectly controls at least fifty percent (50%) of the stock normally entitled to vote for election of directors of the named Defendants, any entity owned or directly controlled by the named Defendants through ownership of at least fifty percent (50%) of the stock normally entitled to vote for election of directors, and any entity under common control with the named Defendants; provided, however, that in the circumstance where the country of incorporation of such owned or controlled corporation requires the maximum ownership by a foreign entity be less than fifty percent (50%), the percentage of ownership required to make such an entity an affiliate, shall be equal to the maximum percentage of ownership permitted by such country, and/or any

contract research organization or consultant retained by ROCHE.

## **DEPOSITION TOPICS**

1.  Communications between DaVita and ROCHE relating to peg-EPO, including the ongoing and planned uses (other than for clinical studies or trials for registration for FDA approval), offers for sale, sale, supply, storage, pricing, dosing, and reimbursement of peg-EPO since January 1, 2003.

2.  Any plan or consideration by DaVita to switch to peg-EPO if and when peg-EPO is commercially available in place of, or in addition to, the purchase and administration of Epogen®, Procrit®, and/or Aranesp®, including but not limited to any analyses of the financial effect or impact of switching, in whole or in part, to peg-EPO.

3.  DaVita's understanding or belief relating to the public benefit or harm that would result from sale or use of peg-EPO as compared to other currently-marketed ESPs.

4.  DaVita's communications with third parties since January 1, 2003 regarding the comparative advantages or disadvantages of peg-EPO pricing, dosing, or reimbursement as compared to other currently-marketed ESPs.

5.  DaVita's knowledge or understanding of any efforts or actions by Amgen to interfere with the conduct of any ROCHE clinical study to determine the safety, efficacy, or pharmacodynamic or pharmacokinetic properties or peg-EPO.

6.  DaVita's actual or planned participation in any trial, research, or other study sponsored or conducted by or on behalf of ROCHE, scheduled to commence after April 18, 2006.

7.  Value-added benefits provided to DaVita by Amgen, including benefits such as increasing efficiency, reducing costs, education, and improving patient care and outcomes.

8.  DaVita's motivation and objectives in seeking and negotiating a new contract with Amgen.

610021_1

9. DaVita's communications with Roche about the on-going litigation between Amgen and Roche, the subpoenas served on DaVita by Amgen or Roche, and the production and redaction of documents produced in response to subpoenas served on DaVita or in the litigation between Amgen and Roche.