# EXHIBIT 3

Dockets.Justia.com

# UNITED STATES DISTRICT COURT

### DISTRICT OF                             MASSACHUSETTS

**AMGEN INC.,**

                    Plaintiff,

v.

**F. HOFFMANN-LA ROCHE LTD., ROCHE DIAGNOSTICS GmbH and HOFFMANN-LA ROCHE INC.,**

                    Defendants.

### SUBPOENA IN A CIVIL CASE

Civil Action No. 05 CV 12237 WGY

PENDING IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

TO:    Fresenius Medical Care North America
        920 Winter Street
        Waltham, MA 02451-1457

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

### [See Schedule A (attached)]

| PLACE OF DEPOSITION | Bromberg & Sunstein LLP<br>125 Summer Street, Boston, MA 02110 | DATE AND TIME | March 30, 2007<br>1:00 PM |
|---|---|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents and objects):

| PLACE: | DATE AND TIME: |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 03/27/2007 |
|---|---|
| *[signature]*<br>Attorney for Plaintiff Amgen Inc. | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Adam Arthur Bier, Day Casebeer Madrid & Batchelder LLP, 20300 Stevens Creek Boulevard, Suite 400, Cupertino, CA 95014, Phone: (408) 342-4554

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                              DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where

that person resides, is employed or regularly transacts business in person, expect that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect the person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**SCHEDULE A**

**DEFINITIONS**

1.      As used herein, "all" means "any and all"; "any" means "any and all."

2.      As used herein, "and" and "or" encompass both "and" and "or," and references shall be construed either as singular or plural, as necessary to bring within the scope of these requests any information or documents and things that might otherwise be construed to be outside their scope.

3.      As used herein, "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

4.      As used herein, "concerning" means referring to, describing, evidencing, or constituting.

5.      As used herein, "FRESENIUS" "you" and "your" means Fresenius Medical Care AG & Co. KGaA and Fresenius Medical Care North America, their directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, parents, subsidiaries, or affiliates (including any related non-US entities), past or present, any partnership or joint ventures to which they are a party, any entity for which you provide management or purchasing services, and all others acting on your behalf.  References herein to activities conducted by, for, and/or on your behalf, and/or any entity that directly, or indirectly controls at least fifty percent (50%) of the stock normally entitled to vote for election of directors of FRESENIUS, any entity owned or directly controlled by FRESENIUS through ownership of at least fifty percent (50%) of the stock normally entitled to vote for election of directors, and any entity under common control with FRESENIUS; provided, however, that in the circumstance where the country of incorporation of such owned or controlled corporation requires the

maximum ownership by a foreign entity be less than fifty percent (50%), the percentage of

ownership required to make such an entity an affiliate, shall be equal to the maximum percentage

of ownership permitted by such country, and/or any contract research organization or consultant

retained by you.

6.      As used herein, "document" shall have the same meaning as specified in Fed. R.

Civ. P. 34(a), including any written, printed, typed, recorded, digital, magnetic, punched, copied,

graphic or other tangible thing in, through, or from which information may be embodied,

translated, conveyed, stored or obtained (including electronic mail, personal productivity

software, databases, spreadsheets, group or collaboration servers and software, websites,

electronic bulletin boards, electronic discussion boards, video recordings, audio recordings,

digital recordings, computer tapes, computer disks, microfilm, microfiche and all other media

from which information can be obtained.  Pursuant to Local Rule 26.5(c)(2), drafts or non-

identical copies are considered separate documents within the meaning of this term.

7.      As used herein, "EPO" means any human erythropoietin or human erythropoietin

analog produced from vertebrate cells.

8.      As used herein, "currently-marketed ESP" means Epogen®, Procrit®, or

Aranesp®.

9.      As used herein, "including" means "including but not limited to."

10.     As used herein, "peg-EPO" means any erythropoietin having one or more

molecules of polyethylene glycol attached or linked thereto, including but not limited to any form

of the chemical entity/entities referred to as "CERA," "Continuous Erythropoiesis Receptor

Activator," "MIRCERA," "pegserepoetin alfa," "pegzerepoetin," "pegepoetin," "pegzyrepoetin,"

"Ro 50-3821," "R-744," "MIX," "Methoxy Polyethylene Glycol-Epoetin Beta," "pegylated

epoetin beta," "peg-EPO," "PEG-epoetin beta," "pegylated erythropoietin," or "pegylated EPO,"

"peg-epoetin," "pegylated recombinant human erythropoietin," "polyethylene glycol conjugated

recombinant human epoetin beta," and any EPO having at least one attached moiety comprising

polyethylene glycol

11.    As used herein, "relating to" shall mean relating to, referring to, concerning,

mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing,

commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or

part), as necessary to bring within the scope of the discovery request all responses that might

otherwise be construed to be outside of its scope.

