# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

AMGEN INC., )
)
       Plaintiff, )
  v. ) Civil Action No.: 05 Civ. 12237 WGY
)
F. HOFFMANN-LA ROCHE LTD, ROCHE )
DIAGNOSTICS GmbH, and HOFFMANN- )
LA ROCHE INC., )
       Defendants. )
)
)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE COURT'S MARCH 27, 2007 ORDER AND TO <u>COMPEL DEPOSITION TESTIMONY UNDER RULE 30(b)(6)</u>

Leora Ben-Ami (*pro hac vice*)
Mark S. Popofsky (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
Vladimir Drozdoff (*pro hac vice*)
David L. Cousineau (*pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292

*Counsel for*
*F. HOFFMANN-LA ROCHE LTD,*
*ROCHE DIAGNOSTICS GmbH,*
April 13 , 2007                                            *AND HOFFMANN-LA ROCHE INC.*

I.   **INTRODUCTION**

On March 27, 2007, this Court granted Defendants' motion to compel Amgen to immediately designate witnesses for topics 1-4, 6-10 and 26-27 of Roche's First Notice of Deposition to Amgen Pursuant to Rule 30(b)(6).

Immediately upon receiving the Court's Order, Roche attorneys contacted Amgen attorneys and demanded witnesses to address the topics ordered by the Court. Amgen's terse reply was that they were "looking into it."[1] Roche did not receive any formal written response to its requests pursuant to the Court's Order. Rather, in many instances, the night before or even at the beginning of certain depositions, which had already been previously scheduled with the deponents as fact witnesses, Amgen announced that the proffered witness would also be offered for one of the court-ordered topics. Contrary to what Rule 30(b)(6) and this Court's Order required, in most instances, these witnesses could only speak from personal knowledge at their depositions and not as to information at Amgen. For the topics for which Amgen even purported to present a witness, that Rule 30(b)(6) witness was not properly prepared and certainly not within the spirit of what this Court had ordered Amgen to provide. Needless to say, Roche was severely prejudiced by this non-compliance, and further by the lack of notice for these depositions as its attorneys had already traveled to California (where almost all of Amgen's witnesses' depositions took place) and were not afforded any meaningful time to prepare.

The end result of this Court's Order was that Amgen failed to provide any witness at all for topics 9-10 of Roche's Notice. For the remaining topics, Amgen either designated witnesses at the last possible moment, leaving Roche no time to prepare, or designated witnesses with no meaningful knowledge of the noticed topic. Amgen has given no excuse for its failure to fully comply with the Court's Order. Thus, Amgen's recalcitrance compels Roche to respectfully

---

[1] Telephone conference between Deborah Fishman of Day Casebeer and Thomas Fleming of Kaye Scholer.

1

submit this motion to enforce the Court's March 27 Order. Moreover, knowing that it had to file this motion, Roche was compelled to save certain number of its allotted 105 hours of deposition time to ensure that it could take the further Rule 30(b)(6) depositions it respectfully requests the Court grant to it.

In addition to simply not designating anyone for topics 9-10, Amgen designated several previously scheduled fact witnesses, who proved at deposition to be completely unprepared or knowledgeable only as a narrow subset of Roche's topic, or limiting the witnesses testimony to their own personal knowledge.[2] Such witnesses are not sufficiently knowledgeable corporate representatives within the meaning of Rule 30(b)(6), which requires a 30(b)(6) witness to "testify as to matters known or reasonably available to the organization." F.R.C.P. 30(b)(6). Amgen has not represented that these witnesses were prepared to testify to the full extent of Amgen's *corporate* knowledge of Roche's noticed topics and it is apparent from their depositions that they were testifying only to their own limited personal knowledge. Amgen's decision to put forward witnesses without properly preparing them is not meaningful compliance with this Court's Order. The witnesses were not prepared to speak about the scope of information at Amgen, rather they merely spoke from their personal knowledge.

