# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

AMGEN INC.,                                )
                                           )
                                           )
        Plaintiff,                         ) Civil Action No.
        v.                                 ) 05-CV-12237WGY
                                           )
F. HOFFMANN-LA ROCHE LTD,                  )
ROCHE DIAGNOSTICS GmbH,                    )
and HOFFMANN-LA ROCHE INC.,                )
                                           )
        Defendants.                        )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR AN ORDER FOR AMGEN TO SHOW CAUSE WHY IT IS NOT IN CONTEMPT OF THE PROTECTIVE ORDER

Leora Ben-Ami (*pro hac vice*)
Mark S. Popofsky (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
Vladimir Drozdoff (*pro hac vice*)
David L. Cousineau (*pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292

*Counsel for*
*F. HOFFMANN-LA ROCHE LTD,*
*ROCHE DIAGNOSTICS GmbH,*
*AND HOFFMANN-LA ROCHE INC.*

April 17, 2007

Dockets.Justia.com

# TABLE OF CONTENTS

I.      Introduction ...........................................................................................1

II.     Statement of Facts ..................................................................................2

        A.      Amgen filed a Declaration in the Public Record
                Containing 173 Pages of Confidential Roche Documents ............2

        B.      Amgen Has Previously Violated the Protective
                Order by Attempting to Place Confidential
                Roche Documents in the Public Record and by
                Attempting to Place Amgen's Own Non-Trade
                Secret Documents Under Seal ......................................................4

III.    Argument ................................................................................................7

        A.      Under the Standards of the First Circuit and the
                District of Massachusetts, Amgen is in Contempt
                of the Protective Order.................................................................7

                1.      The Protective Order is Clear and
                        Unambiguous Regarding the Parties'
                        Responsibility to Protect Confidential
                        Information......................................................................7

                2.      The 14 Documents Were Placed in the Public
                        Record by Amgen Attorneys Who Signed and
                        Read the Protective Order..............................................8

                3.      It is Clear and Unmistakable From the Face of
                        the Documents that They Contain Roche's
                        Confidential Information.................................................9

        B.      Amgen's Bad Faith in Placing these Documents in the
                Record is Evidenced by its Past Conduct in Violation
                of the Amended Protective Order .................................................9

        C.      Amgen's Flagrant Violation Has Put Roche's MIRCERA®
                Program at Risk through Exposure of its Trade
                Secrets .......................................................................................10

        D.      An Order to  Show Cause that Amgen is Not in Contempt
                is Appropriate ...........................................................................10

E.    Roche's Remedies Should Compensate it for Amgen's
      Past Violations, and Assure that Amgen will Not
      Continue This Pattern in the Future ................................................11

      1.    Roche Should be Compensated for Its
            Efforts in Combating Amgen's Violations .........................12

      2.    Amgen's Motion to Preclude Further
            Interference Should be Denied ...........................................12

      3.    Amgen Should be Ordered to Limit the Number
            of its Attorneys with Access to Confidential
            Information, or in the Alternative, Be Subject to
            Severe Penalties for Future Violations ..............................13

IV.   Conclusion ...................................................................................................14

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR AN ORDER FOR AMGEN TO SHOW CAUSE WHY IT IS NOT IN CONTEMPT OF THE PROTECTIVE ORDER**

## I.    INTRODUCTION

At the close of business last Friday night, immediately before the Patriot's Day holiday weekend, Amgen, Inc. ("Amgen") filed in the public record fourteen (14) documents that were properly designated and prominently labeled as CONFIDENTIAL by the Defendants (collectively, "Roche") in this case. These documents consist of 173 pages detailing Roche's ongoing studies concerning its MIRCERA® product, and contain Roche's highly confidential information and trade secrets.

