UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) CIVIL ACTION No.: 05-CV-12237WGY<br>F. HOFFMANN-LA ROCHE LTD, )<br>ROCHE DIAGNOSTICS GmbH, )<br>and HOFFMANN-LA ROCHE INC. )<br>)<br>Defendants. )<br>) | |

# Exhibit B in Support of Defendants' Motion to Enforce the Court's March 27, 2007 Order and to Compel Deposition Testimony Under Rule 30(b)(6)

Roche is filing this document in the public record pursuant to paragraph 14 of the Protective Order. Amgen did not file a motion as to why the information is confidential trade secret material within the (4) Court day period of Roche's in camera submission, as required by paragraph 14.

Dated: April 20, 2007
Boston, Massachusetts

/s/ Keith E. Toms_____
Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292
ktoms@bromsun.com

03099/00501 652200.2

3/29/2007 Watt, Stuart

Exhibit B

```
1              UNITED STATES DISTRICT COURT
2                DISTRICT OF MASSACHUSETTS
3
        ------------------------------x
4    AMGEN INC.,                      )
                                      )
5                                     )
                    Plaintiff,        )
6                                     )
              vs.                     ) No. 05 Civ. 12237 WGY
7                                     )
                                      )
8    F. HOFFMAN-LA ROCHE LTD,         )
     ROCHE DIAGNOSTICS, GmbH, and     )
9    HOFFMAN-LA ROCHE INC.,           )
                                      )
10                                    )
                    Defendants.       )
11      ------------------------------x
12
13
14
15             CONFIDENTIAL VIDEOTAPED
16             DEPOSITION OF STUART WATT
17             Westlake Village, California
18               Thursday, March 29, 2007
19
20      (This transcript contains testimony
        designated confidential as per Section 5(c)
21      of the Amended Protective Order.  Please
        treat the entire transcript in accordance
22      with the protective order.)
23
24      Reported By Susan A. Sullivan, CSR No. 3522
        PRS Job No. 118-372540
25
```

1

```
1            MR. FLOWERS:  Kevin Flowers from the law
2       firm Marshall, Gerstein & Borun in Chicago,
3       representing Amgen and the witness, Mr. Watt.
4       With me today is Erica Olson from Amgen.
5            THE VIDEOGRAPHER:  Thank you.
6                 Would the court reporter please swear
7       in the witness.
8
9   STUART WATT,
10      called as a witness, having been duly sworn by
11      the court reporter, was examined and testified
12      as follows:
13
14           THE VIDEOGRAPHER:  Please begin.
15           MR. SUH:  Mr. Flowers, did you want to make
16      a statement on the record?
17           MR. FLOWERS: Thank you, Mr. Suh, yes.
18                As we discussed before we went on the
19      record, Mr. Watt is prepared today to testify
20      on behalf of Amgen in response to Roche's first
21      notice of 30(b)(6) deposition on Topics 2, 26
22      and 27, and is also prepared to testify on
23      behalf of Amgen as to Roche's continued notice
24      of 30(b)(6) deposition as to Topic 2.
25           MR. SUH:  For the record, I would like to
```

1  note that Roche was aware that Mr. Watt was
2  going to be designated as a witness with
3  respect to Topic 2 of Roche's first notice of
4  30(b)(6) deposition.  However, with respect to
5  the remaining topics, based upon my knowledge
6  of the correspondence, this was not made aware
7  to us until literally a few minutes before the
8  deposition.  We are prepared to proceed with
9  the deposition with respect to Topic 2 of the
10 first notice and during a subsequent break we
11 will determine whether we are ready to actually
12 take Mr. Watt with respect to the remaining
13 topics.
14
15                  EXAMINATION
16 BY MR. SUH:
17     Q    Good morning, Mr. Watt.
18     A    Good morning.
19     Q    Mr. Watt, can you please tell me what your
20 current position is at Amgen.
21     A    Yes.  My current position is I'm a
22 vice-president in the law department and Chief
23 Intellectual Property Officer.
24     Q    Now, Mr. Watt, you've had your deposition
25 taken before, correct?

1  listed among the patents in the second paragraph?

