UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) CIVIL ACTION No.: 05-CV-12237WGY | |
| F. HOFFMANN-LA ROCHE LTD, | ) | |
| ROCHE DIAGNOSTICS GmbH, | ) | |
| and HOFFMANN-LA ROCHE INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit B in Support of Defendants' Motion to Enforce the Court's March 27, 2007 Order and to Compel Deposition Testimony Under Rule 30(b)(6)

Roche is filing this document in the public record pursuant to paragraph 14 of the Protective Order. Amgen did not file a motion as to why the information is confidential trade secret material within the (4) Court day period of Roche's in camera submission, as required by paragraph 14.

Dated: April 20, 2007
      Boston, Massachusetts

/s/ Keith E. Toms_____
Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292
ktoms@bromsun.com

03099/00501 652200.2

1   it is evident that these are only different
2   manifestations of the same invention as acknowledged
3   by Fritsch, et al. in their Motion Q herein," and I
4   will stop there.
5            Based upon this particular statement was it
6   Amgen's position that the count that was at issue in
7   this particular interference and the purified and
8   isolated DNA sequences in host cells that were at
9   issue in a District Court litigation were only
10  different manifestations of the same invention?
11           MR. FLOWERS:  Objection; vague and
12      ambiguous, lacks foundation, outside the scope
13      of the 30(b)(6) document.
14       A    I don't understand this document to say
15  that, no.
16       Q    What do you understand that particular
17  statement to mean?
18       A    I understand it to mean that a -- well,
19  first of all, the quote is from Fritsch so it is
20  using Fritsch's words and it is saying that they are
21  derived from consistent inventive actions.
22       Q    Did you say derived from consistent --
23  sorry.
24           Can you read the answer back to me.
25           (Record read)

1    Q    Derived from consistent inventive actions.
2    Let's take it one at a time.
3         Mr. Watt, it does say that this statement
4    was acknowledged by Fritsch, et al., but hasn't
5    Amgen actually adopted this statement by putting it
6    as part of their summary of Dr. Lin's position for
7    reference of this interference?
8         MR. FLOWERS:  Objection; vague and
9         ambiguous, lacks foundation, outside the scope
10        of 30(b)(6) topics, and argumentative.
11   A    I don't think I would characterize it that
12   way.
13   Q    Isn't Amgen arguing the same position that
14   Fritsch acknowledged?
15        MR. FLOWERS:  Same objections.
16   A    Amgen is using Fritsch's position against
17   Fritsch, yes.
18   Q    Yes.  And Amgen is using Fritsch's position
19   that the count to be '097 and the DNA and host cell
20   claims of the District Court litigation were
21   different manifestations of the same invention;
22   isn't that correct?
23        MR. FLOWERS:  Objection; vague and
24        ambiguous, lacks foundation, outside the scope
25        of the 30(b)(6) topics.

```
 1      A    Well, the document says what it says and I
 2   think I gave you my understanding.  I was, you know,
 3   not involved in its drafting, I was not there, and I
 4   can only tell you how I read the document today.
 5      Q    Sure.  I believe that the words you had
 6   used is that this particular statement was
 7   consistent, it is derived from consistent inventive
 8   actions.  Right?
 9           MR. FLOWERS:  Objection; mischaracterizes
10       his prior testimony.  That's not what he said.
11      A    I'm not certain that's what I said and now
12   that you repeat it back to me, I can understand this
13   is not very clear in itself.
14      Q    And I apologize, you know.  It is not my
15   intention to mischaracterize your testimony, but
16   perhaps I could ask you again, with respect to this
17   particular statement on the top of Page 26 where
18   Amgen is stating "It is evident that these are only
19   different manifestations of the same invention,"
20   what did Amgen mean when it said that?
21           MR. FLOWERS:  Same objections.
22      A    Well, it is hard for me to give a meaning
23   when Amgen wrote the document or Amgen submitted the
24   document --
25      Q    What does it mean to you?
```

1  Q  Okay. So here Amgen is -- is it your
2  understanding that Amgen by this statement is saying
3  that the whole purpose of the claims of the '008
4  patent is to actually express and to make in vivo
5  biologically active human EPO?
6       MR. FLOWERS: Objection; vague and
7       ambiguous, lacks foundation. It is also
8       outside of the 30(b)(6) document.
9  A  I see the words that you have called my
10 attention to. I'm not certain I can give them any
11 more meaning other than just what they say. So if
12 you are asking me to interpret this, I'm not certain
13 I can add much to this.
14 Q  You cannot add much to it?
15 A  No.
16 Q  Okay.
17 A  I don't think so.
18 Q  Well, let's try the next statement. It
19 says, "Stated otherwise, the process language of the
20 Lin patent claims at issue in the litigation
21 ('encoding human EPO') is, for all intents and
22 purposes, a description of the present count," and
23 stop there.
24      Can you tell me what your understanding of
25 this statement is?

