# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 05-12237 WGY |
| v. | ) | |
| | ) | |
| | ) | |
| F. HOFFMANN-LA ROCHE | ) | |
| LTD., a Swiss Company, ROCHE | ) | |
| DIAGNOSTICS GmbH, a German | ) | |
| Company and HOFFMANN-LA ROCHE | ) | |
| INC., a New Jersey Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |


**MEMORANDUM IN SUPPORT OF PLAINTIFF AMGEN INC.'S
MOTION TO STRIKE ROCHE'S NON-INFRINGEMENT, INVALIDITY, AND
INEQUITABLE CONDUCT ALLEGATIONS DISCLOSED AFTER THE CLOSE OF
FACT DISCOVERY OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO
SUPPLEMENT AMGEN'S EXPERT REPORTS AND MOTION FOR PROTECTIVE
ORDER TO POSTPONE DEPOSITIONS OF CERTAIN WITNESSES**

682165_1

Dockets.Justia.com

## TABLE OF CONTENTS

**PAGE NO.**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT .....................................................................................................3

      A.      ROCHE WITHHELD ITS NON-INFRINGEMENT ALLEGATIONS AND BASES UNTIL SIX
            WEEKS AFTER THE CLOSE OF FACT DISCOVERY. ....................................................3

      B.      ROCHE'S NEWLY DISCLOSED NON-INFRINGEMENT ARGUMENTS HAVE CREATED
            UNFAIR SURPRISE TO AMGEN. ..................................................................................6

      C.      ROCHE HAS DISREGARDED THE COURT'S SCHEDULING ORDER BY SUBMITTING
            UNTIMELY SUPPLEMENTAL EXPERT REPORTS CONCERNING INVALIDITY AND
            INEQUITABLE CONDUCT WITHOUT LEAVE OF THE COURT......................................7

      D.      PREJUDICE TO AMGEN SHOULD BE REMEDIED BY STRIKING ROCHE'S UNTIMELY
            ARGUMENTS, OR PERMITTING AMGEN TO SUBMIT SUPPLEMENTAL EXPERT
            REPORTS WITH ADJUSTMENT TO THE EXPERT DISCOVERY SCHEDULE...................10

III.    CONCLUSION..................................................................................................13

# TABLE OF AUTHORITIES

**PAGE NO.**

**Cases**

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, 1996 WL 680243 (N.D. Ill. 1996) .... 11

*Matsushita Elec. Indus. Co., Ltd. v. Cinram Intern., Inc.*,
   299 F.Supp.2d 348 (D. Del. 2004) ................................................................................. 10, 11

*Thimbault v. Square D Co.*,
   960 F.2d 239 (1st Cir. 1992) ............................................................................................ 12

**Statutes**

35 U.S.C. § 271(g) ................................................................................................................ 1, 4, 5

**Rules**

FED. R. CIV. P. 37(b)(2) ........................................................................................................ 12

FED. R. CIV. P. 16(b) ............................................................................................................. 11

FED. R. CIV. P. 16(f) ............................................................................................................. 12

FED. R. CIV. P.  26(e) ............................................................................................................ 12

## I.    INTRODUCTION

Long before this case was filed, Roche was familiar with Dr. Lin's patents, and thoroughly familiar with the characteristics of its own peg-EPO.  Moreover, Roche has been in possession of more than a million pages of Amgen's documents, including its patent and prosecution history documents, for more than a year now.  With that knowledge, Roche has long-known the factual bases for its non-infringement defenses, including any arguments concerning why Roche's imported peg-EPO product is allegedly materially changed from the product of Amgen's patented processes for making recombinant EPO.  But instead of timely disclosing its non-infringement allegations, including its basis for asserting that its product is allegedly materially changed, Roche hid its allegations.

At the outset of fact discovery, Amgen served contention interrogatories seeking to learn all of Roche's non-infringement contentions, including any allegation that its accused product is "materially changed" under 35 U.S.C. § 271(g), and the factual bases for those contentions. Initially, Roche provided no substantive response concerning many of its non-infringement and materially changed product allegations.  On the very last day of fact discovery, only four days before Amgen's infringement expert reports were due, Roche finally served interrogatory responses providing a number of new contentions concerning non-infringement and "material change."  By submitting these disclosures so late, Roche denied Amgen the opportunity to take any fact discovery concerning those new defenses and forced Amgen to spend four days scrambling to respond to Roche's allegations in Amgen's initial expert reports due on April 6.

