```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS

                                    Civil Action
                                    No. 05-12237-WGY

* * * * * * * * * * * * * * * * *
                                *
AMGEN, INC.,                    *
                                *
        Plaintiff,              *
                                *
v.                              *   MARKMAN HEARING
                                *
F. HOFFMANN-LA ROCHE LTD,       *
ROCHE DIAGNOSTICS GmbH and      *
HOFFMANN-LA ROCHE, INC.,        *
                                *
        Defendants.             *
                                *
* * * * * * * * * * * * * * * * *

         BEFORE:  The Honorable William G. Young,
                  District Judge

APPEARANCES:

        DUANE MORRIS LLP (By Michael R. Gottfried,
    Esq.), 470 Atlantic Avenue, Suite 500, Boston,
    Massachusetts 02210
        - and -
        DAY CASEBEER MADRID & BATCHELDER, LLP (By
    Lloyd R. Day, Jr., Esq., Linda A. Sasaki-Baxley,
    Esq. and Jonathan Loeb, Ph.D.) 20300 Stevens Creek
    Boulevard, Suite 400, Cupertino, California 95014
        - and -
        McDERMOTT WILL & EMERY (By William G.
    Gaede, III, Esq.), 3150 Porter Drive, Palo Alto,
    California 94304
        - and -
        WENDY A. WHITEFORD, ESQ., Of Counsel,
    Amgen, Inc., One Amgen Center Drive, Thousand
    Oaks, California 91320-1789, on behalf of the
    Plaintiff

                                 1 Courthouse Way
                                 Boston, Massachusetts

                                 April 17, 2007
```

Page 74

1  you.
2      What does the patent tell us? If we look at the
3  specification as Dr. Torchilin did and brought to the
4  Court's attention exactly what the specification has to say
5  about this, if we look at the specification, the
6  specification is very clear that a diluent, an adjuvant or a
7  carrier can be in combination -- I'm sorry -- can be in
8  combination with or together with the erythropoietin. And
9  he points out that standard, that the patent describes
10 standard diluents such as serum, human serum albumin and
11 saline, both of which one of ordinary skill in the art would
12 readily recognize are complexed with, bind to, adhere to,
13 attach to human EPO.
14     So, you know, once again, when we deviate from the
15 tried and true analysis that the Federal Circuit has laid
16 down and this Court has mastered for construing claims,
17 looking at the claim language, looking at the specification,
18 looking at the prosecution history, and asking ourselves,
19 now, does the claim necessarily require this limitation that
20 the defendant is trying to read into the claim.
21     THE COURT: What do you say to her use of the word
22 mammals in place of humans in your proposal?
23     MR. DAY: Well, I think it's a question of what the
24 plain meaning of pharmaceutical composition is. And we
25 believe that the plain meaning of pharmaceutical composition

Page 75

1  is a composition that's administered to humans.
2  Dr. Flavell, defendants' expert, agrees. In his expert
3  report he says a pharmaceutical composition is a composition
4  that's suitable for administration to humans.
5      THE COURT: Well, I mean now at least, so the
6  television tells us, we have all sorts of pharmaceutical
7  compositions being administered by veterinarians to animals
8  of all sorts. And I had thought we were talking about
9  mammals here. Is that a mistake?
10     MR. DAY: Is it a mistake that we're talking about
11 mammals? Well, in the context of a pharmaceutical
12 composition --
13     THE COURT: You think so.
14     MR. DAY: Pardon me?
15     THE COURT: You think so.
16     MR. DAY: Well, I think, I think the specification,
17 the specification -- we're talking about column 33. In
18 particular in column 33 there is that very famous sentence
19 that your Honor knows very, very well. That sentence refers
20 to mammals. No question about it. But it doesn't talk
21 about pharmaceutical compositions. When we get to
22 pharmaceutical compositions the specification is very
23 clearly talking about patients.
24     THE COURT: Why did you put the word at least a
25 diluent, adjuvant or carrier in your proffer, in your

Page 76

1  proposal?
2      MR. DAY: Because of the word comprising, to make
3  clear that as, when you construe the word comprising that
4  you must have at least one of these. That doesn't mean you
5  can't have them all. That's the effect of comprising.
6      But the claim requires -- what does the claim
7  require? The analytical issue for the Court is what does
8  the claim require. It requires that there be at least --
9      THE COURT: Excuse me.
10     MR. DAY: -- an adjuvant, a diluent or a carrier.
11     THE COURT: Yes. But doesn't the word "or" carry
12 that, that meaning?
13     MR. DAY: That there can be more than one? Not
14 necessarily.
15     THE COURT: I see.
16     MR. DAY: I'm just trying to make it clear.
17     THE COURT: Containing --
18     MR. DAY: That --
19     THE COURT: Well --
20     MR. DAY: -- the effect of the word comprising is
21 that there can be more than one. That's the effect of the
22 word comprising. In giving that word meaning in this
23 construct that's why I put at least.
24     THE COURT: All right, thank you.
25     Here's, here's what we're going to go with for now.

Page 77

1  I'm going to construe the term as a composition suitable for
2  administration to humans containing a diluent, adjuvant or
3  carrier. As to this, as well as these other matters, I'll
4  take what's argued under advisement.
5      All right. Now, then we come to the '868 patent,
6  claim 2 and the '933 patent, claim 8 wherein said cells are
7  CHO cells. I don't see why we need the derived here. I am
8  disposed to go with a cell from the ovary of a Chinese
9  hamster. That's the language. I don't think we need to add
10 in anything. The claim said host cells are CHO cells. It
11 seems to me a cell from the ovary of a Chinese hamster. And
12 that is what I propose to do, but I'll hear you, Mr. Day,
13 because you have a different position. I don't know what
14 derived from adds.
15     MR. DAY: I think derived from is true to the
16 specification. And let me, again, I'm not trying to read
17 limitations into the claim. I'm trying to be true to the
18 specification.
19     And I'm not quite sure what defendants are arguing.
20 And there may be no issue or no dispute here for us to
21 resolve. But it appeared from the last submission that the
22 defendants made they were suggesting that, the fact that the
23 cell was taken from a Chinese hamster ovary meant that the
24 cell must be in the form that it would be found in a Chinese
25 hamster ovary.