# Chapter 2100  Patentability

2105    Patentable Subject Matter — Living Subject Matter
2106    *>Patent< Subject Matter **>Eliqibility<
2106.01**>Computer-Related Nonstatutory Subject Matter<
2106.02**>Mathematical Algorithms<
2107    Guidelines for Examination of Applications for Compliance with the Utility Requirement
2107.01    General Principles Governing Utility Rejections
2107.02    Procedural Considerations Related to Rejections for Lack of Utility
2107.03    Special Considerations for Asserted Therapeutic or Pharmacological Utilities
2111    Claim Interpretation; Broadest Reasonable Interpretation
2111.01    Plain Meaning
2111.02    Effect of Preamble
2111.03    Transitional Phrases
2111.04    "Adapted to," "Adapted for," "Wherein," and "Whereby" Clauses
2112    Requirements of Rejection Based on Inherency; Burden of Proof
2112.01    Composition, Product, and Apparatus Claims
2112.02    Process Claims
2113    Product-by-Process Claims
2114    Apparatus and Article Claims — Functional Language
2115    Material or Article Worked Upon by Apparatus
2116    Material Manipulated in Process
2116.01    Novel, Unobvious Starting Material or End Product
2121    Prior Art; General Level of Operability Required to Make a Prima Facie Case
2121.01    Use of Prior Art in Rejections Where Operability Is in Question
2121.02    Compounds and Compositions — What Constitutes Enabling Prior Art
2121.03    Plant Genetics — What Constitutes Enabling Prior Art
2121.04    Apparatus and Articles — What Constitutes Enabling Prior Art
2122    Discussion of Utility in the Prior Art
2123    Rejection Over Prior Art's Broad Disclosure Instead of Preferred Embodiments
2124    Exception to the Rule That the Critical Reference Date Must Precede the Filing Date
2125    Drawings as Prior Art
2126    Availability of a Document as a "Patent" for Purposes of Rejection Under 35 U.S.C. 102(a), (b), and (d)
2126.01    Date of Availability of a Patent As a Reference
2126.02    Scope of Reference's Disclosure Which Can Be Used to Reject Claims When the Reference Is a "Patent" but Not a "Publication"
2127    Domestic and Foreign Patent Applications as Prior Art
2128    "Printed Publications" as Prior Art
2128.01    Level of Public Accessibility Required
2128.02    Date Publication Is Available as a Reference
2129    Admissions as Prior Art
2131    Anticipation — Application of 35 U.S.C. 102(a), (b), and (e)
2131.01    Multiple Reference 35 U.S.C. 102 Rejections
2131.02    Genus-Species Situations
2131.03    Anticipation of Ranges
2131.04    Secondary Considerations
2131.05    Nonanalogous >or Disparaging Prior< Art
2132    35 U.S.C. 102(a)
2132.01    Publications as 35 U.S.C. 102(a) Prior Art
2133    35 U.S.C. 102(b)
2133.01    Rejections of Continuation-In-Part (CIP) Applications
2133.02    Rejections Based on Publications and Patents
2133.03    Rejections Based on "Public Use" or "On Sale"
2133.03(a)    "Public Use"
2133.03(b)    "On Sale"
2133.03(c)    The "Invention"
2133.03(d)    "In This Country"
2133.03(e)    Permitted Activity; Experimental Use
2133.03(e)(1)    Commercial Exploitation
2133.03(e)(2)    Intent
2133.03(e)(3)    "Completeness" of the Invention
2133.03(e)(4)    Factors Indicative of an Experimental Purpose
2133.03(e)(5)    Experimentation and Degree of Supervision and Control
2133.03(e)(6)    Permitted Experimental Activity and Testing
2133.03(e)(7)    Activity of an Independent Third Party Inventor
2134    35 U.S.C. 102(c)
2135    35 U.S.C. 102(d)
2135.01    The Four Requirements of 35 U.S.C. 102(d)
2136    35 U.S.C. 102(e)
2136.01    Status of U.S. Patent as a Reference Before and After Issuance
2136.02    Content of the Prior Art Available Against the Claims
2136.03    Critical Reference Date

