UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> F. HOFFMANN-LA ROCHE LTD, ) <br> ROCHE DIAGNOSTICS GMBH, ) <br> and HOFFMANN-LA ROCHE INC., ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION No.: 05-CV-12237WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
CONTINUED DEPOSITION OF MICHAEL BORUN**

Amgen contumaciously refuses to produce for continued deposition Michael Borun, who admits that he did not disclose certain material information to the USPTO during his prosecution of patents-in-suit. Amgen's refusal comes in the face of this Court's order that

> Roche is entitled to know where Mr. Borun got that information [which was not disclosed to the PTO and which concerns the composition of the EPO subject of the patents-in-suit] and when [and, if that information came from another Amgen attorney,] which may well be the case, then Roche is entitled to know where that attorney got his information and when . . . from whom and when.

Exhibit A (Transcript of Hearing on April 17, 2007 at 107, lines 19-24). Finding this Court's ruling unacceptable, Amgen simply informed Roche that, instead of the sworn testimony of Mr. Borun at a resumed deposition, Amgen has satisfied its obligation under the Court Order by providing only the representations of Amgen's counsel that Mr. Borun does not recall this information. In addition to overruling the Court's order, Amgen purports to rewrite the Federal Rules of Civil Procedure and asserts that Mr. Borun need not submit to resumed deposition because the deposition is likely to be brief and because his counsel offers counsel's

representations instead. The Court should sanction Amgen for refusing to comply with the Court's order and order resumption of Mr. Borun's deposition.

## STATEMENT OF FACTS

In the course of nearly 20 years of multiple patent litigations, Amgen's longtime patent prosecutor Michael Borun has provided detailed testimony regarding his work on behalf of Amgen prosecuting the applications, which gave rise to the Amgen patents asserted against Roche in the instant action. In the present litigation, Mr. Borun appeared for deposition on March 2, 2007. Following that deposition, Roche filed its motion to compel, which asserts that, in this litigation and over the course of prior litigations, Mr. Borun has provided testimony which effects a waiver of attorney-client privilege and work product protection with respect to certain subjects. Roche's Motion to Compel the Production of Documents Improperly Withheld On Grounds of Privilege, dated March 27, 2007 (Docket No. 336) ("Roche's Motion to Compel").

In allowing in part Roche's Motion to Compel , the Court focused on two portions of Mr. Borun's testimony (referenced as "items 49 and 50," which are summarized in Appendix A to Roche's motion) and ruled:

> . . . when I look at items 49 and 50, I do think, given the matters at issue in this case, that Borun's testimony in the respects set forth, and I will say I think Amgen's rebuttal has accurately characterized that testimony, and I'm relying upon that having checked those out with some care, I think that does open up the following. <u>I think Roche is entitled to know where Mr. Borun got that information and when. And if he got that information as to items 49 and 50 from another Amgen attorney, which may well be the case, Roche is entitled to know where that attorney got his information and when.</u>

*See* Exhibit A, Transcript of Hearing, April 17, 2007 at 107, lines 13-25 (emphasis added); and Exhibit B, Excerpt of Appendix A to Amgen's Opposition to Roche's March 27, 2007 Motion to Compel (containing Items 49 and 50).

