**RESTRICTED ACCESS – CONTAINS CONFIDENTIAL/PRIVILEGED INFORMATION**

| No. | Testimony Alleged to have caused waiver | Transcript Pages in Appendix B | Alleged Subjects | Amgen's Rebuttal |
|---|---|---|---|---|
| | mentioned were practical. | | | |
| 49 | In the course of providing trial testimony, Borun disclosed Amgen's strategic decisions not to correct data in the patent application. | Ex. 2, *Amgen v. Hoechst* Tr. Trans. Vol. 21, 2854-60 | Prosecution Strategy Patentability | Mr. Borun revealed a non-privileged fact. Mr. Borun disclosed the fact that he learned in 1990 and 1991 that the 1984 submission of the hexose value of the recombinant produce was probably wrong and that the 1984 submission of the fucose value for the recombinant and the urinary product was probably wrong. Mr. Borun explained generally that "the reason for filing the continuing application is to reserve the original filing date." Mr. Borun disclosed the fact that "at the original filing date [1984] there was no knowledge that this information was wrong." *Amgen v. Hoechst* Tr. Trans. Vol. 21, p. 2856, ll.18-21. |
| 50 | Borun's testimony in the Court of Chancery proceedings in the U.K. disclosed data analysis and strategic considerations in evaluating the results of experiments and presenting data. "We knew we could not rely on it if you are referring to the carbohydrate data. We knew we would not rely on the hexose value to establish a difference because there was a question about the validity. It was just a bad | Ex. 4, *Hoechst v. Kirin-Amgen* Tr. Trans., 450 | Prosecution Strategy Patentability | Mr. Borun revealed a non-privileged fact. He disclosed the fact that he learned of the incorrect value years later. Moreover, Amgen disclosed the incorrect data to the Board (addressed in the Board's written decision) and considered by the examiner (after he reviewed the Board's decision), and also disclosed in the *Fritsch v. Lin* Interference. *See* Amgen's Opposition at 16. |

- 23 -

**RESTRICTED ACCESS – CONTAINS CONFIDENTIAL/PRIVILEGED INFORMATION**

| No. | Testimony Alleged to have caused waiver | Transcript Pages in Appendix B | Alleged Subjects | Amgen's Rebuttal |
|---|---|---|---|---|
| | experiment. There was too much material out rather than came in. We certainly did not want to rely on the data reflecting fucose content. There the data was wrong both with respect to urinary and recombinant EPO. That was completely missed on O-glycosylation. That was not the difference. We would not have relied on it in any event. 0 and 0 are the same, not different. We could not rely on the hexose." | | | |
| 51 | Borun disclosed the subject matter of information that Dr. Lin and his co-workers, including Dr. Smalling and Dr. Egrie, provided him for inclusion in Example 10 of the '933 patent. | Ex. 3, *Amgen v. Hoechst* Dep. Trans., 63-64 | Prosecution Strategy | Mr. Borun described the subject matter involved in the communications without revealing the actual contents of the privileged communications itself.<br><br>He identified (1) who he communicated with (Dr. Lin and Dr. Lin's coworkers); and (2) the general subject matter of the communications (re example 10 of the '933 patent).<br><br>Mr. Borun did not disclose the actual contents of any privileged communication |
| 52 | Borun disclosed that he received information from Dr. Browne and possibly Mr. Smalling regarding COS and CHO cell expression, he may have received information from Dr. Egrie regarding assay values, characterization of recombinant products and he received information from Dr. Lai concerning purification. | Ex. 3, *Amgen v. Hoechst* Dep. Trans., 65 | Prosecution Strategy Inventorship | Mr. Borun described the subject matter involved in the communications without revealing the actual contents of the privileged communications itself.<br><br>He identified (1) who he communicated with (Dr. Browne and possibly Mr. Smalling) and (2) the general subject matter of the communication (COS and CHO cell expression). |

MPK 124468-2.041925.0023