# EXHIBIT H-6

**6**

AM670167788

AM-ITC 00952455

RECEIVED IN
DIRECTOR'S OFFICE

APR 24 1986

GROUP 120

#6/a

IN THE UNITED STATES PATENT
AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application of | ) | "PRODUCTION OF |
| | ) | |
| FU-KUEN LIN | ) | ERYTHROPOIETIN" |
| | ) | |
| Serial No. 675,298 | ) | Group Art Unit 127 |
| | ) | |
| Filed November 30, 1984 | ) | Examiner: J. Martinell |

PRELIMINARY AMENDMENT ACCOMPANYING
PETITION TO MAKE SPECIAL BECAUSE OF ACTUAL
INFRINGEMENT (37 C.F.R. §1.102 & M.P.E.P. §708.02)

Hon. Commissioner of Patents
        and Trademarks
Washington, D.C. 20231

Sir:

Consistent with the requisites of M.P.E.P.

§708.02 VIII, this Preliminary Amendment is submitted with

Applicant's Petition to Make Special under 37 C.F.R. §1.102.

Please enter the following amendments.


IN THE SPECIFICATION

Page 30, line 21, please delete "Asn" and insert

--Asn-- in place thereof.

Page 31, line 5, please delete "and RIA Analysis".

Page 41, line 20, please delete "18, pp. 533-543

(1979)" and insert --supra--.

Page 41, line 29, please delete "NEF-976" and

insert --NEF-972--.

Page 53, line 13, after "orientation" please

insert --(vectors F, X and G)--.

Page 74, line 9, after "1984", insert --(Published

EPO Application No. 136,490)--.

Page 86, line 2, please delete "33932, 33934 and

33933" and insert --39932, 39934 and 39933-- in place

thereof.

163

157

AM670167789                                                    AM-ITC 00952456

Page 89, line 21 please delete "118" and insert
--128-- in place thereof.

IN THE CLAIMS

Please cancel claims 37, 38 and 50 without prej-
udice.  Please enter new claims 61 through 72.

--61.  A biologically functional circular plasmid
or viral DNA vector including a DNA sequence according to
claim 14.

62.  A procaryotic or eucaryotic host cell stably
transformed or transfected with a DNA vector according to
claim 61.

63.  A biologically functional circular plasmid or
viral DNA vector including a DNA sequence according to
claim 17.

64.  A procaryotic or eucaryotic host cell stably
transformed or transfected with a DNA vector according to
claim 63.

65.  A biologically functional circular plasmid or
viral DNA vector including a DNA sequence according to
claim 34.

66.  A procaryotic or eucaryotic host cell stably
transformed or transfected with a DNA vector according to
claim 65.

- 6 -                              **164**

158

AM670167790                                    AM-ITC 00952457

67.  A biologically functional circular plasmid or viral DNA vector including a DNA sequence according to claim 35.

68.  A procaryotic or eucaryotic host cell stably transformed or transfected with a DNA vector according to claim 67.

69.  A process for the production of a polypeptide having part or all of the primary structural conformation and one or more of the biological *activities* properties of naturally-occurring erythropoietin, said process comprising:

growing, under suitable nutrient conditions, procaryotic or eucaryotic host cells transformed or transfected with a DNA vector according to claim *62*, and isolating desired polypeptide products of the expression of DNA sequences in said vector.

70.  A process for the production of a polypeptide having part or all of the primary structural conformation and one or more of the biological *activities* properties of naturally-occurring erythropoietin, said process comprising:

growing, under suitable nutrient conditions, procaryotic or eucaryotic host cells transformed or transfected with a DNA vector according to claim 63, and isolating desired polypeptide products of the expression of DNA sequences in said vector.

71.  A process for the production of a polypeptide having part or all of the primary structural conformation and one or more of the biological *activities* properties of naturally-occurring erythropoietin, said process comprising:

- 3 -                                         165

AM670167791                                    AM-ITC 00952458

growing, under suitable nutrient conditions, pro-
caryotic or eucaryotic host cells transformed or transfected
with a DNA vector according to claim 65, and isolating
desired polypeptide products of the expression of DNA
sequences in said vector.

