# EXHIBIT H-16

**16**

AM670168015

AM-ITC 00952682



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 675,298 | 11/30/84 | | |

| EXAMINER |
|---|
| TANENHOLTZ |

| ART UNIT | PAPER NUMBER |
|---|---|
| 127 | 16 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) _Mike Borun_    (3) _____

(2) _Al Tanenholtz_    (4) _____

Date of interview _5/1/87_

Type: ☒ Telephonic  ☐ Personal (copy is given to  ☐ applicant  ☐ applicant's representative).

Exhibit shown or demonstration conducted:  ☐ Yes  ☒ No.  If yes, brief description: _____

Agreement  ☐ was reached with respect to some or all of the claims in question.  ☒ was not reached.

Claims discussed: _primarily claims 73, 77 and 96_

Identification of prior art discussed: _Assay technique of Goldwasser in Endocrinology Vol 97_

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Indicated to Mike Borun that limiting claims to isolated DNA sequences encoding polypeptide having erythropoietin activity of specific physiological functions would potentially define over rejection of record. Called Borun later on same day to inform him that new art has been found and that new rejection based on monoclonal antibody to erythropoietin as a probe would have to be made_

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1–7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

PTOL-413 (rev. 1-81)

Examiner's Signature

_Alvin E Tanenholtz_

_393_

**ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER**

381

Serial No.  675,298                    2

Art Unit  127

    The sequences on pages 38-40 designated as Table
V; on pages 43-47 designated as Table VI; on page 50 as
Table VII; on page 67 as Table IX; on page 69 as Table
XI; on page 71 as Table XIII; on page 72 as Table XIV;
on page 77 as Table XVI; on page 79 as Table XVIII; on
page 81 as Table XX and on page 82 as Table XXI are not
in fact Tables but drawings.  As such they should be
presented as official drawings and applicant is so
required.  In this regard it should be noted that Tables
V VI submitted as part of an Exhibit are not official
drawings since an exhibit is an improper way of pre-
senting drawings.  They should be submitted separately.
Moreover, the designation on drawings that they are also
Tables is improper and inaccurate.  Note that in con-
forming to this requirement applicant should renumber
the remaining Tables.

    The previously approved citation of Documents A13,
A15 and A16 has been withdrawn since those documents
have not been submitted.

    Claims 73-102 are  rejected under 35 U.S.C. 112,
first and second paragraphs, as the claimed invention is
not described in such full, clear, concise and exact
terms as to enable any person skilled in the art to make
and use the same, and/or for failing to particularly
point out and distinctly claim the subject matter which
applicant regards as the invention.  The recitation of
markush member (c) in claim 73

375

382

al No. 675,298                           3

Art Unit 127


          is indefinite and unduly broad.  It is not
clear what is meant by the recitation "but for the dege-
neracy of the genetic code."  Also the language "would
hybridize ..." is permissive and thus not an absolute
limitation.  Further the Markush member (c), and the
sequence of claim 77 and 96 appear to embrace substan-
tially all known DNA sequences since the isolated DNA
sequence is not designated as encoding for erythro-
poietin.  One that encodes for a protein having "a"
therapeutic activity of erythropoietin is not the same
thing.  In order to embrace the subject matter of that
Markush member (c) a separate claim drawn to an isolated
DNA sequence encoding an erythropoietin selected from
the group consisting of human and monkey erythropoeitin
would be acceptable.  The embodiments of claims 77 and
96 could properly be expressed as for example an iso-
lated DNA sequence consisting of a DNA sequence encoding
a polypeptide having the structure sufficiently duplica-
tive of that of a naturally-occurring erythropoietin to
allow possession of the biological properties of being
able to cause bone marrow cells to increase hemoglobin
synthesis and iron uptake and stimulate reticulocyte
response.  Claim 74 appears to read on naturally
occurring erythropoeitin producing cells.  Claims 84, 86,
87, 89, 90 and 99 are redundant of claim 77 or claim 96
since the DNA sequence has no memory of its creation.


                    376                           383

ial No. 675,298                    4

Art Unit    127


Claim 100 absent the designation "isolated" reads on

naturally occurring mutant erythropoietin sequences.

The following is a quotation of the appropriate
paragraphs of 35 U.S.C. 102 that form the basis for the
rejections under this section made in this Office
action:

A person shall be entitled to a patent unless-

(a)the invention was known or used
by others in this country, or
patented or described in a printed
publication in this or a foreign
country, before the invention
thereof by the applicant for
patent.

The following is a quotation of 35 U.S.C. 103 which

forms the basis for all obviousness rejections set forth

in this Office action:

A patent may not be obtained though
the invention is not identically
disclosed or described as set forth
in section 102 of this title, if the
differences between the subject
matter sought to be patented and the
prior art are such that the subject
matter as a whole would have been
obvious at the time the invention
was made to a person having ordinary
skill in the art to which said sub-
ject matter pertains. Patentability
shall not be negatived by the manner
in which the invention was made.

Subject matter developed by another
person, which qualifies as prior art
only under subsection (f) and (g) of
section 102 of this title, shall not
preclude patentability under this
section where the subject matter and
the claimed invention were, at the
time the invention was made, owned
by the same person or subject to an
obligation of assignment to the same
person.

377

384

AM670168019                                        AM-ITC 00952686

Serial No. 675,298                          5

Art Unit  127


Claims 73-79, 81, 84, 85, 88 and 91-99 are rejected under 35 U.S.C. 102 (b) as anticipated by or, in the alternative, under 35 U.S.C. 103 as obvious over Talmadge et al who disclose the expression of a mammalian protein using recombinant DNA transformed microorganisms.  In view of the rejections under 35 USC 112 supra, the claims are deemed to embrace the recombinant materials disclosed by Talmadge et al.

Claims 73-103 are rejected under 35 U.S.C. 103 as being unpatentable over any of Goldwasser et al (US 4,558,005) of record, Weiss et al (PNAS Vol. 79) of record and Egrie (US 4,558,006) taken in view of either Young et al or Broome et al and in further view of Ullrich et al or Martial et al. Goldwasser, Weiss et al and Egrie teach the preparation of a monoclonal antibody to human erythropoietin.  Young et al and Broome et al teach a process of isolating genes using antibody probes.  More specifically, Young et al teach isolating unknown foreign antigenic proteins encoded by antigen producing clones of a lambda gt11 recombinant cDNA library by using antibody probes.  The foreign gene is inserted into the galactosidase gene of the lamba phage so as to result in a fused protein.  Ullrich et al and Martial teach a basic process for isolating mRNA and converting it into a cDNA library for use in cloning and expressing mammalian genes.  It would be obvious to prepare erythropoietin as  a fused peptide by extracting

398

AM670168020                    AM-ITC 00952687

Serial No. 675,298                          6

Art Unit   127


the messenger RNA for erythropoietin from kidney cells

known to be rich therein and converting that mRNA to a

cDNA library in the manner taught by Ullrich et al or

Martial.  If desired, substituting the lambda gt 11

phage library vector of Young et al for its advantages

would be an obvious choice.  It would further be obvious

to use the Young et al or Broome et al gene isolating

technique together with erythropoietin antibody of the

primary references as a probe for isolating a clone pro-

ducing erythropoietin.  At best only routine genetic

engineering techniques would be involved.



ATaneholtz/klc

703/557-3920

6-18-87


ALVIN E. TANENHOLTZ
PRIMARY EXAMINER
ART UNIT 127


399

386

AM670168021                                          AM-ITC 00952688