# EXHIBIT H-20

20

AM670168060

AM-ITC 00952727

IN THE UNITED STATES PATENT
AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application of: | ) | "PRODUCTION OF |
| | ) | |
| FU-KUEN LIN | ) | ERYTHROPOIETIN" |
| | ) | |
| Serial No: 675,298 | ) | Group Art Unit 127 |
| | ) | |
| Filed:  November 30, 1984 | ) | Examiner - A. Tanenholtz |

APPLICANT'S AMENDMENT AND REPLY
UNDER 37 C.F.R. §1.111 AND 1.115

Hon. Commissioner of Patents
    and Trademarks
Washington, D.C.  20231

Sir:

This is in response to the Office Action dated June 21, 1987 in the above-identified application.  Reconsideration and allowance of all claims is respectfully requested in view of the following amendments and remarks.


AMENDMENTS


IN THE SPECIFICATION

At page 25, following line 5 of the original text, delete the entire text of the insertion requested in the amendment dated October 3, 1986 and insert in place thereof the following: --Reference is made to FIGURES 1 through 21, wherein:  FIGURE 1 is a graphic representation of a radio-immunoassay analysis of products of the invention; FIGURES 2 through 4 illustrate vector constructions according to the invention; and, FIGURES 5 through 21 are DNA and polypeptide sequences according to the invention.--

At page 37, line 6, please delete the entire text of the insertion requested in the amendment dated October 3, 1982 [i.e., delete "duplicated as FIGURE 5 comprising portions 5A, 5B and 5C"].

422

At page 37, line 6, please delete "Table V" and insert --FIGURE 5--.

At page 37, line 6, please delete "Table" and insert --FIGURE--.

Please delete the entire text of pages 38 through 40.

At page 41, line 1, please delete "Table V" and insert in place thereof --FIGURE 5--.

At page 42, line 25, please delete the entire text of the insertion requested in the amendment dated October 3, 1986 [i.e., ", duplicated as FIGURE 6 comprising portions 6A, 6B, 6C, 6D and 6E"].

At page 42, line 25, please delete "Table VI" and insert in place thereof --FIGURE 6--.

Please delete the entire text of pages 43 through 47.

At page 48, line 1, please delete "Table VI" and insert in place thereof --FIGURE 6--.

At page 48, line 34, please delete "Table VI" and insert in place thereof --FIGURE 6--.

At page 49, line 1, please delete "Table" and insert in place thereof --FIGURE--.

At page 49, line 6, please delete "Table" and insert in place thereof --FIGURE--.

At page 49, line 8, please delete "Table 6" and insert in place thereof --FIGURE 6--.

At page 49, line 15, please delete "Table" and insert in place thereof --FIGURE--.

At page 49, line 16, please delete "Table VII, below," and insert in place thereof --FIGURE 9--.

- 7 -

4 /5

423

AM670168062                                        AM-ITC 00952729

At page 49, line 18, please delete "Table" and insert in place thereof --FIGURE--.

At page 49, line 27, please delete "Table 6" and insert in place thereof --FIGURE 6--.

Please delete the entire text of page 50.

At page 63, line 35, please delete "Table 6" and insert in place thereof --FIGURE 6--.

At page 65, line 34, please delete "Table 6" and insert in place thereof -- FIGURE 6--.

At page 66, line 12, please delete "Tables VIII through XIV below" and insert in place thereof --FIGURES 10 through 15 and 7--.

Please delete the entire text of pages 67 through 72.

At page 73, line 1, please delete "Table VIII" and insert in place thereof --FIGURE 10--.

At page 73, lines 6 and 7, please delete "Table IX" and insert in place thereof --FIGURE 11--.

At page 73, line 21, please delete "(Tables XI and XIII)" and insert in place thereof --(FIGURES 13 and 15)--.

At page 73, line 23, please delete "Tables X and XII" and insert in place thereof --FIGURES 12 and 14--.

At page 73, line 26, please delete "Table XI" and insert in place thereof --FIGURE 13--.

At page 73, line 32, please delete the entire text of the insertion requested in the amendment of October 3, 1986 [i.e., "duplicated as Figure 7"].

At page 73, line 32, please delete "Table XIV" and insert in place thereof --FIGURE 7--.

- 7 -

416

424

AM670168063                                           AM-ITC 00952730

At page 74, line 29, please delete "Table XIV" and insert in place thereof --FIGURE 7--.

At page 75, line 28, please delete the entire text of the insertion requested in the amendment dated October 3, 1986 [i.e., "(the last-mentioned Table being duplicated as FIGURE 8)"].

