# EXHIBIT M-1

Dockets.Justia.com

UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/113,178 | 10/23/87 | LIN | D-8273 |

MICHAEL F. BORUN, ESQ.
MARSHALL, O'TOOLE, GERSTEIN, MURRAY &
BICKNELL
TWO FIRST NATIONAL PLAZA
CHICAGO, IL 60603

| EXAMINER |
|---|
| KUSHAN, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 186 | 13 |

DATE MAILED: 06/20/89

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on 6/5/89    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ___ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I**    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449
4. ☐ Notice of informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474
6. ☐ _____

**Part II**    SUMMARY OF ACTION

1. ☒ Claims 67-75 _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims 1-66 _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims 67-75 _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections **MUST** be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____ ; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

RECEIVED
JUN 23 1989
MARSHALL O'TOOLE
AM 27 033459

PTOL-326 (Rev. 7 - 82)    EXAMINER'S ACTION

AM-ITC 00473403

Art Unit 186                                                          2

Serial Number 113,178

15.   The text of those sections of Title 35, U.S. Code not included
in this action can be found in a prior Office action.

16.   Claims 67 to 75 are rejected under the judicially created
doctrine of obviousness-type double patenting as being unpatentable
5  over the prior invention as set forth in claim 1 to 11 of of U.S.
Patent No. 4,667,016.  Although the conflicting claims are not
identical, they are not patentably distinct from each other because
the process claims of commonly owned U.S. Patent No. 4,667,016 teach
a procedure for purification of the recombinant EPO claimed in the
10  instant application.  The ordinary worker, in view of the cited
disclosure, would be able to produce the EPO instantly claimed using
the claimed process in said patent.  Furthermore, the commonly owned
patent teaches as the preferred embodiment use of the recombinantly
produced EPO as taught by Lin et al.  As a result, the instantly
15  claimed recombinantly produced, biologically active in vivo
erythropoeitin is obvious in view of the cited claims of the
commonly owned patent.

16.   The obviousness-type double patenting rejection is a
judicially established doctrine based upon public policy and is
20   primarily intended to prevent prolongation of monopoly by
prohibiting claims in a second patent not patentably distinct
from claims in a first patent.  In re Vogel, 164 USPQ 619 (CCPA
1970).  A timely filed terminal disclaimer in compliance with 37
CFR 1.321(b) would overcome an actual or provisional rejection on
25   this ground provided the conflicting application or patent is

AM 27 033460

Art Unit 186                                                          3

Serial Number 113,178

shown to be commonly owned with this application.  See 37 CFR
1.78(d).

17.    Claims 67 to 75 are rejected under 35 U.S.C. 112, first and
second paragraphs, as the claimed invention is not described in such
5    full, clear, concise and exact terms as to enable any person skilled
in the art to make and use the same, and/or for failing to
particularly point out and distinctly claim the subject matter which
applicant regards as the invention.

The claims as presented remain deficient under 35 USC 112
10   first and second paragraphs.  The following modifications are
suggested to overcome this rejection.

1    In claim 67, line 3, the phrase "a primary structural
conformation" should be changed to "a primary structure and
conformation...".  This modification makes it clear that the
15   recombinant protein possess the primary structure (e.g. the amino
acid sequence of naturally occurring human EPO) and the tertiary
or spatial conformation of human EPO to the extent that the
recombinant EPO retains the biological activity of the human EPO
in vivo.

20   2.  The claim must be limited to recombinant human
erythropoeitin.  As presented, a non human analog which possesses
enough similarity to native human erythropoeitin is encompassed
by the claims.  This breadth is not supported by the disclosure.
Applicant may recite that the exogenous DNA sequence codes for
25   human erythropoeitin.

3.    At lines 5 to 7 of claim 67, applicant presents a general
description of the biological activity of the recombinantly

**AM 27 033461**

AM-ITC 00473405

Art Unit 186                                                          4

Serial Number 113,178

produced EPO.  A more accurate description of the biological
effects of the protein which are observed upon administration in
vivo is found at page 10, lines 28 to 33.  Applicant should
recite in the claims the following description of the biological

5      effects observed upon administration of the recombinant EPO;

       ... sufficient for retention of the in vivo biological
       property of stimulation of the conversion of primitive
       precurser cells in the bone marrow into pro-
       erythroblasts which subsequently mature, synthesize

10      hemoglobin, and are released into the circulation as
       red blood cells...

This description of the observed biological in vivo response of
EPO particularly points out and describes in accurate detail what
the response will be, and with this description, the ordinary

15     worker finds clear direction in ascertaining what species of EPO
are encompassed by the claims presented.  Note also that the
phrase "sufficient for retention of" is also suggested for
inclusion in the claims, as this phrase clarifies the
relationship between the recombinant protein and the observed in

20     vivo effect of the protein.

