all arguments and provide "all document and things" before Roche has specified its contentions and the bases underlying such contentions. When Roche fully and fairly answers Amgen's Interrogatories Nos. 9, 10, and 11, Amgen will be in position to fully respond to Roche's Interrogatory No. 5. Amgen further objects to this interrogatory to the extent that it prematurely calls for the opinions of Amgen's expert witnesses, which by the Court's order will be provided in the form of report(s) on April 27, 2007.

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its rights to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen provides the following response to this interrogatory:

The subject matter as a whole of each Asserted Claim would not have been obvious at the time the inventions were made to a person having ordinary skill in the art to which said subject matter pertains, and in possession of the DNA sequence encoding EPO (but without the benefit of Dr. Lin's patent specification). Documents and evidence supporting this conclusion have been produced and include the prosecution histories of the patents-in-suit, the interference records of the interferences involving the patents-in-suit, and the depositions and trial testimony of various witnesses in the interferences and litigations involving the patents-in-suit. These documents have been produced to defendants.

**INTERROGATORY NO. 6:**

Describe whether Amgen contends that in the event that Roche sells MIRCERA™ in the U.S. during the pendency of this lawsuit, Amgen will be seeking monetary damages in this case, and the nature and extent of these monetary damages.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the foregoing General Objections, Amgen makes the following Specific Objections to this interrogatory: Amgen objects to this interrogatory on the grounds that it calls for speculation as to what may happen. Amgen's intention is that its complaint for patent

infringement is adjudicated before Roche attempts to sell any product in the United States. As the facts currently appear, Roche is not likely to have FDA approval prior to the close of fact discovery in this case. Amgen's response, if made at this time, would be unduly speculative, as it would be based on sales which Roche asserts have yet to be made.

Amgen's Amended Complaint seeks a declaratory judgment of infringement under 28 U.S.C. §§ 2201 and 2202, and "such other and further relief as the Court deems proper." If damages accrue prior to the trial and decision in this action, Amgen may or may not seek damages in this action or in a separate action. Based upon discovery of Roche's action provided to date, Amgen states that it is not seeking monetary damages for any past acts, but Amgen is not forfeiting its right to a claim for future damages based on future infringing acts of Roche and does not contend that it will never seek such a claim.

**INTERROGATORY NO. 7:**

Describe any attempts by Amgen to modify EPO or G-CSF proteins, including attempts successful or otherwise to create pegylated compounds using EPO or G-CSF such that the chemical, physical, pharmacological and/or pharmacokinetic properties of the chemically modified compound differs from the EPO or G-CSF starting material and identify all documents and things that support Amgen's response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the foregoing General Objections, Amgen makes the following Specific Objections to this interrogatory: Amgen objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and lacks relevance under Rule 26 to the extent that it seeks an identification of "any attempts by Amgen to modify EPO or G-CSF," "all documents and things," and "the chemical, physical, pharmacological and/or pharmacokinetic properties of the chemically modified compound differs from the EPO or G-CSF starting material." Amgen further objects to this interrogatory to the extent it seeks information relating to pegylation of G-CSF on the grounds that it is not relevant under Rule 26 to any issue in this proceeding, under the

Court's January 3, 2007 Order. Accordingly, Amgen will limit its response to this interrogatory to pegylated EPO.

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its rights to supplement or amend its response to this interrogatory after the claims have been construed and any additional necessary discovery has been received, Amgen provides the following response to this interrogatory:

