# EXHIBIT C

Godfrey Decl. in Support of Amgen's Memorandum to it's Motion for Summary Judgment of No Obvious Type Double Patenting

Dockets.Justia.com

Case 1:05-cv-12237-WGY    Document 579-4    Filed 06/29/2007    Page 2 of 7

USDC - Depo: Harlow, Edward  6/20/2007  8:52:00 AM

```
 1   Exhibits: 1-8        Volume 1, Pages 1-281
 2            UNITED STATES DISTRICT COURT
 3         FOR THE DISTRICT OF MASSACHUSETTS
 4         Civil Action No. 05 Civ. 12237 WGY
 5         ---------------------------
     AMGEN INC.
 6
                Plaintiff
 7
     vs.
 8
     F. HOFFMANN-LA ROCHE LTD.,
 9
     ROCHE DIAGNOSTICS GmbH, and
10
     HOFFMANN-LA ROCHE INC.
11
                Defendants
12         ---------------------------
13
               VIDEOTAPED DEPOSITION OF
14         EDWARD E. HARLOW, JR., Ph.D.
15         Wednesday, June 20, 2007, 8:52 a.m.
                        ]
16            Duane Morris LLP
              470 Atlantic Avenue
17            Boston, Massachusetts
18
          ** TRANSCRIPT DESIGNATED CONFIDENTIAL ***
19
20         FARMER ARSENAULT BROCK LLC
               Reporting For:
21           LiveNote World Service
             221 Main Street, Suite 1250
22           San Francisco, California 94105
               Phone: 415-321-2300
23             Fax:  414-321-2301
24
     Reported by:
25   ALAN H. BROCK, RDR, CRR
```

USDC - Depo: Harlow, Edward  6/20/2007  8:52:00 AM

1   A.   I don't know.

2   Q.   Now, you've offer the opinion that Dr.

3   Lin's claims in suit are obvious over the

4   Strickland-Lai '016 patent; correct?

5   A.   Yes.

6   Q.   So your opinion regarding the

7   obviousness of Lin's patents in suit is based on a

8   one-way test; correct?

9   A.   That's my understanding.  Again, I'm

10  sort of at the edge here.

11  Q.   In other words, you offer no opinion in

12  your report as to whether the claims of the

13  Lai-Strickland '016 patent are obvious in light of

14  Dr. Lin's claims in suit.

15  A.   I have not offered an opinion on that.

16  Q.   And so if the Court determines that a

17  two- way test should apply in lieu of a one-way

18  test, you have no opinion that addresses that

19  scenario, do you?

20  A.   I haven't formed one yet, no.

21  Q.   You anticipated my question:  Do you

22  have an opinion as to whether the Lai patent is

23  obvious over the Lin patents in suit?

24  A.   I don't.

25  Q.   Do you know if Dr. Lin taught a method

1    EPO has a definition.  It demands knowledge of the

2    clone.  When you've got the clone, one of skill in

3    the art knows how to make recombinant EPO.

4       Q.    The words "recombinant EPO" did not

5    instruct or teach one of skill in the art how to

6    isolate or clone the EPO gene from the human genome,

7    did it?

8       A.    I don't know.

9       Q.    You don't know?

10      A.    Don't know.

11      Q.    You don't know if with the words

12   "recombinant EPO" alone one of skill in the art

13   could have isolated and cloned human EPO DNA?

14      A.    Don't know.  Haven't formed an opinion.

15   Haven't been asked to.

16      Q.    Are you aware of any disclosure other

17   than Dr. Lin's patent that identifies the isolated

18   EPO DNA sequence as of December 1983?

19      A.    I don't know of any other.

20      Q.    Your opinions that the claims in suit

21   are obvious and that making a recombinant EPO

22   protein would have been obvious assumes the

23   availability of the EPO DNA sequence; correct?

24      A.    Yes.

25      Q.    And are you aware of any source other

1  than Dr. Lin's '008 patent that would have made that

2  EPO DNA sequence available to one of skill in the

3  art?

4    A.   I don't.

5    Q.   So you assume that Dr. Lin's '008 patent

6  can be used as part of the prior art in assessing

7  the obviousness of the claims in suit; correct?

8        MR. BROMBERG:  Objection.

9    A.   Let's make sure we know exactly what

10 origin.  So would you try it one more time?

11   Q.   You assume that Dr. Lin's '008 patent

12 can be used as prior art against Dr. Lin's claims in

13 suit for purposes of your obviousness opinions;

14 correct?

15       MR. BROMBERG:  Objection.

16   A.   Yes.

17   Q.   Why do you assume that?

18   A.   The comparison of the claim language

19 from the patents in suit back on '008.

20   Q.   I understand.  So you understand that

21 the '008 patent is a progenitor to each of the

22 claims in suit; correct?

23   A.   I do understand that.

24   Q.   Okay.  My question is, why do you assume

25 that the '008 patent is available as prior art

1    the subject we were discussing this morning, which

2    is your opinion that claim 10 of the '016 patent

3    would have rendered obvious Dr. Lin's claims in

4    suit.  Okay?  Do you have that in mind?

5    A.    Yes.

6    Q.    Now, your opinion that as of December

7    1983 one of skill in the art could have produced

8    recombinant EPO in mammalian cell culture based only

9    on the words of claim 10 of the '016 patent assumes

10   the availability of the isolated EPO DNA; correct?

11         MR. BROMBERG:  Objection.

12   A.    Assumes the availability of the EPO DNA,

13   yes.

14   Q.    And if it turns out that the '008

15   patent, Dr. Lin's '008 patent cannot be used as

16   prior art, cannot be used as prior art against the

17   claims in suit, there would be no identification or

18   isolation of EPO DNA available as prior art to one

19   of skill in the art for purposes of your '016

20   opinion; correct?

21         MR. BROMBERG:  Objection.

22   A.    I haven't spent any time thinking about

23   that.

24   Q.    Your opinion of obviousness in light of

25   the '016 patent depends on one of skill in the art

1    having available to him or her the EPO DNA sequence?

2    A.   Yes.

3    Q.   And if it turns out that the EPO DNA

4    sequence is not part of the prior art or public

5    knowledge as of December 1983, you have no opinion

6    as to whether or not the claims in suit would be

7    obvious in light of claim 10 of the '016 patent;

8    correct?

9    A.   I haven't considered that at all.  I

10   don't know the answer to that.

11   Q.   So you don't have an opinion on it.

12   A.   That's correct.

13   Q.   Now, the '016 patent and the claims of

14   the '016 patent are to a purification of recombinant

15   EPO; correct?

16   A.   That's correct.

17   Q.   Before the Lai and Strickland patent,

18   though, there were prior-art methods known for the

19   purification of EPO from natural sources; correct?

20   A.   That's my understanding, yes.

21   Q.   The patents in suit and the '933

22   specification in front of you refers to a Miyaki

23   seven-step protocol for the purification of EPO.

24   Does that sound familiar?

25   A.   It could be.  I don't recall.