```
            UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MASSACHUSETTS

                                    Civil Action
                                    No. 05-12237-WGY

* * * * * * * * * * * * * * * * *
                                *
AMGEN, INC.,                    *
                                *
        Plaintiff,              *
                                *
v.                              *   MARKMAN HEARING
                                *
F. HOFFMANN-LA ROCHE LTD,       *
ROCHE DIAGNOSTICS GmbH and      *
HOFFMANN-LA ROCHE, INC.,        *
                                *
        Defendants.             *
                                *
* * * * * * * * * * * * * * * * *

        BEFORE:  The Honorable William G. Young,
                 District Judge

APPEARANCES:

        DUANE MORRIS LLP (By Michael R. Gottfried,
   Esq.), 470 Atlantic Avenue, Suite 500, Boston,
   Massachusetts 02210
        - and -
        DAY CASEBEER MADRID & BATCHELDER, LLP (By
   Lloyd R. Day, Jr., Esq., Linda A. Sasaki-Baxley,
   Esq. and Jonathan Loeb, Ph.D.) 20300 Stevens Creek
   Boulevard, Suite 400, Cupertino, California 95014
        - and -
        McDERMOTT WILL & EMERY (By William G.
   Gaede, III, Esq.), 3150 Porter Drive, Palo Alto,
   California 94304
        - and -
        WENDY A. WHITEFORD, ESQ., Of Counsel,
   Amgen, Inc., One Amgen Center Drive, Thousand
   Oaks, California 91320-1789, on behalf of the
   Plaintiff


                                    1 Courthouse Way
                                    Boston, Massachusetts

                                    April 17, 2007
```

Page 2

1  A P P E A R A N C E S  (Cont'd)
2
3      BROMBERG & SUNSTEIN LLP (By Lee Carl
   Bromberg, Esq. and Julia Huston, Esq.), 125 Summer
4  Street, Boston, Massachusetts 02110
        - and -
5      KAYE SCHOLER LLP (By Leora Ben-Ami, Esq.,
   Howard Suh, Esq., Christopher T. Jagoe, Esq.,
6  Krista M. Rycroft, Esq., Thomas F. Fleming, Esq.
   and Jeanna Wacker, Esq.), 425 Park Avenue, New
7  York, New York 10022, on behalf of the Defendants

Page 3

1      THE CLERK: All rise. Court is in session, please
2  be seated.
3      Calling Civil Action 05-12237, Amgen v. Hoffmann-La
4  Roche.
5      THE COURT: Well, good morning, counsel, and would
6  counsel identify themselves for the record.
7      MR. DAY: Certainly, your Honor. Good morning.
8  Rusty Day representing Amgen. And with me I have my
9  partner, Linda Baxley, and Jonathan Lobe; also Bill Gaede
10 from McDermott, Will and Emery, Wendy Whiteford from Agmen,
11 and Mike Gottfried from Duane Morris.
12     THE COURT: Yes, speak up a little bit, Mr. Day --
13     MR. DAY: I will, your Honor.
14     THE COURT: -- when we get rolling.
15     Go ahead.
16     MS. BEN-AMI: Good morning, your Honor. Leora
17 Ben-Ami from Kaye Scholer for La Roche. And with me are
18 Howard Suh, Chris Jagoe, Krista Rycroft over there, Jeanna
19 Wacker, Tom Fleming, all from Kaye Scholer; Julia Huston and
20 Lee Bromberg from the Bromberg firm; and George Townsend
21 from La Roche is sitting in the back there.
22     THE COURT: Well, good morning.
23     Now, we've got some time to work together. Let me
24 sketch out the general parameters and I think they will be
25 familiar to you.

