EXHIBIT G

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

Address    COMMISSIONER OF PATENTS AND TRADEMARKS
Washington D C 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO |
|---|---|---|---|
| | | | |

┌
MICHAEL F. BORUN
MARSHALL, O'TOOLE & BICKNELL
TWO FIRST NATIONAL PLAZA
SUITE 2100
CHICAGO, IL 60603
┐

| KUSH—EXAMINER |
|---|
| ART UNIT | PAPER NUMBER |
| | |
| DATE MAILED | |

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), _____ from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☐ Claims _1-13, 16, 39-41, 47-49, 55-7_ are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _14-15, 17,-38, 42-6, 50-4, 58-60_ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1-13, 16, 39-41, 47-49, and 55-57_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☒ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 7-82)    EXAMINER'S ACTION

156

AM670156423                                        AM-ITC  00941090

Serial No.  113178                          -2-

Art Unit    183

The following is a quotation of the appropriate
paragraphs of 35 U.S.C. 102 that form the basis for the
rejections under this section made in this Office
action:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in
this country, or patented or described in a printed
publication in this or a foreign country, before
the invention thereof by the applicant for patent.

(b) the invention was patented or described in a
printed publication in this or a foreign country or
in public use or on sale in this country, more than
one year prior to the date of application for
patent in the United States.

(e) the invention was described in a patent granted
on an application for patent by another filed in
the United States before the invention thereof by
the applicant for patent, or on an international
application by another who has fulfilled the
requirements of paragraphs (1), (2), and (4) of
section 371(c) of this title before the invention
thereof by the applicant for patent.

The following is a quotation of 35 U.S.C. 103 which
forms the basis for all obviousness rejections set forth
in this Office action:

A patent may not be obtained though the invention
is not identically disclosed or described as set
forth in section 102 of this title, if the dif-
ferences between the subject matter sought to be
patented and the prior art are such that the sub-
ject matter as a whole would have been obvious at
the time the invention was made to a person having
ordinary skill in the art to which said subject
matter pertains. Patentability shall not be nega-
tived by the manner in which the invention was
made.

Subject matter developed by another person, which
qualifies as prior art only under subsection (f)
and (g) of section 102 of this title, shall not
preclude patentability under this section where the
subject matter and the claimed invention were, at
the time the invention was made, owned by the same
person or subject to an obligation of assignment to

**157**

Serial No. 113178                          -3-

Art Unit    183


35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful
process, machine, manufacture, or composition of
matter or any new and useful improvement thereof,
may obtain a patent therefor, subject to the con-
ditions and requirements of this title.

Claims 1-7, 9-13, 16, 40-41 and 47-49 provisionally
rejected under 35 U.S.C. 101 as claiming the same inven-
tion as that of claims 1-12 and 25-26 of copending
application Serial No. 113178.

This is a provisional double patenting rejection
since the conflicting claims have not in fact been
patented.

Claims 1-13, 16, 39-41, 47-49 and 55-57 are
rejected under 35 U.S.C. 112, first and second
paragraphs, as the claimed invention is not described in
such full, clear, concise and exact terms as to enable
any person skilled in the art to make and use the same,
and/or for failing to particularly point out and
distinctly claim the subject matter which applicant
regards as the invention.

The use of alternate terms in the claim language
renders the cited claims indefinite, and presents
questions of enablement and scope. With respect to the
actual physical properties, such as amino acid sequence
and degree and locations of glycosylation, the actual
physical characteristic in question should be presented.
The terms "part or all of," "sufficiently duplicative

158

AM670156425                                    AM-ITC 00941092

Serial No.   113178                    · -4-

Art Unit    183

of," and "average carbohydrate composition which differs
from," do not particularly nor adequately point out the
distinctions from native erythropoietin (EPO).  The
actual physical properties which clearly define the pro-
tein claimed should be used in the claim language.  For
example, the "parts" of EPO which are contemplated and
supported by the disclosure (in terms of amino acid
sequence) and the sites and extent of glycosylation and
how they "differ" from native EPO should be pointed out.
Note that the glycosylation of EPO is an important
aspect of its activity and not every form of EPO is
biologically equivalent.  With respect to the term
having "one or more of the biological properties of
naturally occurring" EPO, applicant must point out <u>which</u>
biological properties are contemplated.  As currently et
forth, <u>any</u> protein or peptide showing <u>any</u> biological
property of EPO (e.g. "self" recognition of the protein
by host) is encompassed.  Applicant cannot support this
assertion with the current disclosure.

Claims directed toward methods of therapy using the
recombinant protein are not enabled.  No <u>in vivo</u> results
supporting these claims is presented which show the
recombinant varient working in an identical manner as
the native protein.  The slight difference in glycosyla-
tion presented in the specification is not sufficiently

AM670156426                                           AM-ITC 00941093

Serial No.  113178                    -5-

Art Unit    183

discussed with respect to its effect on the _in vivo_
activity of rEPO.  For example, does the glycosylation
render the human protein antigenic in humans?  _In vitro_
assays do not provide clearly relevant support without
some type of convincing display to correlate the two.
The particular mode of treatment which is contemplated
should be set forth.  Simply stating administration is
not sufficient.

