# EXHIBIT 45

Dockets.Justia.com

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMGEN, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION: 05-CV-12237-WGY |
| | ) | |
| F. HOFFMAN-LA ROCHE LTD, | ) | |
| ROCHE DIAGNOSTICS GmbH, and | ) | |
| HOFFMAN-LA ROCHE INC., | ) | |
| Defendants. | ) | |

EXPERT REPORT OF B. DOUGLAS BERNHEIM, PH.D.

April 6, 2007

Contains highly confidential materials—subject to protective order

. . .

> At this point in the conversation, we talked a little bit about their perception of the
> CERA product. They were pretty blunt, that this is all going to be about their revenue
> stream, and the money, that there aren't any clinical attributes that are going to
> outweigh it.

. . .

> They are very sensitized to the issues around ASP, in realizing that we need to
> structure it in a way that preserves the attractiveness of our ASP point...[198]

(227)   Many of the Roche and Amgen planning documents discussed above suggest that neither party is
likely to engage in a discounting strategy that would significantly erode prices. In particular, the
November 2005 *CERA Update ASP Reimbursement* document discussed above indicates:

> Roche can now aggressively target the LDO business but must do so fully
> understanding the possible scenarios that may result and decide which are acceptable
> and not acceptable...

> The attractiveness of the LDO contracts will be determined by amount of downward
> price pressure which is a function of the behavior of other players in the market...[199]

> Other parties' behaviors will create price conditions that either will allow us to win
> an LDO contract at a favorable condition as compared to the base case or will erode
> price to a point that is less favorable than remaining with the base case and lead us to
> walk away.[200]

(228)   Similarly, as discussed in Appendix E:, Amgen documents also demonstrate an aversion to a
"discount war." For example, a March 2006 presentation titled *NACO Operating Review Storyboard
(assumes worst case litigation scenario)* states:

> Amgen's LDO contracting objective if peg-EPO enters is to split the
> market...Selective accommodation of Roche is most direct path to price equilibrium
> without severe price erosion...We will win one LDO and discount as necessary to

---

[198]   R001587132-1587134
[199]   R001619983-1619984
[200]   R001619985

Expert Report of B. Douglas Bernheim, Ph D
Public Interest

provide a competitive cost recovery to that customer. The other LDO will pay list price if they decline our initial contract offer.[201]

Given this evidence and the fact that Amgen has established a long-term agreement with Fresenius, it is unlikely that Amgen would find engaging in a discount war for the DaVita business a necessary or attractive option.

(229)    As a result, it is my opinion that long-term forecasts indicating that overall reimbursements for anemia products will decrease due to peg-EPO entry are not consistent with the weight of the evidence. Moreover, it is my opinion that, because of the pervasive uncertainties relevant to these products, long-term forecasts regarding the pricing of anemia products are in most cases of limited predict..

---

[201]  AM44 0231755

Case 1:05-cv-12237-WGY     Document 669-2     Filed 07/09/2007     Page 5 of 5

Expert Report of B  Douglas Bernheim. Ph D                          Appendix E: Amgen's counter planning

## E.1. Overview

(339)   Amgen has considered a variety of potential strategies in response to peg-EPO entry. The company's eventual responses will depend upon numerous factors that are uncertain at this time. As a result, I make no attempt to predict with precision Amgen's responses to peg-EPO entry. However, it is possible to characterize the types of strategies Amgen may pursue and evaluate the likelihood of each. In particular, I discuss three categories of responses:

- Favor longer-term competitiveness over short-term competitiveness. Under this strategy, Amgen would not respond to peg-EPO entry with further discounts. Instead, it would maintain price levels, sacrificing substantial share in the short-term as Roche offers greater cost-recovery for providers relative to Amgen products. In the longer-term, Amgen would compete with Roche on a more equal footing, with a smaller ASP disparity.

- Favor short-term competitiveness over longer-term competitiveness. Under this strategy, Amgen would discount in response to peg-EPO's cost-recovery advantage in order to maintain competitive economics for its customers, and hence share, in the short term  In the longer-term, Amgen's ASP disadvantage would become more severe.

- Balance short-term and longer-term competitiveness. Under these strategies, Amgen would attempt to strike a balance between concerns about future ASP and current share.

On the basis of the evidence I discuss below, I conclude that aggressive discounting by Amgen to protect share from peg-EPO is unlikely  Rather, an emphasis on protecting future ASPs through selective discounting is more likely. In particular, the highly concentrated nature of the ESRD segment, coupled with Amgen's recent long-term sole-source agreement with the largest LDO, Fresenius, increases the likelihood that Amgen will protect future ASPs through selective discounting in response to peg-EPO entry.

(340)   The remainder of this section proceeds as follows  I first review Amgen's business planning process. I then discuss Amgen's perception of its customers' economic incentives and Amgen's expectation for peg-EPO's entry strategy  Next, I discuss a variety of potential pricing strategies that Amgen has considered in response to peg-EPO entry  Finally, I discuss Amgen's relationship with the LDOs, Fresenius and DaVita.

Contains highly confidential materials—subject to protective order