# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC.,            ) | |
|              ) | |
|    Plaintiff,      ) | |
|              ) | Civil Action No.: 05-12237 WGY |
| v.               ) | |

**AMGEN INC.,**

    Plaintiff,

v.

**F. HOFFMANN-LAROCHE
LTD., a Swiss Company, ROCHE
DIAGNOSTICS GmbH, a German
Company and HOFFMANN LAROCHE
INC., a New Jersey Corporation,**

    Defendants.

Civil Action No.: 05-12237 WGY

---

### AMGEN INC.'S RESPONSE TO ROCHE'S RESPONSE TO AMGEN INC.'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

Plaintiff Amgen Inc. ("Amgen") hereby responds to Defendants F. Hoffman-LaRoche

Ltd.'s, Roche Diagnostics GmbH's, and Hoffman LaRoche Inc.'s ("Roche's") Response to

Amgen's Separate Statement of Undisputed Facts in Support of Its Motion for Summary

Judgment of No Inequitable Conduct ("Roche's Response").[1]  To the extent that Roche's

Response addresses issues not pled in Roche's First Amended Answer, Amgen does not respond

to Roche's statements and arguments regarding these issues because Amgen understands that

these issues are not currently in the case.  Amgen will be submitting a separate motion to strike

---

[1] "Exh. ___" refers to exhibits attached to the Declaration of Craig H. Casebeer in Support of Amgen Inc.'s Memorandum in Support of Its Motion for Summary Judgment of No Inequitable Conduct.  "Casebeer Reply Decl. Exh. ___" refers to exhibits attached to the Declaration Of Craig H. Casebeer In Support Of Amgen Inc.'s Memorandum In Reply To Roche's Opposition To Motion For Summary Judgment Of No Inequitable Conduct.  "Amgen SOF ___" refers to paragraphs in Amgen's Separate Statement of Undisputed Facts in Support of Its Motion of Summary Judgment of No Inequitable Conduct.

Dockets.Justia.com

these issues and paragraphs.  To the extent, however, that Roche has interwoven paragraphs and

sections pertaining to issues that have been pled with those that have not, Amgen objects to

Roche's separate statement of undisputed facts as placing the burden on Amgen to parse out

amidst 352 paragraphs and more than 70 pages the issues pertinent to the instant motion.  Roche

fails to tie the statements in these paragraphs not only to any issue on which it has properly pled,

but also to the issues on which Amgen has moved.  For this reason as well, Roche's lengthy

Statement of Undisputed Facts should not be considered.

Local Rule 56.1 states: "Opposition to motions for summary judgment shall include a

concise statement of the material facts of record as to which it is contended that there exists a

genuine issue to be tried, with page references to affidavits, deposition and other

documentation."  Amgen notes that, in addition to making statements of facts, Roche

inappropriately includes legal arguments in its Response.

Paragraphs 1-30 below are Amgen's reply to Roche's response to Amgen's Separate

Statement of Undisputed Facts; paragraphs 31-42 are Amgen's responses to Roche's purported

statement of undisputed facts.

**ROCHE'S CLAIM RELATING TO AMGEN'S ALLEGED OMISSIONS
REGARDING SIMILARITIES BETWEEN R-EPO AND U-EPO**

1.      Amgen SOF 1:  Roche admits that Lin *et al.*, *Cloning and Expression of the*

*Human Erythropoietin Gene*, 82 Proc. Nat'l Acad. Sci., 7580, 7582 (1985) (Exh. 39) ("Lin

PNAS Publication") is listed on the face of United States Patent No. 5,547,933 ("'933 Patent"),

but argues that the Lin PNAS Publication was "buried."  Amgen disagrees with Roche's

argument.  Additionally, Roche, admits that the Lin PNAS Publication was disclosed in an IDS

to the Patent Office, and that the examiner of the '933 Patent had been aware of the Lin PNAS

Publication's existence and had reviewed the Lin PNAS Publication at least cursorily.

2.    Amgen SOF 2:  Roche admits the accuracy of the quote from the Lin PNAS

Publication to the effect that rEPO has an apparent molecular weight of 34,000 daltons.  Amgen

contests Roche's characterization of the Lin PNAS Publication as not disclosing the apparent

molecular weight of urinary EPO.  The Lin PNAS Publication discloses the molecular weight of

r-EPO as 34,000 daltons, which is the same apparent molecular weight for urinary EPO disclosed

in the '933 Patent's specification (referring to "approximately 34,000 dalton molecular weight").

Additionally, Amgen understands that a claim of inequitable conduct based upon whether the Lin

PNAS Publication discusses COS rEPO is not currently asserted in Roche's First Amended

Answer.  Amgen, therefore, contests Roche's inclusion of that issue in its Response.

- Exh. 39 (Lin PNAS Publication), at p. 7582;

- '933 Patent, at col. 5:48-50.

3.    Amgen SOF 3:  Roche admits that Egrie *et al.*, Characterization and Biological

Effects of Recombinant Human Erythropoietin, *Immunobiol.*, vol 172, pp. 213-224 (1986) (Exh.

1) ("Egrie 1986 Publication"), was offered into evidence during the '096, '097, and '334

interferences and became a part of the '334 Interference record.  Roche, however, argues that the

Egrie 1986 Publication was not directly or properly disclosed to the examiner of the '933 Patent.

Amgen disagrees with Roche's argument because Examiner Fitzgerald, during the prosecution of

the '933 Patent, reviewed the record and opinion of the '334 Interference proceedings, which

included the Egrie 1986 Publication.  Additionally, Amgen understands that a claim of

inequitable conduct based upon whether the Egrie 1986 Publication discusses COS rEPO is not

currently asserted in Roche's First Amended Answer.  Amgen, therefore, contests Roche's

inclusion of that issue in its Response.

