# EXHIBIT 1

--- F.3d ----, 2007 WL 1827845 (C.A.Fed. (Ohio)), 83 U.S.P.Q.2d 1191

Young v. Lumenis, Inc.
C.A.Fed. (Ohio),2007.
Only the Westlaw citation is currently available.
United States Court of Appeals,Federal Circuit.
William P. YOUNG, Plaintiff-Appellant,
v.
LUMENIS, INC., Defendant-Appellee.
No. 06-1455.

June 27, 2007.

**Background:** Patent holder brought action against competitor alleging infringement of patent directed toward surgical method for removing claw from domesticated cat. The United States District Court for the Southern District of Ohio, Algenon L. Marbley, J., 341 F.Supp.2d 925, held that claims of patent were invalid as indefinite and that patent was unenforceable by reason of inequitable conduct. Patent holder appealed.

**Holdings:** The Court of Appeals, Lourie, Circuit Judge, held that:

(1) claim language of "forming a first circumferential incision in the epidermis near the edge of the ungual crest of the claw" was not indefinite;

(2) statements which consisted of attorney argument, attempting to distinguish patent claims from prior art, and interpretation of what prior art disclosed, did not constitute affirmative misrepresentations of material fact; and

(3) disclosure of material information five months before patent examiner's final office action, albeit only after issue of disclosure was raised in parallel district court action and after examiner had issued its first office action in reexamination, did not constitute "failure to disclose" material information.

Reversed and remanded.

**[1] Patents 291 €⇒314(5)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k314 Hearing
            291k314(5) k. Questions of Law or Fact. Most Cited Cases

**Patents 291 €⇒324.5**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.5 k. Scope and Extent of Review in General. Most Cited Cases
A determination that a patent claim is invalid for failing to meet the definiteness requirement is a legal question reviewed de novo. 35 U.S.C.A. § 112.

**[2] Patents 291 €⇒112.5**

291 Patents
   291IV Applications and Proceedings Thereon
      291k112 Conclusiveness and Effect of Decisions of Patent Office
         291k112.5 k. Sufficiency of Evidence to Offset Effect of Decision in General. Most Cited Cases
Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence. 35 U.S.C.A. § 112.

**[3] Patents 291 €⇒101(6)**

291 Patents
   291IV Applications and Proceedings Thereon
      291k101 Claims
         291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Claim language of "forming a first circumferential incision in the epidermis near the edge of the ungual crest of the claw," in patent directed toward surgical method for removing claw from domesticated cat, was not indefinite, and thus claim was not invalid, since intrinsic evidence provided guidance to person of ordinary skill in art on meaning of term "near" as meaning close to, or at, most distal edge of ungual crest and there were no office actions issued by Pat-

ent and Trademark Office (PTO) during original prosecution rejecting that claim over prior art. 35 U.S.C.A. § 112.

**[4] Patents 291 ⇌101(6)**

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Patent claims are considered indefinite when they are not amenable to construction or are insolubly ambiguous; thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning. 35 U.S.C.A. § 112.

**[5] Patents 291 ⇌101(6)**

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Indefiniteness requires a determination whether those skilled in the art would understand what is claimed in the patent.

**[6] Patents 291 ⇌101(6)**

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
When intrinsic evidence resolves the claim construction, a term is not "insolubly ambiguous," and thus reference to the prior art is not needed, on a claim that a patent is invalid for indefiniteness. 35 U.S.C.A. § 112.

**[7] Patents 291 ⇌97**

291 Patents
    291IV Applications and Proceedings Thereon
        291k97 k. Patent Office and Proceedings Therein in General. Most Cited Cases
Statements that consisted of attorney argument, attempting to distinguish patent claims from prior art, and interpretation of what prior art disclosed did not constitute affirmative misrepresentations of material fact, for purpose of inequitable conduct claim.

**[8] Patents 291 ⇌97**

291 Patents
    291IV Applications and Proceedings Thereon
        291k97 k. Patent Office and Proceedings Therein in General. Most Cited Cases
Inequitable conduct includes affirmative misrepresentation of material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive the Patent and Trademark Office (PTO).

