UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>F. HOFFMANN-LA ROCHE LTD )<br>ROCHE DIAGNOSTICS GmbH )<br>and HOFFMANN-LA ROCHE INC. )<br>)<br>Defendants. )<br>) | CIVIL ACTION No.: 05-CV-12237WGY |

**DEFENDANTS' OPPOSITION TO AMGEN INC.'S MOTION TO STRIKE THE DECLARATION OF DR. SVEN-MICHAEL CORDS**

Amgen's Motion to Strike (Docket Item ("D.I.") 681) is based on a false predicate: "that Roche withheld from discovery the complete test protocol that it had Dr. Cords follow."

Dr. Cords's deposition, however, makes clear that Roche produced to Amgen the complete protocol provided to Dr. Cords. Amgen apparently finds it hard to believe that Dr. Cords was able perform the Normomouse assay based on that protocol provided to him; however, the deposition of Dr. Cords also makes clear that, based on his past experience and training with the Normomouse assay, the protocol provided to him was more than sufficient for him to conduct the assay. In short, Roche withheld nothing from Amgen. Roche produced every bit of protocol that Dr. Cords relied on.

For example, in his deposition, Dr. Cords confirmed that the document produced to Amgen, which was marked as Cords. Ex. 11 (Ex. E of D.I. 683), set forth the complete protocol:

```
18     Q    Is it your testimony, Dr. Cords, that
19   Cords Exhibit 11 is the protocol that was sent to
20   you by Kaye Scholer which you were to follow in
```

03099/00501 702634.1

Dockets.Justia.com

```
21    performing the assay that was conducted in this
22    case?
23       A    Yes, that's correct.
```

Cords Deposition Transcript, p. 162; *see* Seluga Declaration Ex. 1.

Amgen's attorney professed disbelief that this document, Cords Ex. 11, set forth the entire protocol, but Dr. Cords explained that the protocol did indeed provide all the necessary parameters:

```
24       Q    Maybe I'm missing something, but it
25    just doesn't seem to me that there is much in here
                                                          163
1     about the conditions to perform the Normomouse
2     bioassay, so how did you know the parameters of the
3     assay?
4        A    What we need for the dilution is the
5     protein concentration.  It's given.  What we need to
6     know how much we have to inject is given on the
7     second page, this 100-milligram [sic: nanogram] per
      mouse.  All we
8     have to evaluate then is the dilution protocol.  And
9     the rest is I think quite clear.  We have to count
10    reticulocytes after two, three, four and five days.
```

*Id.*, pp. 162-163.

Dr. Cords then confirmed at his deposition that this protocol, as described in Cords Ex. 11, is the protocol he followed in performing his experiment:

```
11       Q    Did you follow the protocol that is
12    provided in Cords Exhibit 11?
13       A    Yes, we did.
```

*Id.*, p. 163.

Later on in the deposition, Amgen questioned Dr. Cords about the training he received to perform the experiment:

```
19      Q       You didn't receive any training for
20   performing the modified Normomouse bioassay that you
21   performed in this case, is that correct?
22      A       We did not received any training
23   because all our staff members are well trained with
24   Normomouse, the standard of Normomouse assay, and
25   especially the handling is exactly the same.
                                                                168
                  *      *      *
 4      [Q]     No one at your company received any
 5   special training for the modified Normomouse
 6   bioassay that was actually performed in this case,
 7   though, is that correct?
 8      A       That's correct.
```

*Id.*, pp. 167-168.

The foregoing excerpts from the deposition of Dr. Cords's deposition conclusively belie the crux of Amgen's motion "that Roche withheld from discovery the complete test protocol that it had Dr. Cords follow." A reading of the entirety of Dr. Cords's deposition (as opposed to the selected excerpts that Amgen has taken out of context) leads one to the same conclusion: Amgen's contention has no basis. Because this contention is the entire basis for Amgen's motion, Amgen's motion should be denied.

To the extent that Amgen believes that the experiments Dr. Cords performed were somehow deficient or non-rigorous or "entirely irrelevant" (D.I. 681 p. 1), such beliefs—as ill-founded as they may be—would go to the weight that should be given to Dr. Cords's experimental results and his opinions, not to whether the testimony should be stricken. See, e.g., *U.S. v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006) (strength of factual underpinning of expert opinion affects weight and credibility of testimony and must be resolved by the jury); *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l,*

*Inc.*, 851 F.2d 540, 544-45 (1st Cir. 1988) (expert testimony should be admitted, even if not all of the facts or data on which he relied were not admitted).

