# EXHIBIT A

Dockets.Justia.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AMGEN, INC.,

               Plaintiff,

    v.

F. HOFFMANN-LA ROCHE, LTD.,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE, INC.

             Defendants.

Civil Action No. 05-CV-12237 WGY

## EXPERT REPORT OF DR. EDWARD EVERETT HARLOW, JR.

TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................................1

II.     MATERIALS REVIEWED ......................................................................................4

III.    METHODS FOR EXPRESSING AND RECOVERING RECOMBINANT
        PROTEINS FROM MAMMALIAN CELL CULTURES WERE WELL KNOWN
        IN 1983 ....................................................................................................................6

        A.      Recombinant techniques call for transfecting or transforming a cell with
                an exogenous DNA sequence ........................................................................6

        B.      Vertebrate cells, in particular mammalian cells, and more particularly
                CHO cells were typical cells used to synthesize proteins for human use..............10

        C.      Scientists routinely sought amplification of protein production through use
                of promoter DNA and amplified marker gene and DHFR in suitable
                nutrient conditions ......................................................................................12

        D.      Recombinant proteins were typically sought after for use in
                pharmaceutical compositions ......................................................................15

IV.     ERYTHROPOIETIN HAD BEEN EXTENSIVELY STUDIED AS OF 1983 ................15

        A.      Human urinary EPO had been isolated and used to treat kidney failure
                patients ......................................................................................................15

        B.      Mammalian cells were generally preferred for seeking glycosylation of
                expressed proteins ......................................................................................17

        C.      An exogenous DNA sequence is needed to produce a corresponding amino
                acid sequence ............................................................................................19

V.      ORDINARY SKILL IN THE ART............................................................................20

VI.     '016 PATENT CLAIM 10........................................................................................20

VII.    THE CLAIMS-IN-SUIT WERE ANTICIPATED OR OBVIOUS OVER '016
        PATENT CLAIM 10 ................................................................................................24

        A.      '933 Patent................................................................................................24

                1.      Claim 3 ..........................................................................................24

                2.      Claim 7 ..........................................................................................26

i

3.      Claim 8 ........................................................................................26

4.      Claims 9 and 12 ...........................................................................26

5.      Claims 11 and 14 .........................................................................27

B.      '080 Patent ..............................................................................................28

1.      Claim 3 ........................................................................................28

2.      Claim 4 ........................................................................................28

3.      Claim 6 ........................................................................................29

C.      '422 Patent Claim 1 ................................................................................30

D.      '698 Patent ..............................................................................................30

1.      Claim 4 ........................................................................................30

2.      Claim 5 ........................................................................................31

3.      Claim 6 ........................................................................................32

4.      Claim 7 ........................................................................................33

5.      Claim 8 ........................................................................................33

6.      Claim 9 ........................................................................................34

E.      '868 Patent ..............................................................................................34

1.      Claim 1 ........................................................................................34

2.      Claim 2 ........................................................................................35

F.      '349 Patent Claim 7 ................................................................................35

VIII.   AMGEN PRIOR STATEMENTS AND ACTIONS SUPPORT MY OPINION
        THAT THE CLAIMS-IN-SUIT WOULD HAVE BEEN OBVIOUS OVER '016
        PATENT CLAIM ......................................................................................37

IX.     DOUBLE PATENTING OF THE CLAIMS-IN-SUIT OVER U.S. PATENT NO.
        4,703,008 TO LIN, ISSUED OCTOBER 27, 1987 .........................................38

X.  AMGEN'S ASSERTION THAT LIN IS THE SOLE INVENTOR OF ALL THE CLAIMS IN THE PATENTS-IN-SUIT AND THE '008 PATENT SUPPORTS THE INVALIDITY OF THE CLAIMS-IN-SUIT FOR OBVIOUSNESS-TYPE DOUBLE PATENTING ..................................................................................40

XI.  THE INADEQUACY OF DISCLOSURE IN THE PATENTS-IN-SUIT ........................41

XII.  OTHER TESTIMONY ..................................................................................43

## EXPERT REPORT OF DR. EDWARD EVERETT HARLOW, JR.

I.    **BACKGROUND**

1.    I am Professor and Chair of the Department of Biological Chemistry and Molecular Pharmacology at Harvard Medical School. My responsibilities at Harvard Medical School include: (i) running the administration of a large basic science research and teaching department that currently has 31 faculty members, (ii) teaching graduate and medical students in courses around my own research interests, and (iii) running my own research lab where we study the basic differences between normal and cancer cells. The research group for which I am responsible consists of approximately 40 individuals including graduate students, post-doctoral fellows, clinical fellows, technicians, and senior research scientists. Since 1974, when I graduated from college, the focus of my scientific research has been on various aspects of basic cancer research. I am also an Associate Director of the Dana Farber/Harvard Cancer Center, where I am responsible for planning and evaluation for a large multi-institution research consortium of that unites approximately 900 research laboratories within the Harvard community with interests in cancer.

2.    I earned a B.S. in Microbiology from the University of Oklahoma in 1974. In 1978, I received an M.S., also from the University of Oklahoma. In 1982, I earned a Ph.D. at Imperial Cancer Research Fund Laboratories, London, England, with my degree from Kings College, University of London. Here, I was part of a team of scientists that successfully cloned the mouse tumor suppressor gene now known as p53. We were the second team to successfully clone this gene. During this time, I became aware of and used many of the methods described in the work for the patents discussed in this report. Later, in 1985, while a staff scientist at Cold Spring Harbor, I became the first to clone and express the human p53 gene.

1

## XII.    OTHER TESTIMONY

124.    If called upon, I may further testify as to facts, opinions and other matters relevant to this action. In this regard, I reserve the right to supplement my report as necessary to address any such additional matters.

125.    I declare that the foregoing is true and correct to the best of my knowledge and belief.

Signed under the pains and penalties of perjury this 6th day of April, 2007

Edward Everett Harlow, Jr.

43

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon the attorneys of record for the plaintiff (as listed below) by email and overnight mail on the below date.

Lloyd R. Day, Jr. (*pro hac vice*)
David A. Madrid (*pro hac vice*)
Linda A. Sasaki-Baxley (*pro hac vice*)
DAY CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA 95014
Telephone: (408) 873-0110
Facsimile: (408) 873-0220

D. Dennis Allegretti (BBO#545511)
Michael R. Gottfried (BBO#542156)
Patricia R. Rich (BBO# 640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: (617) 289-9200
Facsimile: (617) 289-9201

William G. Gaede III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 813-5000
Facsimile: (650) 813-5100

Kevin M. Flowers (*pro hac vice*)
Thomas I. Ross (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN
LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

Brooke Borel
April 6, 2007