# EXHIBIT F

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER

REDACTED

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AMGEN INC.,

                        Plaintiff,

            v.

F. HOFFMANN-LA ROCHE LTD, a Swiss
Company, ROCHE DIAGNOSTICS GmbH, a
German Company and HOFFMANN-LA ROCHE
INC., a New Jersey Corporation,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.: 05-12237 WGY

**APRIL 6, 2007 EXPERT REPORT OF MICHAEL SOFOCLEOUS**

I, **MICHAEL SOFOCLEOUS**, submit this report pursuant to Fed. R. Civ. P. 26(a)(2)(B) on behalf of defendants, F. Hoffmann-La Roche Ltd, Roche Diagnostics GmbH and Hoffmann-La Roche Inc. (collectively "Roche") to set forth the opinions I have formed and may offer at trial of this action.

**I.   Background**

*Education and Experience*

1.   I am an expert in the field of patent practice and procedure. In particular, I have thirty-eight years of experience with the practices and procedures of the United States Patent and Trademark Office ("PTO" or "Patent Office") and related litigation. My experience includes examining, counseling and interferences.

2.   I received my Bachelor of Science degree in Chemistry from Renssalaer Polytechnic Institute in 1965, which was followed by my Juris Doctorate degree in 1973 from The National Law Center at George Washington University.

31438230_V27.DOC

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER

> promoter DNA, operatively linked to DNA encoding the mature erythropoietin amino acid sequence of FIG. 6; and
>
> b) isolating said glycosylated erythropoietin polypeptide expressed by said cells.

('698 patent, claims 1-9).

450. By prosecuting these process claims to issuance in the '698 patent, Applicant voluntarily filed a second application when there was no requirement to restrict the process claims from the other Group II claims. As a result, the safe harbor provisions of 35 U.S.C. §121 do not apply, and the '008 patent is available as a double-patenting reference against the '698 patent.

451. I recognize that a terminal disclaimer was filed to obviate obviousness-type double patenting challenges of the '698 patent over the '868 patent ('381 File History, Paper 8, 12/20/96, Terminal Disclaimer; Paper 9, 12/20/96 Second Preliminary Amendment and Terminal Disclaimer at 10; *see also* Paper 7, 12/11/96 Interview Summary); however, the disclaimer does not disclaim that portion of the patent term of the '698 patent which exceeds the '008. Therefore, it does not obviate invalidity for obviousness-type double patenting in light of the '008 patent. By failing to properly disclaim the '698 patent term, Amgen extended its patent protection for nearly 8 years beyond the 2004 expiration of the '008 patent.

### 3. The '349 Patent Is Not Consonant With the '008 Restriction Requirement

452. The '349 patent issued on May 26, 1998 with dependent claim 7 which reads:

> 7. A process for producing erythropoietin comprising the step of culturing, under suitable nutrient conditions, vertebrate cells according to claim 1, 2, 3, 4, 5 or 6.

For example, one of the independent claims it depends from is:

> 1. Vertebrate cells which can be propagated in vitro and which are capable upon growth in culture of producing erythropoietin in the medium of their

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER

> growth in excess of 100 U of erythropoietin per $10^6$ cells in 48 hours as determined by radioimmunoassay, said cells comprising non-human DNA sequences which control transcription of DNA encoding human erythropoietin.

('349 patent, claims 1-7).

453. Claim 7 of the '349 application recites a "process for producing a polypeptide" similar to the restricted Group II claims 69-72 of the '298 application. Each of the restricted Group II claims recite "a process for the production of a polypeptide ... comprising ... host cells" similar to claim 7. While there was no claim in the '298 application to "a process for producing a polypeptide" with the specific claim limitation "capable of producing ... U of erythropoietin per $10^6$ cells 48 hours as determined by radioimmunoassay", claim 7 of the '349 is clearly a process claim as defined by Examiner Giesser's Group II restricted claims.

454. Mr. Borun considered claims very similar to claim 7 as process claims when he added similar claims in the '381 application (which issued as the '698 patent). The '381 application included file claims 68 and 69 directed to "a process for the preparation of human erythropoietin" similar to claim 7 of the '349 patent (discussed above). Filed claim 68 of the '381 application reads:

> 68. A process for the preparation of a human erythropoietin comprising the steps of:
>
> > (a) growing, under suitable nutrient conditions, host cells which can be propagated in vitro outside the cavity of a living organism and which upon growth in culture produce in the medium of growth a human erythropoietin in excess of 100 U of erythropoietin per $10^6$ cells 48 hours as determined by radioimmunoassay; and
> >
> > (b) isolating said human erythropoietin therefrom.

