## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**AMGEN, INC.**

      **Plaintiff,**

**v.**                    CIVIL ACTION No.: 05-CV-12237-WGY

**F. HOFFMANN-LA ROCHE LTD,
ROCHE DIAGNOSTICS GmbH, and
HOFFMANN-LA ROCHE INC.,**

      **Defendants.**

### MEMORANDUM IN SUPPORT OF DAVITA'S SECOND ASSENTED-TO MOTION FOR LEAVE TO FILE UNDER SEAL DOCUMENTS CONTAINING DAVITA'S TRADE SECRETS THAT WERE SUBMITTED BY ROCHE

      Non-Party DaVita Inc. ("DaVita"), pursuant to Federal Rule of Civil Procedure 26(c)(7), Local Rule 7.2, and the protective order in this case, submits this Memorandum and accompanying Declaration in support of its Second Assented-To Motion for Leave to File Under Seal Documents Containing Non-Party DaVita's Trade Secrets That Were Submitted by Roche.[1]

      The confidential information DaVita seeks to have protected from public disclosure discloses specific rebate terms of the current supply agreement between DaVita and Amgen USA ("Amgen") for Epogen™. This information is contained in lines 7-10 of page 17 of deposition testimony (hereafter, the "Kogod Testimony" or "Testimony") submitted by Roche in support of its Opposition to Amgen's Motion to Exclude the Expert Testimony of Dr. Lauren J. Stiroh.

---

[1] DaVita's first motion to seal, filed on July 6, 2007 (Docket # 659), related to documents submitted for *in camera* review by Roche in connection with Roche's opposition to Amgen's motion for summary judgment on Roche's anti-trust and state law counterclaims. In an order dated July 9, 2007, the Court denied the first motion. On July 13, 2007, DaVita filed its motion to reconsider the July 9, 2007 order, or in the alternative, to stay the order pending appeal (Docket # 709). That motion is still pending.

As set forth in the accompanying Declaration of Dennis Kogod, DaVita's Group President for the Western Operating Group (the "Kogod Declaration"), DaVita considers this information extremely confidential and has protected it from public disclosure as a trade secret. The continued secrecy of this information is critical and disclosure in the public record would unfairly cause financial and competitive damage to DaVita, a non-party. Under these circumstances, the Court is empowered by the federal rules and Massachusetts law to limit disclosure of the information. The Court should exercise its power to do so by ordering that the designated testimony be filed under seal.

**I.    Background**

As stated in DaVita's first motion to file under seal (Docket # 659), DaVita is not a party to this action.

DaVita operates more than 1,300 outpatient dialysis clinics in the U.S., and also provides acute inpatient dialysis services in approximately 770 hospitals. As part of its business, DaVita is a customer of Amgen and purchases substantial volumes of Epogen™ from Amgen for use in treating patients. Amgen is the sole manufacturer of Epogen™. DaVita's purchases of Epogen™ total several hundred million dollars annually, and the terms, including price, discount and rebate terms, under which Amgen supplies DaVita with Epogen™ significantly bear on DaVita's operating performance.

The terms under which DaVita purchases Epogen™ are governed by the Epogen™ Freestanding Dialysis Center Agreement that was executed by the two entities on February 6, 2006 (the "Davita Epogen Agreement"). The DaVita Epogen Agreement sets forth the price at which DaVita purchases Epogen™ from Amgen and reflects certain discounts and rebates available to DaVita. The terms of the DaVita Epogen Agreement are subject to a strict

confidentiality agreement between Amgen and DaVita, and these terms are redacted from public filings. (Kogod Declaration at ¶ 10.)

## II. The Information Sought to Be Protected

The Kogod Testimony that has been submitted by Roche in support of its opposition is highly confidential. The testimony references one of the contractual terms required for DaVita to receive a rebate from Amgen, and identifies the percentage amount of the rebate specified in the Davita Epogen Agreement.

