# Ex. A

Dockets.Justia.com

PUBLIC

ORIGINAL

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.
Before the Paul J. Luckern

| | |
|---|---|
| In the Matter of<br><br>CERTAIN PRODUCTS AND<br>PHARMACEUTICAL COMPOSITIONS<br>CONTAINING RECOMBINANT HUMAN<br>ERYTHROPOIETIN | Inv. No. 337-TA-568 |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO
MOTION OF COMPLAINANT AMGEN, INC. TO DECLARE
NO CONFLICT OF INTEREST AND IN SUPPORT OF
<u>CROSS-MOTION TO DISQUALIFY MCDERMOTT WILL & EMERY LLP</u>**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT .................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 4

    A. McDermott's Representation of Roche ............................................................ 4

    B. The December 2004 Letters .............................................................................. 6

    C. Mr. Gaede and McDermott ............................................................................... 7

    D. The Current Investigation ................................................................................. 8

III. ARGUMENT ................................................................................................................. 9

    A. MCDERMOTT MUST BE DISQUALIFIED BECAUSE THIS INVESTIGATION IS SUBSTANTIALLY RELATED TO THE MATTERS ON WHICH IT COUNSELS ROCHE ............................................ 9

        1. The Applicable Ethical Standards Prohibit Future Waivers to Permit a Firm to Sue its Current Client in Substantially Related Matters ............................................................................. 9

        2. McDermott's Representations of Roche and Amgen Are Substantially Related ............................................................... 13

    B. MCDERMOTT CANNOT EFFECTIVELY REPRESENT ROCHE AFTER SUING IT ON BEHALF OF AMGEN .......................................... 15

    C. MCDERMOTT MUST BE DISQUALIFIED BECAUSE IT FAILED TO FULLY INFORM ROCHE OF POSSIBLE FUTURE CONFLICTS IT KNEW ABOUT BEFORE OBTAINING ROCHE'S CONSENT ............................................................................................ 16

        1. A Law Firm Must Fully Disclose All Material Information Concerning Possible Conflicts Before Obtaining Waiver from a Client ............................................................................ 16

        2. McDermott Failed to Make Full Disclosure to Roche ............................ 18

    D. THERE WILL BE NO SIGNIFICANT PREJUDICE TO AMGEN FROM MCDERMOTT'S WITHDRAWAL ..................................................... 19

IV. CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Amgen, Inc. v. Hoechst-Marion Roussel, Inc.*, 339 F. Supp. 2d 202 (D. Mass. 2003) ............ 12, 19

*City of El Paso v. Soule*, 6 F. Supp. 2d 616 (W.D. Tex. 1998) ...................................................... 17

*Fisons Corp. v. Atochem North America, Inc.*,
  No. 90 Civ. 1080 (JMC), 1990 WL 180551 (S.D.N.Y. Nov. 14, 1990) ................................ 12

*General Cigar Holdings, Inc. v. Altadis, S.A.*,
  144 F. Supp. 2d 1334 (S.D. Fla. 2001) .................................................................................. 12

*In re Certain Salinomycin Biomass and Preparations Containing Same*,
  Inv. No. 337-TA-370, Order No. 13, 1995 WL 945673 (May 25, 1995) ............................. 10

*Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271 (3d Cir. 1978) ...................................................... 19

*New York and Presbyterian Hospital v. New York State Catholic Health Plan*,
  Index No. 603640/04 (N.Y. Sup. Ct. N.Y. Cty. 2006) .......................................................... 12

*Visa U.S.A. v. First Data Corp.*, 241 F. Supp. 2d 1100 (N.D. Cal. 2003) ...................................... 11

## MISCELLANEOUS

ABA Formal Op. 05-436 (May 11, 2005) ...................................................................................... 10

ABA Model Rule 1.7 .......................................................................................................... 7, 10, 15

ABA Model Rule 1.7, Comment 22 ................................................................................. 10, 11, 17

ABA Model Rule 1.9, Comment 3 ................................................................................................. 13

Ass'n of the Bar of the City of New York, Formal Op. 2006-1 (Feb. 17, 2006) ........................... 11

D.C. Formal and Informal Opinions, Opinion No. 309 (Sept. 20, 2001) ......................... 11, 17, 19

