experienced user of legal services, particularly if, for example, . . . the consent is limited to matters not substantially related to the subject of the prior representation") (Ben-Ami Decl. Ex. G).

Opinions from ethics bodies in key national jurisdictions, including the District of Columbia, provide more definitive standards on the scope of permissible prospective waivers. Taken together with Comment 22, these ethics opinions reflect a "generally recognized" standard against enforcing prospective waivers of conflicts in substantially related matters. (*See* Cohn Decl. ¶ 7(i).) For example, in District of Columbia Bar Opinion No. 309, the D.C. ethics committee held that advance waivers of conflicts of interest are allowed under the D.C. Rules of Professional Conduct if given with informed consent, but "will not be valid where the two matters are substantially related to each other." D.C. Formal and Informal Opinions, Opinion No. 309, at 1 (Sept. 20, 2001) (Ben-Ami Decl. Ex. H.)[5] Similarly, the ethics committee of the Association of the Bar of the City of New York, in a February 17, 2006, formal opinion, limited advance waivers "that permit the law firm to act adversely to the client on matters substantially related to the law firm's representation of the client," to sophisticated clients and, even then, only to "transactional matters that are not starkly disputed." Ass'n of the Bar of the City of New York, Formal Op. 2006-1, at 1 (Feb. 17, 2006) (Ben-Ami Decl. Ex. I.) Obviously this is *not* a transactional matter and it *is* "starkly disputed." (*Id.*) Significantly, to our knowledge, no jurisdiction expressly allows advance waivers of conflicts in substantially related litigation matters. Therefore, a client cannot effectively waive prospective conflicts in substantially related matters, particularly involving litigation by counsel against its client, and an advance waiver that purports to waive such conflicts – as does the one McDermott obtained from Roche – is invalid. (Cohn Decl. ¶ 7(p).)

---

[5] The opinion of the D.C. Bar Association is entitled to particular weight here given the presence of the Commission in the District of Columbia, where the lawyers in this case are representing their clients, and the fact that the substantially related tax and corporate structuring work performed by McDermott is centered in the District.

11

Amgen relies heavily on a California case, *Visa U.S.A. v. First Data Corp.*, 241 F. Supp. 2d 1100 (N.D. Cal. 2003), to justify its position here. That case, however, is totally consistent with the rule that a client cannot prospectively waive conflicts in substantially related matters. The conflicted law firm in that case, Heller, Erhman, White & McAuliffe LLP, had obtained an advance waiver from First Data Corporation permitting Heller to represent its longstanding antitrust client Visa against First Data. *Id.* at 1102-03. However, unlike McDermott's waiver here, the waiver there specifically stated that Heller Erhman would only undertake adverse representation of Visa against First Data, "under circumstances in which we do not possess confidential information of yours relating to the transaction." *Id.* at 1103.[6] None of the other cases Amgen cites (Amgen Br. at 14) stand for the proposition that a prospective waiver is effective as to related matters; indeed, they reaffirm the principle that related matters cannot be waived. *General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1340 (S.D. Fla. 2001) (noting that subject law firm "has bound itself not to undertake adverse representation that is substantially related"); *Fisons Corp. v. Atochem North America, Inc.*, No. 90 Civ. 1080 (JMC), 1990 WL 180551, at *7 (S.D.N.Y. Nov. 14, 1990) (finding that "type of information" subject law firm had from client "would not be relevant to the instant litigation").

Like Heller Erhman, the McDermott firm itself knows that substantially related matters should be excluded from the ambit of prospective waivers. In *New York and Presbyterian Hospital v. New York State Catholic Health Plan*, Index No. 603640/04 (N.Y. Sup. Ct. N.Y. Cty.

---

[6] Moreover, because Heller Erhman disclosed that it was Visa's long-standing counsel on antitrust matters, it came as no surprise to First Data that Heller would appear for Visa in an antitrust case against First Data. *Id.* at 1102. Here, in contrast, McDermott did not disclose to Roche that it planned to take in a partner who had been preparing patent litigation for Amgen against Roche. Moreover, McDermott was not counsel for Amgen in the prior cases involving the patents in suit, *see Amgen Inc. v. Hoescht-Marion Rousell, Inc.*, 339 F. Supp. 2d 202 (D. Mass. 2003), in which other counsel represented Amgen, including Day Casebeer, the lead counsel for Amgen in this investigation.

2006), the McDermott firm was recently disqualified by a New York State court judge who rejected McDermott's argument that it could represent one client against another in litigation based on a prospective waiver, the same argument McDermott makes here. *See generally* Transcript of Proceedings (May 25, 2006) (Ben-Ami Decl. Ex. J). Notably, in that case, unlike the prospective waiver here, McDermott specifically *excluded* from its prospective waiver matters that were "substantially related" to its representation of the client. *Id.* at 6. Where, as here, the prospective waiver purports to *include* not only litigation against a client but even litigation of matters substantially related to the representation of the client, McDermott has clearly overreached and should be disqualified.

### 2. McDermott's Representations of Roche and Amgen Are Substantially Related

The Model Rules define as "substantially related" matters that "involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *See* ABA Model Rule 1.9, Comment 3. Here, McDermott's representation of Roche is unquestionably related to this investigation.

In representing Roche, McDermott "would normally have obtained," and in fact has obtained, confidential information relating to the manner in which Roche transfers pharmaceutical products among its entities, and specifically the facts and circumstances regarding the import of products from Europe to the United States. (*Id.*; *see also*, D'Angelo Decl. ¶¶ 3-4.) In this action, Amgen has demanded that Roche produce a witness to testify about "all facts and circumstances facts regarding the transfer or sale of PEG-EPO or any component of PEG-EPO between any of the ROCHE entities." (*See* Amgen Inc.'s Notice of Deposition to Respondents, Topic 4 (D'Angelo Decl. Ex. B).) Amgen has also demanded documents on this topic, which would include within its