ambit documents created by McDermott lawyers on the booking of those transfers. (*See* Amgen Inc.'s First Set of Requests for Production of Documents and Things to Respondents (D'Angelo Decl. Ex. A).)

The conflict raises particularly acute concerns given McDermott's ongoing representation of Roche on these corporate structuring matters. A Roche witness who may be obliged to testify about documents drafted by McDermott dealing with intra-company transfers, or as to the facts and circumstances surrounding the transfer of CERA or any of its components in response to Amgen demands, would likely consult with the McDermott lawyers who drafted or reviewed the documents and have been providing advice on these issues. (D'Angelo Decl. ¶ 12.) That obviously will be impossible if McDermott represents Amgen in this investigation. Such discussions would also be impossible if McDermott were permitted to continue to represent Amgen here. Thus, in addition to its unethical nature, the harm that McDermott's conflicting representations are causing to Roche is serious, as well as real, and warrants disqualification. (Cohn Decl. ¶ 7(o).)

Amgen argues that confidential information that Roche has given to McDermott lawyers will be protected because of McDermott's purported ethical wall, fortified by the geographical separation of the McDermott attorneys working on the patent litigation in California from the McDermott attorneys representing Roche in Washington D.C. This purported geographical separation appears questionable given that correspondence in this patent litigation matter has included Raphael Lupo, a Washington D.C.-based patent litigator at McDermott, who works in the same offices as Mr. Riedy and who advises Roche. (Ben-Ami Decl. Ex. C; *see also* Cohn Decl. ¶ 7(i).) In any event, Roche should not have to rely on its adversary's counsel to make sure that its critical confidential information is protected in this hotly contested investigation.

14

### B. MCDERMOTT CANNOT EFFECTIVELY REPRESENT ROCHE AFTER SUING IT ON BEHALF OF AMGEN

Rule 1.7 of the Model Rules requires that counsel withdraw from a conflicting representation, and may not rely on a waiver even if otherwise valid, unless "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client." ABA Model Rule 1.7(b)(1). The purpose for this rule is clear: an attorney has an overriding, unwaivable ethical duty to its clients to provide effective representation. (Cohn Decl. ¶ 7(a).) Similarly, under the New York rules, a lawyer may simultaneously represent multiple clients only "if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved." New York Code of Professional Responsibility, DR 5-105(c).

McDermott should be disqualified in this matter because it cannot effectively represent Roche if it continues to represent Amgen in this investigation; indeed, McDermott all but concedes this in its motion papers. James Riedy, the McDermott lawyer who primarily advises Roche, fails to state in his three-page declaration that he believes that he can competently and diligently represent Roche while his partners sue Roche in this litigation that potentially has significant impact for both companies. Nor does William Schuman, McDermott's in-house ethics expert, state in his declaration that McDermott will be able to maintain its diligence in its representation of Roche in light of this conflict. A belief that McDermott can diligently represent Roche and Amgen given this conflict, as the omissions in those declarations attest, cannot be reasonable.

The advice McDermott provides Roche is ongoing; Roche in-house lawyers consult with McDermott attorneys regularly, particularly regarding tax-related issues and transactional issues Amgen has called into question in this investigation. (D'Angelo Decl. ¶ 3.) As demonstrated

above, in the normal course of McDermott's representation of Roche, Roche employees called upon to respond to discovery requests such as those served here by Amgen, or to provide deposition testimony on the subjects enumerated by Amgen, would look to McDermott to counsel them on these very matters. It is impossible to understand how McDermott lawyers such as Mr. Riedy, who just submitted a declaration for Amgen against Roche and whose firm represents Amgen, could diligently advise Roche employees as to their responses to the Amgen discovery on intra-company pharmaceutical transfer issues. In fact, such a belief would be patently unreasonable and mandates McDermott's disqualification. (Cohn Decl. ¶ 7(j); (n)-(o).) *See also* Hazard & Hodes, *The Law of Lawyering*, § 10.2 at 10-7 (2004) ("A client should not have to put up with the prospect of being cross-examined by its own lawyer at the same time that it is paying the lawyer for the privilege of meeting and strategizing with respect to its own matter").

Accordingly, McDermott cannot continue to represent Amgen in this matter without breaching its duty of loyalty to Roche. The waiver letter sent to Roche by McDermott is ineffective because McDermott obviously cannot meet the Model Rules' standard of continued competent and diligent representation of both parties without which no waiver of concurrent conflicts can possibly stand.

      C. **MCDERMOTT MUST BE DISQUALIFIED BECAUSE IT FAILED TO FULLY INFORM ROCHE OF POSSIBLE FUTURE CONFLICTS IT KNEW ABOUT BEFORE OBTAINING ROCHE'S CONSENT**

           1. **A Law Firm Must Fully Disclose All Material Information Concerning Possible Conflicts Before Obtaining Waiver from a Client**

Ethical standards governing conflict waivers universally require that the law firm seeking the waiver must fully disclose all material information that it has concerning the possible conflicts. This is equally true of waivers of present as well as future conflicts. Thus, the Model Rule