contemplates a "comprehensive explanation" by the lawyer of the "types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations." Model Rule 1.7, Comment 22. Similarly, D.C. Bar Opinion 309 provides that, for a prospective waiver to be valid:

> the lawyer must make full disclosure of facts of which she is aware, and hence cannot seek a general waiver where she knows of a specific impending adversity *unless that specific instance is also disclosed.*

D.C. Formal and Informal Opinions, Opinion No. 309, at 6 (Ben-Ami Decl. Ex. H) (emphasis added); *see also City of El Paso v. Soule*, 6 F. Supp. 2d 616, 625 (W.D. Tex. 1998) ("waiver letter invalid" when signed by individual defendant who was not apprised by law firm that it intended to name him in suit against disclosed corporate defendant). As the D.C. opinion further notes, full disclosure of all circumstances includes the "lawyer's intended role in behalf of the new client." D.C. Formal and Informal Opinions, Opinion No. 309, at 3 (Ben-Ami Decl. Ex. H).

Notably, if the lawyer's duty of confidentiality to its other client or any other party precludes her from disclosing the possible conflict, "the lawyer cannot seek a waiver and hence may not accept the second representation." *Id.* at 6. *See The Law of Lawyering*, § 10.8 at 10-23 ("In some situations . . . the duty of confidentiality owed to one or more clients may prevent full disclosure to another client or potential client, which means that truly 'informed' consent cannot be obtained"). Simply put, the law firm seeking the waiver must tell its client everything it knows that would be material to the client's decision whether to waive; if it cannot disclose because it is bound to others to maintain confidences, the firm may not seek, and cannot reply on, the waiver. (Cohn Decl. ¶ 7(m).)

17

### 2. McDermott Failed to Make Full Disclosure to Roche

As set forth above, there can be little doubt that, by late December 2004, McDermott was discussing a position with Mr. Gaede who, since the spring of 2004, had been helping Amgen prepare for its upcoming challenges to Roche's CERA product that have resulted in this proceeding. Mr. Gaede left his former firm just weeks after Roche signed the waiver forms McDermott sent it. Mr. Gaede's move from Cooley, Godward to McDermott was not a minor move likely to have taken place overnight; the American Lawyer featured Mr. Gaede's move as one of the top ten lateral transfers of law firm partners for 2005. *See* "Star Laterals of the Year," American Lawyer, February 2006, at 85 (Ben-Ami Decl. Ex. K).

Furthermore, in all likelihood, McDermott's discussions with Mr. Gaede were the impetus for McDermott to seek the waiver from Roche when it did. Thus, Amgen has refused to disclose when McDermott began discussions with Mr. Gaede about a position at McDermott, and when McDermott first learned that Mr. Gaede was working on litigation for Amgen adverse to Roche, as requested in Ms. Ben-Ami's June 6, 2006 letter. (Ben-Ami Decl. Ex. E.) Despite disclosing other information about Mr. Gaede's departure from Cooley Godward and McDermott's formal engagement of Amgen, the declarations Amgen submitted are silent as to those two critical points. McDermott did not begin to represent Amgen in December 2004. Its seeking a waiver at that time, and taking the unusual step of including substantially related litigation in its waiver (Ben-Ami Decl. Ex. B), clearly indicate that it knew then that Mr. Gaede might join McDermott and bring this large potential matter against Roche with him – if McDermott could get a broad, open-ended waiver. This is not a situation where McDermott was taking on a new client and seeking a prospective waiver in the normal course of business. Clearly, McDermott had a reason for seeking

a waiver when it did from at least some of the Roche entities it represented, and it apparently did not disclose that reason to Roche.

Thus, neither Mr. Riedy, nor anyone else at McDermott, disclosed to their client Roche that McDermott was seeking a waiver to represent Amgen against Roche's CERA product, or that it was talking to Mr. Gaede about doing so. Any constraints on its ability to disclose the true facts could not excuse a lack of disclosure. As demonstrated above, the proper course where full disclosure is precluded by confidentiality constraints is not to seek the waiver. D.C. Opinion No. 309, at 6 (Ben-Ami Decl. Ex. H); Cohn Decl. ¶ 7(m).

Roche's general awareness that it could be enmeshed in litigation with Amgen on CERA is of no moment in assessing the adequacy of disclosure by McDermott. The ethical rules place the onus on the law firm to disclose what it knows in order for there to be adequate disclosure to the client. *See* D.C. Opinion No. 309, at 6 ("the lawyer must make full disclosure of facts of which she is aware"); *Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271, 280, 282 (3d Cir. 1978). Whether or not Roche anticipated a suit by someone on its CERA product on behalf of Amgen, it did not have an inkling in December 2004 that McDermott, which had not been doing Amgen's patent litigation work, was seeking a waiver so it could take on a patent lawyer already dedicated to litigation against CERA.[7]

### D. THERE WILL BE NO SIGNIFICANT PREJUDICE TO AMGEN FROM MCDERMOTT'S WITHDRAWAL

Armed with capable counsel in this relatively new matter, Amgen will face little prejudice if Mr. Gaede and his McDermott colleagues withdraw. Moreover, there is likely no shortage of very qualified patent litigators without conflicts to help Amgen, should it require more help than

---

[7] In *Amgen, Inc. v. Hoechst-Marion Roussel, Inc.*, 339 F. Supp. 2d 202 (D. Mass. 2003), which involved some of the same patents at issue in this ITC Investigation, counsel of record for Amgen were the Day Casebeer firm, the Marshall firm, Duane Morris LLP, but *not* the McDermott firm.