Amgen Inc. v. F. Hoffmann-LaRoche LTD et al
Case 1:05-cv-12237-WGY   Document 771-10   Filed 07/24/2007   Page 1 of 11
Doc. 771 Att. 9

(Gaede Decl., Ex. L.) Mr. Gaede further explained that the waiver permits McDermott's representation of Amgen in this investigation:

> The waiver letter itself is quite specific. It identifies Amgen as the entity, describes that McDermott may be adverse on matters that are or might be adverse to Hoffman-LaRoche, including litigation, and provides for protections of Roche by instituting an ethical wall to ensure that Roche information would not be shared with attorneys working adversely on matters to Roche, and, where practicable, staff the matters from different offices. These facts establish that McDermott made a full and reasonable disclosure and that Roche knowingly waived any conflicts concerning McDermott's ongoing representation of Amgen.

(*Id.*)

On June 2, 2006, rather than respond to, dispute, or establish why McDermott's analysis of the facts was incorrect, Roche responded with two letters urging that McDermott engage independent counsel to investigate Roche's allegations. (Gaede Decl., Exs. M and N.)

William Schuman, Head of McDermott's Professional Responsibility Committee, endeavored to reach Ms. Ben-Ami to address Roche's concerns. (Schuman Decl., ¶ 5.) On June 3, 2006, Mr. Schuman and Ms. Ben-Ami discussed the alleged conflict. (Schuman Decl., ¶6.) In response, Mr. Schuman conducted a further investigation, including discussing the matter with Mr. Gaede and Mr. Riedy, and carefully reviewing the waiver letter in light of the engagements McDermott had for each of the clients. (Schuman Decl., ¶¶ 5-8.) On Tuesday, June 6, 2006, Mr. Schuman informed Ms. Ben-Ami that he had concluded that McDermott should continue to represent Amgen in this matter. (Gaede Decl., Ex. Q.)

- 10 -

Mr. Schuman also engaged Mr. Thomas Morgan, a renown ethics professor at George Washington University, to independently review the matter. (Morgan Decl., ¶¶ 1-3.) Mr. Morgan has particular expertise on Model Rule 1.7, having served as one of three professors on the committee that revised the Model Rules in 2002. (Morgan Decl., ¶ 2, Ex. 1.) Mr. Morgan likewise concluded that a violation of Model Rule 1.7 has not occurred here. (Morgan Decl., ¶ 7.)

Subsequent letters have been exchanged, and as of the filing of this motion, Roche has not removed its objection. (Gaede Decl., Exs. Q-S.) Just yesterday, Roche asseted that the discovery requested here allegedly created a "direct conflict." (Gaede Decl., Ex. R.) The letter failed to articulate how this was so and constituted representation of the same entities. (*Id.*) Today, Roche raised the issue of other respondents, asking for other waiver letters that McDermott is providing. (Gaede Decl., Ex. S.) McDermott is responding to these letters. (Gaede Decl., ¶ 25, Ex. T.)

### G. ROCHE'S REFUSAL TO ENGAGE WITH MCDERMOTT ON THE SUBSTANCE OF THE CASE IS OBSTRUCTING AMGEN'S RESPONSE TO ROCHE'S SUMMARY MOTION UNDER SECTION 271(e)(1) AND ITS OVERALL PROSECUTION OF THIS ACTION

Despite not having filed a motion to disqualify, Roche's counsel has taken the position (1) that it need not engage with the McDermott firm in meet and confers, correspondence, or other matters, and (2) that despite the McDermott attorneys' agreement to be bound by the Protective Order, McDermott lawyers may not review any Roche confidential information. (Gaede Decl., ¶ 17.) Roche has also charged that it may seek to disqualify other law firms representing Amgen in this matter. (Gaede Decl., Ex.

