UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMGEN, INC.

        Plaintiff,

v.                         CIVIL ACTION No.: 05-CV-12237-WGY

F. HOFFMAN-LA ROCHE LTD.,
ROCHE DIAGNOSTICS GmbH,
and HOFFMAN-LA ROCHE INC.,

        Defendants.

---

**DECLARATION OF ROBERT J. MCGORTY IN SUPPORT OF NON-PARTY FRESENIUS' UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL DOCUMENTS CONTAINING FRESENIUS' TRADE SECRETS, FILED BY ROCHE, OR IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL OF RESOLUTION OF THE PATENT TRIAL**

---

I, Robert J. McGorty, hereby declare as follows:

1. I am the Vice President of Finance and Administration for the Fresenius Medical Services Division at Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America ("Fresenius"). I have more than 20 years of experience with Fresenius in finance and administration.

2. I make this declaration based upon my own personal knowledge.

3. My duties include responsibility for all financial and accounting activities related to the medical services division of Fresenius, including, but not limited to, procuring and negotiating pharmaceuticals contracts with Amgen, preparing budgets including purchasing costs of pharmaceuticals, and preparing financial statements. In 2006, I was part of the negotiating team that entered into the Sourcing and Supply Agreement between Amgen and Fresenius for the supply of Epogen™ ("2006 Epogen™ Sourcing & Supply Agreement") in October of 2006. I was also a member of the negotiating team for prior Amgen Sourcing & Supply Agreements. In connection with

Dockets.Justia.com

such negotiations, my responsibilities included determining the financial ramifications of the agreements.

4. I am submitting this declaration in support of non-party Fresenius' Unopposed Motion for Leave to File Under Seal Documents Containing Fresenius' Trade Secrets, Filed by Roche, or in the Alternative, for Stay Pending Appeal or Resolution of the Patent Case. In particular, I am submitting this declaration in support of Fresenius' assertion that certain information contained in Exhibits 257 and 259 to the Supplemental Declaration of David Cousineau in Support of Roche's Opposition to Amgen's Motion for Summary Judgment on Roche's Antitrust and State Law Counterclaims, filed by Roche on July 16, 2007 ("Exhibits 257 and 259") (Docket No. 745), as well as information in Exhibit 85 to the Declaration of David Cousineau in Support of Roche's Opposition to Amgen's Motion for Summary Judgment on Roche's Antitrust and State Law Counterclaims filed by Roche on June 29, 2007 ("Roche Exhibit 85") (Docket No. 589), constitutes Fresenius confidential trade secrets.

5. In particular, I have been informed that Roche has filed two documents that I understand are included within Roche Exhibits 257 and 259, which in un-annotated form were originally attached to two letters from Fresenius to Amgen. I have reviewed versions of these documents which I understand to be portions of Roche Exhibits 257 and 259 except that the annotations made by Amgen were removed.

6. I have also been informed that as part of its Declaration of David Cousineau in Support of Roche's Opposition to Amgen's Motion for Summary Judgment on Roche's Antitrust and State Law Counterclaims (Docket No. 589), Roche included excerpts from one of its expert reports at Roche Exhibit 85, of which I have reviewed pages 55 and 57 and found that page 57 in particular contains specific Fresenius trade secret data on Fresenius' Epogen™ discounts from Amgen.

7. Exhibits 257 and 259, as well as Exhibit 85, contain crucial Epogen™ Sourcing and Supply Agreement discount terms related to the 2006 Epogen™ Sourcing

& Supply Agreement with Amgen. Exhibits 257 and 259 include sections called "Volume Growth Tiers" and "Totals". These two sections in each of the subject exhibits contain values that Fresenius considers highly confidential, protected, trade secret information. I am familiar with this information because I was part of the negotiating team for the final 2006 Epogen™ Sourcing and Supply Agreement, and the predecessor agreements with Amgen. I am also familiar with these terms of the agreement in my role as Vice President of Finance. In light of my background, I am also knowledgeable about the continuing effect of historical discounts on prices in subsequent contracts. The volume growth tier information in the Amgen Contract Term Summaries (Roche Exhibits 257 and 259) is maintained by Fresenius in strict confidence as a trade secret. This trade secret information is basic to Fresenius' ability to compete and succeed in its business and gives it an advantage in the marketplace.

