UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN, INC., ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 05-CV-12237-WGY |
| F. HOFFMAN-LA ROCHE LTD., ) ROCHE DIAGNOSTICS GmbH, ) and HOFFMAN-LA ROCHE INC., ) | |
| Defendants. ) | |

### DECLARATION OF NICOLE E. GAGE

I, Nicole E. Gage, hereby declare as follows:

1. I am an attorney admitted to the bar of this court, and to the Supreme Judicial Court of the Commonwealth of Massachusetts. I am a member of the firm of Fish & Richardson P.C. My office address is 225 Franklin Street, Boston, MA 02110.

2. I am an attorney of record representing non-party Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America ("Fresenius") in connection with this action.

3. Attached hereto as Exhibit A is a true and correct copy of a letter dated February 26, 2007 from Douglas C. Kott of Fresenius Medical Care Holdings, Inc. to the United States Security and Exchange Commission.

4. Attached hereto as Exhibit B is a true and correct copy of an Order dated June 7, 2007 from the United States Securities and Exchange Commission granting exclusion from the public of information contained in the 2006 Sourcing and Supply Agreement between Fresenius and Amgen.

5.      On Wednesday, July 25, 2007, Mark Hebert (also of Fish & Richardson P.C.) and I had a conversation with Amgen's attorney Dan Curto of McDermott, Will & Emery.  During that conversation, Mr. Curto advised us that Roche filed an additional document that appeared to include Fresenius' trade secret information.  The document in question was portions of one of Roche's expert reports that had been filed on June 29, 2007 as Exhibit 85 to the Declaration of David L. Cousineau In Support of Roche's Opposition to Amgen's Motion for Summary Judgment on Roche's Antitrust and State Law Counterclaims (Docket No. 589).  Although the documents contain Fresenius' trade secrets and confidential information, Roche had not given Fresenius prior notice of the filing of this material.  The declaration only identifies the exhibit as "excerpts from the April 6, 2007 Expert Report of Einer Elhauge."  Neither Fresenius nor its counsel has had access to this Expert Report.

6.      I requested a copy of Exhibit 85 from Roche and on July 26, 2007 I received pages 55 and 57 of such exhibit from Manvin Mayell of Kaye Scholer LLP, counsel for Roche.  Mr. Mayell informed me that pages 55 and 57 were the only pages filed as part of Exhibit 85 that may contain Fresenius confidential information.  This was the first time that either Fresenius or its counsel were able to review any part of Roche Exhibit 85 for the purpose of determining its trade secret status.

7.      Based on that review, I understand that Roche Exhibit 85 contains volume discount terms directly derived from the 2006 Sourcing & Supply Agreement between Fresenius and Amgen for the supply of Epogen™.  It is my further understanding that both Amgen and Fresenisus produced copies of this Agreement in relation to this action under the highest level of the Protective Order.  Specifically, Fresenius produced a copy on March 8, 2007 with the ledgend "Contains FMCNA Highly Confidential Information – Outside Counsel's Eyes Only."  The Agreement copy produced by Fresenius was also marked by Roche as Exhibit 1 in the deposition of Fresenius employee Rober McGorty on March 30, 2007.

8. In view of the foregoing, I believe that Roche should have realized that its Exhibit 85, although referencing an Amgen produced document, actually contained Fresenius' Hightly Confidential information.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 30, 2007

*Nicole E. Gage*
Nicole E. Gage

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 30th day of July, 2007.

/s/ Nicole E. Gage
Nicole E. Gage

21698410.doc

# EXHIBIT A



# Fresenius Medical Care

February 26, 2007

**OVERNIGHT MAIL**
**PRIVILEGED & CONFIDENTIAL**

Office of the Secretary
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

    Re:    Fresenius Medical Care AG & Co. KGaA Annual Report on Form 20-F for the period ended December 31, 2006 – Application for an Order Pursuant to Rule 24b-2 Under the Securities Exchange Act of 1934, as amended, Granting Confidential Treatment of Certain Contractual Provisions

Ladies and Gentlemen:

    On behalf of Fresenius Medical Care AG & Co. KGaA (collectively with its subsidiaries, the "Company") and pursuant to Rule 24b-2 promulgated under the Securities Exchange Act of 1934 (as amended, the "Exchange Act"), we request confidential treatment of certain portions of Exhibit 4.18 (the "Exhibit") to the Company's Annual Report on Form 20-F for the period ended December 31, 2006 (the "20-F"). The Exhibit is entitled "Sourcing and Supply Agreement," and is a contract among Fresenius Medical Care Holdings, Inc. ("FMCH"), a subsidiary of the Company, Amgen, Inc. and Amgen USA, Inc. ("Amgen"). This request relates to certain portions of the Exhibit, which, if disclosed, would cause substantial competitive injury through the disclosure of confidential financial, business and commercial information.

