# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMGEN INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 05-12237 WGY |
| v. ) | |
| ) | |
| F. HOFFMANN-LAROCHE ) | |
| LTD., a Swiss Company, ROCHE ) | |
| DIAGNOSTICS GmbH, a German ) | |
| Company and HOFFMANN LAROCHE ) | |
| INC., a New Jersey Corporation, ) | |
| ) | |
| Defendants. ) | |

**AMGEN INC.'S MEMORANUM IN OPPOSITION TO DEFENDANTS'
MOTION TO PRECLUDE TESTIMONY FROM AMGEN'S BELATEDLY
DISCLOSED FACT WITNESSES**

Dockets.Justia.com

TABLE OF CONTENTS

PAGE NO.

I. INTRODUCTION ........................................................................................................ 1

II. AMGEN DISCLOSED DRS. ESCHBACH, ORKIN, ULLRICH, AND BERK BEFORE THE CLOSE OF DISCOVERY AND ROCHE TOOK DISCOVERY ON THESE INDIVIDUALS. ............................................................. 2

    A. DRS. ESCHBACH, ORKIN, AND ULLRICH WERE DISCLOSED DURING THE FACT DISCOVERY PERIOD. ................................................................. 3

    B. DRS. ESCHBACH, ORKIN, ULLRICH, AND BERK WERE DISCLOSED TIMELY DURING THE EXPERT DISCOVERY PERIOD. ............................ 4

    C. ROCHE HAD AN OPPORTUNITY TO TAKE DISCOVERY ON EACH OF THESE INDIVIDUALS. ............................................................................... 5

III. AMGEN HAS SUBSTANTIAL JUSTIFICATION FOR SUPPLEMENTING ITS RULE 26(A)(1) DISCLOSURES TO SUBSTITUTE DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON FOR WITNESSES WHO ARE UNAVAILABLE FOR TRIAL AND ROCHE WILL NOT BE HARMED BY THIS SUPPLEMENTATION ................... 9

    A. AMGEN'S SUPPLEMENTAL DISCLOSURE OF DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON WAS PROPER UNDER RULE 26(E)(1). ..... 9

        1. Amgen Identified Ms. Spaeth and Dr. Friedman While Searching for a Replacement for Dr. Joseph Eschbach, Who Became Unavailable After the Close of Fact Discovery. .................................................................................. 10

        2. Amgen Identified Mr. Fenton to Replace Mr. Rathmann, Who Who Became Unavailable After the Close of Fact Discovery. .................................................................................. 11

    B. AMGEN'S SUPPLEMENTAL DISCLOSURE OF DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON AFTER THE CLOSE OF FACT DISCOVERY WAS SUBSTANTIALLY JUSTIFIED UNDER RULE 37(C)(1). ................. 12

    C. AMGEN'S SUPPLEMENTAL DISCLOSURE OF DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON AFTER THE CLOSE OF FACT DISCOVERY WILL NOT HARM ROCHE. ................................................................. 14

IV. CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**PAGE NO.**

**Cases**

*Amadasu v. Mercy Fransciscan Hosp.*,
   WL 1412994 (S.D. Ohio May 10, 2007) ................................................................. 13

*Bronk v. Ineichen*,
   54 F.3d 425 (7th Cir. 1995) ..................................................................................... 13

*Brooks v. Stringer*,
   2007 WL 43819 (S.D. Miss. Jan. 5, 2007) .............................................................. 13

*Carter v. Finley*,
   2003 WL 22717772 (N.D. Ill. Nov. 17, 2003) ........................................................ 13

*Klonoski v. Mahlab*,
   156 F.3d 255 (1st Cir. 1998) ..................................................................................... 9

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966) ...................................................................................................... 1

*Grajales-Romero v. Am. Airlines, Inc.*,
   194 F.3d 288 (1st Cir. 1999) .............................................................................. 13, 14

*Joy v. Hay*,
   2004 WL 719389 (N.D. Ill. May 31, 2004) ......................................................... 7, 15

*Wright v. Aargo Sec. Servs., Inc.*,
   2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001) ................................................. 7, 12, 15

**Rules**

FED.R.CIV.P. 26 (e)(1) ........................................................................................................ 9

FED.R.CIV.P. 37 (c)(1) ...................................................................................................... 12

I.  **INTRODUCTION**

Roche seeks to strike seven witnesses listed in Amgen's supplemental disclosures on the pretext that those disclosures were served after the close of fact discovery. But, importantly, Roche fails to inform the Court that:

- Drs. Eschbach, Orkin, and Ullrich were in fact disclosed in Amgen's very first Rule 26(a) disclosure in November 2006;

- Dr. Berk, both an expert and fact witness, was disclosed during the discovery period and was deposed by Roche on all topics during his deposition;

- Dr. Friedman, Ms. Spaeth, and Mr. Fenton were identified as replacement witnesses for Dr. Eschbach and Mr. Rathmann who are too ill to testify at trial.

