UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**AMGEN, INC.**

       **Plaintiff,**

**v.**                            **CIVIL ACTION No.: 05-CV-12237-WGY**

**F. HOFFMANN-LA ROCHE LTD,**
**ROCHE DIAGNOSTICS GmbH, and**
**HOFFMANN-LA ROCHE INC.,**

       **Defendants.**

**NON-PARTY DAVITA'S THIRD UNOPPOSED MOTION
FOR LEAVE TO FILE UNDER SEAL DOCUMENTS CONTAINING NON-PARTY
DAVITA'S TRADE SECRETS THAT WERE SUBMITTED BY ROCHE,
OR IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL**

Non-Party DaVita Inc. ("DaVita"), pursuant to Federal Rule of Civil Procedure 26(c)(7), Local Rule 7.2, and the protective order in this case, submits this Memorandum and accompanying Declaration in support of its Third Unopposed Motion for Leave to File Under Seal Documents Containing Non-Party DaVita's Trade Secrets That Were Submitted by Roche, or in the Alternative, For a Stay Pending Appeal.

The confidential information DaVita seeks to have protected from public disclosure includes specific proposed rebate terms exchanged in the negotiation of a prospective supply agreement between DaVita and Amgen USA ("Amgen") for Epogen®. Specifically, DaVita seeks to have filed under seal the information contained in footnote 224 ("Footnote 224") of Roche Exhibit 85[1], a report prepared by Roche's Expert Einer Elhauge (the "Elhauge Report").

---

[1] The exhibit numbers referenced herein are derived from the Declaration of David L. Cousineau in Support of Roche's Opposition to Amgen's Motion for Summary Judgment on Roche's Antitrust and State Law Counterclaims (Docket #589), filed by Roche on June 29, 2007.

DaVita also seeks the sealing of Roche Exhibit 209, which is a "term sheet" created by Amgen that reflects recent price negotiations between Amgen and DaVita ("Exhibit 209"). Alternatively, DaVita asks this court to seal Footnote 224 of the Elhauge Report and Roche Exhibit 209 until after resolution of Amgen's patent claims. If the Court denies both of these requests, DaVita asks that this Court stay its order pending an appeal.

As set forth in the accompanying Declaration of Dennis Kogod, DaVita's Group President for the Western Operating Group (the "Kogod Declaration"), DaVita considers the information contained in the Elhauge Report and any information reflecting prices offered to DaVita by Amgen, such as the information in Exhibit 209, extremely confidential and has protected it from public disclosure as a trade secret. The continued secrecy of this information is critical and disclosure in the public record would unfairly cause financial and competitive damage to DaVita, a non-party. Under these circumstances, the Court is empowered by the federal rules and Massachusetts law to limit disclosure of the information. The Court should exercise its power to do so by ordering that the designated testimony be filed under seal.

**I.      Background**

As stated in DaVita's previous motions to file under seal (Docket Nos. 659 and 763), DaVita is not a party to this action.

DaVita operates more than 1,300 outpatient dialysis clinics in the U.S., and also provides acute inpatient dialysis services in approximately 770 hospitals. As part of its business, DaVita is a customer of Amgen and purchases substantial volumes of Epogen® from Amgen for use in treating patients. Amgen is the sole manufacturer of Epogen®. DaVita's purchases of Epogen® total several hundred million dollars annually, and the terms, including price, discount and rebate terms, under which Amgen supplies DaVita with Epogen® significantly bear on DaVita's operating performance.

The terms under which DaVita purchases Epogen® are governed by the Epogen® Freestanding Dialysis Center Agreement that was executed by the two entities on February 6, 2006 (the "DaVita Epogen Agreement"). The DaVita Epogen Agreement sets forth the price at which DaVita purchases Epogen® from Amgen and reflects certain discounts and rebates available to DaVita. The terms of the DaVita Epogen Agreement are subject to a strict confidentiality agreement between Amgen and DaVita, and these terms are redacted from public filings. (Kogod Declaration at ¶ 10.)

