Exhibit 4

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 05-12237 WGY |
| | ) |
| F. HOFFMANN-LAROCHE | ) |
| LTD., a Swiss Company, ROCHE | ) |
| DIAGNOSTICS GmbH, a German | ) |
| Company and HOFFMANN LAROCHE | ) |
| INC., a New Jersey Corporation, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF AMGEN INC.'S RESPONSES TO DEFENDANT'S
## THIRD SET OF INTERROGATORIES TO PLAINTIFF (NOS. 19-40)

Pursuant to Fed. R. Civ. P. 26 and 33, Plaintiff/Counter Defendant Amgen Inc.

("Amgen") hereby responds to "Defendants' Third Set of Interrogatories (Nos. 19-40)."

### PRELIMINARY STATEMENT

1.     Amgen's responses to Defendants' Third Set of Interrogatories are made to the

best of Amgen's present knowledge, information and belief.  Amgen's responses are subject to

amendment and supplementation should future investigation and discovery indicate that

amendment or supplementation is necessary.  Amgen undertakes no obligation, however, to

supplement or amend these responses other than as required by the Federal Rules of Civil

Procedure or the Local Rules of the United States District Court for the District of

Massachusetts.

2.     Amgen's responses to Defendants' Third Set of Interrogatories are made

according to information currently in Amgen's possession, custody and control.

1

Dockets.Justia.com

statement and confuses what was known before Lin's work with what was known after Lin's inventions. *After Lin's pioneering work,* the nature, characteristics and activity of recombinant EPO was readily available and known. Before Lin's work, however, these were unknown, including whether mammalian host cells would produce an EPO product having the desired in vivo activity. Nowhere did Amgen state that Dr. Lin's in vivo biologically active erythropoietin product and process inventions were "merely an obvious and inherent result of expressing the DNA sequence encoding human erythropoietin in a host cell." In fact, the above-quoted statement does not pertain to the patents-in-suit. As explained, the above-quoted statement pertains to the state of the art after Lin's inventions. Roche alleges that "Amgen also failed to disclose inconsistent arguments" made during numerous other proceedings in Europe (Roche Resp. to Interrog. No. 26 at n.*). Because Roche, however, has repeatedly failed and refused to plead such allegations with particularity, it has precluded Amgen from being able to respond to this unfounded allegation.

Roche alleges that Amgen "fail[ed] to disclose arguments that were raised during the opposition proceedings to its Kirin-Amgen European Patent Application No. 0 148 605 regarding the high materiality of errors in the data corresponding to Example 10 of its US patent application." (Roche Resp. to Interrog. No. 26 at 10). But the purported errors in Example 10 are immaterial. In any event, they were fully disclosed to the PTO during the *Fritsch v. Lin* Interference No. 102,334 proceeding and subsequently reviewed by the Examiner that reviewed the applications that issued as the patents-in-suit. (AM-ITC 00945754) (*See also Fritsch v. Lin,* 21 U.S.P.Q. 2d 1739). The prosecution history record specifically reflects that the PTO was informed of, and aware of, the apparent errors in the data corresponding to that disclosed in Example 10. (AM-ITC 00941744; AM-ITC 00902526; AM-ITC 00941412; AM-ITC 00941237-40; AM-ITC 00950983-91). In its claim construction brief, Roche itself cites to the

*Lin v. Fritsch* interference decision as establishing that the data was in error. *See* Def.'s Op.

Mem. In Supp. Of Proposed Cl. Constr. Br. at 12 (filed 3/5/2007).

Roche alleges that Amgen misstated the law by asserting that "it was inappropriate for

the Examiner to consider prior art (the Yokota 4,695,542 patent) in conjunction with the claims

of the '008 patent to show that the pending claims were obvious." (Roche Resp. to Interrog. No.

26 at 10). Roche, however, mischaracterizes this statement. As the following statement of the

Examiner makes plain, Amgen was responding to an Office Action in which the Examiner

incorrectly used the prior art — the general method disclosed in Yokota — as the starting point

of his obviousness-type double patenting analysis rather than the proper starting point required

by the law — in this case, the claims of the Lin '008 patent:

> Although conflicting claims are not identical, they are not patentably distinct from each
> other because it would have been obvious to one of ordinary skill in the art *to modify the*
> *method of Yokota et al.* by substituting the instant erythropoietin encoding DNA for the
> DNA encoding GM-CSF. (AM-ITC 00953685) (emphasis added).

Thus, as the following statement makes plain, Amgen was correct in pointing out the Examiner's

failure to properly apply the obviousness-type double patenting test:

> Applicant respectfully submits that the Yokota et al. reference is not relevant to
> obviousness-type double patenting which, as noted in the decisional authorities,
> must be determined through consideration of the claims of the pending
> application and issued patent – and not with reference to the prior art. (AM-ITC
> 00953700).

In any event, legal argument is not "material information" that can form a proper basis

for an inequitable conduct charge. *Environ Prods., Inc. v. Total Containment, Inc.*, 951 F. Supp.

57, 61 (E.D. Pa. 1996); *see also Akzo N.V. v. ITC*, 808 F.2d 1471, 1482 (Fed. Cir. 1986); *Purdue*

*Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F. Supp. 2d 362, 393 (S.D.N.Y. 2000).

