Amgen Inc. v. F. Hoffmann-LaRoche LTD et al                                                                                Doc. 803 Att. 12

to prior art such as patents and publications, § 1.56 includes, for example, information on possible prior public uses, sales, offers to sell, derived knowledge, prior invention by another, inventorship conflicts, and the like.

The term "information" is intended to be all encompassing similar to the scope of the term as discussed with respect to § 1.291(a) (see § 1901.02). However, as discussed in § 2001.05, § 1.56(a) is not limited to information which would render the claims unpatentable, but extends to any information "where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent."

It should be noted that the rules are *not* intended to require information *favorable* to patentability such as, for example, evidence of commercial success of the invention. Similarly, the rules are not intended to require, for example, disclosure of information concerning the level of skill in the art for purposes of determining obviousness.

## 2001.05  Materiality Under 37 CFR 1.56(a) [R-3]

Subsection 1.56(a) provides,

"All such individuals have a duty to disclose to the office information they are aware of which is *material to the examination* of the application (emphasis added)."

"Material" connotes something more than a trivial relationship. It appears commonly in court opinions. Subsection 1.56(a) elucidates,

"Such information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent."

This sentence paraphrases the definition of materiality used by the Supreme Court in TSC Industries v. Northway, 426 U.S. 438, 48 L.Ed. 2d 757, 96 S. Ct. 2126, 44 U.S.L.W. 4852 (1976). Although in that case the court was concerned with rules promulgated by the Securities and Exchange Commission, the Court's articulation of materiality is believed consistent with the prevailing concept that has been applied by lower courts in patent cases.

The definition of materiality in § 1.56 has to be interpreted in the context of patent law rather than securities law. Principles followed by courts in securities cases should not be translated to patent cases automatically. It is noteworthy, however, that in formulating the definition of materiality in TSC Industries the Supreme Court noted that the standard of materiality should not be so low that persons would be "subjected to liability for insignificant omissions or misstatements," or so low that fear of liability would cause management "simply to bury the shareholder in an avalanche of trivial information a result that is hardly conducive to informed decision making."

Although the third sentence of § 1.56(a) refers to decision of an examiner, the duty of disclosure applies in the same manner in the less common instances where the official making a decision on a patent application is someone other than an examiner, e.g. a member of the Board of Patent ♦Appeals and♦ Interferences * * *. This is implicit in the duty "of candor and good faith" toward the "Office" that is specified in the first sentence of § 1.56(a).

The Court in Norton v. Curtiss, 433 F.2d 779, 167 USPQ 532, 544 (C.C.P.A. 1970) characterized "materiality" as being of "critical concern;" and indicated,

"[I]n patent cases, materiality has generally been interpreted to mean that if the Patent Office had been aware of the complete or true facts, the challenged claims would not have been allowed."

However, the court then indicated at page 545 of the USPQ citation its concern that "materiality" not be defined too narrowly by stating that

"the above test cannot be applied too narrowly if the relationship of confidence and trust between applicants and the Patent Office is to have any real meaning. Findings of materiality should not be limited only to those situations where there can be no dispute that the true facts, or the complete facts, if they had been known, would most likely have prevented the allowance of the particular claims at issue or alternatively, would provide a basis for holding those claims invalid."

\* \* \* \* \*

"It is our view that a proper interpretation of the "materiality" element of fraud in this context must include therein consideration of factors apart from the objective patentability of the claims at issue, particularly (where possible) the subjective considerations of the examiner and the applicant. Indications in the record that the claims at issue *would* not have been allowed but for the challenged misrepresentations must not be overlooked due to any certainty on the part of the reviewing tribunal that the claimed invention, viewed objectively, *should* have been patented. If it can be determined that the claims would *not* have been allowed *but for* the misrepresentation, then the facts were material regardless of their effect on the objective question of patentability."

Other courts have also treated the question of "materiality." Thus, in In re Multidistrict Litigation Involving Frost Patent, 185 USPQ 729, 741 (D.Del. 1975), the court characterized the question of "materiality" as follows:

"Some variation of the so-called "but for" test has appeared in nearly every patent fraud case.

\* \* \* \* \*

"In other words, a finding of fraud is warranted if, but for the misconduct of the patent applicant, the patent would not properly have issued. This is what has been referred to as an "objective but for test".

\* \* \* \* \*

"The second "but for" test is the so-called "subjective test". This test requires a court to examine the effect which fraudulent representations had upon the examiner. If misrepresentations caused the examiner to issue the patent, then this kind of "but for fraud" will be found.

\* \* \* \* \*

"The final "but for" test has been labeled "the but it may have" test, i.e., courts look to whether the misrepresentations made in the course of the patent prosecution may have had an effect on the examiner.

\* \* \* \* \*

"Hence, in this Circuit, a misrepresentation which makes it "impossible for the Patent Office fairly to assess [the] application in the prevailling stautory criteria . . . will, given the requisite intent, lead to a finding of invalidity."

