# EXHIBIT A

Dockets.Justia.com

1746. The definition "United States" is the same as the definition of United States in 35 U.S.C. 100(c).

The definition of "interference" permits an interference between one or more applications and one or more patents. Thus, the revised rules follow the policy of *Wilson v. Yakel*, 1876 C.D. 245 (Comm'r. Pat. 1876) and, to the extent inconsistent therewith, do not follow the policy announced in *Touval v. Newcombe*, 194 USPQ 509 (Comm'r. Pat. 1976). However, in view of the statutory requirement for the presence of at least one application in an interference, if an applicant were to concede priority or otherwise be terminated from an interference involving only one application and more than one patent, the interference would have to be terminated for lack of subject matter jurisdiction unless one or more of the patentees filed an application for reissue which could be added to the interference under >37 CFR< 1.633(h).

A "count" defines interfering subject matter. An interference may have two counts only if the second count defines a "separate patentable invention" from the first count. The reason the second count must define a separate patentable invention is to permit the PTO to lawfully issue separate patents to different parties in an interference when a single party does not prevail as to all counts. A "separate patentable invention" is defined in >37 CFR< 1.601(n):

> Invention (A) is a "separate patentable invention" with respect to invention (B) when invention (A) is new (35 U.S.C. 102) and unobvious (35 U.S.C. 103) in view of invention (B) assuming invention (B) is prior art with respect to invention (A).

## 2302 Ownership of Applications and Patents Involved in an Interference [R-9]

*37 CFR 1.602 Interest in applications and patents involved in an interference.*

(a) Unless good cause is shown, an interference shall not be declared or continued between (1) applications owned by a single party or (2) applications and an unexpired patent owned by a single party.

(b) The parties, within 20 days after an interference is declared, shall notify the Board of any and all right, title, and interest in any application or patent involved or relied upon in the interference unless the right, title, and interest is set forth in the notice declaring the interference.

(c) If a change of any right, title, and interest in any application or patent involved or relied upon in the interference occurs after notice is given declaring the interference and before the time expires for seeking judicial review of a final decision of the Board, the parties shall notify the Board of the change within 20 days of the change.
[49 FR 48416, Dec. 12, 1984, added effective Feb. 11, 1985]

>37 CFR< 1.602 continues the previous PTO practice (37 CFR 1.201(c)) of not declaring or continuing an interference between (1) two or more applications owned by the same party or (2) an application and a patent owned by a single party unless good cause is shown. A corporation and its wholly-owned subsidiary are considered a "single party" within the meaning of >37 CFR< 1.602(a). Under prior rules, when a patent and an application involved in an interference became commonly owned, the interference was not "dissolved." Rather, the PTO required that the interference be terminated with a judgment. *Chillas v. Weisberg*, 1928 C.D. 24 (Comm'r. Pat. 1928); *Malone v. Toth*, 202 USPQ 397 (Comm'r. Pat. 1978); and *Morehouse v. Armbuster*, 209 USPQ 514 (Comm'r. Pat. 1980). Under the revised rules, all interferences, including those involving only applications, will be terminated with a judgment. As noted in *Chillas v. Weisberg, supra* at 25 "the common owner can allow a judgment against the junior party to be rendered by default or it can file a concession of priority from one party to the other." Paragraphs (b) and (c) of >37 CFR< 1.602 continue the previous PTO practice (37 CFR 1.201(c)) of requiring a party to notify the PTO of any real party in interest not apparent on the face of the notice declaring the interference (see >37 CFR< 1.611) or of any change in the real party in interest after the interference is declared. The PTO needs to know the identity of any real party in interest to properly enforce >37 CFR< 1.602(a) and to enable an examiner-in-chief to determine whether refusal is necessary or appropriate. A new requirement in paragraph (b) and (c), of >37 CFR< 1.602, not present in 37 CFR 1.201(c), is a 20-day time period for advising the PTO of the identity of, or any change in, the real party in interest.

### COMMON OWNERSHIP

Where applications by different inventive entities but of common ownership claim the same subject matter or subject matter that is not patentably different:

I. Interference therebetween is normally not instituted since there is no conflict of interest. Elimination of conflicting claims from all except one case should usually be required, 37 CFR 1.78(c). The common assignee must determine the application in which the conflicting claims are properly placed. Treatment by rejection is set forth in >MPEP< § 804.03.

