# EXHIBIT
# J

Dockets.Justia.com

IN THE

# UNITED STATES PATENT and TRADEMARK OFFICE

**Before the Board of Patent Appeals and Interferences**

Interference No. 102,334

## FRITSCH

v.

## LIN

Examiner-in-Chief Marc L. Caroff

# BRIEF FOR THE PARTY FRITSCH

KURT E. RICHTER
MORGAN & FINNEGAN
345 Park Avenue
New York, New York 10154
(212) 758-4800
*Attorney for the Party Fritsch*

*Of Counsel:*
EUGENE MOROZ
WILLIAM S. FEILER
MICHAEL P. DOUGHERTY
WILLIAM KROVATIN

AM 17 013929
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00340987

Interference No. 102,334
U.S. Express Mail No. GB301075126US

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . .    iv

STATEMENT OF ISSUES PRESENTED FOR DECISION . . . . . . . .    1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . .    2

    A.   The Parties And The Subject Matter . . . . . . .    2

    B.   Background Technology . . . . . . . . . . . . . .    4

    C.   The Technology For Isolating Genes . . . . . . .    6

    D.   GI's EPO Project . . . . . . . . . . . . . . . .    8

    E.   Amgen's EPO Project . . . . . . . . . . . . . .    15

          1.   The Isolation Of The Human EPO Gene . . . . .    15

          2.   Carbohydrate Analysis Of Amgen's Recombinant
             EPO . . . . . . . . . . . . . . . . . . . . .    16

    F.   The '178 Patent Application Prosecution History . .    17

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . .    20

I.   FRITSCH IS THE PRIOR INVENTOR
    OF THE SUBJECT MATTER INVOLVED
    IN THIS INTERFERENCE . . . . . . . . . . . . . . . .    20

    A.   The Legal Standard . . . . . . . . . . . . . .    20

    B.   Dr. Fritsch First
        Conceived Of The Invention . . . . . . . . . . .    24

    C.   Dr. Fritsch Is The Prior Inventor . . . . . . .    27

II.  DR. FRITSCH IS THE SOLE INVENTOR
    OF THE SUBJECT MATTER CLAIMED IN
    THE INVOLVED FRITSCH APPLICATION . . . . . . . . . .    30

    A.   Introduction . . . . . . . . . . . . . . . . .    30

    B.   The Legal Standard . . . . . . . . . . . . . .    30

AM 17 013930
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00340988

Interference No. 102,334
U.S. Express Mail No. GB301075126US

### TABLE OF CONTENTS (cont'd)

Page

C.   Fritsch Has Made The Required Showing . . . . . . .  32

III. LIN'S CLAIMS CORRESPONDING TO THE
COUNT OF THIS INTERFERENCE ARE
UNPATENTABLE TO LIN UNDER 35 U.S.C.
§§ 102(b) and 112 (MOTIONS I & II) . . . . . . . . . .  33

A.   Introduction . . . . . . . . . . . . . . . . . .  33

B.   The Denial Of Fritsch' Motions I And
II For Judgment Of Unpatentability
Was Manifestly Erroneous . . . . . . . . . . . . .  34

C.   The Applicable Legal Standards . . . . . . . . .  38

D.   The Overwhelming Objective Evidence Shows That
There Is No Difference In The Average Carbohydrate
Composition Of uEPO And Lin's rEPO . . . . . . . .  40

     1.   Different "Average Carbohydrate
          Composition" Is Critical To Patentability . .  40

     2.   There Is No Credible Evidence
          Of A Difference In "Average
          Carbohydrate Composition" . . . . . . . . . .  42

          a.   The Patent Data Are Based Upon
               The Invalid Yu Analysis . . . . . . . . .  42

          b.   The Whole of the Scientific Data and
               Amgen's FDA Application Establish the
               Identity of the Average Carbohydrate
               Composition of uEPO and rEPO . . . . . .  43

     3.   The 1988 Strickland Experiments Do
          Not Establish The Claimed Difference
          In Average Carbohydrate Composition . . . . .  45

E.   The Evidence Establishes That Lin's Claims
     Are Unsupported By An Enabling Disclosure . . . . .  49

IV.  LIN IS NOT ENTITLED TO THE BENEFIT
OF THE FILING DATES OF HIS EARLIER
FILED PATENT APPLICATIONS . . . . . . . . . . . . . .  49

