# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 05 CV 12237 WGY ) |
| F. HOFFMANN-LAROCHE LTD., a Swiss Company, ROCHE DIAGNOSTICS GMBH, a German Company, and HOFFMANN LAROCHE INC., a New Jersey Corporation, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**BRIEF IN SUPPORT OF AMGEN'S MOTION *IN LIMINE* NO. 19:
EXCLUDE EXPERT TESTIMONY FOR SUPPLEMENTATION IN VIOLATION OF
THE PARTIES' JUNE 6, 2007, AGREEMENT**

Dockets.Justia.com

I.      **INTRODUCTION**

During the June 6, 2007, scheduling conference, the parties reached a pragmatic solution to address the overwhelming number of experts who submitted expert reports in this case. At the hearing, counsel for Amgen and Roche stated that each party would be limited to ten testifying experts, and also set a schedule and a scope for supplementing expert reports. As explained to the Court by Roche's counsel, Ms. Ben-Ami: "By June 13th, Roche will respond to the Amgen reports that were put in on June 1st and June 4th, and whatever needs to be done there for any new arguments that have been presented." But Roche then violated this agreement by not limiting the scope of Roche's June 13 supplemental expert reports to just addressing the new opinions presented in Amgen's June 1 and June 4 expert reports. Instead, Roche also "supplemented" with its June 13 expert reports by incorporating entire reports from the Roche experts that did not make the list of ten testifying experts. Also, Roche's June 13 expert reports contained new opinions in response to opinions given by Amgen's experts in April and May, and not just those from Amgen's June 1 and June 4 reports. Accordingly, the Court should exclude those portions of Roche's June 13 expert reports that (a) improperly incorporated the expert reports from Roche's non-testifying expert and (b) contain new Roche opinions in response to prior opinions set forth in Amgen's April and May expert reports.

II.     **FACTUAL BACKGROUND**

   A.   **The parties June 6, 2007 agreement allowed  Roche to serve supplemental reports for the limited purpose of responding to opinions set forth in the June 1 and 4 reports of Amgen's experts**

At the June 6, 2007, case management and scheduling conference, Amgen and Roche reported an agreement to the Court whereby the parties would limit the number of testifying experts to ten (the parties had exchanged reports from fifteen or more experts each by that time) and the parties exchange a final round of supplemental expert reports. As stated by Roche's

1

counsel, Ms. Ben-Ami: "By June 13th, Roche will respond to the Amgen reports that were put in on June 1st and June 4th, and whatever needs to be done there for any new arguments that have been presented."[1] Under this agreement, Roche could submit seven more supplemental reports by June 13, 2007, for a total of eight supplemental reports in response to new opinions given in Amgen's June 1 and June 4 reports. In return, Amgen would be allowed to submit three supplemental reports by June 20, 2007.

### B. Roche's June 13 "supplemental" reports improperly incorporate entire reports and parts of reports from Roche's non-testifying experts

As stated by Roche's counsel before this Court, Roche agreed to limit the June 13 supplemental reports to a narrowly defined area – new opinions set forth in Amgen expert reports served on June 1 or June 4. The table below illustrates how Roche's June 13 supplemental reports improperly incorporated the opinion of one or more of Roche's non-testifying experts as well as improperly responded to prior opinions of Amgen experts not contained in Amgen's June 1 or June 4 expert reports (instances of Roche's incorporation of old expert reports are shown in orange, and Roche's responses to prior opinions of Amgen experts are shown in yellow):

---

[1] *See* Transcript from the June 6, 2007 Scheduling Conference at p. 21, lines 19-24.

