# EXHIBIT 11

IN THE HIGH COURT OF JUSTICE     CH 1992 K No 8550
                                  CH 1993 K No 937
CHANCERY DIVISION                 CH 1993 B No 4552
                                  CH 1993 C No 6076
PATENTS COURT

In the matter of European Patents (UK) Nos. 148,605; 209,539 and 411,678 and in the matter of petitions for revocation thereof by Boehringer Mannheim GmbH and Cilag Limited and in the Matter of actions for infringement thereof by, inter-alia, Kirin-Amgen Incorporated and Boehringer Mannheim GmbH

---

EXHIBIT to AFFIDAVIT OF STEVEN MICHAEL ODRE

---

This is the Exhibit marked "SMO.10" referred to in the affidavit sworn by STEVEN MICHAEL ODRE on the 21 day of July 1995 at Thousand Oaks, CA, U.S.A.

*[signature]*     Before me     *[notary seal: CAROLYN G. STICE, COMM. # 1037535, Notary Public — California, VENTURA COUNTY, My Comm. Expires AUG 28, 1998]*

*Carolyn D. Stice*
Notary Public

950710C.GEM

291

AM 67 002435
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br>        Plaintiff,<br><br>v.<br><br>BOEHRINGER MANNHEIM, GmbH,<br>        Defendant. | Civil Action No. 93-11512-NG |

MEMORANDUM AND DECISION

GERTNER, D.J.:

I.   INTRODUCTION

This case involves an allegation by plaintiff Columbia University ("Columbia") of patent infringement against defendant Boehringer Mannheim, GmbH ("BMG"), a German corporation having its principal place of business in Mannheim, Germany. In essence, Columbia alleges that BMG induced or otherwise collaborated with a Massachusetts based company, Genetics Institute ("GI") to produce the drug Erythropoietin ("EPO")[1] using methods for which Columbia holds the patents.

BMG filed, in lieu of an answer, a motion to dismiss for lack of personal jurisdiction. BMG claimed that it had "virtually no" contacts with Massachusetts and that whatever contacts it did have were insufficient to subject it to personal jurisdiction by this Court.

On March 4, 1994, the parties executed a joint statement under Local Rule 16.1(D), by which they agreed to conduct

---

[1] EPO is useful in treating end-stage renal disease.

AM 67 002436
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00787110

discovery limited to facts relating to personal jurisdiction. That discovery has since been completed. For the reasons stated below, defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

II.  **FACTS**

The facts relevant to the jurisdictional issue are essentially undisputed. BMG is a multinational pharmaceutical manufacturer, with its principal offices in Mannheim, Germany. It has over 9,000 employees, and worldwide sales in excess of $1 billion. BMG holds in excess of 600 United States patents, and has itself been the plaintiff in United States patent litigation, including litigation in the District of Massachusetts. See Boehringer Mannheim GmbH v. Mycogen Corp., 960 F.2d 155 (Fed. Cir. 1992); Boehringer Mannheim GmbH v. Genzyme Corp., C.A. 89-825 (D.Mass. 1989).

In 1984, BMG and GI began negotiations concerning a proposed collaboration in the production of EPO, using recombinant DNA technology. The initial meeting between the two firms took place in Germany, but many negotiation sessions after that took place in Massachusetts.

On October 8, 1985, GI and BMG entered into a "Development and License Agreement" ("the D&L Agreement"). This agreement was executed in Boston, and provided that BMG would fund a research project, to be conducted by GI in Massachusetts, "utilizing recombinant DNA technology for producing [EPO] on a commercially

2

AM 67 002437
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

293

feasible basis for use in humans." Under the terms of the agreement, BMG would pay GI to attempt to "scale up" certain manufacturing processes involving GI's patented technology, in order to determine if these technologies could be used to make EPO on a commercially feasible basis. In the event that GI's technology proved commercially feasible, GI agreed to transfer it under license to BMG. Alternatively, GI agreed to produce EPO at its own facility for sale to BMG.

The D&L Agreement specifically contemplated that BMG's use of GI's manufacturing process might infringe certain third-party patents. Accordingly, it contained a provision permitting BMG to deduct from its royalty payments to GI the costs of licensing payments BMG might have to make to third parties in order to legally produce or sell EPO.

