UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., <br><br> Plaintiff, <br><br> vs. <br><br> F. HOFFMANN-LA ROCHE LTD, ROCHE DIAGNOSTICS GmbH and HOFFMANN-LA ROCHE INC., <br><br> Defendants. | Civil Action No. 05-12237 WGY |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM REGARDING DEFENDANTS' MOTION TO PRECLUDE TESTIMONY FROM BELATEDLY DISCLOSED FACT WITNESSES**

**I.    INTRODUCTION**

The Court has already recognized in its 8/31/07 Order, that whether Amgen's belatedly disclosed witness, Dennis Fenton "may testify as fact witnesses is a very close question, one that will turn on a careful review of the mandatory disclosure provisions of Rule 26." In its Supplemental Memorandum Regarding Defendants' Motion to Preclude Testimony From Belatedly Disclosed Fact Witnesses (D.I. 870-2), Amgen has offered no additional evidence or arguments to excuse its violation of Rule 26. Thus, the Court should resolve the question posed in its 8/31 Order against Amgen and, pursuant to Rule 37(c)(1), preclude Mr. Fenton from testifying as an eleventh hour fact witness for whom no meaningful discovery was provided.

**II.   ARGUMENT**

Roche's 7/16/07 Memorandum In Support of Its Motion to Preclude Testimony from Amgen's Belatedly Disclosed Fact Witnesses (D.I. 725) sets forth how Amgen surprised Roche by inexplicably disclosing Mr. Fenton in a July 10, Third Supplemental Disclosure Statement, more than three months after the close of fact discovery. As Amgen admits, Mr. Fenton was one of the original 15 Amgen employees and purportedly has knowledge regarding the "early developments in the EPO project" at Amgen. (Amgen Memo. at 3). This subject matter is discoverable information that Amgen *will use* to support its claims and defenses. Therefore, under Rule 26(a)(1)(A) Amgen was *obligated* to disclose Mr. Fenton at the time it knew that Mr. Fenton possessed relevant information which -- given Mr. Fenton's history with Amgen -- was certainly by the time Amgen provided its first Rule 26 disclosure in this case. Roche was denied complete discovery on Mr. Fenton, having been disclosed well after the close of even expert discovery in this case, on the eve of trial and also while Roche still had to deal with late depositions of Amgen's witnesses Dr. Brugnara, Dr. Friedman, Ms. Nancy Spaeth and Roche's Dr. Spinowitz all necessitated by Amgen replacing its expert witness Dr. Eschbach. Amgen had

1

produced *zero* custodial documents from Mr. Fenton's files up until just last week on August 21, 2007 when Amgen produced a scant 100 custodial documents. This last minute production, still over a month after Mr. Fenton's already untimely disclosure, plus a belated offer to depose Mr. Fenton right before trial simply do not constitute fair discovery and do not warrant his late addition as a testifying fact witness. Amgen offers three purported justifications in its Memorandum to support allowance of Mr. Fenton's testimony, none of which are compelling or ameliorate the fundamental unfairness of Amgen's tactics and the prejudice to Roche.

    **A.    Replacing Dr. Rathmann's Testimony with Mr. Fenton's Does Not Excuse Amgen's Untimely Disclosure**

Amgen seeks to introduce Mr. Fenton as a witness pursuant to Rule 26(e)(1)[1] because it contends Mr. Fenton is a replacement witness for Dr. George Rathmann, a Rule 26 witness, who has recently become too ill to testify. Amgen states that Mr. Fenton, one of the original Amgen employees, and still currently employed by Amgen, has the equivalent level of knowledge regarding EPO as Dr. Rathmann, and is therefore just as qualified, if not more so, to serve as a replacement witness.[2] As an initial matter, the appropriate time for Amgen to have disclosed Mr. Fenton as a potential witness, was with its first Rule 26(a)(1) disclosure statement on November 6, 2006. Under Rule 26(a)(1)(E), "a party *must* makes its initial disclosures based on the information then reasonably available to it..." Mr. Fenton is not only a current Amgen employee, but is in fact one its original employees. Further, as Amgen tells it, Mr. Fenton has been intimately involved with the development of Amgen's EPO products, and has considerable knowledge on this subject matter. Thus, Mr. Fenton was clearly a witness with relevant

---

[1] FRCP 26(e)(1) imposes an affirmative duty on a party to supplement its disclosures if a party learns that its disclosure is somehow incomplete or incorrect.

[2] Amgen claims that Mr. Fenton is a current employee, and that his knowledge of certain issues regarding EPO and its development, is more recent than that of Dr. Rathmann. (Amgen Memo. at 2 n. 4).

knowledge to Amgen's claims and defenses and should have been disclosed as such regardless of whether Amgen initially preferred Dr. Rathmann as a witness.

Moreover, there are other witnesses that Amgen did timely disclose and who Roche deposed, such as Dr. Lin, the inventor of the patents-in-suit who joined Amgen in 1981 and Daniel Vapnek, who also joined in 1981 and worked on the EPO project. Surely these witnesses could plausibly provide the testimony Amgen envisioned for Dr. Rathmann and now proffers for Mr. Fenton.

