UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>F. HOFFMANN-LA ROCHE LTD; )<br>ROCHE DIAGNOSTICS GmbH; and )<br>HOFFMANN-LA ROCHE INC. )<br>)<br>Defendants. )<br>) | CIVIL ACTION No.: 05-CV-12237-WGY |

**DEFENDANTS' EMERGENCY MOTION FOR ORDER PRECLUDING AMGEN FROM ADVERTISING IN EASTERN MASSACHUSETTS NOW AND DURING TRIAL**

Within just days of jury selection, Plaintiff Amgen is attempting to inundate the local population (from which the jury pool on Tuesday will be selected) with advertisements promoting Amgen's fame and directly heralding issues that the jury will be called upon to decide in this case. For at least the past week, Boston's local National Public Radio station, WBUR Boston, advertised the following:

> …Amgen…An American <u>biotechnology pioneer</u> and a <u>member of the New England community</u>. Since 1980, Amgen has been discovering and delivering <u>vital medicines to treat serious illness</u>. Amgen is committed to advancing science to dramatically improve peoples [*sic*] lives.

*See* **Exhibit A**, print-out from WBUR.org at http://www.wbur.org/inside/ underwriting/underwriter.asp?UnderwriterID=1625, emphasis added. Advertising on one of Boston's most popular and trusted radio stations is aimed directly at the jury pool for this trial, and delivers the message that Amgen is a pioneer in innovation, a key proposition that the jury will be called upon to decide. Amgen's advertising should be

immediately halted and Amgen should be precluded from presenting evidence or argument that it is a pioneer in innovation and any related secondary evidence. In addition, Amgen has sponsored advertisements in local televisions spots in conjunction with the National Kidney Foundation highlighting diagnosis and treatment of kidney disease, which prominently features pro-Amgen sponsorship. Roche attorneys earlier this week wrote to Amgen asking for a full explanation surrounding this sudden and recent spate of pro-Amgen advertising. *See* **Exhibit B**, August 27, 2007, e-mail from Tom Fleming, Roche counsel, to Renee DuBord Brown and Deborah Fishman, Amgen counsel, Amgen has refused to respond to Roche's request. Amgen's silence belies that these events may be coincidental and only furthers the inference that Amgen has been improperly disseminating information including about issues relevant to this action, in an effort to influence the minds of potential jurors. This can only be viewed as a distortion and abuse of the democratic jury process.

### A. Amgen's Advertising Threatens the Fair and Impartial Administration of Justice

Courts will not hesitate to order a halt to improper advertising until after a verdict has been returned. *United States v. Northrop Corp.*, No. 89-303 PAR, 1990 WL 71352 at *3-7 (C.D. Cal. Feb. 15, 1990)(prohibiting advertising until a verdict in the case was rendered). The Supreme Court itself has made clear that civil litigants have a constitutional right to an impartial jury. *Thiel v. Southern Pac. Co.*, 328 U.S. 217, 220 (1946). "The jury is, after all, one of two defining features of our legal system"; "[w]e place upon juries no less a task than discovering and declaring the truth in each case." Honorable William G. Young, *Vanishing Trials, Vanishing Juries, Vanishing Constitution*, XL Suffolk University Law Review 67, 68-69 (2006). Amgen's pretrial

2

publicity threatens the jury's ability to be fair and impartial and accordingly, Amgen's advertising should be prohibited until the end of trial.

This complex, multi-layered litigation relating to five Amgen patents boils down to the issues of the validity of Amgen's extended patent stronghold on the U.S. EPO market; the questionable conduct of Amgen in prosecuting these patents; and Roche's alleged infringement of Amgen's patents, if indeed a jury finds that Amgen's patents are valid and enforceable. Amgen's calculated subliminal influence on prospective jurors' perception of the character and reputation of Amgen, particularly Amgen's alleged reputation for innovation, target these core issues.

**B.     Restricting Amgen's Speech is Appropriate**

Prohibition of any Amgen advertisements in eastern Massachusetts is reasonable and appropriate under the circumstances. Commercial speech receives only a limited form of first amendment protection and the speech may be restricted if the government's interest in doing so is substantial, the restrictions generally advance the government's asserted interest, and the restrictions are no more extensive than necessary to serve the interest. *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 US 557, 561 (1980); *Northrop*, at *3-7 (prohibiting advertising until a verdict in the case was rendered).

