IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>F. HOFFMANN-LA ROCHE Ltd, a Swiss Company, ROCHE DIAGNOSTICS GmbH, a German Company and HOFFMANN-LA ROCHE INC., a New Jersey Corporation,<br><br>Defendants. | Civil Action No. 05-12237 WGY<br><br>*Leave to file granted on August 31, 2007* |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ROCHE'S MOTION *IN LIMINE*
TO PRECLUDE AMGEN INC. FROM ASSERTING THAT THE GENERATION OF
TRYPTIC FRAGMENTS AND DETERMINATION OF THE
<u>AMINO ACID SEQUENCE OF EPO WAS NOVEL AND NON-OBVIOUS</u>**

Leora Ben-Ami (*pro hac vice*)
Mark S. Popofsky (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Christopher T. Jagoe (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
Krista M. Rycroft (*pro hac vice*)
Kaye Scholer LLP
425 Park Avenue
New York, New York  10022
Tel. (212) 836-8000

Lee Carl Bromberg (BBO# 058480)
Timothy M. Murphy (BBO# 551926)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
Bromberg & Sunstein LLP
125 Summer Street
Boston, MA  02110
Tel. (617) 443-9292

Dated:  Boston, Massachusetts
         August 31, 2007

*Counsel for Defendants
F. Hoffmann-La Roche Ltd,
Roche Diagnostics GmbH, and
Hoffmann-La Roche Inc.*

I.   INTRODUCTION

Defendants F. Hoffmann-La Roche Ltd, Roche Diagnostics GmbH and Hoffmann-La Roche Inc. (collectively "Roche") submit this memorandum of law in further support of their Motion *in Limine* to Preclude Amgen Inc. From Asserting that the Generation of Tryptic Fragments and Determination of the Amino Acid Sequence of EPO was Novel and Non-Obvious. and to reply to Amgen's baseless opposition.

As previously explained (D.I. 812) and reinforced herein, Amgen consistently maintained throughout prosecution of the '008 patent and the patents-in-suit that the contributions of Dr. Lai, including (1) fast tryptic digestion of urinary EPO, (2) successful development and use of microsequencing techniques, (3) selection of EPO fragments to use for sequencing, (4) the successful determination of the amino acid sequence of fragments used to design probes and (5) elucidation of the complete amino acid sequence of the EPO protein used for confirming the complete EPO gene structure were routine and non-inventive.  Currently faced with new allegations of obviousness and obviousness-type double patenting, Amgen is playing fast and loose with the court system by asserting contradictory positions, and the Court should preclude Amgen from doing so.

II.   ARGUMENT

As Roche explained in its opening memorandum of law (D.I. 812), "[j]udicial estoppel should be employed when a litigant is 'playing fast and loose with the courts'" by "asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987). "[I]t is the court's acceptance of the party's argument, not the benefit flowing from the acceptance, that primarily implicates judicial integrity." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,

1

374 F.3d 23, 33 (1st Cir. 2004). Furthermore, this Court has made clear that judicial estoppel applies equally to contradictory positions taken in prior administrative proceedings. *Analog Devices, Inc. v. Linear Tech. Corp.*, 479 F. Supp. 2d 202, 212 (D. Mass. 2007).

The evidence is clear that Amgen represented to the Patent Office that Dr. Lai's contributions to the patented "inventions" were non-inventive, and therefore routine and obvious, yet Amgen now takes the contrary position that these contributions confer patentability. Amgen argues that "Roche's argument is a *non sequitur* because Dr. Lin's patents do not claim urinary EPO or the amino acid sequence of tryptic fragments of urinary EPO." (D.I. 880 at 1). Amgen's argument, at best, is disingenuous. First of all, during prosecution of the '422 patent, Amgen asserted that file claim 65, which became claim 2 of the '422 patent, covered erythropoietin mixed with human serum albumin and clearly stated that "[c]laim 65 does not limit the source of the EPO." (D.I. 635 Ex. 200 at 5). Moreover, in the same paper, Amgen argued that file claim 64, which became claim 1 of the '422 patent, was described by the specification because "Example 1 discloses the use of human erythropoietin isolated from the urine of patients afflicted with aplastic anemia ("urinary EPO") to produce *tryptic fragments and the amino acid sequencing of those fragments*." (*Id.* at 4 (emphasis added)).[1] Accordingly, Amgen's argument is baseless.

In any event, Amgen argues that its "past and present positions are entirely consistent" based on its repeated assertion that Dr. Lin is the sole inventor of the patents-in-suit. (D.I. 880 at 5). Amgen's argument is misplaced, however, because it is entirely *inconsistent* that Amgen argued to the Patent Office that Dr. Lai provided no inventive contribution to the patents-in-suit

but now seeks to argue that those very contributions confer patentability. *See Levin v. Septdont Inc.*, 2002 WL 654098, *6 (4th Cir. Apr. 22, 2002) ("significance of an alleged joint inventor's contribution should be assessed by asking whether the contribution helped to make the invention patentable").

