**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN, INC.,                )<br><br>         Plaintiff,     )<br><br>   v.               )<br>                )<br>F. HOFFMANN-LAROCHE LTD.,  )<br>a Swiss Company, ROCHE DIAGNOSTICS )<br>GMBH, a German Company, and  )<br>HOFFMANN–LA ROCHE INC., a New )<br>Jersey Corporation,     )<br>              )<br>     Defendants.   )<br>              ) | Civil Action No. 05 CV 12237 WGY |

**PLAINTIFF AMGEN INC.'S [PROPOSED] REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 20: PRECLUDE ROCHE FROM MAKING STATEMENTS REGARDING THE DURATION OF AMGEN'S PATENT PROTECTION**

781389

Dockets.Justia.com

I.   **ROCHE CONFLATES THE PURPOSE OF THE ODP DOCTRINE WITH THE ELEMENTS OF PROOF ON ODP IN AN IMPROPER ATTEMPT TO INVITE JURY NULLIFICATION WHERE THE ELEMENTS ARE NOT SATISFIED.**

Roche argues that it must be allowed to discuss the dates and terms of the patents-in-suit in order to prove the elements of its obviousness-type double patenting ("ODP") defense.  In making that argument, Roche conflates the elements of its ODP defense with the policy rationale underlying that defense.  The ODP inquiry is focused on whether the claims of each patent are patentably distinct from the claims of the other patent, ***not*** how much longer the later-issued patent will last.  To prove ODP, a party must prove that a later claim defines an invention that is merely an obvious variation of an invention claimed in the earlier patent.  That inquiry requires no consideration of patent duration or relative expiration dates.  It would be improper to argue— or even to suggest—that the elements of the ODP defense are satisfied merely because the later-issued patent is set to expire two, five or even ten years after the earlier-issued patent.  Such argument is both irrelevant and runs the risk of unduly prejudicing and confusing the jury, and is not relevant to the elements of ODP.  Therefore, any such arguments should be excluded under Rules 402 and 403.

Without saying so explicitly, Roche appears to wish to taint the jury with emotional bias by emphasizing the principles of patent duration that were adopted in 1995 pursuant to the Uruguay Round of GATT talks[1] (*i.e.*, that patents are to expire 20 years from the date of the application from which they claim priority, rather than 17 years from their issue date[2]).  While

---

[1] *See* http://www.uspto.gov/web/offices/com/doc/uruguay/SUMMARY.html ("These changes arise from the GATT Uruguay Round implementing legislation (P.L. 103-465), signed by the President on December 8, 1994. … There is, however, a very significant part of the legislation -- the provisions relating to patent term and provisional applications -- that will take effect six months after the signing of the bill, i.e., on June 8, 1995.").

[2] *Id.* ("Patent Term - The current term of protection of a U.S. patent is 17 years measured from the grant of the patent, provided the required fees for maintaining the patent in force are paid. The implementing legislation changes section 154 of the patent law to provide that the term of protection begins on the date of grant and ends 20 years from the filing date of the application for the patent. If priority of an earlier application or applications is claimed under sections 120, 121 or 365(c) of the patent law, the 20-year period is measured from the date of the earliest of such

Roche will undoubtedly refrain from arguing for application of the post-GATT law, Roche has clearly indicated a desire to invite the jury to adhere to the principle that all of Dr. Lin's patent applications should expire at the same time based on the term of the original '008 application. Because all the applications for all of the patents in suit were filed before the effective date of this change in the law, any such argument by Roche would be an improper appeal to jury nullification.

Under the pre-GATT law—which applies to all of the patents-in-suit—each patent in a family of related patents is entitled to its own 17-year term from the date that patent issued. If the claims of two such patents claim patentably indistinct subject-matter (*e.g.*, the claims of one are obvious in view of the claims of the other), then the doctrine of ODP provides that there should be only one 17-year term of patent protection for that invention. But, as Roche's cited authority states, the ODP inquiry is focused on whether the claims of each patent are patentably distinct from the claims of the other patent,[3] ***not*** how much longer the later-issued patent will last. If the claims of the patents are found to be not patentably distinct, then ODP applies (regardless of whether the difference in patent term is one day or ten years). But if the claims are found to be patentably distinct, the term of the later-issued patent is not an improper extension of time under the applicable pre-GATT law.

## II. PATENT DURATION IS NOT RELEVANT TO ROCHE'S INEQUITABLE CONDUCT DEFENSES

Roche also asserts that its planned arguments concerning patent duration are relevant to inequitable conduct. As an initial matter, even if this were true, then there would properly be no mention of patent term during the validity and infringement phases of the trial, and any mention of patent term should be limited to the inequitable conduct phase of trial. However, for the

---

earlier applications."); *see also* 35 U.S.C. § 154(a)(2).

