UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---

AMGEN INC.,                              )
                                         )
         Plaintiff(s),                   )
                                         )
    vs.                                  ) 05-CV-12237-WGY
                                         )
F. HOFFMAN-LA ROCHE LTD., a              )
Swiss Company, ROCHE DIAGNOSTICS         )
GmbH, a German Company and               )
HOFFMAN LAROCHE INC., a New              )
Jersey Corporation,                      )
                                         )
         Defendant(s).                   )

---

**CONFIDENTIAL**

VIDEOTAPE DEPOSITION UPON ORAL EXAMINATION OF

NANCY SPAETH

---

9:08 A.M.

AUGUST 29, 2007

1201 THIRD AVENUE, SUITE 4800

SEATTLE, WASHINGTON

(This transcript contains testimony designated

CONFIDENTIAL as per Section 5(c) of the Amended

Protective Order. Please treat the entire transcript

in accordance with the protective order.)

REPORTED BY:  DIANE M. MILLS, CCR 2399

Spaeth, Nancy  
CONFIDENTIAL                                         8/29/2007

Page 2

1                    A P P E A R A N C E S
2
3    FOR THE PLAINTIFF:
4        DEBORAH E. FISHMAN, Esq.
5        Day Casebeer Madrid & Batchelder LLP
6        20300 Stevens Creek Blvd., Suite 400
7        Cupertino, California  95014
8        (408) 873-0110
9        Fax: (408) 873-0220
10       fishmand@daycasebeer.com
11
12   FOR THE DEFENDANTS:
13       PETER FRATANGELO, Esq.
14       Kaye Scholer LLP
15       425 Park Avenue
16       New York, New York 10022-3598
17       (212) 836-8771
18       Fax: (212) 836-6364
19       pfratangelo@kayescholer.com
20
21
22
23
24
25

Page 3

```
 1   FOR THE WITNESS:
 2       HARRY H. SCHNEIDER, JR., Esq.
 3       Perkins Coie
 4       1201 Third Avenue, Suite 4800
 5       Seattle, Washington  98101-3099
 6       (206) 359-8000
 7       Fax: (206) 359-9000
 8       hschneider@perkinscoie.com
 9
10   ALSO PRESENT:  Wendy Whiteford, Esq., Amgen, Inc.
11                  Jan Trudell, Videographer
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1  going to object to everything.
2           MR. FRATANGELO:  Well, it's not
3  everything but --
4           MS. FISHMAN:  Just so far.
5           MR. FRATANGELO:  That's not true.
6           THE WITNESS:  I try to watch for the
7  cue.
8           MS. FISHMAN:  What was the last question
9  and answer, please?  Can you read it back?
10          (The Reporter read back as requested.)
11     Q.  (BY MS. FISHMAN)  You also mentioned iron, you
12  took iron to treat your anemia.  Was iron effective at
13  treating the anemia that you had as a result of your
14  chronic kidney disease?
15     A.  I think it might have helped a little bit
16  during my first time on dialysis, but this only is
17  speculation, because I still was able to maintain a
18  little bit of a hematocrit because I had both kidneys
19  and I was still making urine so there was a little bit
20  of function in those kidneys.  And so the iron may have
21  been useful during that period of time but after the
22  loss of my kidneys I don't think that iron was useful.
23     Q.  In treating your --
24     A.  Anemia, correct.
25     Q.  Now, earlier Mr. Fratangelo was talking to you

1   about your speaking engagements.
2       A.  Uh-huh.
3       Q.  Do you recall that?
4       A.  Yes.
5       Q.  Over the past ten years, approximately what
6   percentage of your income have you derived from public
7   speaking?
8       A.  A very small percent, under one percent, very
9   small.
10      Q.  So you don't -- you don't make your living
11  from public speaking?
12      A.  No.  I couldn't quit my --
13          MR. FRATANGELO:  Objection.  You can
14  answer.
15      A.  I couldn't quit my day job.
16      Q.  (BY MS. FISHMAN)  So then why do you do it?
17      A.  I do it because I think it's a benefit to the
18  community.  I think that I have something to share that
19  will help people, and I like helping people.
20      Q.  Ms. Spaeth, I'd like to show you what the
21  reporter has marked as Exhibit 14 to your deposition,
22  and I will represent that this is a memorandum filed in
23  support of a motion filed by Roche earlier this week, I
24  think on Monday, in support of its motion to preclude
25  your testimony at a trial in this matter.

1     Have you ever seen this document before?
2     A.  No.
3     Q.  I'd like to direct you to Page 2 of this
4  motion, or this memoranda, rather.  Approximately
5  two-thirds of the way down the page on Page 2 of this
6  document there's a sentence that begins, "In Addition."
7     A.  Uh-huh.
8     Q.  Do you see that sentence?
9     A.  Yes.
10    Q.  And it reads, "In addition to being a patient
11 who has personally taken Amgen's products, Ms. Spaeth
12 is a professional speaker affiliated with organizations
13 financed by Amgen who regularly speaks to groups about
14 her disease and treatment for a fee."
15        In your view, is that a fair characterization
16 of what you do with your time and for a living?
17        MR. FRATANGELO:  Objection.  Calls for
18 opinion.
19    Q.  (BY MS. FISHMAN)  You can answer.
20    A.  I don't think of it as being funded by Amgen.
21 That's completely disconnected from my thoughts.  I did
22 it as a favor to Dori because she couldn't speak and
23 she thought I could do it and I really love to do that.
24 And so I suppose if I didn't get paid I'd probably do
25 it anyway because I think it's important that patients

1  and providers be educated on what's possible, and I
2  think I'm a good demonstration of what's possible.
3        So let me read the sentence one more time. I
4  do speak to groups. I don't speak very regularly.
5     Q. Do you consider yourself to be a professional
6  speaker?
7     A. No, I do not. I mean, I guess if professional
8  means you get paid for it then in actuality -- I mean,
9  when I think of in terms of sports figures, they're
10 professionals if they get paid and they're amateurs if
11 they don't but --
12    Q. It's not your vocation?
13    A. It's not my vocation, no.
14    Q. Staying with this document for a moment, can
15 you please turn to Page 8. And the second full
16 paragraph on Page 8 beginning with -- it's the
17 beginning of the paragraph. Are you on Page 8?
18    A. Yes.
19    Q. The second full paragraph under the Title D,
20 starts, "Testimony from a patient." If you could read
21 that sentence.
22    A. "Testimony from a patient" --
23    Q. You can read it to yourself.
24    A. I'm sorry.
25    Q. That's okay, you can read it aloud if you'd