# EXHIBIT 2

Dockets.Justia.com

PATENT

IN THE UNITED STATES PATENT
AND TRADEMARK OFFICE

Application of:                    )    "Production of
                                   )
FU-KUEN LIN                        )    Erythropoietin"
                                   )
Serial No:  675,298                )    Group Art Unit 127
                                   )
Filed:  November 30, 1984          )    Examiner - A. Tanenholtz

APPLICANT'S AMENDMENT AND REPLY
UNDER 37 C.F.R. §1.111 AND §1.115

RECEIVED

Hon. Commissioner of Patents
  and Trademarks                              MAR 12 1987
Washington, D.C.  20231
                                              GROUP 120
Sir:

        This is in response to the Office Action dated
February 5, 1987 in the above-identified application wherein
substantially all prior rejections of pending claims 14, 15,
17-36, 58 and 61-72 were withdrawn, but wherein new grounds
for rejection were advanced under 35 U.S.C. §§102, 103 and
112, and wherein all claims were "provisionally" rejected
under 35 U.S.C. §101.  Reconsideration and allowance of all
claims is respectfully requested in view of the following
amendments and remarks.

AMENDMENT

IN THE CLAIMS

        Please cancel claims 14, 15, 17-36, 58 and 61-72
without prejudice and enter the following new claims
73-103.

        --73.  A purified and isolated DNA sequence for
use in securing expression in a procaryotic or eucaryotic

290.249

R008892011

host cell of a polypeptide product having at least a part of
the primary structural conformation and having a therapeutic
activity of naturally-occurring erythropoietin, said DNA
sequence selected from the group consisting of:

(a)  the DNA sequences set out in Figures 5 and 6
or their complementary strands;

(b)  DNA sequences which hybridize under stringent
conditions to the DNA sequences defined in (a); and

(c)  DNA sequences which, but for the degeneracy
of the genetic code, would hybridize under stringent condi-
tions to the DNA sequences defined in (a) and (b).

74.  A procaryotic or eucaryotic host cell trans-
formed or transfected with a DNA sequence according to claim
73 in a manner allowing the host cell to express said poly-
peptide product.

75.  A biologically functional circular plasmid or
viral DNA vector including a DNA sequence according to
claim 73.

76.  A procaryotic or eucaryotic host cell stably
transformed or transfected with a DNA vector according to
claim 75.

77.  A purified and isolated DNA sequence coding
for procaryotic or eucaryotic host expression of a poly-
peptide having part or all of the primary structural con-
formation and having a therapeutic activity of erythro-
poietin.

- 1 -

291 ~~278~~

R008892012

78. A cDNA sequence according to claim 77.

79. A monkey species erythropoietin coding DNA sequence according to claim 78.

80. A DNA sequence according to claim 79 and including the protein coding region set forth in Figure 5.

81. A genomic DNA sequence according to claim 77.

82. A human species erythropoietin coding DNA sequence according to claim 81.

83. A DNA sequence according to claim 82 and including the protein coding region set forth in Figure 6.

84. A manufactured DNA sequence according to claim 77.

85. A manufactured DNA sequence according to claim 84 and including one or more codons preferred for expression in E.coli cells.

86. A manufactured DNA sequence according to claim 85, coding for expression of human species erythropoietin.

87. A manufactured DNA sequence according to claim 86 including the protein coding region set forth in Figure 7.

- 7 -

R008892013

88.  A manufactured DNA sequence according to claim 84 and including one or more codons preferred for expression in yeast cells.

89.  A manufactured DNA sequence according to claim 88, coding for expression of human species erythropoietin..

90.  A manufactured DNA sequence according to claim 89 including the protein coding region set forth in Figure 8.

91.  A DNA sequence according to claim 77 covalently associated with a detectable label substance.

92.  A DNA sequence according to claim 91 wherein the detectable label is a radiolabel.

93.  A single-strand DNA sequence according to claim 91.

94.  A biologically functional circular plasmid or viral DNA vector including a DNA sequence according to claim 77.

95.  A procaryotic or eucaryotic host cell stably transformed or transfected with a DNA vector according to claim 94.

96.  A purified and isolated DNA sequence coding for a polypeptide fragment or polypeptide analog of

- 4 -

naturally-occurring erythropoietin having a therapeutic activity of erythropoietin.

97.  A biologically functional circular plasmid or viral DNA vector including a DNA sequence according to claim 96.

98.  A procaryotic or eucaryotic host cell stably transformed or transfected with a DNA vector according to claim 97.

99.  A DNA sequence according to claim 96 which is a manufactured sequence.

100.  A DNA sequence coding for [Phe$^{15}$]hEPO, [Phe$^{49}$]hEPO, [Phe$^{145}$]hEPO, [His$^7$]hEPO, [Asn$^2$ des-Pro$^2$ through Ile$^6$]hEPO, [des-Thr$^{163}$ through Arg$^{166}$]hEPO, or [Δ27-55]hEPO.

101.  A biologically functional circular plasmid or viral DNA vector including a DNA sequence according to claim 100.

102.  A procaryotic or eucaryotic host cell stably transformed or transfected with a DNA vector according to claim 101.

103.  A purified and isolated DNA sequence as set out in Figures 5 or 6 or the complementary strand of such a sequence.--

- 8 -

294 275

## REMARKS

Applicant acknowledges with thanks the interview kindly granted to his counsel, Mr. Borun and Mr. Odre, on March 4, 1987.

