**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMGEN, INC., <br><br> Plaintiff, <br><br> v. <br><br> F. HOFFMANN-LA ROCHE, LTD, ROCHE DIAGNOSTICS GMBH, and HOFFMANN-LA ROCHE INC., <br><br> Defendants. | Civil Action No. 05-12237 WGY |

**DEFENDANTS' ROCHE'S OPPOSITION TO AMGEN'S EMERGENCY MOTION TO ALLOW AMGEN TO EXAMINE DR. DON CATLIN ON MONDAY, SEPTEMBER 24, OR IN THE ALTERNATIVE TO TAKE DEPOSITION *DE BENE ESSE***

**I.     INTRODUCTION**

Amgen's "emergency" motion concerning Dr. Catlin should be denied for at least the following reasons:

(i)     If Dr. Catlin is truly unavailable, Amgen can introduce his fact testimony through his deposition taken in June. Amgen examined Dr. Catlin for essentially the length of time that it claims will be needed for Amgen to conduct Dr. Catlin's direct examination at trial. Amgen had the opportunity to depose the witness in case he could not appear, so there is no reason to disrupt Roche's case.

(ii)    Dr. Catlin is not "unavailable" to testify. Amgen's own representation states that Dr. Catlin's commitment extends only from September 26th through 28th. Even if three days of travel time are generously allotted at each end, Dr. Catlin is "unavailable" only from September 23rd through October 1st. Amgen has given no explanation as to why its paid expert cannot appear on one of the remaining six trial days in October. Roche's case should not be disrupted given the witness can appear.

(iii)   How and when Dr. Catlin's testimony is presented should be a moot issue given the utter lack of relevance of his testimony to any issue in this case. Dr.

>Catlin's testimony about tests ordinarily performed on samples taken from athletes accused of doping, viewed even in the most charitable light, is wholly irrelevant to any issue in this case and a sideshow meant to disrupt Roche's presentation of its case.

## II.    Amgen's Motion is Simply an ill-disguised Effort to Disrupt Roche's Invalidity Case

Amgen's motion is nothing more than a poorly disguised attempt to disrupt Roche's invalidity case-in-chief. Amgen asserts that the problem with Dr. Catlin's availability was precipitated by the fact that Roche will not rest its case until Monday, September 24th, implying that it was prepared to have Dr. Catlin testify on September 24th, apparently as one of its first witnesses. Yet on the last trial day prior to September 24th, Amgen identified its initial proposed witnesses, listing four names. Dr. Catlin was not among those witnesses. Amgen is blatantly seeking to disrupt Roche's invalidity case by juxtaposing Dr. Catlin's "directly responsive" testimony after that of Dr. Bertozzi. (D.I. 1083 at p. 5). This Court should not endorse this type of gamesmanship.

Roche fully expected to rest its invalidity case well in advance of September 17th. However, Roche has no control over the length of Amgen's cross examinations. Nor could Roche have predicted that Amgen's counsel would lodge endless erroneous objections asserting that Roche's experts have strayed outside their expert reports in order to impede the progress of Roche's case. Having succeeded in slowing that progress to a crawl, Amgen cannot claim to be surprised that Roche's case has taken so long. It is clear from Dr. Catlin's declaration that Amgen has known his scheduling constraints for quite some time. Had Amgen's counsel confined its objections to those with a legitimate basis, there would likely be no issue with Dr. Catlin's availability.

The timing of Amgen's "emergency" motion confirms that it is simply a tactical ploy. There can be no doubt that Amgen was fully aware of this alleged issue while the Court was in

session last week. On Wednesday, September 12th, Roche informed Amgen that Dr. Flavell would be testifying and that it would be introducing deposition testimony from Drs. Egrie and Strickland prior to closing its case in chief. Although Roche indicated that it fully expected to close its case by Friday, September 14th, Amgen initially refused to provide the names of its opening witnesses based on its conviction that Roche would *not* be able to conclude its case in that time frame. (Exhibit A, letter e-mailed from Brown to Fleming 9/12/07). On Friday morning at 8:30 am (apparently concerned that it may have miscalculated) Amgen identified four witnesses for the start of its case in "the remote possibility that Roche rests its case today." (Exhibit B, e-mail from Brown to Fleming 9/14/07). Dr. Catlin was *not* among those four witnesses. At minimum, at the end of the day with Dr. Bertozzi still under cross examination (after approx. 2 hours), Amgen knew that Roche would not be resting its case until September 24th. Yet rather than timely raise this issue with the Court at that time, Amgen decided to blindside Roche with its "emergency" motion.

To circumvent the ten expert limit in this case, Amgen in the pre-trial memo has designated Dr. Catlin as a "fact" witness. Regardless of how his role is characterized, Dr. Catlin is being well-compensated by Amgen and he has made a professional commitment to this case. Amgen contends that Dr. Catlin is obligated to attend a meeting in Beijing on September 26-28 but provides no explanation as to why he cannot testify after September 28th. Even assuming three full days for return travel from Beijing, Dr. Catlin should be available during the first week of October. With this timing he will either appear at the end of Amgen's rebuttal case on validity or at the start of its infringement case. While this may inconvenience Dr. Catlin, Roche's experts have been similarly inconvenienced. Dr. Bertozzi, who has already spent two days testifying will cut short a long planned trip to Berlin to receive a scientific award, to

continue her cross-examination testimony on Monday, September 24th. There should not be a double standard in this case where Roche experts need to change plans and appear but Amgen's witnesses are not similarly required to meet their obligations.

