**Exhibit A**

Page 1

```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
              Civil Action No. 05-12237 WGY

AMGEN, INC.,                      )  DEPOSITION OF:
                                  )  DR. ELI FRIEDMAN
                                  )
           Plaintiff,             )
                                  )  **CONFIDENTIAL**
    vs.                           )
                                  )
                                  )
F. HOFFMANN-LA ROCHE LTD., a      )
Swiss Company, ROCHE              )
DIAGNOSTICS GmbH, a German        )
Company, and HOFFMANN-LA          )
ROCHE, INC., A New Jersey         )
Corporation,                      )
                                  )
           Defendants.            )
```

TRANSCRIPT of the stenographic notes of the proceedings in the above-entitled matter, as taken by and before LISA FORLANO, RMR, CRR, CSR, CLNR, Notary Public, held at the Marriott Hotel, 333 Adams Street, Brooklyn, New York, on Friday, August 17, 2007, commencing at 9:02 a.m.

(This transcript contains testimony designated CONFIDENTIAL as per Section 5(c) of the Amended Protective Order. Please treat the entire transcript in accordance with the protective order.)

Page 40

```
 1   knew that Roche was seeking to have it as an
 2   approved drug.
 3       Q    Having both epogen and Aranesp on the
 4   market, having the choice of two drugs, do you
 5   believe that that's beneficial to physicians?
 6            MR. MADRID:  Objection, instruct the
 7       witness not to answer.  Calling for opinions
 8       that are squarely outside the scope of the
 9       expert report.
10   BY MR. FLEMING:
11       Q    Are you going to follow his advice,
12   Doctor?
13       A    Yes.
14       Q    As a physician do you want to have
15   choice of medications for treating your patients?
16            MR. MADRID:  Objection, calls for
17       opinions that are squarely outside the scope
18       of the report.  I instruct the witness not to
19       answer.
20   BY MR. FLEMING:
21       Q    Are you going to follow that, Doctor?
22       A    Yes.
23       Q    Do you believe that it enhances
24   patients' quality of life to have choices of all
25   medications to treat whatever illnesses they may be
```

```
 1   suffering from?
 2              MR. MADRID:  I instruct the witness not
 3        to answer.  This is as well outside the scope
 4        of the report.  He's not made any opinions on
 5        the particular subject.
 6   BY MR. FLEMING:
 7        Q    Are you going to follow that advice,
 8   Doctor?
 9        A    Yes.
10        Q    You talked and you explained to me how
11   the quality of life covered a wide gamut of things
12   concerning patients and patient care, correct?
13        A    I commented on how the quality -- the
14   term quality of life was defined.  I did not talk
15   about how quality of life applied to patients.
16        Q    Do you think that having your choice of
17   pharmaceuticals improves the quality of life for
18   patients?
19              MR. MADRID:  I object and I instruct
20        the witness not to answer.  Again, he's not
21        rendered any opinion on the question of
22        choice.  It's outside the scope of the report.
23        You're wasting your time in this deposition,
24        so I instruct the witness not to answer.
25   BY MR. FLEMING:
```

```
 1              MR. MADRID:  I object.  It calls for a
 2       legal conclusion with respect to the
 3       description of the patent.  It's also vague
 4       and ambiguous.
 5              THE WITNESS:  Yes.
 6  BY MR. FLEMING:
 7       Q    You didn't analyze it?
 8       A    I did not analyze it.
 9       Q    It was the problem with my question,
10  not your answer.
11              MR. FLEMING:  Can I have 51, please.
12              MR. MADRID:  Let's take a break.
13              MR. FLEMING:  Would you like a break?
14              THE WITNESS:  Yes, I would like a
15       break.
16              VIDEO OPERATOR:  Going off the record,
17       2:58 p.m.
18              End of tape number four.
19              (Brief recess.)
20              VIDEO OPERATOR:  We're returning to the
21       record 3:11.
22              Beginning of tape number five.
23              MR. MADRID:  I want to make a statement
24       for the record.  This morning there were
25       questions asked with respect to quality of
```

