UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMGEN INC.,

Plaintiff,

v.

F. HOFFMANN-LA ROCHE LTD, ROCHE DIAGNOSTICS GMBH, and HOFFMANN-LA ROCHE INC.,

Defendants.

CIVIL ACTION No.: 05-CV-12237WGY
**CONFIDENTIAL VERSION**

**ROCHE'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. ADRIAN KATZ OBTAINED BY AMGEN THROUGH DURESS AND SUBTERFUGE FOR LACK OF COMPETENCE AND IMPROPER EXPERT TESTIMONY FROM A FACT WITNESS**

The testimony of Dr. Adrian Katz should be excluded because even a cursory review of his transcript reveals that he was not competent to testify pursuant to Federal Rules of Evidence 602 and 702. Specifically the record establishes:

(i) By his own repeated admissions, Dr. Katz had no independent memory whatsoever of the events that he was examined about. To the extent that he provided any factual testimony, it was improperly influenced by Amgen's attorneys and Amgen's expert Dr. Goldwasser.

(ii) Amgen's attorneys led Dr. Katz to believe that they represented his former employer, the University of Chicago, in this action, so that they could improperly influence his testimony in response to a subpoena originally served by Roche. Dr. Katz thus provided testimony that was not based on his personal knowledge and memory, but was simply Amgen and its expert Dr. Goldwasser's reconstruction of history.

(iii) Counsel for Amgen asked questions that, almost exclusively, would require Dr. Katz to provide expert testimony though he is a non-party, fact witness.

Dockets.Justia.com

(iv) This Court need only watch the videotape of Dr. Katz's testimony to realize the duress that he was under. (For example, at one point, Dr. Katz lapsed into speaking German instead of English.).

## I. ARGUMENT

As this Court has stated "trials really are a search for the truth." (Trial Tr. at 1082). Allowing Dr. Katz's testimony to be introduced into evidence would corrupt that noble purpose. Although Roche originally subpoenaed Dr. Katz to appear at deposition in an effort to learn facts about the Goldwasser Baron prior art clinical trial, upon learning that Dr. Katz had no memory whatsoever of the clinical trial, Roche's counsel agreed to withdraw the subpoena. Knowing that Dr. Katz had no memory of the relevant events, Amgen's counsel insisted that the deposition go forward. Amgen's counsel, Kevin Flowers, exploited Dr. Katz's trusting nature, leading him to believe that he represented Dr. Katz's former employer, the University of Chicago, in this action. *See* Transcript of Katz Deposition, March 30, 2007. ("Katz Depo. Tr.") at 103:15-107:9.[1] Confirming that he was misled regarding his representation by Amgen's counsel, Dr. Katz testified:

> Q: And after that somehow you met Mr. Flowers, right?
> A: Yes.
> Q: How did you meet him?
> A: I don't know.
> Q: Well, how did you -- did you call him as a lawyer or did he call you?
> A: No. *He called me and explained that his firm works with the university counsel and can he ask me a few questions.* I believe that was the sequence.
> Q: *He said that his firm works with the university?*
> A: *On this particular case.*
> Q: Okay.
> A: But when he called, I also expressed my puzzlement about why do I get this. I mean, I don't remember anything, and if Goldwasser wouldn't have told me, to this today I wouldn't have remembered.

[1] Declaration of Emily J. Schaffer in Support of Roche's Motion *in Limine* to Exclude the Testimony of Dr. Adrian Katz Obtained by Amgen Through Duress and Subterfuge for Lack of Competence and Improper Expert Testimony From a Fact Witness ("Schaffer Decl."), Exh. A.

Q: Okay. Good. *So Mr. Flowers told you that his firm was working with the university, is that --*
A: *I believe that.*
Q: Okay. And so *you used to work for the university, right?*
A: *Yes.*
Q: *And so you naturally spoke to Mr. Flowers?*
A: *Right.*

Furthermore, Dr. Katz's testimony makes abundantly clear that he had no recollection whatsoever of any information relevant to this lawsuit. It is equally clear that Amgen's counsel pressured him into providing testimony without regard to his recollection or the truth.

Q: Okay. So you had a conversation with Mr. Flowers about the clinical studies, right?
A: I was mostly asking him how did I get into this and he gave me the background that there is a lawsuit going on between the two companies and that my deposition is important. I said, But my deposition, I can finish in ten minutes. *I have no recollection of anything.*
*And he said, Yeah, that's nice, but I don't think it's going to be enough.*
Q: And you know that after Roche found out that you really didn't know anything about this Roche said, Well, let's not have the deposition? Did Mr. Flowers tell you that?
A: No.

* * * *

Q: So Roche understood from Dr. Baron that you probably wouldn't have any information and, therefore, Roche said, Let's not do the deposition and then Mr. Flowers and his colleagues said, No, we want to do the deposition anyway. Was that your understanding?
A: No. I didn't think he said, We want a deposition, but *my understanding was that he thought or said that it's inevitable, that even if I don't have a good recollection, a deposition is important.*
Q: So even if you don't remember, you still have to give testimony?
A: Yes.
Q: So --
A: I must say by then he asked me what do you remember or don't, and I said I just remember what I've asked Dr. Goldwasser and he told me about these three patients.
Q: Dr. Goldwasser told you about the three patients?
A: Just that there were three because I asked him, I said, Eugene, I didn't do clinical research in my life, and that was a phone call way at night I think after I received the subpoena from them.

