# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 05-12237 WGY |
| v. ) | |
| ) | |
| F. HOFFMANN-LA ROCHE ) | |
| LTD., a Swiss Company, ROCHE ) | |
| DIAGNOSTICS GmbH, a German ) | |
| Company and HOFFMANN-LA ROCHE ) | |
| INC., a New Jersey Corporation, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**AMGEN INC.'S OPPOSITION TO ROCHE'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF DR. ADRIAN KATZ**

Roche claims that Dr. Katz had no actual memory or knowledge of the facts about which he testified, that Amgen's counsel elicited improper expert testimony from Dr. Katz Amgen's counsel and that Dr. Goldwasser misled Dr. Katz and improperly influenced his testimony. There is no evidence supporting any of these claims.

**I.    ROCHE'S ATTEMPT TO EXCLUDE DR. KATZ'S TESTIMONY IS BASELESS; THE FEDERAL RULES OF EVIDENCE DO NOT REQUIRE THAT A WITNESS HAVE PERFECT MEMORY**

Roche seeks to exclude Dr. Katz's testimony because he allegedly lacks "personal knowledge of the matter." Roche claims that even to the extent that Dr. Katz's memory was "juggled" by Dr. Goldwasser, Dr. Katz's role in the study was minor.[1] In support of its claim, Roche cites two excerpts from Dr. Katz's deposition.

These excerpts show that Dr. Katz had a relatively minor role, if any, in *designing* the three-patient study and that he could not recall if he was caring for the patients at that time.[2] The excerpts provide no indication as to the extent of Dr. Katz's role in or his knowledge of the study. In any case, whether Dr. Katz had a major or minor role in the study is immaterial to whether he has personal knowledge of the matter and is thus competent to testify under Fed. R. Evid. 602. "Evidence is inadmissible under Rule 602 only if… the witness could not have actually perceived or observed that which he testified to."[3] As a practicing nephrologist and a participant in the study about which he was deposed, Dr. Katz had personal knowledge of the facts in question.

The Federal Rules of Evidence do not require a witness to have a perfect memory of an event before testifying. Rule 602 "does not require that the witness' knowledge be positive or

---

[1] Roche's Motion in Limine to Exclude the Testimony of Dr. Adrian Katz Obtained by Amgen through Duress and Subterfuge for Lack of Competence and Improper Testimony from a Fact Witness (Docket No. 1140). [hereinafter "Roche's Motion"].

[2] Katz [3/30/2007] Dep. Tr. 67:18-68:10, 73:13-74:16.

[3] *United States v. Rodriguez*, 162 F.3d 135, 144 (1st Cir. 1998) (internal citation omitted).

rise to the level of absolute certainty."[4] Dr. Katz did perceive the events surrounding the three-patient study, and his need to refresh his memory goes to the weight, not the admissibility, of his testimony. His testimony should be admitted and the jury should be allowed to hear it and draw its own conclusions.

## II. AMGEN IS NOT ATTEMPTING TO INTRODUCE EXPERT TESTIMONY FROM DR. KATZ

In a second effort to preclude Dr. Katz's testimony, Roche accuses Amgen's counsel of questioning Dr. Katz in an attempt to elicit "unqualified expert opinion regarding the study and other matters of which he had no personal knowledge."[5] In support of its position, Roche cites excerpts from Dr. Katz's testimony, most of which have not even been designated by Amgen for presentation to the jury.

As to the excerpts cited by Roche that *have been* designated by Amgen, they do not constitute expert testimony. The excerpts are testimony based on Dr. Katz's experience as a practicing nephrologist, before and after the advent of Epogen, and as a participant in the three-patient study. A witness does not become an expert simply by testifying about "the particularized knowledge that the witness has by virtue of his or her position in the business."[6] Dr. Katz's testimony is based on his experiences and observations during the time in question. His high level of education and expertise does not transform his factual testimony into expert testimony.[7] In any event, it is for the Court to make a case by case ruling on whether or not the specified designations amount to expert testimony.

---

[4] *M.B.A.F.B. Federal Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982).
[5] Roche's Motion in Limine, *supra* note 5, at 5.
[6] *Morin v. State Farm Fire & Cas. Co.*, 453 F. Supp. 2d 173 (D. Me. 2006) citing Fed. R. Evid. 701 advisory committee notes.
[7] *See e.g.*, *United States v. LeCroy*, 441 F. 3d 914 (11th Cir. 2006) (Witness "testimony qualified under [FRE] 701 and did not constitute expert opinion under [FRE] 702. Just because [witness']

### III.  ROCHE'S ACCUSATIONS REGARDING MISCONDUCT ARE BASELESS AND OFFENSIVE

#### A.  AMGEN'S COUNSEL DID NOT MISLEAD DR. KATZ INTO BELIEVING THAT DR. FLOWERS WAS UNIVERSITY COUNSEL NOR DID DR. FLOWERS "PRESSURE" DR. KATZ INTO GIVING FALSE TESTIMONY.

