# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., <br><br> Plaintiff, <br><br> vs. <br><br> F. HOFFMANN-LA ROCHE LTD, ROCHE DIAGNOSTICS GmbH and HOFFMANN-LA ROCHE INC., <br><br> Defendants. | Civil Action No. 05-12237 WGY |

## DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE AMGEN FROM PRESENTING TESTIMONY OF CHARLES KUNG

Amgen should be precluded from calling Mr. Charles Kung as a supposed fact witness in this case for the following reasons:

- Amgen failed to timely disclose Mr. Kung as a person with knowledge of the "State of the Erythropoietin Art as of the Date of Lin's Inventions." Amgen first disclosed that Mr. Kung had such knowledge in its Rule 26(a) disclosures over one month after discovery ended. Roche did not have an opportunity to take Mr. Kung's deposition on this topic and Amgen has refused to make Mr. Kung available to Roche prior to calling him at trial. Amgen has never provided Roche with Mr. Kung's contact information, though Amgen's lawyers are clearly in contact with Mr. Kung.

- Amgen once again failed to give adequate notice to Roche of the order in which it will call its witnesses, moving Mr. Kung up in the order just minutes before the nightly conference call at 9:00pm when Amgen's counsel assured Roche counsel that they could "take to the bank" the order in the 5pm letter. This gamesmanship must end.

- Amgen is trying once again to back-door expert testimony about urinary EPO or the state of the erythropoietin art in through a supposed fact witness. Such testimony violates the limit of 10 experts per side and violates the requirements of providing an expert report of Fed. R. Civ. Proc. 26(a)(2)(B).

**Amgen Should Be Precluded From Back-Dooring Expert Testimony Through Alleged Fact Witness Mr. Kung**

Amgen has indicated Mr. Kung is a person with knowledge of "Urinary EPO" and "The State of the Erythropoietin Art as of the Date of Lin's Inventions" and presumably is being called by Amgen to testify to those topics.[1] Mr. Kung should be precluded from testifying as to any "facts" he allegedly knows as he was not disclosed as a person with knowledge about the state of the erythropoietin art at the time of Lin's alleged inventions until the fourth Rule 26(a) disclosure filed by Amgen, over a full month after fact discovery closed and in the middle of expert discovery. FRCP 26(a)(1)(E) provides that "a party *must* make its initial disclosures based on the information then reasonably available to it." If a party fails to comply with this mandate FRCP Rule 37(c)(1) states that "a party that without substantial justification, fails to disclose information required by rule 26(a)(1) or 26(e)(1) ... , unless such failure is harmless, [is not] permitted to use as evidence any witness or evidence not so disclosed."

Amgen first listed Mr. Kung as a person with knowledge of the state of the erythropoietin art in its Second Supplemental Disclosures served May 7, 2007.[2] Fact discovery in the case ended April 2, 2007, and the parties were well into expert discovery at that point.[3] Roche was provided no opportunity to take Mr. Kung's deposition on any knowledge he may have related to the state of the erythropoietin art at the time of Dr. Lin's alleged inventions.[4] Amgen has

---

[1] Plaintiff Amgen Inc.'s Second Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), served May 7, 2007 (Amgen's Second Suppl. Disc.)

[2] Amgen did disclose Mr. Kung as a potential witness in its Supplemental Rule 26(a) disclosure in March of 2007. Mr. Kung however, was only disclosed as a potential witness for issues relating to urinary EPO, a matter distinct and wholly unrelated to the one he was disclosed for in their untimely disclosure.

[3] The fact that Amgen first listed Mr. Kung as person with factual knowledge while in the middle of serving expert reports and conducting expert discovery further belies Amgen's true intention of eliciting expert testimony from this supposed "fact" witness.

[4] Amgen did not even provide Dr. Kung's contact information in its disclosures (or any time thereafter), listing only his name. Thus, Roche was never even provided from Amgen the information needed to serve a subpoena for documents or testimony on Mr. Kung. Amgen now wants to call him as a witness and must have his contact information, which Amgen still has never provided.

previously litigated four of the five patents currently in suit, and Mr. Kung testified in the Hoechst/TKT case. It is not credible that Amgen only learned Mr. Kung has whatever relevant testimony Amgen now claims he has until after fact discovery closed in this case. This is a further example of the gamesmanship Amgen has consistently engaged in throughout this case. Amgen should be precluded from calling Mr. Kung for any purpose due to this late disclosure.

Additionally, Amgen's bad faith in its calling of expert witnesses as fact witnesses and refusing to provide appropriate notice to Roche of the witnesses Amgen intends to call is further demonstrated by its actions the evening of September 27, 2007 with respect to Mr. Kung. After the difficulties related to Amgen's refusal to tell Roche it was calling Dr. Lin to follow Dr. Orkin, Roche attempted to get clarification as to the witnesses and the order of the witnesses, Amgen would call on Friday September 28th. On a conference call, Amgen counsel assured counsel for Roche that it would receive a letter at 5pm Sept. 27 that would have the order of witnesses, the exhibits Amgen would use with the witnesses, and that Roche could "take it to the bank" that Amgen would follow what was laid out in the letter. The 5pm letter stated that after completing the playing of Dr. Harlow's deposition testimony, followed by the cross-examination and potential re-direct of Dr. Lin, Amgen would call Dr. Browne, then Dr. Goldwasser and if time permitted possible Dr. Brugnara and Mr. Kung.[5] Roche devoted its resources to preparing for the witnesses in the order Amgen told Roche it could "take to the bank." Roughly 15 minutes before the scheduled conference call to discuss objections at 9:00 pm, Amgen sent a new letter to Roche stating that "depending on how much time is taken by the Lin and Browne examinations, we may move Mr. Kung up in the witness order."[6]  It is incredible that after the incident calling Dr. Lin out of order on Sept. 27, and telling Roche it would send the order of

