# EXHIBIT B

Dockets.Justia.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 05 Civ. 12237 WGY |
| v. | ) | |
| | ) | |
| F. HOFFMANN-LAROCHE LTD., | ) | |
| ROCHE DIAGNOSTICS GMBH, and | ) | |
| HOFFMANN LAROCHE INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF WYETH REGARDING PRODUCED DOCUMENTS**

I, Christopher Chung, declare:

1. I am employed as a Senior Patent Attorney by WYETH. My office address is 87 CambridgePark Drive, Cambridge, MA.

2. I make this declaration of my own personal knowledge. If called to testify as to the truth of the matters stated herein, I could and would do so competently.

3. In response to a subpoena for documents in this case, a search for documents at WYETH (which is the successor to Genetics Institute, Inc.) was conducted, resulting in the documents that were produced pursuant to the subpoena.

4. The documents produced in response to the subpoena bear production numbers W01022, W01025, W01040-1041 ("Documents").

5. The Documents are true and correct copies of three agreements, which were discovered in WYETH's offices in the files of WYETH's legal department, which is the place, where if authentic, I would expect these agreements to be found.

6. The Documents, as discovered in the files of WYETH's legal department, were found in a file in such a condition as to create no suspicion concerning their authenticity.

7. The dates on the face of the Documents indicate that the Documents were in existence for more than twenty years.

8. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Signed this 31st day of August, 2007.

By: _____
Name: Christopher Chung
Title: Senior Patent Attorney

## CERTIFICATE OF SERVICE

       I hereby certify that the Declaration of Wyeth Regarding Produced Documents was served upon the attorneys of record for the defendants (as listed below) via hand delivery and electronic mail on September 5, 2007.

KAYE SCHOLER LLP
c/o Metro Meeting Centers – Boston
101 Federal Street, 4th Floor
Boston, MA 02110
Tel: (212) 836-8000

Emails: tfleming@kayescholer.com
         dlopez@kayescholer.com;
         bborel@kayescholer.com;
         dbaker@kayescholer.com;
         hsuh@kayescholer.com;
         jhuston@bromsun.com
         cjensen@bromsun.com

                                                        _/s/ Irasema Virrueta_
                                                        Irasema Virrueta

## ALBERT EINSTEIN COLLEGE OF MEDICINE

### OF YESHIVA UNIVERSITY

1300 MORRIS PARK AVENUE, BRONX, N.Y. 10461   CABLE: EINCOLLMED, N.Y.

**DEPARTMENT OF MEDICINE**                                                                PHONE: (212) 430-2000

April 11, 1985

Dr. Ed Fritsch
Genetics Institute
87 Cambridge Park Drive
Cambridge, Massachusetts   02140

Dear Ed:

   I am writing to request that you and Genetics Institute continue to retain samples of my human renal carcinoma cell line (as defined in the original "Sponsored Research Agreement"), in order to provide a second storage site for these cells. The cells should be maintained frozen, with periodic culturing if possible, to provide new cells for freezing.

   These cells should not be provided to anyone other than myself and Dr. Dani Shouval.

   Please acknowledge acceptance of these conditions.

                                        Sincerely,

                                        *Judith B. Sherwood*

                                        Judith B. Sherwood, Ph.D.
                                        Assistant Professor of Medicine

JBS/lce

           Above conditions agreed to:

           *Edward Fritsch*
           _____

CONFIDENTIAL
W01022

# Genetics Institute

August 23, 1984

Albert Einstein College of
 Medicine at Yeshiva University
1300 Morris Park Avenue
Bronx, New York  10461

Attention Dr. Sidney Goldfisher

Dear Sidney:

As we have discussed, Genetics Institute, Inc. ("GI") was not able to express EPO from the cell-line provided to us by Albert Einstein College of Medicine ("AECOM") under our agreement dated October 31, 1983 (the "Agreement"). We are therefore returning the cell-line to AECOM, and believe that it would be appropriate for us at this time to clarify the ongoing relationship of GI and AECOM.

GI is willing to continue to fund research at AECOM under the terms of the Agreement. However, since no "Products", as defined in the Agreement, have resulted or will result from the research of GI involving the cell-line provided to us, GI shall have no obligation to pay any royalties to AECOM under the Agreement.

Please indicate your acceptance to these terms by signing and returning this letter to me.

Sincerely,

Gabriel Schmergel
President

GS:emo

AGREED TO:

ALBERT EINSTEIN COLLEGE OF MEDICINE
 AT YESHIVA UNIVERSITY

By: _____

cc: J. Sherwood

225 Longwood Avenue
Boston, Massachusetts 02115
Telephone 617 232-6886
Telex 948219

CONFIDENTIAL
W01025

October 26, 1983

Genetics Institute, Inc.
225 Longwood Avenue
Boston, MA 02115

Gentlemen:

In connection with the Sponsored Research Agreement of even date herewith (the "Research Agreement") between Genetics Institute, Inc. ("Genetics") and Albert Einstein College of Medicine of Yeshiva University, a division of Yeshiva University ("AECOM"), this letter is to confirm the following:

1. I shall be bound by the provisions of Section 2(c), 4 and 9 of the Research Agreement to the same extent as if I were a party to the Research Agreement.

2. I have not provided the Cell Line (as defined in the Research Agreement), or any part thereof, to any party (other than AECOM and Daniel Shouval).

3. My performance under this Agreement and under the Research Agreement shall not breach any obligations which I may have to any third party.

4. During the term of the Research Agreement, I shall not directly or indirectly perform research in the field of erythropoisis for any *commercial* third party.

5. I understand that, during the term of the Research Agreement, Genetics will pay consulting fees to me at the rate of $6,000 per annum and, in consideration thereof, I shall consult with Genetics in the Field of Research. Such consulting services shall involve not more than six days of consulting per year at the facilities of Genetics in Massachusetts, plus telephone consultations. Genetics shall reimburse me for reasonable travel, lodging, telephone and similar out-of-pocket expenses incurred by me in connection with my performance of such consulting services for Genetics.

6. Genetics shall grant to me a non-qualified stock option for the purchase of 500 shares of Common Stock of Genetics, at an exercise price of $20.00 per share, vesting in five equal installments of 100 shares each at the end of each six-month period commencing on the date hereof.

CONFIDENTIAL
W01040

Genetics Institute, Inc.
October ___, 1983
Page Two

7. Any invention or discovery, whether or not patentable, which relates to the Field of Research and which is conceived or reduced to practice by me, solely or jointly with others, in the performance of my consulting services for Genetics shall be treated as if it were conceived or reduced to practice by AECOM under the Research Agreement and shall be subject to all of the terms and conditions of the Research Agreement. It is understood, however, that all obligations of Genetics to pay royalties with respect to any such invention or discovery shall be solely as set forth in the Research Agreement.

Very truly yours,

*Judith B. Sherwood, Ph.D.*
Dr. Judy Sherwood

Agreed to:

Genetics Institute, Inc.

By: _Gabriel Schmergel_

CONFIDENTIAL
W01041