# EXHIBIT 1

Dockets.Justia.com



IN THE UNITED STATES PATENT
AND TRADEMARK OFFICE

RECEIVED GROUP 120

JUN 0 1 1988

| | | |
|---|---|---|
| Application of: | ) | "Production of |
| | ) | |
| FU-KUEN LIN | ) | Erythropoietin" |
| | ) | |
| Serial No: 113,179 | ) | Group Art Unit 127 |
| | ) | |
| Filed: October 23, 1987 | ) | Examiner (Expected): |
| | ) | A. Tanenholtz |
| (Based on S.N. 675,298, | ) | |
| filed November 30, 1984, | ) | |
| issued as U.S. 4,703,008 | ) | |
| on October 27, 1987) | ) | |

APPLICANT'S SECOND PRELIMINARY AMENDMENT

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Sir:

Consistent with the February 18, 1988 favorable
Decision On Petition To Make Special and the provisions of
M.P.E.P. §708.02, please amend the above-identified
application as follows:

IN THE SPECIFICATION

Please delete the entire text of page 1, lines 3-6
as amended October 23, 1987 and insert the following text in
place thereof:

--This is a continuation of my co-pending U.S.
Patent Application Serial No. 675,298, filed November 30,
1984 and issued as U.S. Letters Patent No. 4,703,008 on
October 27, 1987, which was a continuation-in-part of my co-
pending U.S. Patent Application Serial No. 561,024, filed
December 13, 1983, now abandoned, and a continuation-in-part
of Serial No. 582,185, filed February 21, 1984, now aban-

**AM-ITC000191**

2012.214

doned, and a continuation-in-part of Serial No. 655,841,

filed September 28, 1984.--

Page 7, line 27, "32 member" should be

--32-member--.

Page 8, line 22, please delete the second

occurrence of "the".

Page 11, line 3, "<u>Expt.Hematol.</u>" should be

--<u>Exp.Hematol.</u>--.

Page 11, line 4, "(1980:" should be --(1980);--.

Page 11, line 6, please insert a space before

"1832".

Page 13, line 13, please insert --"-- after

"effects".

Page 13, lines 20-21, please insert --)-- after

"propagation".

Page 22, line 4, "Tables V and VI" should be

--Figures 5 and 6--.

Page 22, line 22, "Table VI" should be

--Figure 6--.

Page 27, line 24, "Example" should be

--Examples--.

Page 32, line 35, please delete the comma (,)

after "Springs".

Page 48, line 15, please delete "glutamine" and

insert in place thereof --glutamic acid--.

Page 48, line 29, "Table VI" should be

--Figure 6--.

Page 54, line 36, "EcoRl" should be --EcoRI--.

Page 55, line 13, "BamHl" should be --BamHI--.

Page 55, line 15, "BamHl" should be --BamHI--.

- 2 -

AM-ITC000192

2012.215

Page 61, line 25, "hemogeneous" should be --homogeneous--.

Page 88, line 36, "lablled" should be --labelled--.

Page 91, line 29, please delete "a".

Page 92, line 10, "Table VI" should be --Figure 6--.

Page 95, line 10, "membrances" should be --membranes--.

IN THE CLAIMS

Please cancel claims 61-64 without prejudice to Applicant to pursue claims of the same or similar scope in a duly-filed continuing application.

Please enter new claims 65-69.

--65. A process for the preparation of an _in vivo_ biologically active glycosylated polypeptide comprising the steps of:

(a) growing a mammalian host cell which is capable of effecting post-translational glycosylation of polypeptides expressed therein and which is transformed or transfected with an isolated DNA sequence encoding a polypeptide having a primary structural conformation sufficiently duplicative of that of naturally-occurring human erythropoietin to allow possession of the _in vivo_ biological property of causing bone marrow cells to increase production of reticulocytes and red blood cells, or the progeny thereof, under nutrient conditions suitable to allow, in sequence;

- 3 -

AM-ITC000193

(i)    transcription within said host cell of said
DNA to mRNA in the sequence of transcription
reactions directed by the nucleotide
sequence of said DNA;

