# EXHIBIT 4

Dockets.Justia.com

PATENT

IN THE UNITED STATES PATENT
AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application of: | ) | "PRODUCTION OF |
| FU-KUEN LIN | ) | ERYTHROPOIETIN" |
| | ) | |
| Serial No: 113,179 | ) | Group Art Unit 184 |
| | ) | |
| Filed: October 23, 1987 | ) | Examiner Tanenholtz |

APPLICANT'S REPLY UNDER 37 C.F.R. 1.111

Hon. Commissioner of Patents
     and Trademarks
Washington, D.C.  20231

Sir:

This is in response to the Office Action dated
August 3, 1988 in the above-identified application, wherein
all presently pending claims (65 through 69) were rejected
under 35 U.S.C. §103 as unpatentable in view of the teach-
ings of Yokota et al., U.S. Letters Patent No. 4,695,542.
Reconsideration and allowance is respectfully requested in
view of the following remarks.

REMARKS

Applicant acknowledges with thanks the interview
kindly granted to Applicant's counsel, Mr. S. Odre, on
September 14, 1988.  As indicated in the Interview Summary
Record, attached as Exhibit "A" hereto, no agreement was
reached concerning patentability.

AM-ITC000262

2012.494

<u>The Claimed Subject Matter</u>

Claims 65 through 29 are pending.  Briefly
summarized, independent claim 65 relates to a novel series
of process steps wherein a mammalian host cell[1] capable of
glycosylating the expressed polypeptides is first
transformed or transfected with a DNA sequence[2] encoding a
specifically delineated polypeptide, i.e., one having suffi-
cient amino acid sequence homology to natural human erythro-
poietin to allow it to qualify, amino acid sequence-wise,
for potential <u>in vivo</u> biological activity.  (The DNA reagent
employed in the transformation/transfection process is
itself the novel and unobvious subject matter of claim 7 of
U.S. Patent 4,703,008 and the resulting host cells are as
recited in claim 24 of the Patent.)  The claim 65 process
calls for host cell growth in culture under conditions
wherein transcription, translation and glycosylation
processing occurs.  More particularly, the claim calls for
mRNA transcript formation according to the <u>per se</u> unique
directions provided by the recited DNA sequence.
(Illustratively, the formation of a full length coding
region transcript of erythropoietin cDNA ordinarily involves
no less than 582 specifically ordered nucleotide additions
for the formation of the mRNA polymer.)  Also delineated by
claim 65 is performance of a specific sequence of transla-
tional events giving rise to polypeptide formation.  (Again,
a minimum of 193 specific alignments of tRNA's to the mRNA
and 192 peptide bond formations are involved to link, in

---

[1]   Including such non-human, non-kidney cells as COS and
      CHO cells as specified in claims 66 and 67.

[2]   Including, e.g., cDNA and genomic DNA as specified in
      claims 68 and 69.

- 2 -

AM-ITC000263

2012.495

order, the amino acids constituting the full length primary
structural conformation.]  Further required by claim 65 is
the glycosylation processing of the translated polypeptide
at sites directed by the order of amino acids of the trans-
lated polypeptide so that the resulting product, upon isola-
tion, will have the pattern of glycosylation which is also
required for in vivo biological activity.

The Outstanding Rejection

        It was the Examiner's position that Yokota et al.
teach a process as set forth in claims 65 through 69

        "differing only in using a mammalian DNA
        sequence that encodes a different polypep-
        tide.  More specifically, Yokota et al teach
        growing a mammalian host cell which is capable
        of effecting post-translational glycosylation
        of polypeptides expressed therein and which
        has been transformed with an isolated DNA
        sequence encoding the protein GMCSF under
        nutrient conditions to allow, in sequence,
        transcription, translation and glycosylation
        and then isolating the resulting glycosylated
        GMCSF.  It is noted that the erythropoietin of
        the claims and the GMCSF of Yokota et al are
        proteins that both stimulate the production of
        blood cells."

The Examiner noted that the PTO files did not contain
Exhibit "E" to the prior response.  A copy of the Exhibit is
attached hereto.

