## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN, INC.,<br><br>                  Plaintiff,<br><br>        v.<br><br>F. HOFFMANN-LA ROCHE, LTD Company,<br>ROCHE DIAGNOSTICS GMBH, and<br>HOFFMANN-LA ROCHE INC.,<br><br>                  Defendants. | Civil Action No. 05-12237 WGY |

## ROCHE'S BENCH MEMORANDUM REQUESTING A JURY INSTRUCTION THAT STATEMENTS IN THE SPECIFICATION ARE BINDING ADMISSIONS ON AMGEN

The Federal Circuit has consistently held that "admissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness."[1]  In addition, Amgen has agreed that the statements made in the specification constitute binding admissions.[2]

---

[1] *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, --- F.3d ---, 2007 WL 1964863 at *17 (Fed. Cir. 2007); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1570 (Fed.Cir.1988) ("A statement in the patent that something is in the prior art is binding on the applicant and patentee for determinations of anticipation and obviousness."); *Sjolund v. Musland,* 847 F.2d 1573, 1577-79 (Fed.Cir.1988) (patent specification admitted that certain matter was prior art, and thus "the jury was not free to disregard [that matter]" and "must have accepted [it] as prior art, as a matter of law"); *In re Fout,* 675 F.2d 297, 300 (CCPA 1982); *In re Nomiya,* 509 F.2d 566, 571 (CCPA 1975).

[2] Trial Tr. at 1560:3-6  ("THE COURT:  Let me see the language that we're talking about.  But we're clear as to the law.  What you say here in patents are binding admissions?  MR. FLOWERS:  We understand that.").

1

Dockets.Justia.com

Roche requests the Court provide the following jury instruction to avoid confusion resulting from Amgen's attempt to present arguments contrary to the admissions made in the specification:

> In conducting your analysis of anticipation and obviousness of the asserted claims, you should also consider the following statements by the Inventor set forth in the specification of the patents. These constitute binding admissions on Amgen.

Specifically, this jury instruction is necessary to avoid confusion resulting from the testimony of Amgen's expert, Dr. Orkin, relating to the lack of available mRNA encoding for erythropoietin.[3] Dr. Orkin's testimony directly contradicts statements in the specification that Farber, et al. disclosed the existence of human kidney mRNA coding for erythropoietin which could be used to create a cDNA library from which erythropoietin could be isolated.[4]

Accordingly, Roche respectfully requests this Court provide the above request for a jury instruction that the following statements from the specification constitute binding admissions on Amgen:

| | |
|---|---|
| "A focus of microbiological processing for the last decade has been the attempt to manufacture industrially and pharmaceutically significant substances using organisms which either do not initially have genetically coded information concerning the desired product included in their DNA, or (in | '933 patent, TRX 1, Col. 2, lns. 16-22 |

---

[3] Dr. Orkin testified that "[i]n 1983, we did not know with any confidence of a source of messenger RNA for cloning erythropoietin cDNA. Trial Tr. 1562:14-1563:3.

[4] '933 patent, TRX 1, Col. 9, lns. 49-63 ("Farber, et al., *Blood*, 62, No. 5, Supp. No. 1, Abstract 392, at page 122a (1983) reported the in vitro translation of human kidney mRNA by frog oocytes. The resultant translation product mixture was estimated to include on the order of 220 mU of a translation product having the activity of erythropoietin per microgram of injected mRNA. While such levels of in vitro translation of exogenous mRNA coding for erythropoietin were acknowledged to be quite low (compared even to the prior reported levels of baboon mRNA translation into the sought-for product) it was held that the results confirm the human kidney as a site of erythropoietin expression, allowing for the construction of an enriched human kidney cDNA library from which the desired gene might be isolated. [See also, Farber, *Clin.Res.*, 31(4) 769A (1983).]")

