# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 05-12237 WGY |
| v. | ) | |
| | ) | |
| | ) | |
| F. HOFFMANN-LAROCHE | ) | |
| LTD., a Swiss Company, ROCHE | ) | |
| DIAGNOSTICS GmbH, a German | ) | |
| Company and HOFFMANN LAROCHE | ) | |
| INC., a New Jersey Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AMGEN'S BENCH MEMORANDUM CONCERNING AMGEN'S EVIDENCE OF INFRINGEMENT OF '349 CLAIM 7

At sidebar during the examination of Dr. Harvey Lodish, counsel for Roche argued that Amgen could not establish infringement of the '349 claim 1 limitation "capable upon growth in culture of producing erythropoietin in the medium of their growth in excess of 100 U of erythropoietin per $10^6$ cells in 48 hours as determined by radioimmunoassay" based on Roche's own data measuring EPO production using an ELISA test and expert testimony from Dr. Lodish that the radioimmunoassay ("RIA") and ELISA tests work the same way and lead to comparable results.[1]  Amgen submits this memorandum to address Roche's arguments, and to explain why the evidence of record is sufficient to allow a reasonable juror to conclude that the limitations of '349 claim 7 are satisfied by Roche's process.[2]

---

[1] Trial Tr. at 2440-41.

[2] Amgen has concurrently filed a bench memorandum seeking application of 35 U.S.C. § 295, which would shift the burden of proof on this issue to Roche.  This memorandum, however,

Dockets.Justia.com

**I.    Amgen has submitted sufficient evidence for a reasonable juror to find that Roche's accused process literally satisfies the limitations of '349 claim 7**

To establish infringement of claim 7 of the '349 patent, Amgen must show, by a fair preponderance of the evidence, that each claim limitation is met by Roche's process for making MIRCERA (peg-EPO).   Claim 7 depends from either claim 1, 2, 3, 4, 5 or 6 of the '349 patent. Based on the statements in Roche's BLA and the testimony of Dr. Harvey Lodish regarding Roche's statements as well as RIA tests performed by Dr. McLawhon, Amgen has carried its burden of establishing that all of the relevant claim limitations are met.[3]

Roche has argued that Amgen cannot prove that the level of production of EPO recited in '349 claim 1:  producing EPO "in excess of 100 U of erythropoietin per $10^6$ cells in 48 hours as determined by radioimmunoassay" has been met unless Amgen introduces direct evidence of RIA tests.  But that is not the law.

To prove Roche's process satisfies this limitation, it is ***not*** necessary that Amgen actually test the production rates of Roche's cells using a RIA test or any other test.[4]   Rather, Amgen must only prove that it is more likely than not that this claim limitation is satisfied.

As the Supreme Court explained in *Michalic v. Cleveland Tankers, Inc.*, "direct evidence of a fact is not required.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."[5]   According to the Federal Circuit in *Liquid Dynamics Corp. v. Vaughan Co.*, "A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence. There is no requirement

---

assumes Amgen still carries the burden of proving by a fair preponderance of the evidence that Roche's EPO product is the product of the process of '349 claim 7.

[3] Trial Ex. 52 at ITC-R-BLA-00004667, 4722, 5073, 5581; Trial Tr. at  2439:21–2457:10.

[4] *See Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1349 (Fed. Cir. 1998) (affirming judgment of literal infringement, noting that plaintiff "could prove infringement without testing the accused cell suspensions" because defendant's documents showed claim limitation was met).

[5] 364 U.S. 325, 330 (1960).

that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable *per se*."[6]  In that case, the patentee relied on circumstantial evidence (opinion testimony and an engineering manual) to establish that a structural limitation (tank nozzle placement) was met in certain of defendant's accused tank installations, even though key structural data regarding those tank installations was missing.[7]  The Federal Circuit upheld the verdict of infringement, "While direct evidence may have made LD's case of infringement stronger, it does not render the case presented to the jury unreasonable as a matter of law.  Indeed, the jury could have reasonably inferred from the evidence submitted that each of the tanks infringed the claims."[8]

In this case, the evidence of record is sufficient to support the inference that Roche's cells produce EPO at the required rate "as determined by radioimmunoassay."

