## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMGEN INC., <br><br> Plaintiff, <br><br> v. <br><br> F. HOFFMANN-LA ROCHE LTD, a Swiss Company, ROCHE DIAGNOSTICS GMBH, a German Company, and HOFFMANN LA ROCHE INC., a New Jersey Corporation, <br><br> Defendants. | ) ) ) ) ) ) ) Civil Action No.: 1:05-cv-12237 WGY ) ) ) ) ) ) |

### AMGEN'S MOTION AND SUPPORTING MEMORANDUM REQUESTING THAT THIS COURT TRY ROCHE'S INEQUITABLE CONDUCT DEFENSES

To the extent that Roche still intends to argue inequitable conduct, Amgen moves to request that the Court exercise its discretion and try Roche's inequitable conduct defenses to the bench, rather than the Jury, and keep within the time limits the Court has set for the trial of this action.[1] As numerous courts have recognized, inequitable conduct is an equitable defense for which no right to a jury trial attaches. A bench trial is appropriate because the issue Roche seeks to present to the jury – inequitable conduct, which some courts have analogized to fraud – will unfairly prejudice the patentee and complicate the jury trial.[2] "Because evidence of inequitable

---

[1] *Hebert v. Lisle Corp*., 99 F.3d 1109, 1114 (Fed.Cir.1996) (though district courts have treated inequitable conduct in different ways, including reserving the issues entirely for a bench trial, or employing an advisory jury, it is entirely within the discretion of the district court).

[2] *Trading Techs. Int'l v. eSpeed, Inc*., 2007 U.S. Dist. LEXIS 61620 at * 10 (D. Ill. 2007) *(cases cited)*.

1

conduct is effectively evidence of fraud, there is a danger the evidence will unnecessarily 'spill over' to [plaintiff's] prejudice on issues that are before the jury."[3]

The risk of unfair prejudice to Amgen is particularly acute here in light of the weakness of Roche's inequitable conduct theories and the fact that such theories are merely a rehash of Roche's invalidity case laden with unsupported accusations of Amgen wrongdoing during prosecution of the patents.[4] Roche's inequitable conduct case is confined to three theories as set forth in its First Amended Answer (D.I. 344).[5] First, by alleging that Amgen failed to disclose information purporting to show similarities between uEPO and rEPO (D.I. 344, First Amended Answer ¶¶ 74-88), Roche seeks to repeat and reinforce what it has already tried to the Jury (that uEPO and rEPO are the same), but with an additional conspiratorial and accusatory twist. Second, by alleging that Amgen wrongly extended its patent term by making misrepresentations to the patent office in overcoming an obviousness-type double patenting ("ODP") rejection (D.I. 344, First Amended Answer, ¶¶ 43-53), Roche will be attempting to introduce to the jury that which this Court has already reserved for itself, *i.e.* the issue of obviousness-type double patenting. Third, by alleging that Amgen failed to disclose rejections in one line of patent applications to the examiners in the other line of applications (D.I. 344, First Amended Answer

---

[3] *Liquid Dynamics Corp. v. Vaughan Co.,* 2004 U.S. Dist. LEXIS 29992 (D. Ill. 2004), *citing THK Am., Inc. v. NSK, Ltd.,* 1996 U.S. Dist. LEXIS 226, at * 5 (N.D. Ill. Jan. 9, 1996). While fraud is not equivalent to inequitable conduct (the allegations require different showings and different proofs), they both contain an allegation of wrong-doing that acts to prejudice the accused when determining unrelated issues such as invalidity.

[4] Roche's attempt to blur the line between validity and inequitable conduct was also shown by its attempts to introduce inequitable conduct concepts into the validity phase of this case, including when it repeatedly sought to offer Mr. Sofocleous's testimony (Roche's purported PTO expert) during validity.

