# EXHIBIT A

## 6.4   MATERIAL CHANGE

An imported product made by a patented process does not infringe if: (1) it has been materially changed by subsequent processes; or (2) it becomes a trivial and nonessential component of another product.[1] The issue for consideration, therefore, is not what Roche does in Europe but rather what product it actually imports into the United States.

In the United States, one is allowed to import items into the country even if they are derived from a product made by a patented process as long as the product is "materially changed" in the course of its conversion into the imported item.[2] Such importation does not constitute infringement. Amgen has admitted that there are differences between Roche's MIRCERA and "human erythropoietin" as derived in the patents-in-suit. Amgen contends that those differences do not constitute material changes. With regard to whether or not the imported product is "materially changed," Amgen bears the burden of proof.[3] In other words, Amgen, in its assertion of various process claims, must prove two things: (1) first that Roche practices each and every step of the patented processes; and (2) that any imported product allegedly infringing those claims was not materially changed. Specifically, Amgen has asserted that Roche infringes the process claims of the '868, '698, or '349 patents; thus, if Roche performs any elements of these process claims in Europe, that is not an act of infringement. Amgen must prove that the resulting product is not "materially changed" from the product defined by the patented process.

To determine material change, one must look to the substantiality of the change between the substance that Roche isolates from the cell media, alleged to be the product of the patented

---

[1]   35 U.S.C. §271(g); *Eli Lily & Co. v. Am. Cyanamid Co.,* 82 F.3d 1568, 1572 (Fed. Cir. 1996).

[2]   35 U.S.C. § 271(g); *Eli Lilly & Co. v. Am. Cyanamid Co.,* 82 F.3d 1568, 1572 (Fed. Cir. 1996).

[3]   *Genentech, Inc. v. Boehringer Mannheim GmbH,* 47 F. Supp. 2d 91, 108 (D. Mass. 1999).

process, and compare that to MIRCERA®, the imported product.[4] In the chemical context, a material change in a compound is most naturally viewed as a significant change in the compound's structure and properties.[5] It is also possible that additional process steps done after a patented process can support a finding of material change. The following factors support a finding of material change:[6]

- that subsequent processes confer an additional, distinct, or valuable property to the alleged product of the patented process

- that subsequent processes confer different properties relating to the product of the patented process, *e.g.,* increased half-life, increased stability, and improved dosing regiments

- that subsequent processes confer significant structural differences to the alleged product of the patented processes such as the removal and/or addition of certain atoms or bonds to the molecule

- that subsequent processes applied to the product of a patented process are complex and involve multiple steps

Additionally, even if individual steps of subsequent processes involve relatively routine chemical reactions, that does not preclude a finding of material change.[7]

---

[4] *Eli Lilly,* 82 F.3d at 1568, *Genentech, Inc.,* 47 F. Supp. 2d at 107, *Eli Lilly and Co. v. American Cyanamid Co.,* 896 F. Supp. 851 (S.D. Ind. 1995).

[5] *Eli Lilly,* 82 F.3d at 1573.

[6] *Eli Lilly and Co. v. Am. Cyanamid Co.,* 66 F. Supp. 2d 924, 932 (S.D. Ind. 1999).

[7] *Eli Lilly,* 82 F.3d at 1572-73.

## 6.5  EVIDENCE OF MATERIAL CHANGE OF OTHER PRODUCTS IS RELEVANT TO DETERMINING MATERIAL CHANGE OF CERA AND MIRCERA® (*NEW*)

In considering what constitutes a material change from the product of the claimed processes, you may consider evidence showing that other erythropoiesis-stimulating agents (ESAs), such as Aranesp®, which binds to the same EPO receptor, are different enough from the products of the claimed processes that Amgen considers them to fall outside the scope of products produced by Amgen's process claims for producing recombinant erythropoietin.[8]

---

[8]   *See, e.g., Home Diagnostics Inc. v. LifeScan, Inc.*, 120 F. Supp. 2d 864, 868 (N.D. Cal. 2000) (to avoid repetitive litigation, it would be permissible to compare accused product to a product previously found not to infringe); *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1545 (Fed. Cir. 1987) (infringement of accursed device may be determined by comparison with device previously found to infringe because "things equal to the same thing are equal to each other"); *Hampshire Paper Co. v. Highland Supply Corp.,* Civ. 02-32-JD, 2002 WL 1676285, *5 (D.N.H. July 18, 2002) (statement by patentee's counsel that if defendant's products were the same as certain prior art products, there would be no infringement, bound patentee).