1              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
2
                                    Civil Action
3                                   No. 05-12237-WGY

4    * * * * * * * * * * * * * * * *
                                    *
5    AMGEN, INC.,                   *
                                    *
6              Plaintiff,           *
                                    *  **DAILY TRANSCRIPT OF**
7    v.                             *  **JURY CHARGE CONFERENCE**
                                    *
8    F. HOFFMANN-LA ROCHE LTD,      *
     ROCHE DIAGNOSTICS GmbH and     *
9    HOFFMANN-LA ROCHE, INC.,       *
                                    *
10             Defendants.          *
                                    *
11   * * * * * * * * * * * * * * * *

12

13

14             BEFORE:  The Honorable William G. Young,
                        District Judge
15

16

17

18

19

20

21

22

23
                                 1 Courthouse Way
24                               Boston, Massachusetts

25                               October 10, 2007

1                  A P P E A R A N C E S

2

3          DUANE MORRIS LLP (By D. Dennis Allegretti,
     Esq. and Michael R. Gottfried, Esq.), 470 Atlantic
     Avenue, Suite 500, Boston, Massachusetts 02210
4               - and -
           DAY CASEBEER MADRID & BATCHELDER, LLP (By
5     Lloyd R. Day, Jr., Esq., David M. Madrid, Esq. and
     Robert M. Galvin, Esq.) 20300 Stevens Creek
6     Boulevard, Suite 400, Cupertino, California 95014
              - and -
7          McDERMOTT WILL & EMERY (By Michael Kendall,
     Esq.), 28 State Street, Boston, Massachusetts
8     02109
              - and -
9          McDERMOTT WILL & EMERY (By William G.
     Gaede, III, Esq.), 3150 Porter Drive, Palo Alto,
10    California 94304
              - and -
11         MARSHALL, GERSTEIN & BORUN LLP (By Kevin M.
     Flowers, Esq.), 6300 Sears Tower, 233 S. Wacker
12    Drive, Chicago, Illinois 60606-6402
              - and -
13         STUART L. WATT and WENDY A. WHITEFORD, Of
     Counsel, Amgen, Inc., One Amgen Center Drive,
14    Thousand Oaks, California 91320-1789, on behalf of
     the Plaintiff
15
           BROMBERG & SUNSTEIN LLP (By Lee Carl
16    Bromberg, Esq. and Julia Huston, Esq.), 125 Summer
     Street, Boston, Massachusetts 02110
17              - and -
           KAYE SCHOLER LLP (By Leora Ben-Ami, Thomas
18    F. Fleming, Esq., Patricia Carson, Esq.,
     Christopher Jagoe, Esq. and Howard Suh, Esq.),
19    425 Park Avenue, New York, New York 10022, on
     behalf of the Defendants

20

21

22

23

24

25

```
 1              PROCEEDINGS - 2:15 P.M.

 2

 3         THE CLERK:  All rise.  Court is in session, please

 4    be seated.

 5              Calling Civil Action 05-12237, Amgen v. Hoffmann-La

 6    Roche.

 7              I'm sure you have a file for me, too.

 8         MR. FLEMING:  I have a few pages for you, Bonnie.

 9              Good afternoon, your Honor.

10         THE COURT:  Good afternoon.

11         MR. FLEMING:  Your Honor, on top of that is the

12    list that your Honor asked for when we were last together.

13         THE COURT:  Yes.  That's fine.

14              Let me just go step by step and we'll cover what we

15    can cover.  I apologize for not coming out right at 2:00.

16    The day has played out a little differently than I expected.

17    I didn't get off the bench until well after 1:00.

18              Here's, here's -- I'm sure these will be helpful.

19    Here's how I propose to proceed.  First, I want you to

20    understand the schedule because I have made a mistake with

21    respect to it.  This doctor's appointment that would have us

22    have a short day on Wednesday is in fact, and I should have

23    known this, on Tuesday.  So, lining up your witnesses, when

24    we come back, we're nine o'clock to one o'clock on Monday,

25    we're eleven to one o'clock on Tuesday, we're 9:30 to one
```

1    o'clock on Wednesday, we're nine to one o'clock on Thursday.

2    The case will be to the jury by one o'clock on Thursday.

3            Second issue.  Amgen wants to take a witness in

4    Belgium, Ms. Smith tells me, live but by videoconferencing.

5    I think she's given you my position on it, appropriately.

6    I'm amenable to that.  It almost always is difficult in

7    terms of timing, though we could take the witness out of

8    order and start the witness at 9:00 or at 11:00 and --

9            **MR. FLEMING:**  Excuse me, your Honor.  We had no

10   notice of this request.

11           **THE COURT:**  Well, all right.  Fine.  You didn't and

12   now you do.  And I haven't ruled on it.  I want to talk

13   about it.

14           **THE CLERK:**  Amgen looks like they don't know what

15   I'm talking about, too.

16           **THE COURT:**  All right, Ms. Smith says what are we

17   talking about here.  Ms. Smith -- do you really want this?

18           **MR. DAY:**  I think this was an informal inquiry to

19   see if it was possible because the witness has a very

20   complex schedule.

21           **THE COURT:**  Okay.

22           **MR. DAY:**  But we are trying to get his schedule

23   worked out so this may not, we may not need to do this.

24           **THE COURT:**  All right.  Well, then, one, you're

25   going to have to talk to them.  But two --

```
1              MR. DAY:  We certainly will.

2              THE COURT:  -- it's doable.  I've seen it done.

3    Judge Gertner did it with a witness from Japan.  I have not,

4    but we have the capacity.  It's almost always a mess.  And

5    I'm not extending anyone's time if technically the witness

6    doesn't show up.

7              MR. FLEMING:  You're going to tell us who the

8    witness is, your Honor?

9              THE COURT:  Well, they are.  Who, who are we

10   talking about?

11             MR. DAY:  Well, at the moment we're considering

12   McLawhon.

13             THE COURT:  McLawhon.  Okay.

14             MS. CARSON:  Your Honor, McLawhon is not on their

15   expert witness list or fact witness list.

16             THE COURT:  Well, fine.  I haven't decided anything

17   yet.  I'm just telling you mechanically how the Court works.

18   I'm trying to be helpful, not hurtful.  If you have an

19   objection to it, if they even want it, then we'll see.

20             Now, thank you for these matters.  What I really

21   would like, before I start going through these lists that we

22   talk about, at the very beginning of the case, and I

23   promised myself I would keep this where I could find it, and

24   now at 2:20 today I can't find it, it's an Amgen document,

25   Amgen gave me a draft verdict slip and I praised it once,
```

1   that's just what I want, that's the way to go.

2           Where is that?  Has anyone got it?

3           **MR. FLEMING:**  Your Honor, may I?

4           **THE COURT:**  Yes.

5           **MR. FLEMING:**  Actually I believe it was Roche's

6   document.

7           **THE COURT:**  Then fine, where is it?

8           **MR. FLEMING:**  What we have done, your Honor, by

9   virtue of your rulings, is have slightly modified it, if I

10  might.

11          **THE COURT:**  Well, I knew we would.

12          **MR. FLEMING:**  Thank you.  Ms. Smith?  Thank you.

13          **MR. DAY:**  This is an alternative.

14          **MR. FLEMING:**  And I think given the way the case

15  has come in, your Honor --

16          **THE CLERK:**  This is Amgen's.

17          **THE COURT:**  Okay.  Well, all right, here we are.

18  This is fine.  Yes, this is what I want.  Okay.  These are

19  helpful.  And this really is a place to start, then we'll

20  back into what I say to the jury.  I really appreciate this.

21          I'm going to set up this verdict slip so that the

22  validity questions are first and the infringement questions

23  are second.  But the structure, you both say that we ought

24  simply ask them, claim by claim, valid or invalid.  I rather

25  like the party that -- well, I don't know whether we're

1    going to go valid/invalid or invalid/valid.  But we'll ask

2    that question.