12.    As used herein, "ROCHE" means Defendant(s) Hoffmann-La Roche Inc., F.

Hoffman-La Roche Ltd., or Roche Diagnostics GmbH, their directors, officers, employees,

attorneys, accountants, consultants, representatives, agents, divisions, parents, subsidiaries, or

affiliates, past or present, any partnership or joint ventures to which they are a party and all others

acting on behalf of the named Defendants.  References herein to activities conducted by, for,

and/or on behalf of ROCHE includes, without limitation, activities conducted by, for, or on behalf

of Chugai Pharmaceuticals Co., Ltd., Boehringer Mannheim GmbH, and/or any entity that

directly, or indirectly controls at least fifty percent (50%) of the stock normally entitled to vote for

election of directors of the named Defendants, any entity owned or directly controlled by the

named Defendants through ownership of at least fifty percent (50%) of the stock normally entitled

to vote for election of directors, and any entity under common control with the named

Defendants; provided, however, that in the circumstance where the country of incorporation of

such owned or controlled corporation requires the maximum ownership by a foreign entity be less

than fifty percent (50%), the percentage of ownership required to make such an entity an affiliate,

shall be equal to the maximum percentage of ownership permitted by such country, and/or any contract research organization or consultant retained by ROCHE.

13.     As used herein, the term "AMGEN" includes plaintiff Amgen, Inc., any predecessor company or companies, present and past divisions, subsidiaries, joint ventures, parent companies or other legal entities which are or wholly or partially owned or controlled by Amgen, Inc., and each of their respective present or former directors, officers, employees, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting or purporting to act on behalf of Amgen, Inc.

## DEPOSITION TOPICS

1.      Communications between FRESENIUS and ROCHE relating to peg-EPO, including the ongoing and planned uses (other than for clinical studies or trials for registration for FDA approval), offers for sale, sale, supply, storage, pricing, dosing, and reimbursement of peg-EPO since January 1, 2003.

2.      Any plan or consideration by FRESENIUS to purchase peg-EPO if and when peg-EPO is commercially available in the United States in place of, or in addition to, the purchase and administration of Epogen®, Procrit®, and/or Aranesp®, including but not limited to any analyses of the financial effect or impact of switching, in whole or in part, to peg-EPO.

3.      FRESENIUS's understanding or belief regarding any clinical or economic benefit or harm that would result from its purchase or use of peg-EPO as compared to other ESPs currently-marketed in the United States.

4.      FRESENIUS's communications with third parties since January 1, 2003 regarding the comparative economic advantages or disadvantages of peg-EPO with respect to pricing, cost of acquisition, discounts or rebates, dosing, or net cost recovery as compared to other ESPs currently-marketed in the United States.

5.      FRESENIUS's knowledge or understanding of any efforts or actions by AMGEN to interfere with the conduct of any ROCHE clinical study to determine the safety, efficacy, or pharmacodynamic or pharmacokinetic properties of peg-EPO.

6.      FRESENIUS's actual or planned participation in any trial, research, or other study sponsored or conducted by or on behalf of ROCHE, scheduled to commence after April 18, 2006.

7.      Benefits or services provided to FRESENIUS by AMGEN, including benefits such as increasing efficiency, reducing costs, education, and improving patient care and outcomes.

8.      All communications between FRESENIUS and AMGEN since January 1, 2006 regarding any contract or agreement to purchase ESPs for use in the US, including (without limitation) the October 13, 2006 Sourcing & Supply Agreement between FRESENIUS and AMGEN

9.      The motivation and objectives of FRESENIUS in negotiating or executing the October 13, 2006 Sourcing & Supply Agreement with AMGEN.

10.     The effect of FRESENIUS's October 13, 2006 Sourcing & Supply Agreement with AMGEN on FRESENIUS, AMGEN or any other person or entity.