For example, with regard to topic 2, on numerous occasions Amgen's sole corporate designee, Stuart Watt, would answer questions posed to him either because the events in question (clearly within the scope of topic 2) occurred before the beginning of his tenure at Amgen or because his attorney directed him not to answer. This was symptomatic of the short comings of Amgen's so-called 30(b)(6) witnesses. Similarly, Thomas Boone and Fu-Kuen Lin were designated for topics 3 and 4, but often relied on personal knowledge alone, lacking proper

---

[2] By re-designating at the last minute fact witnesses to then also be Rule 30(b)(6) witnesses, Amgen's strategy was to pay lip-service to this Court's Order and prejudice Roche by not providing sufficient notice so that its attorneys could prepare properly for these important depositions.

2

education on their respective designations, and failing to answer several questions within the scope of their topics.

The same can be said with regard to Dr. Lin and topics 6 and 7. Dr. Lin was Amgen's sole designee for these topics, and he was often unable to address any issue not in the specification, and when asked to identify relevant knowledgeable parties it was clear that Amgen knew exactly where to go to obtain the information to be responsive to Roche's topic. With regard to topic 8, Amgen's only designated witness has been Thomas Strickland, whose deposition occurred before the Court's Order and which Amgen abruptly ended in the midst of Roche's questioning despite Roche's repeated attempts to complete his testimony in one day. Amgen has refused repeated requests to offer Dr. Strickland for a second day so that Roche may complete its questioning even after the Court's Order of further discovery on Dr. Strickland's noticed topic.[3]

Amgen has also thwarted Roche's ability to elicit testimony under the ordered 30(b)(6) topics by designating witnesses right before their depositions. For instance, Amgen designated Stuart Watt for topics 26 and 27 on the morning of his deposition and two days after the Court's Order. Amgen also designated Fu-Kuen Lin for topic 1 on the morning of his deposition, thus precluding Roche from preparing to depose him on that topic. Because Roche did not have the opportunity to properly prepare these topics for these witnesses, Amgen's surprise designations cannot constitute good faith compliance with the Court's Order.

Amgen has not designated properly prepared witnesses for Roche's ordered topics, even now after the April 2nd scheduled discovery cut-off. Roche has raised its protest to Amgen's tactics during the deposition of these witnesses. Amgen has not taken any steps to comply with

---

[3] Amgen's failure to allow Roche to complete the deposition of Dr. Strickland is the subject of another motion to compel currently pending before the Court.

3

this Court's Order nor address Roche's complaints. In the interim, Roche has been substantially prejudiced in its preparations for expert discovery, summary judgment, and trial by Amgen's denial of discovery that the Court has already deemed relevant and appropriate. Roche should not be deprived of crucial, court-ordered discovery simply because Amgen chose to designate ill prepared witnesses at the last possible minute or chose to designate no one at all.

## II.  ARGUMENT

### A. Amgen Failed to Produce Adequate Witnesses for Each of Roche's Deposition Topics

By granting Roche's motion to compel, this Court already recognized the validity of Roche's deposition topics 1-4, 6-10, and 26-27 despite Amgen's objections. The only issue then is the quality and completeness of Amgen's response from the date of that order to the close of discovery.

Amgen's failure to designate *any* witness or often eleventh hour designation of poorly prepared witnesses and witness only testifying to their personal knowledge does not satisfy Amgen's obligations under Rule 30(b)(6) or this Court's Order. "Rule 30(b)(6) places the burden upon the deponent to 'make a conscientious good-faith endeavor to...prepare [it's designee(s) ] in **order that they can answer fully, completely, unevasively**.'" *Bridell v. St. Gobain Abrasives*, 233 F.R.D. 57, 60 (D. Mass. 2005)  (emphasis added) (quoting *Mitsui & Co. (U.S.A.) v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62, 67 (D.P.R.1981)). This duty of preparation "goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Id.* (quoting *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996)). "If necessary, the deponent must use documents, past employees, and other resources in performing this required preparation." *Id.*  As discussed below, Amgen has not complied with these requirements of Rule 30(b)(6). "An inadequate Rule 30(b)(6) designation

4

amounts to a refusal or failure to answer a deposition question. Among the other remedies, the Court can require the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense." *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 41 (D. Mass. 2001). Moreover, "substantial compliance" is the standard governing a determination of whether a party has followed a court order. *Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991). Amgen's conduct in response to the Court's Order cannot be considered "substantial compliance". The insufficiency of Amgen's response to each ordered topic is addressed below.