This was not an isolated occurrence. Amgen has repeatedly attempted to file Roche's confidential information in the public record without justification, and indeed this Court has admonished Amgen for doing so. Unwilling to comply with this Court's Orders, Amgen apparently sees fit to treat Roche's confidential information as it pleases, while at the same time improperly seeking to shield from public view Amgen documents which are clearly non-confidential, including even Amgen's own privilege log. Roche has sustained untold harm by having its trade secrets freely available to its competitors and others for more than 65 hours in this closely watched case, while court personnel were unavailable over the weekend to remove Amgen's improper filing from the public record. Roche is unable to protect itself from Amgen's ongoing abuse, and needs the assistance of the Court.

The parties are not similarly situated regarding the confidentiality of their scientific and business information, and Amgen has repeatedly exploited this fact to its benefit. Roche's MIRCERA® product is pending FDA approval, a highly secretive process, and is still undergoing trials and studies; Amgen is suing on technology that is nearly 25 years old. Amgen

1

is engaging in a concerted effort to use this litigation not merely as a legitimate means to vindicate its patent rights, but as a cudgel with which to inflict harm on Roche's MIRCERA® program and maintain Amgen's market dominance at any cost.[1]  This Court must not permit Amgen to violate the Amended Protective Order in furtherance of this strategy.

Roche asks that the Court order Amgen to show cause why its activities do not violate the Orders of this Court, and to find that Amgen is in contempt of the Amended Protective Order (D.N. 274) entered in this case upon Amgen's stipulation.  Roche asks, as relief, that the Court order Amgen to compensate Roche for its expenses in addressing Amgen's misconduct.  Further, Roche asks that the Court deny the motion in support of which the confidential documents were put in the record, and for further restrictions on Amgen's attorneys' access to Roche confidential information.

## II.    STATEMENT OF FACTS

### A.    Amgen Filed a Declaration in the Public Record Containing 173 Pages of Confidential Roche Documents

At 5:00 p.m. on April 13, 2007, a Friday evening before a long holiday weekend, Amgen filed its Motion to Preclude Further Interference with Third Party Discovery and supporting memorandum (D.N. 377 and D.N. 378).[2]  In support of its motion, which seeks discovery of certain Roche studies, Amgen electronically filed a declaration by Mario Moore (D.N. 379), an attorney at the firm of Day Casebeer, who was admitted *pro hac vice* as counsel for Amgen in

---

[1]  Amgen's intentions are revealed in statements such as those by its chief executive Kevin Sharer that, "The fact that they're having trouble in oncology is cold comfort . . . We have to stop them altogether." (Amgen's "strategic intention" is to acquire – CEO, Reuters, Mar. 1, 2006) and "Amgen plans to do 'every single thing that we aggressively and legally can do' to defend its anemia drug patents" (Amgen profit up 14% on sales gain, L.A. Times, Oct. 24, 2006).

[2]  The title is a misnomer; the relief Amgen seeks is to compel production of "all documents concerning Roche's phase IIIb clinical trials."  Amgen's Memorandum (D.N. 378), p. 3.  This motion, made after the deadline for motions to compel relating to fact discovery, is yet another attempt to seek the same relief already denied three times by this Court.  *See* Orders dated December 29, 2006, January 22, 2007, and March 2, 2007.  This attempted fourth bite at the apple is completely unjustified.

2

this case.  The Moore declaration attached 14 exhibits containing highly sensitive material concerning Roche's studies concerning its MIRCERA® product, which were clearly stamped CONFIDENTIAL by Roche.  The confidential exhibits at issue were attached to the publicly filed Moore declaration as Exhibit Nos. 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 28, and 29.  As these exhibits total 173 pages, their public filing could hardly be an oversight.  Not only were these documents prominently stamped with a CONFIDENTIAL legend, but are also on their face clearly confidential as they disclose nonpublic information relating to Roche's trade secrets, processes, operations, and communications, among others.