2     A   I believe that you are correct, it is not
3  listed.

4     Q   Do you have an understanding as to whether
5  Amgen is relying upon Section 121 in response to a
6  double patent attack on the '868 patent?

7         MR. FLOWERS: I will instruct Mr. Watt, I
8     believe that invades the attorney-client
9     privilege and attorney work product doctrine
10    protection and I will instruct Mr. Watt not to
11    answer that question on that basis.

12        MR. SUH: I think it is discoverable
13    information to the extent that he was asked in
14    a discovery request. I know the parties have
15    been trying to negotiate supplemental
16    responses. To the extent that the witness
17    today can actually provide supplementation
18    through discoverable subject matter, I would
19    like to get that information.

20        MR. FLOWERS: I understand what you may
21    like to get but my instruction stands. Mr.
22    Watt is not here to provide an explanation of
23    all of Amgen's or any of Amgen's contentions in
24    the litigation, he is here as a fact witness.
25    If there's a 30(b)(6) topic that Roche

1	doctrine, protected information. I will
2	instruct Mr. Watt not to answer.
3	Q	Actually it is a yes-or-no answer.
4	A	I don't recall a question in those terms,
5	no.
6	Q	Have there been any meetings at Amgen
7	whereby the discussion over the length of Amgen's
8	EPO patent was the topic?
9	A	Not to my knowledge.
10	Q	If you look at a couple paragraphs below
11	Mr. Sharer's statement, there's a quote there and it
12	says, "'Because we lacked protection for many of our
13	inventions, we pushed hard to get those patents
14	issued as soon as possible,' Stuart Watt, Amgen's
15	chief patent counsel, said in a written statement."
16		Do you see that?
17	A	I see that, yes.
18	Q	Is this a statement you provided to the New
19	York Times?
20	A	I believe so, yes.
21	Q	Can you elaborate on what you meant by this
22	statement?
23	A	Well, we for years in the patent office
24	tried to get our patents issued and there's as
25	presented in the file histories of our various

1        THE VIDEOGRAPHER:  This is the end of Tape
2    Number 1 of the videotaped deposition of Stuart
3    Watt.  The time on the video monitor is 10:07
4    a.m.
5        (Recess)
6        THE VIDEOGRAPHER:  This is the start of
7    Tape Number 2 of the videotaped deposition of
8    Stuart Watt.  Going back on the record, the
9    time on the video monitor is 10:17 a.m.
10   BY MR. SUH:
11   Q    Mr. Watt, Exhibit 6 is the prosecution file
12   history of the '868 patent.  Were you involved at
13   one point in the prosecution of the '868 patent?
14   A    Yes.
15   Q    Okay.  And by virtue of your involvement in
16   the prosecution of the '868 patent, did you become
17   familiar with the file history?
18        MR. FLOWERS:  Objection; vague and
19   ambiguous.
20   A    Well, I certainly was familiar with the
21   parts that I was involved with.  If you are asking
22   did I go back and look at the complete file history
23   from the beginning, I don't remember that I did.  I
24   may have, but I don't remember that I did.
25   Q    Okay.  And I'm just going to ask you a

1    Are you referring to party Lin or to Dr. Lin
2    himself?
3        A    It is the same person.
4        Q    You are absolutely right, it is the same
5    person.
6             Do you recall whether Dr. Lin had any
7    involvement in the preparation of this document?
8             MR. FLOWERS:  Objection; vague and
9        ambiguous.
10       A    This document was filed before I joined
11   Amgen so I wouldn't know whether Dr. Lin had any
12   involvement in its preparation.
13       Q    Okay.  I want to direct your attention to
14   Page 24 of this document and there's a heading
15   there, B, "Summary of Lin's Position."  Do you see
16   that?
17       A    Yes.
18       Q    And under small (iii) on Page 25, I'm going
19   to read this into the record.  It states, "While the
20   count is directed to a process for preparing in vivo
21   biological active EPO using a mammalian host cell
22   transfected or transformed with an isolated DNA
23   sequence in coding human EPO, and the litigation was
24   directed to the purified and isolated DNA sequence
25   and host cells transfected or transformed thereby,