1   A   I don't have much understanding of this, it
2   doesn't make much sense to me because the process
3   claims were not at issue in the litigation.
4   Q   That's right. In fact, when it is talking
5   about the litigation, it is talking about the '008
6   patent, correct?
7   A   That's what I understand it is referring
8   to. Since I wasn't involved in drafting this it
9   could be referring to something else, but I
10  understand it to be referring to the District Court
11  litigation on the '008 patent.
12  Q   That's right.
13      And doesn't this statement indicate that
14  Amgen is arguing that the encoding human EPO
15  language within the DNA and host cell claims of the
16  '008 patent is for all intents and purposes a
17  description of the process for making recombinant
18  EPO that is the subject of the '097 interference?
19      MR. FLOWERS: Objection; vague and
20      ambiguous, lacks foundation, outside the scope
21      of 30(b)(6) topics. Also appears to call for
22      Mr. Watt to formulate a legal opinion as he
23      sits here which I would instruct you not to do,
24      Mr. Watt.
25  A   I would not understand the language to

1  sitting here today?
2       MR. FLOWERS: Objection; vague and
3   ambiguous, lacks foundation, outside the scope
4   of the 30(b)(6). Also I would caution Mr. Watt
5   not to formulate legal opinions on the spot.
6       A   Given the factual record that was found in
7   the District Court action, Lin was certainly the
8   first to clone the gene and the first to express the
9   recombinant EPO product.
10      Q   I understand. But is that your
11  understanding of what this statement is saying?
12      MR. FLOWERS: Same objections.
13      A   Well, I understand the statement. Again,
14  perhaps I should put in the qualifiers that we had
15  put in place with all these other statements that we
16  have been talking about that occurred prior to my
17  joining Amgen, but -- so I'm looking at this from a
18  perspective of years later as opposed to being
19  involved at the time and understanding what the
20  intent was at the time. My understanding of this
21  statement is based on that factual record and I
22  think the District Court decision was cited and
23  perhaps even submitted with this. So, yes, I think
24  it is referring to those factual findings that were
25  included in the District Court decision.

1   the '080 patent claims, either literally or under
2   the doctrine of equivalence.
3       Q   How does it meet it literally?
4       A   Well, there's several limitations in the
5   claim so it -- I probably can't recall all of them
6   but let me try.
7       Q   Sure.  Maybe I could short circuit this.
8           With respect to the limitation that deals
9   with the 166 amino acid protein, is it your
10  understanding that Roche's product meets that
11  limitation?
12      A   If Roche's product included EPO having 166
13  amino acids, even to a small degree, then it would
14  be our position that it literally meets that
15  limitation.
16      Q   Does Amgen have any evidence to date to
17  suggest that Roche's MIRCERA product contains 166
18  amino acid protein?
19      A   I'm not under the protective order so if
20  Amgen does or Amgen's counsel have that, then they
21  have not shared it with me.
22      Q   Okay.
23      A   But I can -- without that knowledge, it
24  would be our assertion that if it did, that they
25  would literally cover, the claims would literally

```
1    issue, it is unknown if they will extend patent
2    protection beyond 2004."
3         Do you see that?
4         A    Yes, I do.
5         Q    Can you tell me what your understanding of
6    that particular statement is?
7              MR. FLOWERS:  Objection; lacks foundation.
8         A    My understanding is that it is not a very
9    well informed statement.
10        Q    What does that mean?
11        A    That means whoever wrote this did not
12   understand patent law and I guess that's what --
13   that's what they're indicating by unknown because
14   they didn't know, but I certainly wouldn't agree
15   with the statement if that's what you are asking me.
16             MR. SUH:  Okay.  All right.  Subject to our
17        reservations that the additional 30(b)(6)
18        topics were provided to us in too short of
19        notice, I think that we're at the end of the
20        depositions today.
21             MR. FLOWERS:  Let me just take a couple
22        minutes, take a couple minutes to make sure
23        that we don't have any questions.
24             MR. SUH:  Sure.
25             THE VIDEOGRAPHER:  Going off the record,
```