Now, seven weeks after the close of fact discovery, and more than four months after Amgen's interrogatory responses came due, Roche disclosed for the first time numerous previously undisclosed non-infringement contentions in its May 11 expert rebuttal reports, including over a dozen new arguments concerning how Roche's imported peg-EPO product is

allegedly materially changed from the product of Amgen's patented processes. Apparently conceding that it has not previously disclosed these allegations to Amgen, it concurrently supplemented its interrogatory responses to reflect these allegations.

Amgen now moves to preclude Roche from presenting these untimely non-infringement contentions based upon Roche's failure to provide discovery on these contentions and their bases during the fact discovery period. Roche has improperly used the expert discovery period to interject entirely new arguments that should have been disclosed in response to Amgen's interrogatories.

Roche's new arguments prejudice Amgen not only by improperly expanding the set of issues in dispute at trial, but also by greatly constricting Amgen's opportunity and time to respond to them. By raising these new arguments, for the first time, in its rebuttal expert reports, Roche denied Amgen the opportunity to address these contentions in its expert reports on infringement. Because this Court has made clear that expert testimony will be strictly limited to the contents of the expert reports, Amgen is severely prejudiced by this gamesmanship.

Even if the Court grants Amgen leave to supplement its reports based on Roche's new defenses, without further relief, Amgen will be forced to preserve its rebuttal arguments and work with experts to draft supplemental expert reports to address the new allegations at a time when Amgen and Roche are in the midst of depositions of over 50 experts that must occur in a period of nineteen business days. To remedy the prejudice, Amgen requests that the Court strike Roche's belatedly disclosed non-infringement contentions. If Roche's newly disclosed expert opinions are not stricken, then Amgen requests the opportunity to file supplemental expert reports to address these new allegations, and a modest adjustment to the schedule for expert depositions.

Roche's non-infringement allegations are only the latest instance of Roche's disregard of the Court's Scheduling Order.  Just as it has been long aware of these allegations, Roche has also long been aware of the prior art and the prosecution history of the patents-in-suit, having begun to prepare for this litigation in 2001.  Consistent with its tactics of delay and obfuscation, Roche also failed to respond to several of Amgen's contention validity and enforceability interrogatories and held back many of its invalidity and inequitable contentions until after the close of fact discovery.

Four weeks after the close of fact discovery and after the deadline for initial expert reports, Roche served a series of supplemental reports on inequitable conduct and invalidity issues without leave of the Court or the consent of Amgen.  For the same reasons that the Court should strike Roche's untimely non-infringement contentions, the Court should also strike Roche's untimely invalidity and inequitable conduct supplemental reports.

## II.    ARGUMENT

### A.    ROCHE WITHHELD ITS NON-INFRINGEMENT ALLEGATIONS AND BASES UNTIL SIX WEEKS AFTER THE CLOSE OF FACT DISCOVERY.

Roche has had more than ample time to prepare its non-infringement defenses. According to Roche's privilege log, Roche has been preparing for this litigation since at least 2001.[1]  Amgen filed its complaint in this action on November 9, 2005.  Since that time, Roche

---

[1]  Declaration of Mario Moore in Support of Plaintiff Amgen Inc.'s Motion to Strike Roche's Non-Infringement, Invalidity and Inequitable Conduct Allegations Disclosed After the Close of Fact Discovery or, in the Alternative, Motion for Leave to Supplement Amgen's Expert Reports and Motion for Protective Order to Postpone Depositions of Certain Witnesses (hereafter "Moore Decl.") Exh. 1 (Roche's Defendants' Privilege Log - Volume 9, April 17, 2007, p. 238, RB00598354-RB00598356 (06/14/2000 Confidential communication reflecting legal advice of counsel re: CERA patent litigation, AC, WP, from Leora Ben-Ami*, Pat Carson* to George Johnston*)); Moore Decl., Exh. 2 (Defendants' Privilege Log – Volume 5, April 2, 2007, p. 3527, RNED 07535143-201 (10/20/2000 Draft document reflecting legal advice re: CERA patent litigation. AC; WP), p. 160, RBED 07699009-010 (02/08/2001 Confidential meeting