AM-KUN-ERB001986

general descriptive terms are typically construed as having their full meaning." *Id.* at 1118, 72 USPQ2d at 1006. In the patent claim at issue, "subject to any clear and unmistakable disavowal of claim scope, the term 'operatively connected' takes the full breath of its ordinary meaning, i.e., 'said tube [is] operatively connected to said cap' when the tube and cap are arranged in a manner capable of performing the function of filtering." *Id.* at 1120, 72 USPQ2d at 1008.<

Whether or not the functional limitation complies with 35 U.S.C. 112, second paragraph, is a different issue from whether the limitation is properly supported under 35 U.S.C. 112, first paragraph, or is distinguished over the prior art. A few examples are set forth below to illustrate situations where the issue of whether a functional limitation complies with 35 U.S.C. 112, second paragraph, was considered.

It was held that the limitation used to define a radical on a chemical compound as "incapable of forming a dye with said oxidizing developing agent" although functional, was perfectly acceptable because it set definite boundaries on the patent protection sought. *In re Barr*, 444 F.2d 588, 170 USPQ 33 (CCPA 1971).

In a claim that was directed to a kit of component parts capable of being assembled, the Court held that limitations such as "members adapted to be positioned" and "portions . . . being resiliently dilatable whereby said housing may be slidably positioned" serve to precisely define present structural attributes of interrelated component parts of the claimed assembly. *In re Venezia*, 530 F.2d 956, 189 USPQ 149 (CCPA 1976).

## 2173.05(h) Alternative Limitations

### I.  MARKUSH GROUPS

Alternative expressions are permitted if they present no uncertainty or ambiguity with respect to the question of scope or clarity of the claims. One acceptable form of alternative expression, which is commonly referred to as a Markush group, recites members as being "selected from the group consisting of A, B and C." See *Ex parte Markush*, 1925 C.D. 126 (Comm'r Pat. 1925).

*Ex parte Markush* sanctions claiming a genus expressed as a group consisting of certain specified materials. Inventions in metallurgy, refractories, ceramics, pharmacy, pharmacology and biology are most frequently claimed under the Markush formula but purely mechanical features or process steps may also be claimed by using the Markush style of claiming. See *Ex parte Head*, 214 USPQ 551 (Bd. App. 1981); *In re Gaubert*, 524 F.2d 1222, 187 USPQ 664 (CCPA 1975); and *In re Harnisch*, 631 F.2d 716, 206 USPQ 300 (CCPA 1980). It is improper to use the term "comprising" instead of "consisting of." *Ex parte Dotter*, 12 USPQ 382 (Bd. App. 1931).

The use of Markush claims of diminishing scope should not, in itself, be considered a sufficient basis for objection to or rejection of claims. However, if such a practice renders the claims indefinite or if it results in undue multiplicity, an appropriate rejection should be made.

Similarly, the double inclusion of an element by members of a Markush group is not, in itself, sufficient basis for objection to or rejection of claims. Rather, the facts in each case must be evaluated to determine whether or not the multiple inclusion of one or more elements in a claim renders that claim indefinite. The mere fact that a compound may be embraced by more than one member of a Markush group recited in the claim does not necessarily render the scope of the claim unclear. For example, the Markush group, "selected from the group consisting of amino, halogen, nitro, chloro and alkyl" should be acceptable even though "halogen" is generic to "chloro."

The materials set forth in the Markush group ordinarily must belong to a recognized physical or chemical class or to an art-recognized class. However, when the Markush group occurs in a claim reciting a process or a combination (not a single compound), it is sufficient if the members of the group are disclosed in the specification to possess at least one property in common which is mainly responsible for their function in the claimed relationship, and it is clear from their very nature or from the prior art that all of them possess this property. While in the past the test for Markush-type claims was applied as liberally as possible, present practice which holds that claims reciting Markush groups are not generic claims (MPEP § 803) may subject the groups to a more stringent test for propriety of the recited members. Where a Markush expression is applied only to a portion of a chemical compound, the propriety of the grouping is determined by a consideration of the compound as a whole,

and does not depend on there being a community of properties in the members of the Markush expression.