2

In his trial testimony in prior litigations against Hoechst Marion Roussel referenced in these summaries numbered 49 and 50, Mr. Borun discloses that he learned at least as early as in 1990, during his prosecution of patents-in-suit, that his 1984 submission to the USPTO of the hexose value of the recombinant product was most likely false and his 1984 submission of the fucose value for the recombinant and the urinary product was also likely false. *See* Exhibit C, *Amgen v. Hoechst Marion Roussel, Inc., et al,* Tr. Trans., Sept. 6, 2000, Vol. 21, p. 2854, 9-20; *see* Exhibit D, *Hoechst v. Kirin-Amgen Inc.,* Tr. Trans., Feb. 5, 2002, p. 450.  Specifically, in 1984, Mr. Borun had asserted to the USPTO that recombinant EPO was different than naturally occurring EPO because their respective molecular weights and glycosylation are different. *See* Exhibit C, *Amgen v. Hoechst Marion Roussel, Inc., et al,* Tr. Trans., Sept. 6, 2000, Vol. 21, p. 2840-45.  Mr. Borun admits that it appears that he received a package of information from Dr. Joan Egrie in November 1984, which he may have discussed with her and which reported that, in fact, these EPOs have the same molecular weight and that the recombinant EPO is glycosylated to the same extent as the urinary EPO. *See* Exhibit C*, Amgen v. Hoechst Marion Roussel, Inc., et al,* Tr. Trans., Sept. 6, 2000, Vol. 21, *p.* 2835, 2838, 2845, 2848, and 2838-2845.

Mr. Borun has admitted that in or around 1990, during the prosecution of patents-in-suit, he became aware that his prior assertions to the USPTO in 1984 were wrong in that the test data, of which he became aware in 1990, showed recombinant EPO and naturally occurring EPO have the same molecular weights and glycosylation. *See* Exhibit C, *Amgen v. Hoechst Marion Roussel, Inc., et al,* Tr. Trans., Sept. 6, 2000, Vol. 21, *p.* 2840-45 and at 2854-60.  Moreover, Mr. Borun has admitted that during the prosecution of patents in suit, he did nothing to notify the USPTO that he previously filed this false and material information on the key issue as to whether

recombinant is different from naturally occurring EPO.  Exhibit C, *Amgen v. Hoechst Marion Roussel, Inc., et al,* Tr. Trans., Sept. 6, 2000, Vol. 21, p. 2856-57.

Mr. Borun's false statements to the USPTO that the molecular weight of recombinant erythropoietin and urinary erythropoietin are different support Roche's defenses including that the subject matter of the patents-in-suit is not novel and that Borun engaged in inequitable conduct in the prosecution of the applications for these patents.  *See* Exhibit E, Defendants' First Amended Answer And Counterclaims ("Roche's Amended Answer"), dated  March 30, pp. 25-27.

This Court's order at the April 17, 2007 hearing entitles Roche to discover from whom Mr. Borun learned that the 1984 submission of the hexose and fucose values was false, and when he learned of this information.  Exhibit A, Transcript, April 17, 2007 at 107.  The date and source of this knowledge are essential to the Court's determination of Mr. Borun's credibility and intent in relation to his contentions that (1) he did not know that the false information concerning differences between recombinant EPO and natural occurring EPO was false at the time he submitted the patent application in 1984; and (2) it was proper for him to knowingly submit this false information in the continuation applications he filed at a time when he knew this information was false, solely for the reason of preserving the 1984 priority date.  The answers to these questions may also lead to the discovery of other relevant evidence including who else was involved in submitting the false information to the USPTO.  The circumstances of Mr. Borun's acquisition of his knowledge of the falsity of his submission to the USPTO are integral to Roche's lack of novelty defense and inequitable conduct defense and the Court has ordered that Roche is entitled to probe Mr. Borun with respect to these topics.

On May 3, 2007, Roche wrote to Amgen and requested that, pursuant to the Court's Order, Amgen produce Mr. Borun for continued deposition at a mutually convenient time. *See* Exhibit F, May 3, 2007 Letter from N. Rizzo to K. Flowers. Amgen responded by refusing to produce Mr. Borun, stating that "nothing entitles Roche to a further deposition of Mr. Borun to examine [the circumstances leading up to Mr. Borun's knowledge]." *See* Exhibit G, May 16, 2007 Letter from W. Gaede to N. Rizzo. Amgen also stated that it had "performed an investigation analogous to a Rule 30(b)(6) witness due diligence investigation to identify from whom, and when, Mr. Borun learned of the information disclosed in the testimony at issue" and that Amgen "has been unable to reconstruct when and from whom Mr. Borun may have learned this information . . ." *See id.* Roche responded on May 25, 2007 by noting that Amgen's "investigation" is not an adequate substitute for Roche's questioning of Mr. Borun on the testimony at issue, and reiterating its request to schedule a mutually convenient time to resume Mr. Borun's deposition. *See* Exhibit H, May 25, 2007 Letter from N. Rizzo to W. Gaede. As is evident in Amgen's letter of May 31, 2007, Amgen continues to refuse to produce Mr. Borun for continued deposition and asserts that " . . . any deposition would be remarkably short . . ." *See* Exhibit I, May 31, 2007 Letter from W. Gaede to N. Rizzo.[1]