72.  A process for the production of a polypeptide
having part or all of the primary structural conformation
and one or more of the biological activities ~~properties~~ of naturally-
occurring erythropoietin, said process comprising:

growing, under suitable nutrient conditions, pro-
caryotic or eucaryotic host cells transformed or transfected
with a DNA vector according to claim 67, and isolating
desired polypeptide products of the expression of DNA
sequences in said vector.--

## REMARKS

Claims 1 through 36, 39 through 49, 51 through 60,
and new claims 61 through 72 are in the application.  New
claims 61 through 72 comprehend precisely the same subject
matter previously claimed in original application claims 37,
38 and 50 whose cancellation is sought hereby.  New claims
61 though 72 are believed to be in proper form and free of
any objection with respect to multiple dependency such as
was asserted by Examiner Martinell in the "International
Search Report" dated March 7, 1985 with respect to corres-
ponding Patent Cooperation Treaty Application US84/02021, a
copy of which is attached hereto as Exhibit No. 1.

- 4 -

166

Preliminary Election Of
Claims 14, 15, 17-36, 58 and 61-72

Consistent with the suggestion set forth in M.P.E.P. §708.02 VIII concerning the presentation of claims "directed to a single invention", and based on "Observations Where Unity Of Invention Is Lacking" set in the International Search Report (Exhibit No. 1) referred to above, Applicant herewith provisionally elects prosecution of claims 14, 15, 17-36, 58, and 61 through 72, all of which are directed to DNA sequences, vectors including such DNA sequences, host cells transformed or transfected with the claimed vectors, and processes for the production of polypeptides through use of claimed transformed or transfected hosts.

While applicant has made the above preliminary election "without traverse", it will be understood that the same is being made without prejudice to applicant's right to pursue claims to all patantable subject matter disclosed in his application and specifically to pursue the patenting of all presently non-elected claims.

Statement With Respect To "Pre-Examination Search"

Commencing prior to the filing of the first parent patent application leading up to the present application, and on an essentially continuous basis thereafter through to the present, Applicant, Applicant's assignee and Applicant's counsel have essentially continuously reviewed scientific publications, U.S. and foreign patents and foreign published patent applications in an attempt to identify prior art which may be deemed to be pertinent to the patentability of claims now pending in the present application. Also the subject of review by Applicant, his assignee and counsel

- 7 -                                        167

1101

AM670167793                                AM-ITC 00952460

have been those references which were cited, for example, in the International Search Report attached as Exhibit No. 1 hereto and in the examination of parent U.S. Application Serial No. 561,024. See, e.g., the copy of PTO-892 attached hereto as Exhibit 2. To the extent that any known references were determined to be potentially relevant to patentability of any in claims in the present application or any parent application at the time of filing, they were directly referred to in the text of the application.

In an attempt to respond to the suggestions contained in M.P.E.P. §708.02 IV(c)(d)(e), Applicant is concurrently submitting herewith an Information Disclosure Statement Under 37 C.F.R. §1.97 including Form PTO-1449. This Statement includes copies of all references cited in the present specification together with copies of all references which have come to the attention of Applicant's counsel since the filing date of the application.

Attached hereto as Exhibit No. 3 is a listing of a "sub-set" of the set of references supplied by the Information Disclosure Statement. This sub-set of references comprises those references which are presently believed by counsel to be "closely related to the subject matter encompassed by the claims" preliminarily elected herein (i.e., claims 14, 15, 17-36, 58, and 61-72 relating to DNA sequences, vectors, hosts and recombinant erythropoietin production processes). Comments concerning pertinence to patentability of these references are provided in a separate section (pages 2 to 5) within the Information Disclosure Statement.

- 4 -

**168**

Statement With Respect To Deposited Microorganisms

Applicant notes that microorganisms referred to by A.T.C.C. Deposit Number are either permanent A.T.C.C. stocks (e.g., COS-1 cells, CRL-1650) or were deposited on behalf of applicant under the provisions of the Budapest Treaty. Attached hereto as composite Exhibit No. 4 are copies of A.T.C.C. acknowledgements of Budapest Treaty status of the deposits made in connection with this application.

CONCLUSION

Applicant respectfully submits that claims 14, 15, 17-36, 58 and 61-72 are in condition for allowance and an early notice thereof is solicited.