At page 75, line 28, please delete "Tables XV through XXI" and insert in place thereof --FIGURES 16 through 21 and 8--.

At page 75, lines 30 and 31, please delete "Tables XV, XVII and XIX" and insert in place thereof --FIGURES 16, 18 and 20--.

At page 75, line 32, please delete "Tables XVI, XVIII and XX" and insert in place thereof --FIGURES 17, 19 and 21--.

Please delete the entire text of pages 77 through 82.

At page 83, line 21, please delete "Table XXI" and insert in place thereof --FIGURE 8--.

At page 89, line 16, please delete "Table VI" and insert in place thereof -- FIGURE 6--.

At page 90, line 15, please delete "Table V" and insert in place thereof --FIGURE 5--.

At page 90, line 16, please delete "Table VI" and insert in place thereof --FIGURE 6-.

At page 90, lines 29 and 30, please delete "Table V and VI" and insert in place thereof --FIGURES 5 and 6--.

At page 94, line 6, please delete "Tables V and VI" and insert in place thereof --FIGURES 5 and 6--.

At page 94, line 14, please delete "Tables V and VI" and insert in place thereof --FIGURES 5 and 6--.

- 4 -

417

425

At page 94, line 33, please delete "mammlain" and insert in place thereof --mammalian--.

**IN THE DRAWING**

Please enter drawing Figures 5 through 21 in accordance with the "Letter" submitted concurrently here-with.

**IN THE CLAIMS**

Please cancel claims 73-103 without prejudice.

Please insert new claims 104-134.

--104. A purified and isolated DNA sequence encoding erythropoietin, said DNA sequence selected from the group consisting of:

(a) the DNA sequences set out in Figures 5 and 6 or their complementary strands; and

(b) DNA sequences which hybridize under stringent conditions to the DNA sequences defined in (a).

105. A purified and isolated DNA sequence consisting essentially of a DNA sequence encoding human erythropoietin.

106. A purified and isolated DNA sequence consisting essentially of a DNA sequence encoding monkey erythropoietin.

107. A procaryotic or eucaryotic host cell trans-formed or transfected with a DNA sequence according to claim 104, 105 or 106 in a manner allowing the host cell to express erythropoietin.

426

*5*
~~108.~~  A biologically functional circular plasmid or viral DNA vector including a DNA sequence according to claim ~~104~~*1*, ~~105~~*2*, or ~~106~~*3*.

*6*
~~109.~~  A procaryotic or eucaryotic host cell stably transformed or transfected with a DNA vector according to claim ~~108~~*5*.

*7*
~~110.~~  A purified and isolated DNA sequence consisting essentially of a DNA sequence encoding a polypeptide having ~~a primary structural conformation~~ *an amino acid sequence* sufficiently duplicative of that of erythropoietin to allow possession of the biological property of causing bone marrow cells to increase production of reticulocytes and red blood cells, and to increase hemoglobin synthesis or iron uptake.

*8*
~~111.~~  A cDNA sequence according to claim ~~110~~*7*.

*9*
~~112.~~  A monkey species erythropoietin coding DNA sequence according to claim ~~111~~*8*.

*10*
~~113.~~  A DNA sequence according to claim ~~112~~*9* and including the protein coding region set forth in Figure 5.

*11*
~~114.~~  A genomic DNA sequence according to claim ~~110~~*7*.

*12*
~~115.~~  A human species erythropoietin coding DNA sequence according to claim ~~114~~*11*.

427

AM670168066                    AM-ITC 00952733

*13*
116. A DNA sequence according to claim 115 and including the protein coding region set forth in Figure 6.

*14*
117. A DNA sequence according to claim 110 and including one or more codons preferred for expression in E.coli cells.

*15*
118. A DNA sequence according to claim 117, coding for expression of human species erythropoietin.

*16*
119. A DNA sequence according to claim 118 including the protein coding region set forth in Figure 7.

*17*
120. A DNA sequence according to claim 110 and including one or more codons preferred for expression in yeast cells.

*18*
121. A DNA sequence according to claim 120, coding for expression of human species erythropoietin.

*19*
122. A DNA sequence according to claim 121 including the protein coding region set forth in Figure 8.

*20*
123. A DNA sequence according to claim 110 covalently associated with a detectable label substance.

*21*
124. A DNA sequence according to claim 123 wherein the detectable label is a radiolabel.

- 7 -

420

AM670168067                                           AM-ITC 00952734

125. *(22)* A single-strand DNA sequence according to claim 121. *(20)*

126. *(23)* A procaryotic or eucaryotic host cell transformed or transfected with a DNA sequence according to claim 110, 111 or 114 *(7, 8, 11)* in a manner allowing the host cell to express said polypeptide.