4.  Applicant's claims encompass erythropoeitin produced
recombinantly in any eucaryotic cell line which has an average
carbohydrate composition which differs from naturally occurring
human EPO, and which possess a particular in vivo activity when

25     administered to humans.  The breadth of this claim exceeds the
scope of the disclosure, specifically because it encompasses EPO
produced in non-mammalian, eucaryotic cell hosts.  Applicant has
not shown how to produce biologically active in vivo species of
EPO produced by non-mammalian cell hosts.  The basis for this

30     point of the rejection arises from the lack of teaching in any
disclosure of a non-mammalian eucaryotic host produced
recombinant EPO which retains the recited biological in vivo

AM 27 033462

AM-ITC 00473406

Art Unit 186                                                            5

Serial Number 113,178

activity of native human EPO. Applicant is directed to the
disclosure of Sasaki et al, page 12059, right hand column, second
full paragraph. Sasaki et al state;

5
> "Interestingly, the erythropoietin produced
> in E.coli or yeast was inactive or very
> weakly active in vivo. On the other hand,
> the erythropoeitin produced in COS cells or
> Chinese hamster ovary cells was found to be
> fully active in vivo."

10      In view of the differences in the EPO produced by transfected
mammalian cells, and the EPO produced by non-mammalian eucaryotic
hosts such as yeast, the claims must be limited to recombinant
EPO produced by mammalian cell lines.

18.     Claims 67 to 73 are rejected under 35 U.S.C. 102(b) as
15      anticipated by or, in the alternative, under 35 U.S.C. 103 as
obvious over Sugimoto et al.

Sugimoto et al teach production of human EPO from isolated
lymphoblastic cell lines. The EPO produced by the teachings of this
disclosure has been shown by Sugimoto et al, and also summarized by
20      applicant, to possess erythropoeitic activity. The disclosed method
of production of human EPO also appears to yield amounts of the
protein sufficient for use in therapy.

Applicant has proven that human EPO isolated from urine is
distinct from the EPO produced recombinantly according to the
25      instant disclosure. It seems clear that the urinary derived EPO is
inactive in vivo, and this results presumably from a number of
factors, such as degradation of the EPO in the urine during

**AM 27 033463**

AM-ITC 00473407

Art Unit 186                                                                          6

Serial Number 113,178

purification.  Another possible source of the difference between the

recombinant and urinary EPO may lie in the source from which the two

species derive.  Isolation of EPO from aplastic anemic patients may

account for the lack of in vivo erythropoeitic activity of the

5    urinary species.

In any case, the distinction which has been proven between the

recombinant EPO and urine derived EPO cannot be relied upon to prove

a distinction of the recombinant and lymphoblastoid derived human

EPO.  The procedure of Sugimoto et al does not expose the human EPO

10    produced to the same sources of degradation or variance that the

urinary species of EPO is exposed.  It would seem more likely that

the lymphoblastoid produced EPO would be active in vivo, and not

identical to the urinary derived species.  Applicant must provide

for a distinction between the lymphoblastoid derived EPO and the

15    instantly claimed recombinant species.  Applicant is encouraged to

file a declaration in the form of the previous declaration of

Strickland, which provided evidence of a distinction between the

urinary and recombinant species.  In the alternative, applicant can

submit other evidence which characterizes the two species in a

20    manner which can be relied upon to overcome this rejection.

20.  Claims 67 to 75 are rejected under 35 U.S.C. 103 as being

unpatentable over Sugimoto et al in view of Papayannopoulo et al.

Claims 75 and 75 are directed to a conventional use of EPO,

namely administration to raise the hematocrit of a human host.  The

AM 27 033464

AM-ITC 00473408

Art Unit 186                                                              7

Serial Number 113,178

prior art of Sugimoto et al suggest pharmaceutical applications of
the isolated EPO produced by their methodology.  Although this
suggestion is a clear motivation to the ordinary worker to apply the
EPO produced by this method to a pharmaceutical regimen, it does not

5    disclose the particular details of administration.  The disclosure
of Papayannopoulo et al, however, do provide for general procedures
for administration of EPO in experimental animals.  This disclosure
would have enabled the ordinary worker to practice the instantly
claimed method of EPO therapy in view of the teachings of Sugimoto

10   et al.

21.   The submissions and response to the last office action are
sufficient to overcome the rejections of record over 35 USC 103
based on the disclosures of Miyake et al, Chiba et al, and Takezawa
et al. As shown by applicant, urinary EPO lacks in vivo biological

15   activity. Furhtermore, the evidence of secondary considerations
presented as the findings of fact of the ITC decision submitted
warrant removal of rejections over prior art which teach isolation
of EPO from urine.

22.   No claims are allowed.

20   23.   This action includes rejections based upon new grounds, and as
such, the finality of the previous Office action is withdrawn.

24.   Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Examiner

AM 27 033465

AM-ITC 00473409

Art Unit 186                                                              8

Serial Number 113,178

Kushan whose telephone number is (703) 557-7627.  Any inquiry of a
general nature or relating to the status of this application should
be directed to the Group receptionist whose telephone number is
(703) 557-0664.

5

jpk
June 14, 1989.

                                        *MM*
                              MARGARET MOSKOw...
                                  SUPERVISORY
                              PATENT EXAMINER
                                ART UNIT 186

AM 27 033466

AM-ITC 00473410