Amgen identifies below documents which contain information relevant to Amgen's efforts to create pegylated EPO and from which the answer to the interrogatory may be derived or ascertained under Rule 33 (d): AM-ITC 00576260 - AM-ITC 00576266; AM-ITC 00088595 - AM-ITC 00088599; AM-ITC 00546389 - AM-ITC 00546400; AM-ITC 00556529 - AM-ITC 00556541; AM-ITC 00556542 - AM-ITC 00556548; AM-ITC 00556587 - AM-ITC 00556601; AM-ITC 00558618 - AM-ITC 00558620; AM-ITC 00575499 - AM-ITC 00575508; AM-ITC 00575535 - AM-ITC 00575544; AM-ITC 00576214 - AM-ITC 00576225; AM-ITC 00577727 - AM-ITC 00577738; AM-ITC 00591872 - AM-ITC 00591877; AM-ITC 00591878 - AM-ITC 00591879; AM-ITC 00594217 - AM-ITC 00594218; AM-ITC 00932275 - AM-ITC 00932277; AM-ITC 01009711 - AM-ITC 01009713; AM-ITC 01089076 - AM-ITC 01089096; and AM-ITC 01091945 - AM-ITC 01092002.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen incorporates by reference its previous response and provides the following supplemental response to this interrogatory:

AM77000300 - AM77000350; AM77000414 - AM77000450; AM77000492 - AM77000511; AM77000521 - AM77000564; AM440003873 - AM440003874; AM440003876; AM440003877 - AM440003878; AM440003879; AM440003880 - AM440003883; AM440003890 -

AM440003894; AM440230707; AM440230737 - AM440230767; AM6701078325 - AM6701078330; AM6701078334 - AM6701078340; AM6701078341 - AM6701078343; AM6701078344 - AM6701078350; AM6701078351 - AM6701078355; AM6701078356 - AM6701078362; AM6701078363 - AM6701078371; AM6701078372 - AM6701078375; AM6701078376; AM6701078377; AM-ITC00552143 - AM-ITC00552145; AM-ITC00565466 - AM-ITC00565495; AM-ITC00565497 - AM-ITC00565509; AM-ITC00565510 - AM-ITC00565537; AM-ITC00592546 - AM-ITC00592558; AM-ITC00592737 - AM-ITC00592747; AM-ITC00592757; AM-ITC00593196 - AM-ITC00593197; AM-ITC00817100 - AM-ITC00817137; AM-ITC01091372 - AM-ITC01091387; AM77002299 - AM77002305; AM77002316 - AM77002341

**INTERROGATORY NO. 8:**

Separately for each claim of the patents-in-suit, identify whether Amgen contends that the making, using, offering to sell or selling of ARANESP® is covered by any or all of the claims of the patents-in-suit, explain whether the making, using, offering to sell or sale is contended to be covered literally or by the doctrine of equivalents, and identify all documents and things that support or otherwise refute Amgen's response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the foregoing General Objections, Amgen makes the following Specific Objections to this interrogatory: Amgen objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, and lacks relevance under Rule 26. Amgen's ARANESP product is not accused of infringement in this action.

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen provides the following response to this interrogatory:

The making, using, offering to sell or selling of ARANESP® is covered by one or more of the claims of the patents-in-suit either literally or under the doctrine of equivalents. Documents that support this response include the intrinsic record of the patents-in-suit and documents sufficient to show Aranesp's structure, function, method of production and method of use. These documents include AM-ITC-29667-30100, AM44 0220452-473, AM44 0220474-503 and documents currently in process for production.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8**

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen incorporates by reference its previous response and provides the following supplemental response to this interrogatory:

As set forth in the ARANESP® product label, Amgen contends that the importing, making, using, offering to sell or selling of ARANESP® is covered (literally or equivalently) under unasserted claim 1 of the '698 Patent. Amgen reserves the right to amend this response should the Court construe any claim term in a manner that differs from Amgen's proposed constructions stated in its Response to Interrogatory No. 1.

**INTERROGATORY NO. 9:**

Describe whether Amgen contends that CERA is not materially changed pursuant to 35 U.S.C. § 271(g) from "human erythropoietin," as that term is used in the asserted claims of the patents-in-suite, any basis and/or evidence, and the identity of all documents and things that support or otherwise refute Amgen's response to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to the foregoing General Objections, Amgen makes the following Specific Objections to this interrogatory: Amgen objects to this interrogatory to the extent that none of Amgen's asserted process claims (as defined in Amgen's Response to Interrogatory No. 1) refer to "human erythropoietin" as the product produced by the claimed processes. For purposes of