Page 4

1  Because this is going to be a jury case, as near as
2  I can see, and because we are at the trial preparation stage
3  that every day counts, I consider it incumbent on me at
4  least tentatively to make constructions today unless I'm
5  clearly at sea. You'll understand that the constructions
6  that I make today are law of the case in the sense that they
7  govern the further proceedings in this case, but I reserve
8  my right to modify them for good and sufficient reason.
9  Now, that -- and I think I have an obligation to explain my
10 reasoning in writing. But, as we talk things through today,
11 I am going to make every attempt to give you my best
12 judgment about the claim constructions so that further
13 proceedings may go forward intelligently and expeditiously.
14     Now, at my request you've all briefed this, what
15 you're framing is a stare decisis issue, and maybe I was a
16 little previous there. Maybe that's -- well, we'll see.
17 We'll see. I need not say anything about it until we get
18 rolling here. But it is a matter of interest to me.
19     We have a number of claims to be construed. But I
20 would like to start with the concern about therapeutically
21 effective, because that's been such a matter of analysis
22 both in this Court and in the Federal Circuit in a related
23 case. And with respect to the phrase in the patent at issue
24 here, patents at issue here, it would seem that the language
25 adopted by the Federal Circuit controls the construction

Page 5

1  adopted by the Federal Circuit.
2      And, Mr. Day, I'm going to let you start with this.
3  Here's why. You are a party to both the cases. I don't
4  have to look at this as pure matter of law. You are
5  litigating the issue. You have had, or Amgen here, not you,
6  Amgen has had a chance to fully brief, try and the like.
7  And the Federal Circuit's come up with what it's come up
8  with, and it seems to me, though conceivably there are
9  further appellate proceedings, that's not for me to say or
10 consider, I'm bound by what the Federal Circuit has said.
11     Isn't that right?
12     MR. DAY: Yes.
13     THE COURT: Okay. Well, then if that's so, if we
14 look at -- let's go to the language which most closely deals
15 with therapeutically effective. Where's that?
16     MR. DAY: Perhaps your Honor is thinking of '933,
17 claim 9, I believe, or --
18     THE COURT: Okay.
19     MR. DAY: I'm just trying to find the page. Claim
20 9.
21     THE COURT: Claim 9.
22     MR. DAY: Pharmaceutical composition comprising an
23 effective amount of a glycoprotein product effective for
24 erythropoietin therapy. Is that the --
25     THE COURT: Yes, that's it.

Page 26

1    MR. DAY: That's correct. She will, she will
2 disagree. It has been many, many years since this invention
3 was made and nobody has yet found another way to do what Lin
4 did. So, in the case of a pioneering patent, then in a
5 pioneering patent claims are ordinarily entitled to a
6 broader scope. Amgen's claims are both broad and they are
7 narrow. They are not uniformly broad. The impulse to claim
8 broad is not unchecked. There is also a reason to claim
9 narrowly, and Amgen claims narrowly as well.
10    THE COURT: To, to avoid anticipation.
11    MR. DAY: Not to avoid anticipation. By claiming
12 narrowly, you can delimit what it is that an accused
13 embodiment must have in order to infringe. If you claim a
14 lot then the accused embodiment has to have all of those
15 things. And that, of course, is what's going on here.
16 Roche is trying to blow this claim out to include more and
17 more things in the meaning of human EPO in order to argue we
18 don't have this, we don't have that, we don't have that.
19    So you can claim both broadly and you can claim
20 narrowly. So the question is in the context of this claim,
21 '422, claim 1, where you have to look at the entire claim
22 language, in the context of this claim what does the claim
23 term human erythropoietin mean. That's the issue for the
24 Court.
25    I have some binders, too, that I would like to hand

Page 27

1 up to the Court, if I may. Could you give them some to
2 opposing counsel.
3    Okay. And these are simply the slides that I will
4 be talking about.
5    The first thing that I want to illustrate for the
6 Court is the difference in the claim construction that Roche
7 proposes and Amgen proposes.
8    Amgen's construction is a protein having the amino
9 acid sequence of human EPO, such as the amino acid sequence
10 of EPO isolated from human urine.
11    Now, the question for the Court in considering
12 that, is that consistent with the other claim language, is
13 that consistent with the specification, is that consistent
14 with the prosecution history, as to what that term human
15 erythropoietin means in the context of the entire claim,
16 '422, claim 1.
17    Roche's construction differs. And I've highlighted
18 on the right what is importantly different about Roche's
19 construction. First of all, they say it's not a protein.
20 They say it's a glycoprotein. That means that it must have
21 glycosylation. It has the amino acid sequence of
22 erythropoietin isolated from human urine. So they agree
23 with us about the amino acid sequence. This argument you
24 just heard from Ms. Ben-Ami, which was not in their papers,
25 was made for the first time this morning on oral argument,