The claims must particularly point out the essen-
tial aspects of the disclosed invention.  The broadest
limitations must also be supported by the disclosure.
As currently set forth, the claims are indefinite and to
an extent, non-enabled.  The particular biological acti-
vities and physical properties which can be used to
define the rEPO should be reflected in the claim
language to adequately define the invention.  The par-
ticulars concerning the actual method(s) of treatment
and support for the claimed effectiveness of said
treatment(s) must be shown.

Claims to "synthetic polypeptides" are not enabled
by this disclosure.  "Synthetic," as opposed to
"recombinant," is an art recognized term which indicates
a chemically derived rather than genetically engineered
protein.  No support for chemical synthesis of EPO or
EPO fragments is shown by this disclosure.  These claims

**160**

AM670156427                                    AM-ITC 00941094

Serial No.  113178                    -6-

Art Unit    183


are also confusing with respect to the intent of the
term "synthetic."

Support for the data concerning the glycosylation
of the recombinant EPO is found only in the parent
application.  Support for the contemplated therapy using
rEPO is also only found in the parent application of
this application.

Claims 1-11, 16, 39 and 47-49 are rejected under 35
U.S.C. 102(b) as anticipated by or, in the alternative,
under 35 U.S.C. 103 as obvious over Chiba et al or
Takezawa et al.

As currently set forth, the cited claims define any
protein having at least one of the biological properties
of EPO.  The limitations of claims 7 and 8 do not
further limit this definition.  The cited disclosures
each show production of human EPO in substantially
purified form having EPO activity.  This protein is
inherently identical to the claimed EPO by virtue of the
same amino acid sequence (or an allelic varient thereof)
and the same type of biological activity.  The recom-
binant protein has not been shown to behave in a
distinct and unobvious manner with respect to the
naturally occurring EPO, and in any case the claims
clearly encompass the naturally produced EPO shown by
the cited art.  The burden of proving the claimed rEPO

161

AM670156428                                    AM-ITC 00941095

Serial No. 113178                    -7-

Art Unit   183

distinct and unobvious over the cited prior art is
shifted to the applicant.

Claims 1-11, 16, 39 and 47-49 are rejected under 35
U.S.C. 102(e) as anticipated by or, in the alternative,
under 35 U.S.C. 103 as obvious over Sugimoto et al or
Takezawa et al (H).

For the reasons presented in the immediately pre-
ceding art based rejection, the cited claims are rejected
as defining a protein which is inherently identical to
the naturally derived EPO disclosed by the cited art.
The burden of proving the claimed rEPO distinct and
unobvious is shifted to the applicant.

Claims 1-13, 16, 39 and 47-49 are rejected under 35
U.S.C. 102 b as anticipated by or, in the alternative,
under 35 U.S.C. 103 as obvious over Roh et al.

As previously shown, the claims directed to rEPO as
currently set forth are anticipated by a disclosure
showing purified biologically active EPO from native
sources.  Roh et al disclose this, and also show $^{125}I$-
radiolabeled EPO.  This disclosure anticipates the
claimed radiolabeled rEPO of applicant as disclosing an
inherently identical radiolabeled EPO composition.  The
burden of proving otherwise is shifted to the applicant.

Claims 1-13, 16, 39 and 47-49 are rejected under 35
U.S.C. 103 as being unpatentable over Chiba et al

**162**

Serial No.  113178                    -8-

Art Unit    183

Takezawa et al (D or H) or Sugimoto et al in view of Roh
et al further in view of Hunter et al.

EPO produced by various means is known in the art
and is explicitly shown by the cited primary references.
The disclosure of Roh et al provide a utility for radio
labeled EPO, and thus establishes motivation for one of
ordinary skill in the art to produce radiolabeled EPO.
Hunter et al describe a means of radiolabeling proteins
which has been successfully used by Roh et al in pro-
ducing radiolabeled EPO.  In view of these references,
the claimed radiolabeled rEPO is obvious.

Claims 1-13, 16, 39-41 and 47-49 are rejected under
35 U.S.C. 102 b as anticipated by or, in the alter-
native, under 35 U.S.C. 103 as obvious over Miyake et
al.

The disclosure of Miyake et al shows isolation and
purification of naturally derived human EPO.  These
authors show that two forms of glycosylated EPO exist, and
further show production of asialo-EPO.  Production of
$125I$ radiolabeled human EPO is also shown.  This disclo-
sure anticipates the recombinant EPO as set forth in the
cited claims.  The definitions set forth are met by the
human EPO and derivatives therefrom, which are disclosed
by Miyake.  Note especially that the varients of human
EPO with the amino acid sequence, biological activity

**163**

AM670156430                    AM-ITC 00941097

Serial No.  113178                    -9-

Art Unit    183

and difference in degree of carbohydrate composition as
claimed by applicant are shown by Miyake et al.  In view
of applicant's failure to clearly define the precise
physical nature of the recombinant EPO, examiner
believes the native and recombinant forms of human EPO
to be inherently identical.  With respect to claim 8,
the limitation of being an allelic variant of simian EPO
is also met.  The burden of proving otherwise is shifted
to the applicant.