- Exh. 1 (Egrie 1986 Publication);

- Exh. 7 (Lin Notice, '096, '097, and '334 interferences), at p. 1 ("Lin hereby
offers into evidence, pursuant to the provisions of 37 CFR 1.682(a), the

following publications, copies of which are attached: (1) 'Characterization and Biological Effects of Recombinant Human Erythropoietin', Egrie et al, *Immunobiol*, Vol. 172, pages 213-224 (1986).");

- Exh. 32 (Search Notes, '178 File History).

4.      **Amgen SOF 4:** Roche disputes this statement of fact. However, the SDS-PAGE gel described in the Egrie 1986 Publication was submitted to the FDA in Amgen's Notice of Claimed Investigational Exemption for Recombinant Human Erythropoietin (r-HuEPO) (Casebeer Reply Decl. Exh. 2). Amgen also contests Roche's opinion that Section 9 in Amgen's Product License Agreement (Exh. 4) ("PLA") was not directly and properly disclosed to the examiner of the '933 Patent. In the '334 Interference opinion, the Board of Patent Appeals and Interferences ("Interference Board") wrote:

> Lin also claims that Fritsch has misrepresented statements made by Amgen in its FDA Product License Application (PLA) of record regarding similarities in structure and properties of r-EPO and u-EPO. Lin notes that the PLA does not claim that r-EPO and u-EPO are identical in all respects regarding carbohydrate content and, in fact, the PLA points out some distinguishing characteristics.
>
> …
>
> With regard to Amgen's PLA, statements indicating that the r-EPO product is different in some respects from naturally-occurring EPO are certainly not self-serving since the PLA is apparently intended to establish to the satisfaction of the Food and Drug Administration that r-EPO mimics the structure and properties of natural EPO to a substantial degree.

*Fritsch v. Lin*, 21 U.S.P.Q.2d 1739, 1741-42 (BPAI 1991). The PLA was also an exhibit in the '096, '097, and '334 interferences. (Fritsch Exhibits Volume XVIII (Exhibits FX 399 cont. to FX 417) (Casebeer Reply Decl. Exh. 6).) Examiner Fitzgerald, during the prosecution of the '933 Patent, reviewed the record and opinion of the '334 Interference proceedings and noted that he did so on the patent's search notes.

- Casebeer Reply Decl. Exh. 2 (Notice of Claimed Investigational Exemption for Recombinant Human Erythropoietin (r-HuEPO) (Exhibit 2 to the Declaration of Craig H. Casebeer in Support of Amgen Inc.'s Reply to

Roche's Opposition to Motion for Summary Judgment of No Inequitable
Conduct) ("Amgen's IND"), at p. 968;

- *Fritsch v. Lin*, 21 U.S.P.Q.2d 1739, 1741-42 (BPAI 1991);

- Casebeer Reply Decl. Exh. 6 (Fritsch Exhibits Volume XVIII (Exhibits FX
399 cont. to FX 417));

- Exh. 32 (Search Notes, '178 File History).

5.      Amgen SOF 5:  Roche disputes this statement of fact, asserting that there is no

evidence confirming that the entire lab notebook of Dr. Egrie was offered into evidence during

the interference proceedings.  Roche also argues that the laboratory notebook of Dr. Egrie

(including Egrie Input file, Exh. 2) was not submitted or properly disclosed to the examiner of

the '933 Patent.  However, the two pages of the Egrie Input file that were cited by Roche in its

First Amended Answer (AM-ITC 00828987-88) were attached (as pages 6 and 7) to Notice

Pursuant to 37 C.F.R. § 1.682(a) and Offer of Official Record From Civil Action No. 87-2617-Y

Regarding Testimony of Egrie and Attachments, '096, '097, and '334 Interferences (Exh. 31),

and became a part of the '334 Interference record when it was submitted to the Interference

Board on January 22, 1991.  Examiner Fitzgerald, during the prosecution of the '933 Patent,

reviewed the record and opinion of the '334 Interference proceedings and noted that he did so on

the patent's search notes.

- Exh. 31 (Notice Pursuant to 37 C.F.R. § 1.682(a) and Offer of Official Record
From Civil Action No. 87-2617-Y Regarding Testimony of Egrie and
Attachments, '096, '097, and '334 Interferences);

- Exh. 32 (Search Notes, '178 File History).

6.      Amgen SOF 6:  Roche does not dispute this statement of fact.

7.      Amgen SOF 7:  Roche disputes this statement of fact, but admits that the

Interference Board determined that Dr. Egrie's testimony about her work (which was described

in the Egrie Input file) was not sufficient to contradict Fritsch's evidence. Specifically, the

Interference Board stated:

> In our view, the Egrie testimony which is cited in Fritsch's reply
> brief (FRB-36) is at best ambiguous and, thus, is not sufficient to
> contradict the information disclosed on page 64 of the Lin
> application. In this regard, Dr. Egrie of Amgen admits only that
> certain u-EPO and r-EPO samples which she studied by Western
> blot had "approximately the same size". When asked whether this
> comparative "size" data are indicative of the same carbohydrate
> composition, she responded: "No. Not necessarily at all."

*Fritsch v. Lin*, 21 U.S.P.Q.2d 1739, 1741-42 (BPAI 1992). Roche also does not dispute the

correctness of this Court's comments in *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 126

F.Supp.2d 69, 144 (D.Mass. 2001).

- *Fritsch v. Lin*, 21 U.S.P.Q.2d 1739, 1741-42 (BPAI 1992);

- *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 126 F.Supp.2d 69, 144 (D.Mass. 2001).