**[9] Patents 291 ⇌97**

291 Patents
    291IV Applications and Proceedings Thereon
        291k97 k. Patent Office and Proceedings Therein in General. Most Cited Cases
Disclosure of material information five months before patent examiner's final office action, albeit only after issue of disclosure was raised in parallel district court action and after examiner had issued its first office action in reexamination, did not constitute "failure to disclose" material information to Patent and Trademark Office (PTO) sufficient to constitute inequitable conduct, since examiner was fully apprised of that information and was able to fully consider it and any potential effects it may have had on patentability of claims.

**Patents 291 ⇌328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases
6,502,579. Valid.

Appealed from United States District Court for the Southern District of Ohio, Judge Algenon L. Marbley.

Richard W. Hoffmann, Warn Hoffmann Miller &

LaLone PC, of Auburn Hills, Michigan, argued for plaintiff-appellant. With him on the brief was Jason H. Foster, Kremblas Foster Phillips & Pollick, of Reynoldsburg, OH.

David A. Loewenstein, Pearl Cohen Zedek Latzer LLP, of New York, NY, argued for defendant-appellee. With him on the brief were Clyde A. Shuman and Nathaniel B. Buchek.

Before LOURIE, PROST, and MOORE, Circuit Judges.

LOURIE, Circuit Judge.

**\*1** William P. Young appeals from the judgment of the United States District Court for the Southern District of Ohio holding that claims 1-5 of U.S. Patent 6,502,579 (the " 579 patent") are invalid as indefinite under 35 U.S.C. § 112, ¶ 2 and the summary judgment that the 579 patent is unenforceable by reason of inequitable conduct. *Young v. Lumenis, Inc.,* No. 2:03-CV-655 (S.D.Ohio Nov. 1, 2005) *(Indefiniteness Order); Young v. Lumenis, Inc.,* No. 2:03-CV-655 (S.D.Ohio Mar. 28, 2006) (*Inequitable Conduct Order* ). Because we conclude that the term "near" is not indefinite, we reverse the judgment of invalidity. Because we conclude that no inequitable conduct occurred during the reexamination of the 579 patent, we reverse the court's grant of summary judgment of patent unenforceability.

BACKGROUND

Young is the inventor of the 579 patent, directed to a surgical method for removing a claw from a domesticated cat. A declaw procedure is known as an onychectomy, and the 579 patent is entitled "Laser Onychectomy by Resection of the Redundant Epithelium of the Ungual Crest." Figure 1 of the 579 patent, as represented below, illustrates the feline appendage:



FIG. 1

The feline appendage 10 includes a second phalanx 12 and a third phalanx 14 (also called the claw) connected by the extensor tendon 16, the flexor tendon 18, the collateral ligaments 20 and 22, the epithelium 24, and the pad 26. 579 patent col.4 ll.1-6. The synovium 28 is positioned in the joint between the second and third phalanges ("PII-PIII") and also connects the phalanges together. *Id.* at col.4 ll.6-7. The ungual crest 15 is the tissue that creates the hard claw.

The claimed procedure begins by making a circumferential incision in the epidermis of the ungual crest and applying traction to the epidermis in a cranial direction so that the epidermis is pushed back and exposes the extensor tendon and synovium. A laser then incises the extensor tendon and synovium, followed by ablation of the collateral ligaments, thereby permitting further disarticulation of the PII-PIII joint. Finally, the flexor tendon and tissue of the pad are incised by the laser, permitting removal of the third phalanx. The declaw site is then covered with the preserved redundant epithelium. According to the 579 patent, by preserving the redundant epithelium and using it to cover the declaw site, the need for surgical closure is eliminated and thus the incidence of infection is reduced.

Figure 2 of the 579 shows in more detail the incisions made in the redundant epidermis of the ungual crest during the first step of the claimed procedure:



FIG. 2

According to the 579 patent, the surgeon makes a first circumferential incision in the redundant epidermis of the ungual crest along line A-A. 579 patent col.4 ll.37-39. That incision "is made near the most distal edge of the epidermis and extends circumferentially around the claw to sever the epidermis from the ungual crest 15." *Id.* at 40-42. After the redundant epidermis is severed from the ungual crest, that tissue is still attached to the cat's claw, and the surgeon applies traction and pushes it back cranially in the direction of T. The traction in the direction of T causes the epidermis to "release from its distal attachment and permits a second circumferential incision of the redundant epidermis approximately 3 millimeters from the first incision along line B-B." *Id.* at 46-49. The second incision permits deeper subcutaneous tissue to be moved cranially from the ungual crest. After the redundant epidermis is separated from the ungual crest and is pushed back, the onychectomy proceeds with a laser severing the synovium between the second and third phalanges. Once the onychectomy procedure is complete and the claw is removed, the preserved redundant epidermis is pushed over the declaw site to cover and protect the opening formed by the removal of the claw.