Although the foregoing discussion sufficiently explains why Amgen's motion should be denied, Roche must note that Amgen makes many misleading and disingenuous statements in its motion to strike. Some of these Roche will now address.

For example, Amgen's motion implies that Roche produced only one four-page document relating to Dr. Cords's testing. This implication is false; Roche produced hundreds of pages of underlying documents before Dr. Cords's original report and before his deposition.

Included among these were Bates numbers R008890790-93, which set forth the protocol that Dr. Cords used. Bates numbers R008890790-93 were part of Cords Ex. 10 at Dr. Cords's deposition. Seluga Declaration Ex. 2 is an excerpt of Cords Ex. 10, including Bates numbers R008890790-93. The entire Cords Ex. 10 is 277 pages long. A comparison of Bates numbers R008890790-93 with Cords Ex. 11 shows that they are indeed the same protocol, the protocol followed by Dr. Cords. This comparison was made at the deposition of Dr. Cords. *See, e.g.,* Cords Deposition Transcript, pp. 125-126 and 160-162; *see* Seluga Declaration Ex. 1.

Therefore, Amgen had all information to which it is entitled about Dr. Cords's experiment. And Amgen had ample time at the day-long deposition to question Dr. Cords on every technical detail in the protocol, which Amgen did. *See, e.g.,* Cords Deposition Transcript, pp. 36, 47-49, 51, 73-75, 135-138, 160-163, 167-168; *see* Seluga Declaration Ex. 1. Indeed, under Fed. R. Evid. 705, an expert need only state his opinion (which Dr. Cords most certainly did). It is then up to the opposing party to challenge the factual underpinnings of the opinion on cross-examination. *See Int'l Adhesive Coating Co.,* 851 F.2d at 545; *see also Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1575-76 (Fed. Cir. 1991).

Also, Amgen argues that the redacted portion of Cords Ex. 11—which was redacted pursuant to the protections of the Stipulated Order (D.I. 267) in this case—should be listed on the privilege log. Under Amgen's logic every email and draft exchanged between the lawyers and the experts in this case should be on a privilege log, but this is clearly not the practice followed by either party, including Amgen. And this is clearly not the practice envisioned by the Stipulated Order.

The redacted portion on Cords Ex. 11 is properly redacted pursuant to the Stipulated Order. Amgen argues at page 2 of its motion to strike that the redacted portion of Cords Ex. 11 should be produced to Amgen because the Stipulated Order requires production of any underlying data or documents that "an expert relies on or refers to such a test in the expert's report or testimony …." Stipulated Order Regarding Expert Discovery (D.I. 267) at p. 2-3. However, Dr. Cords did <u>not</u> rely on or refer to the information in the redacted portion of Cords Ex. 11. Cords Declaration ¶ 6. Therefore, Amgen's argument is unfounded.

## CONCLUSION

Because the entire basis for Amgen's motion is belied by Dr. Cords's sworn testimony at his deposition—which testimony was given under oath in response to questioning by Amgen—Amgen's motion should be denied.

| | |
|---|---|
| Dated:  July 16, 2007<br>        Boston, Massachusetts | Respectfully submitted,<br><br>F. HOFFMANN-LA ROCHE LTD,<br>ROCHE DIAGNOSTICS GMBH, and<br>HOFFMANN-LA ROCHE INC.<br><br>*By their Attorneys*<br><br>/s/ Julia Huston                              <br>Lee Carl Bromberg (BBO# 058480)<br>Timothy M. Murphy (BBO# 551926)<br>Julia Huston (BBO# 562160)<br>Keith E. Toms (BBO# 663369)<br>Nicole A. Rizzo (BBO# 663853)<br>BROMBERG & SUNSTEIN LLP<br>125 Summer Street<br>Boston, MA 02110<br>Tel. (617) 443-9292<br>jhuston@bromsun.com<br><br>Leora Ben-Ami (*pro hac vice*)<br>Mark S. Popofsky (*pro hac vice*)<br>Patricia A. Carson (*pro hac vice*)<br>Thomas F. Fleming (*pro hac vice*)<br>Howard S. Suh (*pro hac vice*)<br>Christopher T. Jagoe (*pro hac vice*)<br>KAYE SCHOLER LLP<br>425 Park Avenue<br>New York, New York 10022<br>Tel. (212) 836-8000 |

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

/s/  Julia Huston                              
Julia Huston