Similarly, filed claim 69 of the '381 application reads:

> 69. A process for the production of a human erythropoietin comprising the steps of:

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER

>   (a) providing culture medium suitable for use in culturing cells in vitro, said culture medium not being fluid of a warm blooded animal,
>
>   (b) growing under suitable nutrient conditions host cells which can be propagated in vitro and which upon growth in culture produce in the medium of their growth human erythropoietin in excess of 100 U of erythropoietin per $10^6$ cells in 48 hours as determined by radioimmunoassay; and
>
>   (c) isolating said human erythropoietin therefrom.

Mr. Borun represented that "new claims 61-69 are supported in the claims of the prior application (USSN 07/113,179 [the '868 patent]) as originally filed. ('381 File History, Paper 4, 6/6/95 Preliminary Amendment). Claims 61-69 were eventually cancelled from the '381 application. ('381 File History, Paper 9, 12/20/96 Second Preliminary Amendment).

455.   In contrast to claim 7, claims 1-6 of the '349 patent are product claims. Claims 1-6 of the '349 patent originated from claim 42 of the '298 patent. ('369 File History, Paper 11, 5/6/97 Interview Summary ("Exr. indicated that proposed claim 42 versions B and C would overcome 112 rejection"). Claim 42 was restricted into Group IV of the July 3, 1986 restriction requirement. ('298 File History, Paper 8, 7/3/86 Office Action). Group IV contained no process claims.

456.   In addition, Applicant made no mention in the continuation '381 application that he was filing the claims which issued as the '349 in response to the restriction requirement in the '298 application, let alone that he was filing each of the claims as a result of that restriction.

457.   By prosecuting process claim 7 of the '349 patent to issuance, Applicant broke consonance with the July 1986 restriction requirement that required all process claims to be prosecuted together in restriction Group II. As a result, the safe harbor provisions of 35 U.S.C.

**CONTAINS CONFIDENTIAL MATERIAL**
**PURSUANT TO PROTECTIVE ORDER**

§121 do not apply, and the '008 patent is available as a double-patenting reference against the '349 patent.

458.    Furthermore, the '349 patent has not been terminally disclaimed over the '008 patent, thereby improperly extending patent protection approximately 10 ½ years beyond the expiration of the '008 patent.

### 4.  The '933 and '080 Patents Are Not Consonant With the '008 Restriction Requirement

459.    In explaining why Group I claims (drawn towards polypeptides) were distinct from Group II (drawn towards DNA, processes and host cells) in the July 1986 restriction requirement, the Patent Office reasoned that because the EPO polypeptides could be made by a process different from the recombinant DNA and host cells, such as from the isolation of natural tissue sources, the inventions were deemed different.  The Patent Office stated as follows:

> Inventions I and II are related as process of making and product made.
>
> 'The inventions are distinct if either (1) the process as claimed can be used to make another and materially different product, or (2) the product as claimed can be made by another and materially different process. MPEP 806.05(f)'
>
> <u>In this case, the product as claimed may be made by a materially different product, such as isolation from a naturally occurring source</u>.

('298 File History, Paper 8, 7/3/86 Office Action (emphasis added)).

460.    However, during the course of prosecuting the '933 and '080 applications, Applicant amended the pending claims such that the EPO polypeptide could *not* be isolated from *natural* sources and could only be expressed by using the recombinant DNA and host cells claimed in the '008 patent (*i.e*. the Group II claims).

461.    Following an Office Action rejection where the pending claims were held obvious over prior art disclosing EPO protein isolated from human sources ('178 File History, Paper 13,

**CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER**

claims were allowed, Applicant filed two additional continuation applications before the '933 and '080 patents finally issued. Finally, none of the interferences included counts relating to the '349 or '422 patent claims and, thus, do not account for any delay.

500. The initial '024 application was filed on 12/13/1983, and the last patent-in-suit issued on 9/21/1999. Fewer than three of these almost-sixteen years were attributable to the delay caused by interference proceedings. In my view, the prosecution strategy reflected in the preceding paragraphs—and not administrative delay on the part of the PTO—was responsible for the protracted prosecution of the claims-in-suit.

501. For all of the reasons stated above and in the preceding section A, even if Amgen had been required to file the Lai '016 application separately from the patents-in-suit, it cannot be said that the PTO was solely responsible for the delay in prosecution of any of the patents-in-suit. Accordingly, Amgen is not entitled to a two-way test for obviousness with respect to any of the claims-in-suit, and the Examiner's finding that the two-way test applied with respect to certain claims introduced in the '179 application was in error.