## III. The Court Must Weigh the Public's Right to the Information Against the Harm to DaVita.

Although there is a presumptive common law and First Amendment right of public access to material filed in connection with judicial proceedings, the right of access to such judicial records is "not absolute." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

This right must be balanced against the hardship to other parties. Under Rule 26(c)(7) of the Federal Rules of Civil Procedure (the "Rule"), a court may, upon motion of a person from whom discovery is sought and for good cause shown, make any order required to protect the movant from hardship, including ordering that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed. R. Civ. P. 26(c)(7). The protections afforded by Rule 26 are not limited to protective orders governing pre-trial discovery; rather, they have been applied to cases involving exhibits submitted in support of or in opposition to motions for summary judgment. *See In re Gabapentin Patent Lit.*, 312 F. Supp. 2d 653, 664, 666 (D.N.J. 2004); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F. Supp. 866, 901 (E.D. Pa. 1981).

In determining whether to issue a protective order, a court should balance the harm to a movant against the relevance of and necessity of the information. *Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 264 (D. Mass. 1991). Here, the harm to DaVita clearly outweighs the benefits of public access.

### A. The Information Sought to Be Disclosed Is a Trade Secret That Is Entitled to Protection.

A well-settled exception to the public's right of access is the "protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm." *In re Gabapentin Patent Lit.*, 312 F. Supp. at 664. Indeed, Rule 26(c)(7) explicitly names trade secrets as one type of information the disclosure of which can be limited by a protective order.

The information in the Kogod Testimony constitutes a trade secret under Massachusetts law, which defines a "trade secret" as:

> anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula invention or improvement.

Mass. Gen. Laws Ch. 255, § 30(4). A trade secret includes "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 850 (1st Cir. 1985) (citing *E. Marble Prod. Corp. v. Roman Marble, Inc.*, 372 Mass. 835, 364 N.E.2d 799, 801 (1977)). The information at issue here is a "compilation of information" that gives DaVita an advantage over its competitors who do not have access to the information. (*See* Kogod Declaration at ¶¶ 8-9.) If DaVita's competitors become privy to this information, then DaVita would lose this advantage and suffer irreparable harm.

4

At least one federal court has recognized that information concerning the existence, status and substance of business negotiations can constitute a trade secret. *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1147 (N.D. Cal. 2003) (applying California definition of a trade secret that is similar to Massachusetts definition here and denying motion to dismiss counterclaim for misappropriation of trade secrets); *see also, e.g., United Rug Auctioneers, Inc. v. Araslen*, No. CA033-347, 2003 WL 21527545 (Mass Super. Ct. Apr. 11, 2003) (finding pricing information and finances confidential and trade secrets); *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3rd Cir. 1985) (noting that internal information related to pricing and profit margin "is not information that is readily obtainable by anyone in the industry" and thus "qualifies for trade secret protection"); *Corporate Relocation, Inc. v. Martin*, No. 3:06-CV-232-L, 2006 WL 4101944, at *15 (N.D. Tex. Sept. 12, 2006) (enjoining the disclosure of pricing information on trade secret grounds).

### B.    DaVita Has Taken Steps to Preserve the Confidentiality of the Information, and It Remains Confidential.

Moreover, the value of a trade secret is derived from its secrecy. *CVD, Inc.*, 769 F.2d at 850. A party seeking to protect certain information must be able to demonstrate that reasonable steps have been taken to keep the information secret. *Trent Partners & Assocs. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 111 (D. Mass. 1999). Factors to be considered in determining whether given information is a trade secret include: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; and (4) the value of the information to the owner and to his competitors. *SI Handling Sys.*, 753 F.2d at 1256.

5

Here, DaVita keeps confidential the prices and terms of its current Epogen™ supply agreement. (*See* Kogod Testimony at ¶ 8.) DaVita has taken many measures to keep this information out of the public domain and keep the information confidential. (*Id*. at ¶ 10.) Prior to testifying about this information, Mr. Kogod sought and obtained assurances that the testimony would be designated as "Highly Confidential," which limited its disclosure to outside counsel for the parties to this matter. (*Id.* at ¶ 7.) These protective measures demonstrate that DaVita treats the information as one of its trade secrets.