Hazard & Hodes, *The Law of Lawyering* (2004) ................................................................... 16, 17

New York Code Of Professional Responsibility, DR 5-105(c) ..................................................... 15

Restatement 3d of the Law Governing Lawyers, § 122, Comment d ................................ 1, 7, 10

"Star Laterals of the Year," American Lawyer, February 2006 ..................................................... 18

I.  **PRELIMINARY STATEMENT**

This Memorandum is submitted in opposition to the motion (the "Motion") of complainant Amgen Inc. ("Amgen") seeking a declaration that there is no conflict arising from McDermott Will & Emery's concurrent representation of both parties to this investigation and in support of respondents' cross-motion (the "Cross-Motion") to disqualify McDermott Will & Emery ("McDermott") from representing Amgen against its clients.

In his declaration in support of the Motion, Amgen's retained ethics expert concedes that McDermott's appearance here "would ordinarily constitute directly adverse concurrent representation" in violation of applicable ethical rules. (Morgan Decl. ¶ 7(a).) The only way Amgen and McDermott seek to avoid this direct conflict is by contending that respondent Hoffmann-La Roche, Inc. ("Roche"), and certain of its affiliated respondents, prospectively waived this conflict by countersigning letters drafted by McDermott in December 2004, before McDermott began to represent Amgen against Roche in patent litigation over its CERA product. Such prospective waivers, even when agreed to by sophisticated companies, require "special scrutiny, particularly if the consent is general," as it is here. *Restatement 3d of the Law Governing Lawyers*, § 122, comment d. Applying such scrutiny to this waiver, it clearly does *not* effectively waive the egregious conflict that McDermott has chosen to undertake.

Widely-accepted ethical rules provide that a client's waiver of future conflicts is rarely, if ever, effective to permit a law firm to represent a party in litigation against a current client, and certainly not as to matters that are substantially related. The aversion to such waivers is premised on concerns about the lawyer's duty of loyalty to the client, the almost inevitable impairment of the lawyer's ability to continue to effectively represent the client in such circumstances and the difficulty, if not impossibility, of obtaining the client's informed consent to such a future conflict.

1

Here, all of these obstacles to an effective waiver exist: McDermott is seeking to enforce a prospective waiver to permit it to be adverse to its current client, Roche, in litigation substantially related to McDermott's work for Roche; McDermott cannot effectively represent Roche if it is permitted to continue to represent Amgen; and adequate disclosure, which is the cornerstone of informed consent, was not made by McDermott.

As the Administrative Law Judge is aware, this investigation concerns Amgen's claims concerning Roche's allegedly pending importation of a pharmaceutical product, CERA, into the United States. Amgen contends that "all the facts and circumstances" of any transfer of CERA from Roche's European entities to its American affiliates are central to this case. *See* Amgen Inc.'s Notice of Deposition to Respondents (D'Angelo Decl. Ex. B).[1] However, for over fifteen years, Roche has been advised by McDermott lawyers on various tax and other matters, *including* the transfer of products and prospective products between Roche's European and U.S. entities. As part of this representation, Roche employees discuss with McDermott's lawyers details of Roche's international corporate structure and the manner in which it imports product from foreign entities into the United States, including the costs of products, the ownership of intellectual property, and the location of research and development efforts. Amgen has requested discovery on this very point, implicating the very advice McDermott has given to Roche.[2] The substantial relationship

---

[1] Citations to "D'Angelo Decl. ___" are to the Declaration of Frank D'Angelo, dated June 14, 2006, and attached exhibits incorporated as Exhibit 2 to the Cohn Decl.; citations to "Nagle Decl. ___" are to Exhibit 1, the Declaration of Karen Nagle, dated June 13, 2006; citations to "Ben-Ami Decl. ___" are to Exhibit 2, the Declaration of Leora Ben-Ami, dated June 16, 2006, and attached exhibits; citations to "Cohn Decl. ___" are to Exhibit 3, the Declaration of Sherman L. Cohn, dated June 16, 2006, and attached exhibits.

[2] Roche contends that these issues are not relevant to the current ITC investigation and has lodged various objections. Roche has objected to this discovery to the extent that it seeks information regarding products that are not bound for and do not enter the United States. In addition, Roche reserves all possible rights and objections regarding the discoverability of any documents and testimony in response to Amgen's discovery requests.