R.) Although entitled to do so, McDermott out of an abundance of caution has not examined any Roche confidential information produced in this action. (Gaede Decl, ¶ 17.) Roche's action has disrupted Amgen's representation just at the moment when it critically needs all its involved counsel to handle the numerous depositions, interrogatories, and document responses all related to Roche's Summary Motion, necessitating this motion. (Gaede Decl., ¶ 17.)

### III. ARGUMENT

#### A. ROCHE BEARS A HEAVY BURDEN TO DISQUALIFY MCDERMOTT

The Commission does not favor the drastic remedy to disqualify a law firm and does so only when "absolutely necessary." *Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips*, Inv. No. 337-TA-543, Order No. 29 (Mar. 9, 2006), 2006 ITC LEXIS 118, *28-29; *see also Certain Integrated Circuit Telecommunication Chips*, Inv. No. 337-TA-337, Order No. 40 (July 17, 1992), 1992 ITC LEXIS 490 at *6. Caution is exercised in determining whether a party's chosen counsel should be disqualified because disqualification encourages vexatious tactics. *Baseband Processor*, 2006 ITC LEXIS 118, *30; *see also Integrated Circuit*, 1992 ITC LEXIS 490, *6. A party's choice of counsel will rarely be disturbed unless the prejudice to an adverse party outweighs the prejudiced caused by disqualification of a party's counsel. *Id.* The proponent of disqualification thus bears a "heavy burden" in proving that disqualification is warranted. *Id.* In the ITC, the ABA Model Rules of Professional Conduct govern in deciding whether an ethical violation has occurred. *Baseband Processor*, 2006 ITC LEXIS 118 at *28.

B. **THE WAIVER LETTER SATISFIES MODEL RULE 1.7**

ABA Model Rule of Professional Conduct 1.7(b) governs concurrent conflicts of interest and permits their waiver:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
>   (2) the representation is not prohibited by law;
>
>   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
>   (4) each affected client gives informed consent, confirmed in writing.

McDermott's concurrent representation of Amgen in this Investigation and Roche for other work meets each element of Subsection b. First, McDermott is providing and reasonably believes that it will continue to provide competent and diligent representation to each client. At no point has Roche contended that McDermott attorneys are not or are unable to provide competent and diligent advice. (Gaede Decl., Exs. K, M, N, P and R.)

Second, McDermott's representation of Amgen is not prohibited by law.

Third, McDermott's representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal. (Morgan Decl., ¶ 7(e)-(f).) Despite Roche's inaccurate rhetoric concerning the "same matter," it has never contended, nor could it, that

McDermott has represented Roche in this Investigation. (Gaede Decl., Exs. K, M, N, P and R.)

Fourth, as to informed consent confirmed in writing, both the ABA's 2005 Opinion on Section 1.7 and Section 122 of the Restatement (Third) Governing Lawyers recognize that prospective waivers are enforceable where the client is sophisticated and had the advice of counsel. For example, Comment d of the Restatement (Third) Governing Lawyers Section 122 explains that a client's open-ended agreement to consent to all conflicts is effective where *"the client possesses sophistication in the matter in question and has had the opportunity to receive independent legal advice about the consent."* (Emphasis added.)

The December 2004 waiver letter provided the requisite information to Roche to make an informed consent. The waiver letter specifically (1) identified the structural conflict in the pharmaceutical industry with Amgen, (2) identified McDermott's representation of Amgen, (3) identified McDermott's desire to represent Amgen on matters adverse to Roche, "including litigation," and (4) stated that McDermott was prepared to withdraw its representation of Roche in an orderly manner if the terms were not acceptable. (Gaede Decl., Ex. A.) Such specificity is recognized as sufficient where a client is a sophisticated user of legal services. *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1105 (N.D. Cal. 2003) (approving of similarly stated waiver language agreed to by sophisticated entity).