8. The volume growth tier information contained in the Amgen Contract Term Summaries (Roche Exhibits 257 and 259) contains highly sensitive and confidential information related to the pricing and cost structures employed by Fresenius. This highly sensitive, confidential information is the result of lengthy negotiation and strategic positioning by Fresenius with Amgen. It is at the core of Fresenius' business as a major supplier of dialysis products and services. The dialysis services industry, in which Fresenius competes, is largely lacking in product differentiation, therefore increasing efficiency of costs paid by the service provider relative to competition is paramount to profitability. This information gives Fresenius a competitive advantage in the market for dialysis services. Such valuable information in the hands of a competitor provider of dialysis services would allow them to gain immediate leverage to demand the same or similar rates as Fresenius from Amgen, and would destroy Fresenius' competitive advantage in the marketplace. In other words, the disclosure of this information would destroy the trade secret status of this sensitive information and irreparably harm Fresenius in the highly competitive dialysis services industry.

9. In order to arrive at the terms disclosed in the 2006 Epogen™ Sourcing & Supply Agreement and the predecessor Epogen™ Sourcing & Supply Agreement, Fresenius expended considerable effort in negotiations of complex terms. The discount terms that resulted from this negotiation as reflected in the Amgen Contract Term Summaries (Roche Exhibits 257 and 259) represent a significant advantage for Fresenius in the marketplace.

10. Fresenius has maintained the secrecy of these terms. Fresenius limited the negotiation team in discussions with Amgen to a handful of high-level employees. Only members of the Fresenius negotiating team were privy to the terms. Meetings were held behind closed doors, and documentation and emails concerning the talks were limited. I have been involved in the negotiation of several Epogen™ Sourcing & Supply with Amgen on behalf of Fresenius, and, in my experience, all discussions regarding terms, at all stages, were understood by both parties to be strictly confidential and all information exchanged was kept in confidence. It is my experience and my ongoing expectation that, in the ordinary course of business, sensitive negotiation information supplied during supplier/purchaser negotiations is kept highly confidentially by all parties to the negotiation as a standard practice in the dialysis services and supply industries. The volume growth discount terms, including the total and percentages of volume growth tiers for discounts, were the subject of a confidentiality clause in the 2006 Epogen™ Sourcing & Supply Agreement and a similar clause in the predecessor Epogen™ Sourcing & Supply Agreement. Fresenius did not release the discount terms with press releases related to the 2006 Epogen™ Sourcing & Supply Agreement, or the predecessor Epogen™ Sourcing & Supply agreement. In the highly competitive dialysis services industry, it is common company practice to maintain the confidentiality of trade secrets and proprietary information, such as the volume growth tier information set forth in the Amgen Contract Term Summaries (Roche Exhibits 257 and 259) discussed above.

11. The volume growth tier discount terms of the predecessor Epogen™ Sourcing & Supply Agreement between Fresenius and Amgen also remain important trade secrets. They represent historical information which is commonly used for both negotiation purposes, and, as is the case here, forms the baseline and, for many values including all of the volume growth tiers listed, the endpoint for contracts into the future. A competitor with access to the total volume growth tiers information under the predecessor agreement would be in a position to demand at least as favorable a volume growth discount total in its negotiation with Amgen for the purchase of Epogen™, or even use such information for leverage to get still better total volume growth tier discounts, eroding Fresenius' cost advantage. Furthermore, it is generally understood in the dialysis services industry that the overall scope of discounts tends to remain the same over time, thus, should historical discount rates become available to our competitors, they could easily deduce substantial and significant portions of our predecessor positions.