### Introduction

    The Company makes this application for an order granting confidential treatment of the Confidential Portions (as that term is hereinafter defined) of the Exhibit. The Company bases this request on the exemption from disclosure contained in Section (b) (4) of Rule 80 of Organization; Conduct and Ethics; and Information and Requests (17 C.F.R. §200.80) and the Commission's Rule adopted under the Freedom of Information Act, 5 U.S.C. Section 552. The Company believes that the Confidential Portions constitute "commercial or financial information obtained from a person [that is] privileged or confidential" under the provisions of Section (b) (4) of said Rule 80, and that disclosure of the Confidential Portions will cause substantial harm to the competitive position of the Company. Furthermore, the Company believes that disclosure of the Confidential Portions is of a commercial and financial nature and meets the standards for confidentiality elaborated by the courts under the Freedom of Information Act.

---

**Fresenius Medical Care North America**

Corporate Headquarters:   920 Winter Street   Waltham, MA 02451-1457   781-699-9000
FMCH/#23689

As the Federal courts have interpreted the same exemption under the Freedom of Information Act, 5 U.S.C. Section 552(b)(4), commercial or financial information is "confidential" when public disclosure of such information involves the likelihood of substantial harm to the competitive position of the person from whom the information is obtained. National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974). The person claiming this exemption need not show any actual adverse effect on its competitive position, but need only demonstrate that there is actual competition and that substantial competitive injury would likely result from disclosure. Gulf & Western Indus. Inc. v. United States, 615 F.2d 527, 530 (D.C. Cir. 1979); Professional Review Organization of Florida v. United States Dept. of Health, 607 F. Supp. 423, 425-26 (D.D.C. 1985).

In accordance with Rule 24b-2 under the Exchange Act, the portions of the Exhibit which the Company desires to keep undisclosed have been deleted from the copy filed as Exhibit 4.18 to the 20-F. Enclosed is an additional copy of Exhibit 4.18 as so filed. Also enclosed is one (1) copy of the Agreement which has been marked "Confidential Treatment" and which indicates those portions (collectively, the "Confidential Portions") the Company desires to keep confidential in accordance with Rule 24b-2.

The Confidential Portions are and will remain confidential. The Company has not publicly disclosed any of the Confidential Portions and has instituted internal procedures which restrict access to the Confidential Portions to a limited number of the Company's employees whose duties require them to have access to the Confidential Portions.

In addition to its request for confidential treatment of specific provisions of the Agreement pursuant to Rule 24b-2, the Company requests that each of the following be withheld from public availability under the Freedom of Information Act: (1) this letter and any subsequent correspondence from (or on behalf of) the Company relating to this request for confidential treatment; (2) any memoranda, notes, correspondence or other writings made by any member or employee of the Securities and Exchange Commission relating to the Agreement or any conference or telephone call with respect thereto; and (3) any copies or extracts of the foregoing.

**The Company's Business and Competition**

The Company is one of the largest provider in the United States of kidney dialysis and related services for the treatment of end-stage renal disease ("ESRD") with approximately 1,500 outpatient dialysis centers located in approximately 45 states. The Company also provides services for home dialysis patients. For such patients, the Company's dialysis centers provide certain materials, training and patient support services, including clinical monitoring, supply of EPO and Aranesp (as defined below), follow-up assistance and arrangements for the delivery of the supplies to the patient's residence. The Company also provides perfusion, apheresis and dialysis services under contract to hospitals in the United States on an "as needed" basis for patients suffering from acute kidney failure and other illnesses and for ESRD patients who are hospitalized. In addition, the Company manufactures a comprehensive line of products for the treatment of kidney failure, including hemodialysis machines, peritoneal dialysis systems and

disposable products, and also provides laboratory services for dialysis patients in the United States.