Roche has opened the door to the testimony of these witnesses by alleging, albeit without particularity until late in the discovery period,[1] the obviousness of Dr. Lin's patents-in-suit. Amgen is entitled to rebut Roche's obviousness allegation through objective evidence of non-obviousness.[2] Each of these seven witnesses possesses relevant knowledge regarding, among other things, objective evidence of the non-obviousness of Dr. Lin's claimed inventions. For example, Drs. Orkin, Ullrich and Berk each possess knowledge regarding the long-felt need, failure of others, and the technical accomplishment of the inventions claimed in the patents-in-suit. Likewise, Dr. Eschbach (now unavailable) and his replacements, Dr. Friedman and Ms. Spaeth, each possess knowledge regarding the long-felt need for therapeutically effective treatment for the anemia of chronic renal failure, the failures of other as reflected by the inadequacy of previously available treatments, the surprising and unexpected benefits to patients, and the widespread adoption of the inventions claimed in the patents-in-suit.

---

[1] *See* Docket No. 316 (Amgen's Mot. to Compel a Complete Resp. to Interrogs. 9,10, & 11); *see also* Docket No. 388, Exh. 2 (Electronic Order Re: Amgen's Mot. to Compel a Complete Resp. to Interroges 9,10, & 11 ).

[2] *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).

737857_3                                  1

Roche falsely asserts that it had been unable to take discovery on these seven witnesses. In reality, Roche had notice of Drs. Eschbach, Orkin, Ullrich, and Berk during the discovery period, served document requests and subpoenas on them, and, with the exception of Dr. Eschbach,[3] had the opportunity to depose each of these witnesses during the discovery period. In addition, for the three replacement witnesses disclosed on July 10 – Dr. Friedman, Ms. Spaeth and Mr. Fenton – Amgen has offered Roche the deposition of each, but Roche has essentially failed to respond. Any inconvenience that may attend Roche's deposition of these individuals in the month of August is clearly outweighed by the prejudice to Amgen were it foreclosed from replacing key third party witnesses who – through no fault of Amgen – have become too ill to participate at trial. Roche's refusal to depose these replacement witnesses is no reason to stymie Amgen's defense.

Because Amgen's disclosures of Drs. Eschbach, Orkin, UIlrich, and Berk were timely and Roche had full and fair opportunity to take discovery on those witnesses, Rule 37(c)(1) is simply inapplicable and Roche's motion should be denied. In addition, because Amgen has substantial justification for disclosing Dr. Friedman, Ms. Spaeth, and Mr. Fenton after the close of fact discovery and because Roche will suffer no harm, Roche's motion to preclude their testimony under Rule 37(c)(1) should be denied.

## II. AMGEN DISCLOSED DRS. ESCHBACH, ORKIN, ULLRICH, AND BERK BEFORE THE CLOSE OF DISCOVERY AND ROCHE TOOK DISCOVERY ON THESE INDIVIDUALS.

Roche's motion seeks to have stricken four witnesses – Drs. Eschbach, Orkin, Ullrich, and Berk – who each appear in Amgen's Second Supplemental Disclosures served on May 7, 2007. Roche argues that because Amgen's Second Supplemental Disclosures were served after

---

[3] As discussed below, Dr. Eschbach became gravely ill and Amgen, as soon as it was notified of Dr. Eschbach's illness, notified Roche that Dr. Eschbach would not be available for deposition or to participate in this case at trial.

the close of fact discovery, these four witnesses should be precluded from testifying at trial.

Roche's motion wrongly suggests that (1) Roche did not learn of these witnesses until May 7, 2007 and (2) Roche was therefore deprived of the ability to take discovery on these witnesses. Both of these suggestions are false.

### A.     DRS. ESCHBACH, ORKIN, AND ULLRICH WERE DISCLOSED DURING THE FACT DISCOVERY PERIOD.

Roche knew about each of these witnesses during and in some cases well-before the discovery period.

On November 6, 2006, Amgen served Initial Disclosures that identified as individuals with knowledge relevant to this case, witnesses in prior litigations enforcing Dr. Lin's EPO patents:

> In addition to the above individuals, some 30 witnesses, including Amgen employees, gave testimony related to the patents-at-issue in *Amgen Inc. v. Genetics Institute, Inc. and Chugai Pharmaceutical Co., Ltd.*, C.A. 87-2617-Y (D. Mass.) and some 24 witnesses, including Amgen employees, gave testimony relating to the patents-at-issue in *Amgen Inc. v. Hoechst Marion Roussel, Inc. and Transkaryotic Therapies, Inc.*, C.A. 97-10814-WGY (D. Mass.).[4]

While not specifically named, those witnesses included Drs. Eschbach, Orkin, and Ullrich. Both Dr. Eschbach and Dr. Orkin provided testimony in the *Amgen v. HMR/TKT* case, which testimony was produced to Roche on June 1, 2006.[5] Likewise, Dr. Axel Ullrich gave testimony in the *Amgen v. Genetics Institute* proceeding, which testimony was produced to Roche on May 31, 2006.[6] The testimony of each of these witnesses in those prior proceedings was produced to Roche nearly a year before the close of fact discovery in this case.