Since August 2006, Amgen and DaVita have participated in protracted discussions regarding a prospective new supply agreement for Epogen®. (*Id.* at ¶ 3.) The substance of these negotiations is not publicly disseminated and, indeed, the substance of the negotiations is known only by a small number of upper-level DaVita employees. (*Id.* at ¶ 10.)

## II.    The Information Sought to Be Protected

Information contained in the Elhauge Report and Exhibit 209 is highly confidential. The information contained in Footnote 224 of the Elhauge Report reveals key proposed terms of confidential negotiations between DaVita and Amgen regarding a new Epogen® supply agreement, including the potential percentage of total discounts and rebate opportunities under the proposed contract. Exhibit 209 is a "term sheet" that sets forth a detailed pricing proposal presented by Amgen to DaVita in the course of the ongoing negotiations.

Epogen® is an essential component of dialysis treatment and the cost of acquiring it is central to the profitability and competitiveness of DaVita. Accordingly, disclosure of the negotiations of the price at which Amgen will supply DaVita is among the most sensitive commercial information for DaVita. Public disclosure of the negotiations would put DaVita at a severe strategic disadvantage in its attempts to compete in the dialysis market.

**III.    The Court Must Weigh the Public's Right to the Information Against the Harm to DaVita.**

Although there is a presumptive common law and First Amendment right of public access to material filed in connection with judicial proceedings, the right of access to such judicial records is "not absolute." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

Under the Rule 26(c)(7) of the Federal Rules of Civil Procedure, a court may, upon motion of a person from whom discovery is sought and for good cause shown, make any order required to protect the movant from hardship, including ordering that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed. R. Civ. P. 26(c)(7).  The protections afforded by Rule 26 are not limited to protective orders governing pre-trial discovery; rather, they have been applied to cases involving exhibits submitted in support of or in opposition to motions for summary judgment. *See In re Gabapentin Patent Lit.*, 312 F. Supp. 2d 653, 664, 666 (D.N.J. 2004); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F. Supp. 866, 901 (E.D. Pa. 1981).

In determining whether to issue a protective order, a court should balance the harm to a movant against the relevance of and necessity of the information.  *Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 264 (D. Mass. 1991).  Here, the harm to DaVita clearly outweighs the benefits of public access.

**A.    The Information Sought to Be Disclosed Is a Trade Secret That Is Entitled to Protection.**

A well-settled exception to the public's right of access is the "protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm." *In re Gabapentin Patent Lit.*, 312 F. Supp. at 664.  Indeed, Rule

4

26(c)(7) explicitly names trade secrets as one type of information the disclosure of which can be limited by a protective order.

The information contained in the Elhauge Report and Exhibit 209 constitute trade secrets under Massachusetts law, which defines a "trade secret" as:

> anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula invention or improvement.

Mass. Gen. Laws Ch. 255, § 30(4). A trade secret includes "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 850 (1st Cir. 1985) (citing *E. Marble Prod. Corp. v. Roman Marble, Inc.*, 372 Mass. 835, 364 N.E.2d 799, 801 (1977)). The information at issue here is a "compilation of information" that gives DaVita an advantage over its competitors who do not have access to the information. (*See* Kogod Declaration at ¶¶ 9-10.) If DaVita's competitors become privy to this information, then DaVita would lose this advantage and suffer irreparable harm. (*Id.* at ¶¶ 11-12.)