Roche alleges that "with respect to a double patenting rejection over Lai U.S. 4,667,016,

Amgen argued that *In re Braat*, 937 F.2d 589 (Fed. Cir. 1991) required the use of a two-way

non-obviousness test to determine double patenting, and subsequently, in arguing against double-

carbohydrate structures in r-HuEPO are also found in u-EPO.'); AM-ITC 00092884; AM-ITC 00092981-83)." (Roche Resp. to Interrog. No. 26 at 39-40). Roche's allegation, however, is untrue. These statements were disclosed in the *Fritsch v. Lin* Interference No. 102,334 proceeding, and reviewed and considered by the Examiner of the '933 patent. (AM-ITC 00941744; AM-ITC 00902526; AM-ITC 00941412; AM-ITC 00941237-40; AM-ITC 00950983-91) (*see Fritsch v. Lin* Interference No. 102,334, 21 U.S.P.Q. 2d 1739 (BPAI 1991); *Amgen, Inc. v. HMR*, 126 F. Supp. 2d 69, 143 (D. Mass. 2001)). In any event, as held by the Board in the '334 interference decision, Amgen made plain to the FDA that r-HuEPO and u-EPO do in fact differ in structure.

Roche alleges that "after Amgen learned of the error in its reporting of the carbohydrate analysis of CHO rEPO and urinary EPO in Example 10 ('933 patent 28:51-67), it did not make that error known to the various examiners or the public by disclosing the mistake in any response or amendment in the file history." (Roche Resp. to Interrog. No. 26 at 40). Roche's allegation, however, is untrue: these statements were disclosed in the *Fritsch v. Lin* Interference No. 102,334 proceeding, and reviewed and considered by the Examiner of the '933 patent. (AM-ITC 00941744; AM-ITC 00902526; AM-ITC 00941412; AM-ITC 00941237-40; AM-ITC 00950983-91) (*see Fritsch v. Lin* Interference No. 102,334, 21 U.S.P.Q. 2d 1739 (BPAI 1991); *Amgen, Inc. v. HMR*, 126 F. Supp. 2d 69, 143 (D. Mass. 2001)); (*see also* AM-ITC 00947092-119; AM-ITC 01005096-123; AM-ITC 00995155-76; AM-ITC 00993963-81).

Roche alleges that Amgen failed to disclose to the PTO the declaration filed by Dr. Strickland in May 1994 in opposing the GI European Hewick patent "that rEPO produced in accordance with Lin's Example 10 falls between 31,000 daltons and 45,000 daltons as measured by SDS-PAGE." (Roche Resp. to Interrog. No. 26 at 41). Roche's allegation, however, fails because these statements are cumulative of the information known and disclosed in the *Fritsch v.*

suit cannot be viewed as an unjustified time-wise extension of the Lai and Strickland '016 patent

or *vice versa.*

Amgen overcame rejections for obviousness-type double-patenting over the Lai and

Strickland '016 patent in the application leading to the '868, '349 and '698 patents (see

application Serial No. 113,179) as well as the application that led to the '933 and '080 patents

(see application Serial No. 113,178). Thus, the examiners of the patents-in-suit agreed that any

obviousness-type double-patenting rejection was improper. Where, as here, the applicant

overcame this type of rejection in the Patent Office (a rejection which was erroneous to begin

with), Roche bears an even heavier burden in proving obviousness-type double patenting than

under the standard presumption of validity.


Dated: April 2, 2007                    Respectfully submitted,

                                        AMGEN INC.,
                                        By its attorneys,


Of Counsel:                             D. Dennis Allegretti (BBO# 545511)
                                        Michael R. Gottfried (BBO# 542156)
Stuart L. Watt                          Patricia R. Rich (BBO# 640578)
Wendy A. Whiteford                      DUANE MORRIS LLP
Monique L. Cordray                      470 Atlantic Avenue, Suite 500
Darrell G. Dotson                       Boston, MA 02210
Kimberlin L. Morley                     Telephone: (857) 488-4204
AMGEN INC.                              Facsimile: (857) 488-4201
One Amgen Center Drive
Thousand Oaks, CA 91320-1789            Lloyd R. Day, Jr. *(pro hac vice)*
(805) 447-5000                          DAY CASEBEER, MADRID & BATCHELDER
                                        LLP
                                        20300 Stevens Creek Boulevard, Suite 400
                                        Cupertino, CA 95014
                                        Telephone: (408) 873-0110
                                        Facsimile: (408) 873-0220


                                        William Gaede III *(pro hac vice)*

McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 813-5000
Facsimile: (650) 813-5100

Kevin M. Flowers *(pro hac vice)*
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, IL 60606
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

## CERTIFICATE OF SERVICE

I, Geoffrey M. Godfrey, hereby certify that I have served a copy of the foregoing document on counsel of records listed below, this 2nd day of April, 2007 as follows:

**VIA ELECTRONIC MAIL TO:**

Leora Ben-Ami, Esq. *(lbenami@kayescholer.com)*
Patricia A. Carson, Esq. *(pcarson@kayescholer.com)*
Thomas F. Fleming, Esq. *(tfleming@kayescholer.com)*
Howard Suh, Esq. *(hsuh@kayescholer.com)*
Peter Fratangelo, Esq. *(pfratangelo@kayescholer.com)*
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

Lee Carl Bromberg, Esq. *(lbromberg@bromsun.com)*
Julia Huston, Esq. *(jhuston@bromsun.com)*
Keith E. Toms, Esq. *(ktoms@bromsun.com)*
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292

Geoffrey M. Godfrey

623614_13