Citing Digital Equipment Co. v. Diamond, 653 F.2d 701, 210 USPQ 521 (1st Cir. 1981), the Court of

Dockets.Justia.com

Appeals for the Federal Circuit in American Hoist & Derrick Co. v. Sowa & Sons, Inc. ♦220 USPQ 763, 773 (Fed. Cir. 1984)♦ * * * stated,

> "PTO Rule 1.56(a), explains materiality. * * *
> The PTO 'standard' is an appropriate starting point for any discussion of materiality, for it appears to be the broadest, thus encompassing the others, and because that materiality boundary most closely aligns with how one ought to conduct business with the PTO. There is no reason, however, to be bound by any single standard, for the answer to any inquiry into fraud in the PTC does not begin and end with materiality, nor can materiality be said to be unconnected to other considerations:
> Questions of 'materiality' and 'culpability' are often interrelated and intertwined, so that a lesser showing of the materiality of the withheld information may suffice when an intentional scheme to defraud is established, whereas a greater showing of the materiality of withheld information would necessarily create an inference that its nondisclosure was 'wrongful.' (Digital Equipment Corp. v. Diamond, supra at 716, 210 USPQ at 538.)."

The Patent and Trademark Office "standard" set forth in 17 CFR 1.56, as amended in 1977, "merely represented a codification of existing case law on the obligation of applicants to disclose pertinent information or prior art": True Temper Corp. v. CF&I Steel Corp., 202 USPQ 412, 419 (10th Cir. 1979). ♦Note J.P. Stevens & Co. v. Lex Tex, Ltd., 223 USPQ 1089, at 1092 (Fed. Cir. 1984); In re Jerabek, 229 USPQ 530 (Fed. Cir. 1986)♦

The Court of Appeals for the Federal Circuit noted in Rohm & Haas Co. v. Crystal Chemical Co., * * *♦722 F.2d 1556, 220 USPQ 289, 300 (Fed. Cir. 1983), cert. denied, 105 S. Ct. 172 (1984)♦, that

> "[i]n contrast to cases where allegations of fraud are based on the withholding of prior art, there is no room to argue that submission of false affidavits is not material."

### 2001.06   Sources of Information

All individuals covered by §1.56 (see § 2001.01) have a duty to disclose to the Patent and Trademark Office all material information they are *aware* of or reasonably should have been aware of (see § 200.02), regardless of the source of or how they became aware of the information. Materiality controls whether information must be disclosed to the Office, not the circumstances under which or the source from which the information is obtained. If material, the information must be disclosed to the Office. The duty to disclose material information extends to information such individuals are aware of prior to or at the time of filing the application or become aware of during the prosecution thereof.

Such individuals may be or become aware of material information from various sources such as, for example, co-workers, tradeshows, communications from or with competitors, potential infringers or other third parties, related foreign applications (see § 2001.06(a)), prior or copending United States patent applications (see § 2001.06(b)), related litigation (see § 2001.06(c)) and preliminary examination searches.

### 2001.06(a)   Prior Art Cited in Related Foreign Applications

Applicants and other individuals, as set forth in § 1.56, have a duty to bring to the attention of the Office any material prior art or other information cited or brought to their attention in any related foreign application. The inference that such prior art or other information is material is especially strong where it is the only prior art cited or where it has been used in rejecting the same or similar claims in the foreign application. See Gemveto Jewelry Company, Inc. v. Lambert Bros., Inc., 216 USPQ 976 (S.D. New York 1982) wherein a patent was held invalid or unenforceable because patentee's foreign counsel did not disclose to patentee's United States counsel or to the Office prior art cited by the Dutch Patent Office in connection with the patentee's corresponding Dutch application. The Court stated, at 216 USPQ 985,

> "Foreign patent attorneys representing applicants for U.S. patents through local correspondent firms surely must be held to the same standards of conduct which apply to their American counterparts; a double standard of accountability would allow foreign attorneys and their clients to escape responsibility for fraud or inequitable conduct merely by withholding from the local correspondent information unfavorable to patentability and claiming ignorance of United States disclosure requirements."

### 2001.06(b)   Information Relating to or From Copending United States Patent Applications

The individuals covered by 37 CFR 1.56(a) have a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are "material to the examination" of the application in question. As set forth by the court in Armour & Co. v. Swift & Co., 175 USPQ 70, 79 (7th Cir. 1972),

> "we think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent."

See, also § 2004 at No. 8.

Accordingly, the individuals covered by § 1.56(a) cannot assume that the examiner of a particular application is necessarily aware of other applications "material to the examination" of the application in question, but must instead bring such other applications to the attention of the examiner. For example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are "material to the examination" of the subsequent application.

Normally if the application under examination is identified as a continuation or continuation-in-part of an earlier application the examiner will consider the prior art cited in the earlier application. The examiner must indicate in the first Office action whether the prior art in a related earlier application has been re-