II. Where an interference with a third party is found to exist, the commonly-owned application having the earliest effective filing date will be placed in interference with the third party. The common assignee may move during the interference under 37 CFR 1.633(d) to substitute the other commonly-owned application, if desired.

## 2303 Interference Between Applications [R-2]

*37 CFR 1.603 Interference between applications; subject matter of the interference.*

Before an interference is declared between two or more applications, the examiner must be of the opinion that there is interfering subject matter claimed in the applications which is patentable to each applicant subject to a judgment in the interference. The interfering subject matter shall be defined by one or more counts. Each count shall define a separate patentable invention. Each application must contain, or be amended to contain, at least one claim which corresponds to each count. All claims in the applications which define the same patentable invention as a count shall be designated to correspond to the count.
[49 FR 48416, Dec. 12, 1984, added effective Feb. 11, 1985]

Where two or more applications are found to be claiming the same patentable invention they may be put in interference, dependent on the status of the respective applications and the

difference between their filing dates. One of the applications should be in condition for allowance. Unusual circumstances may justify an exception to this if the approval of the group director is obtained.

Interferences will not be declared between pending applications if there is a difference of more than 3 months in the effective filing dates of the oldest and the next oldest applications, in the case of inventions of a simple character, or a difference of more than 6 months in the effective filing dates of the applications in other cases, except in exceptional situations, as determined and approved by the group director. One such exceptional situation would be where one application has the earliest effective filing date based on foreign priority and the other application has the earliest effective United States filing date. If an interference is declared, all applications having the interfering subject matter should be included.

Before taking any steps looking to the formation of an interference, it is essential that the examiner make certain that each of the prospective parties is claiming the same patentable invention (as defined in 37 CFR 1.601(n)) and that at least one claim of each party corresponds to each count of the interference and is clearly readable upon the disclosure of that party and allowable in its application.

It is to be noted that while the claims of two or more applicants may not be identical, yet if directed to the same patentable invention, an interference exists. But mere disclosure by an applicant of an invention which he or she is not claiming does not afford a ground for suggesting to that applicant a claim for the said invention based upon claims from another application that is claiming the invention. The intention of the parties to claim the same patentable invention, as expressed in the summary of the invention or elsewhere in the disclosure or in the claims, is an essential in every instance.

Where the subject matter found to be allowable in one application is disclosed and claimed in another application, but the claims therein to such subject matter are either nonelected or subject to election, the question of interference should be considered. The requirement of 37 CFR 1.601(i) that the conflicting applications shall contain claims for the same patentable invention should be interpreted as meaning generally that the conflicting claimed subject matter is sufficiently supported in each application and is patentable to each applicant over the prior art. The statutory requirement of first inventorship is of transcendent importance and every effort should be made to avoid the improper issuance of a patent where there is an adverse claimant.

Following are illustrative situations where the examiner should take action toward instituting interference:

A. Application filed with claims to divisible inventions I and II. Before action requiring restriction is made, examiner discovers another case having claims to invention I.

The situation is not altered by the fact that a requirement for restriction had actually been made but had not been responded to. Nor is the situation materially different if an election of noninterfering subject matter had been made without traverse but no action given on the merits of the elected invention.

B. Application filed with claims to divisible inventions I and II and in response to a requirement for restriction, applicant traverses the same and elects invention I. Examiner gives an action on the merits of I. Examiner subsequently finds an application to another containing allowed claims to invention II and which is ready for issue.

The situation is not altered by the fact that the election is made without traverse and the nonelected claims possibly cancelled.

C. Application filed with generic claims and claimed species a, b, c, d, and e. Generic claims rejected and election of a single species required. Applicant elects species a, but continues to urge allowability of generic claims. Examiner finds another application claiming species b which is ready for issue.

The allowability of generic claims in the first case is not a condition precedent to setting up interference.

D. Application filed with generic claims and claims to five species and other species disclosed but not specifically claimed. Examiner finds another application the disclosure and claims of which are restricted to one of the unclaimed species and have been found allowable.

The prosecution of generic claims is taken as indication of an intention to cover all species disclosed which come under the generic claim.