AM 17 013931
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00340989

Interference No. 102,334
U.S. Express Mail No. GB301075126US

### TABLE OF CONTENTS (cont'd)

<u>Page</u>

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . .  50

**APPENDIX** . . . . . . . . . . . . . . . . . . . . . . . . .  52

- iii -

AM 17 013932
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00340990

Interference No. 102,334
U.S. Express Mail No. GB301075126US

## ARGUMENT

I.    **FRITSCH IS THE PRIOR INVENTOR
OF THE SUBJECT MATTER INVOLVED
IN THIS INTERFERENCE**

A.    **The Legal Standard**

Under 35 U.S.C. § 102(g), a person is entitled to a patent unless "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." Section 102(g) further provides that in

> determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

Thus, an inventor is considered the first inventor if he or she was the first to conceive of the invention and exercised reasonable diligence in reducing it to practice, even if the second inventor reduced to practice first. 3 D. Chisum, Patents, § 10.03(1) at 10-20 (1988). See also Marconi Wireless Tel. Co. v. United States, 320 U.S. 1, 34-35, 63 S.Ct. 1393, 1409 (1943) ("It is well established that as between two inventors, priority of invention will be awarded to the one who by satisfying proof can show that he first conceived the invention").

- 20 -

AM 17 013956
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341014

Interference No. 102,334
U.S. Express Mail No. GB301075126US

In interferences, the Board applies a preponderance of the evidence standard in determining which party is the prior inventor. Morgan v. Hirsch, 728 F.2d 1449, 1451, 221 U.S.P.Q. 193, 194 (Fed. Cir. 1984); Fisher v. Gardner, 215 U.S.P.Q. 620, 632 (Bd. Pat. App. & Int. 1981). The presumption of validity of 35 U.S.C. § 282 is inapplicable. Lamont v. Berguer, 7 U.S.P.Q.2d 1580, 1582 (Bd. Pat. App. & Int. 1988).

Conception requires "formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376, 231 U.S.P.Q. 81, 87 (quoting 1 Robinson on Patents 532 (1890)); cert. denied, 480 U.S. 497 (1987); Coleman v. Dines, 754 F.2d 353, 359, 224 U.S.P.Q. 857, 862 (Fed. Cir. 1985). To be complete, a conception need not include every detail of how to reduce the invention to practice. In re Tansel, 253 F.2d 241, 243, 117 U.S.P.Q. 188, 189 (C.C.P.A. 1958); see Lazo v. Tso, 480 F.2d 908, 178 U.S.P.Q. 361 (C.C.P.A. 1973) (research plan and trip report sufficient to show conception); Vanderkooi v. Hoeschele, 7 U.S.P.Q. 2d 1253, 1255 (Bd. Pat. App. & Int. 1987) (mere determination of suitable range of values for suggested result is prima facie within the realm of ordinary skill). Rather, a conception is complete if it would enable one skilled in the art to reduce the invention to practice. Kardulas v. Florida Mach.

- 21 -

AM 17 013957
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

Interference No. 102,334
U.S. Express Mail No. GB301075126US

Products Co., 438 F.2d 1118, 1121, 168 U.S.P.Q. 673, 675 (5th Cir. 1971).

Conception of a chemical compound, such as a gene, requires that the inventor be able to define it so as to distinguish it from other materials, and to describe how to obtain it. Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1206, 18 U.S.P.Q.2d 1016, 1021 (Fed. Cir. 1991). The inventor can define the compound by its method of preparation, its physical or chemical properties, or whatever characteristics sufficiently distinguish it from other materials. Id.

Conception of a purified and isolated gene may occur when the inventor has sufficient information to envision the detailed constitution of the gene so as to distinguish it from other materials, as well as a method for obtaining it. Amgen Inc. v. Chugai Pharmaceutical Co. 927 F.2d 1200, 1206, 18 U.S.P.Q.2d 1016, 1021 (Fed. Cir. 1991). Similarly, conception may occur when the inventor conceives of a process for identifying the gene with sufficient specificity that one skilled in the relevant art would succeed in cloning the gene. 927 F.2d at 1207, 18 U.S.P.Q.2d at 1021.