**Roche June 13, 2007 Reports** | **Pre-June 2007 Source**

| Roche June 13, 2007 Reports | May 2007 Report | April 2007 Report |
|---|---|---|
| **Flavell**<br>• Limits of detection in RIA squares in a jar analogy<br>• Cell culture, RIA kit & proper controls | **Zaroulis**<br>• 5/24/07 Report<br>• Limits of detection in RIA squares in a jar analogy | **Kolodner**<br>• 4/30/07 Report cell culture conditions<br>**McLawhon**<br>• 4/30/07 Report RIA kit & proper controls |
| **Lowe**<br>• Lai tryptic fragment sequencing work<br>• Fromm entire Report | **Orkin**<br>• 5/11/07 Report<br>• Lai tryptic fragment sequencing work | **Fromm**<br>• Entire 4/6/07 Report |
| **Kadesch**<br>• Indefiniteness of U of EPO as determined by RIA<br>• Lai tryptic fragment sequencing work | **Flintoff**<br>• 5/24/07 Report<br>• Indefiniteness of U of EPO as determined by RIA | |
| **Klibanov**<br>• State of the art of pegylation mid-1980s | **Torchilin & Katre**<br>• 5/11/07 Reports<br>• State of the art of pegylation mid-1980s | |
| **Spinowitz**<br>• "humps" in rEPO v. uEPO time curves<br>• Lieberman, Vollmar & Fishbane entire Reports | **Benet**<br>• 5/11/07 Report "humps" in rEPO v. uEPO time curves<br>**Lieberman, Vollmar, Fishbane**<br>• Entire 5/11/07 Reports | |
| **Longmore**<br>• Mayersohn entire Report | **Mayersohn**<br>• Entire 5/11/07 Report | |
| **Bertozzi**<br>• Imperiali entire report<br>• Cords' normo-mouse data | **Imperiali**<br>• Entire 5/11/07 Report<br>**Cords**<br>• 5/11/07 Report normo-mouse data | |

3

### III.    ARGUMENT

Roche's violated the parties' agreement to limit the scope of its June 13 supplemental reports by incorporating the expert reports of its non-testifying experts, Drs. Flavell, Lowe, Kadesch, Spinowitz, Longmore, and Bertozzi (shown in orange in the table). These portions of the June 13 expert reports of Roche should be excluded and Roche's experts precluded from presenting testimony based on these improperly incorporated reports. In addition, as shown in yellow in the table, the June 13 reports of Dr. Flavell, Lowe, Klibanov, and Spinowitz respond to opinions provided by Amgen's experts well before the agreed upon June 1 cut-off, and consequently, those Roche experts should be precluded from testifying at trial with respect to those topics.

#### A.    Roche's June 13 reports that wholly incorporate reports from Roche's non-testifying experts should be excluded

Roche violated the agreement of the parties to limit the number of testifying experts to ten by, in effect, doubling up on its experts, as follows: (a) Dr. Lowe incorporated Dr. Fromm's entire April 6 report; (b) Dr. Bertozzi incorporated Dr. Imperiali's entire May 11 rebuttal report; (c) Dr. Longmore incorporated Dr. Mayersohn's entire May 11 rebuttal report; (d) Dr. Spinowitz incorporated the May 11 rebuttal reports of Drs. Lieberman, Vollmar and Fishbane. Roche's doubling up on expert reports like this is prejudicial to Amgen by requiring Amgen to devote its resources to confront material from fifteen experts instead of the agreed upon ten.

#### B.    Dr. Kadesch's indefiniteness argument should be excluded since it incorporates Drs. Flintoff and Zaroulis arguments

Dr. Kadesch's June 13 "supplemental" report incorporated previous expert testimony and should be excluded because he is simply reiterating arguments made by Drs. Flintoff and Zaroulis in their April and May 2007 reports. With this incorporation, Roche violated the parties' agreement limiting the number of testifying experts and also that part of the agreement regarding

4

the scope of the June 13 supplemental reports. Dr. Kadesch does not reference Drs. Flintoff and Zaroulis by name, however, his report simply paraphrases the indefiniteness argument of Drs. Flintoff and Zaroulis. The following paragraphs from the Flintoff, Zaroulis, and Kadesch reports show Kadesch's adoption of the indefiniteness arguments of Drs. Flintoff and Zaroulis:

> "The antibody used in an RIA may detect fragments of EPO or other materials present in a test mixture that cross react with the antibody being used. It is therefore my opinion that one cannot conclude from the data provided by Dr. McLawhon that the production levels that he reported reflect levels of 'erythropoietin' as defined by the Court."[2]
>
> "One skilled in the art would instantly understand that 'U of erythropoietin' is a measure of biological activity alone, and would know that radioimmunoassays cannot measure biological activity. The only way to measure biological activity of EPO and obtain a value for Units of EPO is with an *in vivo* bioassay. Therefore I conclude that under no circumstance could one of skill in the art at the time of the invention have understood the clear boundaries of this limitation present in claims 1-6 of the '349 patent."[3]
>
> "Erythropoietin Units of biological activity simply cannot be measured by RIA. Moreover, it is unclear whether the RIA is even measuring erythropoietin, because the assay will also detect fragments, analogs, inactive protein, and other artifacts."[4]