In October, 1987, GI (along with Chugai Pharmaceutical Co.) was sued by Amgen, Inc. Amgen alleged that GI's process for producing EPO infringed certain patents which it owned.[2] See Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd., 927 F.2d 1200 (Fed.Cir. 1991) cert. den. 502 U.S. 856 (1991). In response to this development, and in anticipation of a possible injunction against GI's further production of EPO in the United States, GI and BMG agreed to a "bailment" of EPO producing cells to BMG in Germany. By removing the cells from the United States, BMG and GI insured that they would be able to continue their

---

[2]These patents are distinct from the patents at issue here.

3



AM 67 002438
SUBJECT TO CONFIDENTIAL
PROTECTIVE ORDER

294

AM-ITC 00787112

APR 28 '93  10:51AM CMS

collaboration in Germany notwithstanding any adverse ruling by a United States Court.

As it turned out, the district judge refused to grant an injunction against the production of EPO, reasoning that it would be inhumane to deny the drug to the many thousands of patients who could benefit from it. Instead, on February 7, 1989, he ordered that all profits from its sale be placed in escrow pending the outcome of the lawsuit. See Amgen, 927 F.2d at 1205.

On January 11, 1988, BMG and GI entered into a further agreement ("the Supply Agreement") concerning the production of EPO. Under this agreement, BMG agreed to purchase 130 grams of EPO produced by GI in Massachusetts, at a selling price of $200,000 per gram. BMG also agreed to indemnify GI for part of the damages arising out of the Amgen patent suit. Ultimately, BMG paid over $5 million into the Amgen escrow account under this provision.

Also in 1988, BMG agreed to supply GI in Massachusetts with EPO which it had reformulated in Germany, for use in a study of Jehovah's Witnesses with end-stage renal disease.

On March 5, 1991, the Federal Circuit Court of Appeals ruled that GI's methods for producing EPO infringed on Amgen's patents. Amgen, 927 F.2d at 1216-1219. Accordingly, GI was required to cease all production of EPO in the United States. Shortly thereafter, on May 30, 1991, GI and BMG entered into an agreement in Massachusetts modifying their earlier D&S Agreement. Under the terms of this modification, BMG and GI agreed to collaborate

4

AM 67 002439
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00787113

APR 25 '95  10:31AM CH&S

on the development of "serum-free" EPO (apparently suitable for Jehovah's Witnesses, who refuse medicines containing blood products). The work was to be done in Germany by GI personnel. Under the terms of the agreement, GI was to be paid fees in excess of $5 million.

Columbia asserts that during the 10 years period from 1985 to the present, BMG paid to GI in excess of $100,000,000 in connection with GI's EPO-related work. Although the documents supporting this claim have not been submitted, it is apparent from the documents that I do have that BMG has paid GI many millions of dollars to support its EPO related work in Massachusetts. See also Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd., 808 F.Supp 894, 897 (D.Mass. 1992) (stating that GI's sales of EPO to BMG amounted to $34,100,000).

III. **STANDARD OF REVIEW**

When a defendant moves to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to make a prima facie showing of jurisdiction. United Elec. Workers v. 163 Pleasant Street Corp., 987 F.2d 39, 43-44 (1st Cir. 1993). Under this standard, the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. at 44. The plaintiff cannot rely on pleadings alone, but must present evidence to support its claim. Id. When the court declines to

296

AM 67 002440
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00787114

hold an evidentiary hearing³, it does not make findings of fact, but must "accept properly supported proffers of evidence by a plaintiff as true and [must] make[] its ruling as a matter of law." Id.

In considering the factual basis for jurisdiction, the court should not require the plaintiff to establish the legal validity of its claim and the right to the relief sought. U.S. v. Montreal Trust Co., 358 F.2d 239, 242 (2nd Cir. 1966) cert. den. 384 U.S. 919; Val Leasing Inc. v. Hutson, 674 F.Supp. 53, 55 (D.Mass. 1987). It is sufficient that the plaintiff establish prima facie evidence of sufficient transactions in Massachusetts to place the dispute under the jurisdiction of the court. Montreal Trust Co., 358 F.2d at 242.