Despite Mr. Fenton's purported importance and familiarity with Amgen, specifically with the development of its EPO products, Amgen never identified Mr. Fenton as a potential witness in any of its interrogatories, and instead waited until July 10, 2007, after determining that Dr. Rathmann was too ill to testify, before disclosing Mr. Fenton as a Rule 26 witness. Amgen's reasoning is that because Dr. Rathmann is too ill to travel, it is then permitted to replace him with a new witness. While this may explain why Amgen wishes to introduce Mr. Fenton, it does not explain why it initially, and consistently, withheld him as a suitable Rule 26 witness. Amgen and its attorneys would be remiss to argue ignorance of Mr. Fenton's existence and availability as a witness as they themselves acknowledge Mr. Fenton's history with the company and the product line. In fact, Amgen even suggested it believes that Mr. Fenton would have always been a more appropriate witness due to his status as a current employee.[3]

Given his status within Amgen, it is implausible for Amgen to argue that it did not disclose Mr. Fenton in the November 6, 2006 disclosure because it did not have "information then reasonably available to it..." regarding Mr. Fenton.[4] Instead, it appears that Amgen has

---

[3] *Id.*

[4] FRCP 26(a)(1)(E).

3

again tried to game its way into an advantageous position by withholding a key witness, until the last minute, in hopes that it would undermine Roche's ability to prepare for trial.

### B. Amgen Has Not Provided Sufficient Discovery Regarding Mr. Fenton

Amgen's second argument to allow Mr. Fenton to testify, that Amgen provided sufficient discovery concerning him, is also unfounded. Amgen's claim that it produced "volumes" of documents regarding Fenton during discovery is disingenuous; as noted above Amgen produced no documents from Mr. Fenton's custodial files up until well after his disclosure. Further, considering the millions of pages of documents that were produced and exchanged during discovery, that Mr. Fenton's name appeared in some documents during fact discovery is of little consequence, and while his name may have appeared occasionally, there is no way Roche could have reasonably been expected to realize his importance in this context. Finally, on August 21, 2007, more than a month after the fact and less than three weeks before the start of trial, Amgen produced a total of 634 documents related to Mr. Fenton, the overwhelming majority of which were either public documents from financial institutions, other publicly available materials, and/or documents previously produced.

Amgen also states they offered Mr. Fenton for deposition since identifying him on July 10, 2007. However, with trial less than 2 months from Fenton's disclosure and with the other late depositions noted above, Roche should not have been expected to divert important resources from its trial preparation to deal with a matter that should have been an issue months ago. Sanctioning such a late deposition for a witness for whom there was no justification for untimely disclosure would merely reward improper discovery tactics.

Roche would be severely prejudiced if Amgen were permitted this untimely introduction of Mr. Fenton as a Rule 26 witness. Fact discovery closed on April 2, 2007, which was followed by an extremely fast paced stage of expert discovery, with rebuttal reports due on May 11, 2007;

4

there have also been over 50 fact depositions and more than 45 expert depositions, taken by both parties, and trial is set to begin in a matter of days. Amgen did not disclose Mr. Fenton as a Rule 26 witness until it served its *Third* Supplemental Disclosure on July 10, 2007. As the Court has previously noted, "the Court will view with extreme skepticism any late proffered discovery." (Electronic ORDER DENYING 235 Motion for Clarification. 1/22/07). The Court has also made clear that, "Discovery is not a game and . . . what is expected and required is a cooperative venture to ascertain the truth." (Electronic ORDER re 340 MOTION to compel continued deposition of Dr. Thomas Strickland and production of related documents. 5/2/07). Due to the seemingly limitless breadth of topics Fenton could potentially speak to and with trial rapidly approaching, Roche cannot reasonably reallocate its resources to handle a matter that should have been disclosed by Amgen months ago. Instead, in what has become a consistent pattern of tactics that undermine Roche's ability to prepare for trial, Amgen again makes an untimely disclosure.

      **C.    The Proffered Subject Matter of Mr. Fenton's Testimony Does Not Justify His Testimony**

Amgen's third reason offered to justify Mr. Fenton's late disclosure is that he is "crucial to Amgen's defense of Roche's §102 and § 103 arguments." (Amgen Memo. at 1). This argument is plainly unavailing; Amgen has identified nothing particularly unique about Mr. Fenton's testimony that could not be provided by other witnesses such as Lin and Vapnek who have ample knowledge of Amgen's early efforts in the EPO project.

Equally perplexing are Amgen's efforts to call Fenton to testify about the commercial success, reputation, and status of Amgen, while simultaneously filing a motion in limine to preclude Roche from referencing the profits or revenues from Amgen's Epogen and Aranesp products. (See D.I. 845). While Roche continues to believe and argue that Amgen has no legal basis to exclude such evidence, surely, if that evidence is indeed impermissible, so too must be

5


the testimony offered from Fenton. It would be inappropriate to, on the one hand, allow Fenton to speak about the commercial success of Amgen, while on the other, prevent the jury from learning the salient facts about the purported commercial success. It seems inconceivable that Amgen is unaware of the paradoxical nature of its arguments. As such, the Court should not reward Amgen for yet another of its tactics aimed at undermining Roche's discovery and trial preparation.

## III.   CONCLUSION

For all the foregoing reasons, Roche respectfully submits that its motion to preclude fact testimony from Mr. Fenton, as an untimely disclosed witness be granted.

Dated:  August 29, 2007
        Boston, Massachusetts

Respectfully submitted,
F. HOFFMANN-LA ROCHE LTD,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE INC.

By its attorneys,

*/s/Thomas F. Fleming*
Leora Ben-Ami (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.


                                                  */Thomas F. Fleming*_____
                                                  Thomas F. Fleming