**(1)     This Court has a substantial interest in preventing Amgen from running commercials immediately prior to jury selection.**

Courts have the responsibility of "insuring the integrity of the juridical process." *Northrop* at *5 *citing Levine v. United States District Court*, 764 F.2d 590, 596 (9th Cir.1985). "Given the great potential for subliminal effects on potential jurors from a saturation marketing campaign, the commercials' focus on issues which will be critical in

3

this trial, and the campaign's timing, the court has the substantial interest in curbing this commercial speech" to prevent Amgen from improperly influencing potential jurors. *Northrop* at *5.

**(2)** **Prohibiting Amgen advertising in eastern Massachusetts directly advances the Court's interest.**

The Court's interest is "insuring the integrity of the judicial process," and the threat to the interest is Amgen's advertising campaign. *Northrop* at *4-5. Restraining Amgen from continuing that campaign until the trial ends will directly advance the Court's interest in a fair and impartial jury. *Id.*

**(3)** **Prohibiting Amgen advertising in eastern Massachusetts is a properly tailored restriction.**

Roche simply seeks the prohibition of continued Amgen advertising in the region from which the jury pool will be selected. In addition, since Amgen's advertising goes to issues relevant to the case, particularly concerning secondary considerations of non-obviousness and infringement (e.g., commercial success, long felt need, pioneer inventions, etc.), as a sanction for Amgen's abuse of the jury system, Amgen should be precluded from arguing these facts in opening or during trial to the jury. Lesser restrictions such as jury instructions and voir dire are not feasible alternatives because Amgen's advertisements are subliminal statements of Amgen's overall character, most notably its reputation for innovation. Jurors will not likely recall the advertisement and it will be impossible to detect those individuals who have been influenced and remove them from the jury. *Northrop* at *6 (Noting that advertising relating to the character of the party, as opposed to the litigation itself, may be even more dangerous and permeable because jurors are not likely to recall the advertisements or to recognize the effect of the

4

advertisement on their view or the facts). Furthermore, jury instructions are likely to be ineffective since the advertisements have already reached the jury pool.

### C. The Court Should Also Preclude Amgen from Arguing that it is a Pioneer in Innovation

As a sanction for Amgen's calculated efforts at subliminal influence of prospective jurors' perception of the character and reputation of Amgen, particularly Amgen's reputation for innovation, Amgen should be prohibited from presenting argument or evidence that it is a pioneer in the industry, that it enjoyed commercial success because it is a pioneer in the industry, or any other related facts in order to mitigate the effects of Amgen's advertising on the jury.

## CONCLUSION

For these reasons, Roche respectfully requests that this Court prohibit Amgen from advertising to eastern Massachusetts through any form of media and to preclude Amgen from presenting argument or evidence that it is a pioneer in the industry or any related evidence or secondary considerations.

| | |
|---|---|
| Dated: August 31, 2007<br>Boston, Massachusetts | Respectfully submitted,<br><br>F. HOFFMANN-LA ROCHE LTD,<br>ROCHE DIAGNOSTICS GMBH,<br>and HOFFMANN-LA ROCHE INC.<br><br>*By their attorneys*,<br><br>/s/  Kimberly J. Seluga<br>Lee Carl Bromberg (BBO# 058480)<br>Timothy M. Murphy (BBO# 551926)<br>Julia Huston (BBO# 562160)<br>Keith E. Toms (BBO# 663369)<br>Nicole A. Rizzo (BBO# 663853)<br>Kimberly J. Seluga (BBO# 667655)<br>BROMBERG & SUNSTEIN LLP<br>125 Summer Street<br>Boston, MA 02110<br>Tel. (617) 443-9292<br>kseluga@bromsun.com<br><br>Leora Ben-Ami (*pro hac vice*)<br>Patricia A. Carson (*pro hac vice*)<br>Thomas F. Fleming (*pro hac vice*)<br>Howard S. Suh (*pro hac vice*)<br>Christopher T. Jagoe  (*pro hac vice*)<br>KAYE SCHOLER LLP<br>425 Park Avenue<br>New York, New York 10022<br>Tel. (212) 836-8000 |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

/s/  Kimberly J. Seluga
Kimberly J. Seluga

03099/00501 731789.1

6