To overcome this clear conclusion, Amgen points to isolated statements from the Patent Office in resolving the Lai protest in an effort to distract the Court from the true issues underlying Roche's motion. For example, Amgen notes that the Examiner said that he was not sure "whether [Lai's] participation reflects inventive initiative or whether [Lai's] actions were undertaken at [Lin's] direction." (D.I. 880 at 3; D.I. 813 Ex. 6 at 3). Moreover, Amgen argues that "Lai was not a co-inventor . . . because he did not contribute to the conception of the claimed inventions" (D.I. 880 at 5 (emphasis removed)), citing to conclusions from *Amgen v. Chugai* and the Patent Office in support. These statements are irrelevant to Roche's motion because, in resolving the Lai protest, the Examiner of the '178 application plainly held that there was *insufficient evidence* "that the *techniques which Protestor alleges to have pioneered* are, in fact, *novel and unobvious*, or that the *selection of particular fragments for sequencing and probe design* reflects the exercise of Protestor's critical assessment of the data in a *novel and unobvious manner.*" (D.I. 813 Ex. 6 at 3 (emphasis added)). It is precisely this statement, along with similar statements regarding amino acid sequencing from the '179 prosecution (D.I. 812 at 2; D.I. 813 Ex. 7 at 2-5), that form basis for Roche's motion. Accordingly, Amgen's arguments are irrelevant to the pending motion.

---

[1] An invention may be adequately described, yet obvious to one of skill in the art. Importantly, Amgen did not rely on Dr. Lai's work in arguing non-obviousness of the '422 patent and, thus, remained silent as to the PTO's earlier finding that Dr. Lai's work was not inventive.

3

The absence of affirmative statements from Amgen relating specifically to the Examiner's finding is irrelevant. First of all, Dr. Lin's repeated assertions of sole inventorship qualify as affirmative statements that the contributions of others were non-inventive, and thus routine and obvious. Furthermore, even if Amgen made no affirmative statement regarding the Examiner's conclusion in the protest, the duty of candor imposed on all patent applicants required Amgen to correct the Examiner if it truly believed the Examiner's position was incorrect. *See KangaRoos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed. Cir. 1985) ("We agree with the district court that [the] duty [of square dealing and full disclosure] is not done by one who knowingly takes advantage of an error by the PTO"). Amgen says it had no duty to correct the Examiner because it "agreed with *one* of the bases for this conclusion," (D.I. 880 at 8 (emphasis added)), but there is no basis in law for eliminating the duty of candor simply because the applicant agrees with "one," but not all, of the examiner's statements. Furthermore, Amgen appears to argue that because Dr. Lai's rights were assignable to Amgen, it had no duty or reason to comment on Dr. Lai's protest. (D.I. 880 at 7). However, the law is clear that inventorship must be correct or the applicant potentially faces charges of inequitable conduct. *See Perseptives Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000). Moreover, proper inventorship is a prerequisite for patentability. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998). Accordingly, the mere fact that Amgen would have ultimately been the assignee does not affect its duty to be forthright and truthful with the Patent Office.

Amgen's citation to M.P.E.P. § 1302.14 is misplaced because that section deals with an examiner's reasons for allowing a claim to issue and says nothing about an examiner's rejection

4

of a protest, nor does any provision in support of Amgen's argument appear in Chapter 900 of the M.P.E.P. dealing with protests of inventorship.

The bottom line is that Amgen benefited from determinations during the prosecution of the patents-in-suit that Dr. Lai did not contribute anything inventive, yet now Amgen wishes to rely on the underlying work of Dr. Lai in an attempt to show that the asserted claims are not obvious. This it should not be allowed to do. Under controlling case law, Amgen should be judicially estopped from taking this tack.

**III.    CONCLUSION**

Amgen's opposition is filled with irrelevant arguments and "evidence" that ignores the basis of Roche's motion and seeks to misdirect the Court from the clear conclusion that Amgen is playing fast and loose with the judicial system. Accordingly, for the reasons stated above, along with those set forth in Roche's Opening Memorandum of Law (D.I. 812), Amgen should be precluded from arguing that, prior to Dr. Lin's invention, the generation of tryptic fragments and the methods of determining the amino acid sequences of EPO was novel and non-obvious to a person of skill in the art.

Dated:  August 31, 2007
        Boston, Massachusetts

Respectfully submitted,

F. HOFFMANN-LA ROCHE LTD,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE INC.

*By their Attorneys*

/s/  Keith E. Toms
Lee Carl Bromberg (BBO# 058480)
Robert L. Kann (BBO #258025)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
Kregg T. Brooks (BBO# 667348)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292
ktoms@bromsun.com

Leora Ben-Ami (*pro hac vice*)
Mark S. Popofsky *(pro hac vice)*
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Christopher T. Jagoe (*pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

/s/  Keith E. Toms
Keith E. Toms

731859.1 3099/501