[3] *E.g., Eli Lilly & Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001) (ODP "prohibit[s] a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent") (cited in Roche Oppo. at 5).

reasons set forth below, the issue of patent term is not relevant to inequitable conduct either, and Roche should be precluded from referring to patent duration during any phase of the trial.

Roche argues that Amgen had a motive to extend the life of its patents, and from that motive, a finder of fact should infer intent to deceive the Patent Office. The mere existence of an alleged motive to obtain patent coverage, however, does not constitute competent, clear and convincing evidence that anyone actually held that motive and as a result acted with intent to deceive the Patent Office.[4]

Moreover, in its Opposition, Roche elaborates on its theory of motive-as-intent with details of its inequitable conduct claim that were not pled in its First Amended Answer. Under Rule 9(b) of the Federal Rules of Civil Procedure, Roche should be precluded at trial from offering evidence of those details due to its failure to plead with particularity.[5]

Beyond that, the facts asserted by Roche actually point to a motive to obtain issuance of the '868 patent as soon as possible, not to delay its issuance. After the '008 patent issued, Amgen commenced an action before the ITC, seeking to block Chugai's importation of infringing EPO. The ITC ruled, however, that because the claims of the '008 patent did not cover processes, the ITC lacked the power to block importation, and the Federal Circuit endorsed that ruling.[6] Thus, until the '868 patent issued, Amgen had no ability to block infringing

---

[4] An applicant always seeks a patent. If the motive to obtain patent coverage were sufficient to infer intent, the court could infer intent in every case. But intent is a separate factor that must be separately proven. *Warner-Lambert Co. v. Teva Pharmaceuticals, USA, Inc.,* 418 F.3d 1326, 1346 (Fed. Cir. 2005) ("[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct."); *see also Monsanto Co. v. Bayer Bioscience N.V.,* 363 F.3d 1235, 1241-42 (Fed. Cir. 2004) ("[T]he small size of the applicants' company and the applicants' presumed incentive to obtain broad patent protection for their inventions did not give rise to such a compelling inference of deceptive intent as to justify the entry of summary judgment on that issue.").

[5] *See Sanofi-Synthelabo v. Apotex, Inc.,* 470 F.3d 1368, 1381 (Fed.Cir.2006) ("generalized allegations lack the particularity required to meet the threshold level of deceptive intent necessary for a finding of inequitable conduct.").

[6] *Amgen Inc. v. ITC*, 902 F.2d 1532 (Fed. Cir. 1990).

imports. That fact supports a motive to urge the issuance of the '868 patent as soon as possible—not an intent or motive to deceive the PTO in order to delay issuance of the patent. The flaw in Roche's logic requires the conclusion that, in order to avoid confusing the jury with irrelevant matter, evidence or argument relating to patent term extension should be precluded from the inequitable conduct phase of trial as well, pursuant to Rules 402 and 403.

Finally, Roche argues in its opposition that "Amgen exploited a 1995 change in law increasing the term of patent protection." Roche is referring to the 1995 GATT-implementing amendments to 35 U.S.C. § 154, which were effective June 8, 1995.[7] All applications for all of the patents-in-suit were filed before the new law took effect, and the new law therefore does not apply to any of the patents-in-suit. It is therefore difficult to understand the basis for Roche's contention that Amgen somehow exploited this indisputably inapplicable change in the law.

## III.    CONCLUSION

For the foregoing reasons, Amgen requests that its Motion in Limine No. 20 be granted.

---

[7] 35 USC § 154(a)(2) ("Term.--Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, or 365(c) of this title, from the date on which the earliest such application was filed.").

Dated: September 3, 2007

Respectfully Submitted,

AMGEN INC.,
By its attorneys,


/s/ Michael R. Gottfried

Of Counsel:

D.DENNIS ALLEGRETTI (BBO#545511)
MICHAEL R.GOTTFRIED (BBO#542156)

STUART L. WATT
WENDY A. WHITEFORD
MONIQUE L. CORDRAY
DARRELL G. DOTSON
KIMBERLIN L. MORLEY
ERICA S. OLSON
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA   91320-1889
(805) 447-5000

DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone:     (857) 488-4200
Facsimile:     (857) 488-4201

LLOYD R. DAY, JR
DAY CASEBEER
MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA 95014
Telephone:     (408) 873-0110
Facsimile:     (408) 873-0220

WILLIAM GAEDE III
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone:     (650) 813-5000
Facsimile:     (650) 813-5100

KEVIN M. FLOWERS
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone:     (312) 474-6300
Facsimile:     (312) 474-0448

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of electronic filing and

paper copies will be sent to those indicated as non-registered participants on September 3, 2007.


*/s/ Michael R. Gottfried*
Michael R. Gottfried