Upon entry of the above-requested amendments to the claims, claims 73 through 103 will remain in the application and will be correlated to prior claims 14, 15, 17-36, 58 and 61-72 in the manner indicated in the following Table.

| Prior Claim | New Claim | Prior Claim | New Claim |
|---|---|---|---|
| 14 | 73 | 30 | 90 |
| 15 | 74 | 31 | 91 |
| 61 | 75 | 32 | 92 |
| 62 | 76 | 33 | 93 |
| 69 | -- | 63 | 94 |
| 17 | 77 | 64 | 95 |
| 18 | 78 | 70 | -- |
| 19 | 79 | 34 | 96 |
| 20 | 80 | 65 | 97 |
| 21 | 81 | 66 | 98 |
| 22 | 82 | 71 | -- |
| 23 | 83 | 36 | 99 |
| 24 | 84 | 35 | 100 |
| 25 | 85 | 67 | 101 |
| 26 | 86 | 68 | 102 |
| 27 | 87 | 72 | -- |
| 28 | 88 | 58 | 103 |
| 29 | 89 | | |

Applicant notes that none of the claims whose entry is sought correspond to prior claims 69-72. Applicant specifically reserves his right to pursue claims of the same or similar scope in a duly filed continuing application.

- 6 -

298

A.    The Claimed Subject Matter

        As related in Applicant's communication dated
October 3, 1986, the claims remaining in this application
relate to DNA sequences, DNA vectors, transformed and trans-
fected host cells useful in the preparation of erythro-
poietin products including, e.g., polypeptide analogs of
erythropoietin.

        Independent claim 73 is thus directed to purified
and isolated DNA sequences generally defined by reference to
the DNA sequences revealed in Figures 5 and 6 (previously
Tables V and VI). Dependent claims 74-76 respectively
relate to host cells transformed or transfected with DNA of
claim 73, vectors including the DNA of claim 73, and hosts
transformed with such vectors.

        Independent claim 77 is directed generally to DNA
sequences which code for procaryotic or eucaryotic host
polypeptides having erythropoietin amino acid sequences and
having one or more of erythropoietin's biological activi-
ties. Dependent claims 78-95 are directed to presently pre-
ferred forms of DNA sequences, vectors, and transformed or
transfected hosts based on the claim 77 DNA sequences.

        Independent claim 96 is generally directed to DNA
sequences of the invention which encode polypeptide frag-
ments and analogs of erythropoietin and dependent claims
97-99 are likewise directed to preferred forms of sequences,
vectors, and transformed and transfected hosts. Independent
claim 100 and dependent claims 101 and 102 relate to
specific erythropoietin analog DNA sequences.

        Finally, independent claim 103 is directed to the
specific human and monkey erythropoietin-encoding purified
and isolated DNA sequences as revealed in Figures 5 and 6.

- 7 -
29 б

R008892017

B.  The Outstanding Office Action, The Rejections
    of the Claims and Applicant's Responses Thereto

        In a communication dated October 3, 1986 respond-
ing to the Action of July 3, 1986, Applicant submitted the
full text of the Chirgwin et al. reference (Ref. C8) to
complete the Information Disclosure Statement filed on April
24, 1986 and also submitted a Supplemental Information
Disclosure Statement directing the Patent Office's attention
to references B15, B16, C135 and C136.  Applicant respect-
fully solicits the Examiner's acknowledgement of receipt and
consideration of the same and notation of such consideration
on the previously submitted Forms PTO-1449.

        Applicant understands that the amendments and
remarks set out in his communication dated October 3, 1986
have resulted in the reconsideration and withdrawal of the
following rejections propounded under Sections 101, 102, 103
and 112 in the Action dated July 3, 1986:

        1.  The Section 112 (first paragraph) rejection of
claims 14, 15, 17-36, 58 and 61-72 on grounds relating to
permanence of A.T.C.C. Budapest Treaty deposits;

        2.  The Section 112 (second paragraph) rejection
of claims 14, 15, 17-36, 58 and 61-72 based on,

            (a)  alleged indefiniteness of the term "pro-
                 caryotic or eucaryotic",

            (b)  alleged indefiniteness based on failure to
                 specify a "fragment" size,

            (c)  alleged indefiniteness of the term "biolo-
                 gical properties",                     .

            (d)  an instance of improper Markush group
                 language, and,

- 8 -

294

R008892018

(e) an instance of improper characterization of
dependence for one of the claims;

3. The Section 101 rejection of claims 14, 24, 34
and 36 as being drawn to naturally-occurring subject
matter;

4. The Section 102(b) and/or 103 rejection of
claims 14, 24, 34 and 36 based on the Sugimoto et al. ref-
erence;

5. The Section 102(b) and/or 103 rejection of
claims 14, 15, 17, 18, 20, 24-27, 33, 34, 61-66, 69, 70 and
71 based on the Lee-Huang (P.N.A.S.) reference;

6. The Section 102(a) and/or 103 rejection of
claims 14, 15, 17-20, 24, 33, 34, 36, 58, 61-66, 69-70 and
71 based on Applicant's publication [J.Cell.Bioch., Suppl.
8B, p. 45 (1984)]; and,

7. The Section 103 rejection of all claims based
variously on the Sugimoto et al., Cohen et al., Paddock,
Farber et al., Bennetzen et al. Gouy et al., and Lewin ref-
erences.