### III.    A Deposition *de bene esse* should not be Permitted

If Dr. Catlin is truly unavailable and Amgen wishes to introduce his testimony through deposition, then it should offer the testimony from Dr. Catlin's deposition taken just over three months ago on June 14, 2007. During that deposition, Amgen's counsel took full advantage of the opportunity to examine Dr. Catlin, questioning him for nearly the thirty minutes that Amgen asserts will be needed for Dr. Catlin's direct testimony. (D.I. 1083 at 3). Amgen has therefore preserved Dr. Catlin's testimony and since it is in no danger of being lost, the rationale for a *de bene esse* deposition does not apply here. "The rationale for a *de bene esse* deposition, however, is to preserve testimony in danger of being lost." *Johnson v. Washington Metro Area Transit Authority*, 1993 WL 37445, *1, (D.D.C. 1993) (citing *Quality Inns Int'l. Inc. v. Patel*, 1988 WL 137782, *1-2, (D.Md. 1988)). Amgen's desire for a second chance to question Dr. Catlin in the apparent hope of getting better testimony should not be permitted to disrupt the orderly introduction of evidence in this case, burden this Court or prejudice Roche. *See Sanofi-Synthelabo v. Apotex, Inc.*, 2005 WL 469594, *1 (S.D.N.Y. 2005).

Amgen has designated Dr. Catlin as a "fact" witness to avoid the ten expert limit in this case.[1] However, it is clear from Amgen's motion that it fully intends that Dr. Catlin will provide

---

[1]    Dr. Catlin submitted an expert report for Amgen but was not included among Amgen's ten trial experts. Dr. Catlin was also completely absent from Amgen's proposed witness lists until he was added as a fact witness to Amgen's final version of its witness list provided to Roche on the eve of filing of the Joint Pretrial Memorandum on August 10. (D.I. 807).

expert testimony.[2]  As such, there will undoubtedly be serious disputes over the proper scope of Dr. Catlin's testimony.  The "no more than 30 minutes" proposed by Amgen does not reflect that time that will be consumed by a contentious deposition, that will undoubtedly require the Court's intervention.  Amgen's proposal is an unnecessary waste of time when the parties should be focusing on presenting this case to this Court and the jury.

### IV.     Dr. Catlin's Testimony is Irrelevant to any Issue in this Case, including Amgen's Invalidity Defense

Dr. Catlin's testimony is not relevant to the issues in this case, as it pertains solely to "anti-doping" tests which do not provide any information bearing on the claims of the patents-in-suit.  Dr. Catlin's experience lies in developing (he doesn't perform them) tests to detect whether athletes are doping.  Dr. Catlin has admitted that the purpose of his anti-doping test is "to catch athletes who used an EPO" (Transcript of Deposition of Dr. Don Catlin at 95:12-17, dated June 14, 2007) and that his anti-doping test was not designed to provide any information about the molecular structure of different types of EPO (Transcript of Deposition of Dr. Don Catlin at 70:17-22).  While Dr. Catlin is offered by Amgen as someone who "is uniquely qualified to testify as an expert regarding the structural differences between recombinant and urinary EPO," Dr. Catlin testified that he is not an expert in carbohydrate chemistry.  (*See* D.I. 1083 at 2; Transcript of Deposition of Dr. Don Catlin at 74:12-75:3, dated June 14, 2007).  Furthermore, Dr. Catlin testified repeatedly at his deposition that his tests do not provide any information regarding the molecular structure of uEPO and rEPO samples tested.  (*See* D.I. 1083 at 2; Transcript of Deposition of Dr. Don Catlin at 35, 36, 67, 70-71, 95, 96, dated June 14, 2007).

---

[2]     Amgen states in its motion that "Dr. Catlin is uniquely qualified to testify as an expert" even while stating elsewhere in the motion that Dr. Catlin is a fact witness.  (D.I. 1083 at p. 2).

Moreover, Dr. Catlin has not been designated by Amgen.  As such, Dr. Catlin's tests are not relevant to determining whether the patents-in-suit are invalid.

Further, Dr. Catlin has never tested Dr. Goldwasser's uEPO, which is prior art against which the claims of the patents-in-suit must be judged.  The panel of commercial EPO products provided to Dr. Catlin by Amgen's attorney's are not commensurate with the scope of the claims in this litigation.  Thus, as Dr. Catlin's tests do not show how Dr. Goldwassers' uEPO relates to the claims of the patents-in-suit, they are irrelevant to the instant case.  Accordingly, Dr. Catlin's experience and tests run at Amgen's direction for purposes of this litigation are wholly irrelevant to any issues in this case.

## V. Conclusion

For the foregoing reasons Roche respectfully urges that Amgen's emergency motion should be denied in its entirety.

Dated: September 19, 2007
Boston, Massachusetts

Respectfully submitted,
F. HOFFMANN-LA ROCHE LTD,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE INC.

By its attorneys,

 /s/ Thomas F. Fleming
Leora Ben-Ami (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000

                                                         Lee Carl Bromberg (BBO# 058480)
                                                         Julia Huston (BBO# 562160)
                                                         Keith E. Toms (BBO# 663369)
                                                         Nicole A. Rizzo (BBO# 663853)
                                                         BROMBERG & SUNSTEIN LLP
                                                         125 Summer Street
                                                         Boston, MA 02110
                                                         Tel. (617) 443-9292
                                                         ktoms@bromsun.com

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the above date.

                                                     /s/ *Thomas F. Fleming*
                                                     Thomas F. Fleming