1    life and to the extent that there were
2    instructions not to answer those questions,
3    I'm going to not -- I'm going to withdraw
4    those instructions not to answer and offer
5    counsel an opportunity to ask his questions.
6    However, it still remains our position that
7    the testimony sought is outside the scope of
8    the report and it's irrelevant.  I will make
9    my objections one by one as the questions go
10   on.
11           MR. FLEMING:  Counsel, your conduct
12   this morning in directing this witness not to
13   answer, as I feel inappropriately doing so,
14   has impeded my ability in the flow of my
15   questions in this deposition.  To at this late
16   hour, quarter after three, after we're gone on
17   for this long with this witness to now to
18   change your position is now prejudicial to me
19   and I'm going to do what I can do with this
20   witness during this deposition and if I feel
21   based on your change of heart that I need a
22   further deposition, I'll apply to the Court
23   for that, but I'm going to take the position
24   that by virtue of you having instructed this
25   witness not to answer, you have precluded this

```
 1        A     Yes.
 2        Q     And this patent has expired, do you
 3   know that?
 4        A     I've heard --
 5              MR. MADRID:  Objection, calls for a
 6        legal conclusion.
 7              THE WITNESS:  I've heard that.
 8   BY MR. FLEMING:
 9        Q     Did you do any comparison of the claims
10   of this patent and the claims of the two patents you
11   looked at, the '422 and the '933?
12        A     No, because I felt I would not have
13   been competent to do that comparison.
14        Q     And you're not offering any opinions
15   about the -- any relationship between the claims of
16   this '008 Patent, which is Friedman-22 and the two
17   patents that you comment upon in your report,
18   correct?
19        A     No, I am not.
20        Q     Are you aware that there are other
21   patents-in-suit in this case beyond the '422 and the
22   '933?
23        A     I have been so advised.
24        Q     And am I correct that you're not
25   offering any opinions on those patents at all?
```

```
 1        A     Correct.
 2        Q     And you have no intention of doing so?
 3        A     If I show the good judgment I should
 4   show, I will not.
 5        Q     Do you have any understanding as to
 6   whether what you have termed the quote, unquote,
 7   long felt need in the Chronic Renal Failure area in
 8   the United States was satisfied by the product of
 9   the claims of this '088 Patent?
10             MR. MADRID:  Objection, vague and
11        ambiguous, calls for a legal conclusion.
12             THE WITNESS:  My problem in answering
13        would be made easier if you could tell me the
14        principal claim and conclusion of the '088
15        Patent.
16   BY MR. FLEMING:
17        Q     Well, it's entitled DNA Sequences and
18   Encoding Erythropoietin.
19             Do you see that?
20        A     Yes, but I am not comfortable in saying
21   this early what the main visceral thrust of each
22   patent was and why the expired patent cripple
23   anything or doesn't cripple anything.  I'm not the
24   person to ask.
25        Q     So you don't know, am I correct?
```

Page 368

```
 1        A      That's a better answer.
 2        Q      As you sit here whether, in fact,
 3   whatever alleged invention of the '088 would have
 4   satisfied that need that you identified in your
 5   report as opposed to the other two patents you
 6   looked at?
 7               MR. MADRID:  Objection, misleading,
 8        lacks foundation.
 9               THE WITNESS:  Yes.
10   BY MR. FLEMING:
11        Q      I'm correct?
12        A      Yes.
13        Q      You're not saying it doesn't, you just
14   haven't done the analysis?
15        A      I could go one step beyond that and say
16   I don't know that I'm the person to do the analysis,
17   just looking at the pages in the patent leaves me in
18   the dust.
19        Q      Okay.
20               MR. FLEMING:  Could we mark this as 23,
21        please.  23, please.
22               (AM-ITC0056301 - AM-ITC0056310 was
23        marked Friedman-23 for identification.)
24   BY MR. FLEMING:
25        Q      Dr. Friedman, I've put in front of you
```