Katz Depo. Tr. at 104:4-108:16 (emphasis added). Thus coached by Amgen's paid expert Dr. Goldwasser and believing that he was working with University counsel, Dr. Katz dutifully repeated the Amgen "party line" :

> Q: Okay. In an earlier answer you said that you didn't think that the – I'll call it the three-subject urinary EPO experiment, so that's how I'm going to refer to that study in 1979 and 1980 with the three subjects. You said earlier that that three-subject urinary EPO experiment, you didn't think it amounted to anything in the first place. Why do you say that?
>
> MR. McFARLANE: Objection; mischaracterizes earlier testimony and lacks firsthand knowledge.
>
> A: The results were inconclusive and, therefore, not publishable and they weren't --and I don't remember if we didn't continue because of this fact or because Dr. Goldwasser has a very limited supply of the human -- urine EPO, human EPO, and he didn't have enough to continue to try other patients.
>
> As I said, *at the time when I got the first subpoena I didn't remember anything about this whole thing, but now I know this.* And then -- juggling my memory I remembered what I just said, that it was inconclusive.

*Id.* at 61:14-62:14 (emphasis added). Dr. Katz's purported newfound memory is belied by his testimony:

> Q: So are you aware of an experiment in which Dr. Goldwasser's human urinary EPO was administered to human subjects?
>
> A: Yes. Yes, I became aware.
>
> Q: Okay. How did you become aware?
>
> A: When I got the subpoena saying that you participated in a clinical study and I don't know what clinical study is, I called my friend Dr. Goldwasser, and he says, Yeah, yeah, you remember. We gave this to a handful of patients. So I wasn't sure if I should continue with him, but I said, Oh, well. I get it out of all the recesses of my brain and I -- he juggled my memory. I wouldn't have remembered.

*Id.* at 49:24-50:16; *see also id.* at 54:22-56:11; 64:16-65:15; 65:19-67:11; 67:15-17; 72:11-73:2; 78:12-21; 85:21-86:21; 96:6-97:2; 98:7-20.

Finally, although not reflected in the written transcript, Dr. Katz, at one point in the deposition, became so flustered that he lapsed into speaking German. *See id.* at 113:1-9; Dep.

Videotape 00:33:35:107-00:34:47:541.[2] Roche respectfully urges the Court to view this videotape portion before ruling on this motion.

Federal Rule of Evidence 602 "requires that a witness have 'personal knowledge' about the matter to which he testifies. Such knowledge can include 'inferences and opinions, so long as they are grounded in personal observations and experience.'" *Sheek v. Asia Badger, Inc.*, 235 F.3d 687, 695 (1st Cir. 2000) (quoting *United States v. Rodríguez*, 162 F.3d 135, 144 (1st Cir. 1998)). "The Rule acknowledges that distortion increases with transfers of testimony, and that the most reliable testimony is obtained from a witness who has actually perceived the event." 3-602 Weinstein's Federal Evidence § 602.02. Because Dr. Katz lacks ***personal knowledge of the matter,*** as required by FRE 602, there is no foundation at all for his "factual" testimony. To the very limited extent that Dr. Katz's memory was recently "juggled" by his former colleague Dr. Goldwasser, Dr. Katz testified that his role in the study was minor. (Dep. Tr. 67:18-68:10; 73:13-74:16). This revelation further confirms Dr. Katz's lack of personal knowledge of the Baron clinical study or any relevant factual matter at issue in this litigation.

There is further no basis for introducing expert testimony from Dr. Katz. His testimony confirms not only his lack of factual knowledge, but also his lack of qualifications as an expert regarding a clinical trial - - "I didn't do clinical research in my life."*I.d.* at 108:14-16. Under the Federal Rule of Evidence 702 and *Daubert*, a court must consider "whether the putative expert is 'qualified by 'knowledge, skill, experience, training, or education.''" *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 40 (1st Cir. 2005) (quoting *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 259 (1st Cir. 1997)). Amgen's counsel repeatedly subjected Dr. Katz, a fact witness, to objectionable questioning to elicit an unqualified expert opinion regarding the study and other matters of which he had no personal knowledge. Dr. Katz was

[2] Schaffer Decl., Exh. B.

unable to provide responsive answers. (Dep. Tr. 20:5-21; 21:9-20; 23:9-24; 25:5-15; 26:2-9; 34:2-36:1; 36:16-39:13; 41:22-42:18; 43:19-44:14; 46:24-48:9; 49:7-22; 60:1-22; 62:16-63:13; 76:4-21; 79:22-81:7; 82:10-83:8; 88:12-23; 89:18-23; 90:1-11; 90:21-95:12; 96:16-97:2). "The relevancy inquiry under Rule 702 focuses on whether the expert testimony 'likely would assist the trier of fact to understand or determine a fact in issue.'" *Correa v. Cruisers, a Division of KCS Int'l, Inc.*, 298 F.3d 13, 26 (1st Cir. 2002) (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)). Dr. Katz's testimony cannot possibly assist the jury and will most likely cause confusion.

Dated: September 25, 2007
Boston, Massachusetts

/s/ Emily J. Schaffer
Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
Kimberly J. Seluga (BBO# 667655)
Emily J. Schaffer (BBO# 653752)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292
eschaffer@bromsun.com

Leora Ben-Ami (*pro hac vice*)
Mark S. Popofsky (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Pursuant to agreement of counsel dated September 9, 2007, paper copies will not be sent to those indicated as non registered participants.

/s/ Emily J. Schaffer
Emily J. Schaffer