Regrettably, Roche makes a number of personal and baseless accusations against Amgen's counsel, Kevin Flowers.

First, Roche accuses Dr. Flowers of misleading Dr. Katz into believing that Dr. Flowers was working for the University of Chicago in connection with this case. This is completely untrue.[8] At no time did Dr. Flowers represent to Dr. Katz that he was representing the University in this case. In fact, Dr. Flowers, who questioned Dr. Katz first, began the deposition by stating "Dr. Katz, as you know, my name is Kevin Flowers. I represent the plaintiff in this case, Amgen, Incorporated."[9]

Following the subpoena from Roche, Dr. Katz called his friend Dr. Goldwasser, and Dr. Goldwasser in turn called Dr. Flowers. Dr. Flowers, whose firm represents the University of Chicago in various other matters, called Matthew Allison, the outside counsel for the University of Chicago, where Dr. Katz had formerly worked. Mr. Allison indicated that the University counsel had decided not to represent Dr. Katz in this matter as he was no longer an employee of the University. Mr. Allison said he would call Dr. Katz and inform him that Dr. Flowers would be contacting him.[10] Following this discussion, Dr. Flowers called Dr. Katz and Dr. Katz stated

---

position and experience could have qualified him for expert witness status does not mean that any testimony he gives at trial is considered 'expert testimony.'")

[8] *See* Declaration of Kevin Flowers in Support of Amgen's Opposition to Roche's Motion in Limine to Exclude the Testimony of Dr. Adrian Katz Obtained by Amgen through Duress and Subterfuge for Lack of Competence and Improper Expert Testimony from a Fact Witness.

[9] Katz Depo. Tr. [3/30/2007] 5:19-21.

[10] *See* Declaration of Kevin Flowers, *supra* note 8.

that he had already spoken with Mr. Allison. Dr. Flowers then met with Dr. Katz for an hour and a half. This was the only meeting that Dr. Flowers had with Dr. Katz before Dr. Katz's deposition.[11] Thereafter, Amgen subpoenaed Dr. Katz, in order to ensure that it would not be precluded from asking him questions at his deposition by Roche. This subpoena of Dr. Katz was entirely within Amgen's rights.

In addition to accusing Dr. Flowers of misleading Dr. Katz, Roche also accuses Dr. Flowers of pressuring Dr. Katz into "providing testimony without regard to his recollection or the truth."[12] Roche misrepresents the facts.

Roche claims Dr. Flowers forced Dr. Katz to testify and cites Dr. Katz's deposition testimony that when he told Dr. Flowers he did not remember very much about the study, Dr. Flowers replied "I don't think that will be enough."[13] Roche fails to point out that this exchange followed Roche's subpoena of Dr. Katz, and *before* Amgen issued its own subpoena to Dr. Katz. Dr. Flowers acted entirely properly in informing Dr. Katz that he should respond to Roche's subpoena, even if he did not remember much, and that if Dr. Katz could not remember something, he should say so.[14]

To support its position that Dr. Katz was unduly pressured, Roche provides a thirty second video from the deposition of Dr. Katz. Roche alleges that Dr. Katz became "so flustered that he lapsed into speaking German." When viewed, the video shows Roche's allegation to be preposterous. Roche's counsel ***Leora Ben-Ami***, ***not Dr. Flowers***, is questioning Dr. Katz during the clip. Dr. Katz, a native of Hungary, says one foreign word while searching for the right

---

[11] Katz Depo. Tr. 105:15-22.

[12] Roche's Motion in Limine, *supra* note 1.

[13] *Id*. at 3-4, citing to Katz Dep. Tr. 104:4-108:16.

[14] Declaration of Kevin Flowers, *supra* note 8, at 2.

4

words to explain an answer to Ms. Ben-Ami.[15] The allegation that the witness' utterance of a foreign word in response to a question by Roche's own counsel, Ms. Ben-Ami, somehow reflects improper behavior on the part of Amgen's counsel carries advocacy to a new low.

Roche's accusations of misconduct are unfounded. Roche never objected to the deposition of Dr. Katz, or Amgen's conduct in connection with that deposition, until now, during trial. That behavior reflects Roche's true purpose: to engage in a drumbeat of exclusionary motions and at times *ad hominem* attacks in advance of each of Amgen's witnesses in an attempt to portray the witness, or Amgen, in a negative light and thus bias the Court. Roche's motion should be denied.