---

[5] First Letter from Renee DuBord Brown to Tom Fleming, dated September 27, 2007, Ex. A to the Fratangelo Decl.

2

witnesses at 5pm Sept. 27 for the 28th that Roche could take to the bank, hours later the same night Amgen would send a letter changing the order of witnesses. This continued bad faith should not be countenanced and Dr. Kung should be completely precluded from testifying.

**Amgen Should Be Precluded From Back-Dooring Expert Testimony Through Alleged Fact Witness Mr. Kung**

As they have already done in this case, Amgen is attempting to violate the protections in place in the Federal Rules with respect to expert testimony and the provision that each party only be allowed 10 disclosed trial experts by trying to elicit expert testimony through a so-called "fact-witness." Mr. Kung was never an Amgen employee, and therefore anything he might say as a fact witness would be totally irrelevant. The two topics on which Amgen claims Mr. Kung has knowledge - urinary EPO and the state of the erythropoietin art as of the date of Lin's alleged inventions are clearly issues that call for expert testimony, and illustrate without question Amgen's attempt to elicit expert testimony from this witness.[7] Each side has been limited to 10 expert witnesses in this jury trial. The Court has already seen Amgen's attempt to have more experts by eliciting expert testimony through Dr. Catlin and Dr. Lin. In addition, as this Court has stated, Fed. R. Civ. P. 26(a)(2)(B) provides protections for expert testimony - the expert must produce a report disclosing what they will say at trial and must not go beyond their expert report in their trial testimony. Not only would Roche be prejudiced by Amgen having more expert witnesses than it is entitled to under the 10 expert limit, but the prejudice would be that much worse without the protection of an expert report. Anything Mr. Kung might have to say that could be relevant to these topics would be expert testimony. Even if Amgen claims they are only bringing Mr. Kung to testify to what Mr. Kung believed or knew about the state of the art or

---

[6] Second Letter from Renee DuBord Brown to Tom Fleming, dated September 27, 2007, Ex. B to the Fratangelo Decl.

3

about urinary EPO, Mr. Kung's state of mind or understanding is completely irrelevant as he isn't the inventor of the patents-in-suit, and isn't even an Amgen employee from the relevant time period. He is a third party Amgen wishes to use as a closet expert.

**If Mr. Kung is Permitted To Testify, Roche Should Be Permitted to Take Mr. Kung's Deposition Prior To Any Testimony**

Mr. Kung should be precluded from giving any testimony at trial for the reasons stated above. However, if he is allowed to testify as to some narrow area that he may have relevant fact discovery, Roche should be permitted to take his deposition prior to his presenting any testimony. Roche was never presented Mr. Kung's contact information, and had no opportunity to depose Dr. Kung during fact discovery at least as to the state of the erythropoietin art at the time of Dr. Lin's alleged inventions. After learning for the first time Wednesday night, September 26, 2007, that Amgen was planning on calling Mr. Kung as a fact witness, Roche contacted Amgen and notified Amgen that Roche wanted to take Mr. Kung's deposition prior to any testimony, and Roche would be prepared to do so by Thursday, September 27, 2007 at 2:30pm. Amgen refused to provide Mr. Kung for deposition.[8]

**Conclusion**

For all the foregoing reasons, Roche respectfully requests the court to preclude Amgen from offering Dr. Charles Kung as a witness for this issue, or in the alternative, to delay his testimony and allow Roche an opportunity to depose him.

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1**

---

[7] Even if Mr. Kung produced an expert report and was listed among Amgen's 10 trial expert witnesses, he would be unqualified to give any expert testimony. Mr. Kung does not have a Ph.D. nor M.D. degree and thus does not come close to being one of ordinary skill in the relevant art who could give any relevant testimony.

[8] Email from Thomas Fleming to Renee DuBord Brown dated Sept. 26, 2007 at 6:07pm, and response from Ms. Brown to Mr. Fleming on Sept. 27, 2007 at 1:04pm, attached as Ex. C to the Fratangelo Decl..

4

I certify that counsel for the parties have conferred in an attempt to resolve or narrow the issues presented by this motion and that no agreement could be reached.

Dated:  September 27, 2007
        Boston, Massachusetts

Respectfully submitted,

F. HOFFMANN-LA ROCHE, LTD,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE INC.

By its attorneys,

/s/ *Peter Fratangelo*_____
Leora Ben-Ami (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel. (617) 443-9292
ktoms@bromsun.com

5

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the above date.

                                                */s/ Thomas F. Fleming*_____
                                                Thomas F. Fleming