(ii)   translation within said host cell of said
mRNA to a polypeptide in the sequence of
translation reactions directed by the
nucleotide sequence of said transcribed
mRNA;

(iii)  glycosylation within said host cell of said
polypeptide in a pattern directed by the
amino acid sequence of said translated poly-
peptide and sufficiently duplicative of the
pattern of glycosylation of naturally
occurring human erythropoietin to allow
possession by the translated glycosylated
polypeptide product of the _in vivo_ bio-
logical property of causing bone marrow
cells to increase production of reticulo-
cytes and red blood cells; and

(b)    isolating the glycosylated polypeptide so
produced.

66.    The process according to claim 65 wherein
said host cell is a CHO cell.

67.    The process according to claim 65 wherein
said host cell is a COS cell.

68.    The process according to claim 65 wherein
said DNA is cDNA.

- 4 -

AM-ITC000194

2012.217

69.  The process according to claim 65 wherein
said DNA is genomic DNA.--

REMARKS

A.  _Amendments To The Specification_

      The above-requested amendments to the specifica-
tion combine with those requested in Applicant's Preliminary
Amendment dated October 23, 1987 to eliminate all typo-
graphical errors present in the specification as filed.

B.  _Reference To Related Applications_

      The present application is a continuation of U.S.
Patent Application Serial No. 675,298, filed November 30,
1984 (as a continuation-in-part of Serial No. 655,841, filed
September 28, 1984, and Serial No. 582,185, filed February
21, 1984, now abandoned, and Serial No. 561,024, filed
December 13, 1983, now abandoned).  Application Serial No.
675,298 issued on October 27, 1987 as U.S. Letters Patent
No. 4,703,008 (hereinafter "the '008 Patent"), with claims
relating to novel erythropoietin DNA sequences.  To faci-
litate consideration of the claims presented herein,
Applicant attaches as Exhibit "A" hereto a copy of columns
39 to 42 of the '008 Patent which includes the 31 issued
claims.

C.  _The Presently Claimed Subject Matter_

      Without prejudice to Applicant's right to pursue
such further process claims as are supported by the dis-
closures of the present specification, Applicant has

- 5 -

**AM-ITC000195**

2012.218

submitted new claims 65-69 herein to that aspect of his
invention which relates to novel methods for the production
in mammalian host cells of human erythropoietin glyco-
protein -- the first article of human manufacture _ever_ to
possess both the amino acid sequence and glycosylation
needed for _in vivo_ erythropoietin biological activity.  As
set out in detail hereafter, the practice in late 1983 of
processes herein claimed is believed to constitute one of
the first instances (if not _the_ first instance) of the
recombinant production of an _in vivo biologically active_
_obligate human glycoprotein_, an event which has in turn
allowed, for the first time, the provision of a human
erythropoietin product in quantities necessary for human
hematopoietic therapy.

   Briefly summarized, independent claim 65 relates
to a novel series of process steps wherein a mammalian host
cell[1] capable of glycosylating the expressed polypeptides is
first transformed or transfected with a DNA sequence[2]
encoding a specifically delineated polypeptide, i.e., one
having sufficient amino acid sequence homology to natural
human erythropoietin to allow it to qualify, amino acid
sequence-wise, for potential _in vivo_ biological activity.
(The DNA reagent employed in the transformation/transfection
process is itself the novel and unobvious subject matter of
'008 Patent claim 7 and the resulting host cells are as
recited in claim 24 of the Patent.)  The claim 65 process
calls for host cell growth in culture under conditions

---

[1]   Including such non-human, non-kidney cells as COS and
CHO cells as specified in claims 66 and 67.

[2]   Including, e.g., cDNA and genomic DNA as specified in
claims 68 and 69.