Patentability Argument

        Applicant respectfully disagrees with the
Examiner's reliance upon the Yokota et al. reference as
providing a basis for application of In re Durden to deny
patentability of the present method claims.

        As noted in Applicant's Second Preliminary
Amendment, the core patentability issue is whether the prior

                        - 3 -

                        AM-ITC000264

                2012.496

art extant at the time of the present invention provided the
skilled artisan with a reasonable expectation of success in
securing the recombinant production of a human obligate
glycoprotein, i.e., a human protein which must be properly
glycosylated in order to display in vivo biological
activity. Applicant submits that this was not the case.
the cited Yokota, et al. reference is simply another example
of expression of a non-human (i.e., mouse) protein ("Multi-
CSF" or "IL-3") in a glycosylated form and in a context
wherein therein is no indication of either the need for
proper glycosylation in order for the molecule to possess in
vivo biological activity or the actual possession by the
mouse CSF product of such obligatory glycosylation. The
Summary of the Invention of Yokota et al. notes only in
vitro activity (column 4, lines 47-49) and all of the assays
in column 22-24 are in vitro assays.

Indeed, subsequent experimentation has revealed
that glycosylation is not necessary in order for Multi-CSF
to possess in vivo biological activity. Exhibits B and C
hereto [Metcalf et al., Blood, 68:46-57 (1986) and Exp.
Hematol., 15:288-295 (1987)] address the in vivo biological
activity of non-glycosylated, bacterially produced recom-
binant murine Multi-CSF and respectively report:

"In the present study, purified,
bacterially synthesized Multi-CSF was injected
for up to 6 days into normal adult mice. The
results indicated that injected Multi-CSF of
this type is able to induce various changes in
hematopoietic tissues, in agreement with
expectations from the known actions of Multi-
CSF in vitro." [Blood, 68:46]

"Previous studies [7-9] showed that unpuri-
fied glycosylated recombinant Multi-CSF had in
vitro properties similar to those of native
Multi-CSF. The present studies have docu-
mented the functional equivalence in vitro of

- 4 -

AM-ITC000265

2012.497

purified native and non-glycosylated
bacterially synthesized recombinant Multi-CSF,
and have validated the use of purified non-
glycosylated Multi-CSF to determine the in
vivo effects of infected Multi-CSF."
[Exp.Hematol., 15:293]

As set forth in detail at pages 16 through 20 of
the Second Preliminary Amendment, it appears that Applicant
may have been the first to have successfully produced a
human obligate glycoprotein by recombinant methods. Whether
Applicant's recombinant erythropoietin was the first such
product or Genentech's tPA was, it is abundantly clear that
there did not exist any body of information in the art which
would be at all analogous to that existing in the Durden
case, providing a basis for asserting that the transforma-
tion/transfection, transcription, translation, glycosylation
and isolation as described by the present claims could
reasonably have been expected to succeed in yielding a human
erythropoietin product having the amino acid sequence and
glycosylation required for in vivo biological activity.

Attached hereto as Exhibit "D" is a Table
describing the proteins which are the subject of expression
in the references reviewed for the purposes of Applicant's
previous submission. As will be apparent from consideration
of the Table, no public reports of recombinant expression of
an obligate human glycoprotein appeared before the December
13, 1983 filing of parent application Serial No. 561,024.

Applicant respectfully submits that the processes
herein claimed were in no way obvious when originally prac-
ticed by Applicant and, accordingly, that no proper basis
exists for rejection of the claims under 35 U.S.C. §103.
Allowance of the claims is in complete legal harmony with
the ruling of the C.A.F.C. in In re Durden because the

- 5 -

AM-ITC000266

2012.498

process herein claimed could not have been expected to pro-
vide the valuable product attained.

## CONCLUSION

The foregoing amendments and remarks are believed
to establish that claims 65-69 are in condition for allow-
ance and an early notice thereof is solicited.

Respectfully submitted,

By _Steven A. Odre_
Steven M. Odre (Reg. No. 29,096)
Attorney for Applicant

_Sept. 27_ , 1988

- 6 -

AM-ITC000267

2012.499