| | |
|---|---|
| the case of mammalian cells in culture) do not ordinarily express a chromosomal gene at appreciable levels." | |
| "Once this is done, the existing machinery for gene expression in the 'transformed' or 'transfected' microbial host cells operates to construct the desired product, using the exogenous DNA as a template for transcription of mRNA which is then translated into a continuous sequence of amino acid residues. The art is rich in patent and literature publications relating synthesis, purification and amplification of genetic materials for use in the transformation of selected host organisms." | '933 patent, TRX 1, Col. 2, lns. 28-37 |
| "More frequently, the goal of transformation is the expression by the host cells of exogenous DNA in the form of large scale synthesis of isolatable quantities of commercially significant protein or polypeptide fragments coded for by the foreign." | '933 patent, TRX 1, Col. 2, lns. 58-62. |
| "When the entire sequence of amino acid residues of the desired polypeptide is not known, direct manufacture of DNA sequences is not possible and isolation of DNA sequences coding for the polypeptide by a cDNA method becomes the method of choice despite the potential drawbacks in case of assembly of expression vectors capable of providing high levels of microbial expression referred to above. Among the standard procedures for isolating cDNA sequences of interest is the Preparation of plasmid-borne cDNA "libraries" derived from reverse transcription of mRNA abundant in donor cells selected as responsiblfor high level expression of genes (e.g., libraries of cDNA derived from pituitary cells which express relatively large quantities of growth hormone products). Where substantial portions of the polypeptide's amino acid sequence are known, labeled, single-stranded DNA probe sequences duplicating a sequence putatively present in the "target" cDNA may be employed in DNA/DNA hybridization procedures carried out on cloned copies of the cDNA which have been denatured to single stranded form." | '933 patent, TRX 1, Col. 3, lns. 38-57 |
| "Among the more significant recent advances in hybridization procedures for the screening of recombinant clones is the use of labeled mixed synthetic oligonucleotide probes, each of which is potentially the complete complement of a specific DNA sequence in the hybridization sample including a heterogeneous mixture of single stranded DnAs or RNAs. These procedures are acknowledged to be especially useful in the detection of cDNA clones derived from sources which provide extremely low amounts of mRNA sequences for the polypeptide of interest." | '933 patent, TRX 1, Col. 4, lns. 10-19 |
| "In general, the mixed probe procedures of Wallace, et al. (1981), supra, have been expanded upon by various workers to the point where reliable results have reportedly been obtained | '933 patent, TRX 1, Col. 4, lns. 30-39. |

| | |
|---|---|
| in a cDNA clone isolation using a 32-member mixed "pool" of 16-base-long (16-mer) oligonucleotide probes of uniformly, varying DNA sequences together with a single 11-mer to effect a two-site "positive" confirmation of the presence of cDNA of interest." | |
| "Reliable procedures exist for developing phage-borne libraries of genomic DNA of human and other mammalian species origins (see, e.g., Lawn, et al. *Cell*, 15.pp. 1157-1174 (1978) relating to procedures for generating a human genomic library commonly referred to as the 'Maniatis Library'; Karn, et al." | '933 patent, TRX 1, Col. 4, lns. 46-51 |
| "There thus constitutes to exist a need in the art for improved methods for effecting the rapid and efficient isolation of cDNA clones in instances where little is known of the amine acid sequence of the polypeptide coded for and where "enriched" tissue sources of mRNA are not readily available for use in constructing cDNA libraries.  Such improved methods would be especially useful if they were applicable to isolating mammalian genomic clones where sparse information is available concerning amine acid sequences for the polypeptide coded for by the gene sought." | '933 patent, TRX 1, Col 5, lns. 28-37 |
| "Because erythropoietin is essential in the process of red blood cell formation, the hormone has potential useful application in both the diagnosis and the treatment of blood disorders characterized by low or defective red blood cell production. See, generally, Pennathur-Das, et al., *Blood* 63(5), 1168-71 (1984) and Haddy, *Am.Jour.Ped.Hematol./Oncol.*, 4, 191-196, (1982) relating to erythropoietin in possible therapies for sickle cell disease, and Eschbach, et al. *J.Clin.Invest.*, 74(2), pp. 434-441, (184), describing a therapeutic regimen for uremic sheep based on *in vivo* response to erythropoietin-rich plasma infusions and proposing a dosage of 10 U EPO/kg per day for 15-40 days as corrective of anemia of the type associated with chronic renal failure." | '933 patent, TRX 1, Col 6, lns. 20-33 |
| "It has recently been estimated that the availability of erythropoietin in quantity would allow for treatment each year of anemias of 1,600,000 persons in the United States alone." | '933 patent, TRX 1, Col. 6, lns. 35-38 |
| "Recent studies have provided a basis for projection of efficacy of erythropoietin therapy in a variety of disease states, disorders and states of hematologic irregularity:  Vedovato, et al., *Aeta.Haematol*, 71, 211-213 (1984)." | '933 patent, TRX 1, Col. 6, lns. 41-44. |
| "Another method of purifying human erythropoietin from urine of patients with aplastic anemia is described in Miyake, et al., *J.Biol.Chem.*, Vol 252, No. 15 (Aug. 10, 1977), pp. 5558-5564. This seven-step procedure includes ion exchange chromatography, ethanol precipitation, gel filtration, and adsorption chromatography, and yields a pure erythropoietin | '933 patent, TRX 1,Col 7, lns. 10-17 |