Roche's BLA states that Roche's cells produce 3.7 micrograms of EPO per $10^6$ cells per day.[9]  According to Dr. Lodish, this value was measured using an ELISA test.[10]  Roche's BLA also states that Roche's EPO has a specific activity of 207,700 U per milligram.[11]  Based on this data, Dr. Lodish calculated that Roche's cells produce about 1,500 units of EPO per $10^6$ cells in 48 hours.[12]  Taken together, these two admissions of Roche provide strong evidence that Roche's DN2-3α3 cells produce well in excess of 100 U of erythropoietin per $10^6$ cells in 48 hours.

While Dr. Lodish's calculation used EPO production values measured using ELISA, not

---

[6] 449 F.3d 1209, 1219 (Fed. Cir. 2006) (citation omitted); *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986).

[7] 449 F.3d at 1219-20.

[8] *Id.* at 1220.

[9] Trial Exh. 52 at page 5073.

[10] Trial Tr. at 2450.

[11] Trial Exh. 52 at page 5581.

[12] Trial Tr. at 2450:3-4 ("The result was in round numbers 1,500 units of EPO per million cells in 48 hours.").

RIA, a reasonable juror could infer, based upon Dr. Lodish's testimony about the two assays, that the result would be substantially similar if Roche had used RIA to measure EPO production. Dr. Lodish testified, based on his experience with both ELISA and RIA tests, that the results would be similar, if not identical, because they are similar assays that both use an antibody to measure the amount of EPO in the culture fluids and make use of a purified standard of EPO as an internal control.[13]  Given that Dr. Lodish's calculations resulted in an amount that was 15-fold over the 100 units specified by the claim, it would be reasonable to infer that the values as determined by RIA would be well in excess of the required limit.

Said another way, in light of (1) the BLA evidence that Roche's cells produce about 1,500 U of EPO per $10^6$ cells in 48 hours as measured by ELISA and (2) the testimony of Dr. Lodish that ELISA measurements and RIA measurements of EPO amounts are similar, if not identical, a reasonable juror could infer that it is extremely unlikely that Roche's cells produce less than 100 U of erythropoietin per $10^6$ cells in 48 hours as determined by RIA, and therefore, more likely than not that the claim limitation is satisfied.

 A simple analogy illustrates the reasonableness of such an inference.  Suppose a patent claimed a car that is capable of going faster than 60 MPH as measured by a radar gun.  The evidence of infringement is testimony from a witness driving in a car going 60 MPH who observes the accused car passing the witness at a high rate of speed.  While the testimony is not direct evidence of measurement with a radar gun, it surely is circumstantial evidence that would support a reasonable inference that the limitation is satisfied.

In addition to the reasonable inferences that can be drawn based on Roche's BLA data, Dr. Lodish also offered the opinion that he had reviewed and relied upon RIA tests of Roche's

---

[13] Trial Tr. at 2450-52.

cells performed by Dr. McLawhon.[14]  Based upon his review of Dr. McLawhon's tests and in accordance with Federal Rule of Evidence 703, Dr. Lodish opined that Roche's cells were "capable upon growth in culture of producing erythropoietin in the medium of their growth in excess of 100 U of erythropoietin per [$10^6$] cells in 48 hours as determined by RIA."[15]  A reasonable juror may credit that testimony as tending to prove that it is more likely than not that Roche's cells produce the recited levels, particularly in the absence of any contrary test results.

Consequently, Amgen has submitted sufficient evidence from which a reasonable juror could conclude that the limitations of '349 claim 7 are infringed by Roche's process for making MIRCERA.

**II.    Amgen has submitted sufficient evidence for a reasonable juror to find that Roche's accused process satisfies the limitation "capable upon growth in culture of producing erythropoietin . . . as determined by radioimmunoassay" under the doctrine of equivalents.**

Dr. Lodish provided ample testimony that from the perspective of a person of skill in the art[16] there is an insubstantial difference between determining the amount of EPO produced using ELISA compared to RIA.  If Amgen's proof were insufficient to support a finding of literal infringement because it was based, in part, on ELISA tests, then Amgen contends Roche would nevertheless infringe under the doctrine of equivalents.[17]  Based upon Dr. Lodish's testimony, Amgen has established that determining EPO production using ELISA is equivalent to determining EPO production using RIA because any difference between the claimed process —

---

[14] Trial Tr. at 2452-53.