[5] In denying both Docket No. 445 (Roche's Motion for Leave to Amend its Answer to Amplify Allegations of Inequitable Conduct) and Docket No. 631 (Roche's Motion for Leave to Amend its Pleadings to Conform With the Evidence), this Court has already twice ruled that Roche may not expand its inequitable conduct theories beyond those contained in its First Amended Complaint. *See* 6/7/07 Court Order Denying Motion to Amend Its [Roche's] Answer To Amplify Allegations Of Amgen's Inequitable Conduct And To Define Relevant Markets For Purposes Of Antitrust Counterclaims; 7/18/07 Court Order No. 91.

¶¶ 54-73), Roche will again be attempting to show that the patents are so similar to each other as to be patentably indistinct, an issue the Court has reserved for itself.

Because Roche's inequitable conduct defense will confuse the Jury about the relevant issues in this case and further complicate an already lengthy and complex trial, consistent with federal court precedent, this Court should avoid the prejudice to Amgen and hold a bench trial on the same schedule and within the same time parameters originally set by this Court. Amgen suggests, therefore, that the Court instruct the Jury only as to invalidity and infringement at the close of the infringement case, and then allow the jury to deliberate. The parties can then proceed with the inequitable conduct trial before the bench[6] within the time allotted by the Court for this case.

I.  **ROCHE'S INEQUITABLE CONDUCT DEFENSE IS EQUITABLE IN NATURE, AND THUS THERE IS NO RIGHT TO A JURY TRIAL**

The Federal Circuit has made it clear that inequitable conduct is an equitable matter for which there is no right to a jury trial.[7] Courts routinely exercise their discretion to try inequitable conduct claims to the bench in situations such as this one.[8]

---

[6] As previously stated and maintained by Amgen, it is Amgen's position that this Court can also determine the infringement and validity issues in this matter because there is no right to a jury trial on the patent case. *See* D.I. 762, 687, 807 at p. 66.

[7] *Paragon Podiatry Lab. v. KLM Lab.,* 984 F.2d 1182, 1190 (Fed. Cir. 1993) (inequitable conduct is an equitable doctrine and there is no right to a jury trial); *Ethicon, Inc. v. United States Surgical Corp.*, 921 F. Supp. 901, 903 (D. Conn. 1995) (noting that the issues "presented by a defense of inequitable conduct are equitable in nature and, as such, triable without a jury").

[8] *See e.g, Gardco Mfg., Inc. v. Herst Lighting Co*., 820 F.2d 1209, 1212-1213 (Fed. Cir. 1987) (hearing the issue of inequitable conduct before the jury trial); *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co.*, 2007 U.S. Dist. LEXIS 4652 *6 (D.N.J.2007) ("inequitable conduct is best heard by bench trial, following the trial on liability and the separate trials on damages and willfulness"); *Applera Corp. v. Micromass UK Ltd*., 204 F.Supp.2d 724, 729 (D.Del.2002) (holding a bench trial on inequitable conduct and equitable estoppel separate from the infringement and invalidity jury trial); *Elkhart Brass Mfg. Co. v. Task Force Tips*, 867 F.Supp. 782, 787-88 (N.D.Ind.1994); *Golden Valley Microwave Foods v. Weaver Popcorn Co*., 837 F.Supp. 1444, 1447 (N.D.Ind.1992); *Nintendo of America, Inc. v. Magnavox Co.,* 707 F.Supp. 717, 720 (S.D.N.Y.1989).

Roche has previously opposed Amgen's request to try inequitable conduct to the bench, on the grounds that holding a bench trial on the inequitable conduct claim would violate its Seventh Amendment right to a jury trial on its *Walker Process* counterclaim.  Roche's argument is premised on a flawed interpretation of *Beacon Theatres*, *Dairy Queen* and their progeny.[9]

First, as the Supreme Court has instructed, *Beacon Theatres* "enunciated no more than a general prudential rule,"[10] and therefore does not have the all-encompassing reach that Roche asserted in its pre-trial briefing.  Moreover, "[b]oth *Beacon Theatres* and *Dairy Queen* recognize that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim."[11]

Second, as a practical matter, there is no risk here that the *Walker Process* claim is "too intertwined" with Roche's inequitable conduct defense to separate.  This Court has already bifurcated Roche's inequitable conduct defense from its *Walker Process* counterclaim, and therefore, any testimony, evidence or argument that is relevant only to fraud or inequitable conduct issues can easily be tried at a bench trial outside of the Jury's presence.[12]  The Federal Circuit does not foreclose such a structure, and in fact, *Hebert* reaffirms this Court's discretion to organize a patent law trial to best serve fairness and judicial economy.[13]

---

[9] *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); 369 U.S. 469 (1962); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962).