3         Now, while we're still there, I had thought that in

4    the directed verdict I had knocked out as to some of these

5    claims some of the invalidity arguments of Roche.  And I see

6    that both of you have given me simply a straight valid and

7    invalid.  And I think I'm going to go with that, pointing

8    out the, pointing out that there are different defenses as

9    to different claims, and I'll want an outline of each one

10   that survives after the motions for directed verdict when

11   the evidence closes.  That will be easy to do, but that will

12   be a guide to me.

13        I think it does make sense to, given the way we've

14   tried the case, put in these boxes who must prove and the

15   burden of proof, just the way Amgen has done it.  But so

16   long as I detail in my charge, and I will have.  Since we

17   have daily copy, I'm going to have Mr. Womack then

18   immediately prepare the charge, I'm going to send the

19   written charge back to them.  I will tell them that.

20        I'm going to charge first, which has the advantage,

21   I think, in this case that -- really I'm going to charge

22   first and last.  The way we're going to do it is, I'm going

23   to give my charge, and at that time I'll ask you to approach

24   the side bar and I will take any objections that you have.

25   You may make objections by reference.  I'm most familiar

1   with the First Circuit procedure on this.  And the First

2   Circuit is quite strict, that is, you've got to make it

3   clear to me what it is you want me to charge.  But I will

4   have the relevant documents, and I hope that's not too long

5   a bench conference, but I won't be cutting anyone off.  The

6   jury will sit right there.  If I make corrections, I'll make

7   corrections.

8          Then we'll take a break; then we'll have final

9   argument.  The order of final argument will be Roche first,

10  then Amgen.  There will be no rebuttal.  Then we'll have a

11  very brief summary, summation -- both words are wrong.  I

12  will have a brief charge on how they deliberate together,

13  unanimous verdict, and I will wind up with my little oration

14  as to the importance of their function and how we take a

15  verdict.

16         Now, I want to be clear on something while I'm

17  still talking generally.  I said this at the side bar.  But

18  I thought Ms. Ben-Ami was off base in her opening in this

19  section of the case.  And I saw no reason to correct it, and

20  I'm not going to correct it in my charge, but I'm going to

21  tell them that this is not up to them what choices consumers

22  have.  That's not what this case is about.  I will focus

23  them on the case.  But another advantage of going first is

24  if either of you put any spin at all on what I have charged,

25  I'm not waiting for an objection.  I'll correct you in the

1    middle of your closing.  You won't want it, and therefore

2    we'll, we'll try to be clear what the charge is.

3           Now, if that's how we're going to do invalidity,

4    let's come to infringement now.  Now --

5           **MR. FLEMING:**  Your Honor, may I ask a question?

6           **THE COURT:**  Of course, any time, we're talking

7    here.

8           **MR. FLEMING:**  I understand.  When you're --

9           **THE COURT:**  Please interrupt.

10          **MR. FLEMING:**  Thank you.

11          When you're talking about closings, and you said

12   that Roche would go first --

13          **THE COURT:**  Yes.

14          **MR. FLEMING:**  -- are you breaking the closings up

15   into --

16          **THE COURT:**  No, half an hour a side.  We'll hear

17   from Roche.

18          **MR. FLEMING:**  Half an hour?

19          **THE COURT:**  Half an hour.

20          **MR. FLEMING:**  Before I think you said 45 minutes.

21   But half an hour, just to be clear?

22          **THE COURT:**  Right.

23          **MR. FLEMING:**  Your Honor --

24          **THE COURT:**  Did I say 45 minutes?

25          **MR. FLEMING:**  I believe, it's my recollection that

1    you did, your Honor.  I may stand corrected.  But it's my

2    recollection --

3           **THE COURT:**  I'll go, I'll go 45 minutes because

4    it's coming out of your time.  That means, that means

5    absolutely that we're done with the evidence on Wednesday.

6           **MR. FLEMING:**  I will consult with Ms. Ben-Ami as to

7    the actual time and let you know.

8           **THE COURT:**  Well, there's no -- I mean, I've got to

9    have at least an hour to charge here.

10          **MR. FLEMING:**  Understood.

11          **THE COURT:**  And we'll be taking two breaks.  That

12   won't exceed a half an hour.  Because the information comes

13   rapidly when we're talking directly to the jury.  Nine

14   o'clock on Thursday, at least my scheme, I'll come on the

15   bench, I'll talk for roughly an hour, give or take a bit,

16   we'll take a break, 15 minutes.  Then closing arguments,

17   without a break between them, because that's an hour.  Well,

18   that's going to be an hour and-a-half now.  They can handle

19   it.  An hour and-a-half plus my five minutes about how they

20   deliberate together.  That's how I propose.

21          **MR. FLEMING:**  Understood.

22          Your Honor, since on invalidity and inequitable

23   conduct we have the burden, might we have five minutes at

24   the end --

25          **THE COURT:**  You may not.  That's why I'm announcing

1    these things, so you be prepared.

2           Now, I don't know how we're going to do inequitable

3    conduct in the time that remains, but you seem to think we

4    can and I'm not cutting you off.

5           **MR. FLEMING:**  Yes, your Honor, we believe we can.

6           **THE COURT:**  We'll see.  I mean, when all the dust

7    settles, I have to entertain motions for directed verdict on

8    the close of all the evidence.  So, you'll want to put your

9    eggs where they'll hatch.  But that's up to you.  Don't take

10   anything by that, Mr. Day.

11          **MR. DAY:**  Your Honor?

12          **MR. FLEMING:**  We've given time for that, your

13   Honor.

14          **MR. DAY:**  I have a number of questions.  I don't

15   mean to interrupt.

16          **THE COURT:**  No, but interrupt as we go along

17   because I'm announcing things that I think I'm set on; if

18   I'm wrong, I should rethink them.

19          **MR. DAY:**  Amgen has a motion on file to try the

20   inequitable conduct case to the bench within the time limits

21   already allotted.  And I would simply like to bring that to

22   the Court's attention, that as the Court I believe

23   understands and realizes, inequitable conduct is a legal

24   issue in any event, and we think that the prejudicial effect

25   that Roche seeks to achieve with the inequitable conduct

1   case here particularly mirroring its invalidity case at the

2   close of the case, outweighs any claim they have to a jury

3   trial here.  So we have a motion on file.  And I would, I

4   don't, it was filed today, I don't intend to argue it today,

5   but I want to bring it to the Court's attention.

6         THE COURT:  Thank you.  It's simply a matter of

7   scheduling, so it's not, it's not really an issue.  I mean,

8   I'll decide it.

9         MR. DAY:  I understand.  But I do have some other

10  scheduling if that's --

11        THE COURT:  Go ahead.  Go ahead and interrupt.  I

12  want you to.

13        MR. DAY:  Just in terms of the, in order to budget

14  the time, since we are all dutifully paying close attention

15  to the time allocations and the remaining time, and the time

16  allotted each side was an initial allotment of 35 hours.

17  And we've worked off that assumption with all of the time

18  that the Court has subtracted from that and going forward.

19        I just would like some clarity, your Honor, what

20  the Court anticipates to be the time we should allot for

21  charging and closing arguments so that we understand how

22  much time remains for an evidentiary presentation.

23        THE COURT:  Yes.

24        MR. DAY:  And I've been operating on the

25  assumption, your Honor, that the time for closing argument

1    would be 45 hours per side.

2              **THE COURT:**  Forty-five minutes.

3         **MR. DAY:**  I'm sorry, forty-five minutes.

4              **THE COURT:**  And I'm quite sure I said that and I'm

5    not going back on that.  You have 45 minutes.

6         **MR. DAY:**  Okay.  Then we thought that the charge

7    would take an hour, it sounds like it will take an hour and

8    15 or something.

9              **THE COURT:**  Let's say that.

10        **MR. DAY:**  An hour and 15.  That would be divided

11   evenly each side, between each party.

12             **THE COURT:**  Correct.

13        **MR. DAY:**  So closings and the charge would be

14   approximately two hours total, an hour and 15 minutes a

15   side.

16             **THE COURT:**  That's a hour and-a-half --

17        **MR. DAY:**  I'm sorry.

18        **THE COURT:**  It's two and-a-half hours.