    **1.    TOPICS 9-10: CHARACTERIZATIONS OF THE ACTIVE DRUG PRODUCT IN EPOGEN® AND ARANESP® AND COMPARISONS PERFORMED BY AMGEN OF THE ACTIVE DRUG PRODUCT IN ARANESP® TO RECOMBINANT HUMAN ERYTHROPOIETIN**

Roche's Topic 9 seeks characterization of the active drug substance in Aranesp®, while topic 10 seeks a witness on any comparisons of the active drug substance in Aranesp® to recombinant human erythropoietin. Despite repeated requests from Roche (see Exhibit A, 3/8/07 Letter to Gaede from Drozdoff), and the Court's 3/27/07 Order, Amgen still has failed to designate any witness for either topic at any time even now after the April 2 cutoff. Amgen's non-compliance with the Court's Order with respect to these topics is total. Amgen has offered no explanation or justification for ignoring these topics.

Amgen's recently served expert reports on the topic of infringement only underscore the critical importance of the discovery requested by these topics. Amgen's experts seek to dismiss the substantial chemical and biological differences between the active drug component RO 50-3821 found in CERA and EPO. Many of the differences that Amgen's experts dismiss are similar to the differences between the active drug substance in Aranesp® and recombinant human erythropoietin. Yet, while Amgen asserts that RO 50-3821 falls within the scope of the

5

asserted claims, it maintains that Aranesp does not.  Accordingly, Amgen should be ordered to produce a knowledgeable witness or witnesses on these topics immediately.

  **2. TOPIC 2: ROLE OF ANY AMGEN EMPLOYEE HAVING INVOLVEMENT IN THE PROSECUTION OF THE ERYTHROPOIETIN PATENTS IN THE UNITED STATES, IN (1) PROSECUTION OF AMGEN'S EPO PATENTS IN EUROPE OR THE UK, (2) IN CONNECTION WITH ANY OPPOSITION PROCEEDING IN EUROPE OR THE UK INVOLVING AMGEN'S EPO PATENTS, OR (3) IN CONNECTION WITH ANY OPPOSITION PROCEEDING OR LITIGATION INVOLVING GENETICS INSTITUTE'S EP 0 411 678 AND EP 0 209 539**

Amgen offered Stuart Watt as its 30(b)(6) designee for Topic 2.  Mr. Watt was not properly educated on this topic and often used a lack of personal knowledge of a file history or document (see Exhibit B, 3/29/07 Watt Depo Tr. 41:15-24, 81:1-82:11) or the timing of his tenure at Amgen (see Exhibit B, 3/29/07 Watt Depo Tr. 73:6-12, 75:18-76:4, 105:10-25) to avoid answering questions clearly within the scope of topic 2.  When asked about his familiarity with the '868 patent prosecution, Mr. Watt replied "I certainly was familiar with the parts that I was involved with.  If you are asking did I go back and look at the complete file history from the beginning, I don't remember that I did." (Exhibit B, 3/29/07 Watt Depo Tr. 41:15-24).  When shown a submission by Dr. Lin from the '096 and '097 interferences, Mr. Watt prefaced his answer as he had done on numerous occasions before: "I should put in the qualifiers that we had put in place with all these other statements that we have been talking about that occurred prior to my joining Amgen, but -- so I'm looking at this from a perspective of years later as opposed to being involved at the time and understanding what the intent was at the time." (Exhibit B, 3/29/07 Watt Depo Tr. 105:14-25).  Amgen cannot avoid discovery by circumscribing a subject matter's scope of time to the duration of its sole designee's employment.  Amgen defied the purpose of Rule 30(b)(6), limiting the scope of a topic to the personal knowledge of its chosen

witness rather than preparing the witness to testify to the full scope of Amgen's corporate knowledge.