The improper filing was made at 5:00 p.m. on a Friday evening, and did not did not come to the attention of Roche's counsel until the next day, a Saturday.  Roche immediately notified Amgen of the improper filing and asked Amgen to take immediate steps to remedy the disclosure.  Exh. A (4/14/07 letter from Julia Huston to Michael Gottfried).  Amgen's counsel agreed to look into it (and ultimately requested that the clerk remove the documents from the public record) and, significantly, did not allege that Amgen was justified in publicly filing the documents.  Exh. B (4/14/07 email from Michael Gottfried to Julia Huston).  Amgen was not successful in effecting the removal of the documents from the public record until Monday, April 16, 2006, when the docket clerk was available to electronically remove the 14 exhibits from the Court's docket.  It was indeed fortuitous that the clerk was available at all, since that day was Patriot's Day, a Massachusetts holiday on which the Boston Marathon is traditionally run.

There is no telling how many people saw these documents on the Court's web site, as more than 65 hours had elapsed between the time Amgen filed Roche's confidential information and the time the clerk removed them from the public record.  It is a virtual certainty that at least

3

some third parties obtained this information, as this case has been closely watched by the media and others, and Amgen's improper filing was made just days before the scheduled Markman hearing.

**B.    Amgen Has Previously Violated the Protective Order by Attempting to Place Confidential Roche Documents in the Public Record and by Attempting to Place Amgen's Own Non-Trade Secret Documents Under Seal**

Amgen's most recent transgression is not an isolated instance, but is part of a larger pattern of abusive conduct intended to harass and embarrass Roche. Amgen has repeatedly violated the Protective Order with its attempts to file Roche's confidential and trade secret documents in the public record, forcing Roche to expend tens of thousands of dollars to comply with the Court's directive to prove that the documents at issue are trade secrets, where such documents were irrelevant and unnecessary to the disposition of the underlying motion. The Court first noted the impropriety of Amgen's conduct in its Order of January 22, 2007, in which it disposed of Amgen's motion concerning the production of cell lines, without the need to refer to the confidential documents at issue and stated that "This Whole Business of Filing Allegedly Confidential Documents Anent Discovery Motions Is Proving A Massive Waste of Time." Yet, only a few weeks later, Amgen ignored the Court's statement and proceeded to attempt to file Roche's confidential and trade secret documents in the public record without justification once again. The Court made its position on this conduct abundantly clear in its Order of February 28, 2007, in which it stated, "This Ruling Has Been Made Without Any Reference to the So-Called Confidential Documents, <u>A Procedure Which - It Is Becoming Increasingly Apparent - Is Being Employed Solely to Harass and Embarrass An Opposing Litigant and Cause Waste of Resources. This Court Will Not Continue to Tolerate Such Litigation Conduct</u>." (emphasis added).

At the same time, Amgen has refused to abide by the Court's Orders when it comes to Amgen's own allegedly confidential information. Amgen recently moved to seal its own privilege log and certain deposition testimony relating to non-confidential communications occurring in 1983, without showing that the documents were confidential or even purporting to comply with the Court's clear directive that only trade secrets may be file under seal. Amgen's conduct is inexplicable given that the Court has informed the parties on numerous occasions that no documents will be filed under seal unless they contain a trade secret. The Court clearly pronounced this position in its order of November 30, 2006 (Docket No. 159) in which it stated, "NO DOCUMENTS Shall Be Filed in the Court Under Seal Absent Allowance of a Particularized Motion to Seal Which Would Be Allowed ONLY if the Filing Would Reveal A Trade Secret. THIS LITIGATION IS PUBLIC." (emphasis in original). The parties subsequently entered into a Protective Order, which was endorsed by the Court, providing that "No document shall be filed in Court under seal absent allowance of a particularized motion to seal that would be allowed only if the filing includes a trade secret." See Amended Protective Order of 2/7/07 at ¶ 14 (Docket No. 274).