had more than a year to develop its non-infringement arguments and its affirmative defenses before fact discovery commenced in November 2006. Additionally, in the summer of 2006, Amgen produced well over 1,000,000 pages of its documents to Roche in the related International Trade Commission action. Since non-infringement relates to characteristics of Roche's products rather than materials or products of third parties or Amgen, the information relating to Roche's non-infringement defenses are uniquely within Roche's possession. Therefore, Roche had been able to prepare its non-infringement defenses during the entire period of this litigation without any need for discovery from Amgen.

On December 11, Amgen served interrogatories seeking the full factual bases for Roche's affirmative defenses, counterclaims, and non-infringement positions.[2] Interrogatory No. 2 required Roche to "state, on a limitation-by-limitation basis, the factual basis for each contention that MIRCERA does not embody each such claim limitation," and "identify all evidence on which you rely in support of each contention . . . including all documents, tests, experiments, and/or data upon which you rely in support of each contention." In addition, Interrogatory No. 3 sought the bases for Roche's section 271(g) defense, including "the factual basis for any contention that MIRCERA is 'materially changed' from the product described in such claim."

Roche initially failed to substantively respond to Amgen's December 11 interrogatories and, after Amgen noted the inadequacy of Roche's responses,[3] repeatedly supplemented its

---

minutes reflecting legal advice re: Amgen patent lawsuit prepared in anticipation of litigation. AC; WP), p. 10, RBED 07687678-718 (03/30/2001 Draft document reflecting legal advice re: CERA patent litigation prepared in anticipation of litigation. AC; WP)).

[2] Moore Decl., Exh. 3 (Amgen's First Set of Interrogatories, dated December 11, 2006).

[3] Docket No. 318, Exh. 3 (Letter from D. Fishman to P. Carson, dated January 17, 2007); Docket No. 318, Exh. 4 (Letter from D. Fishman to P. Carson, dated January 19, 2007); Docket No. 318, Exh. 5 (Letter from D. Fishman to T. Fleming, dated February 14, 2007).

responses. Roche responded to the interrogatories concerning non-infringement and its section

271(g) defense on four different occasions between January 11, and April 2, the last day of fact

discovery.[4] Unfortunately, Roche's responses failed to include most of its detailed substantive

allegations of non-infringement and section 271(g) materially changed defenses until its

supplementation on the last day of fact discovery, April 2. The delay effectively foreclosed any

opportunity for Amgen to seek fact discovery concerning these newly disclosed allegations.

In reliance on Roche's last minute discovery responses regarding non-infringement and

"materially changed" product, Amgen submitted its infringement expert reports on which it bears

the burden of proof on April 6. Amgen sought to address each contention raised in Roche's

interrogatory response and sought to anticipate other possible Roche non-infringement

arguments that Roche had not yet raised.

But it was impossible for Amgen to anticipate all of Roche's not-yet disclosed arguments.

On May 11, in the guise of rebuttal expert reports, Roche served five expert reports regarding

non-infringement that included entirely new non-infringement allegations and bases ——

allegations and bases not before disclosed by Roche in responses to Amgen's discovery

requests.[5] Specifically, the expert reports for Drs. Flavell, Klibanov, Jorgenson, Imperiali,

Cords, Mayersohn and Longmore include eight new arguments concerning why peg-EPO is

"materially changed" from the product claimed in Amgen's asserted claims, and eight additional

---

[4] Moore Decl., Exh. 4 (Roche's Responses to Amgen's First Set of Interrogatories, dated January 11, 2007); Moore Decl., Exh. 5 (Roche's First Supplemental Responses to Amgen's First Set of Interrogatories, dated February 9, 2007); Moore Decl., Exh. 6 (Roche's Second Supplemental Responses to Amgen's First Set of Interrogatories, dated February 26, 2007); Moore Decl., Exh. 7 (Roche's Third Supplemental Responses to Amgen's First Set of Interrogatories, dated April 2, 2007); Moore Decl., Exh. 8 (Roche's Fourth Supplemental Responses to Amgen's First Set of Interrogatories, dated April 20, 2007).