When materials recited in a claim are so related as to constitute a proper Markush group, they may be recited in the conventional manner, or alternatively. For example, if "wherein R is a material selected from the group consisting of A, B, C and D" is a proper limitation, then "wherein R is A, B, C or D" shall also be considered proper.

*Subgenus Claim*

Genus, subgenus, and Markush-type claims, if properly supported by the disclosure, are all acceptable ways for applicants to claim their inventions. They provide different ways to present claims of different scope. Examiners should therefore not reject Markush-type claims merely because there are genus claims that encompass the Markush-type claims.

See also MPEP § 608.01(p) and § 715.03.

See MPEP § 803.02 for restriction practice re Markush-type claims.

II.   "OR" TERMINOLOGY

Alternative expressions using "or" are acceptable, such as "wherein R is A, B, C, or D." The following phrases were each held to be acceptable and not in violation of 35 U.S.C. 112, second paragraph in *In re Gaubert*, 524 F.2d 1222, 187 USPQ 664 (CCPA 1975): "made entirely or in part of"; "at least one piece"; and "iron, steel or any other magnetic material."

III.  "OPTIONALLY"

An alternative format which requires some analysis before concluding whether or not the language is indefinite involves the use of the term "optionally." In *Ex parte Cordova*, 10 USPQ2d 1949 (Bd. Pat. App. & Inter. 1989) the language "containing A, B, and optionally C" was considered acceptable alternative language because there was no ambiguity as to which alternatives are covered by the claim. A similar holding was reached with regard to the term "optionally" in *Ex parte Wu*, 10 USPQ2d 2031 (Bd. Pat. App. & Inter. 1989). In the instance where the list of potential alternatives can vary and ambiguity arises, then it is proper to make a rejection under 35 U.S.C. 112, second paragraph, and explain why there is confusion.

## 2173.05(i)   Negative Limitations

The current view of the courts is that there is nothing inherently ambiguous or uncertain about a negative limitation. So long as the boundaries of the patent protection sought are set forth definitely, albeit negatively, the claim complies with the requirements of 35 U.S.C. 112, second paragraph. Some older cases were critical of negative limitations because they tended to define the invention in terms of what it was not, rather than pointing out the invention. Thus, the court observed that the limitation "R is an alkenyl radical other than 2-butenyl and 2,4-pentadienyl" was a negative limitation that rendered the claim indefinite because it was an attempt to claim the invention by excluding what the inventors did not invent rather than distinctly and particularly pointing out what they did invent. *In re Schechter*, 205 F.2d 185, 98 USPQ 144 (CCPA 1953).

A claim which recited the limitation "said homopolymer being free from the proteins, soaps, resins, and sugars present in natural Hevea rubber" in order to exclude the characteristics of the prior art product, was considered definite because each recited limitation was definite. *In re Wakefield*, 422 F.2d 897, 899, 904, 164 USPQ 636, 638, 641 (CCPA 1970). In addition, the court found that the negative limitation "incapable of forming a dye with said oxidized developing agent" was definite because the boundaries of the patent protection sought were clear. *In re Barr*, 444 F.2d 588, 170 USPQ 330 (CCPA 1971).

Any negative limitation or exclusionary proviso must have basis in the original disclosure. If alternative elements are positively recited in the specification, they may be explicitly excluded in the claims. See *In re Johnson*, 558 F.2d 1008, 1019, 194 USPQ 187, 196 (CCPA 1977) ("[the] specification, having described the whole, necessarily described the part remaining."). See also *Ex parte Grasselli*, 231 USPQ 393 (Bd. App. 1983), *aff'd mem.*, 738 F.2d 453 (Fed. Cir. 1984). The mere absence of a positive recitation is not basis for an exclusion. Any claim containing a negative limitation which does not have basis in the original disclosure should be rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. Note that a lack of literal basis in the specification for a negative limitation may not be sufficient to establish a *prima facie* case for lack of descriptive support. *Ex parte Parks*,