Thus, Roche requests this Court compel Amgen to produce Mr. Borun for continued deposition pursuant to the Court's Order of April 17, 2007.

---

[1] Amgen, in effect, also takes the unsupportable position that it is not within this Court's authority to order a resumed deposition because, in the underlying motion, Roche framed the relief that it sought as a resumed deposition on documents the production of which the Court compelled and the Court did not compel production of documents. *See* Exhibit H, 5/16/07 Letter from W. Gaede to N. Rizzo.

**ARGUMENT**

A.  **Roche Is Entitled To Resume the Deposition of Mr. Borun and Amgen's Refusal To Produce Mr. Borun Constitutes A Violation Of A Court Order.**

The Court has specifically ruled that Roche "is entitled to know . . . from whom and when" Mr. Borun obtained the information which informed him that his submissions to the USPTO were false, "[a]nd if he got the information as to items 49 and 50 from another Amgen attorney, which may well be the case, Roche is entitled to know where that attorney got his information and when." The context of the Court's ruling in instructive and was as follows,

> I said [the motion] was generally denied. But when I look at items 49 and 50, I do think, given the matters at issue in this case, **that Borun's testimony** in the respects set forth . . . . I think that **does open up the following.** Roche is entitled to know where Mr. Borun got that information [which was not disclosed to the PTO and which concerns the composition of the EPO subject of the patents in suit] and when [and, if that information came from another Amgen attorney,] which may well be the case, then Roche is entitled to know where that attorney got his information and when . . . from whom and when.

Exhibit A (Transcript of hearing on April 17, 2007 at 107) (emphasis added). Clearly, the Court's ruling is that Mr. Borun's testimony opens up opportunities for Roche to probe for further testimony in the only context for probing testimony during discovery recognized by the Federal Rules of Civil Procedure, *i.e.* his resumed deposition. Amgen's argument is specious that the Court meant that Roche was limited to follow-up questioning of counsel for Amgen.

The caselaw is consistent with this Court's order. For example, where a defendant moved to quash plaintiff's notices of deposition of four high-level executives, and in support submitted affidavits attesting to the executives' lack of knowledge, Magistrate Judge Collings resoundingly rejected even sworn affidavits as a substitute for deposition, stating:

> The plaintiff is entitled to "test" the claim of lack of knowledge or lack of recollection by deposing the witness . . . In fact, the ability to "test" is even more important in the case of a claimed lack of recollection than lack of knowledge, since recollection can frequently be refreshed during an examination. In addition, the extent to which failures of recollection can be refreshed very often depends on who the refresher is. It is very easy to claim a lack of recollection. There is nothing in the affidavits of the four individuals which indicate that they attempted to refresh their recollections at all or that any effort was made by Ford's counsel to refresh their recollections. Even if there were such a showing, there is nothing in the law which would indicate that Travelers has to accept the claimed failures on their face or rely on whatever efforts Ford's counsel may have undertaken to refresh recollections. Considering that Travelers has demonstrated that these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle the deponent to an order quashing the deposition. The only possible instance I can think of would be the situation in which the failure of recollection was due to disease or an organic deficiency of some sort, neither of which is claimed in the instant case. Lastly, the lack of knowledge claimed by these high executives may, in and of itself, be relevant evidence. It is not beyond the realm of possibility that a corporation, when engaging in potentially illegal activities, would act in such a way as to make it seem that top executives had no knowledge or very limited knowledge of the allegedly illegal activities. Needless to say, I do not intimate that that is what occurred in this case, but the possibility lends weight to my conclusion that it would be improper for the Court to require that Travelers accept these officials' affidavits of limited knowledge and virtually no recollection at face value with no opportunity for testing at depositions.

*Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140, 143-44 (D. Mass. 1987) (Collings, M.J.). Roche is entitled to make its own efforts to refresh Mr. Borun's recollection and should not be forced to rely on Amgen's representations as to his lack of knowledge.

Likewise, Amgen's assertion is specious that, in effect, the Court only ordered Amgen to perform a "30(b)(6) due diligence investigation." Mr. Borun is not testifying as a 30(b)(6) witness. Indeed, even if Mr. Borun were testifying as a 30(b)(6) witness, he would still be required to appear for deposition and not simply hide behind the veil of his attorney's representations of lack of knowledge.[2] Roche is entitled to question Mr. Borun to the extent the

---

[2] *See e.g., Ierardi v. Lorillard, Inc.*, 1991 WL 158911, *1 (E.D. Pa. Aug. 13, 1991), ("[t]he general rule is that a claimed lack of knowledge does not provide sufficient grounds for a

Court has ordered, and Amgen's "investigation" is not an adequate substitute for Mr. Borun's continued deposition.

## CONCLUSION

Roche respectfully requests that the Court order Amgen to produce Mr. Borun for continued deposition in order to permit further questioning as ordered by the Court.

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1 AND 37.1

I certify that counsel for the parties have conferred in an attempt to resolve or narrow the issues presented by this motion and that no agreement was reached. I also certify that counsel for Roche has complied with the provisions of L.R. 37.1.

---

protective order: the other side is allowed to test this claim by deposing the witness."); *Balfour Beatty Rail, Inc. v. Vaccarello,* 2007 WL 842765, *3 (M.D. Fla. March 20, 2007) ("The ability to test may be even more compelling in the instant case where the deponents' sworn statements indicate they cannot recall the alleged conversations and there is no indication in the statements as to whether the deponents attempted to refresh their recollections"); *Parkhurst v. Kling*, 266 F. Supp. 780, 781 (D.C. Pa. 1967) (The plaintiff is at least entitled to test the truth of the statements of [deponent] concerning her lack of knowledge." ).

| | |
|---|---|
| DATED:    Boston, Massachusetts<br>              June 13, 2007 | Respectfully submitted,<br><br>F. HOFFMANN-LA ROCHE LTD, ROCHE DIAGNOSTICS GMBH, and HOFFMANN-LA ROCHE INC.<br><br>*By their Attorneys,*<br><br> /s/ Nicole A. Rizzo<br>Lee Carl Bromberg (BBO# 058480)<br>Robert L. Kann (BBO# 258025)<br>Julia Huston (BBO# 562160)<br>Keith E. Toms (BBO# 663369)<br>Nicole A. Rizzo (BBO # 663853)<br>BROMBERG & SUNSTEIN LLP<br>125 Summer Street<br>Boston, MA 02110<br>Tel: (617) 443-9292<br>nrizzo@bromsun.com<br><br>Leora Ben-Ami (*pro hac vice*)<br>Mark S. Popofsky (*pro hac vice*)<br>Patricia A. Carson (*pro hac vice*)<br>Thomas F. Fleming (*pro hac vice*)<br>Howard S. Suh (*pro hac vice*)<br>Peter Fratangelo (BBO# 639775)<br>KAYE SCHOLER LLP<br>425 Park Avenue<br>New York, NY 10022<br>Tel: (212) 836-8000 |

**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

                                                            /s/ Nicole A. Rizzo
                                                            Nicole A. Rizzo

03099/00501 680074.5