Respectfully submitted,

MARSHALL, O'TOOLE, GERSTEIN,
MURRAY & BICKNELL

By _____
Michael F. Borun (Reg. No. 25,447)
A Member of the Firm
Attorneys for Applicants
Two First National Plaza
Chicago, Illinois  60603
(312) 346-5750

Chicago, Illinois
April 23        , 1986

- ⁄ -
163

169

AM670167795                                    AM-ITC 00952462

Exhibit No. 1

164

170

AM670167796

AM-ITC 00952463

EXHIBIT NO. 1

171

AM670167797

AM-ITC 00952464

# INTERNATIONAL SEARCH REPORT

International Application No PCT/US84/02021

**I. CLASSIFICATION OF SUBJECT MATTER** (if several classification symbols apply, indicate all)⁶

According to International Patent Classification (IPC) or to both National Classification and IPC

IPC³: C07C 103/52, C07H 21/04, C07K 7/00, C12P 21/02, C12Q 1/68,
G01N 33/50,  A61K 37/00, C12N 1/00, C12N 5/00, C12N 5/02

**II. FIELDS SEARCHED**

Minimum Documentation Searched⁷

| Classification System | Classification Symbols |
|---|---|
| U.S. | 424/1.1, 1.5, 85,177; 436/63,94,504; 260/112R, 112.5R; 435/6,7,68,70,71,91,172.3,240,241,243,255,256,317,253 |

Documentation Searched other than Minimum Documentation
to the Extent that such Documents are Included in the Fields Searched⁸

CA  Search Data Base  1972-1985

**III. DOCUMENTS CONSIDERED TO BE RELEVANT**¹⁴

| Category*| Citation of Document,¹⁶ with indication, where appropriate, of the relevant passages¹⁷ | Relevant to Claim No.¹⁸ |
|---|---|---|
| Y | N, Weiss et al, Proc. Natl. Acad. Sci USA, Volume 79, 1982, pages 5465-5469 | 1-13,16,39-41, 47-49, 51-55,59 |
| X | N, Weiss et al, Proc. Natl. Acad. Sci. USA Volume 79, 1982, pages 5465-5469 | 51-54 |
| Y,P | N, Lee-Huang, Proc. Natl. Acad. Sci USA Volume 81, May 1984, pages 2708-2712. | 1-36,39-49, 51-60 |
| X,P | N, Lee-Huang, Proc. Natl. Acad. Sci USA, Volume 81, May 1984, pages 2708-2712 | 14,15,24,34, 36,58 |
| Y | N, Broome et al, Proc. Natl. Acad. Sci. USA, Volume 75, 1978, pages 2746-2749. | 1-36, 39-49, 55,59 |
| Y | US,A, 4,597,840, Published 09 August 1983, Takezawa et al | 1-13,16,39-41, 47-49,55,59 |

* Special categories of cited documents:¹⁵
  "A" document defining the general state of the art which is not considered to be of particular relevance
  "E" earlier document but published on or after the international filing date
  "L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)
  "O" document referring to an oral disclosure, use, exhibition or other means
  "P" document published prior to the international filing date but later than the priority date claimed

  "T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention
  "X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step
  "Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.
  "&" document member of the same patent family

**IV. CERTIFICATION**

| Date of the Actual Completion of the International Search⁹ | Date of Mailing of this International Search Report⁹ |
|---|---|
| 25 February 1985 | 07 MAR 1985 |
| International Searching Authority⁴ | Signature of Authorized Officer¹⁰ |
| ISA/US | James Martinell |

Form PCT/ISA/210 (second sheet) (October 1981)

172

International Application No. PCT/US84/02021

FURTHER INFORMATION CONTINUED FROM THE SECOND SHEET

| | | |
|---|---|---|
| X | US,A, 4,397,840, Published 09 August 1983, Takezawa et al | 40,41,47-49, 55-57 |
| Y | N, Dunn et al, Chemical Abstracts, Volume 91, 1979, Abstract No. 190417r. | 1-13,16,39-41,47-49, 55,59 |
| Y | N, Molecular Cloning-A Laboratory Manual, Maniatis et al (ed), Cold Spring Harbor Laboratory, 1982, pages 108-112. | 31,32 |

V.☒ OBSERVATIONS WHERE CERTAIN CLAIMS WERE FOUND UNSEARCHABLE ¹⁰

This international search report has not been established in respect of certain claims under Article 17(2) (a) for the following reasons:

1.☒ Claim numbers .......... because they relate to subject matter ¹² not required to be searched by this Authority, namely:

Claims 37,38 and 50 are unsearchable because claim 37 recites "either of claims 14,17,34 or 35". As written and understood claim 37 may depend on all of claims 14,17 and 34 making claim 37 an improper multiple dependent claim. Claims 38 and 50 depend from claim 37 and are hence also improper multiple dependent claims.