127. *(24)* A transformed or transfected host cell according to claim 126 *(23)* which host cell is capable of glycosylating said polypeptide.

128. *(25)* A transformed or transfected mammalian host cell according to claim 127. *(24)*

129. *(26)* A transformed or transfected COS cell according to claim 128. *(25)*

130. *(27)* A transformed or transfected CHO cell according to claim 128. *(25)*

131. *(28)* A biologically functional circular plasmid or viral DNA vector including a DNA sequence according to claim 110. *(7)*

132. *(29)* A procaryotic or eucaryotic host cell stably transformed or transfected with a DNA vector according to claim 131. *(28)*

133. *(30)* A DNA sequence according to claim 110 *(7)* coding for [Phe$^{15}$]hEPO, [Phe$^{49}$]hEPO, [Phe$^{145}$]hEPO, [His$^{7}$]hEPO,

- 9 -

429

AM670168068                                        AM-ITC 00952735

[Asn$^2$ des-Pro$^2$ through Ile$^6$]hEPO, [des-Thr$^{163}$ through Arg$^{166}$]hEPO, or [△27-55]hEPO.

134. A purified and isolated DNA sequence as set out in Figures 5 or 6 or the complementary strand of such a sequence.

## REMARKS

Upon entry of the above-requested amendments to the specification, <u>all</u> of the original "Tables" in the specification, except for original Tables I through IV, will have been "converted" to Figures.

Upon entry of the above-requested amendments to the claims, claims 104 through 134 will remain in the application and will be correlated to prior claims 73 through 103 in the manner indicated in the following Table.

430

AM670168069                                             AM-ITC 00952736

| Prior Claim | New Claim | Prior Claim | New Claim |
|---|---|---|---|
| 73 | 104, 105, 106 | 90 | 122 |
| 74 | 107, 126-130 | 91 | 123 |
| 75 | 108 | 92 | 124 |
| 76 | 109 | 93 | 125 |
| 77 | 110 | 94 | 131 |
| 78 | 111 | 95 | 132 |
| 79 | 112 | 96 | 110 |
| 80 | 113 | 97 | -- |
| 81 | 114 | 98 | -- |
| 82 | 115 | 99 | -- |
| 83 | 116 | 100 | 133 |
| 84 | -- | 101 | -- |
| 85 | 117 | 102 | -- |
| 86 | 118 | 103 | 134 |
| 87 | 119 | | |
| 88 | 120 | | |
| 89 | 121 | | |

The amendments to the claims are being made with-
out prejudice to Applicant to pursue claims of the same or
similar scope as those cancelled in a duly-filed continuing
application.

A.   The Claimed Subject Matter

As related in Applicant's prior communications,
the claims remaining in this application relate to DNA
sequences, DNA vectors, transformed and transfected host
cells useful in the preparation of biologically active
erythropoietin products including, e.g., polypeptide frag-
ments and analogs of erythropoietin.

Independent claim 104 is thus directed to purified
and isolated DNA sequences substantially defined by refer-
ence to the DNA sequences revealed in Figures 5 and 6 and
independent claims 105 and 106 are specifically directed to

- 10 -
4/23

431

AM670168070

AM-ITC 00952737

purified and isolated DNA sequences encoding human and
monkey erythropoietin.  Dependent claims 107-109 respec-
tively relate to host cells transformed or transfected with
erythropoietin expressing DNA, to vectors including such DNA
and to hosts transformed with such vectors.

Independent claim 110 is directed generally to DNA
sequences which code for procaryotic or eucaryotic host
expression of polypeptides having amino acid sequences
sufficiently duplicative of that of erythropoietin to allow
for specified erythropoietin properties.  Dependent claims
111-134 are directed to presently preferred forms of DNA
sequences, vectors, and transformed or transfected hosts
based on the claim 110 DNA sequences.  Claims 127-130 speci-
fically relate to the host cell systems exemplified by
Examples 7, 8 and 10.