responding to this interrogatory, Amgen assumes Defendants are seeking Amgen's contentions with respect to whether Defendants' peg-EPO product is "materially changed pursuant to 35 U.S.C. Section 271(g)" with respect to the product produced by Amgen's asserted process claims Amgen further objects to this interrogatory on the grounds that Amgen has only received limited discovery from Defendants, and that Defendants have refused to produce relevant evidence that is directly related to Amgen's infringement contentions. Until such time as Amgen has received such discovery, it cannot provide a complete response to this interrogatory. In particular, Amgen's ability to identify persons, documents, and things within Roche's possession, custody or control that relate to the subject matter of this interrogatory is limited by Roche's failure to provide fulsome and complete responses to Amgen's outstanding discovery requests.

Amgen further objects to this interrogatory to the extent that it prematurely calls for the opinions of Amgen's expert witnesses, which by the Court's order will be provided in the form of report(s) on April 27, 2007. Amgen objects that the interrogatory is overly broad and unduly burdensome to identify "all documents and things that support or otherwise refute Amgen's response to this interrogatory," particularly where such documents are cumulative to the information that Amgen has or will identify.

Subject to and without waiver of these Specific Objections and General Objection set forth above which are incorporated herein by reference, and with reservation of its right to supplement or amend its response to this interrogatory after the claims have been construed and necessary discovery has been received, Amgen provides the following response to this interrogatory:

Section 271(g), in pertinent part, provides: "Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such a process patent . . . . A product which is made by a patented process will, for the purposes of this title, not be considered to be so after-- (1) it is materially changed by subsequent processes . . . ." In construing § 271(g), the

Federal Circuit has considered whether (a) it would not be possible or commercially viable to make the accused product but for the use of the patented process and (b) the accused product is significantly changed in structure and properties from the product of the claimed process in a manner which changes the basic utility of the product.

Applying each of these tests to the products of the claimed and asserted processes, Amgen contends that CERA (*i.e*, peg-EPO) is not materially changed pursuant to 35 U.S.C. § 271(g) from the products of the asserted process claims of the patents-in-suit because peg-EPO comprises such products and those products confer peg-EPO's in vivo biological activity.

It cannot be reasonably disputed by defendants that the EPO portion of CERA is a product produced by the claimed processes. The addition of one or more peg molecules to the EPO does not alter the molecule in any relevant manner. Peg-EPO contains the same amino acid sequence, the same glycosylation pattern, the same in vivo biological activity, and the same therapeutic use as the EPO products produced according to Amgen's asserted process claims. Defendants' attachment of polyethylene glycol to the products produced according to Amgen's asserted process claims adds only a single covalent bond out of over 4000 bonds in such products. Peg-EPO could not have been made but for the use of Amgen's asserted process claims.

Documents supporting these contentions include: ITC-R-BLA-00006254–ITC-R-BLA-00007242; ITC-R-BLA-00007319–ITC-R-BLA-00007353; ITC-R-BLA-00007469–ITC-R-BLA-00008113; ITC-R-BLA-00008438–ITC-R-BLA-00014798; ITC-R-BLA-00019393–ITC-R-BLA-00019401; ITC-R-BLA-00021211–ITC-R-BLA-00021406; ITC-R-BLA-00022202–ITC-R-BLA-00022365; ITC-R-BLA-00039684–ITC-R-BLA-00039789; ITC-R-BLA-00039813–ITC-R-BLA-00039816; ITC-R-BLA-00045779–ITC-R-BLA-00045802; ITC-R-BLA-00045826–ITC-R-BLA-00045829; ITC-R-BLA-00152415–ITC-R-BLA-00152527; ITC-R-BLA-00039890–ITC-R-BLA-00045284; ITC-R-BLA-00045543–ITC-R-BLA-00045553; ITC-R-BLA-00151978–ITC-R-BLA-00152000; ITC-R-BLA-00019402–ITC-R-BLA-00019484; ITC-R-BLA-00020144–ITC-R-BLA-00021210; ITC-R-BLA-00021407–ITC-R-BLA-00022143;