Page 28

1 is predicated on an expert report not before the Court, is
2 inconsistent with what they acknowledge. This --
3    THE COURT: Well, we're trying to get at the best
4 construction.
5    MR. DAY: I understand.
6    THE COURT: You do have, you do have a problem with
7 that position 166. I mean, her argument does resonate.
8    MR. DAY: No, we don't have a problem with that.
9    THE COURT: All right, tell me why.
10    MR. DAY: And the reason we don't have -- because
11 these are -- this is human erythropoietin purified from
12 mammalian cells grown in culture. And the cells cleave off
13 the 166 amino acids. And Lin produced and made and had in
14 his possession an EPO that was produced by mammalian cells
15 grown in culture. So he possessed a 165 species of human
16 erythropoietin when he filed his application.
17    THE COURT: But he didn't know it.
18    MR. DAY: Oh, did he, did he know it?
19    THE COURT: Well --
20    MR. DAY: He possessed it.
21    THE COURT: Well, let's just go back.
22    MR. DAY: But, no, your Honor, this is an
23 important point.
24    THE COURT: Go ahead.
25    MR. DAY: You asked a very good question and it's

Page 29

1 an important point. But it's irrelevant. It's irrelevant
2 whether he knew it. What is relevant is whether he
3 possessed it and he taught others how to get the same thing.
4 That it was later discovered to be 165 and not 166, not what
5 he had deduced it to be, is irrelevant.
6    THE COURT: Well, I understand that's your
7 position.
8    MR. DAY: Okay. The second thing is, that Roche
9 seeks to add to this claim is having the structure that
10 would be produced in mammalian cells as of the invention
11 date.
12    Now, let me ask you to turn the page and I'll
13 illustrate for you what the difference is first of all
14 between these two constructions.
15    On the left you have a picture of Amgen's
16 construction. Amgen construes human erythropoietin as
17 referring to the amino acid sequence of human erythropoietin
18 as isolated from urine. Roche construes human
19 erythropoietin as referring not only to the amino acid
20 sequence but also to all of the glycosylation that's
21 attached to that sequence by the cells. And they say there
22 is one structure. They call it the structure. And so
23 there's only one such structure.
24    Now, what's wrong with Roche's construction? Why
25 is it inconsistent with the other claims, with the

Page 34

1      THE COURT: Well, you may but --
2      MS. BEN-AMI: I won't go through everything, but I
3  think there's a lot of points here and I think I really do
4  need to discuss this a little bit more.
5      THE COURT: While you're getting set let me talk to
6  the clerks.
7      MS. BEN-AMI: Okay.
8      (Pause in proceedings.)
9      THE COURT: Go ahead.
10     MS. BEN-AMI: Your Honor, when I say extensive it
11 might still be brief. But I would like to start with this.
12     If you look at your screen, your Honor, this is
13 what Amgen told you human EPO meant in the Markman hearing
14 in the TKT case. Now, I'm not collaterally estopped and we
15 can argue about what the meaning is in terms of claim
16 construction. But Amgen was here before your Honor defining
17 human EPO as a glycoprotein having a specific sequence of
18 amino acids -- it doesn't say they're 1 through 165 -- and
19 the ability to stimulate formation of red blood cells.
20     So Mr. Day is now telling you that human EPO isn't
21 a glycoprotein. And if you want me to go through every
22 slide here where the specification says it's a glycoprotein,
23 and the testimony of Dr. Lodish and Dr. Goldwasser and
24 everyone else, I can. But it's in your binder going through
25 slide 21, slide 22. We can just go to slide 21 as