Claims 1-13, 16, 39-41, 47-49 and 55-57 are
rejected under 35 U.S.C. 103 as being unpatentable over
Miyake et al Takezawa et al (D or H) Chiba et al or
Sugimoto et al in view of Papayannopoulo et al.

Each of the primary references cited above would
enable one of ordinary skill in the art to prepare
biologically active, homogeneous human EPO.
Papayannopoulo et al describe in detail the effect of
EPO in vivo in a murine model.  Note especially the
abstract and introduction of this latter reference which
summarizes the content of the paper.  The effect of EPO
on the rate of hemoglobin synthesis is recognized to
be one of the most significant contributors to the
hematocrit of an animal.  In view of the cited art one
would find it obvious to use EPO in a treatment to
restore hemoglobin concentration in vivo, as the in vivo

**164**

AM670156431                                AM-ITC 00941098

Serial No.  113178                      -10-

Art Unit    183

effects of EPO administration have been shown and
explained.  Note also that the primary references
suggest use of EPO in therapy (Takezawa et al
"Background" section).

The claimed method is also considered to be obvious
because the recombinant and native derived EPO are
biologically equivalent.  In other words, both forms
show the same in vitro and in vivo activities as asserted
by applicant.  Use of an agent from a different source
which behaves in a manner identical to its known analog
would suggest to one skilled in the art that similar
results could be obtained using the biologically equiva-
lent analog.  The expected result would make obvious the
use of the new analog as its activity and effects would
be expected (note in re Durden, 226 USPQ 359).  In the
instant case, use of recombinant EPO, which has been
asserted to show the same biological activity as native
EPO, in the treatment of an animal to achieve the same
known effect of EPO in said animal would be obvious to
one skilled in the art.

The art not used above made of record indicates and
expands on the nature and utility of EPO.

Any inquiry concerning this communication should be
directed to Jeff Kushan at telephone number
703-557-0664.

HOWARD E. SCHAIN
PATENT EXAMINER
GROUP 180 - ART UNIT 183

Kushan:meb
5/18/88:Retype 5/23/88

AM670156432                                    AM-ITC 00941099

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE NOTICE OF REFERENCES CITED | SERIAL NO. 193178 | GROUP ART UNIT ~~183~~ | ATTACHMENT TO PAPER NUMBER 4 |
|---|---|---|---|

18 12

APPLICANT(S)
Lin

## U.S. PATENT DOCUMENTS

|   | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | 4 4 6 7 0 1 6 | 5/19/87 | Lai et al | 530 | 380 | 6/20/85 |
| B | 4 5 5 8 0 0 6 | 12/10/85 | Egrie | 530 | 380 | 2/4/83 |
| C | 4 5 5 8 0 0 5 | 12/10/85 | Goldwasser et al | 530 | 380 | 9/13/82 |
| D | 4 3 0 3 6 5 0 | 12/1/81 | Takezawa et al | 530 | 397 |  |
| E | 4 3 7 7 5 1 3 | 3/22/83 | Sugimoto et al | 530 | 397 | 8/10/81 |
| F | 4 6 7 7 1 9 5 | 6/30/87 | Hewick et al | 530 | 397 | 1/11/85 |
| G | 4 5 6 8 4 8 8 | 2/4/86 | Lee-Huang | 424 | 99 | 1/14/84 |
| H | 4 3 9 7 8 4 0 | 8/9/33 | Takezawa et al | 424 | 99 | 3/3/82 |
| I | 3 8 6 5 8 0 1 | 2/11/75 | Chiba et al | 424 | 99 |  |
| J | 4 7 0 3 0 0 8 | 10/27/87 | Lin | 435 | 240.2 |  |
| K |  |  |  |  |  |  |

## FOREIGN PATENT DOCUMENTS

|   | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. PP SPEC. |
|---|---|---|---|---|---|---|---|
| L |  |  |  |  |  |  |  |
| M |  |  |  |  |  |  |  |
| N |  |  |  |  |  |  |  |
| O |  |  |  |  |  |  |  |
| P |  |  |  |  |  |  |  |
| Q |  |  |  |  |  |  |  |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | Miyake et al, J. Biol Chem, 252(15), 5558-64, (1977) |
|---|---|
|  | Dordal et al, Endocrin, 116(6), 2293-9, (1985) |
| S | Wang et al, Endocrin, 116(6), 2286-92, (1985) |
|  | Sasaki et al, J. Biol. Chem, 262(25), 12059-76, (1987) |
| T | Boh et al, Fed. Proc, 29(2), 782, Abs 3030, (1970) |
|  | Hunter et al, Biochem. J., 89, 114-23 (1963) |
| U | Papayannopoulou et al, J. Clin. Invest, 51, 1179-85, (1972) |
|  | Weiss et al, PNAS (USA), 79, 5465-9, (Sept 1982). |

| EXAMINER Kushan | DATE 5/8/89 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

AM670156433                                    AM-ITC 00941100