8.    Amgen SOF 8: Roche disputes this statement of fact. Roche disputes whether

there is evidence in the Interference Board's opinion in the '334 Interference that the Interference

Board reviewed the Egrie Input file. Amgen notes the language from the Board's '334

Interference opinion as quoted in paragraph 8 above. Reply Brief for Party Fritsch, filed August

12, 1991 (Exh. 16) ("Fritsch's Reply Brief")) at page 36 (cited by the Interference Board in its

'334 Interference opinion) states:

> Third, the primary examiner was not informed of an SDS PAGE
> gel prepared by Amgen's Dr. Egrie in September 1984, two
> months before Lin's involved application was filed, in which two
> different uEPO samples were compared with Lin's rEPO. The
> rEPO sample migrated ***identically*** with the uEPO samples on the
> gel, clearly contradicting the import of the disclosure at p. 64, line
> 20 to p. 65, line 3 of the Lin application of an apparent difference
> in molecular weight between rEPO and uEPO. *See* Finding VI-17.

Proposed Findings of Fact and Conclusions of Law for the Party Fritsch ("Fritsch's Propose

Findings of Fact") (Exh. 36) at page 227, paragraph VI-17, states:

> "Moreover, an entry in Dr. Egrie's own notebook No. 633 dated 9/19-9/21/84 states that Amgen's rEPO appeared to be the same size as a uEPO sample obtained from Alpha Therapeutics and a uEPO sample designated "Lot 82." LX 115, (doc. No. L01074). Dr. Egrie has acknowledged that the uEPO and rEPO samples migrated identically on the SDS-polyaccrylamide gel. LR 577-579 (Egrie).

In Dr. Egrie's deposition testimony (Casebeer Reply Decl. Exh. 3 (Record of Party Lin), at pp. 577-580), as cited by Fritsch's Proposed Findings of Fact, Dr. Egrie discusses pages 65 and 69 of Lab Notebook 633 (Casebeer Reply Decl. Exh. 4), which discusses the similar molecular weight of CHO rEPO, and Lot 82 and α Therapeutics uEPOs. Page 69 of Lab Notebook 633 is the same as page 5a of the Egrie Input (see Exh. 2).

- *Fritsch v. Lin*, 21 U.S.P.Q.2d 1739, 1741-42 (BPAI 1992);

- Exh. 16 (Reply Brief for Party Fritsch, filed August 12, 1991 ("Fritsch's Reply Brief")), at p. 36;

- Exh. 36 (Fritsch's Proposed Findings of Fact), at page 227;

- Casebeer Reply Decl. Exh. 3 (Dr. Egrie's deposition testimony of Record of Party Lin), at pp. 577-580;

- Casebeer Reply Decl. Exh. 4 (Lab Notebook 633), at pp. 65 and 69.

9.    Amgen SOF 9:  Roche disputes this statement of fact.  Roche does not dispute the fact that the '178 Patent's Search Notes (Exh. 15) include language stating, "Reviewed Interference file # 102,334; Reviewed published Intf. Decision (*Fritsch v. Lin*) and *Amgen v. Chugai* (18 U.S.P.Q.2d @ 1016); Oct-Nov 1993; Fitzgerald DL." Roche also does not dispute the fact that Examiner Fitzgerald reviewed at least a portion of the '334 Interference file and opinion.  Roche, however, presumes that Examiner Fitzgerald only reviewed portions of the '334 Interference record and opinion pertaining to inventorship protest.  However, Examiner Fitzgerald recorded his review of the interference "file" and "decision."  Amgen disputes Roche's presumption that evidence shows that Examiner Fitzgerald reviewed the '334

Interference file solely for information relating to the inventorship Protest, or that Examiner

Fitzgerald's review could not have revealed to him information on an EPO with higher molecular

weight than human urinary EPO.

- Exh. 15 (Search Notes, '178 Patent).

10.    **Amgen SOF 10:**  Roche does not dispute this statement of fact, and admits that

the Declaration of Richard D. Cummings, dated January 6, 1994 (Exh. 14) ("Cummings

Declaration"), when citing to Browne, *et al.*, "Erythropoietin: Gene Cloning, Protein Structure,

and Biological Properties," *Cold Spring Harbor Symposia on Quantitative Biology*, vol. L1, pp.

693-702 (1986) (Exh. 3) ("Browne 1986 Publication"), included the statement, "it is known that

**urinary EPO (as well as rEPO from CHO cells) is nearly 100% O-glycosylated**," which is itself

a discussion of similarities in glycosylation between uEPO and rEPO.

- Exh. 14 (Declaration of Richard D. Cummings, dated January 6, 1994), at pp.
  17-18;

- Exh. 3 (Browne 1986 Publication).

11.    **Amgen SOF 11:**  Roche does not dispute this statement of fact.

12.    **Amgen SOF 12:**  Roche admits the accuracy of the quote from the Browne 1986

Publication, including the disclosure of the identical migration of rEPO and uEPO in SDS-

PAGE.  (Browne 1986 Publication (Exh. 3), at p. 698.)  Roche's First Amended Answer cites to

the Browne 1986 Publication for the disclosure that "human u-EPO and CHO-cell derived r-EPO

migrate identically in SDS-polyacrylamide gels."  (Roche's First Amended Answer, at ¶ 88.)

- Exh. 3 (Browne 1986 Publication);

- Roche's First Amended Answer, at ¶ 88.