**\*2** Young filed the application for the 579 patent on January 17, 2001. The patent issued on January 7, 2003 without any amendments to the claims. Representative claim 1 reads as follows:

A feline onychectomy surgical method using a laser cutting instrument, the method comprising:
(a) *forming a first circumferential incision in the epidermis near the edge of the ungual crest of the claw,* thereby severing at least some of the epidermis from the ungual crest;
(b) applying cranial traction to the epidermis severed from the ungual crest to displace the distal edge of the epithelium cranially;
(c) incising the extensor tendon near its insertion on the ungual crest;
(d) incising the synovium of the PII-PIII joint;
(e) applying traction to the claw in the palmar direction for disarticulating the PII-PIII joint;
(f) ablating the medial and lateral collateral ligaments;
(g) incising the digital flexor tendon; and
(h) incising the subcutaneous tissues of the pad of the second phalanx.

579 patent col.5 ll.51-62-col.6 ll.1-7 (emphasis added).

On July 23, 2003, Young filed suit in the district court against Lumenis, Inc. alleging infringement of the 579 patent and seeking preliminary and permanent injunctions, damages, and attorney fees. Lumenis is a manufacturer, seller, and distributor of surgical laser instruments that were alleged to have been used to perform Young's patented surgical procedure. Young asserted that Lumenis had been teaching veterinarians to perform the patented procedure in connection with its sales efforts. Lumenis responded by denying infringement and asserting a counterclaim of patent invalidity.

In June 2004, Lumenis requested reexamination of the 579 patent by the United States Patent & Trademark Office ("PTO"). On September 16, 2005, the PTO issued a first Office Action on the reexamination, rejecting independent claim 1 and dependent claim 2 under 35 U.S.C. § 103(a) as being unpatentable over two references submitted by Lumenis: Luxar Accuvet, "Clinical Atlas, 1998" in view of Fossum, "Small Animal Surgery, 1997" (the "Fossum Reference"). The examiner determined that the Fossum Reference disclosed steps (a) and (b) in claim 1, *viz.,* the circumferential incision in the redundant epidermis and the retraction of the epidermis from the ungual crest.

The Fossum Reference is a chapter in a veterinary textbook, edited by Professor Theresa Fossum, and it teaches an onychectomy procedure. Fossum teaches one to: "Circumferentially incise the hairless, cuticle-like skin away from the claw near the articulation between the second and third phalanx (Fig.13-37B)." Figure 13-37B is reproduced below:



The description accompanying Figure 13-37B states that "Dissection onychetomy disarticulates the third phalanx by transecting the tendons, ligaments, and other soft tissue attachments." The examiner stated that "figure 13-37B of Fossum illustrates circumferential incision in the epidermis near the edge of the ungual crest (see dotted line).... While Fossum does not specifically state that cranial traction is applied to the epidermis or that the tissue is retracted from the ungual crest between the second and third phalanges, the figure appears to illustrate such displacement of the epidermis away from the joint between the second and third phalanges."

**\*3** On October 26, 2005, Young submitted a response to the first Office Action ("October 2005 Response"). That response argued that the prior art references do not teach a first circumferential incision near the edge of the ungual crest. With regard to the Fossum Reference, the October 2005 Response argues:

The articulation between the second and third phalanx is the PII-PIII joint through which conventional declaw incisions proceed in a single cutting path. This is supported by the illustration referenced (Fig.13-37, B), which is shown on page 147 of the Fossum reference. This illustration has a broken line labeled "incision" that extends between the PII and PIII phalanges. The line is *not* near the edge of the ungual crest, but goes through the articulation between the PII and PIII phalanges" (emphasis in original).

After some further prosecution, the PTO issued a Reexamination Certificate, confirming the patentability of all claims.