502. In conclusion, if the claims-in-suit would have been obvious to one of ordinary skill in the art in light of the claims of the Lai '016 patent, then claims-in-suit must be held invalid on the basis of obviousness-type double patenting, without regard to whether the Lai '016 claims would also have been obvious in light of the claims-in-suit.

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER

Dated: April 6, 2007

_____
Michael Sofocleous

**CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS

Page

I. Background ................................................................................................................. 1

II. Materials Considered .................................................................................................. 4

III. Subject Matter About Which I Expect to Testify ...................................................... 5

IV. PTO Practice and Procedure ....................................................................................... 7
    A. The Patent Grant ............................................................................................... 7
    B. The Role of the PTO and Its Examiners .......................................................... 9
    C. Procedures for Prosecuting Applications in the PTO ..................................... 14

V. The Prosecution File Histories and the Patents-in-Suit and Related Patents .................... 18
    A. The '008 Patent ............................................................................................... 21
        1. Ser. No. 06/561,024 ............................................................................ 21
        2. Continuation-in-Part Application Ser. No. 06/582,185 ..................... 24
        3. Continuation-in-Part Application Ser. No. 06/655,841 ..................... 26
        4. Continuation-in-Part Application Ser. No. 06/675,298 ..................... 28
    B. The '868 Patent - Ser. No. 07/113,179 ........................................................... 38
    C. The '698 Patent - Ser. No. 08/468,381 ........................................................... 59
    D. The '349 Patent - Ser. No. 08/468,369 ........................................................... 62
    E. The '422 Patent .............................................................................................. 65
        1. Ser. No. 07/609,741 ............................................................................ 65
        2. Ser. No. 07/957,073 ............................................................................ 68
        3. Ser. No. 08/100,197 ............................................................................ 69
    F. The '933 Patent .............................................................................................. 75
        1. Ser. No. 07/113,178 ............................................................................ 75
        2. Ser. No. 08/202,874 ............................................................................ 90
        3. Ser. No. 07/487,774 ............................................................................ 96

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER

|  |  |  | Page |
|---|---|---|---|
|  | G. | The '080 Patent - Ser. No. 08/468,556 | 100 |
| VI. | Violations of the Duty of Disclosure, Candor and Good Faith | | 103 |
|  | A. | Omissions to Secure Claims to Extend Amgen's Monopoly | 106 |
|  |  | 1. Misrepresentations Regarding *Amgen v. ITC* | 107 |
|  |  | 2. Misrepresentations Regarding the *Fritsch v. Lin* Interferences | 108 |
|  |  | 3. Applicant's Failure to Disclose Arguments Made in Opposition Proceedings in Europe | 110 |
|  |  | 4. Mr. Borun Mislead the Examiner Regarding Obviousness-Type Double Patenting Rejections | 111 |
|  |  | 5. Mr. Borun's Representations Resulted In Allowance of All Pending Claims and Continued Prosecution of Related Applications | 112 |
|  |  | 6. Applicant's Knowledge of the Delayed Process Claims | 112 |
|  | B. | Misconduct to Overcome the Lai Double-Patenting Rejection | 113 |
|  |  | 1. Information Regarding Delay Would Have Been Important to a Reasonable Examiner | 113 |
|  |  | 2. Applicant's Knowledge of the Delayed Process Claims | 115 |
|  | C. | Misrepresentations Regarding the State of the Prior Art | 115 |
|  |  | 1. Information Regarding the State of the Prior Art Would Have Been Important to a Reasonable Examiner | 115 |
|  |  | a. Misrepresentations Regarding tPA | 118 |
|  |  | b. Non-Disclosure of Interferon Art | 123 |
|  |  | 2. Facts Regarding Applicant's Knowledge of the Art | 125 |
|  | D. | Affirmative Misrepresentations and Omissions Regarding Molecular Weight | 127 |
|  |  | 1. Information Regarding Apparent Molecular Weight Would Have Been Important to a Reasonable Examiner | 127 |
|  |  | 2. Applicant's Knowledge of Apparent Molecular Weight | 131 |
|  | E. | Affirmative Misrepresentations and Omissions Regarding COS rEPO | 133 |