### C. DaVita Would Be Irreparably Harmed by the Disclosure of the Information.

If the information at issue was released into the public domain, DaVita expects it would be used by its competitors to unfairly gain an advantage by informing their negotiation positions with Amgen and instructing the formulation of pricing and other competitive strategies. The Court is fully empowered to keep such information under seal, where "court files might . . . become a vehicle for improper purposes." *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410; *see also In re Gabapentin Patent Litig.,* 312 F. Supp. 2d at 666.

The harm to DaVita in these circumstances is arguably greater than that evidenced in any of the cases cites above. Here, DaVita relies completely on Amgen for its multi-million dollar supply of Epogen™, a product without which it simply cannot operate and provide dialysis services to thousands of patients. DaVita's ability to negotiate rebates and discounts with Amgen is central to its continued economic viability in the highly competitive dialysis services industry. Allowing information regarding the terms of DaVita's current supply agreement to become available to DaVita's competitors will result in irreparable harm to a non-party. This is precisely the type of harm that the Rule was designed to prevent.

      **D.**      **The Court Should Consider DaVita's Reliance on Prior Assurances of Confidentiality.**

In determining whether to maintain the confidentiality of documents produced pursuant to a protective order, a court should consider "the reliance by the original parties on the confidentiality order." *Id.* Here, as discussed above, DaVita produced documents and witnesses for deposition based on assurances that the information disclosed would be kept confidential and disseminated only to outside counsel representing the parties in this matter and that DaVita would have a right to move to seal the information. This Court can and should take into consideration DaVita's significant reliance on confidentiality in making its disclosures. This factor weighs in favor of granting DaVita's motion.

      **E.**      **The Public Will Not Be Harmed, and In Fact Will Benefit, From the Court's Protection of the Information.**

As explained above, the irreparable harm to an innocent non-party such as DaVita must be balanced against the public's interest in the specific information, which here is weak by comparison. The Court may also consider secondary effects of its ruling on future participants in litigation and on the public's interest in protecting trade secrets, which protection encourages innovation. Although the public may have some interest in finding out the discounts obtained by DaVita, DaVita's contract with Amgen is far from the central issue in this case and the disclosure may have important secondary effects. Should the Court deny the Motion, it is very likely that the speech and activities of future deponents and subpoena recipients will be "chilled," out of fear that sensitive information disclosed in pretrial discovery will find its way into the public record.

Thus, there are important public interests that favor *nondisclosure*. As explained by the Court in *Zenith*,

> there can be no doubt that society in general is interested in the protection of trade secrets and other valuable commercial information. That interest is recognized, for example in Rule 26(c)(7)…and in the common law of business torts. These policies recognize a coincidence of private and public interests. [In addition,] orderly management of complex litigation is in the public interest. Enormous cases like this one cannot be fairly and expeditiously adjudicated unless parties are assured that their legitimate interests will be protected. Often those assurances cannot be given unless parties are permitted to rely on guarantees of confidentiality.

*Zenith Radio Corp.,* 529 F. Supp. at 905. By granting DaVita's limited and judicious request for protection of genuine trade secrets, the Court can avoid doing irreparable harm to DaVita with negligible, and possibly even benign, effects on the public interest.

## IV.  Conclusion

For the foregoing reasons, DaVita respectfully requests that its assented-to motion to file under seal lines 7-10 of page 17 of the Kogod Testimony be granted.

Dated: July 18, 2007

**DAVITA INC.**

By:  /s/ Christopher J. Petrini
Christopher J. Petrini (BBO# 556848)
Peter L. Mello (BBO# 659680)
Petrini & Associates, P.C.
The Meadows
161 Worchester Road, Suite 304
Framingham, MA 01701
Telephone: (508) 665-4310
Facsimile: (508) 665-4313

Christian T. Kemnitz
Michelle McGuinness
Katten Muchin Rosenman LLP
525 W. Monroe
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Counsel for Non-Party DaVita Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

/s/ Peter L. Mello
Peter L. Mello