Roche's consent was knowing. Litigation for Amgen adverse to Roche was expressly discussed and waived in the letter. Roche cannot deny that it was preparing for

MPK 109820-3.041925.0023

litigation here when considering the waiver letter in light of its public statements a year earlier that it anticipated that Amgen would sue it for patent infringement on CERA. (Gaede Decl., Ex. B); *see Visa*, 241 F. Supp. 2d at 1106 (court finding knowing consent in analogous circumstances where possibility of litigation between disclosed parties understood). The Amgen waiver received the highest attention within Roche, including the General Counsel personally reviewing and executing the letter. This independent legal advice from the General Counsel himself further establishes Roche's knowing consent.[1]

Roche has never disputed that it is a sophisticated user of legal services. *See* Restatement (Third) of the Law Governing Lawyers § 122 cmt. d; ABA Model Rule 1.7 cmt 22 (2002) (prospective consent may be acceptable "if client is an experienced user of legal services involved and is reasonably informed regarding the risk that a conflict may arise"). With a large legal department, involvement in numerous suits, and spending millions of dollars on legal fees on large, corporate law firms, Roche is the epitome of the sophisticated client that the law recognizes should be held to such prospective waivers. *See* 2005 ABA Opinion on Model Rule 1.7 and the comment to Restatement (Third) of the Law Governing Lawyers § 122; *see also, Visa*, 241 F. Supp. 2d at 1105 (enforcing prospective waiver against a large company sophisticated in legal affairs).

---

[1] As McDermott was not engaged until March 2005 to perform services, it could not have disclosed to Roche in December 2004 that it would represent Amgen in this patent infringement matter.

The work for Amgen on the ITC Investigation and the work for Roche on tax and other matters has been segregated in different offices. The legal work for Amgen in this Investigation has been performed out of McDermott's Silicon Valley Office's Intellectual Property Department, and the tax work in question has been performed out of other offices, primarily out of McDermott's Washington, D.C. Tax Department. (Gaede Decl., ¶ 6; Riedy Decl., ¶ 4.) McDermott erected an ethical wall, and the McDermott lawyers in the Silicon Valley Office have not had any communications with the McDermott lawyers working on Roche matters on any issue relating to the representation in this particular case for Amgen on the subject of the differing representations. (Gaede Decl., ¶ 6; Riedy Decl, ¶ 7.) Such efforts are sufficient to ensure that a duty of confidentiality is preserved. *See Visa*, 241 F. Supp. 2d at 1110.

Finally, Roche has known of McDermott's representation of Amgen in this matter since November 8, 2005, when McDermott appeared as counsel of record in the Boston Action. Roche further brought motions to dismiss in that proceeding under Rule 12(b)(1) and 12(b)(6), but never moved for or voiced any objection to McDermott's representation. (Gaede Decl, ¶ 11.) Roche's conduct shows that it recognized the enforceability of the December 2004 waiver letter in connection with this patent dispute.

Given the foregoing, Roche cannot meet its heavy burden to disqualify McDermott under Model Rule 1.7.

### C. DISTRICT COURTS ENFORCE PROSPECTIVE WAIVERS

Courts have routinely enforced advance waivers of potential conflicts, even if the waivers do not indicate the exact nature of the potential conflicts. *See, e.g., Visa,*

241 F. Supp. 2d at 1105; *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 582-83 (D. Del. 2001); *General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1339 (S.D. Fla. 2001); *Fisons Corp. v. Atochem North America, Inc.*, No. 90 Civ. 1080 (JMC), 1990 WL 180551, *5 (S.D.N.Y. Nov. 14, 1990); *Maxwell v. Superior Court*, 30 Cal. 3d 606, 622 (1982).

In *Visa*, the court concluded that an advance waiver closely analogous to the one at issue here was valid and informed. *Visa*, 241 F. Supp. 2d at 1106-7. In reaching this conclusion, the court found that: (1) the waiver signed by plaintiff First Data specifically disclosed the law firm's concurrent representation of defendant Visa, with a clear warning that the two concurrent representations might in the future give rise to conflicts, including in litigation matters; (2) First Data was independently aware of the potential dispute with Visa, and the law firm did not have a duty to inform First Data of such a dispute if doing so would reveal privileged information from another client; and (3) First Data was a sophisticated user of legal services and should be expected to understand the full extent of the waiver. *Id.* at 1107-10. As discussed above, all of those facts are present here.