12. It would be extremely difficult, if not impossible, for a competitor, without access to the confidential trade secrets contained in the Amgen Contract Term Summaries (Roche Exhibits 257 and 259) volume growth tier discounts information, to duplicate the total volume growth tier discounts or the percentages of discounts available at each tier, under either the 2006 Epogen™ Sourcing & Supply Agreement or the predecessor Epogen™ Sourcing & Supply Agreement.

13. With respect to the "withheld rebates and total discount value" found on page 57 of the Criterion Economic L.L.C. Expert Report submitted by Roche as Exhibit 85, this data point directly reflects the highly confidential discount for which Fresenius is eligible under the 2006 Epogen™ Sourcing & Supply Agreement. As I described in my prior declaration in Support of Non-Party Fresenius' Assented to Motion For Leave To File Under Seal Documents Containing Non-Party Fresenius' Trade Secrets Which Were Submitted By Amgen In Connection With Amgen's Motion For Summary Judgment on Roche's Antitrust and State Law Counterclaims, dated June 25, 2007 and attached here as

Exhibit A and incorporated herein by reference, I am highly familiar with this information and the lengths to which Fresenius has gone to maintain its confidentiality.

14. Page 57 of Roche Exhibit 85 contains highly sensitive and confidential information related to the pricing and cost structures employed by Fresenius and in particular specifying volume discounts received by Fresenius. This highly sensitive, confidential information was the result of lengthy negotiation and strategic positioning by Fresenius with Amgen. It is at the core of Fresenius' business as a major supplier of dialysis products and services. This information gives Fresenius a competitive advantage over its competitors in the market for dialysis services. Such valuable information in the hands of a competitor provider of dialysis services, would allow them to gain immediate leverage to demand the same or similar rates as Fresenius from Amgen, and would negatively impact Fresenius' competitive advantage in the marketplace. In other words, the disclosure of this information would destroy the trade secret status of this sensitive information, and irreparably harm Fresenius in the highly competitive dialysis services industry. In order to arrive at the terms disclosed, Fresenius expended considerable effort in negotiating the complex terms of the 2006 Epogen™ Sourcing & Supply Agreement. The discount terms that resulted from this negotiation, as reflected on page 57 of Roche Exhibit 85, represent a significant advantage for Fresenius in the marketplace.

15. In the highly competitive dialysis services industry, it is common company practice to maintain the confidentiality of trade secrets and proprietary information, such as the discount information set forth in Roche Exhibits 257, 259 and page 57 of Roche Exhibit 85 discussed above.

16. Fresenius would be severely disadvantaged and harmed by the disclosure of the above-referenced highly confidential, trade secret information in the public record where it would be available to all, without restriction or limitation, including to Fresenius' competitors.

I declare under penalty of perjury that the foregoing is true and correct.

Date: July 27, 2007

Robert J. McGorty

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Nicole E. Gage
Nicole E. Gage

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**AMGEN, INC.**

        **Plaintiff,**

v.                            CIVIL ACTION No.:  05-CV-12237-WGY

**F. HOFFMAN-LA ROCHE LTD.,
ROCHE DIAGNOSTICS GmbH,
and HOFFMAN-LA ROCHE INC.,**

        **Defendants.**

---

**DECLARATION OF ROBERT J. MCGORTY IN SUPPORT OF NON-PARTY
FRESENIUS' ASSENTED-TO MOTION FOR LEAVE TO FILE UNDER SEAL
DOCUMENTS CONTAINING NON-PARTY FRESENIUS' TRADE SECRETS
WHICH WERE SUBMITTED BY AMGEN IN CONNECTION WITH AMGEN'S
MOTION FOR SUMMARY JUDGMENT ON ROCHE'S ANTITRUST AND STATE
LAW COUNTERCLAIMS**

---

I, Robert J. McGorty, hereby declare as follows:

1.    I am the Vice President of Finance and Administration for the Fresenius Medical Services Division of Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America ("Fresenius").  I have more than 20 years of experience with Fresenius in finance and administration.