In connection with its provision of dialysis services, the Company provides various ancillary medications and services to ESRD patients in the United States at its dialysis centers, the most significant of which is the administration of Erythropoietin ("EPO"). Aranesp is an alternative to EPO. EPO and Aranesp are bioengineered proteins that stimulate the production of red blood cells and are used to treat anemia, a medical complication frequently experienced by ESRD patients. EPO and Aranesp are administered to most of the Company's patients. The Company purchases its entire EPO and Aranesp requirements under the Agreement. Revenues from EPO accounted for a significant portion of the Company's U.S. net revenues from its dialysis services business ("Dialysis Services") for the year ended December 31, 2006 and materially contribute to Dialysis Services' operating earnings.

The dialysis services industry is highly competitive. According to Centers for Medicare and Medicaid Services data, as of December 31, 2003, there were more than 4,500 Medicare-certified ESRD treatment centers in the U.S. Ownership of these centers was fragmented. The Company estimates that at that time, a relatively small number of multi-facility providers accounted for approximately 70-75% of the estimated market, and a large number of providers owning 10 or fewer clinics. In urban areas, where many of the Company's dialysis centers are located, there frequently are many competing dialysis centers in proximity to the Company's centers. The Company experiences direct competition from time to time from its former medical directors or referring physicians who establish their own dialysis centers. Furthermore, a number of health care providers, some of which have significant operations or resources, may decide to enter the dialysis business in the future.

### Confidential Portions and Statement of Grounds

The Confidential Portions contain information relating to EPO and Aranesp acquisition costs, minimum EPO and Aranesp purchase requirements, the calculation and payment of discounts related to EPO and Aranesp purchases and the calculation and payment of other incentives. The Company believes that any such disclosure would result in substantial competitive injury to the Company

The following are the Confidential Portions of the Exhibit for which the Company requests confidential treatment and the grounds upon which the Company objects to public disclosure of such portions (except as otherwise noted, page references are made to the original agreement and not to the Exhibit as redacted):

1. Page 2, Section 1.9
   Page 2, Section 1.10
   Pages 2-3, Sections 2.1.1 and 2.1.2
   Pages 3-5, Sections 2.2, 2.3, 2.4 and 2.5
   Page 5, Section 2.6
   Page 11, Section 5.1

        Page 11, Section 5.2
        Page 13, Section 8.4
        Pages 14-15, Section 8.5
        Pages 15-16, Section 8.6
        Page 19, Section 9.16
        Pages 19-20, Section 9.17

These Confidential Portions relate to payment terms, purchase commitments, forecasting terms, pricing arrangements, strategic initiatives and termination rights under the Agreement. The Company requests confidential treatment of such information because public disclosure would provide the Company's competitors with valuable commercial information regarding the Company's pricing and cost structure as well as its economic strength. This would provide such other parties with an unfair competitive advantage and thereby hurt the Company and its shareholders. The Company does not believe that disclosure of these terms would be material to an investor's understanding of the Company's business or the Agreement taken as a whole.

    2.  Page 6, Section 2.7
        Page 8, Section 3.1
        Page 8, Section 3.2
        Page 8, Section 3.3
        Page 9, Section 3.4
        Pages 91 – 103A, Exhibit 3.1

These Confidential Portions set forth the prices per pack of EPO and Aranesp, including the discount percentages, applicable currently and prospectively, the methods of calculation of discounts FMCH may receive based on purchases of EPO and Aranesp, the payment terms of such discounts, the requirements for submission of test results to Amgen, the method of calculating incentive payments based upon such test results and the payment terms of such incentive payments. The Company requests confidential treatment of such information because public disclosure would provide the Company's competitors with valuable commercial information regarding the terms negotiated by the Company with respect to the incentive programs provided for in the contract and FMCH's cost and pricing structure for EPO. This information, if disclosed, would give third parties an unfair competitive advantage against the Company. The Company does not believe that disclosure of these terms would be material to an investor's understanding of the Company's business or the Agreement taken as a whole.

    3.  Page 8, Section 2.10
        Pages 23-79, Schedule 1.4
        Pages 80-81, Schedule 1.7
        Pages 83-85, Exhibit 2.10, Sections 1-5 and 9

These Confidential Portions set forth the prices and other terms for FMCH's direct purchase of EPO and Aranesp from Amgen, including the prompt payment discount percentages and authorized wholesalers. The Company requests confidential treatment of such information

because public disclosure would provide the Company's competitors with valuable commercial information regarding FMCH's business locations, customers, pricing and cost structure and would give them an unfair competitive advantage against the Company. The Company does not believe that disclosure of these terms would be material to an investor's understanding of the Company's business or the Agreement taken as a whole.