In fact, Roche knew of both Dr. Ullrich and Dr. Orkin well-before the instant litigation.

---

[4] *See* Docket No. 341, Exh. A (11/6/06 Amgen's Initial Disclosures) at 4.

[5] *See* Decl. of Deborah E. Fishman in Supp. of Amgen's Opp'n to Defs.' Mot. to Preclude Test. from Amgen's Belatedly Discloses Fact Witnesses [hereinafter "Fishman Decl."] at ¶¶ 3-4.

737857_3                                                    3

Dr. Ullrich is a third-party witness who was formerly a Genentech (subsidiary of Roche) scientist. His work led to the development of Herceptin, an anti-oncogene therapy for breast cancer jointly developed by Genentech and Roche.[7] In addition, in 1994, Dr. Orkin submitted a declaration and exhibits regarding his failed attempts to isolate DNA encoding EPO (including his EPO project status reports) to Roche during a foreign patent litigation brought by Hoffman La-Roche against Kirin-Amgen.[8]

During the discovery period, Roche served document requests and subpoenas on Drs. Ullrich, Orkin, and Eschbach. On March 27, Roche listed Dr. Eschbach on *its* initial disclosures as someone with relevant knowledge.[9] It is therefore disingenuous for Roche to suggest that it was unaware of these individuals or their relevance to this case during the discovery period.

> **B.   DRS. ESCHBACH, ORKIN, ULLRICH, AND BERK WERE DISCLOSED TIMELY DURING THE EXPERT DISCOVERY PERIOD.**

Next, Roche suggests that because Drs. Eschbach, Orkin, Ullrich, and Berk were not named until Amgen served its Second Supplemental Disclosures on May 7, after the close of fact discovery, it was deprived of the ability to take discovery of these four witnesses:

> "..Roche is now prejudiced by its inability to address these belatedly disclosed individuals as fact witnesses and seek their documents to determine the scope of their knowledge which Amgen claims is relevant to the issues to be tried in this case."[10]

Roche's statements are blatantly false and ignore several critical facts.

First, Roche ignores the fact that its own theories of invalidity came late in discovery,[11]

---

[6] Fishman Decl., ¶ 5.

[7] Fishman Decl., Exh. 1 (http://www.gene.com/gene/ir/financials/annual-reports/2006/editorial/herceptin_casestudy.jsp )

[8] Fishman Decl., Exh. 2 (Orkin Declaration and Exhibits).

[9] Fishman Decl., Exh. 3 (3/27/07 Roche's Supp. Rule 26(a) Disclosures).

[10] Roche Mot. at 1.

[11] *See* Docket No. 316 (Amgen's Mot. to Compel a Complete Resp. to Interrogs. 9,10, & 11); *see also* Docket No. 388, Exh. 2 (Electronic Order Re: Amgen's Mot. to Compel a Complete Resp.

making it impossible for Amgen to know with certainty which witnesses would be important to its rebuttal case. Once Roche served its invalidity expert reports on April 6, three days later Amgen identified Dr. Orkin, Dr. Berk, and Dr. Ullrich as potential rebuttal experts and provided Roche with copies of their *curricula vitae*.[12] Shortly thereafter, on May 7, Amgen served its Second Supplemental Disclosures, naming each of these four witnesses with particularity.

Next, Roche fails to mention the important fact that early in the discovery period the parties agreed that depositions for dual-purpose witnesses (both fact and expert) would proceed *after* the fact discovery period, during expert discovery, which did not close until the end of June.[13] Therefore, even if Roche did not know of Drs. Eschbach, Orkin, Ullrich, and Berk until May 7, it still had ample opportunity to take discovery of these witnesses in both their expert and percipient capacities during the expert discovery period.

### C. ROCHE HAD AN OPPORTUNITY TO TAKE DISCOVERY ON EACH OF THESE INDIVIDUALS.

As shown below, Roche served document requests, subpoenas, and took depositions of many of these witnesses during the discovery period. Because Roche took discovery on each of these witnesses during the discovery period, Roche cannot contend that it was unaware of these individuals or their relevance to this case during the discovery period.

(1) **Dr. Stuart Orkin**. Amgen produced Dr. Orkin's prior testimony from the *HMR/TKT* litigation to Roche on June 1, 2006 in connection with Amgen's co-pending ITC

---

to Interroges 9,10, & 11 ).