Applying a substantially similar statutory definition, at least one federal court has recognized that information concerning the existence, status and substance of business negotiations can constitute a trade secret. *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1147 (N.D. Cal. 2003) (applying California definition of a trade secret and denying motion to dismiss counterclaim for misappropriation of trade secrets). Numerous other courts have granted trade secret status to information similar to that disclosed in the Elhauge Report and Exhibit 209. *See, e.g., In re Gabapentin Patent Lit.*, 312 F. Supp. 2d at 664, 666 (upholding magistrate's decision to grant trade secret protection to, among other things, the identity of raw

5

material suppliers on basis that if competitor knew a supplier's identity, it could outbid pharmaceutical manufacturer); *United Rug Auctioneers, Inc. v. Araslen*, No. CA033-347, 2003 WL 21527545, at * 6 (Mass. Super. Ct. Apr. 11, 2003) (finding pricing information and finances confidential and trade secrets); *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3rd Cir. 1985) (noting that internal information related to pricing and profit margin "is not information that is readily obtainable by anyone in the industry" and thus "qualifies for trade secret protection"); *Corporate Relocation, Inc. v. Martin*, No. 3:06-CV-232-L, 2006 WL 4101944, at *15 (N.D. Tex. Sept. 12, 2006) (enjoining the disclosure of pricing information on trade secret grounds).

### B. DaVita Has Taken Steps to Preserve the Confidentiality of the Information, and It Remains Confidential.

Moreover, the value of a trade secret is derived from its secrecy. *CVD, Inc.*, 769 F.2d at 850. A party seeking to protect certain information must be able to demonstrate that reasonable steps have been taken to keep the information secret. *Trent Partners & Assocs. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 111 (D. Mass. 1999). Factors to be considered in determining whether given information is a trade secret include: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; and (4) the value of the information to the owner and to his competitors. *SI Handling Sys.*, 753 F.2d at 1256.

Here, DaVita limits disclosure, even internally, of the nature and substance of its negotiations with Amgen with respect to any future supply agreements. (*See* Kogod Declaration at ¶ 10.) DaVita has taken many measures to keep this information out of the public domain and keep the information confidential. (*Id*.) The confidential information in the Elhauge Report was

obtained from a document produced by DaVita, and a transcript of a deposition given by Dennis Kogod. Prior to testifying about this information, Mr. Kogod sought and obtained assurances that the testimony would be designated as "Highly Confidential," which limited its disclosure to outside counsel for the parties to this matter. (*Id.* at ¶ 8.) Likewise, the documents produce by DaVita also were designated "Highly Confidential. (*Id.*) These protective measures demonstrate that DaVita treats the information as one of its trade secrets.

  **C.**  **DaVita Would Be Irreparably Harmed by the Disclosure of the Information.**

If the information at issue was released into the public domain, DaVita expects it would be used by its competitors to unfairly gain an advantage by informing their negotiation positions with Amgen and instructing the formulation of pricing and other competitive strategies. The Court is fully empowered to keep such information under seal, where "court files might . . . become a vehicle for improper purposes." *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410; *see also In re Gabapentin Patent Litig.,* 312 F. Supp. 2d at 666.

The harm to DaVita in these circumstances is arguably greater than that evidenced in any of the cases cites above. Here, DaVita relies completely on Amgen for its multi-million dollar supply of Epogen®, a product without which it simply cannot operate and provide dialysis services to thousands of patients. DaVita's ability to negotiate rebates and discounts with Amgen is central to its continued economic viability in the highly competitive dialysis services industry. Allowing information regarding the terms of DaVita's negotiations for a prospective supply agreement to become available to DaVita's competitors will result in irreparable harm to a non-party. This is precisely the type of harm that the Rule was designed to prevent.

### D. The Court Should Consider DaVita's Reliance on Prior Assurances of Confidentiality.

In determining whether to maintain the confidentiality of documents produced pursuant to a protective order, a court should consider "the reliance by the original parties on the confidentiality order." *Id.* Here, as discussed above, DaVita produced documents and witnesses for deposition based on assurances that the information disclosed would be kept confidential and disseminated only to outside counsel representing the parties in this matter and that DaVita would have a right to move to seal the information. (Kogod Declaration at ¶ 8.) The information disclosed in the Elhauge Report is taken from testimony and documents produced in reliance on these assurances. This Court can and should take into consideration DaVita's significant reliance on confidentiality in making its disclosures. This factor weighs in favor of granting DaVita's motion.