In all the above situations, the applicant has shown an intention to claim the subject matter which is actually being claimed in another application. These are to be distinguished from situations where a distinct invention is claimed in one application but merely disclosed in another application without evidence of an intent to claim the same. The question of interference should not be considered in the latter instance. However, if the application disclosing but not claiming the invention is senior, and the junior application is ready for issue, the matter should be discussed with the group director to determine the action to be taken.

## 2304 Applicant Requests Interference Between Applications [R-9]

*37 CFR 1.604 Request for interference between applications by an applicant.*

(a) An applicant may seek to have an interference declared with an application of another by (1) suggesting a proposed count and presenting *>at least one< claim corresponding to the proposed count >or identifying at least one claim in his or her application that corresponds to the proposed count<, (2) identifying the other application and, if known, a claim in the other application which corresponds to the proposed count, and (3) explaining why an interference should be declared.

(b) When an applicant presents a claim known to the applicant to define the same patentable invention claimed in a pending application of another, the applicant shall identify that pending application, unless the claim is presented in response to a suggestion by the examiner. The examiner shall notify the Commissioner of any instance where it appears an applicant may have failed to comply with the provisions of this paragraph.

[49 FR 48416, Dec. 12, 1984, added effective Feb. 11, 1985; paragraph (a) amended 53 FR 23735, June 23, 1988, effective Sept. 12, 1988]

*Patents*
*UN3ep*

# Manual of PATENT EXAMINING PROCEDURE

Original Fifth Edition, August 1983
Latest Revision October 1989

  

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office



AUG 17 1990

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER
LAW LIBRARY
425 PARK AVENUE
NEW YORK, N.Y. 10022

Rev. 13, Nov. 1989

The Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions or change of address of those on the subscription list.

Correspondence relating to any of the above items should be sent to the Superintendent of Documents at the following address:

> Superintendent of Documents
> Mail List Section
> Washington, D.C. 20402

Inquiries relating to subscriptions should be directed to:
> Superintendent of Documents
> United States Government Printing Office
> Washington, D.C. 20402

Orders for reproduced copies of individual replacement pages not amounting to a complete revision of the Manual should be sent to the following address:
> Commissioner of Patents and Trademarks
> Attention: Customer Services Division
> Washington, D.C. 20231

The cost for each 30 pages or a fraction thereof is $10.00 (See 37 CFR 1.13(a) and 1.19(a)(3)).

Charges may be made to Deposit Accounts if the requester is an account holder in good standing at the time the request is received. Checks or money orders should be payable to the Commissioner of Patents and Trademarks. Requests must identify the specific pages required and the number of copies of each page.

Employees of the Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Patent Academy.

> First Edition, November 1949
> Second Edition, November 1953
> Third Edition, November 1961
> Fourth Edition, June 1979
> Fifth Edition, August 1983
>> Revision 1, October 1985
>> Revision 2, December 1985
>> Revision 3, May 1986
>> Revision 4, October 1986
>> Revision 5, July 1987
>> Revision 6, October, 1987
>> Revision 7, December, 1987
>> Revision 8, May 1988
>> Revision 9, September 1988
>> Revision 10, January 1989
>> Revision 11, April 1989
>> Revision 12, July 1989
>> Revision 13, November 1989

# MANUAL OF PATENT EXAMINING PROCEDURE

Original Fifth Edition, Dated August 1983

U.S. DEPARTMENT OF COMMERCE

Patent and Trademark Office

The Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions or change of address of those on the subscription list.

Correspondence relating to any of the above items should be sent to the Superintendent of Documents at the following address:

>Superintendent of Documents
>Mail List Section
>Washington, D.C. 20402

Inquiries relating to subscriptions should be directed to:

>Superintendent of Documents
>United States Government Printing Office
>Washington, D.C. 20402

Orders for reproduced copies of individual replacement pages not amounting to a complete revision of the Manual should be sent to the following address:

>Commissioner of Patents and Trademarks
>Attn: Customer Services Division
>Washington, D.C. 20231

The cost per page will be 30¢ (see 37 CFR 1.13(a), 1.21(b) and 1.21(t)).

Charges may be made to deposit accounts if the requester is an account holder in good standing at the time the request is received. Checks or money orders should be made payable to the Commissioner of Patents and Trademarks. Requests must identify the specific pages required and the number of copies of each page.

Employees of the Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Scientific Library.

First Edition, November 1949
Second Edition, November 1953
Third Edition, November 1961
Fourth Edition, June 1979
Fifth Edition, August 1983