In the context of the count involved in this interference, a complete conception would comprise (1) conception of a purified and isolated EPO gene, together with (2) a method for using the gene to express in vivo active EPO. Only the first of

- 22 -

AM 17 013958
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341016

Interference No. 102,334
U.S. Express Mail No. GB301075126US

these two components can be argued to have required more than
ordinary skill.   The use of transfected mammalian host cells to
express proteins was well known by 1981.  FR 6741, 6823 (Simonsen).
And as the examiner of Lin's related '179 application recognized,
the prior art also taught that mammalian host cells could be used
for the expression of in vivo active glycosylated proteins.   '179
Application, ~~File Hisotry, 8/03/88 Office Action citing Yakota~~ *Examiner's Rejection, paper 9, p. 2.*
~~reference~~.  Moreover, the record shows that Fritsch conceived of
using such mammalian expression systems for the expression of EPO
by 1981.    FX 504; <u>see also</u> FX 113 (Fritsch Summary of Cloning
Strategy, August 1982, at pp. 9599, 9606); FR 1575 (Fritsch).

          Accordingly, as in the '096 interference, priority turns
upon the first conception of the purified and isolated EPO gene.
The record here establishes that Dr. Fritsch, not Dr. Lin, was the
first to make such a conception and thereafter exercised reasonable
diligence in reducing it to practice.  Thereafter, he and his staff
were also diligent in expressing the gene in mammalian host cells
to obtain <u>in vivo</u> active EPO.   And such <u>in vivo</u> active recombinant
human EPO was in fact expressed.  Accordingly, Fritsch is the prior
inventor.

AM 17 013959
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341017

Interference No. 102,334
U.S. Express Mail No. GB301075126US

### B.    Dr. Fritsch First
### Conceived Of The Invention

Precision in dating Dr. Fritsch's conception is, to some degree, unnecessary given Amgen's failure to show a conception date prior to September 1983. Since the record clearly shows that Dr. Fritsch had conceived of an operative probing technique by December 1981, the corroborated evidence of Dr. Fritsch's conception makes his invention prior to Dr. Lin's whether conception is dated in early 1982, when Dr. Fritsch first obtained the Hewick N-terminal sequence data; or in August 1982, when his description of the invention was sent to Toyobo; or in October 1982, when his probing technique was first used; or in June 1983, when he designed, ordered, and received the first of a set of oligonucleotide probes that would have succeeded in isolating the EPO gene. Findings II-8, II-16 - II-18, II-21, II-41, II-42, II-54, II-59, II-63, II-64, II-98 - II-101. Any one of these dates is sufficient to make Dr. Fritsch the first inventor.

Moreover, the record establishes that Fritsch's conception was complete. Dr. Fritsch did not engage in the sort of trial and error which is the hallmark of "those unusual cases" where conception cannot occur prior to reduction to practice. <u>See Alpert v. Slatin</u>, 305 F.2d 891, 894, 134 U.S.P.Q. 296, 299 (C.C.P.A. 1962). Rather, he formulated his conception, predicted its success using a mathematical formula and then consistently

- 24 -

AM 17 013960
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341018

Interference No. 102,334
U.S. Express Mail No. GB301075126US

applied the very same conception until the invention was successfully reduced to practice. A similar concept was successful in isolating the Factor VIII gene prior to Dr. Lin's isolation of the EPO gene. And, most significantly, Dr. Fritsch, like Dr. Lin, was immediately successful in implementing this cloning approach upon obtaining accurate sequence information.[2]

To establish a conception date prior to the application for the '008 patent, Lin was required to offer independent and corroborated evidence.[3]  <u>Kardulas</u>, 438 F.2d at 1121, 168 U.S.P.Q.

---

[2]  Correct sequence information is part of the art which one of ordinary skill would have had available in using Dr. Fritsch's conception. Finding No. III-33, Conclusion of Law No. III-22. Lack of this additional correct sequence information and the probes based upon it does not preclude a finding of conception. <u>Vanderkooi v. Hoeschele</u>, 7 U.S.P.Q.2d at 1255 ("the law does not require that every limitation in the counts must be exactly foreseen before a conception can be said to be complete"); <u>Philco Corp. v. Radio Corp. of America</u>, 276 F. Supp. 24, 41, 155 U.S.P.Q. 372, 378-80 (D. Del. 1967) (means to effect an integral function of the invention were known to those skilled in the art and the inventor's conception by implication embodied the necessary means).