Dr. Kadesch's RIA argument is not a response to any expert opinion set forth in Amgen's June 1 or June 4 reports. Permitting Dr. Kadesch to testify regarding the RIA arguments of other Roche experts would effectively prevent Amgen from responding to Dr. Kadesch's RIA argument. Amgen's disadvantage is increased by the fact that Drs. Flintoff and Zaroulis were deposed before Dr. Kadesch submitted his June 13 report. Roche waited until Drs. Flintoff and Zaroulis's arguments were tested at a deposition before incorporating them into Dr. Kadesch's June 13 expert report, thereby dropping Drs. Flintoff and Zaroulis's less successful arguments. This type of gamesmanship, if permitted, would allow Roche to test out all of its arguments, and

---

[2] Expert Report of Wayne Flintoff, dated May 24, 2007, at ¶ 17.

[3] Expert Report of Charles Zaroulis, dated April 6, 2007, at ¶¶ 74-75.

[4] Expert Report of Thomas Kadesch, dated June 13, 2007, at ¶ 34.

5

then pick the strongest arguments for inclusion in Dr. Kadesch's later expert report. In doing this, Roche wasted Amgen's time and resources spent in responding to and deposing non-testifying expert witnesses and now seeks the unfair advantage of a second chance to craft an improved expert report.

The parties entered into the June 6th agreement to avoid the very issues that Roche has created by expanding the scope of the subject matter that could be included in Roche's June 13 reports. For these reasons, this Court should preclude Dr. Kadesch from testifying regarding the opinions incorporated from the prior reports of Drs. Flintoff and Zaroulis.

### C. Dr. Flavell should be precluded from testifying regarding Drs. Kolodner and McLawhon's testing

In his June 13 report, Dr. Flavell included a new argument addressing testing of Roche's EPO-producing CHO cells by Amgen's expert Dr. Kolodner. Dr. Flavell submitted a new argument that Dr. Kolodner failed to grow robust cell cultures under the right conditions, and therefore Amgen's evidence of infringement is flawed.[5] Dr. Kolodner's reports regarding the subject test results were submitted to Roche on April 6 and April 30—not as part of Amgen's June 1 or June 4 reports. Dr. Flavell also added a new argument directed to whether Dr. McLawhon failed to run proper controls and improperly used the RIA kit.[6] Again, this subject matter was submitted in Dr. McLawhon's April 30 and May 11 reports, not in any of Amgen's June 1 or June 4 reports. Therefore, none of these arguments are properly included in Dr. Flavell's June 13 report.

---

[5] Expert Report of Richard Flavell, dated June 13, 2007, at ¶¶ 16-33.

[6] *Id.* at ¶¶ 16 and 30-53.

6

Roche's insertion of these new arguments in Dr. Flavell's June 13 report violated the parties June 6, 2007. agreement, and therefore, Dr. Flavell should be precluded from testifying on these topics at trial.

### D. Dr. Bertozzi should be precluded from testifying regarding the opinion incorporated from Dr. Cords' May 11 report

In Dr. Bertozzi's June 13 report, she discusses Dr. Cords' experiments concerning biological reactions to different kinds of glycosylated and sialylated EPO and CERA that were previously disclosed in Dr. Cords's May 11 report.[7] Dr. Bertozzi's argument is not in response to any new opinion by Amgen 's experts presented on June 1 or June 4, and therefore, is outside the scope of the parties' June 6 agreement. Dr. Bertozzi's testimony should be excluded to the extent it relies on this improperly supplemented material.

### E. Dr. Spinowitz's should be precluded from testifying on topics raised in Dr. Benet's May 11 report and the Integrated Summary of Efficacy Data discussed in other May 11 reports

In his June 13 report, Dr. Spinowitz responded to the opinion of Amgen's expert, Dr. Benet, regarding the "humps" in the patient data from the Baron-Goldwasser clinical study. Dr. Benet's opinion is not new, it was raised in his May 11 report.[8] Dr. Spinowitz also improperly incorporates opinions regarding the Integrated Summary of Efficacy Data,[9] as previously detailed in the May 11 reports of Drs. Lieberman and Fishbane.[10] Dr. Spinowitz's testimony should be excluded to the extent it relies on his improperly supplemented June 13 report.