IV. **ANALYSIS**

Based upon the undisputed facts described above, it is apparent to me that the plaintiff has met its burden of establishing prima facie jurisdiction in this case. The essence of plaintiff's claim is that BMG induced GI to infringe its patents in Massachusetts, by entering into the aforementioned agreements under which GI would develop processes in Massachusetts for the commercial production of EPO. Although BMG denies that it had any purposeful contacts with Massachusetts in

---

³The court has the option to hold an evidentiary hearing when, for example, the evidence is conflicting. Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 676 (1st Cir. 1992). As the evidence before me is all undisputed, I find no need for an evidentiary hearing in this instance.

6

297

AM 67 002441
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00787115

connection with this matter, the undisputed evidence clearly shows that BMG conducted extensive business negotiations in Massachusetts, resulting in contracts with GI worth in excess of $34 million. I find that these activities are sufficient to satisfy both the Massachusetts long arm-statute and the requirements of constitutional due process.

### A. Long-Arm Jurisdiction

With some exceptions not relevant here, a federal district court may only exercise jurisdiction to the extent permitted by the law of the state in which it sits. Fed.R.Civ.P. 4(e). The Massachusetts Long-Arm Statute, M.G.L. ch. 223A, § 3 asserts jurisdiction up to the limits permitted by the United States Constitution, so long as one of a number of enumerated bases has been satisfied. Nova Biomedical Corp. v. Moller, 629 F.2d 190, 192 (1st Cir. 1980) (citing Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1 (1979)). Accordingly, the first step in my analysis must be to consider whether BMG has made a contact with Massachusetts of a type enumerated by the statute.

One type of contact which subjects a defendant to jurisdiction under the statute is "transacting any business" in Massachusetts, out of which arises the cause of action. M.G.L. ch. 223A § 3(a). "Both federal and state courts have regularly construed the 'transacting any business' language of the statute in a generous manner." United Electrical Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1087 (1st Cir. 1992). Accordingly, the defendant need not have an ongoing physical presence in

7

AM 67 002442
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

298

AM-ITC 00787116

Massachusetts, so long as it "attempted to participate in the commonwealth's economic life." Id. BMG's activities in Massachusetts clearly satisfy this test.

In Carlson Corp. v. University of Vermont, 380 Mass. 102 (1980), the Supreme Judicial Court held that the mere signing of a contract in Massachusetts, to perform construction work in Vermont, was sufficient to establish personal jurisdiction over the defendant in an action for breach of that contract. In Carlson, the defendant's contacts with Massachusetts were even more attenuated than those of BMG here. As in this case, the defendant was not the party which originally solicited business in Massachusetts, rather it was the Massachusetts plaintiff which solicited the business of the out-of-state defendant. But unlike this case, the contract at issue did not involve the performance of any work in Massachusetts. The contract was for the construction of university facilities entirely in Vermont. Nonetheless, the Court held that the defendant's signing of the contract in Massachusetts was sufficient to satisfy the Massachusetts Long-Arm Statute. Since BMG's contacts here are at least the equal of those in Carlson, I find that they satisfy the statutory requirement.

B. Constitutional Due Process

Having found that BMG's contacts satisfy the letter of the Massachusetts Long-Arm Statute, I must still determine whether the exercise of jurisdiction by this Court would offend due process. Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983 (1st

8

AM 67 002443
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

299

AM-ITC 00787117

APR 28 '95 16:53HM CMS                                                    P.10/16

Cir. 1986). Due process requires that a defendant should not be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).⁴ Rather, jurisdiction may

---

⁴ The Supreme Court has developed an extensive body of case law describing the limitations that the 14th Amendment's Due Process Clause places on a state's exercise of personal jurisdiction over non-residents. See International Shoe v. Washington, 326 U.S. 310 (1945); Shaffer v. Heitner, 433 U.S. 186 (1977); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985); Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102 (1987). These cases all focus on whether the defendant has "minimum contacts" with the forum state sufficient to justify personal jurisdiction. This jurisprudence applies equally to state courts and to federal courts sitting in diversity and applying state law. See, e.g., Burger King, supra.