Due to the number and variety of new objections
and rejections set forth in the recently received Action
dated February 5, 1987, Applicant once again submits that
the issues raised therein are best treated by means of res-
ponses which "track" the order of their appearance in the
Action.

1.   The Objection to the Disclosure Based
     On Figures 5-8 May Properly Be Withdrawn

The Examiner asserts that new drawing Figures 5-8
did not accompany Applicant's communication of October 3,
1986. Applicant attaches hereto as Exhibit No. 1 an
envelope containing another set of Figures 5-8 and requests

- 8 -

298

R008892019

that the outstanding objection to the specification be with-
drawn.

> 2.    The Rejection of Prior Claims 20, 23, 27
> and 30 Under The Second Paragraph of
> Section 112 Is Inapplicable To Corres-
> ponding New Claims 80, 83, 87 and 90

Partially reiterating a prior position taken by
the Patent Office, the Examiner has objected to Applicant's
reference in certain claims to DNA sequence information
contained in Figures of the drawing, stating: "Ordinarily
claims should not refer to drawings particularly as here
where the material referred to can be easily described with-
out resort to drawings". Applicant respectfully disagrees
with the Examiner's position and reiterates the remarks set
out at pages 11 and 12 of his prior communication responding
to the prior Patent Office notation that the DNA sequences
of the Figures could "adequately be expressed in words".
Applicant again relies on the authority of the decisions of
In re Faust, 86 U.S.P.Q. 114, 115 (1943) and Ex parte
Squires, 133 U.S.P.Q. 598, 600 (Bd. App. 1961) in support of
his position.

Responding to the prior Patent Office suggestion,
Applicant has wholly reconstituted Tables V, VI, XIV and XXI
as drawing Figures 5-8. The subject DNA sequences thus
appear twice in the application as it is presently consti-
tuted. As the Examiner will note, Figure 5 spans three full
pages, Figure 6 covers five pages, and Figures 7 and 8 each
comprehend a full page of information. Applicant respect-
fully disagrees that this sequence information "can be
easily described without resort to drawings" as suggested by
the Examiner. It simply cannot be reasonably suggested that
there might be a violation of the standards of definiteness

- 10 -

2997

R008892020

of Section 112 (second paragraph) in Applicant's refraining
from setting out the voluminous DNA sequences in the claims,
when this same information already appear twice in the
specification. Applicant therefore submits that the out-
standing rejection of prior claims 20, 23, 27 and 30 may not
properly be applied to corresponding new claims 80, 83, 87
and 90.

### 3. The "Provisional" Rejection of All Claims Under 35 U.S.C. §101 May Not Properly Be Maintained

Reiterating a prior Patent Office position, the
Examiner has lodged a "provisional" rejection of all claims
under Section 101 based on the presentation of claims of
similar scope in Applicant's "parent" patent applications
Serial Nos. 582,185 and 655,841. Applicant previously ack-
nowledged with thanks this notation of potential noncon-
formity with Section 101 and did not contend (as suggested
by the Examiner) that the statute would not bar allowance of
the same claims in more than one application. Applicant
further notes that Serial No. 582,185 has been expressly
abandoned and that a provisional election of prosecution of
non-overlapping claim 48 is being concurrently made in
Serial No. 655,841, with a corresponding cancellation of
claims 1-47 therein. Applicant continues to submit, how-
ever, that the provisional notation does not provide a
present basis for rejection of the claims. It is thus sub-
mitted that the outstanding "provisional" rejection be with-
drawn.

- 12 -

300

R008892021

4.    The Rejection of Prior Claims 14, 15,
17-19, 21, 23, 24, 25, 28, 31-34,
36, 58, 61-66 and 69-71 Under The
First Paragraph of Section 112 May Not
Properly Be Applied to Corresponding
New Claims 73, 74, 77-79, 81, 83, 84,
85, 88, 91, 92, 93, 96 and 103

It was the Examiner's position that Applicant's

use of the term "fragments thereof" in reference to claimed

DNA sequence portions and/or his use of the term, "having at

least a part of the primary structural conformation and one

or more of the biological activities of naturally-occurring

erythropoietin" in reference to polypeptides encoded by

claimed DNA sequences was not "enabled" by the specifica-

tion. The Examiner argued that either of these terms allows

the claims "to read on proteins and peptides completely

unrelated to erythropoietin" and that "those unrelated pro-

teins could possess the common biological activity of being

an antigen". Based on this argument, a Section 112 rejec-

tion was lodged against 14, 15, 17-19, 21, 22, 24, 25, 28,

31-34, 36, 58, 61-66 and 69-71. Applicant respectfully

traverses the Examiner's rejection on such grounds.