### B. DR. GOLDWASSER DID NOT "COACH" DR. KATZ INTO GIVING TESTIMONY FAVORABLE TO AMGEN.

Roche claims that Dr. Goldwasser, acting as Amgen's paid expert, "coached" Dr. Katz into giving testimony favorable to Amgen and thus improperly influenced Dr. Katz's testimony. Once again, Roche is either blatantly ignoring the facts or is making accusations without conducting a proper inquiry.

As Roche admits in its motion, Dr. Katz testified in his deposition that *he* was the one who initiated the call to his friend Dr. Goldwasser when he received Roche's subpoena:

> Q: So are you aware of an experiment in which Dr. Goldwasser's human urinary EPO was administered to human subjects?
> A: Yes. Yes, I became aware.
> Q: Okay. How did you become aware?
> A. *When I got the subpoena* saying that you participated in a clinical study and I don't know what clinical study is, *I called my friend Dr. Goldwasser*, and he says, Yeah, yeah, you remember. We gave this to a handful of patients. So I wasn't sure if I should continue with him, but I

---

[15] Ms. Ben-Ami asked Dr. Katz whether he believed that Dr. Goldwasser understood that the results that Dr. Goldwasser submitted to the Government were correct. Katz Dep. Tr. 112:21-113:2. It is hardly surprising that Dr. Katz had to search for words when asked to interpret his former colleague's state of mind a quarter of a century ago.

said, Oh well. I get it out of all the recesses of my brain and I – he juggled my memory. I wouldn't have remembered.

    Q: *How else did he juggle your memory?*

    A. *He didn't say anything other than that*. He says, You remember the stuff we did with Dimitri 25 years ago, whenever. And then I remembered that *we* used his purified – partially purified, quote, unqote, EPO in very few patients.[16]

As this testimony shows, Dr. Katz initiated the call to Dr. Goldwasser and Dr. Goldwasser merely reminded Dr. Katz of the study. It is hardly surprising that Dr. Katz needed to be reminded of a failed clinical trial conducted over twenty-five years ago.

## IV.  CONCLUSION

Roche has failed to support its position that Dr. Katz's testimony should be excluded. Dr. Katz has personal knowledge of the events in question and should be allowed to testify via deposition regarding his knowledge of those events. Roche has failed to support its motion *in limine* and it should be denied.

---

[16] Katz Dep. Tr. 49:24-50:23 *(emphasis supplied).*

September 27, 2007                                    Respectfully Submitted,

                                                      AMGEN INC.,
                                                      By its attorneys,


                                                           /s/ Patricia R. Rich
Of Counsel:                                           D. DENNIS ALLEGRETTI (BBO#545511)
                                                      MICHAEL R. GOTTFRIED (BBO#542156)
STUART L. WATT                                        PATRICIA R. RICH (BBO#640578)
WENDY A. WHITEFORD                                    DUANE MORRIS LLP
MONIQUE L. CORDRAY                                    470 Atlantic Avenue, Suite 500
DARRELL G. DOTSON                                     Boston, MA  02210
KIMBERLIN L. MORLEY                                   Telephone:     (857) 488-4200
ERICA S. OLSON                                        Facsimile:     (857) 488-4201
AMGEN INC.
One Amgen Center Drive                                LLOYD R. DAY, JR. (*pro hac vice*)
Thousand Oaks, CA   91320-1789                        DAY CASEBEER
(805) 447-5000                                        MADRID & BATCHELDER LLP
                                                      20300 Stevens Creek Boulevard, Suite 400
                                                      Cupertino, CA  95014
                                                      Telephone:     (408) 873-0110
                                                      Facsimile:     (408) 873-0220

                                                      WILLIAM GAEDE III (*pro hac vice*)
                                                      McDERMOTT WILL & EMERY
                                                      3150 Porter Drive
                                                      Palo Alto, CA 94304
                                                      Telephone:     (650) 813-5000
                                                      Facsimile:     (650) 813-5100

                                                      KEVIN M. FLOWERS (*pro hac vice*)
                                                      MARSHALL, GERSTEIN & BORUN LLP
                                                      233 South Wacker Drive
                                                      6300 Sears Tower
                                                      Chicago IL 60606
                                                      Telephone:     (312) 474-6300
                                                      Facsimile:     (312) 474-0448

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of electronic filing and paper copies will be sent to those indicated as non-registered participants on September 27, 2007.

*/s/ Patricia R. Rich*
Patricia R. Rich