- 6 -

AM-ITC000196

wherein transcription, translation and glycosylation processing occurs. More particularly, the claim calls for mRNA transcript formation according to the per se unique directions provided by the recited DNA sequence. (Illustratively, the formation of a full length coding region transcript of erythropoietin cDNA ordinarily involves no less than 582 specifically ordered nucleotide additions for the formation of the mRNA polymer.) Also delineated by claim 65 is performance of a specific sequence of translational events giving rise to polypeptide formation. (Again, a minimum of 193 specific alignments of tRNA's to the mRNA and 192 peptide bond formations are involved to link, in order, the amino acids constituting the full length primary structural conformation.) Further required by claim 65 is the glycosylation processing of the translated poly-peptide at sites directed by the order of amino acids of the translated polypeptide so that the resulting product, upon isolation, will have the pattern of glycosylation which is also required for in vivo biological activity.

D.  The Examiner's Position Regarding Method
    Method Claims During '008 Patent Prosecution

        In the course of prosecution of Application Serial No. 675,298 leading up to issuance of the '008 Patent, certain erythropoietin production method claims (later withdrawn without prejudice) were objected to by Examiner Tanenholtz (one of three Examiners handling the application) on the following grounds:

> Claims 69-72 are rejected under 35 U.S.C. 103 as being unpatentable over Talmadge et al and who disclose the basic process of recom-binantly expressing and isolating polypep-tides as claimed herein. Even where it is considered that one more of the starting

- 7 -

AM-ITC000197

materials is novel, the application of an old process to such materials to produce the expected result would still be obvious within the meaning of 35 U.S.C. 103; In re Durden, supra; In re Larsen, 141 U.S.P.Q. 730 (1964). Whether or not a product produced by the claimed process possesses any unique or unexpected properties is not material to the question of whether or not the process itself would have been obvious." (Emphasis added)

Applicant respectfully submits that the above statements of the Examiner construing the decision of the Durden case were legally erroneous and that application of such constructions to the presently claimed subject matter would also constitute error.

E.  Remarks In Support Of Patentability of the Claims

Applicant respectfully submits that the subject matter of claims 65-69 is clearly patentable and that no proper basis exists for rejection of the claims under 35 U.S.C. §103. In support of this position, Applicant provides the following series of remarks relating to: (1) the characteristics of human erythropoietin as an "obligate glycoprotein"; (2) the distinctness of the patentability issues herein from issues addressed in the decision in In re Durden; (3) the lack of relevance to patentability of prior art cited during prosecution of the '008 Patent; and (4) the lack of relevance to patentability of prior art recently ascertained and relating generally to recombinant production of glycoproteins.

1.  The Characteristics of Erythropoietin
    As an Obligate Glycoprotein

"State of the art" knowledge with respect to erythropoietin at the time of the present invention revealed to the skilled worker that the in vivo biological activity

- 8 -

AM-ITC000198

of this human glycoprotein was dependent not only on its

specific amino acid sequence conformation, but also its

array of glycosylation.  Thus, Goldwasser et al.,

J.Biol.Chem., 249(18), 4302-4306 (1974) [Exhibit "B"

hereto"] report at page 4302 that:

> Erythropoietin, a glycoprotein that
> induces normal erythrocyte development, has
> 16 to 18 sialic acid residues per mole.
> Desialation results in complete loss of
> biological activity when it is assayed in
> vivo.  When the assay is done in vitro
> asialoerythropoietin has full activity, or
> when assayed at low levels of hormones is
> about three times more active than the native
> hormone.  The loss of activity can be
> explained by the hepatic removal of asialo-
> glycoproteins from the circulation.