4

| | |
|---|---|
| preparation with a potency of 70,400 units/mg of protein in 21% yield." | |
| "The above studies relate, of course, to amino acid sequences of proteins other than erythropoietin, a substance for which no substantial amino acid sequence information has been published, , co-pending US patent application Ser. No. 463,724, filed Feb. 4, 1983, by J. Egrie, published Aug. 22, 1984 as European Patent Application No. 0 116 446, there is described a mouse-mouse hybridoma cell line (A.T.C.C. No. HB8209) which produces a highly specific monoclonal, anti-erythropoietin antibody which is also specifically immunoreative with a polypeptide comprising the following sequence of amino acids:  $NH_2$-Ala-Pro-Pro-Arg-Len-lle-Cys-Asp-Ser-Arg-Val-Leu-Glu-Arg-Tyr-Leu-Leu-Glu-Ala-Lys-CODH.  The polypeptide sequence is one assigned to the first twenty amino acid residues of mature human erythropoietin isolated according to the method of Miyake." | '933 patent, TRX 1, Col. 8, lns. 41-44 |
| "It is consequently projected in the art that the best prospects for fully characterizing mammalian erythropoietin and providing large quantities of it for potential diagnostic and clinical use involve successful application of recombinant procedures to effect large scale microbial synthesis of the compound." | '933 patent, TRX 1, Col. 9, lns. 9-14 |
| "Further, so little is known of the continuous sequence of amino acid residues of erythropoietin that it is not possible to construct, e.g., long polynucleotide probes readily capable of reliable use in DNA/DNA hybridization screening of cDNA and especially genomic DNA libraries." | '933 patent, TRX 1, Col. 9, lns. 22-27 |
| "Farber, et al., *Blood*, 62, No. 5, Supp. No. 1, Abstract 392, at page 122a (1983) reported the in vitro translation of human kidney mRNA by frog oocytes.  The resultant translation product mixture was estimated to include on the order of 220 mU of a translation product having the activity of erythropoietin per microgram of injected mRNA.  While such levels of in vitro translation of exogenous mRNA coding for erythropoietin were acknowledged to be quite low (compared even to the prior reported levels of baboon mRNA translation into the sought-for product) it was held that the results confirm the human kidney as a site of erythropoietin expression, allowing for the construction of an enriched human kidney cDNA library from which the desired gene might be isolated. [See also, Farber, *Clin.Res.*, 31(4) 769A (1983).]" | '933 patent, TRX 1, Col. 9, lns. 49-63 |
| "Illustrating the present invention are cloned DNA sequences of monkey and human species origins and polypeptide sequences suitably deduced therefrom which represent, respectively, the primary structural conformation of erythropoietin of monkey | '933 patent, TRX 1, Col. 10, lns. 65 - Col. 11, lns. 1-2 |

| | |
|---|---|
| and human species origins." | |
| "Having herein elucidated the sequence of amino acid residues of erythropoietin." | '933 patent, TRX 1, Col. 11, lns. 20-21 |
| "The DNA of human species origins was isolated form a human genomic DNA library.  The isolation of clones containing EPO-encoding DNA was accomplished through DNA/DNA plasquehybridization employing the above-noted pool of 128 mixed 20-mer oligonucleotide probes and a second pool of 128 radiolabelled 17 mer probes whose sequences were based on amino acids sequence information obtained from a different enzymatic human EPO fragment." | '933 patent, TRX 1, Col. 14, lns. 5-12 |
| "A first set of 128-mer oligonucleotides was therefore synthesized by standard phosphamidite methods." | '933 patent, TRX 1, Col. 16, lns. 5-6 |
| "A Ch4A phage-borne human fetal liver genomic library prepared according to the procedures of Lawn, et al. *Cell*, supra was obtained and maintained for use in a plaque hybridization assay." | '933 patent, TRX 1, Col. 19, lns. 64-66 |
| "FIG. 6 thus serves to identify the primary structural conformation (amino acid sequence) of mature human EPO as including 166 specified amino acid residues (estimated M.W. = 18,399)." | '933 patent, TRX 1, Col. 21, lns. 3-6 |

Since the Federal Circuit has consistently held that admissions in the specification regarding the prior art are binding on the patentee and since Amgen has agreed that the statements made in the specification constitute binding admissions, Roche respectfully requests this Court provide the above jury instruction that the statements from the specification constitute binding admissions on Amgen.

DATED:     October 10, 2007

F. HOFFMANN-LA ROCHE LTD,
ROCHE DIAGNOSTICS GMBH, and
HOFFMANN-LA ROCHE INC.


By its attorneys,

/s/ Thomas Fleming
Leora Ben-Ami (*pro hac vice*)
Mark S. Popofsky (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard S. Suh (*pro hac vice*)
Christopher T. Jagoe (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
Krista M. Rycroft (*pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York  10022
Tel. (212) 836-8000

and

Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO# 663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA  02110
Tel. (617) 443-9292

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.


_/S/ Thomas F. Fleming