[15] Trial Tr. at 2455.

[16] Dr. Lodish testified that he has "extensive experience" with interpreting both RIA and ELISA tests.  Trial Tr. at 2450:16-21.

[17] *AquaTex Indus., Inc. v. Techniche Solutions,* 479 F.3d 1320, 1326 (Fed. Cir. 2007) ("A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method.")

as determined by RIA — and Roche's accused process — as determined by ELISA — is insubstantial.

As Dr. Lodish explained, both RIA and ELISA have the same function: to "measure how much EPO is in the culture fluids."[18] Dr. Lodish also described the similarity in the way RIA and ELISA are performed: "both assays use an antibody to EPO which binds specifically to EPO"[19] and "[b]oth assays use a purified standard of erythropoietin as an internal control. So one is measuring the reactivity of an unknown substance to the reactivity of a known amount of EPO, and it's very simple then to calculate how much EPO there is in this unknown sample."[20] Because of these similarities, Dr. Lodish opined that the results of the ELISA test performed by Roche would be "very similar, if not identical" to results of the RIA test recited by the claim.[21]

This particularized evidence provides a sufficient basis for a reasonable juror to find that there is an insubstantial difference between ELISA and the RIA limitation of '349 claim 1.

This Court adopted a similar approach on this very issue in *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*.[22] Like Roche, TKT measured EPO production using ELISA, not RIA.[23] Like this case, Amgen introduced evidence that ELISA and RIA provided "comparable measures."[24] Based upon that evidence, this Court concluded that "Amgen's evidence regarding the comparability of ELISA and RIA measurements would more than support the Court's finding of infringement under the doctrine of equivalents."[25]

---

[18] Trial Tr. at 2451:11-12.

[19] Trial Tr. at 2451:10-11.

[20] Trial Tr. at 2452:1-5.

[21] Trial Tr. at 2450:22-2451:3.

[22] 126 F. Supp. 2d 69 (D. Mass. 2001), *aff'd in part, rev'd in part*, 314 F.3d 1313 (Fed. Cir. 2003).

[23] 126 F. Supp. 2d at 120.

[24] *Id.*

[25] *Id.*

Accordingly, Amgen has offered sufficient evidence for a reasonable juror to find that Roche's process for making EPO satisfies the limitation "capable upon growth in culture of producing erythropoietin in excess of 100 U of erythropoietin per $10^6$ cells in 48 hours as determined by radioimmunoassay" under the doctrine of equivalents.

Dated:  October 10, 2007

AMGEN INC.,

By its attorneys,


*/s/ Michael R. Gottfried*

Of Counsel:

D. DENNIS ALLEGRETTI (BBO#545511)
MICHAEL R. GOTTFRIED (BBO#542156)
STUART L. WATT
PATRICIA R. RICH (BBO#640578)
WENDY A. WHITEFORD
DUANE MORRIS LLP
MONIQUE L. CORDRAY
470 Atlantic Avenue, Suite 500
DARRELL G. DOTSON
Boston, MA  02210
KIMBERLIN L. MORLEY
Telephone:    (857) 488-4200
ERICA S. OLSON
Facsimile:    (857) 488-4201
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA   91320-1789
LLOYD R. DAY, JR. (*pro hac vice*)
(805) 447-5000
DAY CASEBEER
MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014
Telephone:    (408) 873-0110
Facsimile:    (408) 873-0220

WILLIAM GAEDE III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone:    (650) 813-5000
Facsimile:    (650) 813-5100

KEVIN M. FLOWERS (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone:    (312) 474-6300
Facsimile:    (312) 474-0448

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as on-registered participants.


*/s/ Michael R. Gottfried*
Michael R. Gottfried