[10] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 334 (1979).

[11] *Id.* at 335 *citing Katchen v. Landy*, 382 U.S. 323, 339 (1965) (an equitable determination can have collateral-estoppel effect in a subsequent legal action and this estoppel does not violate the Seventh Amendment). *See also*, *Trading Techs. Int'l v. eSpeed, Inc.*, 2007 U.S. Dist. LEXIS 61620 at n. 1 (D. Ill. 2007) *citing Gardco*, 820 F.2d 1209 ('The Federal Circuit has determined that bifurcation of inequitable conduct, even if tried first, does not violate any rights guaranteed by the Seventh Amendment').

[12] *See* July 18, 2006 Court Order, D.I. 762

[13] *Trading Techs. Int'l v. eSpeed, Inc.*, 2007 U.S. Dist. LEXIS 61620 at * 10 (D. Ill. 2007), *citing Hebert v. Lisle Corp.*, 99 F. 3d 1109, 1114 (Fed.Cir.1996) (though district courts have treated inequitable conduct in different ways, including reserving the issues entirely for a bench trial, or employing an advisory jury, it is entirely within the discretion of the district court).

Third, contrary to Roche's implicit assumption, simply adding a *Walker Process* counterclaim does not entitle an infringer to a jury trial on an inequitable conduct defense. As Roche recognizes, if its inequitable conduct defense fails, its *Walker Process* antitrust counterclaim will be moot.[14] The fact that a *Walker Process* claim requires showing a higher level of scienter and materiality than required for inequitable conduct, mitigates in favor of a bench trial on Roche's inequitable conduct defense.[15]

If Roche cannot persuade this Court of its inequitable conduct claim – a claim which requires a lesser showing than Roche's *Walker Process* claim – it should be dismissed as a matter of law. Roche overlooks the fact that this would not violate its Seventh Amendment right to a jury trial any more than would a summary judgment disposition or directed verdict. It is well established that such mechanisms, when properly utilized, are constitutional.[16] Moreover, Amgen's Motion for Summary Judgment on Roche's antitrust claims, including its *Walker Process* counterclaim, is still pending before this Court. Thus, if Amgen's motion for summary judgment on the *Walker Process* claim is granted, Roche's claim that it is entitled to a jury trial on the inequitable conduct defense will be both irrelevant and moot.

---

[14] *Applera Corp. v. Micromass UK Ltd.*, 204 F. Supp. 2d 724, 781-82 (D. Del. 2002) (findings of validity of patent and absence of inequitable conduct are fatal to *Walker Process* claim).

[15] *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1417 (Fed. Cir. 1987) ("failure to establish inequitable conduct precludes a determination that [FMC] had borne its greater burden of establishing the fraud required to support its *Walker Process* claim").

[16] *Johns Hopkins Univ. v. CellPro*, 1997 U.S. Dist. LEXIS 24161, at *18-19 (D.Del. July 24, 1997) (McKelvie D.J.) (trial of the inequitable conduct claims to the bench before antitrust claims did not violate the Seventh Amendment); *United States Gypsum Co. v. National Gypsum Co.*, 1994 U.S. Dist. LEXIS 2863 (N.D.Ill. March 10, 1994) ("should the patents be found valid and enforceable in the patent trial, a motion for a directed verdict on the Defendant's *Walker Process* counterclaims may be in order"). *See also, Macneill Eng'g Co. v. Trisport, Ltd.*, 126 F. Supp. 2d 51, 68-69 (D. Mass. 2001) ("a district court may properly take theories and claims away from the jury even after the parties have presented evidence in reliance on those theories being alive during the case"); *Galloway v. United States*, 319 U.S. 372, 388-94 (1943) (holding that directed verdict does not violate Seventh Amendment).