19        **MR. DAY:**  Two hours and 45 minutes.

20        **THE COURT:**  Two hours and 45 minutes.

21        **MR. DAY:**  As to which each side would bear half of

22   that.

23             **THE COURT:**  That's right.

24        **MR. DAY:**  Okay.  Thank you very much, your Honor.

25             **THE COURT:**  Yes.  But I guess there's this, there's

1    this, not caveat but concern.  By putting this over to

2    Thursday from my originally announced Wednesday because of,

3    that I have a doctor's appointment --

4            **MR. DAY:**  Yes.

5            **THE COURT:**    -- I've actually built in slightly

6    more time.  I want, jury waived or whatever, I want the

7    evidentiary portion of this case done one o'clock on

8    Wednesday.  I don't -- I want the jury to understand it, to

9    understand that the evidentiary portion is done and that

10   what remains are, in the order I'm doing it, the charge and

11   arguments.

12           It's just too crowded and we will all be racing if

13   any evidence remains to be taken on Thursday, because I want

14   the case to go to the jury at one o'clock.  That's not so.

15   But by adding the day, I expect the evidence to be done

16   Wednesday.

17           I will tell you, there's, I think there's no

18   impropriety on this, but you seem to have a happy jury and

19   that's a good thing.  When last we recessed, as I, I have to

20   cross the hall to get to my lobby, I did, and the gentleman

21   who sits in the front row, as he passed me, there's never

22   been any interaction, other than to say "Have a nice

23   weekend" or the like, as he passed me he said, "You know,

24   this is rather fun," to which I made no reply other than

25   "Have a nice weekend" or the like.

```
 1            But I think that exemplifies, we hear them talking

 2    in the morning, not about the case, but they seem to have

 3    bonded and they seem to be up.  I watch them take notes

 4    carefully.  I have high hopes for them as a jury.  And so

 5    for me the time schedule is very important.  They're

 6    invested in the case but they're invested in it under the

 7    time schedule.  All right.

 8            MR. FLEMING:  Your Honor?

 9            THE COURT:  Yes.

10            MR. FLEMING:  Just a point of clarification.  We

11    have under your schedule Monday, Tuesday, Wednesday, a total

12    of, if I calculate correctly, nine trial hours --

13            THE COURT:  Yes.

14            MR. FLEMING:  -- remaining.  Three and-a-half,

15    three and-a-half, and two, if I do the quick calculation.

16            THE COURT:  Correct.

17            MR. FLEMING:  And as of right now Roche is two

18    hours behind in its usage of our time.

19            THE COURT:  Correct.

20            MR. FLEMING:  So that would mean by a rough

21    calculation we have five and-a-half hours remaining and they

22    have three and-a-half?

23            THE COURT:  I'm not adopting your calculations, but

24    it sounds like your methodology is right.

25            MR. FLEMING:  Thank you, your Honor.
```

1        **THE COURT:**  Right.

2        Okay.  Let's now turn to infringement.  When we,

3   when we look at infringement you both have given me roughly

4   similar charts.  I do think the who must prove and the

5   burden of proof ought be added.  On this, I like Roche's

6   proposal of no/yes, no/yes, rather than infringed or not

7   infringed.

8        I certainly will charge them that, I will explain

9   that we need to have answers both on validity and on

10  infringement, though they may see the logic if they go one

11  way it would obviate the other, and I'll make that clear.

12       But in terms of literal infringement and the

13  doctrine of equivalents, I propose to tell them they never

14  get to the doctrine of equivalents unless they have found,

15  unless they have answered for Roche on literal infringement.

16  I'm not -- they're not simply answering all these questions

17  simply because we ask them the questions.

18       Now, here again, at least as to the one claim, and

19  maybe it's not here, the example -- oh, here we are.  No,

20  I'm working now from Roche's proposal.

21       **MR. FLEMING:**  Page 3, your Honor?

22       **THE COURT:**  Yes, I'm on Page 3.

23       **MR. FLEMING:**  Of course you recognize the

24  submission of the verdict form was subject to any further

25  rulings on directed verdict.

1              THE COURT:  Oh, yes.  No, I understand.

2              MR. FLEMING:  Okay.

3              THE COURT:  And I see here 2B.  I don't think I

4    have to put that -- well, maybe, I'll put that on the form,

5    it makes some sense.

6              MR. FLEMING:  It's just an explanation to the jury,

7    your Honor.

8              THE COURT:  Yes, it seems neutral.

9              But what about the claim that I have, I have by

10   summary judgment found for Amgen, where does that -- I

11   haven't found, I've ruled for Amgen.  -- where does that

12   appear?

13             MR. FLEMING:  It would not, your Honor.  Since

14   you've already found that, it's not for the jury then to

15   find, other than on the validity section.

16             THE COURT:  You're absolutely right, and that makes

17   good sense.  All right.

18             MR. FLEMING:  So we have not included that.

19             THE COURT:  That makes sense.

20             Now, what about -- evidently we're off reverse

21   doctrine of equivalents here.

22             MR. FLEMING:  Well, your Honor, not necessarily.  I

23   mean, it is under the doctrine of equivalents theoretically.

24   We have not made our final --

25             THE COURT:  No, it isn't under the doctrine of

```
 1    equivalents.  It's a wholly different concept really, though

 2    in the language we use reverse doctrine of equivalents.  The

 3    reason I raised it, and I have to face it here with respect

 4    to material change, as to the doctrine of equivalents, the

 5    reverse doctrine of equivalents, you're put to the Hobson's

 6    choice.  They'll never get to that unless they find

 7    infringement.

 8         MR. FLEMING:  Literal infringement.  Well,

 9    infringement generally I suppose is correct, your Honor.

10         THE COURT:  Yes, they'll have to have -- and so --

11    but you want that?

12         MR. FLEMING:  Again, it is a strategy in process.

13    I'm going to, intend to confer with Ms. Ben-Ami when she

14    returns.

15         THE COURT:  That's fine.

16         MR. FLEMING:  So I would, I would ask your

17    indulgence and allow us to get back to you on that.

18         THE COURT:  Of course, because I'm trying to use

19    the time I have.  But that makes good sense.  In other

20    words, I'm going to --

21         MR. FLEMING:  Of course.

22         THE COURT:  -- explain it.

23         Now, when we come over here to -- you want this

24    business about material change.

25         MR. FLEMING:  Yes, your Honor, we think -- if I can
```

1    explain that section briefly to you.

2            THE COURT:  Yes, would you.

3            MR. FLEMING:  Yes.  Under the law, your Honor --

4    and the only allegation of infringement as to the process

5    claims that Amgen has made was under 271(g); it's the

6    importation of the product.

7            THE COURT:  Yes.

8            MR. FLEMING:  Under that, the controlling law under

9    that statute, they must prove, must prove literal

10   infringement of the process.  And Amgen has then the burden

11   of proving no material change to that direct product of the

12   process.  There is no doctrine of equivalents for that

13   concept.  And your Honor will recognize from Dr. Lodish's

14   testimony there is already an admission of differences.

15           THE COURT:  Well, let me see if I understand here.

16           Your point -- I have to go step by step.

17           MR. FLEMING:  Yes, sorry, your Honor.

18           THE COURT:  I'm looking at your Page 4.

19           MR. FLEMING:  So first there has to be a finding of

20   literal infringement of the process.

21           THE COURT:  Please, please go step by step --

22           MR. FLEMING:  Of course, your Honor.

23           THE COURT:  -- the way I ask the questions, because

24   I have to explain it to the jury.

25           Claims 1 and 2 of '868, 4, 5, 6, 7, 8 and 9 of

1    '698, '349 claim 7, those are all product-by-process,

2    correct?

3              **MR. FLEMING:**  They are.  Except, your Honor, one

4    correction.  Claim 4 and 5 you have, of the '698, you have

5    taken out of the case.

6              **THE COURT:**  All right.  So they're out.

7              **MR. FLEMING:**  Yes, I understand.  And these are

8    pure process claims, your Honor.

9              **THE COURT:**  But a process claim falls under 271(g).