In addition to these continuous avoidance tactics, Mr. Watt's attorney also directed his client not to answer the basic question: does Mr. Watt have "an understanding as to whether Amgen is relying upon Section 121 in response to a double patent attack on the '868 patent?" (Exhibit B, 3/29/07 Watt Depo Tr. 20:4-6). As Mr. Watt was designated to discuss representations made with respect to the patents-in-suit to the United States Patent Office, the question of whether a particular patent is within the safeguard provisions of Section 121 was clearly germane and within the scope of the topic. Amgen's unilateral limitations and directions not to answer precluded a sufficient response to this topic.

### 3. TOPIC 3: ALL EFFORTS BY AMGEN TO IDENTIFY OR ANALYZE ANY CELL OR TISSUE EXPRESSING OR OTHERWISE PRODUCING ERYTHROPOIETIN

While Amgen designated both Thomas Boone and Fu-Kuen Lin for this topic, Amgen unilaterally limited the proffered testimony to a narrow subset of the information sought under Roche's notice, attempting to change the request to discussions only of examples described in the patent specification. (Exhibit C, 3/13/07 Gaede letter to Drozdoff). Roche did not agree to this limitation and still does not agree. (Exhibit A, 3/8/07 Drozdoff letter to Gaede). In any event, this Court's Order rightly imposed no such artificial limitations on the scope of Dr. Lin's testimony, and Amgen's directions to the contrary at Dr. Lin's deposition was directly contrary to the Court's directions. Also, throughout both depositions, it was abundantly clear that Amgen had not fulfilled its 30(b)(6) responsibility to proactively educate its witnesses about the topic as the witnesses were relying only on their own personal knowledge which could not address the full scope of Amgen's knowledge. For example, when asked about Dr. Sherwood's EPO-

7

producing cell line, Lin replied that he did not know if anyone at Amgen ever checked these cells. Further, he testified that Dr. Sherwood reported that the cells had lost EPO-producing activity but did not know where this was reported, nor when the cells lost their ability to produce EPO. (See Exhibit D, 3/28/07 Lin Depo. Tr. 27:20 - 28:10). Further, Mr. Boone demonstrated only limited knowledge of mammalian cells which Amgen claims to have used to express glycosylated EPO in the 1984 time frame testifying "I don't know what was the knowledge of other people at Amgen in this time frame regarding expression of proteins in mammalian cells." (Exhibit E, 3/30/07 Boone Depo. Tr. 153:6-19).

There is a legal distinction between a fact witness and a Rule 30(b)(6) witness: the fact witness may rely solely on his or her personal knowledge, but a Rule 30(b)(6) witness cannot. As this Court in *Bridell*, 233 F.R.D. at 60, appropriately held, the obligations of a Rule 30(b)(6) witness "goes beyond matters personally known to that designee or to matters in which that designee was personally involved."

### 4. TOPIC 4: ALL EFFORTS BY AMGEN PRIOR TO 1985 TO EXPRESS BIOLOGICALLY ACTIVE GLYCOSYLATED PROTEIN OR POLYPEPTIDE IN ANY MAMMALIAN CELL

Amgen also noticed Thomas Boone as a witness for this topic. Because Dr. Boone had no relevant knowledge of what others in Amgen were doing regarding the expression of proteins in mammalian cells prior to 1985, Dr. Boone was clearly testifying only as to his personal knowledge and was not a proper 30(b)(6) corporate witness. Moreover, despite this topic clearly encompassing ***all*** recombinant expression of glycoproteins other than EPO prior to 1985, counsel for Amgen vehemently disputed the topic's scope at the Boone deposition, even threatening to adjourn the deposition and seek a protective order. (See Exhibit E, 3/30/07 Boone Depo. Tr.

8

142:22 - 143:22). These obstructive tactics precluded Roche from full and fair discovery into this topic.