Moreover, during a motion hearing on December 20, 2006, the Court explicitly instructed the parties as follows:

> This is public patent litigation. Everything that gets filed in court, and this is consistent with what I've said all along, everything that gets filed in court gets filed publicly. The only things I will consider sealing are trade secrets. And then -- I'm just repeating myself -- upon a motion properly made and supported by a detailed brief, which I will review with the utmost skepticism, all of which, both motion and supporting papers, are themselves completely public. . . . I don't want to know what counsel say. Counsel always think everything's confidential or not confidential. You're the advocate. I want the scientists. I want the sales manager who says nobody knows anything about this and here's why . . . And that's all public.

In its first motion to seal its privilege log and certain testimony that effected a waiver of privilege (D.N. 345), however, Amgen did not even allege that the documents it sought to file under seal contained trade secrets. Moreover, Amgen did not file a memorandum in support of its motion and thus could not have complied with the Court's order that any party moving to seal submit a "particularized" motion and "detailed brief." Amgen's only support for its motion was a declaration from one of its outside counsel, William G. Gaede III, which directly contradicted the Court's decree that it did not "want to know what counsel say" but instead wanted to hear from company insiders as to why the documents at issue contain trade secrets. Although Roche pointed out these deficiencies in its opposition, unbelievably, Amgen's second motion to seal these documents (D.N. 366) was still not accompanied by a memorandum or declaration, and still did not allege any trade secrets. Amgen's first motion was denied as to the privilege log and otherwise taken under advisement on April 4, 2007; Amgen's second motion was denied on April 16, 2007.

Throughout this litigation, Roche has taken meticulous care to comply with the Orders and directives of this Court. Amgen has, in contrast, flouted this Court's Orders and manipulated them to its own benefit. Amgen's filing of 14 exhibits comprising 173 pages of highly confidential information about Roche's current MIRCERA® trials is only the most recent example of Amgen's playing fast and loose with the rules, and disregarding the confidentiality of Roche's documents in order to play on Roche's understandable apprehension that its valuable trade secrets will be publicly disclosed in this litigation. Roche urgently needs this Court to level the playing field and enforce its Orders against Amgen.

III.    **ARGUMENT**

    A.    **Under the Standards of the First Circuit and the District of Massachusetts, Amgen is in Contempt of the Protective Order**

Courts may use the power of contempt proceedings to address disobedience of their orders. *Brine, Inc. v. STX, L.L.C.*, 367 F. Supp.2d 61, 66 (D. Mass. 2005) (Gorton, J.) (finding infringer in contempt of prior injunction). A finding of civil contempt requires that the order that the contemnor has violated be "clear and unambiguous," and that the violation be shown by "clear and convincing" evidence. *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76-77 (1st Cir. 2002) (finding that contemnors violated clear and unambiguous court order, and that violation was shown by clear and convincing evidence); *Dystar Corp. v. Canto*, 1 F. Supp.2d 48, 54 (D. Mass. 1997) (Saris, J.) (finding that defendants violated clear preliminary injunction against disposing of assets, and that violation was clear and convincing). The order violated by Amgen, and Amgen's conduct in violating that order, easily meets the standard required for a finding of contempt.

Further, it is well established that violation of an order need not be willful in order for contempt sanctions to be levied. *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76-77 (1st Cir. 2002) ("The law is firmly established in this circuit that good faith is not a defense to civil contempt."); *Star Fin. Servs., Inc. v. AASTAR Mortgage Corp.*, 89 F.3d 5, 13 (1st Cir. 1996) (affirming award of sanctions by Young, J.) (noting that "good faith, or the absence of willfulness, does not relieve a party from civil contempt in the face of a clear order").

    1.    **The Protective Order is Clear and Unambiguous Regarding the Parties' Responsibility to Protect Confidential Information**

The Amended Protective Order is clear and unambiguous with respect to the parties' responsibility to refrain from disclosing confidential information. The Order states that, "[i]n the

absence of written permission from the Supplier or an order by the Court, any Confidential Material **shall not be disclosed to any person** other than" specifically delineated individuals. Amended Protective Order (D.N. 274) ¶ 10 (emphasis in original). Further, "[d]ocuments designated as Confidential Material shall be clearly and prominently marked on their face with the legend "**CONFIDENTIAL**" or a comparable notice." *Id.* ¶ 5(a). There is no ambiguity as to what materials are confidential under these rules.