[5] Appendix A (listing new arguments in expert reports of Drs. Jorgenson, Longmore, Klibanov, Flavell, Cords, Mayersohn, and Imperiali).

arguments for why the claim language of the asserted claims does not read on the accused product peg-EPO.

For example, in his May 11 expert reports, Roche expert Dr. Flavell argues that peg-EPO does not infringe because the EPO it contains is not made from cells that are "transformed or transfected with isolated EPO DNA."[6] Similarly, four of Roche's experts argue that peg-EPO does not infringe because it is not an obligate glycoprotein, and Roche goes so far as to offer new experiments as evidence.[7] The factual bases for these arguments were not disclosed in Roche's multiple interrogatory responses and supplementations. Roche does not and cannot point to any new arguments in Amgen's April 6 infringement expert reports that justify Roche's ability to assert these sixteen new non-infringement arguments. All of those arguments are predicated on facts Roche has been aware since before discovery commenced.

### B. ROCHE'S NEWLY DISCLOSED NON-INFRINGEMENT ARGUMENTS HAVE CREATED UNFAIR SURPRISE TO AMGEN.

If Roche had timely responded to Amgen's interrogatories, Amgen could have addressed Roche's latest non-infringement arguments when Amgen submitted its expert reports concerning infringement on April 6. Even if Roche had responded after the close of discovery and after the deadline for submission of the April 6 reports, Amgen could have submitted expert reports prior the commencement of expert depositions and well before summary judgment briefing.

By submitting belated disclosures for the first time on May 11 in six separate expert reports, Roche has forced Amgen to respond with supplemental expert reports in the midst of a densely packed set of expert depositions and on the eve of summary judgment motions. Over

---

[6] Moore Decl., Exh. 9 (Flavell Rebuttal Report at ¶¶ 61-75).

[7] Moore Decl., Exh. 9 (Flavell Rebuttal Report at ¶¶ 165-179); Moore Decl., Exh. 10 (Imperiali Rebuttal Report at ¶¶ 112-44, 155-61, 163, 166, 169, 173, 178-82, 190); each citing to the Cords Rebuttal Report.

fifty experts are scheduled to be deposed in the four week period between May 15 and June 8.

Summary judgment motions on all issues are due on June 8.  In this context, Roche's new

allegations are so extensive that they would likely require supplemental expert reports from at

least five different Amgen experts to address and would require two to three weeks to complete,

assuming Amgen's experts and lawyers were not consumed with taking and defending 50 expert

depositions and preparing summary judgment motions.  Efforts to prepare these new

supplemental reports will likely prevent depositions of those experts from going forward as

scheduled.

### C.   ROCHE HAS DISREGARDED THE COURT'S SCHEDULING ORDER BY SUBMITTING UNTIMELY SUPPLEMENTAL EXPERT REPORTS CONCERNING INVALIDITY AND INEQUITABLE CONDUCT WITHOUT LEAVE OF THE COURT.

Roche's untimely disclosure of non-infringement contentions are hardly an isolated

incident.  Without leave of Court or Amgen's consent, Roche served a procession of six

additional expert reports on invalidity and inequitable conduct issues – issues on which Roche

bears the burden of proof – a month after Roche's expert reports were due and a week (in one

case only three days) before Amgen's rebuttal reports came due.

Roche justifies its unauthorized supplemental reports based on the fact that the Court

allowed Roche to supplement its responses to Amgen's Interrogatory Nos. 9-11 (regarding

invalidity).[8]  However, nothing in the Court's order permitted Roche to serve supplemental

expert reports and Roche never sought relief from the Court to allow it to supplement its initial

expert reports of April 6.  Moreover, the Court's order permitting Roche to supplement its

responses to Amgen's Interrogatories Nos. 9-11 was predicated on Roche's representation that it

---

[8]  Moore Decl., Exh. 11 (Letter from T. Fleming to K. Carter, dated May 23, 2007); Moore Decl., Exh. 12 (Letter from T. Fleming to D. Fishman, dated May 4, 2007).

required supplementation to address the Court's claim construction ruling.[9]  Yet, most of

Roche's supplemental expert reports are not even tangentially related to the Court's claim

construction.