2.☐ Claim numbers .......... because they relate to parts of the international application that do not comply with the prescribed requirements to such an extent that no meaningful international search can be carried out ¹³, specifically:

VI.☒ OBSERVATIONS WHERE UNITY OF INVENTION IS LACKING ¹¹

This International Searching Authority found multiple inventions in this international application as follows:

I.  Claims 1-13, 16, 39-41, 47-49, 55-57 and 59.
II. Claims 14, 15, 17-36 and 58.
III. Claims 42-46
IV. Claims 51-54.
V.  Claim 60.

1.☒ As all required additional search fees were timely paid by the applicant, this international search report covers all searchable claims of the international application.

2.☐ As only some of the required additional search fees were timely paid by the applicant, this international search report covers only those claims of the international application for which fees were paid, specifically claims:

3.☐ No required additional search fees were timely paid by the applicant. Consequently, this international search report is restricted to the invention first mentioned in the claims; it is covered by claim numbers:

4.☐ As all searchable claims could be searched without effort justifying an additional fee, the International Searching Authority did not invite payment of any additional fee.

Remark on Protest

☐ The additional search fees were accompanied by applicant's protest.

☒ No protest accompanied the payment of additional search fees.

Form PCT/ISA/210 (supplemental sheet (2)) (October 1981)

173

International Application No. PCT/US84/02021

| | III. DOCUMENTS CONSIDERED TO BE RELEVANT    (CONTINUED FROM THE SECOND SHEET) | |
|---|---|---|
| Category* | Citation of Document,¹⁴ with indication, where appropriate, of the relevant passages ¹⁷ | Relevant to Claim No ¹⁴ |
| ● | N, Grantham et al, Nucleic Acids Research, Volume 9, 1981, pages r43-r74. | 1-36,39-49, 55,59,60 |
| Y | N, Bennetzen et al, J. Biol. Chem., Volume 257, 1982, pages 3026-3031. | 1-36,39-49, 55,59,60 |
| Y | N, Sue et al, Proc. Natl. Acad. Sci. USA, Volume 80, 1983, pages 3651-3655. | 1-36,39-49, 51-60 |
| X | N, Sue et al, Proc. Natl. Acad Sci. USA Volume 80, 1983, pages 3651-3655 | 14,15,24,34, 36,58 |
| Y | N, Wallace et al, Nucleic Acids Research, Volume 9, 1981, pages 879-894 | 1-36,39-49, 51-60 |
| Y | N, Hamer et al, Nature, Volume 281, 1979, pages 35-40. | 42-46 |
| Y,P | US,A, 4,442,205, Published 10 April 1984, Hamer et al. | 42-46 |
| Y | US,A, 4,399,216, Published 16 August 1983, Axel et al. | 14,15,17-36, 42-46 |
| Y | US,A, 4,411,994, Published 25 October 1983, Gilbert et al. | 42-46 |
| Y | US,A, 4,538,397, Published 06 July 1982 Gilbert et al | 42-46 |
| X | US,A, 4,399,216, Published 16 August 1983, Axel et al | 14,15,24, 34,36,58 |

167

Form PCT-ISA-210 (extra sheet) (October 1981)

174

AM670167800                                               AM-ITC 00952467

)

)

Exhibit No. 2

)

175

AM670167801

AM-ITC 00952468

#6

IN THE UNITED STATES PATENT
AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application of | ) | "PRODUCTION OF |
| | ) | |
| FU-KUEN LIN | ) | ERYTHROPOIETIN" |
| | ) | |
| Serial No. 675,298 | ) | Group Art Unit 127 |
| | ) | |
| Filed November 30, 1984 | ) | Examiner:  J. Martinell |