B.  The Outstanding Office Action, The
    Rejections Of The Claims And
    Applicant's Responses Thereto

In the communication dated March 12, 1987,
Applicant responded to numerous outstanding objections to
the specification and rejections to the claims under §§112,
101, 102 and 103.  Applicant understands that the amendments
and remarks set out in the March 12, 1987 communication have
resulted in reconsideration and withdrawal of the following
rejections propounded in the Action dated February 5, 1987:

(1)  The Section 112 (2nd paragraph) rejection of
certain claims on grounds of their reference to drawings;

(2)  The "provisional" Section 101 rejection of
claims based on copending parent patent applications;

(3)  The rejection of certain claims under Section
112 (2nd paragraph) for incorporation of brackets;

- 12 -

AM670168071                                                    AM-ITC 00952738

(4) The rejection of certain claims under Section 112 (1st paragraph) due to alleged lack of specificity of reference to "hybridization";

(5) The rejection of certain claims under Section 103 based on the Sue et al. reference when considered with the Breslow et al. or Woods et al. references;

(6) The rejection of certain claims under Section 103 based on the Sue et al. reference and other specified secondary references; and

(7) The rejection of at least certain claims under Section 102(b) based on the Talmadge et al. reference.

Due to the number and variety of new objections and rejections set forth in the Action dated June 21, 1987, Applicant submits that the issues raised therein are best treated by means of responses which "track" the order of their appearance in the Action.

1. The Renewed Objections To The Disclosure Based On Reference To Drawings And Figures May Properly Be Withdrawn

As indicated above, application has now "converted" all Tables in the specification (other than Tables I through IV) into Figures. Applicant disagrees that the submission of these Figures 5 through 8 in a separate envelope labelled as an Exhibit was an inappropriate or improper way of presenting the drawings. Notwithstanding this disagreement, Applicant is concurrently submitting a complete set of new Figures 5-21 under cover of a "Letter" requesting entry of the same. Despite the fact that Applicant maintains that reference to Tables, in sequence in the Figures, would facilitate reading of the specification, none of the Figures include notations of their historical basis in Tables of the specification.

- 12 -

435

433

2. No Basis Exists For Rejection
   Of The Claims Under 35 U.S.C. §112
   (First or Second Paragraphs)

In the Action dated June 21, 1987, certain new
rejections of prior claims 73 through 102 were propounded.
More specifically, the Examiner first objected to element
"(c)" of claim 73 as indefinite and unduly broad, stating
that the recitation, "but for the degeneracy of the genetic
code" was unclear, and that the recitation, "would
hybridize" was improperly "permissive". Applicant respect-
fully disagrees with the Examiner's position. As clearly
delineated in the specification (see, e.g., page 94, lines
15-24), element "(c)" of claim 73 (which has it origins in
original claim 14) clearly delineates as within the scope of
Applicant's invention those naturally-occurring allelic or
manufactured or mutagenized genomic and cDNA sequences
which, but for the degeneracy of the genetic code, would
hybridize to the Figure 5 or Figure 6 sequences. Applicant
submits that the specification fully "enables" such
sequences (see, e.g., the ECEPO and SCEPO, E.coli and yeast
preference codon DNA sequences) and that a person of
ordinary skill in the art would clearly understand what was
embraced by the recitations of claim. Clearly if one manu-
factures or mutagenizes a gene to include, e.g., a position
4 arginine-specifying codon AGG rather than CGC as in Figure
6, the prospects for hybridization between the manufactured
sequence and the Figure 6 sequence are diminished. The <u>same</u>
amino acid is encoded, however, and <u>but for the degeneracy
of the genetic code</u> the three-base codon provided <u>would</u>
hybridize.

Despite this position, Applicant acknowledges the
Examiner's notation of equivalence in scope of alternatively
worded claims:

- 14 -

AM670168073                                                    AM-ITC 00952740

●
>"In order to embrace the subject matter of
that Markush member (c) a separate claim
drawn to an isolated DNA sequence encoding an
erythropoietin selected from the group con-
sisting of human and monkey erythropoietin
would be acceptable."

In order to expedite prosecution of this application has

reconstituted prior claim 73 as new independent claims 104,

105 and 106.

>It was the Examiner's further position that:

>"...the sequence of claim 77 and 96 appear to
embrace substantially all known DNA sequences
since the isolated DNA sequence is not desig-
nated as coding for erythropoietin.  One that
encodes 'a' therapeutic activity of erythro-
poietin is not the same thing."

This position was taken despite the notation in the

Examiner's Interview Summary dated March 4, 1987 to the

effect that amendment of the claims "to recite a therapeutic

activity of EPO" would result in obviation or dropping of

prior Section 112 rejections.  Applicant disagrees with the

Examiner's new position objecting to reference to "a thera-

peutic activity" of erythropoietin and notes that the thera-

peutic activities of erythropoietin are clearly disclosed in

the present specification and cited background prior art in

a manner meeting all requirements of Section 112.