Page 35

1  representative.
2      This is Dr. Lodish's tutorial. EPO is a
3  glycoprotein. Human EPO in the body is a glycoprotein.
4  It's a glycoprotein. The way they got over obviousness was
5  to say what's unique about this molecule is that it's an
6  obligate, is a term they phrase, glycoprotein. And your
7  Honor can look at all the slides so that we don't spend as
8  time. But it is throughout the specification and throughout
9  the prosecution history.
10     THE COURT: But suppose I, suppose I adopted that
11 and said, but modified their definition and called it a
12 glycoprotein, and then everything else the same, having the
13 amino acid sequence. That doesn't get you anywhere.
14     MS. BEN-AMI: Well, I don't know if it gets me
15 anywhere or not --
16     THE COURT: No, but you --
17     MS. BEN-AMI: -- but it's not what I think is
18 right. I think it has to have the structure of human EPO.
19     THE COURT: All right, I understand.
20     MS. BEN-AMI: That's part of the structure. But
21 it's not all of the structure.
22     THE COURT: All right. All right.
23     MS. BEN-AMI: Mr. Day really went through many of
24 these points. But he said something that I think is
25 incorrect here about the E.coli. I think that is earlier

Page 36

1  on. Can you -- he said, you know, they showed that with
2  E.coli you wouldn't get glycosylation.
3      It's 153. Can I have that, please?
4      We must be very careful when we have a patent that
5  is trying to trying to claim analogs and derivatives. And
6  your Honor will remember that the Federal Circuit said they
7  couldn't claim analogs, many years ago; that they didn't
8  have sufficient description for analogs.
9      So we can't look at a specification that says I'm
10 claiming EPO, I'm claiming analogs of EPO, I'm claiming
11 parts of EPO, I'm claiming everything in the world, and then
12 say all that means human EPO.
13     But let's look at this part of the prosecution --
14 of the specification where it says about making this E.coli
15 product. It doesn't call it human EPO. It's called des Ala
16 EPO.
17     THE COURT: Excuse me.
18     MS. BEN-AMI: That's all right.
19     THE COURT: Go ahead, Ms. Ben-Ami.
20     MS. BEN-AMI: I'm sorry, your Honor.
21     THE COURT: All right. But --
22     MS. BEN-AMI: This, this is important. Because
23 when they talk about the E.coli product they're saying that
24 E.coli product has not only 166 but it has an additional, an
25 additional at the front.

Page 37

1      THE COURT: What is this I'm reading from now?
2      MS. BEN-AMI: This is the specification of the
3  patent at column 33. Mr. Day just said to you, well, your
4  Honor, it talks about making EPO in E.coli and they're not
5  glycosylated. But what I'm saying when they talk about that
6  E.coli, they're saying it's not human EPO. Because what
7  they say is the expression product is -- I'll write it on
8  the back here, your Honor -- the expression product of the
9  specification at that point is Met -- I'm sorry -- Met-166.
10 And then they say by processing the Met comes off so you're
11 left with 166. And if it's not just the Met that comes off,
12 amino acid 1 comes off as well. So now you have 165. But
13 it's not the same 165 as human EPO. Because human EPO is 2
14 through 166. I mean, this EPO, I'm sorry, is 2 through 166.
15 Human EPO --
16     THE COURT: Is 1 through 165.
17     MS. BEN-AMI: -- is 1 through 165.
18     THE COURT: Right.
19     MS. BEN-AMI: So now we have something that they're
20 calling a variant, a des, whatever it says, right, product.
21 And they're saying it's 167 or 166, or if it's 165, it's a
22 different 165 than Amgen says EPO is.
23     THE COURT: Right.
24     MS. BEN-AMI: Human or otherwise.
25     THE COURT: Let me ask Mr. Day a question.

10 (Pages 34 to 37)

6da73dea-6884-48d2-9148-93a9c2849937