13.    **Amgen SOF 13:**  Roche admits that Amgen notified the Patent Office of *Amgen,*

*Inc. v. Hoechst Marion Roussel, Inc.*, Civil Action No. 97-10814-WGY (D.Mass. filed Apr. 15,

1997) ("*HMR/TKT*"), on April 16, 1997, but Roche complains that Amgen did not notify the

examiner of each pending application of the *HMR/TKT* case. However, Amgen filed a notice

pursuant to 35 U.S.C. § 290 with the Clerk of the District Court of Massachusetts, HMR/TKT,

Docket No. 6, Section 290 obligated the clerk to notify the Commissioner of any additional

patent that was subsequently added to the action. This Court has determined that Amgen

reasonably expected the clerk to perform his/her statutory requirement of notifying the

Commissioner of any additional patents that were subsequently added to the action.

- HMR/TKT Case, Docket No. 6;

- *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 126 F.Supp.2d 69, 146-147 (D.Mass. 2001).

14.     Amgen SOF 14:  Roche admits that the Declaration of Thomas W. Strickland,

dated Feb. 13, 1992 (Exh. 5) ("1992 Strickland Declaration"), provides experimental data on the

presence of O-linked glycosylation on and monosaccharide content of recombinant human EPO

produced in CHO cells by Amgen in 1985, and does not compare rEPO with uEPO, from the

standpoint of molecular weight, carbohydrate composition or otherwise. Amgen disputes

Roche's characterization of the 1992 Strickland Declaration as relying on experimental and

analytical error to argue that two different EPOs are in fact the same despite differing values.

The 1992 Strickland Declaration, at ¶ 12, states that "the relative molar ratios of hexoses

(galactose and mannose) to N-acetylglucosamine were 0.9 and 0.6, respectively. These values

are within the range of experimental and analytical error to those reported in Claim 10 to EP 111

678 (1.4, 0.9, and 0.5 respectively."

- Exh. 5 (1992 Strickland Declaration).

15.     Amgen SOF 15:  Roche admits that the Declaration of Thomas W. Strickland,

dated May 19, 1994 ("1994 Strickland Declaration") does not compare rEPO with uEPO, from

the standpoint of molecular weight, carbohydrate composition or otherwise, or even mention

uEPO. Amgen contests Roche's statement that the 1994 Strickland Declaration states that the

CHO rEPO test sample was determined to have an apparent molecular weight between 31,000 and 45,000 daltons and would have been important to the U.S. examiner. The 1994 Strickland Declaration states, "the Test Sample migrates on SDS-PAGE within the range encompassed by the criterion 'about 34,000 daltons" as indicated in Claim 2 of EP 209539." (1994 Strickland Declaration, at ¶ 8.) This information is cumulative to information already before the Patent Office.

- Exh. 6 (1994 Strickland Declaration), at ¶ 8;

- Exh. 39 (Lin PNAS Publication), at p. 7582.

16.    Amgen SOF 16: Roche disputes this statement of fact, asserting that Takeuchi, *et al.*, *Comparative Study of the Asparagine-linked Sugar Chains of Human Erythropoietins Purified from Urine and the Culture Medium of Recombinant Chinese Hamster Ovary Cells*, J. Biol. Chem. 263(8) (1988) (Exh. 34) ("Takeuchi et al.") does not disclose the apparent molecular weight of rEPO or uEPO. However, Amgen has not asserted that Takeuchi *et al.* discloses the apparent molecular weight of rEPO or uEPO. Amgen understands that a claim of inequitable conduct based upon whether the Takeuchi *et al.* discusses COS rEPO is not currently asserted in Roche's First Amended Answer. Amgen, therefore, contests Roche's inclusion of that issue in its Response. Amgen contests Roche's statement that Takeuchi *et al.* was submitted in a way to ensure that the examiner did not consider material information in examining later filed claims because Takeuchi was specifically cited and discussed by Examiner Martinell in an office action in the '874 Application on August 16, 1994. (Exh. 33 (8/16/1994 Office Action, '874 Application), at p. 4.)

- Exh. 34 ("Takeuchi et al.");

- Exh. 33 (8/16/1994 Office Action, '874 Application), at p. 4.

17.    Amgen SOF 17:  Roche admits the accuracy of the quote from Takeuchi *et al.* discussing the monosaccharide composition of HuEPO and O-linkage.  Amgen understands that a claim of inequitable conduct based upon whether the Takeuchi *et al.* discusses COS rEPO is not currently asserted in Roche's First Amended Answer.  Amgen, therefore, contests Roche's inclusion of that issue in its Response.  Amgen contests Roche's statement that Takeuchi *et al.* was submitted in a way to ensure that the examiner did not consider material information in examining later filed claims because Takeuchi *et al.* was specifically cited and discussed by Examiner Martinell in an office action in the '874 Application on August 16, 1994.  (Exh. 33 (8/16/1994 Office Action, '874 Application), at p. 4.)  Examiner Martinell, in examining the '874 Application, described Takeuchi *et al.* as being part of the "record."  *Id.* at p. 4.

- Exh. 34 ("Takeuchi et al."), at p. 3657;

- Exh. 33 (8/16/1994 Office Action, '874 Application), at p. 4.

18.    Amgen SOF 18:  Roche disputes this statement of fact, and asserts that Sasaki, *et al.*, Carbohydrate Structure of Erythropoietin Expressed in Chinese Hamster Ovary Cells by a Human Erythropoietin cDNA, J. Biol. Chem. 262, 12059-76 (1987) (Exh. 40) ("Sasaki *et al.*") does not disclose the apparent molecular weight of rEPO or uEPO.  However, Amgen has not asserted that Sasaki *et al.* discloses the apparent molecular weight of rEPO or uEPO.  Amgen understands that a claim of inequitable conduct based upon whether the Sasaki *et al.* discusses COS rEPO is not currently asserted in Roche's First Amended Answer.  Amgen, therefore, contests Roche's inclusion of that issue in its Response.  Amgen assumes that Roche's reference to Takeuchi in its paragraph 18 is an error, which should read "Sasaki" instead.  Assuming that that is the case, Amgen disputes Roche's statement that Sasaki *et al.* was submitted in a way to ensure that the examiner did not consider material information in examining later filed claims.