While the reexamination of the 579 patent was proceeding at the PTO, the district court continued to adjudicate the suit between Young and Lumenis. On March 1, 2005, the district court conducted a *Markman* hearing. Professor Hedlund, author of the textbook that includes the Fossum Reference, testified as to onychectomy taught in that reference. Hedlund was specifically asked about Figure 13-37B. In her direct examination, she testified:

Q: Okay. Could you turn to figure on page 147, 13-37, looks like B? Do you have that in front of you?
A: Yes.
Q: Can you explain why the scalpel is shown at the joint in that figure?
A: Because this is demonstrating as you begin to cut though the tendons that attach to P3.
Q: So is this figure after the first circumferential incision has already been made?
A: Yes, it is.
Q: And has the skin already been pulled back at that point?
A: Correct.

On cross-examination, Hedlund was asked to clarify her explanation of Figure 13-37B and she testified:Q: Then if we look at figure 13-37B that's referred to in that sentence that I directed you to a moment ago, that's of Hedlund Exhibit # 2, does that illustration show that incision you just described?
A: No. It's not really showing the cuticle incision, it's showing-it's referring to the anatomy there and the dotted line is showing where you go through the joint space after you've made your cuticle-like incision.

It is whether this testimony was timely submitted to the PTO that is at issue concerning the inequitable conduct claim, see *infra.*

On November 1, 2005, the court issued an order holding, *inter alia,* claims 1 through 5 to be invalid under § 112, ¶ 2 because the claim term "near" was indefinite. The court relied on *Amgen, Inc. v. Chugai Pharm. Co., Ltd.,* 927 F.2d 1200, 1218 (Fed.Cir.1991), for the principle that a word of degree can be indefinite when it fails to distinguish the invention over the prior art and does not permit one of ordinary skill to know what activity constitutes in-

fringement. *Indefiniteness Order,* slip op. at 6-7. The district court stated:

**\*4** Applying *Amgen* to Claim 1, Step (a), the Court finds the word "near" indefinite pursuant to 35 U.S.C. § 112 ¶ 2, for failing to distinguish the claimed subject matter from the prior art. Defendant has convinced this Court, by clear and convincing evidence, that a veterinary surgeon attempting to avoid infringement would be unable to do so because "near" fails to distinguish Plaintiff's patent from prior art.

*Id.* at 7. After rejecting Young's argument that the Fossum Reference teaches an incision between the PII-PIII joint, not near the edge of the ungual crest, the court then determined that Lumenis had proved by clear and convincing evidence that the "Fossum Reference instructs a surgeon to make the incision at essentially the same point described in the 579 patent." The court reasoned that Fossum directs a surgeon to "circumferentially incise the hairless, cuticle-like skin away from the claw near the articulation between the second and third phalanx." *Id.* at 9. The court determined that "[i]n light of this strikingly similar prior art, the Court does not see how the first step in Claim 1 of the 579 patent adequately delineates the scope of the invention." *Id.*

The district court rejected Young's argument that the claims are clearly distinguishable from the prior art because the surgeon intends to and does save enough epidermis to cover the wound, unlike in the prior art. The court stated that "Claim 1, Step (a) is invalid for indefiniteness because Defendant has proved by clear and convincing evidence that it would be impossible for someone skilled in the art to determine the meaning of 'near' so as to avoid infringement." *Id.* at 10. A footnote included at the end of that statement notes that although Lumenis had extensively argued that the claims were invalid for obviousness, the court would not resolve that issue because it was not fully briefed or argued before the court. *Indefiniteness Order,* slip op. at 10 n. 5. Hence, the district court held claims 1-5 to be invalid only for indefiniteness.

On January 9, 2006, after Young had filed his October 2005 Response at the PTO, Lumenis filed a motion in the district court for summary judgment of un-enforceability due to inequitable conduct during the reexamination. Lumenis asserted that Young engaged in inequitable conduct during the reexamination because: (1) he failed to disclose the Hedlund deposition testimony to the PTO, which was material, and (2) his attorney made false statements to the PTO in his October 2005 Response to the first Office Action. Subsequently, on January 30, 2006, Young did submit Hedlund's deposition testimony to the PTO, which was thus before the examiner issued a second Office Action.