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO PROTECTIVE ORDER

|  |  |  | Page |
|---|---|---|---|
|  | 1. | Information Regarding Glycosylation of COS rEPO Would Have Been Important to a Reasonable Examiner | 133 |
|  |  | a. The Prosecution History | 133 |
|  |  | b. References Relevant to COS rEPO | 142 |
|  |  | c. The '334 Interference | 143 |
|  | 2. | Facts Regarding Applicant's Knowledge of COS rEPO | 147 |
| F. | Affirmative Misrepresentations and Omissions Regarding CHO rEPO | | 148 |
|  | 1. | Information Regarding Glycosylation of CHO rEPO Would Have Been Important to a Reasonable Examiner | 148 |
|  | 2. | Facts Regarding Applicant's Knowledge of the CHO rEPO | 152 |
| G. | Concealing the Standard Used in RIA From the '349 Examiner | | 152 |
|  | 1. | Information Regarding the EPO Standard Would Have Been Important to a Reasonable Examiner | 152 |
|  | 2. | Applicant's Knowledge of the EPO Standard | 155 |
| H. | Non-Disclosure of Amgen Work With the 1411 Cell Line | | 156 |
|  | 1. | The 1411 Cell Line Would Have Been Important to a Reasonable Examiner | 156 |
|  | 2. | Applicant's Knowledge of the 1411 Cell Line | 158 |
| I. | Amgen's Prosecution of Claims Rejected by Different Examiners | | 159 |
|  | 1. | Information Regarding the Rejections in Related Applications Would Have Been Important to a Reasonable Examiner | 159 |
|  |  | a. August 3, 1988 Office Action in the '179 Application | 159 |
|  |  | b. Applicant's Reliance on Product-by-Process Claims and Continued Failure to Apprise Examiner Kushan of the Facts During the '178 Prosecution | 162 |
|  |  | c. Applicant's Actions in the '874 Continuation Application Prosecution | 164 |
|  |  | d. Applicant's Continued Omissions in Subsequent Applications | 165 |
|  | 2. | Rejections in the '178 Application | 165 |
|  |  | a. June 2, 1988 Office Action in the '178 Application | 165 |

**CONTAINS CONFIDENTIAL MATERIAL**
**PURSUANT TO PROTECTIVE ORDER**

|   |   |   |   | Page |
|---|---|---|---|------|
|   |   | b. | February 10, 1989 Office Action in the '178 Application | 166 |
|   |   | c. | June 20 and September 18, 1989 Office Actions in the '178 Application | 167 |
|   | 3. | | Applicant's Knowledge of Relevant Rejections | 169 |
| J. | | | Non-Disclosure of the Baron-Goldwasser Clinical Study | 169 |
|   | 1. | | Information Regarding the Baron-Goldwasser Clinical Study Would Have Been Important to a Reasonable Examiner | 169 |
|   | 2. | | Applicant's Knowledge of the Baron-Goldwasser Study | 173 |
| VII. | | | Issues Relating to Obviousness-Type Double Patenting | 176 |
| A. | | | Double Patenting Over the '008 Patent | 178 |
|   | 1. | | Amgen Voluntarily Filed the '868 Patent Claims Separately | 179 |
|   | 2. | | Amgen Voluntarily Filed the '698 Patent Claims Separately | 181 |
|   | 3. | | The '349 Patent Is Not Consonant With the '008 Restriction Requirement | 182 |
|   | 4. | | The '933 and '080 Patents Are Not Consonant With the '008 Restriction Requirement | 185 |
|   | 5. | | The '933 and '080 Patents Include Multiple Restricted Groups and Are Not Consonant With the '008 Restriction Requirement | 187 |
|   | 6. | | The '422 Patent Violates Consonance Because It Includes Multiple Restricted Groups | 188 |
| B. | | | Double Patenting Over the Lai '016 Patent | 190 |

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of this document was served upon the attorneys of record for the plaintiff (as listed below) by email and overnight mail on the below date.

Lloyd R. Day, Jr. (*pro hac vice*)
David A. Madrid (*pro hac vice*)
Linda A. Sasaki-Baxley (*pro hac vice*)
DAY CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA 95014
Telephone: (408) 873-0110
Facsimile: (408) 873-0220

William G. Gaede III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 813-5000
Facsimile: (650) 813-5100

D. Dennis Allegretti (BBO#545511)
Michael R. Gottfried (BBO#542156)
Patricia R. Rich (BBO# 640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: (617) 289-9200
Facsimile: (617) 289-9201

Kevin M. Flowers (*pro hac vice*)
Thomas I. Ross (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

/s/ Brooke Borel
Brooke Borel
April 6, 2007