### D. AMGEN WOULD BE SEVERELY PREJUDICED BY LOSING ITS COUNSEL OF CHOICE

McDermott has been representing Amgen since March 2005 in this matter. Roche has known of this since at least November 8, 2005, when the Boston Action was instituted. At no point in the Boston Action has Roche raised any objection to McDermott's representation, much less moved to disqualify McDermott. Moreover, in

MPK 109820-3.041925.0023

Boston Amgen specifically requested discovery on the contractual relationships between the Roche entities – the only basis on which Roche objects to McDermott's representation of Amgen here – in response to which no Roche entity ever raised the alleged conflict. (Gaede Decl. Ex. U.) In the meantime, McDermott has been busily engaged in further preparing this suit. (Gaede Decl., ¶ 11.) If not allowed to represent Amgen fully here, the significant learning curve and investment Amgen made in McDermott's Silicon Valley attorneys would be lost, and in this fast moving ITC action, they are not readily replaced. Roche's inaction on this matter since last year has prejudiced Amgen, and disqualifying McDermott would prejudice Amgen's efforts to prosecute this case.

### E. ROCHE CANNOT SHOW THAT DISQUALIFICATION IS JUSTIFIED

Even if Roche could meet its heavy burden to show a Model Rule 1.7 violation, the Commission considers various factors in deciding whether disqualification is warranted, including: (1) the nature of the ethical violation; (2) the prejudice to the parties; (3) the effectiveness of counsel in light of the violation; (4) the public's perception of the profession; and (5) whether or not a disqualification motion has been used as a tactical device or as a means of harassment. *See Certain Network Interface Cards and Access Points for Use in Direct Sequence Spread Spectrum Wireless Local Area Networks,* Inv. No. 337-TA-455, Comm'n Determination of Order No. 69, (Jan. 17, 2002), 2002 ITC LEXIS 62, *11.

Those factors weigh against any disqualification. First, given the potential for the structural conflict between Roche and Amgen, McDermott acted in a responsible and

ethical manner by raising its representation of Amgen with Roche in 2004, and requesting Roche's waiver on matters on behalf of Amgen that are or might be adverse to Roche, including litigation. Further, McDermott acted responsibly in investigating this matter and engaging Mr. Morgan, a renowned ethics professor, to independently review the matter.

Second, Roche has not articulated any prejudice by McDermott representing Amgen in this Investigation. By contrast, the prejudice to Amgen of losing its involved counsel is significant.

Third, there is no reason to believe that McDermott cannot continue to be equally effective for both clients in their engaged roles. Roche has never articulated that somehow McDermott's tax advice has been impacted, and there is no question that McDermott can continue to represent Amgen effectively.

Fourth, public policy should encourage these types of arrangements between large corporations and their lawyers to ensure that the right legal skill set may be retained so long, as here, prospective waivers are obtained.

Finally, Roche's failure to raise the issue in the Boston Action – despite Amgen's request for the discovery that Roche now alleges creates a conflict – its failure to move in this Investigation to disqualify McDermott, its refusal at times to even speak with McDermott attorneys, and the lack of specificity as to its position in the face of such clear waiver language, all suggest that this is a tactical device.

## IV. CONCLUSION

For all the foregoing reasons, McDermott requests that its motion be granted, that McDermott be declared to be qualified to serve as counsel for Amgen in this Investigation, and that the ITC require Roche to respond to the discovery and other issues that the McDermott firm raises on behalf of Amgen.

Respectfully Submitted,

*/s/ William G. Gaede, III*

William G. Gaede, III
McDermott Will & Emery
3150 Porter Drive
Palo Alto, CA 94304-1212
(650)813-5000
(650)813-5100 fax

Attorneys for Complainant Amgen Inc.