2.    I make this declaration based upon my own personal knowledge.

3.    My duties include responsibility for all financial and accounting activities related to the medical services division of Fresenius, including, but not limited to, procuring and negotiating pharmaceuticals contracts with Amgen, preparing budgets including purchasing costs of pharmaceuticals, and preparing financial statements.  In 2006, I was part of the negotiating team that entered into the Sourcing and Supply Agreement between Amgen and Fresenius for the supply of Epogen™ ("2006 Epogen™ Sourcing & Supply

Agreement") in October of 2006.  In connection with such negotiations, my responsibilities included determining the financial ramifications of the agreement.

4. I am submitting this declaration in support of Fresenius' Assented-To Motion to File Under Seal Documents Containing Non-Party Fresenius' Trade Secrets Which Were Submitted by Amgen in Connection with Amgen's Motion for Summary Judgment on Roche's Antitrust and State Law Counterclaims.  In particular, I am submitting this declaration in support of Fresenius' assertion that certain information contained in Paragraph 8 of Exhibit 4 of the Declaration of James M. Fraser in Support of Amgen's Motion for Summary Judgment on Roche's Antitrust and State Law Counterclaims filed by Amgen on June 15, 2007 ("Fraser Decl. Exhibit 4") (Docket No. 521) constitutes Fresenius' confidential and trade secret information.

5. Fraser Decl. Exhibit 4 is a Declaration of Mats Wahlstrom, President of Fresenius Medical Care's services division in North America. ("the Wahlstrom Declaration").  The terms described in paragraph 8 therein contain highly confidential and trade secret information of Fresenius, relating to the discounts for which Fresenius is eligible under the 2006 Epogen™ Sourcing & Supply Agreement.  I am familiar with this information because I was part of the negotiating team for the final 2006 Epogen™ Sourcing and Supply Agreement.  I am also familiar with these terms of the agreement in my role as Vice President of Finance.  The information in paragraph 8 of the Wahlstrom Declaration is maintained by Fresenius in strict confidence as a trade secret in the highly competitive dialysis services industry in the United States.  This trade secret information is basic to Fresenius' ability to compete and succeed in its business and gives it an advantage in the marketplace.

6. The discount information contained in paragraph 8 of the Wahlstrom Declaration (Fraser Decl. Exhibit 4) contains highly sensitive and confidential information related to the pricing and cost structures employed by Fresenius.  This highly sensitive, confidential information was the result of lengthy negotiation and strategic positioning by

Fresenius with Amgen. It is at the core of Fresenius' business as a major supplier of dialysis products and services. This information gives Fresenius a competitive advantage over its competitors in the market for dialysis services. Such valuable information in the hands of a competitor provider of dialysis services, would allow them to gain immediate leverage to demand the same or similar rates as Fresenius from Amgen, and would negatively impact Fresenius' competitive advantage in the marketplace. In other words, the disclosure of this information would destroy the trade secret status of this sensitive information, and irreparably harm Fresenius in the highly competitive dialysis services industry. In order to arrive at the terms disclosed in the 2006 Epogen™ Sourcing & Supply Agreement, Fresenius expended considerable effort in negotiating the complex terms of this agreement. The discount terms that resulted from this negotiation as reflected in paragraph 8 of the Wahlstrom Declaration represent a significant advantage for Fresenius in the marketplace.

7. Fresenius has maintained the secrecy of these terms. The discount terms were the subject of a confidentiality clause in the 2006 Epogen™ Sourcing & Supply Agreement. Fresenius did not release the discount terms with press releases related to the 2006 Epogen™ Sourcing & Supply Agreement.

8. In the highly competitive dialysis services industry, it is common company practice to maintain the confidentiality of trade secrets and proprietary information, such as the discount information set forth in paragraph 8 of the Wahlstrom Declaration (Fraser Decl. Exhibit 4) discussed above.

9. Fresenius would be severely disadvantaged and harmed by the disclosure of the above-referenced highly confidential, trade secret information in the public record where it would be available to all without restriction or limitation, including Fresenius' competitors.

I declare, on June 25, 2007, under penalty of perjury that the foregoing is true and correct.

*[signature]* 6/25/07
Robert J. McGorty

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Mark Hebert
Mark Hebert

4