### Analysis

The federal courts have recognized that the release of information of the type contained in the Confidential Portions would cause substantial competitive injury through the disclosure of confidential commercial and financial information. In Timken Co. v. United States Customs Service, 491 F. Supp. 557, 560 (D.D.C. 1980), the court held that the disclosure of information on product costs, discounts and prices, the amount of product sold and the marketing strategy would enable competitors to impose substantial competitive injury on a company by modifying their marketing strategy, undermining pricing structure and undercutting bids, and using selective underpricing to gain greater market share.

The Company believes that disclosure of the Confidential Portions would provide the Company's competitors with a competitive advantage and cause the Company competitive injury by providing product acquisition costs, discounts, and other commercial information relating to the Company's business, which would enable Company's competitors to derive the Company's pricing structure for EPO and would provide information which would allow competitors to interfere with the Company's advantageous relationships.

Given that this contract will extend until December 31, 2011, the Company requests that the Confidential Portions be kept confidential until December 31, 2016, subject to extension upon written request by the Company and approval thereof by the Commission. The Company believes that the disclosure of the Confidential Portions before the expiration of such period would reveal valuable information regarding the Company's pricing and cost structure to the Company's competitors and could enable them to negotiate similar or better terms with Amgen, thereby causing substantial harm to the Company's competitive position.

The Confidential Portions are and will remain confidential. The parties to the Agreement have agreed not to disclose the information contained therein, including the Confidential Portions, to any third party without the prior written consent of the other party, except as contemplated by the Agreement or as required by law. The Company has not publicly disclosed any of the Confidential Portions, and has instituted internal procedures that restrict the ability of the Company's employees from gaining access to the Confidential Portions. The information contained in the Confidential Portions is critical to the Company's competitive position. Consequently, disclosure of the Confidential Portions at any time during this period will cause the substantial harm to the Company's competitive position that we seek to avoid by making this request.

For the foregoing reasons, the Company hereby requests the Commission to enter an order determining that disclosure of the Confidential Portions of the Exhibit is not necessary for

the protection of investors. Pursuant to Rule 24b-2, the Company understands that, pending the Commission's grant or denial of the application made hereby, no disclosure of said provisions shall be made.

The Company consents to the disclosure of the Confidential Portions to other government agencies, offices or bodies and to the Congress of the United States.

Any questions or comments which you might have on the Company's application for an order pursuant to Rule 24b-2, or any of the material submitted herewith, should be directed to the undersigned at (781) 699-9186.

Sincerely,

Douglas G. Kott
Vice President
Deputy General Counsel
Fresenius Medical Care Holdings, Inc.

DGK/jmd

Enclosures

cc:   Ronald J. Kuerbitz, Esq.
      Rainer Runte, Esq.

# EXHIBIT B

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

June 7, 2007

-----------------------------------------

ORDER GRANTING CONFIDENTIAL TREATMENT
UNDER THE SECURITIES EXCHANGE ACT OF 1934

Fresenius Medical Care AG & Co. KGaA
File No. 001-32749- CF#19811

-----------------------------------------

Fresenius Medical Care AG & Co. KGaA submitted an application under rule 24b-2 requesting confidential treatment for information it excluded from the Exhibit to a Form 20-F filed on February 23, 2007.

Based on representations by Fresenius Medical Care AG & Co. KGaA that this information qualifies as confidential commercial or financial information under the Freedom of Information Act, 5 U.S.C. 552(b)(4), the Division of Corporation Finance has determined not to publicly disclose it. Accordingly, excluded information from the following exhibit will not be released to the public for the time periods specified:

Exhibit 4.18     through December 31, 2016

For the Commission:

*Nancy M. Morris* (signature)

Nancy M. Morris
Secretary

**PUBLIC SERVICE LIST**

Douglas G. Kott
Vice President, Deputy General Counsel
Fresenius Medical Care Holdings, Inc.
920 Winter Street
Waltham, MA 02451-1457


Public Reference
Mail Stop 2521-SP1
Securities and Exchange Commission
Washington, D.C.