[12] Fishman, Exh. 4 ( 4/9/07 D. Fishman letter to T. Fleming re disclosure of Berk); Fishman Decl., Exh. 11 (4/9/07 M. Izraelewicz letter to T. Fleming re disclosure of Orkin); Fishman Decl., Exh. 26 (4/9/07 M. Izraelewicz letter to T. Fleming re disclosure of Ullrich). Notably, Dr. Eschbach had been identified as a potential expert to Roche on March 2, 2007. *See* Fishman, Exh. 25 ( 3/2/07 D. Fishman letter to T. Fleming re disclosure of Eschbach).

[13] Fishman Decl., Exh. 5 (3/21/07 D. Fishman email to T. Fleming). Amgen was likewise limited to a single 7-hour deposition for Roche's dual-purpose expert/fact witnesses including Drs. Shouval, Fisher, Gaylis, and Flavell.

proceeding.[14] On January 8, 2007, Roche served a document request seeking all correspondence between Dr. Orkin and Amgen regarding any issue relevant to the current litigation:

> All correspondence between Amgen and Stuart Orkin concerning any relevant matter to the current litigation, Including human erythropoietin of any source, use of human erythropoietin as a therapeutic agent, mechanisms of action or clinical use of erythropoiesis stimulating agents other than erythropoietin, and communications regarding any of Amgen's competitors in the renal anemia marketplace.[15]

Before proceeding with Dr. Orkin's deposition, Roche requested and Amgen confirmed production of Dr. Orkin's documents.[16] Per the parties' agreement on dual-purpose witnesses, Roche's June 5 deposition of Dr. Orkin covered subject matter both of his expert report as well as topics beyond his report, including his involvement in a number of prior litigations involving Dr. Lin's EPO patents.[17]

**(2) Dr. Axel Ullrich**. Amgen produced Dr. Ullrich's prior testimony from the *Amgen v. Chugai* litigation to Roche on May 31, 2006.[18] On January 8, 2007, Roche likewise served a document request seeking all correspondence between Dr. Ullrich and Amgen:

> All correspondence between Amgen and Axel Ullrich concerning any relevant matter to the current litigation, including human erythropoietin of any source, use of human erythropoietin as a therapeutic agent, mechanisms of action or clinical use of erythropoiesis stimulating agents other than erythropoietin, and communications regarding any of Amgen's competitors in the renal anemia marketplace.[19]

In addition, on March 13, Amgen served a third party subpoena on Genentech, Dr. Ullrich's

---

[14] Fishman Decl., ¶ 4.

[15] Fishman Decl., Exh. 10 (1/8/07 Roche's Second Set of Req. for Produc.) at No. 239.

[16] Fishman Decl., Exh. 12 (5/31/07 H. Heckel letter to M. Moore); Fishman Decl., Exh. 13 (5/31/07 M. Moore letter to H. Heckel).

[17] Fishman Decl., Exh. 14 (6/5/07 Orkin Dep. Tr. at 45-46, 75-77).

[18] Fishman Decl., ¶ 5.

[19] Fishman Decl., Exh. 10 (1/8/07 Roche's Second Set of Req. for Produc.) at No. 236.

former employer and Roche's subsidiary, to obtain any and all of Dr. Ullrich's files regarding his work with EPO.[20] A copy of Amgen's subpoena and the responsive Ullrich documents were produced to Roche by Genentech during fact discovery in this case.[21]

Notwithstanding the fact that Roche has known about Dr. Ullrich and even received production of his documents during the fact discovery period, Roche never subpoenaed him for deposition – most likely because Dr. Ullrich's testimony regarding his failed efforts to produce recombinant EPO do not help Roche's obviousness story. Roche cannot foreclose Amgen's ability to call third party Dr. Ullrich to testify at trial simply because Roche, having decided that his testimony would be harmful, chose not to seek or take his deposition at any point during the discovery period.[22]

**(3) Dr. Joseph Eschbach**. Dr. Joseph Eschbach. Amgen produced Dr. Eschbach's prior testimony from the HMR/TKT litigation to Roche on June 1, 2006.[23] On March 13, Roche served a subpoena for documents and deposition on Dr. Eschbach.[24] In response, Dr. Eschbach made two separate productions of documents.[25] Because Dr. Eschbach was identified as a dual-purpose witness, per the parties' agreement, his deposition was deferred until the expert discovery period.

Shortly after Dr. Eschbach served his expert report and before any deposition had been scheduled, he was diagnosed with a grave illness.[26] Consequently, Amgen notified Roche that

---

[20] Fishman Decl., Exh. 15 (3/13/07 Amgen subpoena on Genentech).

[21] Fishman Decl., Exh. 16 (3/27/07 T. Ross letter to H. Williams).

[22] *See Joy v. Hay*, 2004 WL 719389 at *11 (N.D. Ill. 2004); *see also Wright v. Aargo Sec. Servs., Inc.*, 2001 WL 1035139 at *3 (S.D.N.Y. Sept. 7, 2001).

[23] Fishman Decl., ¶ 3.