### E. The Public Will Not Be Harmed, and In Fact Will Benefit, From the Court's Protection of the Information.

As explained above, the irreparable harm to an innocent non-party such as DaVita must be balanced against the public's interest in the specific information, which here is weak by comparison. The Court may also consider secondary effects of its ruling on future participants in litigation and on the public's interest in protecting trade secrets, which protection encourages innovation. Although the public may have some interest in finding out the discounts obtained by DaVita, DaVita's contract with Amgen is far from the central issue in this case and the disclosure may have important secondary effects. Should the Court deny the Motion, it is very likely that the speech and activities of future deponents and subpoena recipients will be "chilled," out of fear that sensitive information disclosed in pretrial discovery will find its way into the public record.

Thus, there are important public interests that favor *nondisclosure*. As explained by the Court in *Zenith*,

> there can be no doubt that society in general is interested in the protection of trade secrets and other valuable commercial information. That interest is recognized, for example in Rule 26(c)(7)…and in the common law of business torts. These policies recognize a coincidence of private and public interests. [In addition,] orderly management of complex litigation is in the public interest. Enormous cases like this one cannot be fairly and expeditiously adjudicated unless parties are assured that their legitimate interests will be protected. Often those assurances cannot be given unless parties are permitted to rely on guarantees of confidentiality.

*Zenith Radio Corp.,* 529 F. Supp. at 905. By granting DaVita's limited and judicious request for protection of genuine trade secrets, the Court can avoid doing irreparable harm to DaVita with negligible, and possibly even benign, effects on the public interest.

**IV.     In the Alternative, This Court Should Seal the Exhibits Until They Become Relevant to the Proceedings.**

If this Court denies DaVita's request to file the Elhauge Report and Exhibit 209 under seal, this Court should order that those documents be sealed until Amgen's patent infringement claims are resolved. The presumptive common law and First Amendment right of public access to material filed in connection with judicial proceedings only extends to materials that a court relies on to determine litigants' substantive rights. *F.T.C.,* 830 F.2d at 408.

This Court has decided to try Amgen's patent claims prior to hearing Roche's antitrust claims. Footnote 224 of the Elhauge Report and Exhibit 209 are only relevant to Roche's antitrust claim. If the Court resolves Amgen's patent claims in favor of Roche, it may be unnecessary to address Roche's antitrust claim. Under those circumstances, there will be no need for the Court to rely on Footnote 224 and Exhibit 209 to "determine the litigants' substantive rights." *Id.* Moreover, if the Court never rules on Roche's antitrust claims, the Rule 26(c)(7) balancing test described above will tilt even more in favor of DaVita. For these reasons,

9

if the Court denies DaVita's motion for these documents to be filed under seal for the duration of the case, DaVita respectfully requests that this Court seal the documents until such time as the patent claim is resolved.

### V. If the Court Denies DaVita's Motion to Seal the Exhibits, the Court Should Grant DaVita a Stay Pending Appeal.

Because disclosure of the confidential information in Footnote 222 and Exhibit 209 would irreparably harm DaVita, DaVita intends to file an appeal if this Court denies DaVita's requests to file the documents under seal. Consequently, as alternative relief, DaVita asks the Court to stay any order denying this motion pending review by the United States Court of Appeals for the Federal Circuit.[2]

In determining whether to grant a stay pending appeal, a court should consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 149 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Here, these factors weigh in favor of granting DaVita's request for a stay.