[3]  Lin's record contains testimony concerning a 1981 conversation between Dr. Lin and Martin Cline, a member of Amgen's scientific advisory board, and certain handwritten notes allegedly taken by Dr. Cline during that conversation. This testimony, however, fails to corroborate a conception by Lin prior to September 1983. Finding Nos. II-304 to II-312. Indeed, Dr. Cline's testimony does not mention any conversations with Dr. Lin at all. Nor is there competent testimony in the record that Dr. Cline's notes were based on conversations with Dr. Lin. Neither the notes nor Dr. Cline's testimony, alone or in combination, describe in full an operative method for obtaining the EPO gene. Nor do they show that Lin possessed sufficient information regarding the EPO gene "to distinguish it from other materials." <u>Amgen</u>, 927
(continued...)

- 25 -

AM 17 013961
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341019

Interference No. 102,334
U.S. Express Mail No. GB301075126US

at 676; Chisum, supra, § 3.08[3] at 160-61.  The earliest date satisfying this evidentiary standard is September 25, 1983, the date Dr. Lin began screening a genomic library with two sets of fully degenerate probes.

Moreover, prior to September 1983, there is no evidence, corroborated or otherwise, that Dr. Lin ever designed or used two sets of fully degenerate probes from two different regions to probe a genomic library.  Finding No. II-312.  This was the "method for obtaining" the gene required for a valid conception.  Amgen, 927 F.2d at 1206, 18 U.S.P.Q.2d at 1021.  Under a "rule of reason" for determining whether the corroboration requirement has been met, Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d at 1376-77, 231 U.S.P.Q. at 87-88, this absence of record support for an earlier use of the method for obtaining the gene is fatal to Lin's attempt to establish a date of conception prior to September 1983.  Dr. Lin's failure to use the method for obtaining the gene until two years after the Cline conversation also precludes a finding that Dr. Lin's purported conversation with Dr. Cline represented in Dr. Lin's mind "a definite and permanent idea of the complete and operative invention."  Id.

---

[3](...continued)
    F.2d at 1206.  In short, the only evidence of a conception by
    Dr. Lin in 1981 is his own testimony.  This is insufficient to
    satisfy the corroboration requirement.  Ganguly v. Sunagawa,
    5 U.S.P.Q.2d 1970, 1973 (Bd. Pat. App. & Int. 1987).

- 26 -

AM 17 013962
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

Interference No. 102,334
U.S. Express Mail No. GB301075126US

### c.  Dr. Fritsch Is The Prior Inventor

Lin cannot seriously dispute that Dr. Fritsch worked
diligently to reduce his conception to practice. With the
exception of honoring pre-existing commitments to teach cloning
techniques, Dr. Fritsch's professional work was continuously
devoted to GI's EPO project from the time he first conceived of the
invention until its reduction to practice. Findings II-1 – II-15,
II-27 – II-147. The record also contains ample evidence of
diligence on the part of the GI employees working under Dr.
Fritsch's direction. These included at least 36 scientists, six of
whom were Ph.D.'s. These 36 scientist were diligent both in
working toward the cloning of the EPO gene and in expressing the
protein thereafter. Findings II-154 – II-301. This diligence is
sufficient to establish Dr. Fritsch as the prior inventor pursuant
to 35 U.S.C. § 102(g).

Between the dates of September 1982 and March 1983, Dr.
Fritsch and the scientists working under his direction carried out
three full screenings of genomic libraries using his method. In
these screenings, designated at the E, G, and H screens, Dr.
Fritsch was assisted by his laboratory technicians Elizabeth Orr,
Marilee Shaffer and Suzanne Neill. Ms. Shaffer and Ms. Neill
performed work on the screens, while Ms. Orr characterized the
isolated probable "positive" clones by sequencing the isolated DNA
sequences on sequencing gels. Findings II-63 – II-81. And in May

– 27 –

AM 17 013963
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341021

Interference No. 102,334
U.S. Express Mail No. GB301075126US

1983, Dr. Fritsch conducted a fourth screen, designated the A screen. Ms. Shaffer assisted Dr. Fritsch in the A screen, and Ms. Orr sequenced the isolated DNA of one of the putative positive clones. Findings II-82 - II-85.

By the spring of 1983 the cause of failure to isolate the EPO gene by these screens was correctly diagnosed by Dr. Fritsch: the available amino acid sequence of the EPO protein upon which he was relying was erroneous. Findings II-21, II-86. Accordingly, immediate steps were taken to obtain additional EPO for sequencing. Initially, a promising kidney carcinoma cell line was obtained as a potential source of EPO mRNA and of EPO protein. In addition, a small quantity of low purity EPO was located, but the quantity was insufficient to be upgraded for sequencing. These activities took place from the summer of 1983 to February 1984. Findings II-87 - II-96.