---

[7] Expert Report of Bertozzi, dated June 13, 2007 at ¶¶ 68-70.

[8] Expert Report of Benet, dated May 11, 2007 at ¶¶ 22-25.

[9] *Id.* at ¶ 54.

[10] *See* Expert Report of Lieberman, dated May 11, 2007, at ¶¶58-77; Expert Report of Fishbane, dated May 11, 2007, at ¶¶ 58-73.

### F. Dr. Klibanov's discussion of the state of the art of pegylation in the mid-1980s should be excluded because it is not in response to any new opinion of Amgen's expert

Dr. Klibanov's discussion of the state of the art of pegylation in his June 13 report responds to Drs. Torchilin's and Katre's May 11 reports, not to any opinion by Amgen's experts provided in the June 1st and 4th reports. Thus, Dr. Klibanov's new arguments regarding the state of the art of pegylation violates the parties' June 6 agreement. Accordingly, Dr. Klibanov's discussion on pegylation in his June 13 expert report is improper, and such opinions and evidence should be excluded.

## IV. CONCLUSION

Roche experts should be precluded from testifying at trial regarding subject matter that was improperly included in their June 13 expert reports in violation of the parties agreement. Accordingly, the following opinions and evidence should be excluded: (a) Dr. Lowe's reliance on the opinions and evidence of Dr. Fromm; (b) Dr. Kadesch's opinions and evidence regarding the indefiniteness of Amgen's radioimmunoassay claim; (c) Dr. Flavell's opinions and evidence regarding Dr. McLawhon's alleged failure to run proper controls and proper use of the RIA kit; (d) Dr. Bertozzi's opinions and evidence incorporated from Dr. Imperiali's report or any mention of Dr. Cords' normo-mouse data; (e) Dr. Longmore's opinions and evidence incorporated from Dr. Mayersohn's report; (f) Dr. Spinowitz's opinions and evidence regarding Dr. Benet's opinion on "humps" in rEPO v. uEPO time curves and any mention of Drs. Lieberman and Fishbane's reports and the Integrated Summary of Efficacy Data; and (g) Dr. Klibanov's opinions and evidence regarding the state of the art of pegylation in the mid-1980s.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Date: August 24, 2007 | AMGEN INC.,<br>By its attorneys, |
|  | */s/ Michael R. Gottfried* |
| Of Counsel: | D. DENNIS ALLEGRETTI (BBO#545511)<br>MICHAEL R. GOTTFRIED (BBO#542156) |
| STUART L. WATT<br>WENDY A. WHITEFORD<br>MONIQUE L. CORDRAY<br>DARRELL G. DOTSON<br>KIMBERLIN L. MORLEY<br>ERICA S. OLSON<br>AMGEN INC.<br>One Amgen Center Drive<br>Thousand Oaks, CA   91320-1789<br>(805) 447-5000 | PATRICIA R. RICH (BBO#640578)<br>DUANE MORRIS LLP<br>470 Atlantic Avenue, Suite 500<br>Boston, MA 02210<br>Telephone:     (857) 488-4200<br>Facsimile:      (857) 488-4201<br><br>LLOYD R. DAY, JR. (*pro hac vice*)<br>DAY CASEBEER<br>MADRID & BATCHELDER LLP<br>20300 Stevens Creek Boulevard, Suite 400<br>Cupertino, CA 95014<br>Telephone:     (408) 873-0110<br>Facsimile:      (408) 873-0220<br><br>WILLIAM GAEDE III (*pro hac vice*)<br>McDERMOTT WILL & EMERY<br>3150 Porter Drive<br>Palo Alto, CA 94304<br>Telephone:     (650) 813-5000<br>Facsimile:      (650) 813-5100<br><br>KEVIN M. FLOWERS (*pro hac vice*)<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Sears Tower<br>Chicago IL 60606<br>Telephone:     (312) 474-6300<br>Facsimile:      (312) 474-0448 |

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of electronic filing and paper copies will be sent to those indicated as non-registered participants on August 24, 2007.

                                                         */s/ Michael R. Gottfried*
                                                         Michael R. Gottfried