When a federal court is hearing a cause of action based solely on federal law, however, it would appear that the 14th Amendment, which limits only state power, would be inapplicable. Rather, due process limitations, if any, would derive from the 5th Amendment, which limits federal power. See Trans-Asiatic Oil Ltd. v. Apex Oil Co., 743 F.2d 956, 958 (1st Cir. 1984) (federal court, sitting in admiralty, is not limited by 14th Amendment due process and may, pursuant to admiralty rules, attach property nationwide, notwithstanding lack of contacts of defendant with forum state). See also Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97 (1987) (assuming without deciding that 5th Amendment applies). Because the Supreme Court has never directly addressed the issue, however, the degree to which 5th Amendment due process considerations limit federal jurisdiction is not well established. See Cummings v. Hanson, No. 94-10374-NG (D.Mass. 1995) Slip Op. at p. 5, n.13; Wright & Miller, Federal Practice and Procedure: Civil 2d § 1067.1.

It appears settled that due process is not offended when a federal statute specifically authorizes a court to exercise jurisdiction over a person found anywhere in the United States. See Trans-National, 743 F.2d at 958; Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 313-314 (2nd Cir. 1981) cert. den. 454 U.S. 1148 (1982); Wright & Miller, Federal Practice and Procedure: Civil 2d, § 1067.1, p. 311-312 (1987). It is unclear, however, what due process concerns are raised when, as here, federal law specifically adopts state long-arm statutes as a basis for the jurisdiction of federal courts. Compare Burstein v. State Bar of California, 693 F.2d 511, 514-515 (9th Cir. 1982) (where jurisdiction is based on state long-arm statute, defendant must have minimum contacts with forum

9

AM 67 002444
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER



AM-ITC 00787118

only be exercised when the defendant acts in some way as to "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id.

"When a cause of action arises, [as does this one], from the defendant's contacts within the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts." Ealing Corp., 790 F.2d at 983. When a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws", "a single act within the forum may be sufficient to warrant the assertion of jurisdiction." Id. The ultimate question is whether

---

state for court to exercise jurisdiction); Handley v. Indiana and Michigan Electric Co., 732 F.2d 1265, 1272 (6th Cir. 1984) (applying 14th amendment due process analysis to determine personal jurisdiction over Jones Act defendant) with Centronics Data Computer Corp. v. Mannesmann, A.G., 432 F.Supp. 659, 664 (D.N.H. 1977) (in antitrust action against foreign corporation, district court would aggregate contacts of defendant throughout United States to find personal jurisdiction); Cyromedics, Inc. v. Spembly, Ltd., 397 F.Supp 287, 290-291 (D.Conn. 1975) (in patent infringement case, district court would consider aggregate of contacts by foreign defendant with United States as a whole in determining personal jurisdiction); Engineered Sports Products v. Brunswick Corp., 362 F.Supp 722, 728 (D.Utah 1973) (same). What does seem clear, however, is that any limitations placed on federal jurisdiction by the 5th Amendment would be no greater than those placed on state courts by the 14th Amendment.

In the instant case, both parties have relied heavily on cases construing 14th Amendment minimum contacts doctrine to justify their respective positions, and I have analyzed BMG's contacts with Massachusetts with that doctrine in mind. Because I find that BMG's contacts with Massachusetts are sufficient to satisfy 14th Amendment due process, I conclude that they must also satisfy any due process considerations based on the 5th Amendment.

10

301

AM 67 002445
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00787119

"defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The First Circuit has suggested a three part test for ascertaining jurisdiction when the cause of action is based on the defendant's contacts with the forum state. "First, the claim underlying the litigation must arise out of, or relate to, the defendant's forum state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of [five] Gestalt factors, be reasonable." United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The Court has described these five "Gestalt" factors as follows: "(1) the defendant's burden of appearing, (2) the state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining convenient and effective relief, and (5) the common interests of all sovereigns in promoting substantive social policies." Id. at 1088.

The acts of the defendant which precipitated this action satisfy these requirements. First, plaintiff's claim clearly arises out of the activities of BMG in Massachusetts. BMG signed

11

302

AM 67 002446
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00787120

a contract in Massachusetts to conduct a joint venture with GI involving the production of tens of millions of dollars worth of EPO, the production of all of which allegedly infringes Columbia's patent.