Consistent with the substance of the discussions

with the Examiner at the interview of March 4, 1987, wherein

it was noted by the Examiner that the term "fragments"

appeared to introduce a redundancy in claim 14, and notwith-

standing Applicant's traversal, Applicant has herewith

sought amendment to delete reference to "fragments" from

prior independent claims 14 and 58. Corresponding new

claims 73 and 103 no longer contain this term. Furthermore,

Applicant has sought amendment of prior claims 14 and 17

referring to "biological activity" in a manner providing for

recitation of "therapeutic activity" and similar recitation

was added to prior claim 34. Corresponding new independent

- 12 -

301 288

R008892022

claims 73, 77 and 96 thus refer to "therapeutic activity" rather than "biological activity".

These amendments have been sought for the purpose of advancing prosecution of the application and without waiver of Applicant's right to pursue claims of the form previously advanced in a duly filed continuing application.

Amendment of the claims is believed to moot the issues raised in the rejection and no rejection may properly be lodged against new claims 73, 74, 77-79, 81, 83, 84, 85, 88, 91, 92, 93, 96 and 103.

> 5. The Rejection of Prior Claim 35
> Under 35 U.S.C. §112, Second
> Paragraph May Not Properly Be
> Applied to Corresponding Claim 100

The Examiner has rejected claim 35 with the notation that "use of brackets for indicating different species and strains of erythropoietin DNA sequence is improper since brackets in claims designates excluding the bracketed material". Applicant respectfully disagrees with the Examiner's position and proposes that brackets may properly be a part of a claim and are improper only when used for purposes of an amendment designating the deletion of a portion of a claims which already properly contains bracketed subject matter. In support of this position, applicant cites to 37 C.F.R. §1.121 which provides in pertinent part:

> "(d) Where underlining or brackets are
> intended to appear in the printed patent or
> are properly part of the claimed material and
> are not intended as symbolic of changes in
> the particular claim, amendment by rewriting
> in accordance with paragraph (b) of this.
> section shall be prohibited."

- 17 -

302 281

R008892023

It should be apparent from the above, that the brackets present in claim 100 are <u>not</u> "intended as symbolic of changes" and their use is thus in keeping with all "definiteness" requirements of 35 U.S.C. §112 and no proper basis for rejection exists.

> 6.  The Rejection of Prior Claims 14, 15, 61,
> 62 and 69 Under 35 U.S.C. §112, First
> Paragraph, May Not Properly Be Applied
> To Corresponding Claims 73-76

It was the Examiner's position, based on the disclosures of Walker et al., <u>Techniques In Mol. Biology</u>, Macmillan Pub. Co., N.Y., p. 280 (1983) and Kennell et al., <u>Progr.Nucl.Acid.Res.Mol.Biol.</u>, <u>11</u>, 259-301 (1971)*, that claims 14, 15, 61 and 69 (which refer to DNA hybridization) may be rejected because "the disclosure is enabling only for claims limited [to] the conditions of hybridization". Applicant respectfully disagrees and submits that a reading of the claims in light of the specification reveals that the reference to hybridization is not at all unduly broad. As noted at specification page 22, lines 5-7 and again at specification page 94, lines 19-24, the context of the hybridization event referred to in the claims is specifically correlated to the hybridization conditions illustrated in the specification with respect to the initial isolation of monkey and human erythropoietin-encoding DNA, <u>or</u> more stringent conditions.

Notwithstanding this position, in keeping with the discussions with the Examiner at the interview of March 4, 1987, Applicant has amended claim 73 to refer to hybridiza-

---

*   Applicant was provided a copy of pages 259 and 293 of
    this reference.  If other portions are relied upon,
    advice of same is requested.

-14-

303

R008892024

tion "under stringent conditions".  Applicant therefore
submits that claims 73-76 are not properly subject to rejec-
tion.

> 7.    The Rejection of Prior Claims 14, 17,
> 18, 21-24, 26, 27, 31-36, 58 and 61-68
> Under 35 U.S.C. §103 Based on
> Sue et al. Considered with
> Breslow et al. or Woods et al
> References May Not Properly be
> Applied to Corresponding Claims 73, 77,
> 78, 81-84, 86, 87, 91-93, 96, 99-100, 103,
> 75, 76, 94, 95, 97, 98, 101 and 102

It was the Examiner's position that the disclo-
sures of the Sue et al. reference (P.N.A.S., 80) taken
together with the publications by Breslow et al. [P.N.A.S.
(USA), 79, pp. 6861-6865 (1982)] and Woods et al. [P.N.A.S.
(USA), 79, pp. 5661-5665 (1982)] render the claimed subject
matter obvious.  The Examiner noted that the Sue et al.
publication discloses what were "believed to be" the first
26 amino terminal residues of human erythropoietin and that
the Breslow et al. and Woods et al. references disclose cDNA
isolation using mixed probe sequences deduced from known
amino acid data of blood protein.  Acknowledging that the
Sue et al. reference incorrectly designates the presence of
an asparagine residue rather than a cysteine residue at
position 7, the Examiner nonetheless concludes that:

> "It would be "obvious to isolate the human
> erythropoietin cDNA sequences by utilizing
> the Sue et al. erythropoietin amino acid
> sequence data to devise oligonucleotide
> probes for use in sequencing a cDNA liver
> library in the manner taught by Breslow et
> al. or Woods et al.  The fact that the eryth-
> ropoietin 26 amino acid amino terminal pep-
> tide sequence of Sue et al. differs from that
> of erythropoietin by designating Asn instead
> of Cys at the seven position is patentably
> irrelevant since it would not interfere with
> the preparation of oligonucleotide probes."