Goldwasser, Fed.Proc., 34(13), 2285-2292 (1975) [Exhibit "C"

hereto] further reports at page 2288 that:

> The role of sialic acid in epo activity
> appeared for a time to be paradoxical since
> asialo epo has no activity when assayed by in
> vivo methods, but had full, or increased,
> activity when assayed [in vitro] by a marrow
> cell culture method.  The explanation of this
> apparent paradox was derived from the studies
> of Morell et al. who showed that, in general,
> asialo glycoproteins were cleared from the
> circulation at a much greater rate than the
> native form.  This rapid clearance was
> effected by hepatic cells that specifically
> interacted with the newly terminal galactose
> residues exposed by desialation.  The liver
> system was shown to be a saturatable one, so
> that other asialoglycoproteins could occupy
> all of the binding sites and permit a nearly
> normal clearance rate for a particular test
> asialo glycoprotein.  These authors also
> showed that, if the terminal galactose resi-
> dues of asialo glycoproteins were oxidized or
> removed, the modified asialo glycoproteins
> would remain in the circulation for a nearly
> normal period.
>
> Lukowsky and Painter have shown that
> partially desialated epo, when oxidized with
> galactose oxidase, had its in vivo biological
> activity restored.  In this laboratory, we
> have shown that completely desialated epo
> similarly treated had about 45% of the
> original in vivo activity.  These data

- 9 -

AM-ITC000199

2012.222

suggest that galactose is the penultimate
carbohydrate residue but is not required for
biological activity.  In addition, asialo-
orosomucoid and the tetrasaccharide stachyose
could act as competitors in assay animals,
permitting about 30% of the original (native)
activity to be found in asialo epo.  Lactose,
on the other hand, does not act as a com-
petitor, so the minimal size of oligo-
saccharide required must be either three or
four.

We have also found that asialo epo is
more susceptible to tryptic digestion and
heat inactivation than is the native form.
The asialo hormone has about three times more
activity, when assayed in vitro at the lower
end of the dose-response curve (1-4 milli-
units), than the native form.  This may be
due to greater ease of binding of asialo epo
to the epo-responsive cell receptors when the
negative charge on the hormone is reduced by
desialation.  (Citations omitted)

The skilled worker at the time of the present

invention would thus have understood that if preparations of

in vivo biologically active human erythropoietin were to be

provided in therapeutic quantities by recombinant means, a

method would have to be devised whereby (a) an appropriate

array of glycosylation including sialic acid terminal

residues and, possibly, penultimate galactose residues would

be provided on (b) a polypeptide with requisite amino acid

sequence homology to erythropoietin.  Unlike other human

glycoproteins such as the interferons and Interleukin-2,

human erythropoietin was conspicuously known to be an

obligate glycoprotein and no hope at all existed for

isolating in vivo active material from recombinant host

cells unless, at a minimum, both the issues of required

polypeptide sequence and of required glycosylation could be

successfully attended to.

- 10 -

AM-ITC000200

2012.223

2.  Factual Distinctness of Patentability
    Issues herein from those of In re Durden

The decision of the C.A.F.C. in In re Durden, 226 USPQ 359-362 (1986) was noted by the Examiner as potentially relevant to patentability of claims originally presented in parent Serial No. 675,298. Applicant respectfully submits that the decision is not in any way controlling on the determination of nonobviousness of claims 65-69 under Section 103. This is so because the factual context which was the focus of the Court's deliberations in the Durden case is wholly distinct from that extant with respect to the invention claimed herein.

Here, as in Durden, method claims are in issue and practice of the claimed method involves use of patentable starting materials to obtain patentable products. It will be recalled at the outset, however, that the C.A.F.C. specifically declined to provide any "general rule" for application to all cases wherein the patentability of a method for manufacturing a novel product using a novel starting material is under consideration.

> We reiterate another principle followed in obviousness issue cases, which is to decide each case on the basis of its own particular fact situation. What we or our predecessors may have said in discussing different fact situations is not to be taken as having universal application.

> * * * * *

> We are sure that there are those who would like to have us state some clear general rule by which all cases of this nature could be decided. Some judges might be tempted to try it. But the question of obviousness under §103 arises in such an unpredictable variety of ways and in such different forms that it would be an indiscreet thing to do. Today's rule would likely be regretted in tomorrow's case. Our function is to apply, in each case, §103 as written to the facts of disputed issues, not

- 11 -

AM-ITC000201

2012.224

> to generalize or make rules for other cases
> which are unforeseeable. The task may some-
> times be easy and sometimes difficult; and as
> this case shows, not all of those required to
> decided may agree. But such is the way of
> the "law".