## II. A BENCH TRIAL ON THE INEQUITABLE CONDUCT DEFENSE IS NECESSARY TO AVOID UNFAIR PREJUDICE TO AMGEN

### A. ROCHE'S INEQUITABLE CONDUCT ALLEGATIONS ARE A PRETEXTUAL ATTEMPT TO UNFAIRLY PREJUDICE AMGEN IN THE INVALIDITY CASE AND SHOULD BE EXCLUDED FROM THE JURY TRIAL UNDER FED. R. EVID. 403

Roche's inequitable conduct defenses should be excluded from the jury trial pursuant to Fed. R. Evid. 403.[17] By their very nature, it is apparent that Roche's inequitable conduct allegations were specifically designed to buttress Roche's invalidity case by misleading the Jury into believing that Amgen obtained non-patentable inventions by making material misrepresentations and omissions to the patent office. This Court should not countenance Roche's attempt to improperly influence the Jury to find against Amgen on the invalidity issues. In affirming a district court's decision to try the issue of inequitable conduct before the court and not the jury, the Federal Circuit has explicitly held that issues of invalidity and inequitable conduct are "distinct" from one another. *Gardco*, 820 F.2d at 1213. Thus, Roche should not get a second bite at the apple of proving invalidity through its inequitable conduct case.

Moreover, it is well settled that "a patent case is complex and confusing enough for a jury without infusing evidence which has no relevance to the issues to be decided by that jury."[18] As numerous courts have recognized, there is a substantial risk of unfair prejudice where evidence of inequitable conduct – which some courts have likened to fraud – is introduced to the jury deciding other patent claims.[19]

---

[17] Fed. R. Evid. 403 states "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

[18] *Liquid Dynamics Corp. v. Vaughan Co.,* 2004 U.S. Dist. LEXIS 29992 (D. Ill. 2004), *citing THK Am., Inc. v. NSK, Ltd.*, 1996 U.S. Dist. LEXIS 226, * 4 (N.D. Ill. Jan. 9, 1996)

[19] *Liquid Dynamics Corp. v. Vaughan Co.,* 2004 U.S. Dist. LEXIS 29992 (D. Ill. 2004), *citing THK Am., Inc. v. NSK, Ltd.,* 1996 U.S. Dist. LEXIS 226, at * 5 (N.D. Ill. Jan. 9, 1996) ("Because evidence of inequitable conduct is effectively evidence of fraud, there is a danger the evidence will unnecessarily "spill over" to [plaintiff's] prejudice on issues that are before the jury.")

Indeed, in similar situations courts have excluded evidence of inequitable conduct from the jury and held bench trials on the inequitable conduct defense.[20] In *THK America, Inc. v. NSK, Ltd.,* Judge Norgle recommended that evidence and arguments on the issue of inequitable conduct should be heard each day as they arise, after the jury had been dismissed for the day. In making his recommendation, Judge Norgle considered that inequitable conduct is an issue for the court's determination, that patent cases are inherently complicated and confusing for a jury, and that evidence of inequitable conduct may very well prejudice the patentee in its case to the jury.[21]

The risk of prejudice identified by other courts is especially present here. In order to prevail on inequitable conduct, Roche must show that a person substantively involved with prosecution on behalf of Amgen - with the intent to mislead or deceive the PTO - failed to disclose material, non-cumulative information it knew to be material, or submitted false information to the PTO in arguing for the patentability of a claim.[22] Roche has to prove its inequitable conduct defense, including these threshold levels of materiality and intent, by clear and convincing evidence.[23]

In addition to failing to show the lack of disclosure or the misstatement of any material information – as it must – Roche cannot offer any evidentiary support for its claim that the patent