10             **MR. FLEMING:**  It does based on the allegations that

11   Amgen has made.

12             **THE COURT:**  So long as the product that's going to

13   be marketed here in the United States is a result of this

14   process.

15             **MR. FLEMING:**  And has not been materially changed.

16             **THE COURT:**  All right.  Now, since, since Amgen --

17   Mr. Day, I think I ought to ask you this so I think we're

18   all together as to the law.

19             You agree, and I've now done a little research on

20   271(g), but I may not have it, if they follow a process that

21   if done in the United States would be infringing, in Europe

22   where that process is completely lawful, and the product of

23   that process is retailed in the United States, so long as

24   you prove that the product is not materially changed, one,

25   you prove that the process is infringing, and the product

1  that they propose to market is not materially changed, then

2  you win.  If you fail in that proof that it's not materially

3  changed then Roche wins.  Is that right?

4       **MR. DAY:**  Yes, sir.  If the product of the process,

5  and it's important to understand what the statute is

6  referring to when it says the product of the process, but if

7  the product of the process is not materially changed prior

8  to its importation into the United States, and that's

9  established by Amgen, yes.

10      **THE COURT:**  Yes, by a fair preponderance.

11      All right.  Then my instinct, and I'll hear you on

12  this, Mr. Fleming, is not to call out separate boxes,

13  because here's an example, just like we're not calling out

14  separate boxes on the claims as to validity, because some of

15  them will have anticipation, and if not anticipation,

16  obviousness, enablement, written description, maybe.  Others

17  may just have obviousness and nothing else.  I'll have to go

18  through and explain to the jury claim by claim each one.

19  But the verdict slip will say valid/invalid.

20      I propose the same thing here.  As to these claims,

21  I have to properly charge, but I'm not going to give them

22  separate boxes.

23      **MR. FLEMING:**  Well, your Honor --

24      **THE COURT:**  Because you don't have anything to

25  prove here.  This is something Amgen has to prove.  And I'm,

1   I'm -- I want to go for the ultimate issue, not to get them

2   to jump through separate hoops here.

3        **MR. FLEMING:**  Your Honor, we believe that doing it

4   this way would be helpful to the jury, because their

5   analysis on these process claims comes down primarily to the

6   material change and whether or not the process has been

7   literally found.  So they have a more finite analysis to do

8   under these claims than they would under the product claims.

9        **THE COURT:**  I, I -- I hear you.

10       **MR. FLEMING:**  And this would help at least focus --

11       **THE COURT:**  But I think I have to, I think I have

12   to spell it out claim by claim.

13       **MR. FLEMING:**  Well, your Honor, I'm just curious as

14   to what you had in mind because I don't necessarily think I

15   follow how you would restructure the box on Page 4.

16       **THE COURT:**  I'm just going to omit it, make it part

17   of my charge.  In other words, they're going to get on,

18   on -- they're going to get Page, if we do yours, and I

19   rather like yours, they're going to get Page 3, but it will

20   cover these patents as well, literal infringement, doctrine

21   of equivalents.

22       **MR. FLEMING:**  Your Honor, doctrine --

23       **THE COURT:**  Plus the boxes above as to who has to,

24   who has to prove it, Amgen by a fair preponderance.

25       **MR. FLEMING:**  Your Honor, there is no doctrine of

1   equivalents on --

2              THE COURT:  Then we'll just drop those out.

3              MR. DAY:  That's not correct, your Honor.

4              THE COURT:  You think there is.

5              MR. DAY:  Genentech v. Boehringer Mannheim.

6              THE COURT:  I'll have to think about it.

7              MR. FLEMING:  That's the case that, your Honor, we

8   rely on to say that there is no doctrine of equivalents.

9              THE COURT:  Fine.  Then that's, that's where I'll

10  go because I'm going to have to structure this.

11             Once I have structured it you people are going to

12  prepare it because you seem to be magicians with computers.

13  Not that we couldn't do it but it will take me too long.

14  I'll rough this out and tell you what I need.

15             Now, I guess it's time now to see what we agree.

16  Now, here's what I want then.  And as a matter of fact, I'll

17  ask for it because I know you'll give it to me.  I want it

18  certainly by Monday.

19             I want a list, as we stand now, as we stand now, I

20  want a list of each of the claims in dispute, whether in

21  dispute simply as to validity or both validity and

22  infringement; and specifically as to validity, the defenses

23  which Roche thinks it's still alive on, anticipation

24  obviousness, enablement, written description.  Claim by

25  claim.

1          And then on infringement I want -- well, I think I

2    have the issue.  I have to figure out this Genentech thing,

3    and I know which claims are the process claims that are at

4    issue.

5          All right.  Then let's turn to the lists of

6    exhibits that I want to show the jury as part of the, as

7    part of the charge.  And now I'm looking at Roche's list of

8    prior art and chart identifying claims by category requested

9    by the Court.  And I appreciate this and it's helpful.

10         **MR. DAY:**  You also should have a list from Amgen, I

11   believe.

12         **THE COURT:**  I'm not saying I don't.  Here's --

13         **MR. FLEMING:**  Your Honor, when you asked for the

14   list, you asked for a list of the prior art that Roche

15   contends was anticipatory or other prior art, and a

16   statement as to which of those Amgen would agree.  What

17   happened, what I got as we were walking out the office to

18   come here, your Honor, was a series of objections and other

19   statements and other matters that the Court didn't ask for

20   in Amgen's submission.

21         Quite honestly, your Honor, this is a reargument of

22   your directed verdict motion denial, particularly since your

23   Honor has ruled that multiple pieces of the anticipatory

24   prior art is prior art.

25         **THE COURT:**  Wait a minute.  They may have done

1    that.  I don't know as I can go at that speed.  So let's,

2    let's just go at my slow speed.

3           And on the beginning of Roche's submission it says

4    Roche's understanding is that these exhibit lists are

5    intended for the jury.  That is true.  That's what I wanted.

6    And once I've worked it out, I'm going to have you prepare

7    it for me.

8           **MR. FLEMING:**  Yes, your Honor.

9           **THE COURT:**  Interestingly, when I look at the claim

10   chart you're in complete agreement on that and that's

11   helpful.  And now that raises a question, which I guess I

12   will put, start with you, Mr. Fleming.

13          Look at the '933 --

14          **MR. FLEMING:**  Yes, sir.

15          **THE COURT:**  -- patent, claims 3, 7, 8, 11, and 14.

16          **MR. FLEMING:**  Uh-huh.

17          **THE COURT:**  Don't they apply -- don't they require

18   this material change -- no material change proof by Amgen as

19   well?

20          **MR. FLEMING:**  Your Honor, these are -- they depend

21   on, from or are product-by-process claims.  So,

22   fundamentally they are product claims and that's the

23   analysis that has to be undertaken in order to consider

24   invalidity or infringement.

25          **THE COURT:**  Now, wait a minute.  If I go up to

1   '868, '698, and '349 --

2           **MR. FLEMING:**  Pure process claims.

3           **THE COURT:**  Correct.  And we've just been talking

4   about what charge I said I would give with respect to those

5   claims.

6           **MR. FLEMING:**  Yes, sir.

7           **THE COURT:**  Why does that analysis -- I just need

8   your help.

9           **MR. FLEMING:**  Because --

10          **THE COURT:**  Why doesn't that analysis apply to '933

11  claims 3, 7, 8, 11, and 14?

12          **MR. FLEMING:**  Well, for purposes, for instance, of

13  invalidity, what you look at is the product, and if the

14  product existed in the prior art the process is immaterial.

15          **THE COURT:**  Oh, as to invalidity.

16          **MR. FLEMING:**  Yes, sir.

17          **THE COURT:**  Yes.  But as to infringement now.

18          **MR. FLEMING:**  As to infringement --

19          **THE COURT:**  They're --

20          **MR. DAY:**  Perhaps I could speak to that, your

21  Honor?

22          **THE COURT:**  Yes.  Do you see my confusion?

23          **MR. DAY:**  I think I do, but I think I can clarify

24  it for you.