Dr. Lin also proved to be an inappropriate witness for this topic as he portrayed himself to be uninvolved with much of the relevant substance. For example, when asked about the work on E. coli, Lin replied, "That I believe was . . . done through Joan Egrie's group . . . or maybe someone else. If it's not by her, it would be by someone else outside." (See Exhibit D, 3/28/07 Lin Depo. Tr. 47:4-13). Again, the witnesses designated by Amgen were either not educated to the level that a 30(b)(6) designation requires or were the inappropriate parties to be designated to speak on these topics.

     **5.**     **TOPICS 6-7: CONTRIBUTION OF ANY AMGEN EMPLOYEE OR OTHER PERSON TO CLONING OF THE HUMAN ERYTHROPOIETIN GENE, DEVELOPING ANY METHOD FOR EXPRESSING DNA ENCODING HUMAN EPO IN MAMMALIAN HOST CELLS, DEVELOPING SUBJECT MATTER DISCLOSED IN THE SPECIFICATION OF AMGEN'S EPO PATENTS, AND CLAIMED SUBJECT MATTER DISCLOSED IN THE SPECIFICATION OF AMGEN'S EPO PATENTS AND THE EARLIEST EFFECTIVE FILING DATE FOR EACH OF THE ASSERTED CLAIMS OF AMGEN'S EPO PATENTS**

As stated in Roche's memorandum in support of its motion to compel, Amgen offered a witness to discuss only a small fraction of the topic, again corresponding to that witness's personal knowledge, instead of offering witnesses whose collective knowledge addressed the topic in its entirety. (Exhibit C, 3/13/07 Gaede letter to Drozdoff). In granting Roche's motion, the Court implicitly over-ruled Amgen's objections. Amgen's designated witnesses for these topics, Dr. Lin, was woefully under-prepared to testify to the contributions of other Amgen employees and associates. On several occasions, Dr. Lin was unable to establish who had contributed to his various experiments. Dr. Lin noted that at no time did he determine the amino acid sequence, but rather, he thought the work was done by researchers at the Protein Sequencing Group, but even this was limited by his statement that he didn't know who was actually involved

9

in making that determination. (See Exhibit D, 3/28/07 Lin Depo. Tr. 83:3-13). Often, when Dr. Lin *was* able to offer the names of the various contributing individuals and groups, his knowledge of the underlying issue was insufficient to provide any meaningful insight. (See Exhibit D, 3/28/07 Lin Depo. Tr. 205:16 - 207:1).

Regarding Topic No. 7 relating to Amgen's effective filing dates, since Dr. Lin did not know which individuals performed which experiments relating to his claimed experiment, Dr. Lin was clearly not in a position to testify as to the filing dates that Amgen claims for his patents. At best, several portions of Dr. Lin's deposition appeared to be efforts by Amgen to eat away at Roche's allotted deposition time, and at worst, they represented Amgen's intentional attempts to stonewall Roche's efforts at discovery.

### 6. TOPICS 26-27: AMGEN'S BASIS FOR ASSERTING AGAINST ROCHE CLAIMS IN '080 PATENT RELATED TO MATURE EPO AMINO ACID SEQUENCE OF FIGURE 6 OF PATENT SPECIFICATION; AND AMGEN'S BASIS FOR ASSERTING CLAIMS IN '933 PATENT

Once again, Amgen did not make Roche aware of designations for these topics until the morning of its designated witness Mr. Watt's deposition. (See Exhibit B, 3/29/07 Watt Depo Tr. 5:25-6:14, 140:17-20). Accordingly, while Roche counsel asked questions with regard to these topics, Roche was prejudiced to the extent that there was no time to meaningfully prepare to question Mr. Watt on these topics. Even with regard to Roche's limited questioning, however, Mr. Watt obviated inquiries clearly within the scope of the topic by pointing out he was not under a protective order and accordingly did not have certain relevant knowledge. For example:

> Q. Does Amgen have any evidence to date to suggest that Roche's MIRCERA product contains 166 amino acid protein?
> A. I'm not under the protective order so if Amgen does or Amgen's counsel have that, then they have not shared it with me.
> (Exhibit B, 3/29/07 Watt Depo Tr. 127:16-21).