Further, even if Amgen had any reasonable basis to believe that these documents were not properly designated as confidential—and it does not—there is no provision in the Protective Order that allows Amgen to publicize these documents on its own initiative. Rather, any challenges to confidentiality may be resolved by agreement of the parties or by moving to reclassify the Confidential Material. Amended Protective Order (D.N. 274) ¶ 8. Otherwise, any Discovery Materials designated as Confidential "are to be treated as such unless the parties agree in writing to the contrary or there is a ruling by the Court pursuant to a challenge to the designation . . . ." *Id.* ¶ 7.

There is no ambiguity in these directives in the Amended Protective Order. Amgen had a choice to follow the Protective Order, or to ignore its directives, and Amgen chose the latter course.

### 2. The 14 Documents Were Placed in the Public Record by Amgen Attorneys Who Signed and Read the Protective Order

The Declaration attaching the 14 confidential Roche documents was signed by Mario Moore of Day Casebeer, who is admitted *pro hac vice* in this action, and filed by Michael Gottfried of Duane Morris. As counsel of record to Amgen, both of these attorneys presumably signed the Undertaking of Attachment A, that each has read and agreed to the terms of the Order.

Amended Protective Order (D.N. 274) ¶ 11. Thus, the attorneys responsible for this filing were on notice that their activities would violate the Amended Protective Order.

### 3. It is Clear and Unmistakable from the Face of the Documents that They Contain Roche's Confidential Information

The 14 confidential documents submitted with Amgen's Motion to Preclude Interference total 173 pages of confidential materials. These documents are each clearly stamped CONFIDENTIAL by Roche, which unambiguously indicates these documents are designated confidential pursuant to the Amended Protective Order. Further, the confidential nature of the documents is apparent from their face, consisting of, among other things, internal Roche memos and emails regarding the budget for clinical trials, clinical study protocols, and internal Roche executive summaries/presentations regarding clinical trials, all related to Roche's MIRCERA® product. There is absolutely no excuse for Amgen to file these documents into the public record. Even if Amgen wished to challenge the confidentiality of these documents, it is required under the Amended Protective Order to do so either by consulting with Roche or on motion.

### B. Amgen's Bad Faith in Placing these Documents in the Record is Evidenced by its Past Conduct in Violation of the Amended Protective Order

Given the clarity of the directives of the Protective Order, the actions of Amgen's attorneys, after having read the Amended Protective Order, indicate a deliberate effort by Amgen to evade the Order. At the very least, this indicates gross negligence by Amgen in allowing attorneys to file confidential materials in violation of the Protective Order. However, given Amgen's history of attempting to file Roche's confidential documents in the public record without justification, as detailed above, Roche is not willing to attribute Amgen's most recent filing to mere inadvertence, particularly given the volume of documents involved. Amgen has repeatedly attempted to file Roche's confidential information in the public record, while

improperly seeking to shield its own documents from public scrutiny, in an effort to exploit the highly confidential status of Roche's accused MIRCERA® product and diminish its value.