In fact, of Roche's six supplemental reports, only the Flavell and Spinowitz supplemental

reports purport to have anything to do with the Court's claim construction in this case.  But upon

review, even these reports, while referencing such construction, relate to arguments that should

have been raised in Roche's moving reports.  For example, Dr. Flavell argues that Amgen's

claims are indefinite.  Plainly, an indefiniteness attack — which asserts that a claim term has no

meaning — is not contingent on a claim construction.  Similarly, Dr. Spinowitz's prior art

assertions, presumably based on the Court's adoption of Roche's proposed construction of

"therapeutically effective amount," a construction that Amgen conceded in its opening *Markman*

briefing would be applied unless its Supreme Court petition was successful, should have also

been raised in its Opening Reports.

The other four supplemental expert reports (Kadesch Supplemental Report, Lowe

Supplemental Report, Sofocleous Supplemental Report, and Lowe Second Supplemental Report)

do not even purport to rely on the Court's claim construction ruling in this case and are simply

Roche's attempt to get another bite at the apple.

For example, the Kadesch Supplemental Report is predicated on claim terms

("transcription control sequences" and "capable upon growth in culture") that were not the

subject of claim construction in this case.  In fact, Dr. Kadesch acknowledges that he is relying

on the Court's published decision *Amgen v. TKT* from 2001 and for his supplemental opinions.

---

[9] Docket No. 335 (Roche's Opposition to Amgen's Motion to Compel Responses to
Interrogatories Nos. 9-11) at 9.

In other words, each of Dr. Kadesch's supplemental opinions and the bases therefore were in Roche's possession before it prepared and served its initial expert reports on April 6.

Likewise, Mr. Sofocleous's Supplemental Report is in further support of Roche's allegation of inequitable conduct and based on the prosecution history of the patents-in-suit. Roche's allegations regarding Amgen's conduct during prosecution are not reasonably related to the Court's claim construction ruling here.

Finally, Lowe's first and second Supplemental Reports are not predicated on claim construction in the slightest. While Dr. Lowe offers new opinions based on new law (the *KSR v. Teleflex* decision) and a belated production of documents from Genentech, Roche never sought leave to supplement nor did it ever seek Amgen's agreement in that regard. Facts and law continue to evolve in any case as it progresses towards trial. But time and resources are not limitless and eventually this case must go to trial. Roche cannot simply re-make the case schedule as it sees fit and repeatedly supplement its expert reports with no end in sight. If supplementation is warranted, a party should seek leave of the Court or agreement by opposing counsel to permit such supplementation. If a party fails to do so, supplementation should not be permitted.

In light of these untimely submissions, Amgen requested time and again that Roche withdraw its unauthorized supplemental expert reports[10] Roche has refused to do so and, instead, made clear that it believes it is free to supplement its expert reports in any way it deems appropriate and, apparently, at any time it sees fit.[11] Roche's disregard for the Court's

---

[10] Moore Decl., Exh. 13 (Letter from D. Fishman to T. Fleming, dated May 3, 2007); Moore Decl., Exh. 14 (Letter from M. Moore to T. Fleming, dated May 10, 2007).

[11] Moore Decl., Exh. 11 (Letter from T. Fleming to K. Carter, dated May 23, 2007); Moore Decl., Exh. 12 (Letter from T. Fleming to D. Fishman, dated May 4, 2007).

scheduling order has put Amgen in the untenable position of trying to prepare for and defend more than 50 expert depositions while at the same time trying to address the bevy of additional and unauthorized arguments made by Roche outside of the case schedule.