DECLARATION ACCOMPANYING PETITION TO MAKE
SPECIAL BECAUSE OF ACTUAL INFRINGEMENT
(37 C.F.R. §1.102 & M.P.E.P. §708.02)

   The undersigned, MICHAEL F. BORUN, herewith
declares as follows:

   I am an Attorney at Law, licensed to practice
before the Bar of the State of Illinois and the United
States Patent and Trademark Office (Registration No.
25,447).  I am an attorney of record for Fu-Kuen Lin,
inventor of the subject matter disclosed and claimed in the
above-identified application Serial No. 675,298, and have
been engaged as a legal counsel of the assignee of record
(Reel 4352, Frame 075), Kirin-Amgen, Inc., a California
corporation, 1900 Oak Terrace Lane, Thousand Oaks,
California  91320.

   I prepared and filed the above-identified applica-
tion and all parent U.S. Patent applications identified
therein (i.e., Serial No. 561,024, filed December 13, 1983;
Serial No. 582,185, filed February 21, 1984; and Serial No.
655,841, filed September 28, 1984).  I am familiar with the
subject matter claimed in Serial No. 675,298.

   I make this Declaration for the purpose of relat-
ing certain facts known by me to be true and certain infor-
mation believed by me to be true, which facts and informa-
tion are pertinent to a concurrently filed Petition to Make

176

AM670167802                                                     AM-ITC 00952469

Special.  Specifically, the facts and information related herein are of the type described in M.P.E.P. §708.02 II concerning showings necessary to support a Petition to Make Special because of actual infringement.

### 1. General Statement Concerning The Subject Matter Disclosed And Claimed

The focus of the discoveries described in the present patent application is erythropoietin ("EPO"), a protein hormone critically involved in regulation of the body's production of red blood cells.  Prior to the invention, EPO was only available in minute quantities (principally by means of isolation from extremely low concentration natural sources such as the urine of aplastic anemia patients) and only a small part of the chemical structure of EPO was known, .  Employing unique detection methods, the inventor isolated the genetic material (DNA) which codes for cellular production of EPO.  This DNA was characterized (sequenced), allowing for the revelation in this application of the protein's primary chemical structure (amino acid sequence) which had eluded scientific determination over decades of intense research.  Recombinant methods were carried out by the inventor which allowed for large scale production of pure erythropoietin by cells in culture and which assured that enough EPO could be made available for human clinical trials now in progress, in the treatment of chronically anemic kidney dialysis patients.

The claims of the present application are principally directed to contributions of the inventor in the form of DNA sequences which "encode" EPO and to uses of these sequences in recombinant procedures for large scale production of pure, biologically active EPO along with a

177

- 1 -
177

AM670167803

AM-ITC 00952470

whole family of other new products (such as EPO analogs and fragments) which are "related" to EPO in terms of correlation based on chemical structures first revealed in this application.

### 2. Showing With Respect To Evidence Of Actual Infringement

I have attached hereto printed materials which I believe are pertinent to the showing required under M.P.E.P. §708.02 II(1) to the effect that "there is an infringing device or product actually on the market or method in use".

### (a) Elanex Corporation.

Attached hereto as Exhibit "A" is a copy of correspondence dated January 2, 1986 from Mr. Lawrence H. Thompson of Elanex Corporation, Bellevue, Washington, to Mr. R. A. Schoellhorn of Abbott Laboratories.  This document states:  (1) that Elanex Corporation has "cloned, expressed and produced EPO at commercial levels" (emphasis supplied); (2) that the EPO product produced by Elanex has "in vitro activity and invivo (sic) activity"; (3) that Elanex "cell lines have reached levels of production satisfactory for commercial production" (emphasis supplied); (4) that Elanex is "currently taking proposals from nationally known producers of product (sic) in cell line technology"; (5) that Elanex Corporation has "isolated the technology with respect to use for commercial production" (emphasis supplied); and (6) that Elanex is in a position to "send a sample of our product" for testing in the context of making arrangements for "Exclusive U.S. Distribution rights to our EPO".