>Despite this position, Applicant acknowledges the

Examiner's notation of equivalence in scope of alternatively

worded claims:

>"The embodiments of claims 77 and 96 could
properly be expressed as for example an
isolated DNA sequence consisting of a DNA
sequence encoding a polypeptide having the
structure sufficiently duplicative of a
naturally-occurring erythropoietin to allow
possession of the biological properties of
being able to cause bone marrow cells to
increase hemoglobin synthesis and iron uptake
and stimulate reticulocyte response."

- 14 -

437

435

In order to expedite prosecution of this application has reconstituted prior claims 77 and 96 as new claim 110.

It was the Examiner's further new position that claim 74 (which replaced prior claim 15 with only a change in dependency) "appears to read on naturally-occurring erythropoietin producing cells". Applicant disagrees. Claim 74 (which is now replaced by claim 107) clearly recites that the subject host cells have had erythropoietin product encoding DNA inserted into them, with or without use of vectors, in a manner allowing the inserted DNA (or future "generations" of such DNA replicated in the host's progeny) to be expressed as an erythropoietin product. The Examiner's attention is respectfully drawn to the text spanning specification page 94, line 25 through page 95, line 15.

It was also the Examiner's further new position that claims 84, 86, 87, 89, 90 and 99 specifying manufactured DNA sequences are redundant of claim 77 or 96 "since the DNA sequence has no memory of its creation". In order to expedite prosecution of this application, Applicant has cancelled claims 84 and 99 and has reconstituted prior claims 85, 86, 87, 88, 89 and 90 to delete reference to the "manufactured" characterization of the DNA sequence in view of the Examiner's notation of redundancy and equivalence.

Finally, the Examiner has objected to claim 100, holding that absent the designation, "isolated", it reads on "naturally-occurring mutant" erythropoietin sequences with the additions, replacements or deletions specified in the claim. Applicant disagrees, noting that the specific analogs recited in prior claim 100 are not in any way known to correspond to any naturally-occurring mutants of erythro-

AM670168075                                        AM-ITC 00952742

poietin and are entirely of Applicant's creation.  The Examiner's position therefore constitutes mere specula- tion.  Applicant notes, however, that prior independent claim 100 has been reconstituted as claim 128 which in turn, is dependent on claim 110 which includes the term, "isolated".  The rejection is thus mooted.

The foregoing remarks are believed to establish that claims 104-134 are in compliance with all requirements of Section 112.

### 3.  No Basis Exists For Rejection Of The Claims Under Section 102(b)/103 Based on Talmadge et al.

It was the Examiner's position that the grounds asserted for rejection of prior claims under Section 112 allowed for claims 73-79, 81, 84, 85, 88, 91-99 to be "deemed to embrace the recombinant materials disclosed by Talmadge et al.".  Applicant strenuously disagrees but believes that the issue is entirely mooted in view of the requested amendments to the claims.

### 4.  No Basis Exists For Rejection Of The Claims Under Section 103

It was the Examiner's position that the subject matter of all claims was rendered statutorily obvious upon consideration of the disclosures of Goldwasser et al., Weiss, et al. and Egrie taken in view of _either_ Young et al. _or_ Broome et al. _and_ in further view of Ullrich et al. or Martial et al.  The Examiner's specific argument was as follows:

> "Goldwasser, Weiss et al and Egrie teach the preparation of a monoclonal antibody to human erythropoietin.  Young et al and Broome et al teach a process of isolating genes using

- 16 -

437

antibody probes.  More specifically, Young et al <u>teach isolating unknown</u> foreign antigenic proteins encoded by antigen producing <u>clones</u> of a lambda gt11 recombinant <u>cDNA library</u> by using antibody probes.  The foreign gene is inserted into the galactosidase gene of the lamba phage so as to result in a fused protein.  Ullrich et al and Martial teach a basic process for isolating mRNA and converting it into a cDNA library for use in cloning and expressing mammalian genes.  It would be obvious to prepare erythropoietin as a fused peptide by <u>extracting the messenger RNA for erythropoietin from kidney cells known to be rich therein</u> and converting that mRNA to a cDNA library in a manner taught by Ullrich et al or Martial.  If desired, substituting the lambda gt 11 phage library vector of Young et al for its advantages would be an obvious choice.  It would further be obvious to use the Young et al. or Broom et al gene isolating technique together with erythropoietin antibody of the primary references as a probe for isolating a clone producing erythropoietin.  At best only routine genetic engineering techniques would be involved."  (Emphasis supplied.)

For the reasons which follow, Applicant respectfully disagrees and submits that the subject matter herein claimed is patentably distinct from the disclosures and suggestions of the cited references.