- Exh. 40 (Sasaki, *et al.*, Carbohydrate Structure of Erythropoietin Expressed in Chinese Hamster Ovary Cells by a Human Erythropoietin cDNA, J. Biol. Chem. 262, 12059-76 (1987) ("Sasaki *et al.*")).

19.    Amgen SOF 19:  Roche does not dispute this statement of fact.

20.    Amgen SOF 20:  Roche disputes this statement of fact.  Roche asserts that Sasaki *et al.* was not properly before Examiner Martinell, contrary to Examiner Fitzgerald's search notes that clearly indicated that he "[r]eviewed Interference file # 102,334; Reviewed published Intf. Decision (*Fritsch v. Lin*) and *Amgen v. Chugai* (18 U.S.P.Q.2d @ 1016); Oct-Nov 1993; Fitzgerald DL."  (Exh. 32 (Search Notes, '178 File History).)  Roche also misinterprets Amgen's expert's statements regarding the full faith and credit given prior examiners by subsequent examiners.  Mr. Kunin did not state that giving full faith and credit means that the subsequent examiner need not review the prior examiner's work.  The quote from Mr. Kunin that Roche employed in its Response (paragraph 20) was followed by a citation to MPEP § 706.04, which states:

> Full faith and credit should be given to the search and action of the previous examiner unless there is a clear error in the previous action or knowledge of other prior art.  In general, an examiner should not take an entirely new approach or attempt to reorient the point of view of a previous examiner, or make a new search in the mere hope of finding something.

Without reviewing Examiner Fitzgerald's prior work, Examiner Martinell would not have the knowledge to determine whether there was clear error in Examiner Fitzgerald's previous actions.  Additionally, in order to ensure that he does not reorient the point of view of Examiner Fitzgerald, Examiner Martinell must have reviewed Examiner Fitzgerald's  prior work to first determine Examiner Fitzgerald's point of view.  Therefore, Amgen disputes Roche's statement that Amgen was aware that Examiner Martinell would not review Examiner Fitzgerald's prior work.

- MPEP § 706.04.

21.    Amgen SOF 21:  Roche admits the accuracy of the quote from this Court and the Federal Circuit.

## ROCHE'S CLAIM RELATING TO AMGEN'S ALLEGED MISREPRESENTATIONS AND OMISSIONS IN ITS ARGUMENTS REGARDING DOUBLE PATENTING

22.    Amgen SOF 22:  Roche admits the accuracy of the quote from the Federal Circuit opinion in *Amgen, Inc. v. U.S. Int'l Trade Comm'n*, 902 F.2d 1532 to the effect that a host cell claim does not cover intracellular processes, but states that the issue before the Court involved jurisdiction under 19 U.S.C. section 1337.   But what is clear from the prosecution record, and Roche omits to mention, is that the first two paragraphs under that heading discuss how the PTO had already determined that the claims were patentably distinct.  As discussed in Amgen's Opening Brief, (p. 12-13), the PTO Board had already determined that the claims were patentably distinct.  The discussion of the ITC decision then followed and Amgen correctly described the holding of that decision that Amgen did not have process claims in the '008 patent.

23.    Amgen SOF 23:  Roche does not dispute that during the prosecution of the '179 application, Amgen provided the Patent Office with the Federal Circuit's decision referred to in SOF 22.   Thus, there can be no dispute that the Patent Office was fully aware of the context and procedural setting in which Amgen argued that host cell claims in the '008 patent do not cover the process claims of the '179 application.

24.    Amgen SOF 24:  Inexplicably, Roche disputes that Amgen argued during the '097 Interference that the two separate counts corresponding to the claims of the '178 and '179 applications were not the same invention, despite the quotation in SOF 24 from Lin's Opposition G at page 81:  "Suffice it to say that Lin contends that the two counts are not to the same 'same invention.'"  Amgen contests Roche's position.  Roche ignores that unambiguous statement, and instead takes out of context a quote from Lin's '097 interference brief and suggests an interpretation inconsistent with Amgen's unambiguous statement.   Moreover, Roche ignores

that in that very same '097 interference brief, when discussing obviousness, Lin expressly states again that "it was not obvious that in vivo biologically active recombinant human EPO could be made by the claimed process. See Amgen SOF 25.

25.    Amgen SOF 25:  See discussion under SOF 24 above.

### ROCHE'S CLAIM RELATING TO AMGEN'S ALLEGED FAILURE TO DISCLOSE REJECTIONS BETWSEEN THE '179 AND 178 APPLICATIONS

26.    Amgen SOF 26:  Roche disputes the indisputable:  that Examiner Martinell issued all the patents-in-suit, as noted by the face of each patent.  Amgen contests Roche's position. Roche's caveat that other examiners were involved in examining the patents in suit does not provide a basis for disputing Amgen's SOF 25, and is not relevant to the central fact that *before* any of the patents-in-suit issued, a single examiner---Examiner Martinell---became the primary examiner on the applications and had actual knowledge of the prosecution history.