On March 28, 2006, the district court granted Lumenis's motion for summary judgment of unenforceability due to inequitable conduct. The court first considered the failure to submit the Hedlund deposition testimony to the PTO. The court held that Young had a duty to disclose that testimony to the PTO because it was material. The court reasoned that:

**\*5** Plaintiff's understanding of what is material during reexamination proceedings is mistaken. Section 1.555(b)(2)(i) expressly provides that information is material to a reexamination proceeding when "[i]t refutes, or is inconsistent with, a position the patent owner takes in opposing an argument of unpatentability relied on by the Office." 37 C.F.R. § 1.555(b)(2)(i). Hedlund's deposition testimony falls squarely within this category because her explanation for the diagram refutes Plaintiff's position that the Fossum reference teaches a different incision than the incision in Claims 1 and 2 of the 579 patent. Therefore the Hedlund deposition testimony is material to the reexamination proceedings.

*Inequitable Conduct Order,* slip op. at 26. Young argued that his submission of the Hedlund deposition testimony to the PTO on January 30, 2006, before the examiner had issued its second Office Action, mooted the issue of whether the failure to disclose that testimony constituted inequitable conduct. In a footnote, the court disagreed and stated that "[i]f the court finds his conduct before the PTO inequitable, Plaintiff's recent submission does not cure his misconduct." *Inequitable Conduct,* slip op. at 20 n. 19. The court further stated that Young "did not provide the updated information to the PTO until Defendant filed this motion" and cited *Rohm & Haas Co. v.*

*Crystal Chemical Co.,* 722 F.2d 1556, 1572 (Fed.Cir.1983), for the principle that to cure inequitable conduct, one must take the necessary action on one's own initiative. The court also noted that *Rohm & Haas* sets forth other specific requirements for remedying inequitable conduct and that Young had not proved by clear and convincing evidence that he had taken the necessary steps to cure the inequitable conduct, although the court did not state which other specific requirements were not fulfilled. At the end of the footnote, the court concluded that "if the Court finds inequitable conduct here, [Young's] misdeeds are not cured simply because of his recent disclosure of the Hedlund deposition to the PTO." *Inequitable Conduct,* slip op. at 21 n. 19.

The court next considered the allegation that Young made false written statements in the October 2005 Response. The court noted that the specific statements in the October 2005 Response that Lumenis alleged were false were that: "Fossum teaches a skin incision at the joint between PII and PIII *not* near the edge of the ungual crest"; "The prior art *only* teaches to cut through the joint in a single straight cutting path"; "The Fossum reference also teaches a single cutting path incision starting with the skin at the PII-PIII joint." *Id.* at 26 (emphases in original). The court stated that:

Plaintiff's statements to the PTO are misleading in light of Hedlund's deposition testimony, which Plaintiff should have submitted to the Examiner.... And, contrary to Plaintiff's suggestion, Hedlund's deposition testimony is not merely an opinion that contradicts Plaintiff's argument; Hedlund is the author of the chapter in the Fossum reference that Plaintiff concedes is prior art. Plaintiff's statements to the Examiner flatly reject the content of Hedlund's deposition testimony. Without question, Plaintiff's statements are affirmative misstatements of material fact.

*\*6 Inequitable Conduct Order,* slip op. at 27.

With regard to intent, the district court stated that "[g]iven the highly material nature of Plaintiff's misleading statements and his failure to disclose Hedlund's deposition testimony, which the Court finds to be material information, this Court may properly infer an intent to deceive." *Id.* at 28. The court then concluded that because Lumenis demonstrated "by clear and convincing evidence both that the information was material and that the conduct was intended to deceive, the Court finds that Plaintiff did engage in inequitable conduct before the PTO, and as such, the 579 patent is unenforceable in its entirety." *Id.* Hence, the court granted Lumenis's motion for summary judgment that the 579 patent is unenforceable. *Id.*

Young timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### DISCUSSION

[1][2] A determination that a patent claim is invalid for failing to meet the definiteness requirement in 35 U.S.C. § 112, ¶ 2 is a legal question reviewed *de novo. Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.,* 336 F.3d 1308, 1318 (Fed.Cir.2003). Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence. *AK Steel Corp. v. Sollac & Ugine,* 344 F.3d 1234, 1238-39 (Fed.Cir.2003). We review a district court's grant of summary judgment de novo, reapplying the standard applicable at the district court. *See Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1301 (Fed.Cir.1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In addition, in deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Both elements of a conclusion of inequitable conduct, intent and materiality, are questions of fact and must be proven by clear and convincing evidence. *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.,* 747 F.2d 1553, 1559 (Fed.Cir.1984). "Although it is not impermissible to grant summary judgment of inequitable conduct, this court 'urges caution' in making an inequitable conduct determination at the summary judgment stage."