[24] Fishman Decl., Exh. 6 (3/12/07 Roche subpoena on Joseph W. Eschbach).

[25] Fishman Decl., Exh. 7 (4/13/07 J. Phan letter to G. LaRosa); Fishman Decl., Exh. 8 (6/2/07 M. Moore letter to P. Fratangelo).

[26] Fishman Decl., Exh. 9 (5/21/07 R. Day letter to L. Ben-Ami).

Dr. Eschbach would not be available for deposition nor would he be able to testify at trial. Although, as a result of the illness Roche was not able to depose Dr. Eschbach, it was through no fault of Amgen nor was it due to a failure to timely disclose Dr. Eschbach, Therefore, it is inappropriate for Roche to suggest that Amgen be precluded from offering Dr. Eschbach's percipient testimony at trial.[27]

        **(4) Dr. Arnold Berk**. Roche's suggestion that Dr. Berk should have been disclosed earlier ignores the fact that he was disclosed to rebut issues put into dispute by Roche in its by expert reports served on April 6, 2007. Amgen produced to Roche documents regarding Dr. Berk in May of 2006, more than a year before his deposition in this case.[28] Notably, during Dr. Berk's deposition, counsel for Roche examined him extensively on his percipient knowledge, using as exhibits many of the documents produced by Amgen at the outset of this case.[29] Because Roche had a full and fair opportunity to depose Dr. Berk on both his personal knowledge and his expert report, any claim of prejudice is unfounded.

    Roche's motion to preclude testimony from Drs. Eschbach, Orkin, Ullrich, and Berk does not meet the threshold requirement of Rule 37(c) of untimely disclosure, let alone make any showing of prejudice or harm. Roche's motion should be denied because each of these witnesses was timely disclosed during the discovery period and because Roche had the opportunity to take discovery on these individuals during the discovery period.

---

[27] Roche now effectively stands in the shoes of TKT and HMR since in the prior *Amgen v. HMR/TKT* proceeding, TKT and HMR had the same motive as Roche now has to cross-examine Dr. Eschbach's prior testimony.

[28] Fishman Decl., ¶ 7.

[29] Fishman Decl., Exh. 24(6/7/07 Berk Dep. Tr. at 89-114, 129-134, 143-153, & 196-205).

### III. AMGEN HAS SUBSTANTIAL JUSTIFICATION FOR SUPPLEMENTING ITS RULE 26(A)(1) DISCLOSURES TO SUBSTITUTE DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON FOR WITNESSES WHO ARE UNAVAILABLE FOR TRIAL AND ROCHE WILL NOT BE HARMED BY THIS SUPPLEMENTATION.

Roche's motion also seeks to preclude percipient testimony from Dr. Friedman, Ms. Spaeth, and Mr. Fenton, identified in Amgen's Third Supplemental Disclosure served on July 10, 2007. Roche blithely ignores Amgen's reason for identifying these witnesses after the close of fact discovery: to serve as replacements for critical fact witnesses who, due to health problems, are no longer available to participate in a trial in this matter.

Roche also fails to mention that Amgen has offered to make each of these individuals available for deposition. In fact, Amgen has confirmed one of these witnesses – Dr. Friedman -- for deposition in both his expert and personal capacity on August 17.[30] With more than a month remaining before trial commences, Roche has adequate time to prepare for and take these depositions. Moreover, any inconvenience of taking the depositions of these witnesses is outweighed by the severe prejudice to Amgen if it were precluded from calling these witnesses in its case at trial.

Because Amgen has substantial justification for disclosing Dr. Friedman, Ms. Spaeth, and Mr. Fenton after the close of fact discovery and because Roche has a full and fair opportunity to depose each of these witnesses pre-trial, Roche's motion to preclude their testimony should be denied.

#### A.   AMGEN'S SUPPLEMENTAL DISCLOSURE OF DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON WAS PROPER UNDER RULE 26(E)(1).

Rule 26(e)(1) provides that a party is under a duty to supplement its Rule 26(a)

---

[30] Fishman Decl., Exh. 17 (7/18/07 D. Fishman letter to T. Fleming); Fishman Decl., Exh. 18 (7/24/07 D. Fishman letter to T. Fleming); Fishman Decl., Exh. 19 (7/25/07 D. Fishman letter to T. Fleming).

disclosures if the party learns that the information disclosed is incorrect or incomplete.[31]

This duty to supplement does not end with the close of fact discovery.[32] Here, Amgen learned only after the close of fact discovery that its Rule 26(a) disclosures were incorrect and incomplete and therefore it promptly supplemented its disclosures to provide Roche with additional, corrective information in the form of three replacement witnesses.