#### A. DaVita Has Presented a Substantial Case on the Merits.

With regard to the first prong of the *Hilton* test, a moving party need not show an "absolute probability of success" on its claim. *Providence Journal Co. v. Federal Bureau of Investigation,* 595 F.2d 889, 890 (1st Cir. 1979). A movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities

---

[2] As a third party that does not have control over the documents sought to be disclosed, DaVita can seek immediate appellate review of the Court's interlocutory order under the collateral order doctrine or the *Perlman* rule. *See Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 397-400 (1st Cir. 2005).

weigh heavily in favor of granting the stay. *Canterbury Liquors,* 999 F. Supp. at 149. Here, as set forth in the Motion and Memorandum of Law, DaVita has a substantial case in favor of allowing its proprietary and highly sensitive trade secret to remain out of the view of its competitors.

> **B.     DaVita Will Be Irreparably Injured Absent a Stay, and Others Will Only Be Marginally Affected.**

In determining whether to grant a stay, courts give paramount consideration to whether the applicant will be irreparably injured by a failure to grant the stay and whether other parties will suffer any harm. *See Canterbury Liquors,* 999 F. Supp. at 150; *Providence Journal*, 595 F.2d at 890. Typically, where a court finds the risk to the movant to be outweighed by the harm to other parties and the public, the stay will be granted.

*Providence Journal* is particularly relevant and instructive here. There, the First Circuit considered a request for a stay pending the appellate review of the District Court's order requiring the disclosure of certain government documents to the plaintiff newspaper.[3] In granting the stay, the Court noted that:

> [f]ailure to grant a stay will entirely destroy appellants' rights to secure meaningful review. On the other hand, the granting of a stay will be detrimental to the Journal (and to the public's interest in disclosure) only to the extent that it postpones the moment of disclosure assuming the Journal prevails by whatever period of time may be required for us to hear and decide the appeals. Weighing this latter hardship against the *total and immediate divestiture of appellants' rights* to have effective review in this court, we find the balance of hardship to favor the issuance of a stay.

*Providence Journal Co.*, 595 F.2d at 890 (emphasis added).

The circumstances presented here are analogous to those in *Providence Journal* and the result should be the same. Here, as explained herein and in the Memorandum of Law, the receipt

---

[3] Only a temporary stay had been granted by the District Court.

11

of pricing information and information regarding DaVita's ongoing negotiations with Amgen by DaVita's competitors will seriously undermine DaVita's ability to perform in the highly competitive dialysis industry. On the other hand, neither Roche nor Amgen has opposed DaVita's motion to keep the documents under seal. With respect to the public's interest in viewing the documents, the only harm arising from the imposition of a stay would be, as explained in *Providence Journal*, a "postpone[ment] of the moment of disclosure," assuming the Court's Order is affirmed by the Appellate Court. Given these circumstances, where a denial of the stay request would "utterly destroy the status quo" and irreparably harm DaVita, the Court should grant the request.

## CONCLUSION

For the foregoing reasons, DaVita requests that the Court grant its motion to file Footnote 224 of the Elhauge Report and Exhibit 209 under seal or, in the alternative, grant its motion to file those exhibits under seal until such time as Amgen's patent claims are resolved. If the court denies this relief, DaVita asks that the Court stay enforcement of the ensuing Order pending appeal.

Dated: July 30, 2007                          **DAVITA INC.**

                                  By:   /s/ Christopher J. Petrini
                                          Christopher J. Petrini (BBO# 556848)
                                          Peter L. Mello (BBO# 659680)
                                          Petrini & Associates, P.C.
                                          The Meadows
                                          161 Worchester Road, Suite 304
                                          Framingham, MA 01701
                                          Telephone: (508) 665-4310
                                          Facsimile: (508) 665-4313

                                          Christian T. Kemnitz
                                          Michelle McGuinness
                                          Katten Muchin Rosenman LLP
                                          525 W. Monroe
                                          Chicago, IL 60661
                                          Telephone: (312) 902-5200
                                          Facsimile: (312) 902-1061

                                          *Counsel for Non-Party DaVita Inc.*

50438577v5

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                /s/ Peter L. Mello
                Peter L. Mello