In the meantime, while the search for additional EPO protein was ongoing, and commencing in mid 1983 and continuing until March 1984, Dr. Jacobs and Ms. Neill, acting pursuant to Dr. Fritsch's directions, performed four additional screens, designated the Jacobs A, U, V and T screens.[4] Findings II-97 to II-99.

---

[4] As indicated in the statement of facts, the new set of probes was divided into two subsets because of the high degeneracy of one of the regions (position 15 to 19). The second subset contained the exact sequence but was not used because a new EPO sample for sequencing was soon to arrive. Finding II-100.

- 28 -

AM 17 013964
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

Interference No. 102,334
U.S. Express Mail No. GB301075126US

Early in 1984, GI opened new discussions with Dr. Miyake (a former colleague of Dr. Goldwasser) concerning obtaining additional EPO of suitable purity for sequencing. An agreement was quickly reached with Dr. Miyake to supply purified EPO and the first EPO shipment arrived in April 1984. Dr. Hewick further purified this sample, prepared tryptic fragments and sequenced the sample, then supplied the sequence information to Dr. Fritsch. Findings II-103 - II-106.

Upon receiving the new amino acid sequence information, Dr. Fritsch designed and ordered new fully degenerate probes, and on May 30, 1984 the K screen was commenced by plating the library used to isolate the EPO gene and then hybridizing it with two sets of fully degenerate probes from different regions of the amino acid sequence. The technique was similar to the technique used in the E, G, H, and A screens and was at once successful. The EPO gene was among the clones isolated from the K screen. Findings II-106 - II-113. Dr. Fritsch was assisted in the K screen by his laboratory technician Ms. Neill and Dr. Jacobs. Dr. Shoemaker performed work in characterizing the isolated DNA sequences of the positive clones.

Ms. Neill's extensive activities on the EPO project between the dates of March 18, 1983 and July 20, 1984 are documented in Findings II-236 - II-239. Dr. Jacobs' involvement in the EPO project included plating and screening genomic libraries

- 29 -

AM 17 013965
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341023

Interference No. 102,334
U.S. Express Mail No. GB301075126US

with oligonucleotide probes and optimizing the hybridization thereof. His extensive work on the project between the dates of July 12, 1983 and June 29, 1984 is documented in Findings II-201 - II-203. Ms. Orr's work in sequencing the DNA of potential EPO clones and other DNA in the period December 7, 1982 to October 19, 1984 is documented in Findings II-240 - II-243. Moreover, the record contains extensive evidence of further expression, purification, and characterization work by various GI scientists under Dr. Fritsch's direction through January 1985. Findings II-123 - II-141, II-154 - II-301.

## II.    DR. FRITSCH IS THE SOLE INVENTOR OF THE SUBJECT MATTER CLAIMED IN THE INVOLVED FRITSCH APPLICATION

### A.    Introduction

The Examiner-in-Chief has deferred to final hearing Fritsch's motion to correct inventorship of the Fritsch et al. application involved in this interference and to file a revised preliminary statement reflecting this correction. The Board should now grant Fritsch's motion, since the verified statements of facts and other papers of record establish that the misjoinder of inventors occurred through error and without deceptive intention, thus satisfying the liberal criteria of 35 U.S.C. § 116 and 37 C.F.R. § 1.48(a).

- 30 -

AM 17 013966
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

Interference No. 102,334
U.S. Express Mail No. GB301075126US

    4.    That Lin's claims corresponding to the count are unpatentable to Lin under 35 U.S.C. § 112 for for failure to enable the claimed subject matter; and

    5.    That Lin is not entitled to the benefit of the filing dates of his prior applications because those applications do not satisfy the requirements of 35 U.S.C. § 112.

                   Respectfully submitted,

                   MORGAN & FINNEGAN

Dated:  July 8, 1991         By: _____

                   Kurt E. Richter
                   Reg. No. 24,052
                   Attorney for the
                   Party Fritsch

Of Counsel:
Eugene Moroz
William S. Feiler
Michael P. Dougherty
William Krovatin

MORGAN & FINNEGAN
345 Park Avenue
New York, NY 10154
(212) 758-4800

               - 51 -

AM 17 013987
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00341045