Second, BMG's contact with Massachusetts was not fleeting or fortuitous, but represented a purposeful availment of the privilege of conducting activities here. Not only did BMG sign the D&L contract in Massachusetts, it engaged in frequent and continuous contacts with and visits to GI in Massachusetts over a 10 year period. Moreover, BMG's D&L Agreement was not merely a contract to purchase goods in Massachusetts for delivery outside of Massachusetts. Rather it created, by its own wording, a "collaboration" between the two companies. Although its appears that only GI personnel actually performed experimental or production work in Massachusetts, BMG's connection with that work was far more intimate than that of a mere customer. BMG was the principal underwriter of the research in question. If the research produced valuable technology, BMG was to have an exclusive license to use the technology outside the United States. Moreover, BMG retained, under the D&L agreement, the right to prosecute foreign patent applications on any technology developed by GI which GI failed to prosecute itself. Thus, BMG's connection to and complicity with GI's EPO related activities in Massachusetts is manifest.

Finally, in light of the Gestalt factors mentioned above, there is nothing unreasonable about exercising jurisdiction over

12

AM 67 002447
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

303

AM-ITC 00787121

BMG in this instance. While it will obviously inconvenience BMG to some extent to appear in this forum, BMG is no stranger to these parts, having initiated its own lawsuits here when its interests suited it. See <u>Boehringer Mannheim, GmbH v. Genzyme Corp.</u>, <u>supra</u>. I am confident that a multinational corporation with over $1 billion in annual sales will not suffer unduly by being called to account in Massachusetts for the activities it has conducted here.

The second Gestalt factor, which requires me to consider the interests of the forum in adjudicating the dispute, also weighs in favor of jurisdiction. Because this is a case based on federal law, it is the interests of the United States, rather than Massachusetts, which I must consider here. It is axiomatic that the United States has a strong interest in adjudicating disputes concerning United States patents which arise within its borders.

The third Gestalt factor, the convenience of the plaintiff, obviously favors this forum, as the plaintiff is located in the United States.

The fourth Gestalt factor, the interest of the judicial system in the most effective resolution of this dispute, also favors the retention of jurisdiction here. As noted above, this involves a dispute over United States patent laws. There is no indication that the plaintiff would be entitled to relief in any jurisdiction other than this one. In particular, since all of the acts complained of took place in Massachusetts, there is no

13

AM 67 002448
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER



AM-ITC 00787122

indication that the plaintiffs could obtain relief in a German court.

The final Gestalt factor requires me to examine whether the interest of Germany would be adversely affected by the exercise of jurisdiction here. This is not a case in which the court is being asked to pass on the legitimacy of actions taken outside of the United States. Compare Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 114 (1987) (holding that exercise of jurisdiction in California over Japanese company which manufactured tire parts in Japan and sold them to Chinese company was unfair). Rather it is a case in which a United States Court is to pass judgment on actions taken in or directed at the United States. I am unaware of any German social policy opposing the exercise of jurisdiction here (and defendant has proffered none). Even if such a policy existed, however, it would be outweighed by the interest of the United States in enforcing its own patent laws.

V.   **CONCLUSION**

For all the foregoing reasons, defendant's Motion to Dismiss the Complaint for lack of personal jurisdiction is **DENIED**.

SO ORDERED.

Dated: April 19, 1995

NANCY GERTNER, U.S.D.J.

-14-

305

AM 67 002449
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AM-ITC 00787123

APR 26 '95 10:34AM CH&S 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br>     Plaintiff, <br><br> v. <br><br> BOEHRINGER MANNHEIM, GmbH, <br>     Defendant. | Civil Action No. 93-11512-NG |

ORDER

GERTNER, D.J.:

Before me is a motion by defendant Boehringer Mannheim GmbH to Dismiss for Lack of Personal Jurisdiction, filed on December 27, 1993 (docket entry number 11). For the reasons set forth in the accompanying memorandum, defendant's motion is DENIED.

SO ORDERED.

Dated:  April 19, 1995

/s/ Nancy Gertner
NANCY GERTNER, U.S.D.J.

AM 67 002450
CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

306

AM-ITC 00787124