- 15 -

304 283

R008892025

Applicant respectfully disagrees with the Examiner's posi-
tion, submits that the Examiner's conclusions concerning
preparation of probes based on the Sue et al. reference are
in error, and submits, in turn, that the combination of
references falls far short of existing legal standards for
support of a conclusion of obviousness.

Briefly stated, Applicant did not do what the
Examiner suggests could have been done based on the cited
references. More significantly, Applicant would not have
been able to do what the Examiner suggests could have been
done based on the cited references, i.e., prepare a small
number of oligonucleotides and probe for erythropoietin-
encoding DNA within a relatively small DNA library.

As the Examiner will recall, Applicant succeeded
in his discovery of DNA encoding erythropoietin using
screening procedures which are themselves submitted to
involve patentable advances in the art of DNA hybridization
(as set forth in original claim 60 of the application).
More specifically, Applicant employed two distinct sets of
mixed probes to find the human genomic sequence. A first
set consisted of a mixture of 128 20-mers (see specification
Table II). The amino acid sequence which formed the basis
for construction of the first set of probes is now known to
correspond to residues 46-52 of human erythropoietin.
Applicant used both the set of 128 20-mers of Table II and a
second set of 128 17-mers (See specification Table III,
relating to the sequence now known to correspond to erythro-
poietin residues 86-91) to jointly probe 1,500,000 phage
plaques of human genomic library for the human sequence.
Three positive clones were isolated. The set of 128 20-mers
was thereafter used to successfully screen a 200,000 colony

- 16 -

305   284

R008892026

monkey kidney cDNA library, with only seven positive clones
being isolated from the 200,000 screened. Applicant's use
of mixed probes for screening a DNA library (and especially
a mammalian genomic library) where the message sought was
present in low abundancy had been projected as being
"impractical" shortly before applicant's successful work.
See, Anderson et al., Reference C2, and specification page
8, line 29 through page 9, line 20 and page 96, lines
2-13. As noted at specification page 9, the Anderson et al.
reference states in pertinent part:

> "More generally, mixed-sequence oligodeoxy-
> nucleotide probes have been used to isolate
> protein genes of unknown sequence from cDNA
> libraries. Such probes are typtically
> mixtures of 8-32 oligonucleotides, 14-17
> nucleotides in length, representing every
> possible codon combination for a small
> stretch (5-6 residues) of amino acid
> sequence. Under stringent hybridization
> conditions that discriminate against
> incorrectly base-paired probes, these mix-
> tures are capable of locating specific gene
> sequences in clone libraries of low-to-
> moderate complexity. Nevertheless, because
> of their short length and heterogeneity,
> mixed probes often lack the specificity
> required for probing sequences as complex as
> a mammalian genome. This makes such a method
> impractical for the isolation of mammalian
> protein genes when the corresponding mRNAs
> are unavailable." (Citations omitted.)

Turning now to the "secondary" references, in both
the Woods et al. and Breslow et al. procedures, an oppor-
tunity to develop multiple probes suitable for use in
screening a cDNA (human liver) library arose as the result
of prior knowledge of the certain identity of regions of
amino acid residues which were specified by relatively
"unambiguous" codons. Thus, in the Breslow reference, the
mixture of oligonucleotide probes was synthesized which
corresponded to a specific Apo-I protein sequence (Gln-Lys-

- 17 -

R008892027

Lys-Trp-Gln) known to be present in the polypeptide whose
encoding DNA was sought. Only a total of 16 different
oligonucleotides was needed in order to develop a complete
set of 14-mer probes for use in the cDNA library probing
procedures. See Figure 1 on page 6862 of the reference.
This low number was due to the relative lack of degeneracy
among codons for tryptophane (no degeneracy), lysine (2-fold
degeneracy), and glutamine (2-fold degeneracy) residues
which made up the known sequence. Screening a cDNA library
of only 10,000 colonies (provided by the authors of the
Woods, et al. reference) Breslow et al. were able to isolate
twenty positive clones. It is noteworthy that Apo-I DNA
containing clones were thus conspicuously in relatively
large abundance in the library. Nonetheless, the reported
screening procedure failed to allow isolation of any clone
including the full sequence of the Apo-I gene.

In the "two probe", Woods et al. reference, a
total of 32 17-mers were needed to develop one complete set
of probes corresponding to amino acids 9-14 of the protein
sought, and an additional total of 48 17-mers were needed to
ensure complete consonance of at least one probe to the DNA
sequence encoding residues 78-83 of the desired protein.
See Figure 2 on page 5662 of the reference. The ability of
Woods, et al. to isolate 32 positive clones from a total of
only 50,000 clones screened when hybridizing with one set of
probes, and then to isolate 19 of the 32 using the second
set, testifies to the relatively high abundance of the
message in the library screened. (Once again, no full
sequence clone is stated as having been isolated.)