Against this background, only a cursory examina-
tion of the facts and stipulated issues in the _Durden_ appeal
is necessary to show that the final outcome in that case has
no controlling effect here.

In _Durden_, the claim under consideration was
directed to performing a well known chemical conversion of
an oxime to a carbamate ester. More specifically, the claim
called for use of a novel oxime-substituted, 6-membered ring
compound as a starting material. The prior art showed
successful carbamate ester formation using an oxime-substi-
tuted 5-membered, ring compound as the starting material.
The Examiner properly noted two structural differences
between applicant's and the prior art's starting materials
and requested factual input from the applicant as to
whether, in view of the success achieved in the prior art,
the distinct features of the new starting material might
have any influence on whether a skilled worker could reason-
ably expect the desired carbamate ester product to be
formed. As noted by the C.A.F.C., no such facts concerning
any potentially unexpected results of the process were
provided to the Examiner or the Board.

Given this factual background, the concisely-
stated legal issue decided by the C.A.F.C. in _Durden_ was:

> ...whether a chemical process, _otherwise_
> _obvious_, is patentable _because_ either or both
> the specific starting material employed and
> the product obtained, are novel and unob-
> vious. (id at page 360, emphasis in text.)

- 12 -

AM-ITC000202

2012.225

The facts relevant to a determination of obvious-
ness in the present case are completely different.  The
subject matter of the present claims conspicuously involves
myriad biological processes rather than a single chemical
process.  As indicated earlier, even after the host cell's
biological transformation or transfection has been achieved,
there remain to be performed literally thousands of complex
individual cellular reactions in a specific order directed
first by the novel DNA sequence, then by the mRNA transcript
of the DNA, and finally by the translated polypeptide
sequence, all within the infinitely complex biochemical
milieu of the host cell.

The issue presented here, therefore, is not that
which was before the Durden Court: whether a concededly
obvious process, providing its entirely expected result, can
be bootstrapped to the stature of patentable subject matter
merely by calling for its application to a new starting
material or by causing it to be applied to formation of a
new product.  In such a case, the outcome of deliberation on
potential patentability is invariably negative because, by
definition, merely achieving the expected cannot be
patentable.

The issue here presented is the threshold issue of
whether the series of processes whose practice is called for
by the claims is an obvious series of processes giving rise
to an expected result.  Deliberation on this issue must
involve consideration of the novel nature of the DNA
sequence employed in the process and also must involve
consideration of whether the product isolated could
reasonably have been expected to come into existence by
practice of the recited procedures.

- 13 -

AM-ITC000203

2012.226

The Examiner's position in Serial No. 675,298 construes the Durden decision to indicate that the C.A.F.C. has relegated evidence regarding properties of a claimed process's product to the junk heap of immateriality for purposes of determining obviousness of the process. This is simply not true. While the novelty (indeed, the patentability) of a product may not necessarily render the process for making it patentable, no deliberation on the obviousness of a series of manipulative processes can ever be made without considering the nature of the result achieved. Where the result (however "new" by virtue of use of a new starting material) is only that which the prior art would lead the skilled artisan to expect, a finding of obviousness may be appropriate. Where, as here, virtually nothing was known about precisely how naturally-occurring glycosylated human erythropoietin comes into existence in the human body and there was no substantial basis in the art for believing that the in vivo active material could be made in any recombinant system, the successful result of the practice of Applicant's claimed invention is certainly relevant and material to obviousness considerations. Alternately stated, a result cannot transform to nonobvious a process which is concededly obvious to begin with, but the fact that a process succeeds in providing a desired result in the absence of a substantial basis in the art for expecting it to succeed is highly probative on the issue of nonobviousness.