---

[20] *THK Am. v. NSK, Ltd.*, 917 F. Supp. 563 (N.D.Ill.1996); *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co.*, 2007 U.S. Dist. LEXIS 4652 *6 (D.N.J.2007) (inequitable conduct defense is best heard by bench trial, following the trial on liability and the separate trials on damages and willfulness); *Applera Corp. v. Micromass UK Ltd.*, 204 F.Supp. 2d 724, 729 (D.Del.2002) ("The court bifurcated the trial into two components; a jury trial on the infringement and invalidity issues, and a bench trial on inequitable conduct and equitable estoppel."); *Elkhart Brass Mfg. Co. v. Task Force Tips*, 867 F.Supp. 782, 787-88 (N.D.Ind.1994); *Golden Valley Microwave Foods v. Weaver Popcorn Co.*, 837 F.Supp. 1444, 1447 (N.D.Ind.1992); *Nintendo of America, Inc. v. Magnavox Co.,* 707 F.Supp. 717, 720 (S.D.N.Y.1989).

[21] *See also, Trading Techs. Int'l v. eSpeed, Inc*., 2007 U.S. Dist. LEXIS 61620, 9-11 (D. Ill. 2007), *citing THK*, 917 F. Supp. 563 at *1.

[22] *Norian Corp. v. Stryker Corp.,* 363 F. 3d 1321, 1330-1331 (Fed. Cir. 2004)

[23] *Molins PLC*, 48 F.3d 1179 (*citing Scripps Clinic & Research Found. v. Genentech, Inc*., 927 F. 2d 1565, 1582 (Fed. Cir. 1991).

applicant intended to mislead the PTO.[24]  This failure is dispositive, not only of the inequitable conduct claim, but also Roche's *Walker Process* claim which requires an even higher standard – that of fraud on the PTO.

Roche's inequitable conduct defense centers on three primary theories set forth in Roche's First Amended Answer (its operative pleading), alleging that Amgen committed inequitable conduct by:

(i) making what Roche contends to be erroneous legal arguments regarding patentable distinctiveness[25] and failing to disclose statements made in other proceedings[26] in overcoming an ODP rejection during the prosecution of the '179 application;[27]

(ii) failing to disclose information that Roche contends shows similarities between r-EPO and u-EPO;[28] and

(iii) failing to disclose the basis for the examiners' rejections of claims in co-pending applications during the prosecution of the '178 and '179 Applications.[29]

---

[24] Roche points to no evidence that could support an allegation that an ***individual*** substantively involved in the preparation or prosecution of the patents-in-suit intended to deceive the PTO. *See* 37 C.F.R. § 1.56(c) ("Individuals associated with the filing or prosecution of a patent application within the meaning of this section are: (1) Each inventor named in the application; (2) Each attorney or agent who prepares or prosecutes the application; and (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application."); *see, e.g., Ariad Pharmaceuticals Inc. v. Eli Lily & Co.*, WL 2011279, *16-20 (D.Mass. 2007) (analyzing intent issue separately with regard to each individual substantively involved in prosecution). Instead, Roche blanketly points the finger at multiple individuals without tying the requisite intent and materiality to anyone under a duty of disclosure to the patent office.

[25] The Federal Circuit has held that attorney argument cannot constitute a material representation to the PTO. *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 12349 (Fed. Cir. June 27, 2007); *see also C.R. Bard, Inc. v. Adv. Cardio. Sys.*, 911 F.2d 670, 674 n.2 (Fed. Cir. 1990) (arguments are not evidence). Moreover, as set forth in prior briefing, everything Amgen explained to the PTO was accurate. (D.I. 545 at p. 10-14). Therefore, this issue can be disposed of as a matter of law by the Court.

[26] As set forth in Amgen's Motion for Summary Judgment of No Inequitable Conduct and Memorandum in Support thereof (D.I. 544, 545 at p. 10-14), Amgen's statements to the PTO were entirely consistent with its statements to the Interference Board.