25          **THE COURT:**  And that's what I need.

1          **MR. DAY:**  They are product claims, they are not

2     process claims.  And the infringement of those claims is

3     established under Section 271(a) because the product is

4     being imported into the United States.  And so it's the

5     direct importation of the product.  They're enforced as

6     product claims, they're not process claims.

7          **MR. FLEMING:**  Except for 11 and 14 which are method

8     claims.

9          **MR. DAY:**  And method claims are being, the methods

10    will be infringed and practiced here in the United States.

11    There's no allegation of infringement predicated on the

12    practice of methods outside the United States.

13         **MR. FLEMING:**  Well, your Honor, those method claims

14    were basically asserted under the inducement of infringement

15    which you had decided that you would take away from the jury

16    and to make a determination on after the other claims have

17    been decided.

18         **MR. DAY:**  And so all of these claims, your Honor,

19    are asserted as direct infringement in the United States.

20    The infringement is not predicated on acts outside the

21    United States.  It's predicated --

22         **THE COURT:**  Okay.  So we're not going to ask the

23    jury about 11 and 14.  I mean, Roche reserves its rights,

24    but that's my ruling.  All right.

25         **MR. FLEMING:**  But as to the product-by-process

1    claims, your Honor, for infringement they do have to show

2    that the process has been followed to get the product.  But

3    as for invalidity that's not the case.

4              **THE COURT:**  Thank you.

5              Another question since -- and I'm not asking for

6    argument now, but the issue occurs to me.  Mr. Day made

7    mention of a motion to do the inequitable conduct to the

8    Court, but under the same limits.  I understand that.

9              Simply put, my reason for putting this case to the

10   jury has been that under the controlling law, given the

11   counterclaims of antitrust misconduct, as to which there's

12   an undoubted right to a jury trial, it's necessary under

13   Dairy Queen and the related cases to resolve these

14   declaratory judgment issues by the jury to give me the basis

15   for addressing whether there has been any antitrust

16   violation or not.  That's been my reasoning.

17             Now, inequitable conduct is always or has always

18   been for the Court.  So, I wonder, I would like a Roche

19   response, not today, and by Monday will be time enough, but

20   I would like a Roche response to that, to that motion.

21             **MR. FLEMING:**  Your Honor, it's not the first time

22   that you have addressed and have ruled on that very request.

23             **THE COURT:**  All right.

24             **MR. FLEMING:**  And you have found continuously that

25   the Seventh Amendment constitutional protections have, and

1    because of the intertwining of the claims, have --

2         THE COURT:  Then remind me why I'm right, because

3    it's a matter that interests me.

4         All right.  Then let's see here.  Let's take a look

5    at anticipatory prior art.  I have to, I have to say that it

6    looks like Roche has done more what I wanted here than

7    Amgen, so we'll work from Roche just to start out here.

8         Well, I'll ask you, Mr. Fleming.  I thought that in

9    order to anticipate here we had to have a document, that the

10   document itself had the elements of one of the challenged

11   claims.

12        MR. FLEMING:  Not exclusively, your Honor.

13        THE COURT:  Not exclusively.

14        MR. FLEMING:  You could have, as the case of the

15   Goldwasser trial, you could have not necessarily a document

16   but a material also that could anticipate, or in the case of

17   a process, the practice of the process.

18        THE COURT:  Yes.

19        MR. FLEMING:  So, it needn't be only in the

20   quintessential scientific publication.  It could take other

21   forms and still be anticipatory under the law.

22        THE COURT:  Yes.  But isn't there, doesn't -- I

23   mean, thinking of my charge, don't we have to look at

24   something in the prior art, and having looked at it, find

25   all of the elements of a patented claim.

1          **MR. FLEMING:**  Yes, your Honor.

2          **THE COURT:**  All right.

3          **MR. FLEMING:**  Yes, but that could be a prior public

4     use, it could be a prior publication.

5          **THE COURT:**  Right.

6          **MR. FLEMING:**  It could be a prior practice of the

7     process.

8          **THE COURT:**  Fine.

9          **MR. FLEMING:**  And the answer to your question is

10    yes, but it can take, it can take many morphology.

11         **THE COURT:**  And what constitutes anticipatory prior

12    art is matter of law, isn't it?

13         **MR. FLEMING:**  No, your Honor.  In fact, I think

14    it's -- this is now a question -- you will charge the jury,

15    as you will see in both of the instructions, what prior art

16    is, and you will then put to them for their determination

17    whether in fact they find the anticipation in the particular

18    reference.

19         **THE COURT:**  Oh, of course I will.

20         **MR. FLEMING:**  Right.  So it is an issue then for

21    the jury fact finders to determine looking at this reference

22    whether or not it anticipates, your Honor.

23         **THE COURT:**  Unless I come to think that one or more

24    of these references couldn't anticipate.

25         **MR. FLEMING:**  Well, then I think at that point,

1   your Honor, you're in a position to decide maybe a judgment

2   after the verdict.

3          THE COURT:  No, I can do it before the verdict, at

4   the close of all the evidence.

5          MR. FLEMING:  Well, I think at this point, your

6   Honor, the, the evidence is in.  These are items that are in

7   evidence and it is now within the province of the jury to

8   make that determination given your charge.

9          THE COURT:  Well, I'll tell you, I don't -- you

10  don't agree with that, Mr. Day?

11         MR. DAY:  No, sir, I don't, and I'm going to ask

12  Mr. Madrid to address this because he's --

13         THE COURT:  You don't agree with that, Mr. Madrid?

14         MR. MADRID:  That's correct.

15         THE COURT:  Fine.  I don't either.  I think that

16  this may be the grist of the renewed motion for a directed

17  verdict, because I'm not letting the jury have anything

18  that's antici -- as arguably anticipatory prior art unless,

19  given the expert testimony we have here and the document or

20  material itself, such a jury finding could be made.

21         Now, that said, for instance, I don't see how the

22  letter from Baron to Temple would be anticipatory prior art.

23  But pass that for now.  This is helpful, this is what I

24  asked you to do, and we're not taking the time now to do it.

25  But I expect when all the evidence is in and the renewed

```
 1    motions for directed verdict on both sides are made, you're
 2    going to want to attack this.  I mean, you'll attack the
 3    whole anticipation and I'll decide.  And maybe you've
 4    already started your attack, and we'll see.  But this is
 5    the, the group here on Page 3 of Roche's submissions, these
 6    are the trial exhibits that they contend constitute
 7    anticipatory prior art.  All right.  And there we are.
 8              MR. FLEMING:  Your Honor, if I could, I have a
 9    short bench memo on that issue.
10              THE COURT:  I'm happy, happy to receive it.
11              MR. FLEMING:  I thought it might be instructive,
12    and if you require further briefing we're happy to do that
13    as well.
14              THE COURT:  Thank you very much.
15              Now, the next section here is --
16              MR. FLEMING:  There is on Page 4, your Honor, just
17    for clarification, one additional category of anticipatory
18    art.
19              THE COURT:  Well, I mean, I want to be fair to your
20    submission.  Let's stick with Page 3.
21              Oh, you claim this is so as to this Eschbach, that
22    the document itself, and you make reference to the statute.
23    This is fine.  All right.  So it's 3 --
24              MR. FLEMING:  And the one box on Page 4, your
25    Honor.
```

```
 1              THE COURT:  Which box?

 2              MR. FLEMING:  There should be a box on the top of

 3     Page 4.

 4              THE COURT:  Yes.  But the whole box, all those

 5     documents?

 6              MR. FLEMING:  Yes, your Honor.  Yes.

 7              THE COURT:  All right, that's fine.

 8              MR. FLEMING:  Specific to that particular issue.

 9              THE COURT:  That's fine.  Okay.

10              MR. MADRID:  Your Honor, if I could be heard on

11     those.  The documents that are referenced in Page 4, some of

12     these documents clearly came into existence after the

13     claimed invention.

14              THE COURT:  Respectfully, you can't be heard now.

15              MR. MADRID:  Very well.

16              THE COURT:  You can be heard -- I intend to deal

17     with this with a renewed motion for directed verdict.

18     Because --

19              MR. MADRID:  Very well.

20              THE COURT:  -- if these documents, coupled with the

21     trial testimony, couldn't get it, I'm not putting it to the

22     jury.

23              MR. MADRID:  Understood.

24              THE COURT:  In other words, that level of precision

25     you people are capable of briefing, and given your aid, I'm
```

1    capable of resolving it.  But I'm not going to take the time

2    this afternoon.