10

Amgen cannot be allowed to halt inquiries on this topic simply by appointing a corporate designee barred from information relevant to this topic. Again, Amgen seems to have adopted a tortured reading of Rule 30(b)(6), designating a witness whom Amgen cannot provide with the information responsive to a topic.

> **7. TOPIC 1: EFFORTS THROUGH 1987 TO CHARACTERIZE ERYTHROPOIETIN AND EFFORTS AFTER 1987 RELYING ON SUCH CHARACTERIZATION IN CONNECTION WITH PROSECUTION OF ERYTHROPOIETIN PATENTS, OPPOSITION PROCEEDINGS IN EUROPE TO GENETICS INSTITUTE'S EUROPEAN PATENTS EP 411 678 AND EP 209 539, AND OPPOSITION PROCEEDINGS IN EUROPE INVOLVING AMGEN'S EUROPEAN PATENT EP 148 605**

At the time of the Court's March 27, 2007 Order, Amgen had only offered one witness for this topic, Dr. Thomas Strickland. Dr. Strickland, had been noticed for deposition several weeks before his March 9 deposition; nevertheless, Amgen identified him as a 30(b)(6) witness only three days before the deposition and then supplemented its Rule 26 disclosures the night before the deposition to identify Strickland as a person having knowledge in certain areas. (Exhibit F, 3/9/07 Strickland Depo Tr. 13:8-17). Perversely, Amgen offered Dr. Strickland as a corporate 30(b)(6) witness but only regarding his *personal knowledge* of his noticed topics. Although Amgen had admitted that further information existed with regard to topic 1, Amgen continued to rely exclusively on Strickland, whose own testimony was unilaterally limited to those experiments and declarations of which he possessed personal knowledge. (Exhibit C, 3/13/07 Gaede letter to Drozdoff). Roche made clear that this response was insufficient, that "this request seeks discovery, not just of Dr. Strickland's work but of any experimental data about EPO generated by or on behalf of Amgen that Amgen relied upon in prosecution of, or in opposition proceedings relating to its Lin EPO patents." (Exhibit A, 3/8/07 Drozdoff letter to Gaede). At minimum, Roche sought "discovery on the data Amgen relied on, referred to or

11

discussed to demonstrate any distinction in any physical, biological, or chemical property between any recombinant human EPO and human urinary EPO, including any evidence to the contrary that Amgen considered." (Exhibit A, 3/8/07 Drozdoff letter to Gaede).

Since the Court's Order, Amgen only offered one additional witness, Dr. Lin, but did not inform Roche of his designation until the morning of his deposition. Roche counsel made a formal objection to the timing of this designation but proceeded with the deposition. (See Exhibit D, 3/28/07 Lin Depo Tr. 14:3-8). Nevertheless, this method and manner of disclosure was clearly inappropriate and a naked attempt to frustrate counsel and withhold complete discovery on this topic.

### 8.   TOPIC 8: RELATIONSHIP BETWEEN GOLDWASSER AND AMGEN

Amgen's sole witness on topic 8 was again Dr. Strickland and again only to the extent of his personal knowledge. The parties agreed that attempts would be made to finish Dr. Strickland's deposition in one day; if both his personal and 30(b)(6) depositions could not be completed in one day, however, arrangements were to be made for a continuation at another time. (Exhibit F, 3/9/07 Strickland Depo Tr. 13:18-20). Nevertheless, despite less than eight hours on the record, Amgen's attorney abruptly ended Strickland's deposition despite pending questions regarding Roche's topic 8. Roche's attorney stated clearly that he was not finished with his questioning and had just an hour more to go; Strickland and his counsel left anyway. (Exhibit F, 3/9/07 Strickland Depo Tr. 377:15-378:6).