### C.    Amgen's Flagrant Violation Has Put Roche's MIRCERA® Program at Risk through Exposure of its Trade Secrets

The success of Roche's drug programs, and particularly MIRCERA®, depends on Roche's ability to maintain trade secrets.  Given that the anemia drug market is incredibly large and profitable, this case has drawn a great deal of third party attention.  These third parties, including generic drug manufacturers, have been and will be very watchful for any confidential information revealed in this litigation.  Amgen's  disclosure of trade secrets regarding the development and testing of MIRCERA® have undoubtedly not gone unnoticed by such manufacturers, for whom every revelation is an opportunity to copy Roche's methods.  The 14 publicly filed documents discuss Roche's testing plans, and testing results, for the MIRCERA® product, which are invaluable to any party wishing to compete with Roche's product.  It is impossible to know how many third parties had access to these documents over this 2½ day period (which would have been even longer had not a clerk been in the court on the Patriot's Day holiday).  By allowing these documents to remain in the public record over an entire weekend, Amgen has done incalculable damage to Roche's trade secrets, and has irreparably harmed Roche's MIRCERA® program.   Amgen's actions, given its knowledge of the Amended Protective Order and the sensitivity of these documents,  indicate a concerted effort to cripple Roche's efforts to compete with Amgen in the field of anemia drugs.

### D.    An Order to Show Cause that Amgen is Not in Contempt is Appropriate

The Court has inherent power to manage its proceedings and to control the conduct of litigants who appear before it.  *Jones v. Soc. Sec. Admin.*, No. C.A.03-12436-DPW, 2004 WL 2915290, *4 (D. Mass. Dec. 14, 2004) (Woodlock, J.) (imposing sanctions on litigant for

repeated meritless filings). The Court's power to find litigants in contempt arises from this inherent power of the Court. *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77-78 (1st Cir. 2002) (finding that lower court initiated contempt proceedings under its inherent power); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11 (1st Cir. 1985) (citing court's inherent powers in rendering default judgment for discovery transgressions). Among the Court's power is the power to punish parties for violations of a Protective Order. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 630, 630-31 (8th Cir. 1984) (ordering sanctions for violations of protective order resulting in disclosure of trade secrets, even though disclosure was not willful).

### E. Roche's Remedies Should Compensate it for Amgen's Past Violations, and Assure that Amgen will Not Continue This Pattern in the Future

If Amgen cannot show cause that it is not in contempt of the Protective Order, it is then subject to contempt sanctions. Such sanctions can be made at the discretion of the Court, and include sanctions to reimburse the movant, as well as sanctions aimed at insuring compliance. *Dystar Corp. v. Canto*, 1 F. Supp.2d 48, 58-59 (D. Mass. 1997) (Saris, J.) (allowing reimbursement of attorney's fees for bringing action for contempt); *Brine, Inc. v. STX, L.L.C.*, 367 F. Supp.2d 61, 71 (D. Mass. 2005) (Gorton, J.) (assessing financial penalties for contempt of injunction); *Hodgson v. Mahoney*, 460 F.2d 326, 327 (1st Cir. 1972) (affirming fine of $100 per day of noncompliance with order).

Because Amgen's actions have cost Roche thousands of dollars in attorney fees and unknown financial harm, and these actions are only the latest in a pattern of abuse by Amgen, both kinds of relief for Amgen's contempt should be applied.

1.    **Roche Should Be Compensated for Its Efforts in Combating Amgen's Violations**

Roche has expended thousands of dollars in time and expenses to combat Amgen's repeated violations of the clear terms of the Protective Order.   Roche has also suffered incalculable financial harm due to the disclosure of its trade secrets over a 2½ day period. A contempt sanction should be fashioned so as to compensate Roche for its losses.   Therefore, Roche asks that at a minimum it be compensated for its time spent in bringing this motion, moving to prevent Amgen from filing Roche's documents in the public record when they were not necessary or relevant to the disposition of the issues at hand, and opposing Amgen's motions to seal its privilege log and testimony related to Roche's motion to compel Amgen to produce documents on its privilege log on the grounds that the testimony waived the privilege. *Hodgson*, 460 F.2d at 327 (affirming awarding attorney's fees and costs in obtaining contempt order).   If the Court grants Roche's request, it will file an affidavit detailing these costs.   Additional financial penalties would also be appropriate, as remedies may be designed to put a stop to Amgen's contumacious conduct by deterring the conduct. *Hodgson*, 460 F.2d at 327 (affirming order to pay daily fine until order obeyed); *Brine, Inc*., 367 F. Supp.2d at 71 (ordering gross profit rather than net profit as a penalty from patent infringer in contempt of previous order as means to ensure infringer is deterred).