    **D.**    **PREJUDICE TO AMGEN SHOULD BE REMEDIED BY STRIKING ROCHE'S UNTIMELY ARGUMENTS, OR PERMITTING AMGEN TO SUBMIT SUPPLEMENTAL EXPERT REPORTS WITH ADJUSTMENT TO THE EXPERT DISCOVERY SCHEDULE.**

        Roche should not be permitted to unilaterally alter the Court's scheduling order to its benefit and Amgen's detriment. One extension of the expert deadline schedule was already necessary after Roche deluged Amgen with eighteen expert reports on April 6 that included a host of new issues not included in Roche's April 2 interrogatory responses concerning inequitable conduct and invalidity issues. Then, on the eve of the May 11 deadline for Amgen's submission of rebuttal expert reports, Roche submitted six supplemental expert reports between May 1 and May 8, again raising additional invalidity and inequitable issues. Again, on May 11, Roche used its rebuttal expert reports as a new opportunity to raise arguments in seven different reports that should have been disclosed earlier. If Roche is permitted to disregard the Court's Scheduling Order, Roche's pattern of unilateral extensions and supplemental expert reports will likely continue up until (and perhaps even during) trial.

        Where a defendant fails to timely disclose expert opinions and bases for non-infringement that could have been disclosed at any point in the fact discovery period, it is appropriate to the strike such untimely allegations and supporting expert disclosure.[12] As an example, in *Matsushita Elec. Indus. Co., Ltd. v. Cinram Intern., Inc*., the defendant disclosed a new theory of non-infringement in its motion for summary judgment three months after the close

---

[12] *Matsushita Elec. Indus. Co., Ltd. v. Cinram Intern., Inc*., 299 F.Supp.2d 348, 365-66 (D. Del. 2004).

of discovery and six months before trial.[13]   The Court noted that the defendant had specifically

failed to include that theory of infringement in its response on the last day of fact discovery to an

interrogatory requesting all bases for its contentions of non-infringement.[14]   Based upon the

unexcused failure to timely disclose, the Court excluded the new theory of infringement, the

expert affidavit, and the evidence relied upon.[15]   The situation here is more egregious.  Less than

four months before the running trial date, Roche has disclosed not one but sixteen new theories

of non-infringement, including eight new theories of how Roche's accused product is materially

changed.  As in *Matsushita*, the Court should strike Roche's non-infringement theories,

evidence, and factual bases that were not disclosed in Roche's interrogatory response on the last

day of fact discovery as well as the expert opinions supporting those previously undisclosed

theories.  Similarly, the Court should strike invalidity and inequitable conduct allegations that

should have been disclosed earlier in response to interrogatories and in Roche's opening expert

reports.[16]

> Where, as here, a party has repeatedly and unjustifiably ignored the Court's scheduling

order, preclusion of late disclosed allegations helps to prevent delay in the overall proceedings

resulting from the late disclosure and discourage further disregard of the Court's order that

would result in yet further delays in the schedule.[17]   The Court should use its authority under

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd*., 1996 WL 680243, *6-10 (N.D. Ill. 1996) (excluding § 112 defense because factual bases of the defense were not disclosed in response to interrogatories and were disclosed for the first time in expert reports).

[17] *Trilogy Communications, Inc. v. Times Fiber Communications, Inc*., 109 F.3d 739, 745 (Fed. Cir. 1997) ("grant of a continuance would not deter future dilatory behavior, nor serve to enforce

Rule 16(f) and 37(b)(2) to strike the late disclosed allegations contained in the paragraphs of expert reports submitted on May 11 identified in the chart attached to this motion as Appendix A.[18]

Similarly, to prevent further supplementation without leave of Court, Amgen respectfully requests that the Court strike the Supplemental Reports of Drs. Flavell, Lowe, Kadesch, and Spinowitz, the First and Second Supplemental Reports of Dr. Lowe, and the Supplemental Report of Mr. Sofocleous.

In the event that the Court denies Amgen's request to strike Roche's untimely non-infringement allegations and supplemental expert reports, Amgen seeks an amendment of the Court's schedule to provide two additional weeks for Amgen to prepare and serve responsive expert reports to address the previously undisclosed non-infringement allegations and bases and to address the additional arguments in Roche's supplemental expert reports on the issues of invalidity and inequitable conduct.  In other words, to the extent that any allegations or reports that are the subject of this motion are not stricken, Amgen seeks leave to submit supplemental reports to address those allegations.