178

- 7 -

AM670167804                                    AM-ITC 00952471

(b)  <u>Genetics Institute, Inc.</u>

Attached hereto as Exhibit "B" are copies of a cover page and pages 2, 3 and 4 of a document entitled "Annual Report 1985" by Genetics Institute, Inc., Cambridge, Massachusetts.  In this document, it is stated with respect to erythropoietin that Genetics Institute has: "...<u>produced recombinant EPO</u> which is fully functional in animal model systems.  <u>We have supplied bulk protein</u> to Boehringer Mannheim GmbH and Chugai Pharmaceutical Co Ltd., our collaborative partners on EPO, and expect to see EPO enter human clinical trials for treatment of the anemia due to chronic renal failure in 1986" (emphasis supplied).  The document also states that:

> "Genetics Institute will be responsible for developing a commercial process for EPO and also has the right to manufacture a substantial portion of Boehringer Mannheim's clinical trial and eventual commercial product requirements. Boehringer Mannheim will be responsible for the conduct of human clinical trials and eventual product marketing and distribution.  Licensing fees for product development and <u>contractual fees for the supply of bulk material</u> to EPO clinical trials are substantial and are being <u>realized over the period 1985 to 1987</u>" (emphasis supplied).

Attached hereto as Exhibit "C" is a copy of the cover and pages 3, 5-7, 14-15, and 19-21 of an April 11, 1986, Preliminary Prospectus of Genetics Institute, Inc. This document also refers to use by Genetics Institute of DNA sequences encoding EPO (page 15) for large scale production of the protein for projected clinical application by corporate partners of Genetics Institute.  Statements in the Prospectus are believed to acknowledge the early filing of the present application (page 19) and the use of recombinant produced EPO in existing clinical trials by Applicant's assignee (page 21).

- / -

179

AM670167805                                        AM-ITC 00952472

3.  Showing With Respect To Tim of
    Actual Knowledge of Infringement

The document originating with Elanex Corporation
which is attached hereto as Exhibit "A" is believed to have
been received by officers of Applicant's assignee,
Kirin-Amgen, Inc., on or about January 13, 1986.  The
Genetics Institute Annual Report document whose pages are
attached hereto as Exhibit "B" is believed to have been
received by officers of applicant's assignee, Kirin-Amgen,
Inc., on March 3, 1986.  The Genetics Institute Preliminary
Prospectus, whose pages are attached as Exhibit "C", was
received shortly after its issue date of April 11, 1986.
Exhibit "D" (discussed infra) was received shortly after its
publication in 1985.

4.  Showing With Respect To Comparison With
    Claims of Application S.N. 675,298

In the course of my review of the Elanex
Corporation document attached hereto as Exhibit "A", I have
noted reference to cloning and expression and production of
in vitro and in vivo-active erythropoietin at commercial
levels.  The use of the term "cloning" with respect to
erythropoietin, in my understanding and experience, consti-
tutes an admission that Elanex Corporation is presently in
possession of a "purified and isolated DNA sequence coding
for procaryotic or eucaryotic host expression of a polypep-
tide having part or all of the primary structural conforma-
tion and one or more of the biological properties of eryth-
ropoietin" as claimed in claim 17 of application Serial No.
675,298.  It is my further understanding that "expression"
and "production" as referred to in the Elanex Corporation

180

- 8 -
15 172

document could only refer to recombinant expression of erythropoietin accomplished through use of vectors as claimed in claim 63 of the present application, transformed or transfected host cells as claimed in claim 64, and production processes as claimed in claim 70.

Similarly, upon review of the Genetics Institute documents attached hereto as Exhibits "B" and "C", it is my understanding and belief that the development of commercial "recombinant" production processes resulting in the supply and sale for profit of "bulk" quantities of erythropoietin protein to collaborative partners admittedly has been accomplished by Genetics Institute through use of DNA sequences, expression vectors, transformed or transfected hosts, and production processes as claimed respectively in claims 17, 63, 64 and 70 of application Serial No. 675,298. My belief is reinforced in part by the descriptions set out in a publication (attached as Exhibit "D" hereto) in Nature, 313, 806-810 (1985) wherein authors of the publication, characterized as employees of Genetics Institute, describe their uses of DNA sequences, vectors, host cells, and production processes as are claimed in the present application to produce polypeptide products as claimed in the present application.

### 5. Opinion On Infringement

Based upon my review of the documents attached hereto as Exhibits "A", "B", "C" and "D", it is my opinion that at least some of the claims (including, but not limited to, claims 17, 61, 62 and 69) of the present application are unquestionably being infringed in the United States at the present time by Elanex Corporation and by Genetics Institute, Inc.