Applicant notes at the outset that the presently claimed subject matter involves novel <u>DNA</u>, <u>not</u> a novel method for obtaining it.

Applicant is in agreement with the Examiner's characterization of the Goldwasser et al., Weiss et al. and Egrie references.  They do "teach the preparation of a monoclonal antibody to human erythropoietin".  Applicant simply notes that the antibody of Weiss et al. is the same as that of Goldwasser et al. which, in turn, differs from that of Egrie.  The Egrie antibody recognizes an epitope presented in the amino terminal of erythropoietin.  The epitope recognized by the Goldwasser antibody is not identified in the references.  Applicant disagrees with the Examiner's charac-

- 17 -



AM670168077                                    AM-ITC 00952744

terizations of the remaining references and with the
Examiner's "combination" of the reference with those of
Goldwasser et al., Weiss et al. and Egrie as allegedly
allowing the claimed invention to be obtained by an ordi-
narily skilled worker through practice of "at best only
routine genetic engineering techniques".

Applicant first disagrees with the Examiner's
position that the Ullrich et al. and Martial et al. refer-
ences would place in the hands of an ordinarily skilled
worker the wherewithal for "extracting messenger RNA for
erythropoietin from kidney cells know to be rich therein and
converting that mRNA to a cDNA library". In the work
reported by Ullrich et al., mRNA for insulin was isolated
from cells only upon the solution of a problem in the low
proportion of insulin-producing B cells in the pancreas.
Specifically, Ullrich et al. report at page 1313 that:

> "The isolation of insulin mRNA is complicated
> by the low proportion of the endocrine B
> cells (which produce insulin) in the pancreas
> and the high levels of ribonuclease in the
> dominant acinar cells. These problems have
> been circumvented by adapting procedures for
> the relatively large scale isolation of
> islets of Langerhans (5) (in which the
> majority of the cells are B cells) from the
> rat pancreas, and by using a method that
> allows the extraction of intact, translatable
> mRNA from sources rich in ribonuclease (6)."

The workpieces for the Ullrich et al. cDNA preparation work
were highly specialized cells within a specific tissue type
within an organ known for decades to be the source of the
protein whose DNA was sought.

Likewise, Martial et al. isolated growth hormone
messenger RNA from a well defined, overproducing tissue
source -- human pituitary tumor cells. Note that in testing
these cells for the relative abundance of growth hormone

- 19 -
431

439

AM670168078    AM-ITC 00952745

mRNA, the messenger RNA preparations were subjected to in vitro translation with the result that: "...hGH mRNA appears to be the most abundant species in the acromegalic tumors". (See page 603, left column.)

Against this background, it is proper to note that the Examiner has provided no support for his conclusions that human kidney cells are "known to be rich [in erythropoietin messenger RNA]" and that a kidney cDNA library would include multiple cDNA's encoding erythropoietin. One can make a cDNA library from the mRNA of essentially any cell. This does not, however, allow the conclusion that the library will include even one translatable copy of the DNA sought. Indeed the art previously considered and relied upon by the PTO belies such a conclusion. Farber et al. (References C31, 32 and 33) and Lee-Huang (PTO reference R; Applicant's reference C68) constructed kidney cell cDNA libraries which did not allow for erythropoietin gene isolation. Lee-Huang affirmatively states with respect to erythropoietin that:

> "The biogenesis of this hormone is still not clearly defined, but the kidney is known to play a key role." (Page 2708, left column.)

Lee-Huang goes on to describe the difficulties of obtaining viable human kidney samples (most healthy tissue is reserved for transplants) and then the rigors involved in securing kidney tumor cells which could be characterized as potential high producers of erythropoietin (and hence, arguably likely to have high levels of erythropoietin messenger RNA). At page 2709, Lee-Huang states:

- 18 -
432

440

"The scarcity of viable human kidney samples
and their low level of Ep make effective
cellular fractionation and accurate Ep esti-
mation extremely difficult.  It was therefore
necessary for us to search for sources with
elevated Ep levels and greater tissue avail-
ability.  It has been well documented that
erythrocytosis may be associated with various
renal tumors.  Tumor extracts from some renal
carcinoma patients have shown an increased
level of EP, and such tumors were often con-
sidered as Ep-producing tumors.  We have
conducted an extensive search for surgical
renal carcinomas with Ep-producing acti-
vity.  Ep activity was assayed in vivo by the
exhypoxic polycythemic mouse method.  Of 36
renal cell carcinoma extracts examined, 2
demonstrated high Ep activity (0.9 and 3.0 Ep
units/ml), 6 showed moderate activity (0.1 to
0.7 Ep units/ml), and the rest had either
marginal (<0.1 Ep units/ml) or undetectable
Ep activity.  The samples with high Ep bio-
activity were used for mRNA preparation."
(Citations omitted)

Thus, as pointed out in Applicant's submission of October 3,

1986, there was, at the time of the invention, a serious

problem securing what could be recognized as erythropoietin-

producing cells, much less cells producing high levels of

the protein or cells "known to be rich" in erythropoietin

messenger RNA such as would provide a cDNA library with

multiple copies of erythropoietin-encoding DNA.