27.    Amgen SOF 27:  Roche disputes that the inventions in the '178 and '179 applications have been found to be patentably distinct, despite the authority for that proposition set forth in SOF 27.  Amgen contests Roche's position.  The basis for Roche's dispute is that the patents-in-suit issuing from those applications have never been subjected to a challenge for invalidity based a double patenting claim.   That is irrelevant, since Amgen's SOF 27 is in the context of Roche's claim that applicant committed inequitable conduct when he allegedly did not disclose rejections in a co-pending application.  The question of a failure to disclose material information and intent to deceive the patent office must be assessed as of the time the alleged failure to disclose occurred.  As of that time, the Office Action quoted in SOF 27 made clear that "the subject matter of the three interferences is deemed patentably distinct . . . ."

28.    Amgen SOF 28:  Roches disputes Amgen's SOF 28 that Examiner Martinell, examiner to both the '178 and '179 application lines, had before him the prosecution history, including the rejections, of both lines of applications.  Amgen contests Roche's position.  Roche

makes a number of arguments, but none disputes the indisputable statement of fact in Amgen SOF 28.  Roche argues that Examiner Martinell had to give full faith and credit to the prior examiners' work "and would not have substantively reconsidered the prior rejections."  Roche's own statement, therefore, reflects its acknowledgement that the examiner had the prior rejections before him.   Roche also argues that Amgen violated its duty of candor by not disclosing rejections in the co-pending applications to earlier examiners.  Again, such argument does not call into dispute Amgen SOF 28, and ignores the principle that the duty of disclosure requires that material information find its way to the examiner in time for him to act on it.   *Young v. Lumenis,* 2007 WL 1827845 (Fed. Cir. June 2007).   That clearly happened here.

29.    Amgen SOF 29:  Roche disputes Amgen's SOF 29 that Examiner Martinell, on the ***same day*** in 1994, conducted a personal interview with Amgen representatives regarding ***both*** the '178 and '179 application lines, and during that interview, discussed previous rejections in ***both*** lines, based on the Sugimoto ('178) and Lin and Yakota ('179) references.  But, as before, Roche does not in fact dispute those facts.  Rather, it argues that  those particular rejections are not the ones it bases its claim of inequitable conduct, without disclosing which rejections those are.  Amgen contests Roche's position.  Suffice it to say that Roche can point to no genuine dispute as to the material fact that the primary examiner on both lines of applications met with Amgen representatives about both lines on the same day, and that they discussed previous rejections in those lines.  There can be no genuine dispute that Examiner Martinell thus knew the prosecution history of the two lines, was charged with such knowledge and that he specifically discussed at least some of the rejections with Amgen representatives.

30.    Amgen SOF 30:  Roche does not dispute Amgen SOF 30 that the references upon which rejections in the '179 and '178 applications were based are listed in the IDS submitted to the Patent Office in both the '179 and '178 prosecution.  There is thus no dispute that the single

examiner on the two applications had actual knowledge of the prosecution history and access to the references upon which previous rejections were based.

### AMGEN'S RESPONSES TO ROCHE'S PURPORTED STATEMENT OF UNDIPSUTED FACTS

**Roche's Contentions re Individuals With A Duty of Candor**

31.     Amgen disputes the legal arguments and contentions set forth at paragraphs 31-45 of Roche's Statement of Undisputed Facts for the reasons set forth below.  Further, Amgen objects to these paragraphs as failing to explain whether and how the contentions and arguments contained therein respond to any of the undisputed facts set forth in Amgen's Statement of Undisputed Facts, or even to arguments contained in Amgen's Motion for Summary Judgment of No Inequitable Conduct.  Amgen further objects to these paragraphs on the ground that they are not statements of fact at all, but rather legal arguments designed to extend the page limit for opposition briefs by dozens and dozens of pages.  Amgen further objects to these paragraphs to the extent that they raise new bases for its inequitable conduct allegations not pled with the required particularity of Federal Rule of Civil Procedure 9(b) and thus Amgen disputes the contentions and arguments contained therein on that basis.

32.     Amgen does not dispute that Fu-Kuen Lin, Michael Borun, Steven Odre, Stuart Watt, Joan Egrie, and Thomas Strickland each owed a duty of candor to the patent office within the scope of their participation in the prosecution of the patents-in-suit, which is different as to each individual, and which Roche has not articulated.  Amgen further does not dispute that certain attorneys and scientists were "involved" in foreign litigations to various extents and involved in the interferences to various extents.   Despite involvement by its attorneys in multiple venues, Amgen disputes however any suggestion by Roche that the identified attorneys were the attorneys responsible for representing Amgen Inc. or Kirin-Amgen in the other jurisdictions.

**Roche's Contentions re Obviousness-Type Double Patenting Rejection**

33.     Amgen disputes the legal arguments and contentions set forth at paragraphs 46-63, 77-79, and 81-82 of Roche's Statement of Undisputed Facts for the reasons set forth below. (The remaining paragraphs are a subject of a separate Motion to Strike).  Further, Amgen objects to these paragraphs as failing to explain whether and how the contentions and arguments contained therein respond to any of the undisputed facts set forth in Amgen's Statement of Undisputed Facts, or even to arguments contained in Amgen's Motion for Summary Judgment of No Inequitable Conduct.  Amgen further objects to these paragraphs on the ground that they are not statements of fact at all, but rather legal arguments designed to extend the page limit for opposition briefs by dozens and dozens of pages.  Amgen further objects to these paragraphs to the extent that they raise new bases for its inequitable conduct allegations not plead with the required particularity of Federal Rule of Civil Procedure 9(b) and Amgen disputes the contentions and arguments contained therein on that basis.