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 439 F.3d 1335, 1340 (Fed.Cir.2006) (internal citation omitted).

### A. *Indefiniteness*

[3] On appeal, Young argues that the district court incorrectly determined that the term "near" is indefinite. According to Young, the district court never considered the intrinsic evidence to determine the meaning of the term "near," and instead only relied on extrinsic evidence, such as the prior art Fossum Reference and the Hedlund deposition testimony. Young asserts that the term "near" is clearly defined in the specification and can be construed such that it is not indefinite. Moreover, Young asserts that all the witnesses understood the term, including Hedlund, who, in fact, used the term "near" in the Fossum Reference to describe the location of an incision. Finally, Young contends that the court misapplied *Amgen,* which involved a limitation that was not supported in the specification or the prosecution history.

**\*7** Lumenis responds that the district court properly determined that the term "near" fails to distinguish the claimed invention from the prior art, and thus fails to apprise potential infringers of the scope of the claims. Lumenis further asserts that if the claims were unambiguous, there would have been no need to resort to extrinsic evidence. Lumenis contends that there is, in fact, no definition of the term "near" in the specification so that it was proper for the court to rely on extrinsic evidence. According to Lumenis, the district court's focus on whether the claims distinguished what was claimed from what was in the prior art was the appropriate inquiry, as stated by this court in *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342 (Fed.Cir.2005). Lumenis argues that the prior art is very close. Lumenis further asserts that the term "near" is a word of degree and is indefinite because it fails to inform the public of its bounds and is thus akin to the situation in *Amgen,* as the district court noted.

[4][5] We agree with Young that the district court erred in determining that the term "near" is indefinite. A patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. The purpose of the definiteness requirement is to "ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize,* 417 F.3d at 1347 (internal citation omitted). Claims are considered indefinite when they are "not amenable to construction or are insolubly ambiguous.... Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning." *Id.* Indefiniteness requires a determination whether those skilled in the art would understand what is claimed. To make that determination, we have explained that "in the face of an allegation of indefiniteness, general principles of claim construction apply." *Id.* at 1348. In that regard, claim construction involves consideration of primarily the intrinsic evidence, *viz.,* the claim language, the specification, and the prosecution history. *Phillips v. AWH Corp.,* 415 F.3d 1202, 1314 (Fed.Cir.2005) (en banc).

We first consider the claim language. The term "near" is recited in Claim 1(a) as: "forming a first circumferential incision in the epidermis near the edge of the ungual crest of the claw." That language implies that an incision is made in the epidermis somewhere close to or at the edge of the ungual crest. As used in the claim, the term "near" is not insolubly ambiguous and does not depart from the ordinary and customary meaning of the phrase "near" as meaning "close to or at" the edge of the ungual crest.

Reference to the specification shows that it is consistent with that understanding of the term. The specification makes reasonably clear that the first incision is made very close to or at the edge of the ungual crest. In the "Brief Summary of the Invention," the specification describes the invented method as including a first incision in the epidermis "at the edge of the ungual crest of the feline's claw." 579 patent col.1 ll.63-67. The specification further describes that the first incision "severs the most distal portion of the epidermis from the underlying fascia of the ungual crest." *Id.* Additionally, in the "Detailed Description of the Invention," the disclosure states that the first incision "is made near the most distal edge of the epidermis and extends circumferentially around the claw

to sever the epidermis from the ungual crest." *Id.* col.4 ll. 39-42. Thus, based on the several descriptions in the specification, we understand the term "near the edge of the ungual crest" as recited in the claims to mean close to or at the most distal edge of the epidermis. In fact, Figure 2 shows an example of such an incision "near" the edge of the ungual crest, as illustrated by line A-A. That figure illustrates where the first incision is made in relation to the crest and phalanx, and provides a standard for measuring the meaning of the term "near."

**\*8** Moreover, because the term "near" describes a location on an animal, its use, as opposed to a precise numerical measurement, is not inappropriate because the size of the appendage and the amount of skin required to be incised will vary from animal to animal based on the animal's size. Akin to the term "approximately," a person having ordinary skill in the art would know where to make the cut; thus the use of the word "near" does not deprive one of ordinary skill from being able to ascertain where the cut should be made.