    **1.    Amgen Identified Ms. Spaeth and Dr. Friedman While Searching for a Replacement for Dr. Joseph Eschbach, Who Became Unavailable After the Close of Fact Discovery.**

Shortly after serving his expert report on May 11, counsel for Amgen became aware that Dr. Eschbach was gravely ill and would not be able to participate in the case in any capacity.[33] Amgen notified Roche of this fact and began to search for individuals who could address the many, varied topics on which Dr. Eschbach has personal knowledge and professional expertise,[34] keeping Roche apprised of the progress.[35] On July 5, after much effort, Amgen identified to Roche Drs. Brugnara and Friedman and Ms. Spaeth to serve as replacements for Dr. Eschbach in both his expert and percipient capacities.[36] A few days later, Amgen added Dr. Friedman and Ms. Spaeth to its Third Supplemental Rule 26(a) Disclosures.[37]

Roche does not dispute these facts. Nor does Roche dispute that Amgen learned of Dr. Friedman and Ms. Spaeth only after the close of fact discovery. Instead, Roche simply asserts that the "belated disclosure of Dr. Friedman and Ms. Spaeth is not excused by the unfortunate

---

[31] FED.R.CIV.P. 26(e)(1).

[32] *See Klonoski v. Mahlab*, 156 F.3d 255, 268 (1st Cir. 1998).

[33] Fishman Decl., Exh. 9 (5/21/07 R. Day letter to L. Ben-Ami)

[34] As the Court may recall from *Amgen v. HMR/TKT*, Dr. Eschbach had knowledge and personal experience with issues regarding nephrology, ferrokinetics, and the clinical development of recombinant EPO – both in an expert and a fact capacity. This unusual combination has made it very difficult to find individuals with the same or similar expertise or personal knowledge.

[35] Fishman Decl., Exh. 20 (5/25/07 R. Day letter to L. Ben-Ami); Fishman Decl., Exh. 21 (7/3/07 D. Fishman letter to T. Fleming).

[36] Fishman Decl., Exh. 22 (7/5/07 D. Madrid letter to T. Fleming).

unavailability of Dr. Eschbach as an expert."[38] Roche appears to argue that because Dr. Eschbach was an expert, Amgen may not identify fact witnesses in his place. This argument is a red herring and ignores the fact that Dr. Eschbach was timely disclosed as a percipient witness with relevant knowledge, as Roche acknowledged in its Rule 26 initial disclosures.

Because Dr. Eschbach has relevant knowledge and became gravely ill after the close of fact discovery, Amgen supplemented its own Rule 26(a) disclosures at an appropriate interval to provide this corrective information to Roche. Roche has no basis to seek to preclude Dr. Friedman or Ms. Spaeth since Amgen did not "fail to disclose information required by Rule 26(a) or 26(e)(1)" — a threshold requirement for preclusion under Rule 37(c)(1).

### 2. Amgen Identified Mr. Fenton to Replace Mr. Rathmann, Who Who Became Unavailable After the Close of Fact Discovery.

Roche asserts that Amgen cannot excuse the disclosure of Mr. Fenton after the close of fact discovery because he is an Amgen employee, so Amgen surely must have known of him.[39] But this ignores the fact that Amgen had no need or intention to call Mr. Fenton until it learned that Mr. Rathmann would not be available to testify at trial. Amgen's counsel learned only after the close of fact discovery that Mr. Rathmann would not be able testify at trial due to his medical condition.[40] Amgen therefore identified Mr. Fenton as a replacement for Mr. Rathmann since Mr. Fenton, like Mr. Rathmann, is one of Amgen's earliest employees and is also able to testify to issues related to non-obviousness including the organization and management of the EPO project from its inception, the development of the EPO project and product teams, and the growth and commercial success of the product and the company over time.

---

[37] Fishman Decl., Exh. 23 (7/10/07 Amgen's 3rd Supplemental Disclosures).

[38] Roche's Mot. at 7.

[39] Roche's Mot. at 6-7.

[40] Decl. of Lloyd R. Day in Supp. of Amgen's Opp'n to Roche's Mot. to Preclude Test. from Amgen's Belatedly Disclosed Fact Witnesses at ¶ 3.

Roche does not dispute that Mr. Rathmann has knowledge relevant to the issues in this case, nor could it since he is listed on Roche's initial disclosures.[41] Roche also does not suggest that Amgen delayed in identifying Mr. Fenton as a substitute witness. Instead, Roche argues that a party can never justify its failure to disclose its own employee and cites *Wright v. Aargo Sec. Svcs., Inc.*[42] as support for this proposition.

Roche's reliance on *Wright v. Aargo Services* is misplaced. In *Wright*, notwithstanding the fact that five witnesses in the employ of the defendants were not disclosed until submission of the pre-trial brief, nine and a half months after the close of fact discovery, the Court permitted the defendant to call those five witnesses (its own employees) at trial. The Court there pointed out that if the plaintiff considered the testimony of the five belatedly identified witnesses to be potentially probative, it could have asked for discovery to be re-opened, but it failed to do so. The Court noted, "It is difficult to accept plaintiff's characterization of an "ambush at trial" when plaintiff was aware of the enemy troops in the hills five months before the relief column reached the pass."[43]

As discussed below, Mr. Fenton was identified as a replacement witness on Amgen's Third Supplemental Rule 26(a) Disclosures on July 10 – nearly two months before trial. Yet, Roche has failed to request a deposition, despite Amgen's repeated offers to make him available. Against that background, Roche's claim of prejudice or surprise must be viewed with skepticism.