Turning now to the <u>correct</u> sequence of amino acids
within the first 26 residues of human erythropoietin, it is

- 18 -


revealed that no opportunity exists (similar to that
presented to Woods et al. and Breslow et al.) to effectively
employ such relatively small numbers of probes to isolate
genomic encoding human erythropoietin. The correct first 26
residues of human erythropoietin corresponding to the
following indicated levels of codon degeneracy: Ala(4),
Pro(4), Pro(4), Arg(6), Leu(6), Ile(3), Cys(2), Asp(2),
Ser(6), Arg(6), Val(4), Leu(6), Glu(2), Arg(6), Tyr(2),
Leu(6), Leu(6), Glu(2), Ala(4), Lys(2), Glu(2), Ala(4),
Glu(2), Asn(2), Ile(3) and Thr(4). [A preliminary estimate
of the number of oligonucleotides needed for a complete set
of mixed probes can be made by simply multiplying the
degree(s) of degeneracy within the sequence. As an example,
to guarantee that one 17-mer oligonucleotide probe which is
an exact replica of the true erythropoietin sequence will be
present in a set of mixed probes corresponding to the bases
encoding the first five amino acids plus the first two bases
of the sixth amino acid, one would need to make 4 X 4 X 4 X
6 X 6, or 2304, probes].

An array of the potential oligonucleotides based
on the correct erythropoietin sequence is set forth below in
Table I below.

R008892029

## TABLE I

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|
| Ala | Pro | Pro | Arg | Leu | Ile | Cys | Asp | Ser | Arg |
| T | G | G | T | T | T | | | T | G |
| GCC | CCA | CCA | CGC | CTC | ATC | TGT | GAC | AGC | CGA |
| G | T | T | G | G | A | C | | | T |
| A | C | C | A | A | | | | | C |
| | | | | | | | | G | |
| | | | AGG | TTG | | | | TCA | AGG |
| | | | A | A | | | | T | A |
| | | | | | | | | C | |

| 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|
| Val | Leu | Glu | Arg | Tyr | Leu | Leu | Glu | Ala | Lys |
| T | C | | | | T | | | T | |
| GTC | CTG | GAG | AGG | TAT | CTC | TTG | GAG | GCC | AAG |
| G | A | A | A | C | G | A | A | G | A |
| A | T | | | | A | | | A | |
| | | | G | | | G | | | |
| | TTG | | CGA | | TTG | CTA | | | |
| | A | | T | | A | T | | | |
| | | | C | | | C | | | |

| 21 | 22 | 23 | 24 | 25 | 26 |
|---|---|---|---|---|---|
| Glu | Ala | Glu | Asn | Ile | Thr |
| | T | | | T | C |
| GAG | GCC | GAG | AAT | ATC | ACG |
| A | G | A | C | A | A |
| | A | | | | T |

An array of potential oligonucleotides based on the <u>incorrect</u> sequence of Sue et al. is set out in Table II below. <u>Note well that the sequence includes two errors. Not only is the seventh residue incorrect, the twenty-fourth residue is incorrectly specified as lysine rather than asparagine.</u>

- 30 -

R008892030

TABLE II

| 1 Ala | 2 Pro | 3 Pro | 4 Arg | 5 Leu | 6 Ile | 7 Asn | 8 Asp | 9 Ser | 10 Arg |
|---|---|---|---|---|---|---|---|---|---|
| T GCC G G | G CCA T T | G CCA T T | T CGC G G | T CTC G G | T ATC A | AAT C | T GAC | T AGC | G CGA T C |
|  |  |  | AGG A | TTG A |  |  |  | G TCA T C | AGG A |

| 11 Val | 12 Leu | 13 Glu | 14 Arg | 15 Tyr | 16 Leu | 17 Leu | 18 Glu | 19 Ala | 20 Lys |
|---|---|---|---|---|---|---|---|---|---|
| T GTC G A | C CTG A T | GAG A | AGG A | TAT C | T CTC G A | TTG A | GAG A | T GCC G A | AAG A |
|  | TTG A |  | G CGA T C |  | TTG A | G CTA T C |  |  |  |

| 21 Glu | 22 Ala | 23 Glu | 24 Lys | 25 Ile | 26 Thr |
|---|---|---|---|---|---|
| GAG A | T GCC G A | GAG A | AAA G | T ATC A | C ACG A T |

       The practical consequence of the two errors in the Sue et al. sequence is that no probe mixture comprehending either of the two incorrectly projected residues (Asn[7] and Lys[24]) could have been employed to detect the subject erythropoietin gene.

       To illustrate the problem of incorrect sequence information by Sue et al., one notes that if the Applicant had used the amino acid information in the reference and even gone beyond the notation of Woods et al. by generating a 64-member mixture of 17-mer probes based on the sequence spanning the entire codon for lysine at position 20 through

310

R008892031

the first two, non-degenerate bases of the codon for iso-
leucine at position 25, none of the 64 probes would have
been a duplicate of the erythropoietin gene sequence due to
the presence of the error in identifying the residue at
position 24. Applicant, of course, would have had no way of
knowing in advance that such work would be fruitless.