- 14 -

AM-ITC000204

3.  The Lack of Relevance of the
    Talmadge et al. Reference

Attached hereto as Exhibit "D" is a copy of the Talmadge et al. reference cited by the Examiner as pertinent to process claims initially presented during prosecution of the '008 Patent.  The disclosures of this reference are conspicuously distinct from the subject matter herein claimed.  Whatever a skilled artisan might have understood from the reference concerning E.coli processing of endogenous and exogenous "secretory" signal sequences incorporated into fusion genes and resulting in transported fusion proteins, the disclosures are entirely silent concerning recombinant production of glycoproteins.  They thus provide no suggestion to practice the processes of claims 65-69, nor any reasonable expectation that the practice of such processes would succeed in providing an in vivo biologically active product.

4.  Lack of Relevance of Prior Art
    References Disclosing
    Recombinant Glycoprotein Production

In an attempt to facilitate early consideration of all patentability issues, Applicant has caused a computer-assisted search to be performed in "Medline" and "Chemical Abstracts" data bases for publications which may have relevance to the recombinant preparation of human obligate · glycoproteins in in vivo biologically active form.

The general format of the search involved development of four "Concepts", each of which incorporated specific alternative search terms.  The concepts were combined in various ways to provide input composite search terms within the two data bases.  Concept No. 1 ("Recombinant") was defined to embrace recombinant, genetic..., engineer...,

- 15 -

AM-ITC000205

2012.228

molecular cloning, cloning/cloned, rDNA, cDNA,
rErythropoietin, biotechnolog..., mRNA (Medline only), DNA
biosynthesis (Medline only), recombinant protein(s).
Concept No. 2 ("Proteins") was defined to embrace membrane
proteins, surface proteins, receptor(s), trypanosome,
clathrin, fibronectin, laminin, glycoproteins, amyloid,
asialoglycoproteins, avidin, csf, hemopexin, inhibin,
lactoferrin, mucoprotein, mucins, peptidoglycan,
haptoglobin, protein c, proteoglycans, thrombopoietin,
thryoglobulin, glycosylat..., carbohydrate structure,
carbohydrate conformation.  Concept No. 3 ("Cell Lines") was
defined to embrace CHO, chinese hamster ovar..., CV1, BSC1,
BHK, COS.  Concept No. 4 ("Mammalian") was defined to
embrace human and mammal.  Medline searches for the period
1966-1984 were conducted for the composite of the concepts
"recombinant" X "proteins" X "cell lines" (revealing 62
abstracts) and "recombinant" X "proteins" X "mammalian" plus
"expression" (revealing 178 abstracts).  Similarly, Chemical
Abstract searches for the period 1963-1984 were based on the
composites "recombinant" X "protein" X "cell lines"/-
"mammalian" (providing 49 abstracts) and "recombinant" X
"proteins" (excluding the above 49 abstracts and in turn
providing 65 abstracts).

Copies of the search reports generated are
attached as Exhibit "E" hereto.  On these reports,
Applicant's counsel has marked with a red "X" the reference
which appeared to be relevant.

As set out in greater detail in the PTO-1449
Statement scheduled to be submitted imminently, the
references generally dealt with recombinant expression of
non-human glycoproteins, or recombinant expression of human

- 16 -

AM-ITC000206

2012.229

glycoproteins which are not obligate glycoproteins and do
not require glycosylation for in vivo activity, or
recombinant expression of fragments of human obligate
glycoproteins.  The only reference located which appeared to
relate to recombinant production of an in vivo biologically
active obligate human glycoprotein was Collen et al.,
J.Pharm. & Expt. Therapeutics, 231, 146-152 (1984) relating
to tissue plasminogen activator.  A copy of the publication
is attached hereto as Exhibit "F".