[27] D.I. 344, ¶ ¶ 43-53.

[28] *Id.* at ¶ ¶ 74-88.

[29] *Id.* at ¶¶ 54-73.

Roche's first allegation is little more than a contrived attempt to prove its ODP case to the Jury.[30] Roche should not be permitted to introduce ODP issues to the Jury, however, because this Court has already ruled that the ODP issues will be heard by the bench. Indeed, allowing any ODP-based inequitable conduct issue to go before the Jury will cause Jury confusion and prejudice to Amgen. There is a substantial risk that the Jury will be unable to discern the difference between inequitable conduct with obviousness-type double patenting underpinnings and general obviousness. There is risk, therefore, that the Jury will consider the inequitable conduct allegations in determining how to decide the 35 U.S.C. § 103 issues, based on Roche's inflammatory but unsupportable allegations that Amgen made misrepresentations to the PTO to extend the life of its patents.[31] Moreover, in order to provide context for the interference statements that Roche has pled as part of its inequitable conduct case (*see* D.I. 344, First Amended Answer ¶¶ 47-48), which are the same statements that Roche heavily relies upon in attempting to prove the substance of its ODP defense,[32] Amgen will necessarily have to introduce the favorable rulings in *Amgen, Inc. v. Chugai Pharmaceuticals Co.*, 13 USPQ2d 1737. 1748-175 (D. Mass 1989) *aff'd* 927 F. 2d 1200 (Fed. Cir. 1991), which this Court has previously excluded. Therefore, only the Court is equipped to understand why the statements Amgen made during prosecution regarding ODP are in no way inconsistent with arguments it

---

[30] See D.I. 344, Roche's First Amended Answer, ¶ 44 (stating that Amgen only overcame the ODP rejection in the patent office by misleading the examiner and failing to disclose information). *See id.* at § 51 ("But for these misrepresentations, the examiner would not have allowed the '179 claims to issue, as they did in the '868 patent, in any patent entitled to a term exceeding that of the earlier owned '008 patent.")

[31] Amgen maintains that its arguments overcoming the ODP rejection during prosecution of the '179 application constitute legal argument which, as a matter of law, cannot form the basis for inequitable conduct claims. *See* note 25, *supra*.

[32] *See* 10/4/2007 ODP Hearing, Trial Tr. at 130-135.

made during the '097 and '096 interferences for priority of invention over Genetics Institute/Fritsch.[33]

Roche's second defense regarding similarities between r-EPO and u-EPO is an attempt to again introduce evidence purporting to show that there are no patentable differences between the claimed products and prior art u-EPO.  As part of the validity case, the Jury will be asked to decide whether, in the first place, there are differences between u-EPO and r-EPO.  If the Jury is then asked to decide Roche's inequitable conduct defense, it will be charged with determining whether Amgen made material misrepresentations or omissions (with intent to deceive the patent office) when it explained to the patent office that there were in fact differences between u-EPO and r-EPO.  The risk for confusion and prejudice to Amgen if the Jury decides both of these issues is substantial, especially considering that all of the information Roche alleges was withheld is entirely cumulative to what was before the patent office[34] and that this Court already rejected such a claim in the *TKT* litigation.[35]  This Court should not allow Roche to use its equitable defense as a trial tactic to poison the Jury in deciding the validity issues.

Roche's third allegation – failure to disclose rejections in co-pending applications – is belied by what actually occurred during prosecution of these patents.  First, the claims in the co-pending applications had already been deemed, by the patent office, to be patentably distinct.  Second, the same examiner issued ***all*** of the patents-in-suit and in so doing necessarily reviewed

---

[33] Moreover, because the Court has already heard substantial evidence and briefing on the issue of whether Amgen's arguments overcoming the ODP rejection in the '179 prosecution history were consistent with its prior arguments during the interferences (*see, e.g.* D.I. 801 and 867), it would conserve judicial resources for the Court to decide the issue and avoid re-presenting the identical issue to the jury.