3           MR. FLEMING:  And thank you, your Honor, for noting

4    that it's in connection with the trial testimony as well.

5           THE COURT:  Well, I understand.

6           MR. FLEMING:  Thank you.

7           THE COURT:  Now prior art.

8           MR. FLEMING:  Yes, sir.

9           THE COURT:  Here, here the Roche submission, again

10   working from the Roche submission, this is very helpful.

11   And I see that the submission appropriately asterisks those

12   things that Amgen disputes.  And I would propose to handle

13   those the same way.  And once I have resolved it, and this

14   is, using, using the Roche document as my operative document

15   on which to make notes, you can prepare a clean document,

16   among yourselves you can prepare a clean document for the

17   jury.

18          MR. FLEMING:  Yes, sir.

19          THE COURT:  Now, let me stop there and say this.

20   If we have lots more to do, it's an appropriate time to take

21   a recess.  If we don't, maybe we want to finish up now,

22   because I don't have to take a recess.

23          I'm not prepared this, right now, this afternoon,

24   to give you the specifics of the language I'm going to use

25   on these substantive matters, but the submissions you've

1    given me are very helpful, and I don't promise it, but to

2    the extent I can give you a draft of the charge as soon as I

3    can give it, I will do that.

4         Recognizing that, what else ought we do this

5    afternoon?  Mr. Fleming?

6         **MR. FLEMING:**  Your Honor --

7         **THE COURT:**  Anything else that --

8         **MR. FLEMING:**  Your Honor --

9         **THE COURT:**  -- would be helpful to do.

10        **MR. FLEMING:**  Very briefly, and I think not, and

11   given the fact of Ms. Ben-Ami's absence, and as you have put

12   substantive matters and have indicated to us what you want

13   those to be, I would ask you at this point to allow us now

14   to await those further submissions.

15        Now, what I do have for you, your Honor, is a

16   deposition transcript for Dr. Torchilin.  There had been

17   some indication that he might not be coming next week.  If

18   he is coming live then there's no need to bother you with

19   this and I would prefer not to.  I just need an indication

20   as to whether he actually is coming live.

21        **THE COURT:**  That's fair, that's the type of thing I

22   would like to resolve.  Let's fish or cut bait on that.

23        **MR. DAY:**  We will, your Honor.  But we don't know

24   right now because he's got a schedule that's impossible

25   to --

```
 1              THE COURT:  Is he your Belgium person?

 2              MR. DAY:  No, he's not our Belgium person.  He's,

 3    he's going to --

 4              THE COURT:  When am I going to know?

 5              MR. DAY:  We can certainly get it resolved by

 6    tomorrow.

 7              THE COURT:  All right.  I want to know by noon

 8    tomorrow.  I'll take the deposition transcript pending that,

 9    but I won't look at it until I'm told he's not coming.

10              MR. DAY:  That's fine.

11              MR. FLEMING:  There's a very brief transcript in

12    terms of designations --

13              THE COURT:  Yes.

14              MR. FLEMING:  -- for Dr. Boone.  And if I could

15    hand up --

16              THE COURT:  Doctor who?

17              MR. FLEMING:  Boone, B O O N E.

18              THE COURT:  And Boone is coming in by deposition?

19              MR. FLEMING:  He's not -- he's a 30(b)(6) witness.

20              MR. DAY:  He's an Amgen employee.

21              THE COURT:  You're going to call him?

22              MR. FLEMING:  We're going to put him on as a

23    30(b)(6) witness.

24              THE COURT:  So I have to do Boone in any event.

25              MR. FLEMING:  Yes, your Honor.
```

1          **THE COURT:**  That's helpful.

2          All right, on the Amgen side, other things --

3          **MR. DAY:**  Just a couple --

4          **THE COURT:**  -- given my own inadequacies, other

5     things we should do this afternoon?

6          **MR. DAY:**  Just a couple of things, your Honor.

7     These are all largely scheduling and case management issues.

8          Your Honor had mentioned, when we had a question

9     over a juror, that Monday and Tuesday, October 22nd and 23rd

10    you're going to be at a judicial conference.

11         **THE COURT:**  Yes, good point.  Good point.  Which I

12    haven't resolved the question.  I'm clearly anticipating --

13    there's a memorial service for a dear friend and former

14    colleague on Friday, the 19th, and I've already said, well,

15    I'm not going, I have to be here with the jury.  So I'm

16    anticipating their deliberations are going to extend 9:00 to

17    5:00 on Friday.

18         (Whereupon the Court and the Clerk conferred.)

19         **THE COURT:**  But there is a judicial conference, and

20    I overstate if I say I'm required to go.  By law they've

21    changed that.  I'm not.  But it's strongly encouraged.  And

22    more to the point, I'm going.

23         So, that's a good point.  What are your druthers?

24    If they don't return a verdict by Friday at 5:00, shall we

25    go over to Wednesday?  Or have them -- I could see if

```
 1    someone else is here.  There usually is at least one judge,

 2    a senior judge, who's not here.  I'm the only one who can

 3    answer questions.  But --

 4          MR. FLEMING:  That seems to resolve the issue for

 5    us, your Honor.

 6          THE COURT:  Well, except I've answered questions,

 7    or other of my colleagues have, by phone.

 8          I'll tell you, I prefer to have them go over until

 9    Wednesday rather than deliberate.

10          (Whereupon the Court and the Clerk conferred.)

11          THE COURT:  All right, what's your, what's your

12    pleasure?

13          MR. DAY:  Amgen's preference is clearly that there

14    be no deliberations outside your presence; you should be

15    present when the jurors deliberate.

16          THE COURT:  And Roche?

17          MR. FLEMING:  Your Honor, quite honestly, I hadn't

18    contemplated the possibility existed and I would like to get

19    back to you tomorrow, if I could, on the issue.

20          THE COURT:  Fine, it can await because I have to

21    confront that when I'm charging them late next week.

22          MR. FLEMING:  Thank you.

23          THE COURT:  But it's definitely an issue and I'll

24    reflect on it.

25          Go ahead.
```

1          **MR. DAY:**  A couple of other scheduling issues.

2          I would simply like to understand or try to begin

3     to understand the Court's preference with respect to

4     post-trial remedies, on the assumption that a verdict is

5     returned for Amgen and we proceed from that point forward

6     seeking post-trial remedies.

7          **THE COURT:**  Yes, that's, that's a good point.

8     There's another point even before we get there.

9          There's the piece I took away from the jury.  How

10    long will it try, will it take, and this won't count against

11    your time, that's probably a mistake to say that, how long

12    will it take to present the evidence on that point?

13         **MR. FLEMING:**  Your Honor, are we, are you

14    contemplating an evidentiary hearing?

15         **THE COURT:**  Well, I think first that's for you to

16    say under the adversary system.  Are you?

17         **MR. FLEMING:**  Your Honor, I can envision a short

18    number of witnesses being helpful to the Court in coming to

19    the conclusions that we need to on that issue.

20         **MR. DAY:**  If you are referring, and I'm unclear,

21    but if you are referring to inducing infringement?

22         **THE COURT:**  Yes.  Yes, the business about --

23         **MR. DAY:**  '933 claims 11 and 14?

24         **THE COURT:**  Yes.

25         **MR. DAY:**  If an evidentiary hearing would be

1    required it would be very short.

2              **THE COURT:**  Thank you.  Now, you've reoriented me.