Amgen failed to produce Dr. Strickland at a later date (as Roche counsel urged at the 3/9/07 deposition) and failed to provide anyone in his stead on this topic, blithely stating in a March 13, 2007 letter that "Amgen's production of witnesses on this Topic is complete." (Exhibit C, 3/13/07 Gaede letter to Drozdoff). It is absurd for Amgen to argue that designating a

witness only as to his own interactions with Dr. Goldwasser is full compliance with its obligation to designate a witness regarding Amgen's corporate relationship with Dr. Goldwasser.

Whatever Amgen's belief is regarding the completeness of its production, Roche's knowledge on this topic is far from complete. From the date of this Court's Order, Amgen has done ***nothing*** to supplement 30(b)(6) discovery on Amgen's relationship with Dr. Goldwasser. Accordingly, Amgen should either produce Dr. Strickland again on this topic or provide some other witness to complete testimony on this topic.

### B. Amgen's Non-Compliance With the Court's 3/27/07 Order Has Prejudiced Roche

Amgen's "morning-of" notices of designation and carve-outs to avoid testimony responsive to relevant questions indicates a pattern that should not be rewarded. Roche served its First Notice of Deposition to Amgen Pursuant to Rule 30(b)(6) on February 9, 2007. Amgen had more than sufficient time to (1) contemplate witnesses to testify with regard to Roche's topics and (2) properly and clearly designate witnesses pursuant to the Court's Order before the discovery deadline (while also providing Roche at least a day's notice in order to prepare for the topics); and (3) properly prepare those witnesses for meaningful depositions.

Amgen's transparent attempt to avoid the consequences of the Court's Order, by failing to present any witness on some topics, and then proffering woefully ill-prepared witnesses at the last minute on others, should not be countenanced by the Court. Amgen's tactics have denied Roche meaningful court-ordered discovery and have frustrated Roche's attempts to obtain full and fair inquiry into these areas.

Roche still needs this testimony in order to prepare for the remainder of expert discovery, any summary judgment motions and to prepare its case for trial. Roche remains in largely the same position it was when it filed its motion to compel — severely impeded in its

efforts to support its defenses and counterclaims. Accordingly, Roche requests that the Court enforce its March 27, 2007 Order and require Amgen to comply fully and in good faith; additionally, Roche requests that Amgen be made to bear the costs and expenses occasioned by its continued noncompliance under Rule 37(a)(2)(B).

### III. CONCLUSION

For the reasons set forth above, Roche respectfully requests that the Court enforce its March 27, 2007 Order requiring Amgen to designate and proffer fully prepared witnesses for Roche's deposition topics nos. 1-4, 6-10, and 26-27 from its first 30(b)(6) notice of deposition.

| | |
|---|---|
| Dated: April 13, 2007<br>Boston, Massachusetts | Respectfully submitted,<br>F. HOFFMANN-LA ROCHE LTD,<br>ROCHE DIAGNOSTICS GMBH, and<br>HOFFMANN-LA ROCHE INC.<br><br>*By their attorneys,*<br><br>/s/ Keith E. Toms<br>Lee Carl Bromberg (BBO# 058480)<br>Julia Huston (BBO# 562160)<br>Keith E. Toms (BBO# 663369)<br>Nicole A. Rizzo (BBO# 663853)<br>BROMBERG & SUNSTEIN LLP<br>125 Summer Street<br>Boston, MA 02110<br>Tel. (617) 443-9292<br>ktoms@bromsun.com<br><br>Leora Ben-Ami (*pro hac vice*)<br>Mark S. Popofsky (*pro hac vice*)<br>Patricia A. Carson (*pro hac vice*)<br>Thomas F. Fleming (*pro hac vice*)<br>Howard S. Suh (*pro hac vice*)<br>Peter Fratangelo (BBO# 639775)<br>Vladimir Drozdoff (*pro hac vice*)<br>David L. Cousineau (*pro hac vice*)<br>KAYE SCHOLER LLP<br>425 Park Avenue<br>New York, New York 10022<br>Tel. (212) 836-8000 |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

/s/ Keith E. Toms

652378.1 3099/510

15