2.    **Amgen's Motion to Preclude Further Interference Should be Denied**

Amgen filed the 14 confidential Roche documents in support of Amgen's Motion to Preclude Further Interference with Third Party Discovery and Compel Production of Documents and Deposition Testimony (D.N. 378). Denial of this motion is an appropriate sanction for Amgen's violation of the Amended Protective Order. *Goya Foods, Inc.*, 290 F.3d at 77-78 (noting that district court has wide discretion in ordering sanctions).  This is particularly true

since Amgen's motion is nothing more than a fourth attempt to compel Roche to produce certain information about its ongoing clinical studies, which this Court has repeatedly ruled is not discoverable (noting in its final Order that "Hoffman-La Roche's Position is Correct").  See Orders dated December 29, 2006, January 22, 2007, and March 2, 2007.  Amgen's fourth motion, although styled as a motion to prevent interference with third party discovery, is in reality another version of Amgen's prior motions to compel and was filed after the court-ordered deadline of April 2, 2007 for filing motions to compel relating to fact discovery.  It should be denied.

### 3.     Amgen Should Be Ordered to Limit the Number of its Attorneys with Access to Confidential Information, or in the Alternative, Be Subject to Severe Penalties for Future Violations

Given that the Court has a wide latitude in coercing future compliance from Amgen, the Court is also justified in pursuing sanctions against Amgen's attorneys to that end.  *Goya Foods, Inc.*, 290 F.3d at 77-78 (finding that since district court brings contempt action under inherent power, court has wide discretion in sanctions).  Currently, Amgen has 51 attorneys of record in this case, 40 of which are admitted *pro hac vice*, from four law firms.  Roche asks, in order that future violations may be averted, that the Court reduce the number of Amgen attorneys authorized to have access to Roche's confidential material and remove Amgen's in-house counsel from the list of authorized representatives under the Amended Protective Order since they have controlled the conduct of the litigation and are most likely to misuse Roche's confidential information.  In the alternative, Roche asks that the Court impose a severe penalty upon Amgen for any future violations of the Order, so as to ensure Amgen's future compliance.

13

IV.     CONCLUSION

Amgen has shown that it has little regard for its duties under the Amended Protective Order that governs its conduct with respect to confidential information. Amgen's disregard of its responsibilities has resulted in untold financial losses to Roche. In order to compensate Roche for Amgen's repeated violations and to prevent future breaches, the Court should apply contempt sanctions against Amgen.

Dated:  April 17, 2007                     Respectfully submitted,

Boston, Massachusetts                      F. HOFFMANN-LA ROCHE LTD,
                                           ROCHE DIAGNOSTICS GMBH, and
                                           HOFFMANN-LA ROCHE INC.

                                           *By their attorneys,*


                                            /s/ Julia Huston
                                           Julia Huston (BBO# 562160)
                                           Lee Carl Bromberg (BBO# 058480)
                                           Keith E. Toms (BBO# 663369)
                                           Nicole A. Rizzo (BBO# 663853)
                                           BROMBERG & SUNSTEIN LLP
                                           125 Summer Street
                                           Boston, MA 02110
                                           Tel. (617) 443-9292

                                           Leora Ben-Ami (*pro hac vice*)
                                           Mark S. Popofsky (*pro hac vice*)
                                           Patricia A. Carson (*pro hac vice*)
                                           Thomas F. Fleming (*pro hac vice*)
                                           Howard S. Suh (*pro hac vice*)
                                           Peter Fratangelo (BBO# 639775)
                                           Vladimir Drozdoff (*pro hac vice*)
                                           David L. Cousineau (*pro hac vice*)
                                           KAYE SCHOLER LLP
                                           425 Park Avenue
                                           New York, New York 10022
                                           Tel. (212) 836-8000

14

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.


/s/ Julia Huston


3099/501  652730.1