---

local rules or court imposed scheduling orders . . . Rule 16(b) of the Federal Rules of Civil Procedure authorizes a district court to control and expedite pretrial discovery through a scheduling order, and may prohibit a party that violates a scheduling order from introducing designated matters in evidence."); *Thimbault v. Square D Company*, 960 F.2d 239, 246 (1st Cir. 1992)  (upholding preclusion of late disclosed expert opinion and noting "a continuance is often ineffectual as a sanction and unfair to both the court and the opposing party.  If continuances were granted as a matter of course for violations of Rule 26(e), the rule could always be disregarded with impunity.   Courts could not set their calendars and conscientious litigants could not count on the stability of trial dates previously established.") (internal citations omitted).

[18] *Thimbault v. Square D Company*, 960 F.2d 239, 246 (1st Cir. 1992) (upholding preclusion of late disclosed expert opinion); *Trilogy Communications, Inc. v. Times Fiber Communications, Inc*., 109 F.3d 739, 744-745 (Fed. Cir. 1997) (upholding preclusion of opinion in untimely supplemental expert reports).

Because it will require at least two weeks to submit responsive reports, Amgen further seeks leave to postpone beyond the current expert discovery period, the depositions of its experts, Drs. Berk, Bradshaw, Goldwasser, Katre, Kolodner, Kunin, Lodish, Torchilin, and Varki.  This will provide Roche the opportunity to depose each expert concerning all disclosed opinions while preventing Roche from benefiting from its late disclosure by deposing each of those Amgen experts twice – once before each expert submits their supplemental expert report and a second time after submission of their supplemental expert report.[19]

## III.    CONCLUSION

For all the foregoing reasons, Amgen respectfully requests that the Court:

- Strike the previously undisclosed non-infringement and materially changed allegations from the May 11 expert reports of Roche experts Drs. Flavell, Klibanov, Mayersohn, Imperiali, Jorgensen, Cords, and Longmore;  AND

- Strike Roche's May 1 Supplemental Reports of Drs. Flavell, Kadesch, Lowe, and Spinowitz, and Mr. Sofocleous, and the May 8 Second Supplemental Report of Dr. Lowe;

OR, in the alternative:

- Grant Amgen leave to file reports rebutting Roche's previously undisclosed non-infringement allegations two weeks from the date of the Court's order; AND

- Grant Amgen leave to file responsive expert reports to any Roche supplemental expert report; AND

- Extend the expert discovery deadline to postpone the depositions of those Amgen experts who will be submitting responsive reports.

---

[19] To the extent Roche is prepared to go forward with currently scheduled depositions of Amgen witnesses and forego deposing those experts a second time concerning supplement reports responding to Roche's new allegations, Amgen is willing to go forward rather than delay the depositions.  *See* Moore Decl., Exh. 15 (Letter from K. Carter to T. Fleming, dated May 22, 2007).

May 24, 2007

Respectfully Submitted,
AMGEN INC.,
By its attorneys,


/s/  Michael R. Gottfried

Of Counsel:

D. DENNIS ALLEGRETTI (BBO#545511)
MICHAEL R. GOTTFRIED (BBO#542156)

STUART L. WATT
WENDY A. WHITEFORD
MONIQUE L. CORDRAY
DARRELL G. DOTSON
KIMBERLIN L. MORLEY
ERICA S. OLSON
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
Telephone: (805) 447-5000

PATRICIA R. RICH (BB#640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210
Telephone:    (857) 488-4200
Facsimile:    (857) 488-4201

LLOYD R. DAY, JR. (*pro hac vice*)
DAY CASEBEER
MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014
Telephone:    (408) 873-0110
Facsimile:    (408) 873-0220

WILLIAM GAEDE III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone:    (650) 813-5000
Facsimile:    (650) 813-5100

KEVIN M. FLOWERS (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone:    (312) 474-6300
Facsimile:    (312) 474-0448

682165_1

14

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

I hereby certify that counsel for the Plaintiff has attempted to confer with counsel for the Defendants, F. Hoffman-LaRoche Ltd., Hoffman LaRoche Inc. and Roche Diagnostics GmbH, in an attempt to resolve or narrow the issues presented by this motion and that no agreement could be reached.

/s/  Michael R. Gottfried

Michael R. Gottfried

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on May 24, 2007.

/s/  Michael R. Gottfried

Michael R. Gottfried