181

6.  Statement With Respect To Prior Art

Commencing prior to the filing of parent U.S. application Serial No. 561,024 on December 13, 1983, on an essentially continuous basis thereafter, and through to the present, I have taken what I believe to be substantial steps to acquire knowledge of the prior art pertinent to the claims pending in the present application Serial No. 675,298.  These steps have included the authorization of the performance of computer assisted searches through data bases reasonably assumed by me to provide information concerning pertinent prior art in the form of literature references, published U.S. and foreign patents, and foreign patent applications.  I have also taken steps to familiarize myself with items of prior art which were cited in the course of preliminary examination of foreign patent applications corresponding to application Serial No. 675,298 and in the course of PTO examination on the merits of claims in parent U.S. Patent Application Serial No. 561,024.  Based on the above-described searching for and review of items of prior art, I believe myself to possess a "good knowledge of the pertinent prior art" with respect to the claimed subject matter and specifically those provisionally elected claims of application Serial No. 675,298 which relate to DNA sequences, vectors, host cells and recombinant methods for production of erythropoietin.

7.  Statement With Respect
To Allowability Of The Claims

It is my belief that all of the claims presently pending in U.S. application Serial No. 675,298 are directed to allowable subject matter under the Patent Laws of the United States.

**182**

I further declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further, that these statements were made with the knowledge that willful, false statements and the like so made are punishable by fine or imprisonment or both, under Section 1001 of Title 18 of the United States Code and that such willful, false statements may jeopardize the validity of the application or document or any patent resulting therefrom.

Michael F. Borun

Date: _April 23, 1986._

183

- 8 -



**American Type Culture Collection**

12301 Parklawn Drive • Rockville, MD 20852 USA • Telephone: (301) 881-2600 Telex: 908-768

BUDAPEST TREATY ON THE INTERNATIONAL RECOGNITION OF
THE DEPOSIT OF MICROORGANISMS FOR THE PURPOSES OF PATENT PROCEDURE

INTERNATIONAL FORM

RECEIPT IN THE CASE OF AN ORIGINAL DEPOSIT ISSUED PURSUANT TO RULE 7.3
AND VIABILITY STATEMENT ISSUED PURSUANT TO RULE 10.2

To: (Name and Address of Depositor or His. Her Attorney)

Michael F. Borun, Esq.
Marshall, O'Toole et al
Two First National Plaza
Chicago, Illinois 60603

ON BEHALF OF:  Amgen
1900 Oak Terrace Lane
Deposited on behalf of:   Thousand Oaks, California 91320
(Attention: Fu-Kuen Lin)

Identification reference given by the DEPOSITOR          Accession number given by the ATCC

Saccharomyces cerevisiae with RK81          20733
Saccharomyces cerevisiae with YSDP4          20734

The deposit(s) identified above was(were) accompanied by:

_____ a scientific description

__xx__ a proposed taxonomic designation: _____ Saccharomyces cerevisiae

The deposit(s) identified above was(were) received on __November 21, 1984__ by this International Depository Authority
and has(have) been accepted.

At your request:

_____ We will inform you of all requests for the strain(s) for 30 years.

__xx__ We will not inform you of all requests for the strain(s)

__xx__ The strain(s) will be made available if a patent office signatory to the Budapest Treaty certifies one's right to receive,
or if a U.S. Patent is issued citing the strain(s).

_____ The strain(s) are available to the scientific public upon request.

The strain(s) will be maintained for a period of at least 30 years after the date of deposit, and for a period of at least five years
after the most recent request for a sample. The United States, as well as many other countries, is a signatory to the Budapest Treaty.

The viability of the culture(s) identified above was tested on _____ April 1, 1985 _____
On that date, the said culture(s) was(were) viable.

INTERNATIONAL DEPOSITORY AUTHORITY:          Signature of person having the power to represent the ATCC:
American Type Culture Collection
12301 Parklawn Drive
Rockville, Maryland 20852 .USA

(Mrs.) Bobbie A. Brandon, Head
Professional Services Department
Date: __April 2, 1985__

Form BP 4
Form BP 4

177 455

184

AM670167810                                                        AM-ITC 00952477