For the Examiner to characterize the publications

of Ullrich et al. and Martial et al. as readily enabling the

preparation of a library including translatable human eryth-

ropoietin cDNA by an ordinarily skilled worker is

unsupported and in fact contradicted by other references

comprising the totality of the art.

Applicant vigorously disagrees with the Examiner's

conclusion that Young et al "teach isolating unknown foreign

antigenic proteins encoded by antigen producing clones of a

lambda gt11 recombinant cDNA library by using antibody

probes".  Young et al. did no work with a "cDNA library" in

- 20 -

4 33

AM670168080                    AM-ITC 00952747

the sense that such might actually be generated from a
collection of RNA's according to Ullrich et al and Martial
et al. The authors employed two specific "model" DNA's
encoding mouse α-amylase and chicken albumin.. (See "con-
struction of Model Recombinants" at page 1196). With such
model recombinant materials in hand and with a "model" high
affinity polyclonal antibody to the encoded polypeptide in
hand,* to the encoded polypeptide in hand, Young et al. were
able to demonstrate the general operability of their model
system. This is a far cry from a "teaching" of a procedure
that could be straightforwardly applied to isolate genes for
any "unknown foreign antigenic proteins" such as erythro-
poietin.

     The disclosures of the Broome et al. reference add
nothing to disclosures of Young et al. that as would elevate
their demonstration of a model system to a "teachings of
reasonably successful means for isolating erythropoietin
from a cDNA library derived from erythropoietin mRNA
enriched cells. Apparently aware of the inherent limita-
tions of their two antibody "model" system (employed to
detect a model gene for beta-galactosidase) Broome et al.
conclude on page 2749 that:

          "Uses for this immunological screening
     procedure include direct identification of clones
     containing specific foreign DNA segments, __if they__

---

*        There is at least some basis for arguing that
         polyclonal antibodies could be better for practicing
         Young et al. or Broome et al. procedures in a true
         cDNA library screen. Note, for example, that a high
         affinity polyclonal antibodies would, in principle, be
         more likely to recognize an expression product of a
         cDNA fragment encoding a carboxy terminal region than,
         for example, a monoclonal antibody to an amino
         terminal sequence. Because cDNA is made from mRNA by
         "backward" copying, the least abundant species of cDNA
         made would be one encoding a full length polypeptide
         including the amino terminal.

- 2~ -

4 3⊈

AM670168081                                    AM-ITC 00952748

<u>express a translation product either fortuitously</u>
<u>or after in vitro manipulations to that end</u>".
(Emphasis supplied.)

When properly viewed in the context of their
limited teachings with respect to use of known cell sources
of high levels of mRNA and use of model systems designed to
optimize "identification" of genes, the combined disclosures
of Ullrich et al., Martial et al., Broome et al., and Young
et al. provide no true scientific basis for the Examiner's
conclusion that their composite methodologies could
<u>routinely</u> be applied to obtain the claimed subject matter.

One further point is highly pertinent in this
regard. Lee-Huang tried to isolate an erythropoietin gene
by antibody screening methods and, by all objective criteria
presently available, failed to do so. (See Applicant's
communication of October 3, 1986, at page 29 through 37
wherein restriction mapping of erythropoietin-encoding human
DNA and size analysis of <u>in vitro</u> mRNA expression products
strongly supports the conclusion that erythropoietin-
encoding DNA was never isolated by Lee-Huang, despite her
access to an allegedly erythropoietin-rich message
source).

Applicant respectfully submits that the combined
teachings of products and procedures of the art references
now relied upon by the Examiner simply do not provide a
basis for characterizing the subject matter of the claims as
"obvious" within the context of Section 103. At best, the
Examiner can only state that the invention <u>might</u> have been
achieved by means other than those employed by Applicant.
Such speculation is not an appropriate basis for a conclu-
sion of obviousness. Were Applicant claiming an invention
in an antibody screening method for isolating erythro-

- 24 -

133

AM670168082

AM-ITC 00952749

oietin-encoding DNA, the art relied upon might be perti-
nent. Applicant here claims specific new products never
before in the possession of the public. That he might have
brought them into existence by some other, untested, means
alluded to by the prior art references is not pertinent to
patentability.