34.     Amgen does not dispute paragraphs 46, 48 and 59.

35.      Amgen disputes each of the contentions and arguments set forth in paragraphs 47, 49-58, 60-63, 77-79 and 81-82.  Amgen disputes that Amgen or its prosecuting attorneys sought to improperly extend the patent life of any of its patents.  Amgen disputes that Mr. Borun misrepresented any legal holdings of prior decisions and disputes that the headings set forth in Amgen's Response to the Office Action rejecting its pending claims for obviousness-type double patenting were not supported by the facts or constituted a misrepresentation.  (See Amgen SOF 22-25).  Amgen disputes Roche's hypothetical contention that had the arguments been made a different way, this would have been important to a reasonable examiner.  Amgen disputes Roche's unstated suggestion that the issuance of separate counts does not constitute direct evidence of separate patentability and patentable distinctiveness.  (See Amgen Opening Brief at

12).  Amgen disputes that any statements in the interference briefs, or the interference records in their entirety, can be construed as inconsistent with Amgen's arguments for patentability.  (See Amgen Opening Brief at 14-15.  Amgen disputes that such arguments and interference briefs were material to the claims of any pending patent.  Amgen disputes that the Board's holding in the '097 Interference regarding inventorship bore any connection whatsoever to Amgen's arguments regarding priority made in the Lin '097 Interference Brief or in the Briefs to Terminate Interferences.  (Roche Ex. 70, *Fritsch v. Lin*, 21 U.S.P.Q.2d 1737, 1739 (Bd. Pat. & Interf. 1992) (relating to Board's findings on inventorship, not priority).   Amgen disputes Roche's insinuation that Mr. Borun misrepresented the law regarding obviousness-type double patenting. Finally, Roche provides no evidence of intent to deceive the patent office. Amgen disputes Roche's conclusions that misrepresentations and omissions occurred and that but for Amgen's having prosecuted its patents the way it did, the '868 and '698 patents would not have issued.

**Roche's Contentions re Molecular Weight**

36.    Amgen disputes the legal arguments and contentions set forth at paragraphs 83-110 of Roche's Statement of Undisputed Facts for the reasons set forth below.  (The remaining paragraphs are a subject of a separate Motion to Strike).  Further, Amgen objects to these paragraphs as failing to explain whether and how the contentions and arguments contained therein respond to any of the undisputed facts set forth in Amgen's Statement of Undisputed Facts, or even to arguments contained in Amgen's Motion for Summary Judgment of No Inequitable Conduct.  Amgen further objects to these paragraphs on the ground that they are not statements of fact at all, but rather legal arguments designed to extend the page limit for opposition briefs by dozens and dozens of pages.  Amgen further objects to these paragraphs to the extent that they raise new bases for its inequitable conduct allegations not plead with the

required particularity of Federal Rule of Civil Procedure 9(b) and Amgen disputes the contentions and arguments contained therein on that basis.

37.    Amgen does not dispute paragraphs 83, 85, 87 and 104.

38.    Amgen disputes Roche's suggestion that the issues litigated in the '334 Interference did not directly pertain to the molecular weight of urinary and recombinant Epo, even though the express limitations at issue did not discuss molecular weight. (*See, e.g.*, SOF 7 above). Amgen disputes Roche's suggestion that the limitations of claim 101 during prosecution of the '178 patent application were subject to no rejections, as prosecution was lengthy and included various rejections. Amgen disputes Roche's characterization of the '933 patent regarding the molecular weight of urinary erythropoietin insofar as column 5 of the '933 patent refers to "approximate" molecular weight. Amgen disputes the filing date of the Cummings Declaration and Roche's characterization of the purpose and contents of the Cummings Declaration. Amgen does not dispute that Dr. Egrie provided notebook pages to Mr. Borun but Amgen disputes Roche's suggestion that such was not disclosed to the patent office. (*See, e.g.* Amgen SOF 5, 9, above). Amgen does not dispute the accuracy of the quoted snippets from Dr. Egrie's lab notebook, but disputes that the same were not submitted to the patent office in accordance with the duties of disclosure and good faith and candor. (*See, e.g.* Amgen SOF 5, 9, above and Amgen Opening Brief). Roche further disputes Roche's suggestion that the data cited from Dr. Egrie's lab notebook was inconsistent with Amgen's submission to the patent office regarding molecular weight. Amgen disputes Roche's characterization of the decision in the UK regarding Dr. Egrie's lab notebook especially insofar as Roche omits other findings and take a single sentence out of context. (See Amgen Reply Brief). Moreover, these proceedings were after prosecution in the United States and are not relevant to the issue at hand. Amgen disputes Roche's blanket characterization of the various publications cited and disputes that they were not

properly disclosed to the patent office.  Amgen disputes that the information submitted to the

FDA contradicts the information contained in Amgen's patent and disputes that the information

was not properly disclosed to the patent office and disputes that Mr. Odre was assigned to the

IND.  Indeed, Amgen's submissions to the FDA provide further support of the differences

between uEPO and rEPO.  Amgen disputes Roche's suggestion that Dr. Strickland's declaration

in Europe contains inconsistent information from that provided to the patent office in the U.S. or

its suggestion that accurate comparisons of molecular weight may be made on numerical values

from an SDS PAGE experiment of molecular weight alone, without running the samples side by

side.  (*See, e.g.*, Amgen Opening Br. at 6).  Finally, Roche provides no evidence of intent to

deceive the patent office.  Amgen disputes Roche's conclusion that the '933 patent would not

have issued had Amgen submitted the additional information Roche cites.