Lumenis argues that the district court properly applied *Amgen* and determined that the term "near" is indefinite because it fails to distinguish the claims over the prior art. We do not agree that *Amgen* supports the district court's decision. In *Amgen,* the invention was directed to homogeneous erythropoietin ("EPO"), a protein consisting of 165 amino acids that stimulates the production of red blood cells. 927 F.2d at 1203. The claim recited homogenous EPO characterized by the limitation "specific activity of at least about 160,000 IU per absorbance unit." *Id.* The district court determined that "bioassays provide an imprecise form of measurement with a range of error" and that the use of the term "about" 160,000 IU coupled with the range of error already inherent in the specific activity limitation, did not distinguish the invention over close prior art, which described preparations of 120,000 IU, or permitted one of ordinary skill in the art to know what specific activity values below 160,000 IU might constitute infringement. *Id.* at 1217. The claims as filed included the limitation "at least 120,000." After the examiner rejected the claims because the prior art included EPO having a specific activity of 128,620 IU, the claims were amended to change the "at least 120,000" language to "at least about 160,000" to avoid the cited prior art.

Because the term "about" did not give any indication as to which numerical value between the prior art specific activity value of 128,620 and 160,000 constituted infringement, the court held the term "at least about" to be indefinite. *Id.* at 1218. The district court further observed that there was nothing in the specification or prosecution history that provided any indication as to what range of specific activity was covered by the term "about," and no expert testified as to a definite meaning for the term. For those reasons, we affirmed the district court's determination of invalidity, stating that when the meaning of the claims is unclear, especially when there is close prior art, the claims properly may be held to be invalid. *Id.*

[6] Unlike the situation in *Amgen,* here the intrinsic evidence does provide guidance on the meaning of the term "near." When intrinsic evidence resolves the claim construction, a term is not "insolubly ambiguous," and thus reference to the prior art is not needed. That is the situation here. In addition, there were no office actions issued by the PTO during the original prosecution rejecting the claims over the prior art. There were also no amendments or arguments filed by the patentee. Thus, unlike in *Amgen,* the claims were not amended to include vague language in order to overcome close prior art.

**\*9** In sum, Lumenis did not prove by clear and convincing evidence that the claims are invalid for indefiniteness. The claim language and the specification make clear that the term "near" means close to or at the most distal edge of the ungual crest.

### B. *Inequitable Conduct*

[7] Young argues that the court erred in granting summary judgment of unenforceability. Young argues that there was no inequitable conduct arising from a "failure to disclose" the Hedlund deposition testimony because Young submitted that testimony to the PTO during the reexamination. Young asserts that he submitted the testimony to the PTO well before the examiner had issued his second Office Action and thus the examiner was fully apprised of the Hedlund

testimony and was able to fully consider it. Therefore, Young asserts that any alleged misconduct that may have resulted from an initial failure to disclose the testimony was cured when Young submitted that testimony to the PTO while the reexamination was proceeding. Young also asserts that he made no affirmative misrepresentations of material facts. According to Young, the October 2005 Response consisted of arguments distinguishing the claimed location of the incision near the ungual crest from the location of the incision illustrated in the Fossum Reference. Young argues that the examiner was free to accept or reject those arguments and that they cannot be considered to be affirmative misstatements of material fact.

Lumenis responds that the district court properly granted summary judgment because there were no undecided genuine issues of material fact. According to Lumenis, the Hedlund deposition testimony was material because it refuted and was inconsistent with an argument that Young made to the PTO. By not submitting that information to the PTO, Lumenis asserts that Young intended to mislead the PTO. Lumenis contends that Young failed to cure the misconduct in submitting the deposition testimony to the PTO because that submission occurred only after Lumenis filed its motion for summary judgment in the district court, not on Young's "own initiative," as required in *Rohm & Haas*. Lumenis also asserts that Young's statements made to the examiner in the October 2005 Response were affirmative misstatements of fact constituting inequitable conduct because they did not accurately describe the incision shown in the Fossum Reference.

[8] We agree with Young that the district court erred in granting summary judgment of inequitable conduct. "Inequitable conduct includes affirmative misrepresentation of material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive." *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). In this case, the court determined that there was inequitable conduct arising from a "failure to disclose material information" and from an "affirmative misrepresentation of material fact." We conclude that there was no "failure to disclose material information" to the PTO because the alleged material information was disclosed to the PTO at a time when it could be considered by the examiner. We also conclude that no affirmative misrepresentations of material fact have been shown. We therefore conclude that the court erred in granting summary judgment of inequitable conduct.