    **B.**    **AMGEN'S SUPPLEMENTAL DISCLOSURE OF DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON AFTER THE CLOSE OF FACT DISCOVERY WAS SUBSTANTIALLY JUSTIFIED UNDER RULE 37(C)(1).**

Even if the Court were to find that Amgen's supplemental disclosures were untimely,

---

[41] Docket No. 341, Exh. A (11/6/06 Defs' Initial Disclosures). Notably, despite the fact that Mr. Rathmann was listed in Amgen's Initial Disclosures, Roche never sought his deposition, nor the deposition of many other of Amgen's designees.

[42] *Wright v. Aargo Sec. Svcs., Inc.*, 2001 WL 1035139, at *3 (S.D.N.Y. Sept. 7, 2001).

[43] *Id..*

Rule 37(c)(1) affords preclusion only where there is no substantial justification and the failure to disclose is not harmless.[44] Both because Amgen had substantial justification for adding the substitute witnesses and because Roche will not be prejudiced or harmed by the addition, Roche's motion to preclude the testimony of Dr. Friedman, Ms. Spaeth, and Mr. Fenton should be denied.

Amgen added Dr. Friedman and Ms. Spaeth to its supplemental disclosures after the close of fact discovery both to replace Dr. Eschbach and because Amgen did not identify these witnesses until it searched for a replacement for Dr. Eschbach. Amgen added Mr. Fenton to its supplemental disclosures because it learned that Mr. Rathmann would be unavailable to testify at trial only after the close of fact discovery.

Roche cites five cases for the unremarkable proposition that Courts disapprove of disclosing witnesses after the close of fact discovery. Tellingly, *none* of Roche's cases address the situation where a party offers a justification for a late-disclosed witness, let alone where the late-disclosed witness is identified to substitute or replace a witness who has become unavailable to testify at trial.[45]

---

[44] FED.R.CIV.PRO. 37 (c)(1) provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) … is not, unless such failure is harmless, permitted to use as evidence at at rial, at a hearing, or on a motion any witness or information not so disclosed."

[45] Each of the cases cited by Roche is distinguishable. In *Brooks v. Stringer*, 2007 WL 43819, at * 2 n.5 (S.D. Miss. Jan. 5, 2007) the plaintiff in *Brooks* offered *no* justification for the belated disclosures. In *Amadasu v. Mercy Fransciscan Hosp.*, 2007 WL 1412994 (S.D. Ohio May 10, 2007), the plaintiff belatedly filed supplemental expert disclosures identifying the same expert witnesses identified by the defendants without justification. Likewise, *Bronk v. Ineichen*, 54 F.3d 425, 132 (7th Cir. 1995) affirmed a district court's exclusion of plaintiff's "rebuttal witness" who was not included in pretrial disclosures, where the witness's relevance should have been obvious to plaintiffs and plaintiff offered no justification for the failure to disclose. Finally, in *Carter v. Finley*, 2003 WL 22717772 (N.D. Ill. Nov. 17, 2003) the court affirmed a magistrate judge's exclusion of belatedly disclosed expert witnesses, reviewing under a "clearly erroneous or contrary to law" standard, where it was apparent that defendant could have readily complied with the disclosure deadlines and no justification for belated disclosure was offered.

In fact, the *Grajales-Romero v. American Airlines*[46] case cited by Roche suggests that the unavailability of a witness may excuse the belated identification of a replacement witness. In *Grajales-Romero,* American Airlines attempted in its pretrial order to substitute two previously undisclosed witnesses (Machado and Quigley) for two of its previously disclosed witnesses (del Valle and Voltaggio). In affirming the district court's preclusion order, the First Circuit noted: "del Valle and Voltaggio, regardless of any change in position, were currently employees of American, subject to its control and available to testify. On these facts, we find no abuse of discretion in the court's refusal to allow unannounced witnesses to testify."[47] The Court's reasoning suggests that had either del Valle or Voltaggio no longer been available to testify at trial, the Court may have come to a different result. Where, as here, the substitute witness is disclosed to replace a witness who is no longer available to testify at trial, it is difficult to imagine an event that would provide more justification for a supplemental disclosure after the close of fact discovery.

### C. AMGEN'S SUPPLEMENTAL DISCLOSURE OF DR. FRIEDMAN, MS. SPAETH, AND MR. FENTON AFTER THE CLOSE OF FACT DISCOVERY WILL NOT HARM ROCHE.