During the interview of March 4, 1987, the
Examiner advanced a suggestion that notwithstanding the two
errors in the Sue et al. human erythropoietin amino acid
sequence, and notwithstanding numerous instances of 4- and
6-fold degeneracy of potential codons within the "correct"
portions of the Sue et al. sequences, and notwithstanding
the above-quoted notations of the Anderson et al. reference,
the "correct" portions of the Sue et al. sequence appeared
to provided opportunities to construct relatively small sets
of mixed oligonucleotides for use in probing a human genomic
library for the human erythropoietin gene. Reference was
made to the amino acid residues immediately preceding the
incorrectly noted 24th residue and the Examiner suggested
that 12-mer or 14-mer mixtures might have been usefully
applied in the manner of the 14-mer probes of Breslow et al.
to find the human erythropoietin gene. Applicant's counsel
acknowledged that mixtures of probes of this length could be
made and that such mixtures would include small numbers of
oligonucleotides on the order of those used in the Breslow
et al. and Woods et al. systems, but traversed the
Examiner's suggestion that any substantial likelihood of
success would be expected to attend using probes of this
size to isolate an erythropoietin gene from a human genomic
library. This traversal was based on the relatively
straightforward probabilities associated with a hybridiza-

- 27 -

311  290

R008892032

tion "hunt" for a DNA sequence that is a specific match to a given probe sequence. The Examiner is invited to consider the following:

    1. It is clear that one could construct a set of 32 14-mer probes based on the potential codons for the "correct" 18th through 21st erythropoietin residues (Glu-Ala-Lys-Glu) plus the first two non-degenerate bases of residue 22 (Ala). One could also construct a set of 64 14-mers based on the potential codons for the "correct" 19th through 22nd residues (Ala-Lys-Glu-Ala) plus the first two non-degenerate bases of residue 23 (Glu).

    2. The simple random probability of finding any specific string of _five_ amino acid-specifying codons (i.e., 15 bases in a row) is one in $21^5$, or one in $4.08 \times 10^6$ amino acid triplet codons.

    3. The human genome comprises approximately $3.3 \times 10^9$ base pairs, corresponding to $1.1 \times 10^9$ triplets.

    4. Thus, the simple probabilities are that the human genome will contain approximately 270 copies of any particular string of five amino acid-specifying codons. This means that a single 15-mer sequence probe will likely result in about 270 "positive" hybridizations under rigorously stringent conditions. When 14-mer mixed sequence probes are employed, stringency conditions must be relaxed and many fold more non-specific hybridizations will occur, rendering the mixed probe system essentially useless for identifying an erythropoietin gene in the human genome.

    5. As one example of the non-specificity of a mixed probe system as described in paragraph 1 above, Applicant notes that the amino acid sequence Ala-Lys-Glu-Ala-Glu appears as residues 1190-1194 in the beta chain of

- 28 -



R008892033

an E. coli DNA directed RNA polymerase [See, Ovchinnikov et
al., European Journal of Biochemistry, 116, 621-629 (1981)
attached as Exhibit No. 2 hereto]. To the extent that E.
coli DNA is present in the E. coli cell lawn in which phage
DNA plaques of a human genomic library reside, probes for
the Ala-Lys-Glu-Ala-Glu sequence would hybridize to E. coli
DNA as well as to the human DNA encoding erythropoietin and
other duplicate DNA sequences in the human, viral and
bacterial genomes.

In hindsight, and with knowledge of the precise
errors in the Sue et al. sequence, a "best case" set of
17-mer mixed probes could be designed to include a single
oligonucleotide probe exactly corresponding to the true
erythropoietin DNA sequence. Such a mixture would span the
bases making up the codons beginning with lysine at position
19 through the non-degenerate first two bases of the codon
for either asparagine or lysine at position 24. The mix-
ture, however, would have had to have included 128 different
oligonucleotides. This number of probes is far in excess of
16 or 32 or 48 component mixtures of the Breslow et al. or
Woods et al. references.

To Applicant's knowledge, 128 mixed probes had
never before been successfully employed in screening a cDNA
library, much less a human genomic library which is approxi-
mately one hundred times more complex than a cDNA library.
More significantly, in the absence of knowledge of the
entire DNA sequence of a monkey kidney cDNA library or of a
human genome, one cannot determine whether this sequence is
unique to erythropoietin DNA. Indeed, it is only in hind-
sight (based on sequence data first provided herein) that
one sees that in the amino terminal encoding region there is

313  - 24 -
      292

R008892034



complete homology between monkey and human DNA sequences.
Attached hereto as Exhibit No. 3 is Applicant's paper des-
cribing the monkey erythropoietin gene isolation [Lin et
al., <u>Gene</u>, 44, 201-209 (1986)]. <u>While Applicant's 20-mer
mixture of probes corresponding to human sequence residues
46-52 was useful in isolating the monkey gene, the 17-mer
mixture corresponding to residues 86-91 could not be used</u>
due to the divergence of homology between the human and
monkey amino acid sequences. See Exhibit No. 3 and espe-
cially the "Conclusions" spanning pages 206-208.

It should then be noted that, as set forth in
Example 4, <u>two</u> sets of probes were needed to isolate 3 posi-
tive human erythropoietin genomic clones in a screen of
1,500,000 phage plaques. No useful <u>second</u> set of 17-mer or
20-mer probes comprehending this same amino terminal region
could be made without substantial amplification of the
number of required oligonucleotides beyond 128 required for
the first probe set.