        The Collen et al. article (accepted for
publication and published well after Applicant's initial
description of COS cell expression and in vivo biological
activity reported in parent application Serial Nos. 561,024
and 582,185) describes thrombolytic in vivo biological
activity versus rabbit jugular vein thrombosis for
recombinant human tissue-type plasminogen activator (tPA).
Naturally occurring tPA is believed by applicant to share
with erythropoietin the characteristic of being an obligate
human glycoprotein.  The reference does not describe how the
recombinant mammalian host cell expression product was
prepared but rather cites to Pennica et al., Nature, 301,
214-221 (1983) for this purpose.  (See page 147, Methods and
Materials, line 2.)  The cited Pennica et al. reference is
attached as Exhibit "G" hereto.  Despite its character-
ization in Collen et al. as providing a description of
mammalian cell expression of tPA, however, the 1983 Pennica
et al. reference deals exclusively with non-glycosylated
E.coli expression products (see penultimate paragraph on
page 220) and, of course, includes no data suggesting in
vivo biological activity for the E.coli-derived products.
Thus Pennica et al. contains no disclosure or suggestion of

                        - 17 -

                                **AM-ITC000207**

                        **2012.230**

successful practice of a process for production of an
obligate human glycoprotein which might be at all analogous
to that set out in claims 65-69.

In a subsequent attempt to determine whether
published patent applications might exist concerning
mammalian cell production of recombinant human tPA, a search
was conducted for such applications in the Derwent World
Patents Index data base. Three published European Patent
Applications filed by Genentech were located and are
attached hereto as Exhibits "H", "I" and "J".

EPO 0 093 619 was published in November, 1983 (and
was ultimately based on U.S. Patent Applications dating back
through May, 1982). This document, like Pennica et al.,
contains no description of use of mammalian host cell
expression systems for tPA production. The only clear
mention of such systems was entirely speculative and appears
in the "Summary of the Invention" at page 7:

> In addition, depending upon the host
> cell, the human tissue plasminogen activator
> hereof may contain associated glycosylation
> to a greater or lesser extent compared with
> the native material. (Emphasis supplied)

EPO Applications 0 117 059 and 0 117 060 were
assertedly based on January, 1983 U.S. filings and published
in late August of 1984. These publications address the
production of tPA in mammalian host cells but they contain
no reference to glycosylation of the recombinant products
nor to any successful assays of in vivo biological
activity. Thus, the Genentech published patent applications
provide no demonstration of the production of an obligate

- 18 -

AM-ITC000208

2012.231

human glycoprotein such as might give rise, by analogy, to any reasonable expectation of success in the practice of the methods of present claims 65-69.

Applicant submits that the results of the above-described searches and analysis provide a clear indication that the claimed methods as practiced in 1983 were among the first, if not the first, instances of the successful production of an in vivo biologically active obligate human glyco-protein. Of course, whether Applicant was in fact absolutely the first to succeed in this respect is not out-come determinative of patentability of the present claims. It is possible that an instance of successful mammalian cell expression of such an active protein might have been reported at a time prior to Applicant's work and that the report simply escaped detection in the searches described above. Whether or not this is the case, however, it must be abundantly clear that there did not exist any body of infor-mation in the art which would be at all analogous to that existing in the Durden case, providing a basis for asserting that the transformation/transfection, transcription, translation, glycosylation and isolation as described by the present claims could reasonably have been expected to succeed in yielding a human erythropoietin product having the amino acid sequence and glycosylation needed for in vivo biological activity.

Applicant respectfully submits that the processes herein claimed were in no way obvious when originally practiced by Applicant and, accordingly, that no proper basis exists for rejection of the claims under 35 U.S.C. §103. Allowance of the claims is in complete legal harmony

- 19 -

AM-ITC000209

with the ruling of the C.A.F.C. in In re Durden because the process herein claimed could not have been expected to provide the valuable product attained.

<u>CONCLUSION</u>

The foregoing amendments and remarks are believed to establish that claims 65-69 are in condition for allowance and an early notice thereof is solicited.

Respectfully submitted,

MARSHALL, O'TOOLE, GERSTEIN,
MURRAY & BICKNELL

By _____
Michael F. Borun (Reg. No. 25,447)
A Member of the Firm
Attorneys for Applicants
Two First National Plaza
Chicago, Illinois  60603
(312) 346-5750

Chicago, Illinois

May 24_____, 1988

- 20 -

AM-ITC000210

2012.233