[34] *See* Amgen's Motion for Summ. J. of No Inequitable Conduct and Memo in Support thereof (D.I. 544, 545 at 4-9).

[35] *See Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 69 F.Supp.2d 69, 137-147 (D.Mass. 2001), *aff'd*, 314 F.3d 1313, 1357-1358 (Fed. Cir. 2003).  *See also Fritsch v. Lin,* 21 U.S.P.Q.2d 1739, 1740-42 (BPAI 1992) and TX-2011.310-312.

the prosecution histories.[36]  As primary examiner of all of the patents in suit, Examiner Martinell was also required to have knowledge of the '178 and '179 applications' histories.  In addition, Examiner Martinell brought with him much institutional knowledge relative to Dr. Lin's EPO inventions because he also played a role in examining the '024 Application, one of the early applications from which the '178 and '179 Applications stem, and the International Search Report for the PCT Application.  TX 2013.196 ('298 Application, 3/7/1985 International Search Report).

Roche persists with these allegations – despite clear evidence to the contrary– in an effort to mislead the Jury into believing that Amgen was not forthright with the PTO.  In light of the risk of unfair prejudice to Amgen, inequitable conduct is more appropriately considered by this Court, rather than the Jury.

## III.   CONCLUSION

Based on the foregoing, Amgen respectfully requests that the Court instruct the Jury and allow it to deliberate at the close of the infringement case, and that the parties then try the inequitable conduct claim to the bench on the same schedule and within the same time limits established by the Court.

---

[36] For example, examiners are instructed that "full faith and credit should be given to the search and action of the previous examiner" and "the second examiner should not take an entirely new approach to the application or attempt to reorient the point of view of the previous examiner." MPEP § 704.01 (8th ed. Rev. 5 Aug. 2006).  See also MPEP §§ 609.02 (8th ed. Rev. 5, Aug. 2006) (The examiner of the continuing application will consider information which has been considered by the Office in the parent application.).

DATED:    October 10, 2007                    Respectfully Submitted,

| | |
|---|---|
| Of Counsel:<br>Stuart L. Watt<br>Wendy A. Whiteford<br>Monique L. Cordray<br>Darrell G. Dotson<br>Kimberlin L. Morley<br>Erica S. Olson<br>AMGEN INC.<br>One Amgen Center Drive<br>Thousand Oaks, CA 91320-1789<br>(805) 447-5000 | AMGEN INC.,<br>by its attorneys<br><br>*/s/ Michael R. Gottfried*<br>D. Dennis Allegretti (BBO# 545511)<br>Michael R. Gottfried (BBO# 542156)<br>Patricia R. Rich (BBO# 640578)<br>DUANE MORRIS LLP<br>470 Atlantic Avenue, Suite 500<br>Boston, MA  02210<br>Telephone:  (857) 488-4200<br>Facsimile:   (857) 488-4201<br><br>Lloyd R. Day, Jr. (pro hac vice)<br>DAY CASEBEER MADRID & BATCHELDER LLP<br>20300 Stevens Creek Boulevard, Suite 400<br>Cupertino, CA  95014<br>Telephone:  (408) 873-0110<br>Facsimile:   (408) 873-0220<br><br>William G. Gaede III (pro hac vice)<br>McDERMOTT WILL & EMERY<br>3150 Porter Drive<br>Palo Alto, CA  94304<br>Telephone:  (650) 813-5000<br>Facsimile:   (650) 813-5100<br><br>Kevin M. Flowers (pro hac vice)<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Sears Tower<br>Chicago, IL  60606<br>Telephone:  (312) 474-6300<br>Facsimile:   (312) 474-0448 |

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

I certify that counsel for the parties have conferred in an attempt to resolve or narrow the issues presented by this motion and no agreement was reached.

>*/s/ Michael R. Gottfried*
> Michael R. Gottfried

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of electronic filing and paper copies will be sent to those indicated as non-registered participants.

> */s/ Michael R. Gottfried*
> Michael R. Gottfried