3              I have to say I don't understand, I don't

4    understand this as a practical matter.  In my charge I

5    propose to reiterate what is undisputed, the general

6    position of the parties; that is, Amgen has the patents,

7    Roche seeks to market its Mircera here in the United States,

8    and has activities which are perfectly lawful outside the

9    United States.  And on the issues of infringement, they

10   don't need to know the intricacies of the Declaratory

11   Judgment Act, but I'm putting it to the jury, if Roche did,

12   I have to be careful on this product lawful overseas as to

13   which, a process lawful overseas and product in the United

14   States, but on the other claims, if Roche were doing these

15   things in the United States, would they infringe, yes or no,

16   and the jury will tell us that.  And I think I can do that

17   accurately.

18             Now, on this business of the label, to induce to

19   infringe.  If the verdict, contrary to your calculation and

20   scheduling, for starters, goes the other way, and the

21   verdict is entirely or almost entirely a Roche win, that's

22   largely mooted.  We're not interested then in whether the

23   label is all right because the conduct doesn't infringe, or

24   the patent is itself invalid.

25             The contrary is also true.  If the patent, patents

1    are valid and infringed in any significant degree, wholly

2    apart from how ultimately I will resolve the remedy, that

3    will all just be subsumed.  Either Roche is going to be

4    stopped in its tracks and we're not interested in what

5    labels something might have, or Roche will be allowed to

6    proceed under terms and those terms would govern the matter.

7              Isn't that -- aren't those the courses that will

8    take place?

9              **MR. DAY:**  Respectfully, your Honor, no.

10             **THE COURT:**  Why not?

11             **MR. DAY:**  The two claims that you're referring to,

12   '933 claims 11 and 14, are dependent claims.

13             **THE COURT:**  Yes.

14             **MR. DAY:**  And as the Court well appreciates every

15   claim adds some new limitation.  A dependent claim adds

16   limitations over the independent claim.  The independent

17   claim may be invalid without affecting the validity of the

18   dependent claim.  And in particular the dependent claims

19   here, claim 11 and claim 14, both have limitations to

20   raising hematocrit in patients.  And as a consequence the

21   products that are claimed and the methods that are used have

22   this added limitation that, as the Court well appreciates,

23   was taken out of the claim construction by the Federal

24   Circuit but has now, is explicitly in these claims.  And so

25   these products that are claimed in 11 and 14 of the '933

```
 1    patent are able to elicit a very specific therapeutic

 2    effect.

 3              THE COURT:  All right.  That's an answer.  Let me

 4    speak with Ms. Smith a minute.

 5              (Whereupon the Court and the Clerk conferred.)

 6              THE COURT:  All right, on the assumption that the

 7    jury is going to deliberate throughout the day on Friday, I

 8    want to hear that evidence on these matters Friday, ten

 9    o'clock, and hopefully it will be short.

10              THE CLERK:  Friday, the 19th.

11              THE COURT:  Friday, the 19th at ten o'clock.  The

12    19th, when we're here.  I want you to be ready to go on that

13    morning.

14              (Whereupon the Court and the Clerk conferred.)

15              THE COURT:  Ten o'clock Friday.  And be prepared

16    to, I would like to really finish up the evidence, so be

17    prepared to present evidence from 2:00 to 4:00 that

18    afternoon as well, if necessary.

19              Now your question, Mr. Day, which is a good

20    question.  Let's, let's assume an Amgen win.  Well, well,

21    let's start with a Roche win.  Let's assume a Roche win.  If

22    there's a Roche win, the next thing I have to schedule is

23    proceedings on the antitrust case, assuming, a matter which

24    I still have under advisement and I'm wrestling with, if

25    there's anything as matter of law to the Roche
```

1    counterclaims.  Assuming that there is, to some or all of

2    them, it's hard for me to see, if there's a Roche win, how

3    we can get to that any time in the immediate future.  But if

4    it's a Roche win, so long as I do it in a reasonable time,

5    the pressure is off because Roche can go forward with its,

6    its marketing, with its efforts before the FDA.

7            **MR. FLEMING:**  Your Honor, when we were last

8    together you mentioned possibly December.

9            **THE COURT:**  Yes.  I'm still --

10           **MR. FLEMING:**  Right.

11           **THE COURT:**  December is still a possibility.

12           **MR. FLEMING:**  Understood.

13           **THE COURT:**  And this is becoming an old case, so I

14   want to get to it.  But it won't be immediate.

15           **MR. FLEMING:**  Understood.

16           **THE COURT:**  Now let's assume an Amgen win.  I think

17   as soon as possible I would want to schedule a hearing,

18   nonevidentiary, with respect to remedy.  Mr. Kendall I

19   believe said at some stage that you thought you could

20   persuade me that an injunction is appropriate here, and

21   maybe you can.  You're certainly entitled, if you win, I

22   think to a rather thorough hearing, without evidence.

23           And again, I don't try to look too far ahead.  I

24   have a difficult enough time catching up.  But if there's an

25   Amgen win, where the two of you are competitors, reading

```
1    every case that's come out since eBay, it looks to me like,

2    in a patent case, Amgen would not have too much trouble

3    establishing irreparable injury.  The balance of the

4    equities favor Amgen.  And I've said this before, it comes

5    as no surprise, the only thing that will concern me, I

6    imagine, will be the public interest given the nature of the

7    product and the broad brush things that Ms. Ben-Ami

8    mentioned, I think inappropriately, which I told the jury

9    I'm going to take care of, and yes, I am.

10        So, I think a hearing.  Now, Ms. Smith, aiding me,

11   as always, the morning of November 15th, I have that morning

12   for a hearing.  That's pretty soon after a verdict.  And

13   maybe that's an end of it then.  The Court will be in a

14   position, by then briefs on the point can all be submitted,

15   I would be in a position to say yes or yes but or -- there

16   has to be some remedy, and I will take the matter very

17   seriously.

18        If I'm going to schedule an evidentiary hearing

19   that becomes more difficult and I think we're talking

20   December.  And at the same time, we may be talking interim

21   relief.  But that will depend upon the practicalities of

22   where everyone is.

23        That's a good question.  I try not to go too far

24   down a road that I don't have to go to until the jury tells

25   me where I'm at.
```

```
 1              And there is one thing that I want that your

 2      question raises, and that makes this conference really

 3      worthwhile.  When we get this jury verdict, however it,

 4      however it sorts out, someone's going to be disappointed and

 5      all of you will be in a position to seek, both sides will be

 6      in a position to seek judgment notwithstanding the verdict

 7      even though there still is this counterclaim piece out

 8      there.  And I don't know how that will be resolved.

 9              Here's, here's what -- and this is, this is both

10      protection to me and a way for me to do the appropriate

11      judicial job.

12              The motion for judgment, the brief, the memorandum

13      supporting the motion for judgment notwithstanding the

14      verdict is not subject to the 20 page limitation.  And

15      everything that you, every mistake that you think I've made

16      I require to be in there on pain of having waived it.  I'm

17      not trying to add to your transaction costs.  Where you have

18      made motions for, for directed verdict, just as an example,

19      summary judgment, and I have ruled on those things already,

20      I have thought about it before I've ruled and I -- I have a

21      duty to write this up.  That's where I'm going to pour --

22      that's going to be the memorandum in this case.  I'll

23      explain the summary judgment.  I'll explain the directed

24      verdict.  I'll explain everything that needs explaining.

25      But in a case of this complexity, I've made lots of rulings,
```

```
 1   evidentiary rulings, rulings on motions in limine.  I've

 2   made them as a trial judge must as we go along.  Many of

 3   them, if you're smart, should just fold by the wayside

 4   because in the big picture they don't make any difference

 5   and it's not likely you would get me tipped over in any

 6   event.  Some of them may not be that way.  I just want my

 7   innings, that's all.

 8        So you've got to come to me first and say he messed

 9   up the trial this way, that way.  This is not to cabin you

10   in, but it is to catch you, to the extent that I can control

11   it.  If it's not there in that brief, I'll then address it.

12   You can ask me to reconsider things.  But I'm not trying to

13   run up your costs.  The summary judgment, directed verdict,

14   anything I've done, after briefing, and acted on, I'll write

15   up what needs to be written on.

16        Now, did I directly answer your question, Mr. Day?

17        MR. DAY:  You did, sir, but may I respond just very

18   briefly?

19        THE COURT:  Would you.

20        MR. DAY:  Amgen would respectfully request an

21   evidentiary hearing, precisely --

22        MR. FLEMING:  As would Roche, your Honor.

23        MR. DAY:  -- and precisely because of the reason

24   that your Honor cited.  Which is, I think you had said

25   pretty clear from the beginning of this case that if there's
```

1    to be a remedy in this case it will be determined on the

2    basis of the public interest.  And that, that element has

3    largely been excluded from evidence in this proceeding.