### CONCLUSION

The foregoing remarks are believed to establish
that claims 104-134 are in condition for allowance and an
early notice thereof is solicited.

Consistent with Applicant's position, it is noted
that Applicant's March 12, 1987 communication included a
proper authorization under 37 C.F.R. §1.311(b) and that upon
allowance this application may be "tagged" for priority in
printing according to M.P.E.P. §1309.

In the event that contact with Applicant's counsel
is deemed appropriate, Applicant requests that the Examiner
telephone associate counsel, Steven M. Odre, Esq. (Reg. No.
29,094), at (805) 499-5725.

Respectfully submitted,

MARSHALL, O'TOOLE, GERSTEIN,
MURRAY & BICKNELL

By _____
Michael F. Borun (Reg. No. 25,447)
A Member of the Firm
Attorneys for Applicants
Two First National Plaza
Chicago, Illinois  60603
(312) 346-5750

Chicago, Illinois
_July 10_____, 1987

- 25 -

436

444

AM670168083                    AM-ITC 00952750

NATURE VOL. 313 28 FEBRUARY 1985 ——— LETTERS TO NATURE ——— 807

**Fig. 2** Nucleotide and amino-acid sequence of an erythropoietin fetal liver cDNA. A 95-nucleotide probe identical to that described in Fig. 1 was prepared and used to screen a fetal liver cDNA library in the vector λCh21A[20] using standard plaque screening[44] procedures. Three independent positive clones (designated λHEPOFL6 (1,350 bp) λHEPOFL3 (1,700 bp) and λHEPOFL12 (1,400 bp)) were isolated following screening of 1 × 10⁶ plaques. The entire insert of λHEPOFL13 was sequenced following subcloning into M13. The 5'- and 3'-untranslated sequences are in lower case letters, the coding region in upper case letters. Small filled triangles indicate positions of introns as determined from sequencing of the erythropoietin gene (Fig. 3). The deduced amino-acid sequence is given above the nucleotide sequence and is numbered beginning with 1 for the first amino acid of the mature protein. The putative leader peptide is indicated by capital letters for the amino-acid designations. Cysteine residues in the mature protein are indicated additionally by SH and potential N-linked glycosylation sites by an asterisk. The underlined amino acids indicate those residues identified by N-terminal protein sequencing or by sequencing tryptic fragments of erythropoietin as described in Fig. 1. Partial underlining indicates residues in the amino-acid sequence of certain tryptic fragments which could not be determined unambiguously. Partial DNA sequence analysis indicated that λHEPOFL6 contained an additional 39 nucleotides of the 5'-untranslated sequence (see Fig. 3) and ended at the Arg codon at amino-acid position 162, but was otherwise identical to λHEPOFL13 in the residues sequenced. Complete sequence analysis of λHEPOFL6 indicated that it was identical to λHEPOFL13 except that the 5'-untranslated sequence and first 13 nucleotides of the coding region were absent and replaced by the 3' 107 nucleotides of the intron between exons I and II (see Fig. 3). Thus, the λHEPOFL6 cDNA clone seems to be derived from a partially spliced mRNA that processed out correctly all intervening sequences except for the one between exons I and II.



AM670168084                                    AM-ITC 00952751

NATURE VOL 313 28 FEBRUARY 1985



**Fig. 3** Structure of the erythropoietin gene. The relative sizes and positions of four independent genomic clones (λHEPO1, 2, 3, and 6) described in the text are illustrated by the overlapping lines in *a*. The thickened line indicates the position of the erythropoietin gene. The region containing the gene was sequenced completely from both strands using an exonuclease III generated series of deletions (C.S., unpublished observations) through this region. *b*, A schematic representation of five exons coding for erythropoietin mRNA. The precise 5' boundary of exon I is unknown (indicated by the broken box). The 5' boundary of exon I shown here is derived from λHEPOFL13, which has a 5' untranslated region 39 nucleotides longer than that of λHEPOFL13. The protein coding portion of the exons are darkened. *c*, Complete nucleotide sequence of the region. Exon sequences are given in capital letters; intron sequences in lower case letters. The location of exons I-V are indicated by the bars with numerals on the left. Because of difficulties in interpreting sequencing gel data from the very G + C-rich regions of exon I, the level of certainty for exon I sequence is reduced slightly.

438

446

AM670168085

AM-ITC 00952752