**Roche's Contentions re CHO Epo.**

39.    Amgen disputes the legal arguments and contentions set forth at paragraphs 174-

194, 200-201 and 203-207 of Roche's Statement of Undisputed Facts for the reasons set forth

below.  (The remaining paragraphs are a subject of a separate Motion to Strike).  Further, Amgen

objects to these paragraphs as failing to explain whether and how the contentions and arguments

contained therein respond to any of the undisputed facts set forth in Amgen's Statement of

Undisputed Facts, or even to arguments contained in Amgen's Motion for Summary Judgment of

No Inequitable Conduct.  Amgen further objects to these paragraphs on the ground that they are

not statements of fact at all, but rather legal arguments designed to extend the page limit for

opposition briefs by dozens and dozens of pages.  Amgen further objects to these paragraphs to

the extent that they raise new bases for its inequitable conduct allegations not plead with the

required particularity of Federal Rule of Civil Procedure 9(b) and thus Amgen disputes the

contentions and arguments contained therein on that basis.  Amgen further objects to these

paragraphs to the extent that they are identical to or have the same information as previous paragraphs in Roche's Statement.

40.     Amgen repeats and incorporates herein its response to Roche's allegations regarding molecular weight.  Amgen disputes Roche's conclusion that the glycosylation, molecular weight and carbohydrate composition of uEPO and rEPO are the same, and also that Amgen "knew" this to be the case (since it clearly was not).  Amgen disputes Roche's suggestion that Amgen failed to provide the examiner with evidence that rEPO differs from naturally occurring EPO known since the application date as the Cummings Declaration plainly included such information.  (*See, e.g*., Yanagi and Storing references attached to Cummings Declaration). Amgen disputes Roche's allegation that Amgen ignored its own data and disputes that the examiner was without all material non-cumulative information regarding molecular weight. Amgen disputes Roche's assertion regarding which Egrie articles were referenced in Dr. Cummings' Declaration as the Cummings Declaration was responding to the Conradt Declaration and disputes the conclusions Roche draws from these articles.  Amgen further disputes that these articles, the gels shown within them, and the information contained therein, was not submitted to the patent office or otherwise non-cumulative.  (*See, e.g*., Amgen Opening Br. at 4-9).  The patent office had all information non-cumulative information regarding statements related to the similarities between uEPO and rEPO, including statements regarding identical migration, and similarity in size.  (*Id*.)  Amgen disputes Roche's contention that somehow Amgen concealed the contents of the Browne reference from the examiner and that the examiner would not have seen its contents, or that such a contention is even pertinent to the requirements of disclosure to the patent office.  Amgen further disputes the suggestion by Roche that the Browne reference not being on the face of the '933 patent has anything to do with the duty of disclosure.  Amgen disputes Roche's contention that its statements to the FDA were

contrary to positions taken in prosecution because in fact submissions to the FDA are entirely consistent and show differences between uEPO and rEPO.  (*See, e.g.* Roche Ex. 132, PLA, at AM-ITC 92856 referring to additional sections in PLA discussing differences in carbohydrate moieties).  Finally, Roche provides no evidence of intent to deceive the patent office.  Amgen disputes Roche's conclusion that the '933 and '080 patents would not have issued had Amgen cited the additional information Roche cites.

**Roche's Allegations re Co-Pending Applications**

41.    Amgen disputes the legal arguments and contentions set forth at paragraphs 208-253 of Roche's Statement of Undisputed Facts for the reasons set forth below.  Further, Amgen objects to these paragraphs as failing to explain whether and how the contentions and arguments contained therein respond to any of the undisputed facts set forth in Amgen's Statement of Undisputed Facts, or even to arguments contained in Amgen's Motion for Summary Judgment of No Inequitable Conduct.  Amgen further objects to these paragraphs on the ground that they are not statements of fact at all, but rather legal arguments designed to extend the page limit for opposition briefs by dozens and dozens of pages.  Amgen further objects to these paragraphs to the extent that they raise new bases for its inequitable conduct allegations not plead with the required particularity of Federal Rule of Civil Procedure 9(b) and Amgen thus disputes the contentions and arguments contained therein on that basis.

42.    Amgen disputes Roche's characterization of the MPEP.  Amgen also disputes the relevancy of these paragraphs.  First, Roche ignores that the same patent examiner issued all the patents (Examiner Martinell) and that this same examiner was involved with Amgen's initial application for Dr. Lin's inventions.  Second, Roche ignores that, as found by the patent office and maintained by Amgen, the '178 and '179 lines of applications were patentably distinct and not subject to a duty to disclose.  Third, Roche fails to show how any one of the rejections would

have been material to a reasonable examiner and only makes conclusory allegations.  (*See, e.g.*,

Amgen SOF 26-30).  Finally, Roche provides no evidence of intent to deceive the patent office.

Respectfully Submitted,

AMGEN INC.,
By its attorneys,


Of Counsel:

STUART L. WATT
WENDY A. WHITEFORD
MONIQUE L. CORDRAY
DARRELL G. DOTSON
KIMBERLIN L. MORLEY
ERICA S. OLSON
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA   91320-1789
(805) 447-5000

___/s/ Patricia R. Rich_____
D. DENNIS ALLEGRETTI (BBO#545511)
MICHAEL R. GOTTFRIED (BBO#542156)
PATRICIA R. RICH (BBO#640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210
Telephone:     (857) 488-4200
Facsimile:      (857) 488-4201

LLOYD R. DAY, JR. (*pro hac vice*)
DAY CASEBEER
MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014
Telephone:     (408) 873-0110
Facsimile:      (408) 873-0220

WILLIAM GAEDE III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone:     (650) 813-5000
Facsimile:      (650) 813-5100

KEVIN M. FLOWERS (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone:     (312) 474-6300
Facsimile:      (312) 474-0448

July 12, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as on-registered participants.


*/s/ Patricia R. Rich*
Patricia R. Rich