**\*10** We first consider whether the statements made in Young's October 2005 Response to the first Office Action constituted affirmative misrepresentations of material fact. The three statements in Young's October 2005 Response that the district court found to be affirmative misrepresentations of material fact are:
(1) "The only reference in Fossum to this illustration is at the end of the quoted sentence that discusses the first incision through the *skin,* not through tendons and ligaments. Thus, the only reasonable interpretation of this illustration and the reference to it when discussing the first incision is that it shows the location of the first incision: through the skin. Fossum teaches a skin incision at the joint between PII and PIII *not* near the edge of the ungual crest." (emphasis in original).
(2) "The prior art *only* teaches to cut though the joint in a single straight cutting path." (emphasis in original).
(3) "The Fossum reference also teaches a single cutting path incision starting with the skin at the PII-PIII joint."

*Inequitable Conduct Order,* slip op. at 26-27.

The district court found, with limited discussion, that "[w]ithout question, [Young's] statements are affirmative misstatements of material fact." *Id.* at 27. We do not agree. Those statements are attorney argument, attempting to distinguish the claims from the prior art, not gross mischaracterizations or unreasonable interpretations of the Fossum Reference. They describe Young's interpretation of what the Fossum Reference teaches and why the incision disclosed in that reference is different from the claimed incision. For example, the first statement states that the Fossum Reference teaches "a skin incision at the joint between PII and PIII, not near the edge of the ungual crest." Based on Figure 13-37B in the Fossum Reference, that statement does not appear to be demon-

strably false and, instead, represents Young's interpretation of what the Fossum Reference teaches.

The examiner had the Fossum Reference to refer to during the reexamination proceeding and initially rejected claim 1 based on that reference. Young argued against the rejection, and the examiner was free to reach his own conclusions and accept or reject Young's arguments. We therefore fail to see how the statements in the October 2005 Response, which consist of attorney argument and an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact.

[9] We next consider whether there was a "failure to disclose" material information to the PTO sufficient to constitute inequitable conduct when that information was disclosed before the examiner's final Office Action, albeit only after the issue of disclosure was raised in a parallel district court action.[FN1] On January 9, 2006, Lumenis filed a motion in the district court for a judgment of unenforceability based on inequitable conduct during the reexamination. Shortly thereafter, on January 30, 2006, Young submitted the Hedlund deposition testimony to the PTO. That submission occurred after the examiner had issued its first Office Action in the reexamination, but more than five months before the examiner had issued a second Office Action. The examiner was therefore fully apprised of the Hedlund deposition testimony and was able to fully consider it and any potential effects it may have on the patentability of the claims before issuing his second Office Action. Thus, we cannot agree that there was inequitable conduct resulting from the "failure to disclose material information" when that information was disclosed to the PTO in time for the examiner to consider it. The essence of the duty of disclosure is to get relevant information before an examiner in time for him to act on it, and that did occur here.

*11 The district court relied on *Rohm & Haas* for its inequitable conduct holding, but we regard that case as distinguishable, involving different facts, particularly because in that case the issue related to an alleged false affidavit, where a cure hurdle may be higher than here. In this case, the issue related to an alleged omission, and that omission was cured by a timely submission. *See, e.g., Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1582 (Fed.Cir.1991) ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it can not be deemed to have been withheld from the examiner.").

Because the district court clearly erred in determining that the statements in the October 2005 Response were affirmative misrepresentations of material fact and because there was no failure to disclose information while the reexamination was still pending before the PTO, we conclude that the district court erred in granting summary judgment of inequitable conduct.

## CONCLUSION

Because we conclude that the term "near" is not indefinite, we reverse the district court's grant of judgment of invalidity for indefiniteness. Because we determine that no affirmative misrepresentation of material fact occurred and that there was not a failure to timely disclose material information, we reverse the summary judgment of unenforceability.

*REVERSED*

> FN1. For purposes of our conclusion, we assume that the deposition testimony was material.

C.A.Fed. (Ohio),2007.
Young v. Lumenis, Inc.
--- F.3d ----, 2007 WL 1827845 (C.A.Fed. (Ohio)), 83 U.S.P.Q.2d 1191

END OF DOCUMENT