Finally, Roche's motion to preclude the testimony of Dr. Friedman, Ms. Spaeth, and Mr. Fenton should fail because Roche cannot demonstrate any harm. Amgen disclosed these witnesses on July 10 – nearly two months before a trial in this matter – and has agreed to make each of these witnesses available for deposition.[48] In fact, Amgen has confirmed Dr. Friedman for deposition on August 17, 2007.[49] Despite Amgen's repeated offers, in the nearly-three weeks since Amgen identified Ms. Spaeth and Mr. Fenton, Roche has not requested documents for

---

[46] *Grajales-Romero v. Am. Airlines, Inc.*, 194 F.3d 288, 297 (1st Cir. 1999).

[47] *Id*.

[48] Fishman Decl., Exh. 18 (7/24/07 D. Fishman letter to T. Fleming).

[49] Fishman Decl., Exh. 17 (7/18/07 D. Fishman letter to T. Fleming); Fishman Decl., Exh. 19 (7/25/07 D. Fishman letter to T. Fleming).

either individual nor has Roche contacted Amgen to depose either individual.

Roche cannot claim prejudice or harm where it has failed to proceed with the depositions of these individuals. Courts have consistently held that a party cannot claim prejudice or surprise where it had the chance to depose the undisclosed witness, but declined to do so.[50]

Moreover, any inconvenience to Roche in taking these depositions is surely outweighed by the prejudice to Amgen in precluding their testimony. As discussed above, the testimony of Ms. Spaeth and Dr. Friedman are critical to rebutting Roche's arguments that there existed therapeutically effective treatments for the anemia of chronic renal failure in the prior art and that Dr. Lin's inventions-in-suit are obvious. Likewise, the testimony of Mr. Fenton is necessary to rebut Roche's argument that Dr. Lin was not the inventor of the patents-in-suit, that the production of recombinant EPO was obvious, and that Amgen has illegally or unethically extended its patent protection on Dr. Lin's inventions. Because each of these witnesses offers testimony directly relevant to rebutting issues put in dispute by Roche, Amgen will be severely prejudiced if Roche is permitted to preclude their testimony on the pretext of prejudice.

## IV.   CONCLUSION.

Amgen's disclosures of Drs. Eschbach, Orkin, UIlrich, and Berk were timely and Roche had full and fair opportunity to take discovery of those witnesses, Rule 37(c)(1) is simply inapplicable and Roche's motion should be denied. In addition, Amgen has substantial justification for disclosing Dr. Friedman, Ms. Spaeth, and Mr. Fenton after the close of fact discovery and, because Roche can remediate any potential harm by deposing the three newly-disclosed witnesses, Roche's motion to preclude their testimony should be denied.

---

[50] *See Joy v. Hay*, 2004 WL 719389, at *11 (N.D. Ill. Mar. 31, 2004); *see also Wright v. Aargo Sec. Servs., Inc.*, 2001 WL 1035139 *3 (S.D.N.Y. Sept. 7, 2001).

July 30, 2007                                             Respectfully Submitted,
                                                          AMGEN INC.,
                                                          By its attorneys,



                                                             /s/ Michael R. Gottfried
Of Counsel:                                               D. DENNIS ALLEGRETTI (BBO#545511)
                                                          MICHAEL R. GOTTFRIED (BBO#542156)
STUART L. WATT                                            PATRICIA R. RICH (BBO#640578)
WENDY A. WHITEFORD                                        DUANE MORRIS LLP
MONIQUE L. CORDRAY                                        470 Atlantic Avenue, Suite 500
DARRELL G. DOTSON                                         Boston, MA  02210
KIMBERLIN L. MORLEY                                       Telephone:    (857) 488-4200
ERICA S. OLSON                                            Facsimile:    (857) 488-4201
AMGEN INC.
One Amgen Center Drive                                    LLOYD R. DAY, JR. (*pro hac vice*)
Thousand Oaks, CA   91320-1789                            DAY CASEBEER
(805) 447-5000                                            MADRID & BATCHELDER LLP
                                                          20300 Stevens Creek Boulevard, Suite 400
                                                          Cupertino, CA  95014
                                                          Telephone:    (408) 873-0110
                                                          Facsimile:    (408) 873-0220

                                                          WILLIAM GAEDE III (*pro hac vice*)
                                                          McDERMOTT WILL & EMERY
                                                          3150 Porter Drive
                                                          Palo Alto, CA 94304
                                                          Telephone:    (650) 813-5000
                                                          Facsimile:    (650) 813-5100

                                                          KEVIN M. FLOWERS (*pro hac vice*)
                                                          MARSHALL, GERSTEIN & BORUN LLP
                                                          233 South Wacker Drive
                                                          6300 Sears Tower
                                                          Chicago IL 60606
                                                          Telephone:    (312) 474-6300
                                                          Facsimile:    (312) 474-0448

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as on-registered participants.

/s/ Michael R. Gottfried<br>
Michael R. Gottfried

737857_3