Because Applicant could not have used the Sue et
el. reference information to follow the Breslow et al. and
Woods et al. procedures to screen a human genomic library or
a monkey cDNA library without substantially departing from
the quite simple procedures disclosed in the references, it
cannot properly be argued that the claimed subject matter
would have been obvious to a person of ordinary skill in the
art at the time Applicant's invention was made. The out-
standing rejection of claims 14, 17, 18, 21-24, 26, 27,
31-36, 58 and 61-68 may not therefore properly be applied to
corresponding claims 73, 77, 78, 81-84, 86, 87, 91-93, 96,
99-100, 103 and 75, 76, 94, 95, 97, 98, 101 and 102.

- 25 -

R008892035

8.  The "Subsidary" Rejections of Prior
    Claims 15, 69-72, 19, 20, 25 and 28-30
    Under 35 U.S.C. §103 Over the Sue et al.
    And Other References May Not Properly
    Be Applied to Corresponding Claims
    74, 79, 80, 85 and 88-90

In three paragraphs spanning pages 5 and 6 of the Office Action dated February 5, 1987, the Examiner lodged rejections of certain claims as being unpatentable over the combination of the Sue et al., Breslow et al. and Woods et al. references (as discussed immediately above) in further view of certain additional secondary references. More specifically, claims 15 and 69 through 72 were rejected in view of Talmadge et al. [P.N.A.S. (USA), 77, pp. 3369-3373 (1980)] which deals with expression of a rat proinsulin in E.coli. Claims 19 and 20 were rejected in further view of Farber et al. (apparently either reference C32 or reference C33) which discloses primate erythropoietin messenger RNA isolation. Finally, claims 25 and 28-30 were rejected in view of the additional references to Gouy et al. (PTO Reference "U") or Bennetzen et al. (PTO Reference "R'") concerning preference codons for E.coli and yeast.

Because the primary rejection of claims based on the Sue et al. reference taken together with Breslow et al. or Woods et al. has been demonstrated to be without proper foundation, Applicant submits that the "subsidiary" rejections of claims 15, 69-72, 19, 20, 25, and 28-30 may not properly be applied to corresponding claims.

- 28 -

315  291

R008892036

9.    The Rejection of Prio Claims 14,
15, 17-19, 21, 22, 24, 25, 28,
31-34, 36, 58 and 61-72 Under 35 U.S.C.
§102(b) in View Of Talmadge et al.
May Not Properly Be Applied to
Corresponding Claims 73, 74, 77-79,
81-82, 84-85, 88, 91-93, 96, 99, 103
<u>75, 76, 94, 95, 96, 98, 101 and 102</u>

Cross-referencing to the outstanding Section 112

rejection of claims 14, 15, 17-19, 21, 22, 24, 25, 28,

31-34, 36, 58 and 61-72 based on alleged undue breadth of

the terms "fragments thereof" and "having at least...acti-

vities", the Examiner has interposed a Section 102(b) rejec-

tion of these claims based on the Talmadge et al. refer-

ence. More specifically, the Examiner argues that the

claims are "deemed to embrace the DNA sequences and protein

expression method of Talmadge et al.".

Applicant respectfully disagrees with the

Examiner's position but submits that the issue is mooted by

the amendments to the claims discussed, <u>infra</u>, with respect

to Section 112 issues.

10.    The Rejection of Claims 69-72 Under
35 U.S. §103 Based on Talmadge et al.
<u>Is Mooted By Cancellation of These Claims</u>

Citing to the authority of the decisions of <u>In re</u>

<u>Durden</u> and <u>In re Albertson</u>*, the Examiner rejected claims

69-72 as being directed to obvious methods in view of the

DNA expression systems described in Talmadge, et al.

As previously noted Applicant has sought cancella-

tion <u>without prejudice</u> of prior claims 69-72 and has not

inserted claims corresponding thereto in this amendment.

The issues raised by the rejection are no longer present in

the application.

---

*    The Examiner appears to have inadvertently mis-cited
"<u>In re Larsen</u>" rather than <u>In re Albertson</u>.

- 21 -

R008892037

## CONCLUSION

The foregoing remarks are believed to establish that claims 73-103 are in condition for allowance and an early notice under 37 C.F.R. §1.311 is solicited.

Consistent with Applicant's position, enclosed herewith pursuant to 37 C.F.R. §1.311(b) is an "Authorization to Charge Issue Fee to Deposit Account".

Applicant further notes that this case has been made special by the Commissioner (see Notice dated May 2, 1986) and, consistent with MPEP §1309, Applicant requests that this application be suitably "tagged" upon allowance of the claims to allow for priority in printing.

                    Respectfully submitted,

                    MARSHALL, O'TOOLE, GERSTEIN,
                    MURRAY & BICKNELL


        By

                    Michael F. Boruh (Reg. No. 25,447)
                    A Member of the Firm
                    Attorneys for Applicants
                    Two First National Plaza
                    Chicago, Illinois  60603
                    (312) 346-5750

Chicago, Illinois
_March 11_____, 1987

- 28 -

3/7 ~~296~~

R008892038