4              **THE COURT:**  And I intend --

5              **MR. DAY:**  And rightly so.

6              **THE COURT:**  -- scrupulously to keep it away from

7    the jury, but reminding them that depending upon how things

8    fall out, I have a judicial responsibility in that regard.

9              **MR. DAY:**  Correct.

10             **THE COURT:**  Go ahead.

11             **MR. DAY:**  And rightly so.  The Court has cabined

12   the evidence in this case to what's relevant to the issues

13   for the jury.

14             But, Amgen would respectfully request, it need not

15   be a long evidentiary hearing, and it could either be live

16   testimony or it could be on the papers, but we believe that

17   there is evidence that the Court should receive and

18   entertain in exercising its discretion over injunctive

19   relief should a remedy be necessary in this case.

20             **THE COURT:**  Well, I can give you the whole day of

21   the 15th.  Again, that's a Friday.  I'm usually --

22             **THE CLERK:**  No, it's a Thursday.

23             **THE COURT:**  It's a Thursday.  But can I give them

24   the whole day?

25             **THE CLERK:**  Yes.  You have to go to New England at

1    3:30.

2              **THE COURT:**  I do.  I could give you from 9:00 to

3    3:30.  That will give us a jump on it.  And is that --

4              (Whereupon the Court and the Clerk conferred.)

5              **THE COURT:**  So that's a start on it.

6              **MR. DAY:**  That would be --

7              **THE COURT:**  And we'll reserve that should that be

8    necessary.

9              Again, I like an evidentiary hearing to be real

10   evidence.  What you can do by agreement will always be

11   appreciated.  So, by agreement I will receive declarations

12   or -- by agreement.  But if it's evidence, it's evidence.

13   And if we get to that, if we get to that, I've said this

14   before, but what, what, and I did it in the ambit of

15   discovery, what's disclosed about Roche, if anything is, has

16   to be disclosed about Amgen and vice versa.  But let's

17   tentatively put down the 15th and say where we are.

18             **MR. FLEMING:**  Yes, your Honor.  Just two

19   quick points.  Roche does want an evidentiary hearing.  We

20   believe that on some of the issues you have to consider live

21   testimony will be most helpful to the Court.

22             **THE COURT:**  Well, that's my preference and I'm

23   going to.

24             **MR. FLEMING:**  That's what we would request that you

25   allow us to do.  I won't comment --

 1            THE COURT:  But dragging it out is not going to --

 2            MR. FLEMING:  No, no, your Honor.

 3            THE COURT:  So declarations as to things that are

 4     undisputed, it's very much in both parties' interests to

 5     agree to that.  I can read.  I will read.

 6            MR. FLEMING:  And I believe having live witnesses

 7     that can answer the Court's questions --

 8            THE COURT:  Well, yes.

 9            MR. FLEMING:  -- that we may not be able to

10     anticipate I think would be helpful.  And I won't comment or

11     debate with your Honor the other issues about the --

12            THE COURT:  Fine.

13            MR. FLEMING:  -- injunctive relief if the issue

14     should present itself.

15            THE COURT:  I'm not there, I'm not there at all.

16     This is a jury trial.

17            This has been very helpful to me.  I'm sorry I've

18     not been able to be more forthcoming to you.  But I

19     appreciate it.  And so, we'll next meet nine o'clock next

20     Monday.

21            MR. FLEMING:  And, your Honor, you'll provide us

22     what you think is a draft of your charge at some point?  Is

23     that the next step --

24            THE COURT:  If you're lucky.

25            MR. FLEMING:  -- in the process?

1          **THE COURT:**  If you're lucky.

2          **MR. FLEMING:**  If I'm lucky.  Understood.

3          **THE COURT:**  That would be the best judging in this

4    case.  I'll do my best.  I have no requirement to do that.

5    And that's all I can say.

6          We'll recess.

7          **MR. FLEMING:**  Thank you, your Honor.

8          **THE COURT:**  Thank you both.

9          **THE CLERK:**  All rise.  Court is in recess.

10         **MR. FLEMING:**  One last small point, your Honor.

11   Very short.  There was a flurry of motions today.  If we

12   respond to them by Monday would that be timely enough for

13   you?  These are -- they're serious issues --

14         **MR. DAY:**  Your Honor?

15         **MR. FLEMING:**  -- going to substantive issues.

16         **MR. DAY:**  There's one, there's one motion, if I

17   may, that we would request an earlier response.

18         **THE COURT:**  Well, here's the thing.  That's fine.

19   You've told me you want until Monday to respond.  Okay.

20   In point of fact, everything today's been jury waived, I

21   have had no time, and everything's been serious.  All cases

22   are serious.  This has been a hard day.  I'm not whining,

23   but I've been thinking about other things.  Flurry of

24   motions I pay no attention to at all.  Mr. Day flagged one.

25   Now he wants to flag another.  You want until Monday to

1    respond.  Fine.  You've got it.  But, you must understand

2    that next week is a very busy week for me.  You also want a

3    draft of the charge.  Sooner would be better to oppositions,

4    but you've got until Monday.

5            MR. FLEMING:  Thank you, your Honor.

6            THE COURT:  What else is the big one I ought to be

7    thinking about?

8            MR. DAY:  It's with respect to 35 U.S.C. 295 which,

9    in the context of process claims, these are the 271(g)

10   claims, shifts the burden of proof to the defendant to prove

11   that they do not practice the process where there is reason

12   to believe that they do and the plaintiff has been unable

13   through discovery to obtain evidence from the plaintiff --

14   from the defendant on the specific limitations of the claim.

15   That motion --

16           MR. FLEMING:  That's a completely frivolous --

17           MR. DAY:  Excuse me.

18           MR. FLEMING:  -- motion, your Honor.  We're going

19   to file a substantive response.

20           THE COURT:  Well, all right, I'm sure you are.

21   Yes.  All right.  But he flags it.

22           MR. DAY:  And the reason I flag it, your Honor, is

23   because Amgen expects to rest its case on Monday.  And so, a

24   delay in responding to that motion is effectively a delay in

25   resolving that issue.  And so we would simply raise that

```
 1    issue.

 2              THE COURT:  Well, you can be sure that I will have,

 3    I'll have resolved that by Monday morning.  Strike that.

 4    I'll resolve that before you rest, because it's unfair to

 5    rest without knowing where I am on that issue.

 6              MR. DAY:  Thank you, your Honor.

 7              THE COURT:  If I disagree with that, then fine.

 8              MR. DAY:  Of course.

 9              THE COURT:  In other words, you may have more of a

10    burden.  So, they'll do whatever's tactically wise.  You'll

11    know the answer to that one before you rest.

12              MR. DAY:  Thank you very much, your Honor.

13              MR. FLEMING:  Thank you.

14              THE COURT:  All right.  We'll recess.

15              THE CLERK:  Court is in recess.

16              (Adjournment.)

17

18

19

20

21

22

23

24

25
```

1              **C E R T I F I C A T E**

2

3

4          I, Donald E. Womack, Official Court Reporter for

5     the United States District Court for the District of

6     Massachusetts, do hereby certify that the foregoing pages

7     are a true and accurate transcription of my shorthand notes

8     taken in the aforementioned matter to the best of my skill

9     and ability.

10

11

12              /S/ DONALD E. WOMACK
                _____
13                 DONALD E. WOMACK
                  Official Court Reporter
14                   P.O. Box 51062
              Boston, Massachusetts 02205-1062
15               womack@megatran.com

16

17

18

19

20

21

22

23

24

25